**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------X
KENNETH KING and           :
YIEN-KOO KING,            :
                           :
           Plaintiffs,   :
                           :      No. 14 Civ. 7694 (JFK)
   -against-          :      **OPINION & ORDER**
                           :
ANDREW WANG, SHOU-KUNG WANG,   :
BAO WU TANG, JIAN BAO GALLERY,  :
ANTHONY CHOU, CHEN-MEI-LIN, WEI :
ZHENG, YE YONG-QING, YUE DA-JIN,:
And JOHN DOES 1-9,          :
                           :
           Defendants.   :
-------------------------------X

APPEARANCES

FOR PLAINTIFFS KENNETH KING and YIEN-KOO King:
    Sam P. Israel

FOR DEFENDANTS ANDREW WANG, SHOU-KUNG WANG,
BAO WU TANG, and JIAN BAO GALLERY:
    Carolyn J. Shields
    Ying Liu

**JOHN F. KEENAN, United States District Judge**:

    Before the Court is a motion by Andrew Wang ("A. Wang"),

individually and doing business as Bao Wu Tang, and Shou-Kung

Wang ("S.K. Wang"), individually and formerly doing business as

the Jian Bao Gallery (hereinafter, the "Wang Defendants"), to

dismiss the complaint filed by Plaintiffs Kenneth King ("K.

King") and Yien-Koo King ("Y.K. King") pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  Defendants' motion

seeks dismissal on ten separate grounds, including (1) that

Plaintiffs lack standing to recover for all of their claims, (2)

that Plaintiffs' claims fall within the probate exception to federal jurisdiction, and (3) that Plaintiffs' have failed to properly allege a federal cause of action.  For the reasons discussed below, Defendant's motion is granted and the complaint is dismissed.

## I. Background

The following facts are taken from the allegations in the complaint and are accepted as true only for purposes of this motion to dismiss.  This action concerns the estate of artist and collector, Chi-Chuan Wang ("C.C. Wang").  Plaintiff Y.K. King, a New York City resident, is the daughter of C.C. Wang. Together with her husband, Plaintiff K. King, Y.K. King brings this action to recover works of fine art formerly belonging to C.C. Wang's estate (the "Estate") or to Plaintiffs themselves.

Defendant S.K. Wang, a resident of Queens, New York, is the son of C.C. Wang.  S.K. Wang is alleged to be the sole owner of Defendant Jian Bao Gallery, an art gallery conducting business in New York.  Defendant A. Wang, a New York City resident, is the grandson of C.C. Wang and the son of Defendant S.K. Wang. A. Wang is alleged to be the sole owner of Defendant Bao Wu Tang, an art gallery conducting business in China.  Defendant Anthony Chou ("Chou") is a resident of Beijing, China. Defendant Chen-Mei Lin ("Lin") is a resident of Shanghai, China. Defendant Wei Zheng ("Zheng") is a resident of Rego Park, New

York.  Defendant Ye Yong-Qing ("Qing") is a resident of
Shanghai, China.  Defendant Yue Da-Jin ("Jin") is a resident of
Nanjing, China.  The complaint also asserts claims against John
Does 1-9, who are identified as natural persons serving as
agents of the Wang Defendants.  As of the date of this order,
only Defendants A. Wang and S.K. Wang, individually and on
behalf of their respective businesses, have appeared in this
action, although a copy of the summons and complaint was
purportedly served on Defendant Zheng on October 14, 2014.

C.C. Wang was a renowned Chinese-American artist and
collector. (Compl. ¶ 22.)  According to the complaint, he
assembled a collection of over 400 fine and rare Chinese
paintings, sculptures, and antiquities during his lifetime,
which are allegedly valued at more than $60 million. (Id. ¶ 23.)
This litigation—which principally pits C.C. Wang's daughter and
son-in-law, Y.K. King and K. King, against his son and grandson,
S.K. Wang and A. Wang—centers on the ownership and inheritance
of C.C. Wang's collection following his death in 2003.

According to the complaint, Defendants' alleged misconduct
began in the early 1980's, when S.K. Wang was working as his
father's bookkeeper and assistant. (Id. ¶ 31.)  During this
time, Plaintiffs contend that S.K. Wang used his position to
remove and embezzle approximately 160 paintings belonging to
C.C. Wang. (Id.)  As a result, S.K. Wang was allegedly fired by

3

his father in 1997, after which time C.C. Wang turned over all business management responsibilities to Y.K King and K. King. (Id. ¶¶ 27, 31-32.) These responsibilities included overseeing CY Art Ltd., a company that had previously been established by Y.K. King for the purpose of facilitating the management of C.C. Wang's artwork and collection. (Id. ¶ 25.) According to the complaint, CY Art Ltd.'s assets included a safety deposit box used to store artwork belonging to both C.C. Wang and Y.K. King. (Id. ¶ 26.)

C.C. Wang's health began to fail in 2003, to the point that, in or about April 2003, his doctors reportedly determined that he lacked sufficient mental capacity to execute his own "Do Not Resuscitate" order. (Id. ¶ 27.) Thereafter, Plaintiffs assert that the Wang Defendants' secretly moved C.C. Wang to S.K. Wang's home in Queens, New York in order to prevent further contact between C.C. Wang and Y.K. King. (Id. ¶ 33.)

On January 31, 2003, Y.K. King allegedly took an inventory of the contents of the CY Art Ltd. safety deposit box and discovered that twenty-one paintings were missing, including ten works that were owned by corporations belonging to Plaintiffs. (Id. ¶¶ 34-36.) That same day, Y.K. King claims to have witnessed A. Wang and S.K. Wang leaving C.C. Wang's apartment building with two bags. Upon checking the apartment, Y.K. King found that another four paintings were missing, including three

4

more works that were owned by corporations belonging to
Plaintiffs (together with the ten works noted above, the
"Personal Artwork"). (Id. ¶¶ 37-38.)

Thereafter, during a conversation on February 4, 2003, A.
Wang reportedly admitted that he and S.K. Wang had taken all
twenty-five missing paintings, but promised not to sell any of
them if Y.K. King turned over the balance of the family's assets
to them. (Id. ¶¶ 36, 40, 41.)  Five of the missing paintings
were later returned by A. Wang in May 2005. (Id. ¶ 41.)

C.C. Wang died on July 3, 2003.  Following her father's
death, Y.K. King submitted a will dated June 13, 2000, along
with a July 10, 2002 codicil (together, the "2002 Will"), to the
New York County Surrogate's Court.  Under the 2002 Will, Y.K.
King was named executor and a principle beneficiary. (Id. ¶ 45.)
At approximately the same time, the Wang Defendants produced a
second will allegedly executed by C.C. Wang on February 18, 2003
(the "2003 Will") while he was residing at S.K. Wang's home in
Queens.  The 2003 Will purports to disinherit Y.K. King and
instead designates A. Wang as executor and names A. Wang, A.
Wang's brother—Stephen Wang—and S.K. Wang as C.C. Wang's chief
beneficiaries. (Id. ¶ 48.)

In July 2003, Y.K. King initiated a proceeding in the
Surrogate's Court in order to challenge the legitimacy of the
2003 Will. (Id. ¶ 49.)  On August 4, 2003, the Surrogate's Court

issued temporary letters of administration to the Public

Administrator and preliminary testamentary letters to A. Wang.

(Id.)  Thereafter, Plaintiffs allege that the Wang Defendants

exploited A. Wang's preliminary status as executor of the Estate

to illegally "wrest control" of the Estate's assets from

Plaintiffs. (Id. ¶¶ 50-51.)  Specifically, Plaintiffs allege

that the Wang Defendants used the Jin Bao and Bao Wu Tang

galleries to orchestrate a scheme in which Estate assets were

ostensibly sold to collectors in the Chinese art community.

Plaintiffs contend that these collectors—who include the other

named Defendants:  Chou, Lin, Zheng, Quing, and Jin—were merely

"straw men" and that A. Wang was in fact acquiring the works for

himself at deflated prices. (Id. ¶¶ 61-62.)

Probate proceedings before the Surrogate's Court apparently

remain ongoing. (See Defs. Mem. at 1.)  Nevertheless, Plaintiffs

commenced the present action by filing a complaint in the

Southern District of New York on September 23, 2014.  The

complaint asserts eight causes of action relating both to the

Personal Artwork and to property of the Estate, including two

claims under federal law for violations of the Racketeer

Influence and Corrupt Organizations Act ("RICO") and six claims

under New York law seeking to impose a constructive trust upon

any property within A. Wang's control, as well as for

conversion, common law fraud, breach of fiduciary duty,

replevin, and violations of New York State Debtor and Creditor Law section 270.  In response, Defendants filed the instant motion to dismiss.

## II. Discussion

### A.    Legal Standard

A motion to dismiss should be denied so long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Accordingly, in addressing a 12(b)(6) motion, a court must accept the plaintiff's allegations of fact as true and draw all reasonable inferences in the plaintiff's favor. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000); Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V., 4 F. Supp. 3d 395, 403 (S.D.N.Y. Aug. 25, 2014).

### B.    Analysis

Federal jurisdiction in this case is premised on the existence of a federal question raised by Plaintiffs claims in counts one and two of the complaint, which allege violations of RICO and conspiracy to violate RICO. See 18 U.S.C §§ 1962, 1964; 28 U.S.C. § 1331.  Plaintiffs also ask the Court to exercise supplemental jurisdiction over six state common law and statutory claims on the ground that they form "part of the same

case or controversy" as Plaintiffs' federal claims. See 28
U.S.C. § 1367(a).  In response, Defendants assert in part that
this action is barred by the probate exception to federal
jurisdiction on the ground that Plaintiffs' state law claims
seek, in essence, to have the Court assert control over property
of the Estate that remains under the control of the Surrogate's
Court or to distribute funds belonging to the Estate based on
Plaintiffs' disputed status as an Estate beneficiary. See
Lefkowitz v. Bank of N.Y., 528 F.3d 102, 106 (2d Cir. 2007)
(hereinafter "Lefkowitz II") (addressing similar claims and
noting that the plaintiff was attempting to "mask in claims for
federal relief her complaints about the maladministration of her
parent's estates").

Although the Court notes that many of Plaintiffs' state law
claims in this case appear to turn on issues that at least
overlap with Plaintiffs' claims before the Surrogate's Court,
the Court ultimately concludes that it need not resolve this
tension because (1) Plaintiffs lack standing to assert claims
concerning the Personal Artwork and (2) dismissal of Plaintiffs'
RICO claims is appropriate because the complaint fails to
establish a pattern of racketeering activity.  Accordingly, in
the absence of a valid federal cause of action or diversity of
citizenship, the Court declines to exercise supplemental

jurisdiction over Plaintiffs' state-law claims and therefore grants Defendants' motion to dismiss in its entirety.

### 1. The Personal Artwork:  Plaintiffs' Standing As the Real-Party in Interest

As an initial matter, Defendants contend that Plaintiffs lack standing to assert claims relating to the Personal Artwork because Plaintiffs are not the legal owners of these works; rather, the Personal Artwork is owned by "corporations, in turn, owned by the Plaintiffs." (Compl. ¶¶ 36, 38; Defs. Mem. at 20.) The Court agrees.

In every case, a plaintiff's standing to assert the claims at issue must be addressed at the outset. See Lawrence v. Cohn, 932 F. Supp. 564, 571 (S.D.N.Y. 1996).  Where a defendant asserts that a party other than the plaintiff has standing, the unspoken premise underlying the claim is that a nonparty remains the real-party in interest under Rule 17(a) of the Federal Rules of Civil Procedure. See Abu Dhabi Comm. Bank v. Morgan Stanley & Co., Inc., 888 F. Supp. 2d 478, 485 (S.D.N.Y. 2012).  Rule 17(a) requires that an action "be brought by the person who, according to the governing substantive law, is entitled to enforce the right." ImagePoint, Inc. v. JPMorgan Chase Bank, N.A., 27 F. Supp. 3d 494, 513 (S.D.N.Y. 2014) (internal quotation marks omitted).  In New York, shareholders of a corporation do not hold legal title to any of the corporation's assets; instead,

9

title is vested with the corporation itself.  See EM Ltd. v. Republic of Arg., 473 F.3d 463, 476 (2d Cir. 2007); JPMorgan Chase Bank, N.A. v. Malarkey, 65 A.D.3d 718, 721 (N.Y. App. Div. 2009).  As a result, where the claim concerns property of a corporation, it is the corporation that must seek to redress the injury.  See Bingham v. Zolt, 66 F.3d 553, 559-60 (2d Cir. 1995) (noting that shareholders generally lack standing in such cases).  Accordingly, because the complaint alleges that the Personal Artwork belongs to corporations owned by Plaintiffs, rather than to Plaintiffs themselves, these corporations are the real-parties in interest with respect to the Personal Artwork.

Typically, the failure to name the real-party in interest is not a lethal error.  Instead, where the change would be merely formal and would not alter the core of the complaint's factual allegations, a court should permit the real-party in interest a reasonable opportunity to ratify, join, or be substituted into the action.  See Fed. R. Civ. P. 17(a)(3); Abu Dhabi Comm. Bank, 888 F. Supp. 2d at 486.  As discussed below, however, the complaint fails to state a claim under RICO for the loss of either the Personal Artwork or the Estate paintings. Consequently, because the Court finds that dismissal would be appropriate in any case, Plaintiffs' request for leave to amend the complaint to add the relevant corporations as parties is denied.

10

## 2. The RICO Claims

### i. The Probate Exception to Federal Jurisdiction

Before addressing the complaint's substantive RICO allegations, the Court notes that—whether or not the probate exception excludes Plaintiff's state law claims from federal jurisdiction—federal jurisdiction is proper with respect to Plaintiffs' RICO claims. See Marshall v. Marshall, 547 U.S. 293, 296 (2006); Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (noting that subject matter jurisdiction is a "threshold inquiry"). The probate exception imposes a narrow limitation on the "otherwise proper [exercise of] federal jurisdiction": a federal court may not probate or annul a will, administer a decedent's estate, or "dispose of property that is in the custody of a state probate court," but may adjudicate matters outside those confines and otherwise within federal jurisdiction. See Marshall, 547 U.S. at 311-12; see also Lefkowitz, 528 F.3d at 105-06. Consequently, federal jurisdiction has been found to be proper where a plaintiff brings an in personam action seeking to recover personally against a defendant, even where the basis for the claim is that the defendant interfered with the making of an inter vivos or testamentary gift. See Marshall, 547 U.S. at 300-01, 312 (addressing allegations that the defendant interfered with an expected gift or inheritance by barring the plaintiff and

11

decedent from having personal contact, making misrepresentations, and transferring property contrary to the decedent's express wishes); see also Rothberg v. Marger, No. 11 Civ. 5497, 2013 WL 1314699, at *9-10 (D.N.J. Mar. 28, 2013) (citing Marshall and finding that RICO claims were not barred by the probate exception where the complaint alleged that the defendants used unlawful means to prevent the plaintiffs from receiving gifts promised to them by the decedent).

Here, Plaintiffs' RICO claims are based on allegations that Defendants engaged in an "ambitious scheme . . . designed to change C.C. Wang's financial affairs and long standing estate plan" in order to facilitate the diversion of family assets away from Plaintiffs and into Defendants' hands. (Compl. ¶¶ 46, 154-57, 179.)  To the extent, therefore, that Plaintiffs' RICO claims seeks damages from Defendants personally on the ground that their conduct prevented Plaintiffs from receiving an expected gift or inheritance, they are exactly the type of probate-related claims that Marshall permits federal courts to address. See Marshall, 547 U.S. at 304; Rothberg, 2013 WL 1314699, at *11.

### ii.  Plaintiffs' RICO Allegations

To state a RICO claim, the plaintiff must meet two pleading burdens.  First, the plaintiff must sufficiently allege the existence of a RICO violation—namely, that the defendant,

through the commission of two or more predicate acts that constitute a "pattern of racketeering activity," directly or indirectly invests in, maintains an interest in, or participates in an "enterprise" affecting interstate or foreign commerce. See Lefkowitz v. Bank of N.Y., No. 01 Civ. 6252, 2003 WL 22480049, at *8 (S.D.N.Y. Oct. 31, 2003) (hereinafter "Lefkowitz I"), rev'd on other grounds, Lefkowitz II, 528 F.3d 102 (2d Cir. 2007).  Second, the plaintiff must demonstrate an injury to her business or property that was caused by the RICO violation. See id.; see also Kerik v. Tacopina, No. 14 Civ. 2374, 2014 WL 6791615, at *8 (S.D.N.Y. Dec. 3, 2014).  Here, the complaint asserts that Plaintiffs have been injured by a series of predicate acts beginning as early as the mid-1980s, which allegedly constitute a fraudulent scheme by Defendants to obtain control of artworks belonging to C.C. Wang, his estate, and to Plaintiffs personally with the "ultimate goal" of defrauding Plaintiffs' of property and money. (Compl. ¶¶ 151-169.)

Even accepting the complaint's allegations of injury and causation as true, however, dismissal of Plaintiffs' RICO claims is appropriate because the complaint fails to plead a pattern of racketeering activity.  To adequately plead a pattern of racketeering activity, a plaintiff "must establish 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" See Lefkowitz I,

2003 WL 22480049, at *8 (quoting H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989) (emphasis in original)).

The continuity necessary to establish a RICO claim can be either "closed-ended" or "open-ended." See Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 256-57 (S.D.N.Y. 2002). To establish close-ended continuity, a plaintiff "must allege 'a series of related predicates extending over a substantial period of time.'" Id. at 256 (quoting H.J. Inc., 492 U.S. at 239).  By comparison, open-ended continuity requires a "threat that the occurrence of predicate acts will extend[ ] indefinitely into the future." See Lefkowitz I, 2003 WL 22480049, at *8 (internal quotation marks omitted) (alteration in the original).  At the same time, a scheme's duration alone is not dispositive; rather, whether continuity exists is dependent upon a number of non-dispositive factors, including the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes. See Schnell v. Conseco, Inc., 43 F. Supp. 2d 438, 445-46 (S.D.N.Y.1999).

In applying the above factors in similar cases, courts have "uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." Patrizzi v. Bourne in

14

_Time, Inc._, No. 11 Civ. 2386, 2012 WL 4833344, at *5 (S.D.N.Y.
Oct. 11, 2012); _Lefkowitz I_, 2003 WL 22480049, at *9.  For
instance, in _Weizmann_, the court determined that the allegations
were insufficient to establish close-ended continuity because
"none of the (other) indicia of closed-ended continuity—_i.e._, a
large number and variety of predicate acts, a large number of
either participants or victims, and the presence of separate
schemes"—were present. _Weizmann Inst. of Sci._, 229 F. Supp. 2d
at 257 (noting that "duration alone is not dispositive" and
observing that the complaint pled only four predicate acts by
one participant against merely two victims and in furtherance of
a single scheme—to gain control of a decedent's assets).
Likewise, in _Lefkowitz I_, the Court concluded that the plaintiff
failed to establish a pattern of open-ended continuity because
the nature of the predicate acts—which concerned the alleged
fraudulent administration of an estate—did not imply an ongoing
future threat of continued criminal activity. _See Lefkowitz I_,
2003 WL 22480049, at *9 (noting that "[o]nce the administration
[of the decedents' estate] ends, the alleged threat of future
criminal activity, such as it is, presumably will end with it").

As in _Weizmann_ and _Lefkowitz I_, Plaintiffs' RICO
allegations in this case essentially concern the conduct of a
discrete set of actors (a father and son, assisted in some
instances by a narrow group of friends), directed at a small

group of victims (Y.K. King, K. King, and possibly other Estate beneficiaries), and undertaken principally for the limited purpose of gaining possession of a decedent's property—here, C.C. Wang's art collection and fortune.  Moreover, as noted by the court in Lefkowitz I, because Defendants' predicate acts relate to the administration of a decedent's estate, as opposed to an "inherently unlawful" enterprise, the presumption is that those acts will terminate with the conclusion of probate proceedings and the final distribution of the Estate's assets. See id.  Thus, even accepting the allegations in the complaint as true, Defendants' alleged scheme "to denude the Estate of assets and misappropriate the Estate's and Plaintiffs' property" does not establish a pattern of racketeering activity as defined by the case law in this District. (See Compl. ¶ 5.)  Defendants' motion to dismiss Plaintiffs' RICO claims is therefore granted with prejudice.

### 3. Plaintiffs State-Law Claims

Having found that dismissal of Plaintiffs' RICO claims is appropriate, the Court must consider whether it should nonetheless exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  As an initial matter, a federal court ordinarily has supplemental jurisdiction to hear claims based in state law so long as they form "part of the same case or controversy under Article III of the United States

16

Constitution" as Plaintiffs' federal claims. See 28 U.S.C.
§ 1367.  A federal court may, however, decline to exercise
supplemental jurisdiction in cases where it has "has dismissed
all claims over which it has original jurisdiction." Id.;
Rothberg, 2013 WL 1314699, at *15.  Consequently, because the
Court is dismissing the complaint's only federal law claims—and
in the absence of diversity of citizenship—the Court also
declines to exercise jurisdiction over Plaintiffs' remaining
state law claims.  There is no good reason for this Court to
retain jurisdiction over Plaintiffs' remaining state law claims.

## III. Conclusion

Accordingly, for the foregoing reasons, the Court grants
Defendant's motion to dismiss the complaint in its entirety, but
without prejudice to Plaintiffs' right to refile their state-law
claims in an appropriate state court.

**SO ORDERED.**

Dated:    New York, New York
          July 13, 2015

John F. Keenan
United States District Judge

17