**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------X
YIEN-KOO KING,                        :
NORTHWICH INVESTMENTS, LTD.,          :
and SOON HUAT, INC.,                  :
                                      :
                 Plaintiffs,          :
                                      :     No. 14 Civ. 7694 (JFK)
      -against-                       :     **OPINION & ORDER**
                                      :
ANDREW WANG, SHOU-KUNG WANG,          :
BAO WU TANG, JIAN BAO GALLERY,        :
ANTHONY CHOU, CHEN-MEI-LIN, WEI       :
ZHENG, YE YONG-QING, YUE DA-JIN,      :
and JOHN DOES 1-9,                    :
                                      :
                 Defendants.          :
-------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/2017

APPEARANCES

FOR PLAINTIFFS YIEN-KOO King,
NORTHWICH INVESTMENTS, LTD., and SOON HUAT, INC.:
      Sam P. Israel
      Timothy Savitsky

FOR DEFENDANTS ANDREW WANG, SHOU-KUNG WANG,
BAO WU TANG, and JIAN BAO GALLERY:
      Carolyn J. Shields
      Ying Liu

**JOHN F. KEENAN, United States District Judge**:

Before the Court is a motion by Andrew Wang ("A. Wang"),

individually and doing business as Bao Wu Tang, and Shou-Kung

Wang ("S.K. Wang"), individually and formerly doing business as

the Jian Bao Gallery (hereinafter, the "Wang Defendants"), to

dismiss the First Amended Complaint (the "amended complaint")

filed by Plaintiffs Yien-Koo King ("Y.K. King"), Northwich

Investments, Ltd. ("Northwich"), and Soon Huat, Inc. ("Soon

Huat") (hereinafter, "Plaintiffs").  For the reasons discussed below, Defendants' motion is granted and the amended complaint is dismissed.

## I.  Background

### A.  Factual Background

The following facts are taken from the allegations in the amended complaint and are accepted as true only for purposes of this motion to dismiss.  This action concerns the estate of artist and collector, Chi-Chuan Wang ("C.C. Wang"). (Amended Complaint ¶ 2, ECF No. 36 (filed September 27, 2016).) Plaintiff Y.K. King, a New York City resident, is the daughter of C.C. Wang; she brings this action—together with Northwich and Soon Huat, corporations she and her husband, Kenneth King, own— to recover works of fine art formerly belonging to C.C. Wang's estate (the "Estate") or to Northwich and Soon Huat. (Id. ¶¶ 2, 12.)

Defendant S.K. Wang, a resident of Queens, New York, is the son of C.C. Wang. (Id. ¶ 16.)  S.K. Wang is alleged to be the sole owner of Defendant Jian Bao Gallery, an art gallery conducting business in New York. (Id. ¶ 23.)  Defendant A. Wang, a New York City resident, is the grandson of C.C. Wang and the son of S.K. Wang. (Id. ¶¶ 15-16.)  A. Wang is alleged to be the sole owner of Defendant Bao Wu Tang, an art gallery conducting business in China. (Id. ¶ 22.)  Defendant Anthony Chou is a

resident of Beijing, China. (Id. ¶ 17.) Defendant Chen Mei-Lin is a resident of Shanghai, China. (Id. ¶ 18.) Defendant Wei Zheng is a resident of Rego Park, New York. (Id. ¶ 19.) Defendant Ye Yong-Qing is a resident of Shanghai, China. (Id. ¶ 20.) Defendant Yue Da-Jin is a resident of Nanjing, China. (Id. ¶ 21.) The amended complaint also asserts claims against John Does 1-9, who are identified as natural persons serving as agents of the Wang Defendants. (Id. ¶ 24.) As of the date of this order, only A. Wang and S.K. Wang, individually and on behalf of Bao Tu Wang and Jian Bao Gallery—their respective businesses—have appeared in this action, although a copy of the summons and complaint was purportedly served on Defendant Wei Zheng on October 14, 2014. (See Affidavit of Service, ECF No. 6 (filed Oct. 23, 2014).)

C.C. Wang was a renowned Chinese-American artist and art collector who amassed over 400 fine and rare Chinese paintings, sculptures, and antiquities during his lifetime, valued at a total of $60 million. (Am. Compl. ¶¶ 25-26, 32.) C.C. Wang died in 2003, but the Wang Defendants' alleged misconduct began in the 1980s and 1990s when S.K. Wang, working as his father's bookkeeper and assistant, embezzled 160 paintings from his father's collection. (Id. ¶¶ 34-35, 39.) In 1997, when C.C. Wang discovered S.K. Wang's wrongdoing, he fired S.K. Wang and hired Y.K. King to run his affairs. (Id. ¶ 29.) As part of her

management role, Y.K. King established CY Art Ltd. to facilitate management of C.C. Wang's artwork and collection. (<u>Id.</u> ¶ 30.) CY Art Ltd. owned a safe deposit box that contained artwork belonging to C.C. Wang, Northwich, and Soon Huat. (<u>Id.</u> ¶ 31.)

C.C. Wang's health began to deteriorate in or about January 2003 and he was hospitalized in March 2003. (<u>Id.</u> ¶¶ 40-41.) In April 2003, his doctors reportedly determined that he lacked the mental capacity to execute his own medical forms. (<u>Id.</u> ¶ 41.) Sometime later in the spring of 2003, the Wang Defendants secretly moved C.C. Wang to S.K. Wang's Queens, New York home to prevent further contact between C.C. Wang and Y.K. King. (<u>Id.</u> ¶ 44.)

Earlier, on January 31, 2003, Y.K. King took inventory of CY Art Ltd.'s safe deposit box and discovered that twenty-one paintings were missing—nine of these paintings are owned by Northwich, one is owned by Soon Huat, and the remaining eleven are owned by the Estate. (<u>Id.</u> ¶¶ 48-50.) A. Wang returned five of these paintings to Y.K. King many years later; the remaining sixteen have not been recovered by Plaintiffs or the Estate. (<u>Id.</u> ¶ 50.) Also on January 31, 2003, Y.K. King checked her father's apartment and discovered that an additional four paintings were missing—three of these paintings are owned by Northwich and one is owned by the Estate. (<u>Id.</u> ¶¶ 51-53.) During a sworn deposition in 2005, A. Wang admitted to taking

4

the paintings from the safe deposit box, allegedly with the help of 96-year-old C.C. Wang, but he has since recanted his statements. (Id. ¶¶ 56, 66.)

C.C. Wang died on July 3, 2003. (Id. ¶ 70.) Thereafter, Y.K. King submitted to New York County Surrogate's Court a June 13, 2000 will and July 10, 2002 codicil that named her the executor and a principle beneficiary of the Estate, and entitled both Y.K. King and S.K. Wang to thirty-five percent shares of the Estate. (Id. ¶ 71.) Contemporaneously, the Wang Defendants produced a second will allegedly executed by C.C. Wang on February 18, 2003 (the "2003 will"), four months before his death. (Id. ¶ 72.) The 2003 will purports to disinherit Y.K. King, designate A. Wang as executor, and name A. Wang, S.K. Wang, and Stephen Wang (A. Wang's brother) as chief beneficiaries. (Id. ¶¶ 74-75.) In July 2003, Y.K. King initiated Surrogate's Court proceedings to contest the 2003 will. (Id. ¶ 82.) On August 4, 2003, the Surrogate's Court issued temporary letters of administration to the Public Administrator and preliminary testamentary letters to A. Wang. (Id. ¶ 83.) A. Wang assumed the role of Estate fiduciary and exercised dominion and control over Estate assets. (Id. ¶ 85.) The proceedings in Surrogate's Court regarding the Estate remain ongoing. (Id. ¶ 64; see also Pls.' Mem. of L. in Opp. to Mot. to Dismiss at 3.)

Plaintiffs assert that A. Wang exploited his temporary status as Estate fiduciary to orchestrate a scheme by which the Wang Defendants used their galleries to sell the Estate's artwork to five "straw men"—the other Defendants in this action—in order to acquire the works for A. Wang himself at deflated prices (the "Straw Men Scheme"). (Id. ¶¶ 85, 105-107.) To orchestrate this scheme, Plaintiffs allege that the Wang Defendants reinvested the funds derived from the sale of the twenty-five artworks stolen in 2003 to fraudulently purchase Estate assets through straw men at artificially low prices. (Id. ¶ 103.) Between 2005 and 2009, A. Wang sold ninety-eight Estate-owned paintings to five straw men who then resold the paintings for "astronomical resale values," with A. Wang pocketing the proceeds. (Id. ¶¶ 105, 111, 141.) According to Plaintiffs, the Estate received approximately $4 million from the Straw Men Scheme "even though the true value of the sold works exceeds $40 million." (Id. ¶ 298.) Plaintiffs did not discover until 2013 that many of these ninety-eight artworks had been resold at Chinese auctions in 2008 and 2009 for as much as 2,000 percent of the straw men's purchase price. (Id. ¶¶ 290, 292, 299.)

The amended complaint asserts eleven causes of action relating to the corporation- and Estate-owned artwork, including four claims under federal law for violations of the Racketeer

Influence and Corrupt Organizations Act ("RICO") and seven

claims under New York law seeking to impose a constructive trust

upon any property within A. Wang's control, as well as for

conversion, common law fraud and conspiracy to defraud, breach

of fiduciary duty and aiding and abetting breach of fiduciary

duty, replevin, and violations of New York State Debtor and

Creditor Law section 270. (See id. ¶¶ 249-379.)  Two of the RICO

claims are asserted by all Plaintiffs against all Defendants and

two are asserted by Y.K. King on behalf of the Estate against

each of the Wang Defendants. (See id. ¶¶ 249-322.)

## B.    Procedural History

Plaintiffs filed their original complaint in this action on

September 23, 2014. (See Complaint, ECF No. 1 (filed Sept. 23,

2014).)  Only Y.K. King and her husband, Kenneth King ("K. King"

and together "the Kings"), were named as plaintiffs in the

original complaint. (See id.)  The same Defendants are named in

both the original and amended complaints.  On November 21, 2014,

Defendants moved to dismiss the complaint on several grounds,

including:  (1) the Kings lacked standing to recover for all of

their claims, (2) the Kings' claims fell within the probate

exception to federal jurisdiction, and (3) the Kings failed to

properly allege a federal cause of action. (See Defs.' Mot. to

Dismiss, ECF No. 15 (filed January 12, 2015).)  On July 13,

2015, the Court granted Defendants' motion and dismissed the

original complaint in its entirety for failure to state a claim under Rule 12(b)(6). (See Op. & Order, ECF No. 27 (filed July 13, 2015).) The Court found that the Kings lacked standing to sue on claims related to their personal artwork because they were not the real parties in interest under Federal Rule of Civil Procedure 17 because corporations, and not the Kings, owned the artwork. (Id. at 10.) While Rule 17 typically permits a plaintiff to amend the complaint to allow the real party in interest to ratify, join, or be substituted into the action, the Court denied this request because the complaint failed to adequately plead closed-ended continuity as required by the RICO statute. (Id. at 10, 15-16.) The Court also ruled that the probate exception did not strip federal jurisdiction from the RICO claims because the RICO claims sought to recover damages from the Defendants personally and did not interfere with property in the custody of state probate court. (Id. at 12.) Finally, the Court found no good reason to exercise supplemental jurisdiction over the Kings' state law claims in light of the fact that the Kings failed to state any federal claims upon which relief could be granted. (Id. at 17.)

The Kings appealed the Court's decision to the Second Circuit. (See Notice of Appeal, ECF No. 29 (filed Aug. 12, 2015).) On August 26, 2016, the Second Circuit affirmed in part and vacated and remanded in part the Court's opinion and order

8

on Defendants' motion to dismiss. (See Summary Order, ECF No. 32 (filed August 26, 2016).)  The Second Circuit panel affirmed the Court's exercise of jurisdiction over the RICO claims as falling outside of the probate exception to federal jurisdiction, but vacated and remanded the Court's determination that the Kings failed to adequately plead closed-ended continuity. (See id.)  The Second Circuit panel found that closed-ended continuity existed because, in essence, the related predicates occurred over a substantial period of time. (Id. at 3.)  The panel directed the Court to permit the Kings to file an amended complaint to add the real parties in interest who owned certain artwork at issue and to consider whether it may exercise jurisdiction over the Kings' state law claims consistent with the probate exception. (Id.)

On September 27, 2016, Plaintiffs filed their amended complaint, adding Northwich and Soon Huat as the real parties in interest and removing Kenneth King. (See Amend. Compl. at 1.) The amended complaint contains essentially the same claims but newly alleges some of the claims by Y.K. King on behalf of the Estate—rather than in an individual capacity—including violation of civil RICO and breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty. (See id. at 49, 54, 62.) On October 25, 2016, Defendants filed the instant motion to dismiss the amended complaint seeking dismissal on four separate

grounds:  (1) Plaintiffs lack standing to assert RICO claims,
(2) Plaintiffs' RICO claims are time-barred, (3) Plaintiffs'
state law claims fall within the probate exception to federal
jurisdiction, and (4) the Court should abstain from entertaining
this action under the Colorado River doctrine. (See Defs.' Mem.
of L. in Support of Mot. to Dismiss.)

## II. Discussion

### A.    Standing

#### 1.    Legal Standard

"A case is properly dismissed for lack of subject matter
jurisdiction under Rule 12(b)(1) when the district court lacks
the statutory or constitutional power to adjudicate it."
Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)
(citing FED. R. CIV. P. 12(b)(1)).  Under Article III of the
United States Constitution, federal courts may hear only
"[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl.
1.  Thus, "[i]f plaintiffs lack Article III standing, a court
has no subject matter jurisdiction to hear their claim." Cent.
States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco
Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005).

When considering a motion to dismiss pursuant to Rule
12(b)(1), the Court must accept as true all well-pled facts
alleged in the complaint and must draw all reasonable inferences
in a plaintiff's favor. Sweet v. Sheahan, 235 F.3d 80, 83 (2d

Cir. 2000).  "But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  Rather, a plaintiff must prove subject matter jurisdiction exists "by a preponderance of the evidence." Makarova, 201 F.3d at 113; see also Whitmore v. Arkansas, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").  In considering a motion to dismiss under Rule 12(b)(1), a court "may refer to evidence outside the pleading." Makarova, 201 F.3d at 113.

## 2.  Analysis

Defendants argue that Y.K. King lacks standing to assert RICO claims either individually or on behalf of the Estate. (Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 3-4.) Defendants first contend that Y.K. King cannot bring claims on an individual basis because the complaint alleges that the artwork at issue belongs to Northwich, Soon Huat, or the Estate. (Id. at 3.)

"[S]tanding is to be determined as of the commencement of suit." Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5

11

(1992).  Federal Rule of Civil Procedure 17(a) requires that an action "be brought by the person who, according to the governing substantive law, is entitled to enforce the right." ImagePoint, Inc. v. JP Morgan Chase Bank, Nat. Ass'n, 27 F. Supp. 3d 494, 513 (S.D.N.Y. 2014).  The Court has already held, and the Second Circuit has affirmed, that Y.K. King does not have standing to bring claims for stolen property owned by the corporation Plaintiffs. See Op. & Order at 10; Summary Order at 3.  Further, the amended complaint makes clear, and Plaintiffs' counsel admitted during oral argument on Defendants' motion to dismiss, that Y.K. King does not own any of the stolen paintings herself. (See Am. Compl. ¶¶ 48-53, 104-248; Transcript of Oral Argument, May 24, 2017, 12:14-24 [hereinafter Tr.].)  Thus, Y.K. King does not have standing to bring claims for the stolen artwork owned by Northwich and Soon Huat, and the only issue that remains is whether Y.K. King has standing to sue on behalf of the Estate for claims related to stolen Estate property.

Defendants contend that Y.K. King lacks standing to assert RICO claims on behalf of the Estate because she is neither a fiduciary nor beneficiary of the Estate. (Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 4.)  Federal Rule of Civil Procedure 17(a)(1) allows the executor or administrator of an estate to sue in his or her own name "without joining the person for whose benefit the action is brought." Garmon v. Cty. of Rockland, No.

10 CIV. 7724 ALC GWG, 2013 WL 541380, at *2 (S.D.N.Y. Feb. 11, 2013). However, according to the amended complaint, Y.K. King is not the administrator or executrix of the Estate. (See Am. Compl. ¶¶ 83-85.) Thus, Y.K. King's standing to sue on behalf of the Estate is determined by New York law in accordance with Rule 17(b)(3). See Garmon, 2013 WL 541380, at *2.

Under New York law, "only a duly appointed personal representative may bring suit on behalf of a decedent's estate." Friedman v. Clearview Gardens Second Corp., No. 23317/10, 2011 WL 489545, at *1 (N.Y. Sup. Ct. Feb. 3, 2011) (citing N.Y. EST. POWERS & TRUSTS LAW § 11-3.1 (McKinney 2017)). "A personal representative is a person who has received letters to administer the estate of a decedent." § 1-2.13. If letters of administration have not been issued to an individual, he or she has no standing to sue. See Palladino v. Metro. Life Ins. Co., 590 N.Y.S.2d 601, 602 (App. Div. 3d Dep't 1992); see also Garmon, 2013 WL 541380, at *3 ("Since Plaintiff was not named the administrator of the estate, he does not have standing to bring claims belonging to the decedent."); Friedman, 2011 WL 489545, at *1 (although plaintiff "clearly ha[d] an interest in the cause of action," he could not maintain that cause of action individually where he had not been issued letters of administration); In re Priestley, No. 2010-2469/H, 2017 WL 758341, at *5 (N.Y. Surr. Ct. Feb. 27, 2017) ("A beneficiary

does not have an independent cause of action to seek to recover assets withheld from an estate [and] . . . must obtain letters of administration before suing on behalf of the decedent's estate.").

According to the amended complaint, on August 4, 2003, the Surrogate's Court issued temporary letters of administration to the Public Administrator and preliminary testamentary letters to A. Wang. (Am. Compl. ¶ 83.) Thus, although the proceedings in Surrogate's Court regarding the Estate remain ongoing, as of the date of the amended complaint, Y.K. King had not obtained letters of administration and did not qualify as a "duly appointed personal representative" with standing to bring claims on behalf of the Estate.

New York courts have considered the possibility of estate beneficiaries suing on behalf of an estate and held that such a right only exists under "extraordinary circumstances such as when a fiduciary refuses to act." <u>Lucas v. Tiernan</u>, No. 07 CIV. 2011 (NRB), 2006 WL 4808614, at *3 (S.D.N.Y. Sept. 27, 2006). "Typically, when a testator dies, the executor, not the beneficiary, acquires standing to pursue claims on behalf of the testator and the estate." <u>Lefkowitz v. Bank of N.Y.</u>, No. 01 CIV. 6252 VM, 2003 WL 22480049, at *6 (S.D.N.Y. Oct. 31, 2003), <u>aff'd in part, rev'd in part on other grounds</u>, 528 F.3d 102 (2d Cir. 2007). This rule is subject to exception in "cases of collusion

. . . or of the existence of other special circumstances such as the fraudulent transfer of the trust property by the personal representatives themselves." Id.

Plaintiffs allege that A. Wang abused his status as Estate fiduciary to fraudulently transfer and sell Estate assets through the Straw Men Scheme. (Am. Compl. ¶¶ 263-264.) However, as of the date the amended complaint was filed, "the two C.C. Wang wills remained in contest," one of which—the 2003 will—purports to disinherit Y.K. King from the Estate; thus, Y.K. King's status as an Estate beneficiary remains undecided.[1] (Id. ¶¶ 85, 262.) Accordingly, even if the Wang Defendants' actions were to constitute the "extraordinary circumstances" that would allow a beneficiary to sue on behalf of an estate, Y.K. King's status as a beneficiary of the Estate had not been determined as of the commencement of this action. Thus, Y.K. King does not have standing to bring RICO claims on behalf of the Estate.

---

[1] On April 26, 2017, a jury in Surrogate's Court found that the 2003 will was executed at a time when C.C. Wang lacked testamentary capacity, and was procured by undue influence and fraud on the part of the Wang Defendants. Decree at 2-3, Proceeding to Probate Instrument Dated Feb. 18, 2003, Estate of Chi-Chuan Wang, No. 2003-2250/B (N.Y. Surr. Ct. May 9, 2017). Surrogate Mella accordingly ordered that the 2003 will was denied probate and revoked the preliminary letters issued to A. Wang. Id. However, as of May 24, 2017, Y.K. King still had not been issued letters of administration. (Tr. 19:22-25.) More importantly, standing is determined as of the commencement of an action, at which point Y.K. King had not received letters of administration and had not been determined to be an Estate beneficiary because, as discussed above, the two wills "remained in contest." (See Am. Compl. ¶ 85.)

15

### a. Defendants' Standing Arguments Are Not Barred by the Mandate Rule

Plaintiffs contend that Defendants' arguments regarding standing to sue on behalf of the Estate are precluded by the "mandate rule" because they are identical to those Defendants raised on appeal. (See Pls.' Mem. of L. in Opp. to Mot. to Dismiss at 3-5.) Plaintiffs claim that Defendants argued in their appellate brief that (1) the Kings lacked standing to assert claims to artwork owned by the Estate, (2) the Kings lacked standing under RICO to bring claims stemming from the Estate's injuries, and (3) Y.K. King could not sustain an action on behalf of the Estate because she was neither a fiduciary nor an adjudicated beneficiary of the Estate. (Id. at 4.)

The mandate rule is a subset of the law-of-the-case doctrine. Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006). "[W]here issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." Id. There is a corollary to this rule—"if an issue was not part of the appellate decision, a trial court may consider the matter." Id. "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of

the mandate.'" Id. (quoting United States v. Ben Zvi, 242 F.3d
89, 95 (2d Cir. 2001)).

In its summary order, the Second Circuit agreed with the
Court that the Kings lacked standing to bring "at least some of
their claims because a number of the paintings in question were
owned not by them but by corporations that plaintiffs, in turn,
owned," and directed the Court to allow Plaintiffs to amend
their complaint to add the real parties in interest. (Summary
Order at 3.)  The Second Circuit further stated that it had
"considered the remainder of arguments raised in both appeals
and find[s] them to be without merit." (Id.)

The Court holds that the mandate rule does not apply to
Defendants' argument that Y.K. King does not have standing to
sue on behalf of the Estate.  First, the standing arguments
Defendants raised on appeal are necessarily different than the
arguments raised in their motion to dismiss the amended
complaint because all of the RICO claims in the original
complaint were alleged by the Kings in an individual capacity
and not on behalf of the Estate. (See Compl. at 33-41.)  In
their appellate brief, Defendants argued that (1) "[t]he Kings
similarly lacked standing to assert claims to artwork owned by
the Estate of C.C. Wang," (2) the "alleged loss of paintings by
the . . . Estate are not injuries to the Kings," and (3) "Yien-
Koo King lacks standing to assert claims that belong to a

beneficiary or fiduciary of the estate." (Defs.' App. Br. at 6-7, 17.)  None of these arguments address whether Y.K. King could bring claims on behalf of the Estate, but rather the deficiencies in Y.K. King's standing in an individual capacity.

Second, neither this Court's opinion nor the Second Circuit's summary order addressed whether Y.K. King has standing to bring claims on behalf of the Estate.  Thus, the Court is not precluded from considering this issue under the mandate rule. See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 175-76 (2d Cir. 2014) (district court did not violate mandate rule in "addressing on remand an issue that was not decided by this Court in the original appeal"); New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 606 (2d Cir. 2003) ("Put simply, the law of the case does not extend to issues an appellate court did not address.").

Accordingly, all RICO claims brought by Y.K. King are dismissed for lack of standing.  Thus, Northwich and Soon Huat are the only Plaintiffs with standing to bring RICO claims for their allegedly stolen artwork.  However, as discussed below, the paintings owned by Northwich and Soon Huat were discovered stolen in 2003 and thus, any RICO claims relating to those paintings are dismissed as time-barred.

## B.  RICO Statute of Limitations

### 1.  Legal Standard

RICO claims are governed by a four-year statute of limitations which "begins to run when the plaintiff discovers or should have discovered the RICO injury." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998).  "The first step in the statute of limitations analysis is to determine when the [plaintiffs] sustained the alleged injury for which they seek redress." Id. at 59.  The second step in the analysis is to determine when the plaintiff "discovered or should have discovered th[e] injury." Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1103 (2d Cir. 1988).  The limitations period begins to run when the plaintiff has "actual or inquiry notice of the injury." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d at 60.  A plaintiff is charged with inquiry notice when "a reasonable person should have discovered the RICO injury." In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig., 850 F. Supp. 1105, 1118 (S.D.N.Y. 1993).

### 2.  Analysis

Plaintiffs initially filed their complaint in this matter on September 23, 2014.  Thus, if Plaintiffs had actual or inquiry notice of the alleged injuries before September 23, 2010, their RICO claims are time-barred unless an exception to the limitations period applies.  It is clear from the

allegations in the amended complaint that Northwich and Soon
Huat had actual notice of the alleged RICO scheme as it
pertained to their property no later than 2003.  According to
the amended complaint, Y.K. King discovered in January 2003 that
twenty-five paintings had been stolen from CY Art Ltd.'s safe
deposit box and from her father's apartment. (Id. ¶¶ 48-53.)
The amended complaint also states that, during a conversation in
February 2003, A. Wang admitted to Y.K. King that he and his
father had taken the twenty-five missing paintings, including
the thirteen works that were owned by Northwich and Soon Huat,
and demanded that Y.K. King turn over control of the balance of
the family's assets to them. (Id. ¶¶ 59-62.)  Furthermore,
Plaintiffs concede in their opposition brief that RICO claims
related to the artworks stolen in 2003 are time-barred and state
that "none of the Plaintiffs seek recovery of the [twenty-five]
works stolen on January 31, 2003." (Pls.' Mem. of L. in Opp. to
Mot. to Dismiss at 5-6.)  Based on the foregoing facts, the
Court finds that Northwich and Soon Huat had actual notice of
the injuries to their property no later than February 2003.
Thus, any RICO claims pertaining to Northwich's and Soon Huat's
artwork became time-barred in February 2007.

Plaintiffs argue in opposition that the RICO claims
pertaining to the artwork sold through the Straw Men Scheme from
2005 to 2009 are not time-barred because, as alleged in the

amended complaint, Y.K. King did not discover that several of these stolen paintings had been shipped to and sold in China until 2012 or 2013. (Id. at 6-7; Am. Compl. ¶¶ 283-284, 290, 292.) A plaintiff may assert a valid cause of action under the Second Circuit's "separate accrual rule" for RICO claims, which provides that "a new four-year period is triggered each time the plaintiff 'discovers, or should have discovered, a new injury' caused by otherwise time-barred predicate acts." See Kerik v. Tacopina, 64 F. Supp. 3d 542, 558 (S.D.N.Y. 2014) (quoting Bingham v. Zolt, 66 F.3d 553, 559-60 (2d Cir. 1995)); see also In re Merrill Lynch, 154 F.3d at 59 (noting that the RICO limitations period begins "afresh with each new injury"). For the rule to apply, the injury for which relief is sought must be "new and independent," and a plaintiff may still only recover for "injuries discovered or discoverable within four years of the time suit is brought." See Bingham, 66 F.3d at 560; Kerik, 64 F. Supp. 3d at 558.

Plaintiffs' counsel stated during oral argument that some of the paintings sold through the Straw Men Scheme, specifically the paintings described in paragraphs 138, 142, and 153 of the amended complaint, were owned by Northwich. (Tr. 12:25-14:1.) However, per the clear allegations in the amended complaint, all of the paintings sold through the Straw Men Scheme from 2005 to 2009, including those identified at oral argument, are owned by

the Estate.  The amended complaint describes all of the paintings sold through the Straw Men Scheme as "Estate paintings," provides Estate Identification Numbers for each painting—including those listed in paragraphs 138, 142, and 153— and states that some of the stolen paintings were sold at auction for an exponentially larger price than was paid "to the Estate." (See Am. Compl. ¶¶ 131-224.)  Indeed, Plaintiffs argue in their opposition brief that "[t]he Estate's ability to recover under its RICO claims due to [A. Wang's] sales to [straw men] between 2005 and 2009 . . . is not barred by RICO's four-year statute of limitations." (Pls.' Mem. of L. in Opp. to Mot. to Dismiss at 6.) (emphasis added).  Thus, the separate accrual rule is irrelevant here because the paintings sold through the Straw Men Scheme were owned by the Estate, who is not a party to this action, and on whose behalf Y.K. King does not have standing to assert claims.  Accordingly, Northwich's and Soon Huat's RICO claims are dismissed as time-barred.

## C. Plaintiffs' State-Law Claims

Having found that dismissal of Plaintiffs' RICO claims is appropriate, the Court must consider whether it should nonetheless exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  Defendants assert that these state-law claims are barred by the probate exception to federal jurisdiction on the ground that they essentially seek the return

of property of the Estate that remains under the control of Surrogate's Court or to distribute funds belonging to the Estate based on Plaintiffs' disputed status as an Estate beneficiary. See Lefkowitz v. Bank of N.Y., 528 F.3d 102, 107 (2d Cir. 2007) (addressing similar claims and noting that the plaintiff was attempting to "mask in claims for federal relief her complaints about the maladministration of her parent's estates").

A federal court ordinarily has supplemental jurisdiction to hear claims based on state law so long as they form "part of the same case or controversy under Article III of the United States Constitution" as the asserted federal claims. See 28 U.S.C. § 1367. A federal court may, however, decline to exercise supplemental jurisdiction in cases where it has "has dismissed all claims over which it has original jurisdiction." Id.; Rothberg v. Marger, No. CIV. 11-5497 RBK/KMW, 2013 WL 1314699, at *15 (D.N.J. Mar. 28, 2013). Because the Court is dismissing the amended complaint's only federal law claims—and in the absence of diversity of citizenship—the Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims. Accordingly, the Court need not consider Defendants' arguments regarding Colorado River abstention.

### III. Leave to Amend

In their opposition brief, Plaintiffs request leave to re-plead any "curable deficiencies" if all or part of the amended complaint is dismissed. (Pls.' Mem. of L. in Opp. to Mot. to Dismiss at 11.)  Federal Rule of Civil Procedure 15 instructs a court to "freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2).  However, amendment "is not warranted absent some indication as to what [a plaintiff] might add to [its] complaint in order to make it viable." Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014) (quoting Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004)).  Accordingly, should Plaintiffs wish to amend, their motion must demonstrate how it will cure the deficiencies in its claims and that justice requires granting leave to amend.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss the amended complaint.  Plaintiffs' claims are dismissed without prejudice.  If Plaintiffs wish to amend their complaint, they shall move this Court to do so no later than August 1, 2017.  Otherwise the Court will enter an order dismissing Plaintiffs' claims with prejudice.  The Clerk of Court is respectfully requested to terminate the motion docketed at ECF No. 41.

**SO ORDERED.**

Dated:    New York, New York
          June 20 , 2017

                                  John F. Keenan
                          United States District Judge