**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------X
YIEN-KOO KING,                        :
NORTHWICH INVESTMENTS, LTD.,          :
and SOON HUAT, INC.,                  :
                                      :
                    Plaintiffs,       :
     -against-                        :
                                      :
ANDREW WANG, SHOU-KUNG WANG,          :
BAO WU TANG, JIAN BAO GALLERY,        :
ANTHONY CHOU, CHEN-MEI-LIN, WEI       :
ZHENG, YE YONG-QING, YUE DA-JIN,      :
and JOHN DOES 1-9,                    :
                                      :
                    Defendants.       :
--------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/26/2018

No. 14 Civ. 7694 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFFS YIEN-KOO KING,
NORTHWICH INVESTMENTS, LTD., and SOON HUAT, INC.:
     Sam P. Israel
     Timothy Savitsky

FOR DEFENDANTS ANDREW WANG, SHOU-KUNG WANG,
BAO WU TANG, and JIAN BAO GALLERY:
     Carolyn J. Shields
     Ying Liu

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Plaintiffs Yien-Koo King

("Y.K. King"), Northwich Investments, Ltd. ("Northwich"), and

Soon Huat, Inc. ("Soon Huat") (collectively, "Plaintiffs") in a

case that proves that family feuds are universal.  The motion is

for reconsideration of the Court's June 20, 2017 Opinion and

Order granting a motion by Defendants Andrew Wang ("A. Wang"),

individually and doing business as Bao Wu Tang, and Shou-Kung

Wang ("S.K. Wang"), individually and formerly doing business as

the Jian Bao Gallery (collectively, the "Wang Defendants") to dismiss the First Amended Complaint (the "amended complaint") with leave to replead. For the reasons that follow, Plaintiffs' motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from the allegations in the proposed amended complaint. This action concerns the estate of artist and collector, Chi-Chuan Wang ("C.C. Wang"). (Am. Compl. ¶ 2, ECF No. 36 (filed Sept. 27, 2016).) Plaintiff Y.K. King, a New York City resident, is the daughter of C.C. Wang; she brings this action—together with Northwich and Soon Huat, corporations that she and her husband, Kenneth King, own—to recover works of fine art formerly belonging to C.C. Wang's estate (the "Estate") or to Northwich and Soon Huat. (Id. ¶¶ 2, 12-14.)

Defendant S.K. Wang, a resident of Queens, New York, is the son of C.C. Wang, thus the brother of Y.K. King. (Id. ¶¶ 16, 44.) S.K. Wang is the sole owner of Defendant Jian Bao Gallery, an art gallery conducting business in New York. (Id. ¶ 23.) Defendant A. Wang, a New York City resident, is the grandson of C.C. Wang and the son of S.K. Wang. (Id. ¶¶ 15-16.) A. Wang is the sole owner of Defendant Bao Wu Tang, an art gallery conducting business in China. (Id. ¶ 22.) The amended complaint names fourteen additional Defendants ("the Straw Men

2

Defendants"), however, only A. Wang and S.K. Wang, individually and on behalf of Bao Wu Tang and Jian Bao Gallery, have appeared in this action.

C.C. Wang was a renowned Chinese-American artist and art collector who amassed over 400 fine and rare Chinese paintings, sculptures, and antiquities during his lifetime, valued at a total of $60 million. (Id. ¶¶ 25-26, 32.)  C.C. Wang died in 2003, but the Wang Defendants' alleged misconduct began in the 1980s and 1990s when S.K. Wang, working as his father's bookkeeper and assistant, embezzled 160 paintings from his father's collection. (Id. ¶¶ 34-35, 39.)  In 1997, when C.C. Wang discovered S.K. Wang's wrongdoing, he fired S.K. Wang and hired Y.K. King to run his affairs. (Id. ¶ 29.)  In this role, Y.K. King established CY Art Ltd. to facilitate management of C.C. Wang's artwork and collection. (Id. ¶ 30.)  CY Art Ltd. owned a safe deposit box that contained artwork belonging to C.C. Wang, Northwich, and Soon Huat. (Id. ¶ 31.)

C.C. Wang's health began to deteriorate and he was hospitalized in March 2003. (Id. ¶¶ 40-41.)  In April 2003, his doctors reportedly determined that he lacked the mental capacity to execute his own medical forms. (Id. ¶ 41.)  Sometime later in the spring of 2003, the Wang Defendants secretly moved C.C. Wang to S.K. Wang's home in Queens, New York to prevent further contact between C.C. Wang and Y.K. King. (Id. ¶ 44.)

Earlier, on January 31, 2003, Y.K. King took inventory of CY Art Ltd.'s safe deposit box and discovered that twenty-one paintings were missing—nine of the paintings are owned by Northwich, one is owned by Soon Huat, and the remaining eleven are owned by the Estate. (Id. ¶¶ 48-50.) A. Wang returned five of the paintings to Y.K. King many years later; the remaining sixteen have not been recovered by Plaintiffs or the Estate. (Id. ¶ 50.) Also on January 31, 2003, Y.K. King checked her father's apartment and discovered that an additional four paintings were missing—three of the paintings are owned by Northwich and one is owned by the Estate. (Id. ¶¶ 51-53.) During a sworn deposition in 2005, A. Wang admitted to taking the paintings from the safe deposit box, allegedly with the help of 96-year-old C.C. Wang, but he has since recanted his statements. (Id. ¶¶ 56, 66.)

C.C. Wang died on July 3, 2003. (Id. ¶ 70.) Thereafter, Y.K. King submitted to New York County Surrogate's Court a June 13, 2000 will and July 10, 2002 codicil that named her the executor and a principle beneficiary of the Estate, and entitled both Y.K. King and S.K. Wang to 35 percent shares of the Estate. (Id. ¶ 71.) Contemporaneously, the Wang Defendants produced a second will allegedly executed by C.C. Wang on February 18, 2003 (the "2003 will"), four months before his death. (Id. ¶ 72.) The 2003 will purports to disinherit Y.K. King, designate A.

Wang as executor, and name A. Wang, S.K. Wang, and Stephen Wang (A. Wang's brother) as chief beneficiaries. (Id. ¶¶ 74-75.) In July 2003, Y.K. King initiated Surrogate's Court proceedings in New York County to contest the 2003 will. (Id. ¶ 82.) On August 4, 2003, the Surrogate's Court issued temporary letters of administration to the Public Administrator and preliminary testamentary letters to A. Wang. (Id. ¶ 83.) A. Wang assumed the role of Estate fiduciary and exercised control over Estate assets. (Id. ¶ 85.)

Plaintiffs assert that A. Wang exploited his temporary status as Estate fiduciary to orchestrate a scheme by which the Wang Defendants used their galleries to sell the Estate's artwork to five "straw men" for deflated prices and then resell the paintings for greater amounts abroad (the "Straw Men Scheme"). (Id. ¶¶ 85, 105-107.) To orchestrate this scheme, the Wang Defendants reinvested the funds derived from the sale of the twenty-five artworks stolen in 2003 (including the five that A. Wang later returned) to fraudulently purchase Estate assets through straw men at artificially low prices. (Id. ¶ 103.) Between 2005 and 2009, A. Wang sold ninety-eight Estate paintings to five straw men who then resold the paintings for "astronomical resale values," with A. Wang pocketing the proceeds. (Id. ¶¶ 105, 111, 141.) According to Plaintiffs, the Estate received approximately $4 million from the Straw Men

Scheme "even though the true value of the sold works exceeds $40 million." (Id. ¶ 298.)  Plaintiffs did not discover until 2012 or 2013 that many of these artworks had been resold at Chinese auctions in 2008 and 2009, sometimes for as much as 8,000 percent of the price paid to the Estate. (Id. ¶¶ 153, 175, 290.)

The amended complaint asserts eleven causes of action relating to the stolen corporation- and Estate-owned artwork, including four claims under federal law for violations of the Racketeer Influence and Corrupt Organizations Act ("RICO") and seven claims under New York law for conversion, common law fraud and conspiracy to defraud, breach of fiduciary duty and aiding and abetting breach of fiduciary duty, replevin, violations of New York State Debtor and Creditor Law § 270, and one claim seeking to impose a constructive trust upon any property within A. Wang's control. (See id. ¶¶ 249-379.)

### B.    Procedural History

Plaintiffs filed their original complaint in this action on September 23, 2014. (See Compl., ECF No. 1 (filed Sept. 23, 2014).)  Only Y.K. King and her husband, Kenneth King (together "the Kings"), were named as plaintiffs. (See id.)  On November 21, 2014, Defendants moved to dismiss the complaint on several grounds, including:  (1) the Kings lacked standing to recover for all of their claims, (2) the Kings' claims fell within the probate exception to federal jurisdiction, and (3) the Kings

6

failed to properly allege a federal cause of action. (<u>See</u> Defs.'
Mot. to Dismiss, ECF No. 15 (filed Jan. 12, 2015).)  On July 13,
2015, the Court granted Defendants' motion and dismissed the
original complaint in its entirety for failure to state a claim
under Federal Rule of Civil Procedure 12(b)(6). (<u>See</u> Op. &
Order, ECF No. 27 (filed July 13, 2015).)  The Court found that
the Kings lacked standing to sue because corporations, and not
the Kings, owned the artwork. (<u>Id.</u> at 10.)  While Federal Rule
of Civil Procedure 17 typically permits a plaintiff to amend the
complaint to allow the real party in interest to join the
action, the Court denied this request because the complaint
failed to adequately plead closed-ended continuity as required
by the RICO statute. (<u>Id.</u> at 10, 15-16.)  The Court also ruled
that the probate exception did not strip federal jurisdiction
from the RICO claims because the Kings sought to recover damages
from the Defendants personally and did not interfere with
property in the custody of state probate court. (<u>Id.</u> at 11-12.)
Finally, the Court declined to exercise supplemental
jurisdiction over the Kings' state law claims given that the
Kings failed to state any federal claims upon which relief could
be granted. (<u>Id.</u> at 17.)

   The Kings appealed the Court's decision to the Second
Circuit. (<u>See</u> Notice of Appeal, ECF No. 29 (filed Aug. 12,
2015).)  On August 26, 2016, the Second Circuit affirmed in part

and vacated and remanded in part the Court's Opinion and Order
on Defendants' motion to dismiss. (See Summary Order, ECF No. 32
(filed Aug. 26, 2016).)  The Second Circuit panel affirmed the
Court's exercise of jurisdiction over the RICO claims as falling
outside of the probate exception to federal jurisdiction, but
vacated and remanded the Court's determination that the Kings
failed to adequately plead closed-ended continuity. (See id.)
The panel found that closed-ended continuity existed because, in
essence, the related predicates occurred over a substantial
period of time. (Id. at 3.)  The panel directed the Court to
permit the Kings to file an amended complaint to add the real
parties in interest and to consider whether exercising
jurisdiction over the Kings' state law claims would be
consistent with the probate exception. (Id.)

On September 27, 2016, Plaintiffs filed their amended
complaint, adding Northwich and Soon Huat as the real parties in
interest and removing Kenneth King. (See Am. Compl.)  The
amended complaint contains essentially the same claims but newly
alleges some claims by Y.K. King on behalf of the Estate, rather
than in an individual capacity. (See id. at 49, 54, 62.)  On
October 25, 2016, Defendants moved to dismiss the amended
complaint seeking dismissal on four separate grounds:  (1)
Plaintiffs lack standing to assert RICO claims, (2) Plaintiffs'
RICO claims are time-barred, (3) Plaintiffs' state law claims

fall within the probate exception to federal jurisdiction, and
(4) the Court should abstain from entertaining this action under
the Colorado River doctrine. (See Defs.' Mem. of L. in Support
of Mot. to Dismiss, ECF No. 42 (filed Nov. 10, 2016).) On April
26, 2017, while the motion to dismiss was pending, a jury in
Surrogate's Court found that the 2003 will was executed at a
time when C.C. Wang lacked testamentary capacity and was
procured by undue influence and fraud by the Wang Defendants.
Decree at 2-3, Proceeding to Probate Instrument Dated Feb. 18,
2003, Estate of Chi-Chuan Wang, No. 2003-2250/B (N.Y. Surr. Ct.
May 9, 2017). Surrogate Mella ordered that the 2003 will was
denied probate and revoked the preliminary letters issued to A.
Wang. Id. However, as of May 24, 2017, Y.K. King still had not
been issued letters of administration. (Oral Argument Tr. 19:22-
25, ECF No. 51 (filed June 14, 2017).)

On June 20, 2017, the Court granted Defendants' motion to
dismiss because (1) as of June 20, 2017, Y.K. King did not have
standing to sue on behalf of the Estate for stolen Estate
paintings, (2) all paintings owned by Northwich and Soon-Huat
were discovered stolen in 2003, and thus any RICO claims brought
by these Plaintiffs are time-barred, and (3) having dismissed
all RICO claims, the Court declined to exercise supplemental
jurisdiction over Plaintiffs' state law claims. (See Op. &
Order, ECF No. 53 (filed June 20, 2017).) The Court also

9

ordered that Plaintiffs had until August 1, 2017 to move to amend their complaint, if they wished to do so.

On July 5, 2017, Plaintiffs filed the instant motion for reconsideration, arguing that the Court overlooked facts and law in holding that Y.K. King does not have standing to sue on behalf of the Estate. On July 19, 2017, Plaintiffs appealed the Court's June 20, 2017 Opinion and Order to the Second Circuit. (See Notice of Appeal, ECF No. 57 (filed July 19, 2017).) On July 24, 2017, the Court reserved decision on Plaintiffs' motion for reconsideration and stayed Plaintiffs' time to amend pending the Second Circuit's decision on Plaintiffs' appeal. (See Order, ECF No. 60 (filed July 24, 2017).) On November 15, 2017, the Second Circuit dismissed Plaintiffs' appeal, holding that it lacked jurisdiction because a final order had not been issued by this Court. (See Mandate, ECF No. 62 (filed Nov. 15, 2017).)

On February 20, 2018, Plaintiffs informed the Court that on February 15, 2018, the Surrogate's Court issued preliminary letters testamentary to Y.K. King. (Feb. 20, 2018 Letter from Sam P. Israel to Hon. John F. Keenan, ECF No. 63 at 1 (filed Feb. 20, 2018).)

## II. Discussion

### A. Legal Standard

Reconsideration of a previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks omitted). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990). The major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Local Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters." S.E.C. v. Ashbury Capital Partners, No. 00 Civ. 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001). A court must "narrowly construe and strictly apply Local Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent the Rule from being used to advance different theories not previously argued." Fisk v. Letterman, 501 F. Supp. 2d 505, 530 (S.D.N.Y. 2007).

In deciding a motion under Rule 12(b)(6), the Court is entitled to consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Bais Yaakov of Spring Valley v. Alloy, Inc., 936 F. Supp. 2d 272, 277 (S.D.N.Y. 2013). "Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions." Lefkowitz v. Bank of New York, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009).

### B.    Y.K. King's Standing to Bring Claims on Behalf of the Estate

In its June 20, 2017 Opinion and Order, the Court held that Y.K. King did not have standing to bring claims on behalf of the Estate because she had not been named executrix or administratrix of the Estate, as required to bring suit on behalf of a decedent's estate under New York law. (See Op. & Order at 13-14.)  On February 15, 2018, after the 2003 will was held invalid, Y.K. King was appointed as the Estate's preliminary executrix.[1] Order for Preliminary Letters Testamentary, Probate Proceeding, Will of Chi-Chuan Wang, No. 2003-2250/I (N.Y. Surr. Ct. Feb. 15, 2018).  Plaintiffs argue

---

[1] The Court may take judicial notice of public records in related court proceedings in ruling on a motion to dismiss. Marks v. Energy Materials Corp., No. 1:14-CV-8965-GHW, 2015 WL 3616973, at *1 n.1 (S.D.N.Y. June 9, 2015).

that Y.K. King's appointment as preliminary executrix is "new evidence not available at the time" of the Court's June 20, 2017 Opinion and Order and, thus, is a potential ground for reconsideration.  When the basis of a motion for reconsideration is newly available evidence, the moving party bears the burden of establishing that the evidence is "truly newly discovered or . . . could not have been found by due diligence." United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983). The Court agrees that Y.K. King's appointment is new evidence not available to Plaintiffs at the time of Defendants' motion to dismiss, and will consider whether this new evidence justifies reconsideration.[2]

Under New York Surrogate's Court Procedure Act, preliminary letters testamentary "confer upon the person named therein . . . all the powers and authority . . . of an administrator." N.Y. SURR. CT. PROC. ACT. § 1412(3)(a) (McKinney 2018).  "New York law gives the power to bring claims for a decedent to the administrator of the estate." Garmon v. Cty. of Rockland, No. 10 CIV. 7724 ALC GWG, 2013 WL 541380, at *2 (S.D.N.Y. Feb. 11, 2013).  Accordingly, as preliminary executrix, Y.K. King now has standing to sue on behalf of the

---

[2] In light of Y.K. King's appointment as preliminary executrix, the Court need not consider Plaintiffs' standing arguments in support of their motion for reconsideration, as these arguments are now moot.

Estate. See, e.g., Ajnoha v. JC Penney Life Ins. Co., 480 F. Supp. 2d 663, 670 (E.D.N.Y. 2007) (plaintiff who was designated preliminary executor by Surrogate's Court "plainly ha[d] standing to pursue claims on behalf of [decedent's] estate").

Although "standing is to be determined as of the commencement of suit," Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.5 (1992), courts have the power to allow substitution of the real party in interest under Federal Rule of Civil Procedure 17(a)(3). Fletcher v. City of New London, No. 3:16-CV-241 (MPS), 2017 WL 690533, at *4 (D. Conn. Feb. 21, 2017). Under Rule 17(a)(3), "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); see also In re Vivendi Universal, S.A. Sec. Litig., 605 F. Supp. 2d 570, 584 (S.D.N.Y. 2009) ("[A] standing defect at the commencement of suit does not require dismissal of the action with prejudice. Should the real parties in interest . . . wish to . . . substitute for the current plaintiffs, the court should allow those parties a reasonable time to do so."). "An amendment under [Rule 17(a)] relates back to the date of initial filing of the action." Brohan on Behalf of Brohan v. Volkswagen Mfg. Corp. of Am., 97 F.R.D. 46, 49 (E.D.N.Y. 1983).

Several courts in this Circuit have allowed "substitution to replace invalid estate administrators" under Rule 17(a)(3). Fletcher, 2017 WL 690533, at *5. In Estwick v. U.S.Air Shuttle, plaintiff brought suit as "the executrix of the estate of [decedent]" prior to being named as administratrix and the defendant moved to dismiss for lack of standing. 950 F. Supp. 493, 498-99 (E.D.N.Y. 1996). The court held that any deficiency in the plaintiff's standing was cured by plaintiff's subsequent appointment as administratrix and explained that holding otherwise would be "contrary to the liberal policy underlying [Rule 17(a)]." Id. at 499. In Brohan on Behalf of Brohan v. Volkswagen Mfg. Corp. of Am., plaintiff brought suit on behalf of her husband's estate before she was appointed executrix. 97 F.R.D. 46, 48 (E.D.N.Y. 1983). Defendants moved to dismiss for lack of standing and plaintiff subsequently sought to amend to add herself as a plaintiff in a representative capacity after she was appointed executrix, almost three years after bringing suit. Id. The court allowed plaintiff leave to amend and held that "Plaintiff's lateness in obtaining and pleading her appointment as executrix is the kind of technical mistake apparently contemplated by Rule 17(a)." Id. at 49. The court noted that its holding was supported by the Advisory Committee Note accompanying the 1966 amendment to Rule 17(a), which stated that the rule was intended in part "to codify in broad terms the

15

salutary principle" of <u>Levinson v. Deupree</u>, 345 U.S. 648 (1953), in which the Supreme Court allowed a plaintiff whose appointment as estate administrator was defective at the outset of the lawsuit to amend his complaint to allege his new, correct appointment after the statute of limitations had run. <u>Id.</u>

The Court is persuaded by the rationale of these cases and by the policy underlying Rule 17(a). "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." <u>Fletcher</u>, 2017 WL 690533, at *6. Allowing Y.K. King to proceed with claims brought on behalf of the estate is essentially a technical change that in no way alters the factual allegations in the amended complaint. Although a district court "retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party . . . there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." <u>Advanced Magnetics, Inc. v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 20 (2d Cir. 1997) (internal quotation marks omitted). Here, allowing "substitution" of the real party in interest serves the interests of justice, especially where the delay in appointment as executrix was allegedly due to fraud on the part of Defendants. Further, Defendants are not prejudiced

by substitution "as they had clear notice of the claims against them in the initial complaint." Fletcher, 2017 WL 690533, at *6. Finally, Plaintiffs' request to substitute the real party in interest was made within a "reasonable time" under Rule 17(a)(3) because "no prejudice to [Defendants] has occurred and there is no evidence that the delay was a tactic undertaken in bad faith" on the part of Plaintiffs. Brohan on Behalf of Brohan, 97 F.R.D. at 50. The Court will allow Plaintiffs to "substitute" the real party in interest, Y.K. King as preliminary executrix, although the Court sees no need for Plaintiffs to further amend their complaint because Y.K. King already alleges some claims in the amended complaint on behalf of the Estate.

Accordingly, Plaintiffs' motion for reconsideration is granted only as to the issue of Y.K. King's standing to sue on behalf of the Estate, and the Court holds that Y.K. King now has standing to pursue RICO claims on behalf of the Estate. Defendants previously argued that all of Plaintiffs' RICO claims are time-barred, and the Court agreed with Defendants only as to claims related to the paintings owned by Northwich and Soon Huat, which were discovered stolen in 2003. (See Op. & Order at 20.) The Court will now decide whether Plaintiffs' RICO claims on behalf of the Estate are also time-barred.

**C.    Plaintiffs' RICO Claims on Behalf of the Estate are Timely Under the Separate Accrual Rule**

RICO claims are governed by a four-year statute of limitations which "begins to run when the plaintiff discovers or should have discovered the RICO injury." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998).  The limitations period begins to run when the plaintiff has "actual or inquiry notice of the injury." Id. at 60.  A plaintiff is charged with inquiry notice when "a reasonable person should have discovered the RICO injury." In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig., 850 F. Supp. 1105, 1118 (S.D.N.Y. 1993).  Plaintiffs initially filed their complaint in this matter on September 23, 2014.  Thus, if Plaintiffs had actual or inquiry notice of the alleged injuries before September 23, 2010, their RICO claims are time-barred unless an exception to the limitations period applies.

Plaintiffs argued in opposition to Defendants' motion to dismiss that the RICO claims pertaining to Estate-owned artwork sold through the Straw Men Scheme from 2005 to 2009 are not time-barred because, as alleged in the amended complaint, Y.K. King did not discover that these stolen paintings had been shipped to and sold in China until 2012 or 2013. (Pls.' Mem. of L. in Opp'n at 6-7.)  A plaintiff may assert a valid cause of action under the Second Circuit's "separate accrual rule" for

RICO claims, which provides that "a new four-year period is triggered each time the plaintiff 'discovers, or should have discovered, a new injury' caused by otherwise time-barred predicate acts." See Kerik v. Tacopina, 64 F. Supp. 3d 542, 558 (S.D.N.Y. 2014) (quoting Bingham v. Zolt, 66 F.3d 553, 559 (2d Cir. 1995); see also In re Merrill Lynch, 154 F.3d at 59 (noting that the RICO limitations period begins "afresh with each new injury"). For the rule to apply, the injury for which relief is sought must be "new and independent," and a plaintiff may still only recover for "injuries discovered or discoverable within four years of the time suit is brought." Bingham, 66 F.3d at 560-61.

In some cases, a defendant's continuing misconduct undertaken within a common scheme can produce separate injuries which each have independent limitations periods. See, e.g., In re Merrill Lynch, 154 F.3d at 59; Bingham, 66 F.3d at 559-61 (RICO action brought by estate timely where defendants employed a variety of schemes to divert funds from an estate and each diversion gave rise to a new civil RICO cause of action with a corresponding four-year limitations period). Plaintiffs allege that after Defendants sold the Estate paintings to Straw Men between 2005 and 2009, Defendants re-sold the paintings through the Straw Men Scheme for "astronomical resale values"—in some cases 8,000 percent higher than the price paid to the Estate—at

auctions in China, thereby defrauding the Estate of both property and revenue. (Am. Compl. ¶¶ 111, 153, 285, 298, 303.) Accordingly, each time Defendants re-sold the Estate property through the Straw Men Scheme and withheld the proceeds, the Estate suffered a new injury, which triggered a new four-year accrual period. The only question that remains is when Plaintiffs had actual or inquiry notice of these injuries.

Courts in this Circuit have declined to dismiss RICO claims as time-barred where it is plausible that a plaintiff could not have discovered a defendant's fraud scheme until sometime after the injury occurred. See e.g., State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 226 (E.D.N.Y. 2009) (rejecting defendants' argument that RICO claims were time-barred where defendants' scheme "was premised on secrecy" and plaintiff plausibly alleged that he could not have discovered defendants' scheme until sometime after the actual injury occurred). Plaintiffs allege that Y.K. King did not discover that the stolen Estate paintings sold through the Straw Men Scheme had been shipped to and sold in China until 2012 or 2013. (Am. Compl. ¶¶ 138, 142, 144, 153-154, 175-176, 204-206, 213-215, 283-284, 290, 292-293, 305.) According to the amended complaint, the Wang Defendants continually misled Y.K. King regarding the whereabouts of missing Estate paintings (see id. ¶¶ 257, 284, 306), and Y.K. King did not recognize A. Wang's

position on both sides of the Strawn Men sales until 2013 thanks to A. Wang's "successful efforts to conceal his fraudulent sales." (Id. ¶¶ 130, 299.)  Further, many of the paintings stolen through the Straw Men Scheme were re-sold at auctions in Hong Kong and Beijing, far from Y.K. King's home in New York City. (Id. ¶¶ 138, 142, 153-154, 175-176, 204-205, 206, 213-214.)  Accordingly, it is plausible that Y.K. King could not have discovered that the Estate paintings had been sold through the Straw Men Scheme until 2012 or 2013. See Turkish v. Kasenetz, 27 F.3d 23, 28–29 (2d Cir. 1994) (declining to decide whether the action was time-barred where plaintiffs alleged that defendants successfully concealed their fraud until well within the statute of limitations).  Thus, the Court finds that Plaintiffs' RICO claims brought on behalf of the Estate are timely under the separate accrual rule for RICO claims.

Because the Court finds that Y.K. King has alleged valid federal claims, the Court must now consider whether Plaintiffs have adequately alleged the remaining state law claims in the amended complaint.

### D.   Plaintiffs' State Law Claims

#### 1.   All Claims Brought by Northwich and Soon Huat are Time-Barred

Plaintiffs allege one claim by Northwich against A. Wang for common law fraud, and claims by all Plaintiffs, including

Northwich and Soon Huat, for (1) constructive trust, (2) conversion, (3) common law fraud and conspiracy to defraud, (4) replevin, and (5) violations of New York Debtor and Creditor Law § 270. In its June 20, 2017 Opinion and Order, the Court held that because all paintings owned by the corporations were discovered stolen in 2003 and were not re-sold through the Straw Men Scheme, all RICO claims brought by Northwich and Soon Huat are time-barred under the four year statute of limitations governing RICO claims. (See Op. & Order at 20.) Claims for conversion and replevin in New York are both subject to a statute of limitations period of three years. N.Y. C.P.L.R. § 214(3). Claims for common law fraud, constructive trust, and violations of New York Debtor and Creditor Law § 270 in New York are all subject to a statute of limitations period of six years. N.Y. C.P.L.R. § 213(1),(8); N.Y. DEBT. & CRED. L. § 276. Thus, at the latest, the claims brought by Northwich and Soon Huat were time-barred in 2009. Accordingly, all claims brought by Northwich and Soon Huat are dismissed as time-barred.

### 2. Probate Exception to Federal Jurisdiction

In its July 13, 2015 Opinion and Order, the Court held that, to the extent that the RICO claims seek damages from Defendants personally, the RICO claims did not fall under the probate exception to federal jurisdiction because these claims "are exactly the type of probate-related claims that Marshall

22

permits federal courts to address." (Op. & Order at 12.)  In
their motion to dismiss the amended complaint, Defendants argued
that Plaintiffs' state law claims are barred by the probate
exception on the ground that they essentially seek the return of
Estate property that remains under the control of Surrogate's
Court or the distribution of funds belonging to the Estate. See
Lefkowitz v. Bank of N.Y., 528 F.3d 102, 107 (2d Cir. 2007)
(noting that the plaintiff was attempting to "mask in claims for
federal relief her complaints about the maladministration of her
parent's estates").  The probate exception imposes a narrow
limitation on the exercise of federal jurisdiction:  a federal
court may not probate or annul a will, administer a decedent's
estate, or "dispose of property that is in the custody of a
state probate court." Marshall v. Marshall, 547 U.S. 293, 311–12
(2006).  "Determining whether [a] case falls within the probate
exception involves a two-part inquiry:  first, whether the
action requires 'the probate or annulment of a will [or] the
administration of a decedent's estate'; and second, whether the
action requires the court 'to dispose of property that is in the
custody of a state probate court.'" Groman v. Cola, No. 07–CV–
2635(RPP), 2007 WL 3340922, at *5 (S.D.N.Y. Nov. 7, 2007)
(quoting Marshall, 547 U.S. at 311–12) (alteration in Groman).
In Lefkowitz v. Bank of N.Y., the Second Circuit distinguished
between claims that seek "in essence, disgorgement of funds that

23

remain under the control of the [p]robate [c]ourt," which fall under the probate exception, and claims seeking personal damages from defendants, which do not. 528 F.3d at 107-08.

Plaintiffs allege six remaining state law claims: (1) constructive trust, (2) conversion, (3) common law fraud and conspiracy to defraud, (4) breaches of fiduciary duty and aiding and abetting breaches of fiduciary duties, (5) replevin, and (6) violation of New York Debtor and Creditor Law § 270. The Court will analyze the relief sought in each claim to determine whether the claims fall under the probate exception.

Plaintiffs' claim for constructive trust requests that the Court "impose a constructive trust upon any property within [A. Wang]'s custody or control which belongs to [the Estate] or derives from the sale or disposition of property belonging to the Estate." (Am. Compl. ¶ 333.) Plaintiffs' claim for replevin seeks an order compelling Defendants to "restore the [Estate] artworks to their lawful owner and pay attendant damages." (Id. ¶ 370.) Plaintiffs' claim for violation of New York Debtor and Credit Law § 270 seeks a judgment against Defendants "(a) setting aside the transfers of the Estate's assets . . . (b) ordering [Defendants] to account for and deliver the value of the property fraudulently conveyed . . . and (c) . . . attorney's fees." (Id. ¶ 379.)

All three of these claims seek to have the Court exercise
control over property that Plaintiffs allege rightfully belongs
to the Estate. Although some courts have held that "requests to
return property to an estate" do not fall within the probate
exception, this is true only if the res at issue was not part of
the Estate at the time of the decedent's death. See, e.g.,
Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010)
("Requests to return property to an estate or trust, rather than
to dispose of property currently part of an estate or trust, do
not fall within the probate exception because the res at issue
is not within the probate court's jurisdiction if it was not
part of the estate at the time of the decedent's death."); see
also Groman, 2007 WL 3340922, at *5–6 (finding that claim to
determine the true value of an asset possessed by the decedent
at death and sold as an estate asset fell within the probate
exception because the asset was part of the estate). Plaintiffs
allege that the stolen artwork belonged to the Estate at the
time of C.C. Wang's death. (Am. Compl. ¶¶ 105, 108.)
Accordingly, because the property and assets of the Estate are
under the control of the Surrogate's Court, the probate
exception applies to Plaintiffs' claims for constructive trust,
replevin, and violations of New York Debtor and Credit Law §
270. The Court dismisses these claims for lack of jurisdiction.

On the other hand, Plaintiffs' claims for conversion, common law fraud and conspiracy to defraud, and breaches of fiduciary duty and aiding and abetting breaches of fiduciary duties all seek actual damages from Defendants personally. (Id. ¶¶ 341, 344, 364.) Thus, these claims are not barred by the probate exception to federal jurisdiction. See, e.g., Lefkowitz, 528 F.3d at 108 ("The probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court." (quoting Marshall, 547 U.S. at 312)).

### E.   Colorado River Abstention

Finally, Defendants argued in their motion to dismiss that the Court should abstain from entertaining this action under Colorado River because "[t]he issues in this action will be decided in several pending Surrogate's Court proceedings," including "which will to admit to probate." (Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 13.)

A court may abstain under Colorado River only in "exceptional circumstances" and "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 817.  Before a court evaluates whether abstention is appropriate

26

under Colorado River, "it must make a threshold determination that the federal and state court cases are 'parallel.'" Shields v. Murdoch, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012). Proceedings in state and federal court are "'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" Id. "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Id.

Although there are similar issues and factual allegations in this action and the proceeding in Surrogate's Court, the parties and the claims are not parallel. This action includes parties, including the Straw Men Defendants, and claims, including federal RICO claims, not included in Surrogate's Court. Where, as here, the nature of the claims in question differs, cases are not parallel "despite the fact that both actions arise out of a similar set of circumstances." DDR Const. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011). In any event, even if the actions were parallel, the Colorado River factors weigh against abstention.

Although no one Colorado River factor is necessarily determinative, in determining whether abstention is appropriate,

the court should consider (1) whether the controversy involves a
res over which one of the courts has assumed jurisdiction, (2)
whether the federal forum is less inconvenient than the other
for the parties, (3) whether staying or dismissing the federal
action will avoid piecemeal litigation, (4) the order in which
the actions were filed, and whether proceedings have advanced
more in one forum than in the other, (5) whether federal law
provides the rule of decision, and (6) whether the state
procedures are adequate to protect the plaintiff's federal
rights. Woodford v. Cmty Action Agency of Greene County, 239
F.3d 517, 522 (2d Cir. 2001).

    The Colorado River factors weigh against abstention.
First, although property of the Estate is under the control of
the Surrogate's Court, to the extent that Plaintiffs' claims
seek return of this property, the Court has already dismissed
these claims as falling under the probate exception to federal
jurisdiction, and the remaining claims seek damages from
Defendants personally. Second, the federal court is no more
inconvenient than Surrogate's Court; both courts are located in
Manhattan and are about four city blocks from each other.
Third, the proceedings in Surrogate's Court to decide which will
to admit to probate have already concluded, thus limiting the
possibility of piecemeal litigation. Fourth, although the
proceedings in Surrogate's Court are further along, both federal

and state law provide the rule of decision in this action and
"the presence of federal-law issues must always be a major
consideration weighing against [abstention]." <u>Niagara Mohawk</u>
<u>Power Corp. v. Hudson River-Black River Regulating Dist.</u>, 673
F.3d 84, 103 (2d Cir. 2012).  Finally, the Surrogate's Court
action cannot adequately protect Plaintiffs' federal rights
because this action provides possible remedies of treble damages
(Am. Compl. ¶ 322), which are not available in Surrogate's
Court. <u>See</u> <u>Frydman v. Verschleiser</u>, 172 F. Supp. 3d 653, 666-67
(S.D.N.Y. 2016).  Accordingly, the Court holds that <u>Colorado</u>
<u>River</u> abstention is not appropriate.

### Conclusion

For the foregoing reasons, the Court grants Plaintiffs'
motion for reconsideration on the issue of Y.K. King's standing
to bring claims on behalf of the Estate.  The Court finds that
Y.K. King has standing to pursue claims on behalf of the Estate,
and that the RICO claims brought on behalf of the Estate are
timely.  The Court also holds that it has jurisdiction over
Plaintiffs' state law claims brought by Y.K. King on behalf of
the Estate for conversion, common law fraud and conspiracy to
defraud, and breaches of fiduciary duty and aiding and abetting
breaches of fiduciary duties.

However, the Court dismisses all state law claims brought
by Northwich and Soon Huat as time-barred, and dismisses

Plaintiffs' claims for replevin, constructive trust, and violations of New York Debtor and Creditor Law § 270 as falling under the probate exception to federal jurisdiction. Defendants shall file an answer to Plaintiffs' remaining claims by April 27, 2018. The Clerk of Court is respectfully requested to terminate the motions docketed at ECF Nos. 54 and 61.

**SO ORDERED.**

Dated:    New York, New York
           March 2 6 , 2018

                                  John F. Keenan
                        United States District Judge