KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
COUNSELORS AT LAW
1700 BROADWAY, 42ND FLOOR
NEW YORK, NEW YORK 10019
WWW.KUSKLAW.COM
———
212/400-4930

October 12, 2018

BY ECF

Hon. James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 21-D
New York, New York  10007-1312

      Re: King v. Wang et al.
        <u>No. 14-cv-07694 (JFK-JLC)</u>

Dear Judge Cott:

   I am counsel to Defendants Andrew and Shou-Kung ("SK") Wang, and write in response to the Letter-Motion requesting a pre-motion conference submitted by counsel for Plaintiff Yien-Koo ("YK") King on October 10, 2018. As the Letter-Motion merely requests a conference rather than substantive relief, Defendants do not oppose the request. I write, however, to address three issues, as well as to apprise the Court of Defendants' positions, so as to better enable a productive pre-motion conference.

   **First**, with respect to scheduling, I am unfortunately engaged in an on-going custody trial in Nassau County Family Court, which the judge presiding over the trial just announced would be continuing day-to-day from October 11, 2018 until complete, beginning at 2:00 p.m. each day. Thus, I would ask that the conference be scheduled for early in the morning, to avoid conflicting with that trial. Relatedly, as discussed below, my wife had a c-section on the morning of September 25, 2018, and we have a scheduled follow-up appointment the morning of Wednesday, October 17. I therefore ask that the conference be scheduled for a different day.

   **Second**, with respect to the accusation of "delay": As an initial matter, it is factually incorrect to claim that no discovery has been provided. These parties have been engaged in a decade and a half of litigation and the Wangs have turned over thousands of documents in connection therewith; we have deemed all of that produced in this action. Moreover, regarding timing, our interrogatory responses were served on September 21, 2018 and our document responses were served on September 24, 2018. On September 24, 2018, Plaintiff's counsel sent a

Hon. James L. Cott
October 12, 2018
Page 2

deficiency email demanding a response within one business day. As I am an Orthodox Jew and September 24 was the first day of Sukkot, I did not receive that email until the evening of September 25, after the holiday ended and I was able to check my email. In fact, that did not occur until late at night on September 25, because of a family medical emergency: my wife, who was 8 months pregnant with our daughter, Miya, had to have an emergency c-section. To call it terrifying would be an understatement; I went into the operating room convinced my daughter would not make it, and she in fact had to be resuscitated at birth, so I had spent all day at the hospital with my wife and daughter. I informed Mr. Israel and Mr. Savitsky that night that, in light of the medical emergency, I had not yet been able to give deep attention to their deficiency letter, but would be able to have a substantive response within a day or two.

Mr. Israel's response began "[y]our congested schedule is of your own doing. You continue to advance excuses for delays," and deteriorated from there into accusations of "game playing." Regardless, I provided an initial substantive response at 1:32 p.m. on the 26th, and explained that I was heading to the hospital but would have a fuller response later. Mr. Savitsky replied with additional case citations, so after reviewing those cases, I provided a fuller substantive response on the evening of September 27th. Due to the impending Jewish holiday (of Simchat Torah) on Monday and Tuesday of the next week, necessary medical appointments for my wife and daughter on Wednesday, and a trial on Thursday, I proposed Friday, October 5, for our meet and confer – and was again met with accusations from Mr. Israel that I was playing "three card monte" with my need to be involved in the meet and confer because I was "intent on delay," and insistence that the meet and confer proceed without me on Monday or Tuesday. While I do not understand what relevant strategic gain there could possibly be from a three-day "delay," I have proffered my apologies to opposing counsel that my wife and daughter's medical emergency would cause such delay in the progress of this litigation.

**Third**, for purposes of judicial economy, any pre-motion conference should also encompass the subject of Plaintiff's subpoenas to Defendants' various attorneys, seeking clearly privileged testimony and documents such as "all documents concerning" Andrew or SK Wang or their wives, which is likely to be the subject of a Letter-Motion to be filed Tuesday, October 16. That subject was also discussed during the parties' two-hour meet and confer on October 5. When I asked that Plaintiff respond to our proposal for limiting the subpoenas and avoiding a motion to quash by Monday, October 15, Mr. Israel responded by mockingly saying "I can't get you a response by then. Somebody in my family has something to do that week, and it's going to take up all my time." In response, I informed Mr. Israel that I was happy to give him any extension of time he needed if he truly had a family emergency, but we would also need to correspondingly extend the time for the attorneys to respond to the subpoenas, and that if we did not receive a response by the 15th, we were at an impasse and would move to quash. To date, Plaintiff has not yet responded, and has indeed served an additional attorney subpoena, and we thus anticipate filing a Letter-Motion on Tuesday.

**Finally**, with regard to the substance of the dispute regarding Plaintiff's document demands and interrogatories, it primarily revolves around three issues. First, with respect to the interrogatories, Local Rule 33.3. In the words of Plaintiff's own counsel in one of the deficiency

Hon. James L. Cott
October 12, 2018
Page 3

emails, Plaintiff demanded (and believed they were entitled by interrogatory to) "a list" of paintings held or sold by SK and Andrew Wang, among other information not allowed to be discovered by interrogatory pursuant to the Local Rules. During our meet and confer, Plaintiff's counsel walked away from some of those requests and recast others (such as a request for various information about the buyers of the paintings at issue in the alleged strawman sale, such as their employment history and relatives) as a distinct request for the names of separate witnesses, effectively validating Defendants' objection that what had been denominated as subparts of a single interrogatory were in fact distinct interrogatories. As a result, Defendants have agreed to supplement their responses to some but not all of the interrogatories.

Second, with regard to the breadth of the document requests and interrogatories, Plaintiff believes that the fact that they've alleged RICO claims entitles them to all information about every personal or business account or asset Defendants have. That is simply not the law; rather, Plaintiff must make a preliminary showing of the relevance of specific accounts or transactions before such discovery is allowed, and one that rises above mere speculation. *See, e.g., A. Farber & Ptnrs., Inc. v Garber*, 234 FRD 186, 191 (C.D. Cal 2006) (Plaintiff entitled to discovery of allegedly "personal accounts" after having made sufficient "preliminary showing" that they were related to the alleged RICO scheme by presenting testimony of Defendants' accountant to that effect). Similarly, the *Angermeir* case cited in Plaintiff's letter involved requests for "a specific set of highly relevant documents" tied to the specific allegations of the complaint: handwriting exemplars relating to the plaintiffs' claims that their signatures had been forged, credit documents relating to their claims that the fraud had damaged their credit, etc. *Angermeir v. Cohen*, No. 12-CV-55 KBF, 2015 WL 3766683, at *2 (S.D.N.Y. June 17, 2015), *aff'd sub nom. Bhagwanani v. Brown*, 665 F. App'x 41 (2d Cir. 2016). Here, in contrast, Plaintiff has engaged in pure speculation, including accusing Andrew, acting as Trustee of the "Jie Wang Trust", of purchasing a roughly $4,000,000 property in Roslyn Harbor as Trustee of a Trust in his wife's name; Jie Wang is not his wife and the home has nothing to do with Andrew's family. As this example illustrates, while conducting the necessary preliminary discovery before seeking full disclosure of all of Defendants' accounts *may* eventually support the overbroad fishing expedition Plaintiff currently seeks (it will not), Plaintiff simply is not there yet.

Similarly, and third, with respect to paintings, the discovery Plaintiff seeks is vastly overbroad, encompassing a 15-year period without regard to relevance, and Plaintiff has both refused to limit it and failed to justify it. Plaintiff's purported justification for the scope of the requests is that Andrew's involvement in art sales before the alleged strawman purchases are relevant to showing his expertise in the market, and his post-sale involvement is relevant to showing "laundered funds". But this: (a) does not account for the identical requests to SK (whose "expertise" not even Plaintiff contends is relevant); (b) does not support the 15-year scope of the request; and (c) puts the cart well before the horse in that Plaintiff has not established any strawman sales generating funds for Defendants to "launder". Moreover, Plaintiff's "money laundering" theory has no limiting principle whatsoever; according to it, they are entitled to all documents about any asset the Wangs have ever owned or sold or purchased over the last 15 years, no matter how far afield from the alleged strawman scheme that is the only factual claim in this action, because it might, possibly, conceivably, have been obtained from the proceeds of later selling those paintings

or been the source of funds to purchase them. That is the definition of a "fishing expedition" and it should not be allowed. *See Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) ("Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition"); *Sirazi v. Panda Express, Inc.*, No. 08 C 2345, 2009 WL 4232693, at *4 (N.D. Ill. Nov. 24, 2009) (collecting cases).

The discovery requests are overbroad, and should be reasonably limited to meet the mandate of Rule 1 while still allowing Plaintiff to pursue her (meritless) claim. An amended chart detailing the disputes, which accurately reflects Defendants' positions (rather than merely copying and pasting language from the objections while providing full explanations for only Plaintiff's position) is annexed hereto as Exhibit 1.

Respectfully submitted:

Kamerman, Uncyk, Soniker & Klein P.C.

By:     /s/Akiva M. Cohen
Akiva M. Cohen (AC2400)
Attorneys for Andrew Wang and
   Shou-Kung Wang
1700 Broadway, 42nd Floor
New York, New York 10019
(212) 400-4930
Fax: (866) 221-6122

AMC:cl
Encl.

cc:   Sam P. Israel, Esq. (via ECF)
      Carolyn Shields, Esq. (via ECF)