

SAM P. ISRAEL
FOUNDER & MANAGING PARTNER

Eleonora Zlotnikova
Timothy Foster
Timothy Savitsky
David Hrovat
*Associates*

**BY ECF**
Hon. James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 21-D
New York, NY 10007-1312

December 12, 2018

Re: <u>King v. Wang et. al.</u> No. 14-cv-07694 (JFK-JLC)

Dear Judge Cott,

I write on behalf of Plaintiff Yien-Koo King[1] to seek judicial relief in connection with our ongoing disputes over production and interrogatory responses with counsel for defendants Andrew and Shou-Kung Wang.[2] Whereas the Defendants' counsel, Kasowitz, Benson, and Torres, LLP ("Kasowitz"), has actively frustrated our discovery efforts by subverting our attempts to gain critical evidence from third-party witnesses and coaching their responses, its clients have demonstrably lied in interrogatory responses and intentionally withheld and/or spoliated records, accounts, and other evidence (which we learned of through independent means). We respectfully submit that another discovery conference is necessary to address these matters.

*The December 4th Ressler letter [ECF No. 134]*

Regrettably, I find it necessary to first address the deeply troubling remarks made about me by Kasowitz's Mark Ressler in the Defendants' December 4th letter motion. [ECF No. 134]. While I have not exchanged more than a few words with this lawyer (his vitriol is by his own admission based on hearsay attributed to his colleague Akiva Cohen), I find Mr. Ressler to be aggressive and prone to deception. In fact, at the November 27th conference with Judge Keenan, Mr. Ressler was asked to be more civil and less accusatory in his letters to the Court. That he has since taken to such extreme and baseless hyperbole about my conduct is a perfect example of *protesting too much*. In truth, I have given Mr. Ressler no cause to say anything about me other than (1) I observed that his client Andrew Wang is currently facing jail time for his willful, premeditated, and perjurious contempt of a Surrogate's Court order[3] and (2) I directly addressed his firm's repeated interference

---

[1] Hereinafter referred to as "King" or "Plaintiff."
[2] Hereinafter referred to as the "Wangs" or the "Defendants."
[3] Andrew Wang, acting in his former role as Estate fiduciary, physically stole <u>millions</u> of dollars' worth of classical Chinese paintings. Though he signed a document admitting to receiving the paintings (and

Hon. James L. Cott
United States District Court        Re: Case No. 14-cv-07694 (JFK-JLC)           12/12/18

with the Plaintiff's properly issued subpoenas. The latter seems to be a core legal strategy for the Wangs' legal team since apparently it was my observation of this conduct that occasioned Mr. Ressler's personal attacks.

I would have the Court know that I have been admitted *pro hac vice* in nearly half of the state and federal court jurisdictions in the United States and am a member of the bar of the United States Supreme Court. In thirty years of practice, I have neither been sanctioned nor disciplined in any court, nor have I come upon someone so indifferent to the limits of zealous advocacy. For instance, Mr. Ressler's letter [ECF No. 134] indirectly accuses me of anti-Semitism. Had he asked me directly, as a Jew, I could have advised him from personal experience about what anti-Semites actually do. Comprising aught but an unprofessional and unwarranted personal attack, Mr. Ressler's missive is not only an embarrassment for his law firm but a defamatory stain on my public identity.

## *Discovery Disputes*

The Plaintiff's original discovery demands extended to information concerning <u>all</u> classical Chinese paintings, all corporate records, and all trust records controlled by the Defendants. *See, e.g.*, <u>Exhibit A</u> (Pl. Doc. Demands Nos. 119-132). Full access to the bank and asset records of the Defendants' multiple corporate and trust entities is necessary to unravel byzantine arrangements designed to shield from scrutiny a pattern of self-dealing and the profits achieved thereby. We need to uncover the Defendants' hidden multi-million-dollar gains (stored in companies in Hong Kong, China, the United States, and the British Virgin Islands) achieved by fraud, as well as the balance of illicit financial transactions central to our prosecution of them for RICO violations. The Defendants' discovery responses, however, have frustrated our efforts to do so. Therefore, we seek an order compelling production of previously requested information and documents.

### i.    *Deficiencies of Interrogatory Responses*

In an attempt to defeat our ability to prove their self-dealing and RICO violations, the Defendants continue to withhold the identities of financial accounts for which they have been signatories since 2003. Though Andrew Wang responded to his interrogatories by providing a list of JP Morgan Chase accounts he is a signatory to, he has failed to disclose overseas accounts which we know to exist and for which he is a signatory. *See* <u>Exhibit B</u> (excerpt from Andrew Wang's responses to interrogatories dated Nov. 6, 2018). For his part, Shou-Kung Wang has not disclosed *any* accounts over which he has control in response to the Plaintiff's interrogatories. It has become clear that the Defendants are hiding corporate entities, accounts, paintings, and assets, all of which provide proof of their self-dealing, by lying in their discovery responses.

---

initialed his name next to each listed work), he later testified under oath that he never received them. Three eye-witnesses saw him personally take them and he displayed the works publicly at an exhibition in China in 2009. In the Surrogate's Court trial, the jury was presented with evidence of his thefts and currently there is a pending application to incarcerate and fine Andrew Wang in connection with the thefts.

2

Hon. James L. Cott
United States District Court        Re: Case No. 14-cv-07694 (JFK-JLC)          12/12/18

    We therefore seek an order compelling Andrew Wang and Shou-Kung Wang to include in their interrogatory responses all financial accounts—whether trust, corporate, or personal and whether domestic or foreign—which they have been signatories to since 2003 as demanded in King's first set of interrogatories from August. We further request that the Defendants identify the location(s) at which they store classical Chinese art, in accordance with the Court's order dated December 5th [ECF 135].

    *ii.*    *Deficiencies of Document Demand Responses*

    Though we received approximately two dozen pages of financial records (relating to only a small fraction of the Defendants' accounts) this past Friday, we did not receive corporate, trust, or financial documents sufficient to conduct the necessary accounting of the Defendants' financial activities as they relate to their fraudulent acquisition and disposition of Estate assets. There is a vast network of international corporations and accounts which the Defendants (both U.S. citizens) have demonstrable control over, but for which they are simply refusing to provide documentation. Their hope is that King does not know, and will not find out, about their off-shore assets.

    Instead, we have recently confirmed that the Wangs have been using circuitous international wire transfers among nearly a dozen accounts to move and hide the fraudulent proceeds of their RICO enterprise. The limited financial documents produced by the Wangs (along with evidence gleaned from other sources) show that millions of dollars suddenly appear in their disclosed accounts on an "as needed" basis. For example, when Andrew Wang, as trustee of the Shou-Kung Wang Irrevocable Trust (the "SK Trust"), purchased a $5.9 million home for himself in 2013, the entire $5 million closing price was wired from an overseas account into the SK Trust's otherwise-empty account four days before the closing date. Likewise, when Shou-Kung's wife purchased a $1.4 million condo in 2015, the entire closing price was wired from an overseas account into her account three weeks before the closing. Though they were demanded, no account statements (domestic or otherwise) for Shou-Kung Wang or his wife were produced for these periods. Likewise, no overseas accounts have been disclosed by any Defendants, even though such accounts are clearly the sources of their wealth.

    Additionally, the Defendants still refuse to produce the formational documents for the Shou-Kung Wang and Jie Wang Irrevocable Trusts (together, the "Trusts") which they have used to buy property and move millions of dollars in assets to and from China, Hong Kong, and the United States. Pl. Doc. Dem. No. 121 ("All Documents related to any irrevocable or revocable trust of which you are, or were ever, either (a) a beneficiary or (b) a fiduciary."). These are active, U.S.-based Trusts under the Defendants' control with significant holdings; there is no credible reason for why their formation records have not been produced now four months after they were requested. The documents are certain to give insight into the trajectory of specific assets misappropriated by the Wangs from the Chi-Chuan Wang Estate. *See e.g., United States v. Ewings*, 936 F.2d 903 (7th Cir. 1991) (evidence of a sudden "lavish lifestyle" can be "probative of participation in [a] crime" which financially enriched a person, such as a "bank robbery."); *United States v. Trudo*,

3

Hon. James L. Cott
United States District Court      Re: Case No. 14-cv-07694 (JFK-JLC)          12/12/18

449 F.2d 649, 651 (2d Cir. 1971) (evidence of post-robbery "sudden acquisition of wealth" probative to establish defendant's identity as one of the robbers: "Trudo had a very meager income in the fall of 1969 and lived very modestly. In the weeks following the robbery there was an abrupt change in his spending habits. He purchased a used car for $500 and gave a $100 gift to a girlfriend."). Because the Defendants have refused to produce these for months and have not included them in their most recent production, we seek leave to move for an order compelling their production.

    Likewise, the Defendants have failed to produce any of the records for the corporations they control (as officers and shareholders)—materials we have been seeking since August. Pl. Doc. Dem. No. 122 ("All Documents related to any corporate entity of which, since 2003, You have either (a) held shares or (b) held corporate office."). Though King has enough information and documentation to know that the Wangs' handling of their finances is designed to hide assets, accounts, and corporate holdings, she does not have enough information to see the full picture of how the RICO enterprise operates. We need this information to make sense of the circuitous method of payments the Wangs have used to purchase New York real property with funds achieved on sales of artwork procured by defrauding the Estate. *Trudo*, 449 F.2d at 651.

    In sum, we seek an order compelling the production of **(a)** the formational documents and balance sheets for <u>all</u> corporate and trusts entities in which either of the Defendants are or were officers, shareholders, fiduciaries, or beneficiaries since 2003 as well as the identity of any corporate/trust financial records that have been destroyed. Exh. B (Pl. Interr. No. 8 (requesting the Defendants identify the manner in which they store "financial records and documents related to the purchase, sale, storage, transfer, consignment, or display of Chinese paintings [whether on Your own behalf or on behalf of any other person or entity]" and to state if, how and when any records responsive to Interr. No. 8 were destroyed). We further seek an order which compels the production of **(b)** any and all statements for the Defendants' personal, trust, or corporate accounts indicating asset transfers in excess of $200,000.00 for the years 2005, 2007, 2009, 2010, 2011 2013, 2014, and 2015. *See* Exh. A.

    Finally, during our conference on October 23rd, the Court initially limited the Defendants' discovery obligations concerning art to assets that had been listed on the Alan Appel inventory of possible estate assets. We renew our request for an order requiring production of **(c)** documents concerning all of Defendants' art holdings, not just former Estate assets. Such assets comprise important evidence because classical Chinese art is rare and extraordinarily valuable. Just like their other securities and financial accounts, the Defendants' art assets are relevant and non-privileged. Because the Wangs are accused of selling the self-dealt assets to purchase different works of classical Chinese art not subject to direct investigation and because their corporations, trusts, and art business are financially intertwined, we need the entirety of the Wangs' Chinese art/financial records to understand how their RICO enterprise functions and to show that they are liable since they profited from the theft of Estate assets. *See,.e.g.*, *Conopco, Inc. v. Wein*, 2007 U.S. Dist. LEXIS 53313, 2007 WL 2119507 (S.D.N.Y. Jul. 23, 2007) (Katz,

4

J.) (where the information sought is not strictly personal because it involves assets alleged to have derived from RICO activity, production of allegedly personal financial records is appropriate).

    iii.    *Interference with Third Party Discovery*

We recently learned that the Kasowitz firm unilaterally called a third-party witness due to be deposed on December 13, 2018 (pursuant to third-party subpoena from October) to orchestrate the cancellation of her appearance. Once the Kasowitz lawyers spoke to the subpoenaed witness, we received an email from Ms. Sondra Grigsby of that firm explaining that the witness (Elin Ewald of O'Toole Ewald Art Associates, Inc.) was not available on the scheduled date, had never agreed to be deposed on that date, and was unavailable for the remainder of the year due to her congested schedule. Yet contrary to Ms. Grigsby's email, we had confirmed the December 13th deposition date with Ms. Ewald (i) in writing, (ii) over the phone, and (iii) in person. Thus, in response to Kasowitz's email, Timothy Savitsky (of our firm) called Ms. Ewald only to be informed that she <u>was</u> available on December 13th. Ms. Ewald also confirmed that she had agreed to that date and is available on other dates besides during the weeks leading to the end of the year. In order to strengthen their position to delay the deposition, Kasowitz lied to us.

We raise this matter not to quibble about deposition scheduling, but because Kasowitz has demonstrated a pattern of interference with properly issued process to hamstring our discovery of evidence and questioning of subpoenaed witnesses.[4] Behind the scenes gaming of witnesses to frustrate discovery demands will continue to prejudice King and waste both parties' resources unless the practice is stopped. Therefore, we respectfully request that the Court give guidance and instruction on the permissibility of this tactic since the Defendants' lawyers have rejected our concerns out of hand.

By reason of the foregoing Plaintiff King respectfully requests that a pre-motion conference be convened regarding the discovery defaults raised herein. We thank Your Honor for the Court's attention to the forgoing.

                                       Respectfully submitted:

                                       Sam P. Israel, P. C.

                                       **By:**    */s/Sam P. Israel*
                                       Sam P. Israel (SPI0270)
                                       Attorneys for Plaintiffs
                                       180 Maiden Lane, 6th Floor
                                       New York, New York 10038
                                       T: 646-787-9880 | F: 646-787-9886

---

[4] For example, as addressed in our earlier letter of December 4, 2018 [ECF 133], Kasowitz had previously contacted third-party witnesses and interfered with our subpoena commands without first approaching us or accurately representing what instructions they had given to the third-parties.

Hon. James L. Cott
United States District Court       **Re: Case No. 14-cv-07694 (JFK-JLC)**            **12/12/18**

cc.     All counsel of record [via ECF]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YIEN-KOO KING,

                    **Plaintiff,**

  -against-

ANDREW WANG, SHOU-KUNG WANG, BAO WU TANG, JIAN BAO GALLERY, ANTHONY CHOU, CHEN-MEI LIN, WEI ZHENG, YE YONG-QING, YUE DA-JIN and JOHN DOES 1-9,

                    **Defendants.**

1:14-Civ-07694-JFK

**PLAINTIFF YIEN-KOO WANG KING'S FIRST DEMAND FOR INSPECTION OF DOCUMENTS AND THINGS TO DEFENDANT ANDREW WANG**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Yien-Koo Wang King ("King") demands that defendant Andrew Wang ("Andrew") produce for inspection and copying, within 30 days of the date of service of this demand, and at the office of Sam P. Israel, P.C., 180 Maidan Lane, 6th Floor, New York, NY 10038, the following documents and things in the possession, custody, or control of Andrew, his agents, or attorneys.

## DEFINITIONS

1. "Document" and "Documents" have the broadest possible construction within applicable rules, and shall mean any writing, recording, electronically stored information, painting, artwork, or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to: correspondence, memoranda, notes, messages, diaries, minutes, books, reports, exhibition catalogues, auction catalogues, letters, charts, ledgers, invoices, computer printouts, video recordings, works of art, paintings, news articles, publications, computer files, pamphlets, emails, text messages, drafts of contracts, receipts, sales records, and calligraphy, images, or inscriptions painted or written on wood, silk, paper, cloth, or carved into wood, stone, or clay. A Document bearing notations, markings or writing of any kind different from the original shall be treated as an original Document.

**DEMAND NO. 117:**

All documents related to Yi Lin, Esq.

**DEMAND NO. 118:**

All Documents related to Lau & Associates, P.C. located at 13347 Sandford Ave., Flushing, N.Y., 11355.

**DEMAND NO. 119:**

All Documents related to the Shou-Kung Wang Irrevocable Trust including creation Documents, financial account statements since its formation, and Documents sufficient to show its complete asset ownership and transaction history.

**DEMAND NO. 120:**

All Documents related to the Jie Wang Irrevocable Trust including creation Documents, financial account statements since its formation, and Documents sufficient to show its complete asset ownership and transaction history.

**DEMAND NO. 121:**

All Documents related to any irrevocable or revocable trust of which you are, or were ever, either (a) a beneficiary or (b) a fiduciary.

**DEMAND NO. 122:**

All Documents related to any corporate entity of which, since 2003, You have either (a) held shares or (b) held corporate office.

Dated: New York, New York
August 8, 2018

**SAM P. ISRAEL**, **P.C.**
By: */s/ Sam P. Israel*

Sam P. Israel, Esq. (SPI 0270)
180 Maiden Lane, 6th Floor
New York, New York 10038
Main-646-787-9880; Fax: 646-787-9886; Email:
SAMISRAEL@SPI-PC.COM
*Attorneys for Yien-Koo Wang*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **YIEN-KOO KING, NORTHWICH INVESTMENTS, LTD., and SOON HUAT, INC.**<br><br>                              **Plaintiffs,**<br><br>              -against-<br><br>**ANDREW WANG, SHOU-KUNG WANG, BAO WU TANG, JIAN BAO GALLERY, ANTHONY CHOU, CHEN-MEI LIN, WEI ZHENG, YE YONG-QING, YUE DA-JIN and JOHN DOES 1-9,**<br><br>                              **Defendants.** | **1:14-Civ-07694-JFK** |

## PLAINTIFF YIEN-KOO WANG KING'S SECOND DEMAND FOR INSPECTION OF DOCUMENTS AND THINGS TO DEFENDANTS ANDREW WANG AND SHOU-KUNG WANG

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Yien-Koo Wang King ("King") demands that defendants Andrew Wang ("Andrew") and Shou-Kung Wang ("Shou-Kung") produce for inspection and copying, by November 6, 2018 and at the office of Sam P. Israel, P.C., 180 Maidan Lane, 6th Floor, New York, NY 10038, the following documents and things in the possession, custody, or control of Andrew, his agents, or attorneys. [1]

### DEFINITIONS

1. "Document" and "Documents" have the broadest possible construction within applicable rules, and shall mean any writing, recording, electronically stored information, painting, artwork, or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole

---

[1] These requests are propounded in accordance with the discovery order rendered on the record by Hon. James L. Cott on October 23, 2018. With respect to the previously issued Document Demand <u>Nos. 104-118</u> (concerning real estate transactions) the Court directed the Plaintiff to define the precise financial information being sought. Oct. 23, 2018 Hr. Trans. at 58-59. With respect to Document Demand <u>Nos. 119-122</u> the Court directed the Plaintiff to specifically define which financial documents related to trust and corporate entities are being sought. Oct. 23, 2018 Hr. Trans. at 60.

Street, Unit 39F. To the extent the account has been closed, set forth the identity of all successor accounts (by (i) account number, and (ii) account holder) to which its balance was transferred.

Financial information on any produced records which is not responsive to this or any of the other request herein may be redacted.

**DEMAND NO. 128(b)**:

Financial records which reflect the opening and closing balances for the account identified in 128(a) for the 45 days prior to and 45 days ensuing the sale of 524 East 72nd Street, Unit 39F.

**DEMAND NO. 128(c)**:

Financial records of any account(s) identified in Your response to Demand No. 126(a) which reflect all debits or deposits to or from another individual person, entity, or account which, when aggregated, exceed $200,000.00 over any three-month period in 2005.

> Example 1: Bank records reflecting a wire of $201,0000.00 on January 1, 2005 between the account identified in Your response to Demand 125(a) and Citibank Account No. 1234567890 are responsive.
>
> Example 2: Bank records concerning three checks of $70,000.00 each deposited into the Demand 125(a) account(s) on January 1, 2013, February 1, 2005, and March 1, 2005, respectively, are responsive.

**DEMAND NO. 129**:

All financial records reflecting transactions of any kind between a financial account You own or control and any J.P. Morgan account with an account number or wire coordinates which include "8480185540."

**DEMAND NO. 130**:

Financial records from any financial account You own or control for the months of January 2005, February 2005, March 2005, September 2005, February 2006, and August 2009 (*i.e.*, the months during which the Estate sales at issue in this action occurred) which reflect debits or deposits to or from another individual person, entity, or account which, when aggregated exceeds $200,000.00.

EXHIBIT B

Akiva M. Cohen
Kamerman, Uncyk, Soniker, & Klein P.C.
1700 Broadway, 42nd Floor
New York, NY 10019
Tel:  917-742-6193
Email: acohen@kusklaw.com

Carolyn Shields
Liu & Shields LLP
41-60 Main Street, Suite 208A
Flushing, NY 11355
718-463-1868
shieldscj524@gmail.com

Attorneys for Andrew Wang, individually
and doing business as Bao Wu Tang;
Shou-Kung Wang, individually and
formerly doing business as Jian Bao Gallery,
Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Yien-Koo King, Northwich Investments, Ltd., and Soon Huat, Inc.<br><br>            Plaintiffs,<br><br>      v.<br><br>Andrew Wang, Shou-Kung Wang, Bao-Wu Tang, Jian Bao Gallery, Anthony Chou, Chen Mei-Lin, Wei Zheng, Ye Yong-Qing, Yue Da-Jin, and John Does 1-9,<br><br>            Defendants. | Civil Action No. 1:14-cv-07694-JFK<br><br>SECOND SUPPLEMENTAL RESPONSE OF DEFENDANT ANDREW WANG TO FIRST SET OF INTERROGATORIES |

Defendant Andrew Wang ("Defendant"), by and through his attorneys, hereby responds and objects to Plaintiff's First Set of Interrogatories as follows:

1

As required by Instruction No. 4, Your response must include both the English and Chinese spelling for all Chinese names, titles, addresses, and locations.

**RESPONSE TO INTERROGATORY NO. 1 (Renumbered Interrogatory Nos. 1-4):**

In addition to the above General Objections, Defendant objects that this Interrogatory, though styled as a single Interrogatory with ten subparts, is in fact four distinct interrogatories: one seeking witness information; a second seeking sales information; a third seeking work history; and a fourth seeking family history. Without waiving said objections, Defendant responds:

**(Renumbered Interrogatory No. 1)**

a. English name; b. Full Chinese name; d. Last known residential address; g. Email address; h. Telephone number:

Defendant obtained the information called for by Interrogatory Numbers 1(a), 1(b), and 1(d) and set forth in the contracts of sale from intermediary ErShi Fu, whose last known address is #6 Fuhogang, Nanjing City, JiangSu Province, People's Republic of China, and whose work telephone number is 25-83732904. Defendant has just confirmed that Mr. ErShi Fu recently died. In the absence of the person with knowledge of the information called for by these Interrogatories, Defendant is diligently searching directly for the information and will promptly provide the information he finds in a supplemental response.

Defendant at present has the following responsive information: Anthony Chou, Chen Mei-Lin; Raymond Ye; Yong-Qing Ye; Yue Da-Jing.

**First Supplemental Response to Renumbered Interrogatory No. 1 (11/6/18):**

Defendant further objects that the number of interrogatories served exceeds the number permitted by the Local Rules.

In addition to the above General and Specific Objections, Defendant further objects that Plaintiff's Interrogatories exceed the number permitted by the Local Rules.  Additionally, and consistent with the discussion before the Court, Defendant will limit his response to art included on the Allen Appel Inventory.

Without waiver of the above General and Specific Objections, Defendant responds as follows:

**(Response to Renumbered Interrogatory No. 18):**

Defendant primarily stores art in professional, climate-controlled storage spaces, such as Crozier, or in safety deposit boxes in banks.

**(Response to Renumbered Interrogatory No. 19):**

Defendant has stored art from the Allen Appel Inventory at the following locations:

At Crozier; and

At a secure facility in Shanghai.  Defendant will provide the precise address of such facility only upon the execution of a Protective Order deeming such information attorney's eyes only.

INTERROGATORY NO. 8

Identify the manner in which You store Your financial records and documents related to the purchase, sale, storage, transfer, consignment, or display of Chinese paintings (whether on Your own behalf or on behalf of any other person or entity). If any records are stored on the Internet, identify Your domain provider and servers. If any records have been damaged or destroyed (or are believed to have been damaged or destroyed), state how and when they have been damaged or destroyed, when you first learned of the damage or destruction, any and all steps that you took to prevent such damage or destruction and, if any of the information contained in such records is believed or known to exist elsewhere, the location of such alternative records and the identity and contact information of their custodian.

**First Supplemental Response to Renumbered Interrogatory No. 22 (11/6/18):**

In addition to the above General and Specific Objections, Defendant further objects that Plaintiff's Interrogatories exceed the number permitted by the Local Rules.

INTERROGATORY NO. 10

Identify the manner and location in which You store records related to the 2009 Capital Museum exhibition titled "*Bao Wu Tang*—an Important Overseas Chinese Painting and Calligraphy Collection Exhibition" (宝五堂－海外华人重要书画珍藏展) in Beijing described in paragraphs 119-122 (among others) in the Complaint.

**RESPONSE TO INTERROGATORY NO. 10 (Interrogatory No. ~~17~~23):**

Defendant incorporates the above General Objections. Without waiving said objections, Defendant responds that responsive documents are stored in digital form, and some in paper form, with Defendant's attorneys, whose locations appear at the end of these responses, and at the offices of the Public Administrator's SCPA 2103 attorneys, Pryor Cashman LLP, 7 Times Square, New York, New York 10036-6569.

**First Supplemental Response to Renumbered Interrogatory No. 23 (11/6/18):**

In addition to the above General and Specific Objections, Defendant further objects that Plaintiff's Interrogatories exceed the number permitted by the Local Rules.

INTERROGATORY NO. 11

Identify all bank or other financial accounts which You have had control of or access to since 2003, whether in the United States, China, or any other country.

**RESPONSE TO INTERROGATORY NO. 11 (Interrogatory No. ~~18~~24):**

In addition to the above General Objections, Defendant objects to this Interrogatory as beyond the scope of interrogatories permitted under Local Rule 33.3(a); as overly broad and burdensome in that it is unrestricted to information relevant to this action; and as irrelevant.

**First Supplemental Response to Renumbered Interrogatory No. 24 (11/6/18):**

In addition to the above General and Specific Objections, Defendant further objects that Plaintiff's Interrogatories exceed the number permitted by the Local Rules.  Defendant further objects to the extent that the Interrogatory seeks information regarding the Estate's accounts during the time Defendant was Preliminary Executor, which accounts are in her possession, custody and control.  Defendant further objects to the term "access" as vague; in his responses, Defendant will interpret it as referring to accounts on which Defendant is a signatory or authorized user, or accounts of entities he owns or controls.

Without waiver of the above General and Specific Objections, Defendant identifies the following accounts:

A personal account at Chase bank.

A joint account with his wife at Chase bank.

A trust account for the Shou Kung Wang Irrevocable Trust at Chase bank.

A trust account for the Jie Wang Irrevocable Trust at Chase bank.

An account in the name of Bao Wu Tang at Chase bank.

INTERROGATORY NO. 12

Identify all bank or other financial accounts which the Shou Kung Wang Irrevocable Trust has had control of or access to since 2003, whether in the United States, China, or any other country.

21