# KASOWITZ BENSON TORRES LLP

1633 BROADWAY<br>
NEW YORK, NEW YORK 10019<br>
(212) 506-1700<br>
FAX: (212) 506-1800

MARK P. RESSLER
DIRECT DIAL: (212) 506-1752
MRessler@kasowitz.com

ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

December 14, 2018

**BY ECF**

Honorable James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 21-D
New York, NY 10007

    Re:    *King, et al. v. Wang et al.*, Case No. 1:14-cv-07694-JFK-JLC;
            <u>*Wang, et. al. v. King, et. al.*, Case No. 1:18-cv-08948-JFK-JLC</u>

Dear Magistrate Judge Cott:

    As Your Honor knows, since being engaged by Defendants in this case we have been concerned about Mr. Israel's conduct, which, as noted in our prior letters, is outside the norms of acceptable practice, even for a contentious litigation.  For Mr. Israel, every discovery dispute is an occasion to make false allegations about our firm and our clients' ethics and integrity.  Mr. Israel's December 12 letter is but the latest example in a record that is already littered with his false and over-the-top accusations.  We stand fully behind the concerns we raised in our December 4 letter, and Mr. Israel's December 12 letter fully justifies our concerns.  We will not respond to all of the false allegations in Mr. Israel's introductory remarks, but must at least address the following.

    First, Mr. Israel's assertion that Andrew Wang is "currently facing jail time" is outrageous.  Mr. Wang has not been charged with a crime and is not facing jail time.  Mr. Wang is one of world's preeminent experts on classical Chinese art, and is a father, husband, and respected member of the community.  Mr. Israel's false allegation against Mr. Wang is of a piece with his September 30, 2018 email to the Kamerman firm, in which he referred to Defendants as "dyed in the wool scoundrels who should be incarcerated."  Such language is outside the bounds of appropriate litigation discourse.

    Second, Mr. Israel's accusation that Mr. Wang "physically stole millions of dollars' worth of classical Chinese paintings" while a fiduciary of the C.C. Wang Estate (the "Estate") is likewise false.  Mr. Wang sold those paintings for the Estate's benefit, at the direction, and with

KASOWITZ BENSON TORRES LLP

Honorable James L. Cott
December 14, 2018
Page 2

the approval, of the Public Administrator of the State of New York.  In fact, the allegedly "physically stolen" artworks sold at prices higher than their Sotheby's-appraised values.  We also note that Plaintiff Yien-Koo King is currently subject to a petition to remove her as preliminary co-executor of the Estate for, among other things, her sale of over $30 million in classical Chinese paintings in violation of a restraining order issued by the Surrogate's Court.

Third, Mr. Israel's statement that Judge Keenan asked me "to be more civil" is also false.  Judge Keenan told me he did not want to receive lengthy discovery letters from either lawyer that make accusations.

Fourth, Mr. Israel's email to Mr. Cohen speaks for itself.  It includes the following language concerning, among other things, Mr. Cohen's religious beliefs:

> "And since I know you aren't so ignorant as to believe that your clients are other than dyed in the wool scoundrels who should be incarcerated, my conclusion is that you are torturing my aged clients for either of two reasons: unbridled greed or sadism, neither of which comport with the spiritual precepts that you purport to need to observe (and claim as the partial basis for your delay).  So let's be candid.  Is it greed or sadism that causes you to play these games?"

As officers of the Court, we believe we have an obligation to bring such a bizarre and unsettling piece of correspondence to the Court's attention.  This kind of personal attack has no place in this or any other court.

Fifth, Mr. Israel's accusation that my firm interfered with subpoenas is false, and we stand by all actions we have taken in this case.  I am a senior partner at my firm and a former federal prosecutor, and I have litigated countless cases before this and other courts around the country.  I decided to bring our concerns to the Court's attention because I have never before seen an attorney engage in these kinds of incessantly accusatory rants.  They need to stop.

Discovery Issues

Below we address Mr. Israel's false accusations about the state of discovery.  As a threshold matter, Your Honor's December 5, 2018 Order adjourned the previously scheduled discovery conference to allow time for the parties to meet and confer regarding the issues raised in Mr. Israel's prior letters to the Court.  Mr. Israel's December 12 letter regurgitates many of those same issues.  Based on Your Honor's Order, we expected that Mr. Israel would at least attempt to engage with us to try to work these matters out.  Instead, after a single meet-and-confer call (on December 7) and a December 10 email in which counsel, pursuant to our repeated requests, set forth his issues – to which we were in the process of responding – Mr. Israel submitted his December 12 Letter.  His request for a conference is premature because, in addition to disregarding Your Honor's instruction from last week, Plaintiff has failed to satisfy

KASOWITZ BENSON TORRES LLP

Honorable James L. Cott
December 14, 2018
Page 3

her meet-and-confer obligations required by Your Honor's Individual Practices.  In any event, as we explain, the issues raised in counsel's letter do not require a conference with the Court.

      i.    *Alleged Deficiencies in Interrogatory Responses*

As we would have disclosed during the meet-and-confer process, we have identified one additional account to which Andrew Wang is a signatory; we of course will provide that information to Plaintiff.  Further, as we previously informed Plaintiff, we will supplement S.K. Wang's interrogatory responses with the requested information.  As we also would have shared during the meet-and-confer process, pursuant to Your Honor's December 5 Order, we will disclose the location where Defendants currently store artworks listed on the Alan Appel inventory.  We note, however, that Defendants have concerns as to whether Plaintiff will maintain the confidentiality of this information, and her failure to do so could place the security of the artwork at risk.

We of course disagree with Mr. Israel's false accusation that "Defendants are hiding corporate entities, accounts, paintings, and assets, all of which provide proof of their self-dealing, by lying in their discovery responses."  This is mere rhetoric and provides no basis for additional discovery.

      ii.    *Alleged Deficiencies in Document Demand Responses*

As to Plaintiff's false allegations of deficiencies in Defendants' document productions, Defendants have produced thousands of pages of documents in response to Plaintiff's specific requests, including materials directly responsive to Plaintiff's requests for documentation concerning specific real estate transactions and other financial information.  With respect to the real estate transactions, Defendants have produced documents sufficient for Plaintiff to identify the accounts from which funds used in the identified transactions originated and/or were deposited.  As to what counsel previously described as the "multi-million" dollar properties that Andrew Wang was able to "suddenly" purchase, the documentation produced establishes that such purchases were made with resources originating with Mr. Wang's wife, Ms. Luo Rong.  Any assertion that Ms. Rong's acquisition of wealth was "sudden" or unusual is false, and the documentation produced disproves the suggestion of inexplicable purchases.

The "sudden inexplicable wealth" theory that Plaintiff advanced before this Court to justify a fishing expedition into Defendants' financial affairs is baseless.  In fact, Mr. Israel advanced the *opposite* theory regarding the Wang family's wealth in arguments he made in the Surrogate's Court.  On April 18, 2017, Mr. Israel argued that S.K. Wang's purported grudge against Plaintiff, his sister, was unwarranted because S.K. Wang is a rich man, stating:  "S.K. received lots from his father.  His father made it up to him [for S.K.'s] being held back in China.  He's received apartments, he's a multimillionaire now by the large gifts of C.C. Wang."  The "sudden wealth" theory has no basis in fact, and there is no reason why Plaintiff should be entitled to further discovery into Defendants' financial affairs.

Kasowitz Benson Torres llp

Honorable James L. Cott
December 14, 2018
Page 4

Defendants maintain their objection to producing documents concerning the Jie Wang Irrevocable Trust, of which Andrew Wang is the trustee. Jie Wang (who has no relation to Defendants) is a family friend of the Wangs, and neither Andrew Wang nor any members of his family are beneficiaries of the trust. There is no allegation of a connection between Ms. Jie Wang and the conduct alleged in the Complaint, and there is no basis for discovery into Ms. Jie Wang's affairs. As to the formation documentation for the S.K. Wang Irrevocable Trust, Defendants will produce them – a point we would have disclosed on a meet-and-confer call.

Defendants maintain their objection to producing "all documentation" concerning all corporate entities in which they were officers and shareholders since 2003. At the parties' October 23, 2018 discovery conference, Your Honor instructed Plaintiff to narrow her demand concerning corporate entities and re-serve the request. (Tr. 60:5-13.) Plaintiff failed to do so. As You Honor observed, the request is overbroad as written, and Defendants stand by their original objection. Plaintiff's conclusory assertion that some relevant evidence may exist is speculation and is not the proper target of discovery. *See, e.g.*, *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses.").

Defendants maintain their objection to producing documents concerning artworks that are *not* set forth on the Appel Inventory of artworks owned by the Estate, or asserted to be owned by the Estate. At the October 23 discovery conference, Your Honor directed that the artworks on the Appel Inventory serve as the primary limit on the scope of discovery. Plaintiff's productions comport with that instruction, and Defendants offer no basis to reconsider the limitation the Court imposed. Defendants' purchases and sales of non-Estate art do not bear on whether Defendants ever acquired or sold Estate artworks.

   *iii.*  *Alleged "Interference" With Third-Party Subpoenas*

As to Mr. Israel's false accusations of "interference" with the deposition of Ms. Lake-Ewald, here is what actually occurred. On December 4, 2018, Plaintiff's counsel served a notice unilaterally scheduling the deposition of Ms. Lake-Ewald for December 13, 2018, without consulting us or counsel for the Public Administrator as to dates. On December 7, 2018, we wrote to the Israel firm to object to its unilateral scheduling of the deposition, and requested an adjournment until after such time as document productions are completed in this action. That is routine practice. We also informed Plaintiff's counsel that Ms. Lake-Ewald, in a conversation with us, objected to the date Mr. Israel had set, given that she has obligations to her own clients in closing out the year. On December 7, Tim Savitsky from the Israel firm wrote that they would be "willing to reschedule it upon your request" and told us to "pick any date the following week." On December 10, Mr. Savitsky wrote to inform us that Ms. Lake-Ewald is available on December 19 and December 20, and that "[i]f you do not agree with either revised date, you are always free to move to quash the subpoena."

KASOWITZ BENSON TORRES LLP

Honorable James L. Cott
December 14, 2018
Page 5

Ms. Lake-Ewald is a critical third-party witness. She is an art expert and appraiser who was hired by the Estate, under the guidance of the Public Administrator, to provide an independent review of each sale of artwork by the Estate, *i.e.*, by Andrew Wang, during the period in which Andrew served as preliminary executor. In that role, Ms. Lake-Ewald approved the very sales that Plaintiff alleges were "fraudulent," reflect "serial criminal activit[y]," and were "artificially low."

Now that Judge Keenan has extended the January 4, 2019 discovery cutoff date (to May 8, 2019), there is no reason why Ms. Lake-Ewald's deposition needs to be held next week. Ms. Lake-Ewald has advised us that she will be considerably inconvenienced if she is forced to sit for a deposition in December, one of her busiest periods. While she did tell Plaintiff's counsel that she is "available" on December 19 and 20, she did not appreciate that, as the witness (and one who is not represented by counsel), she can choose a date that is more convenient for her. In addition, like Plaintiff, Defendants intend to take Ms. Lake-Ewald's deposition. But we obviously cannot prepare appropriately for Ms. Lake-Ewald's deposition without Plaintiff's document production and responses to Defendants' interrogatories. Plaintiff's documents are likely to include evidence of Plaintiff's contemporaneous knowledge of the appraised values of the artworks that Mr. Wang sold (and that Ms. Lake-Ewald ultimately approved) on behalf of the Estate, Plaintiff's communications with others concerning the appraised values of the artworks at issue, and Plaintiff's knowledge of art market conditions at the time of the sales at issue.

\* \* \*

In closing, we believe that the conference with the Court that Plaintiff requests is unnecessary. We request that the Court order an adjournment of Ms. Lake-Ewald's deposition until such time as Plaintiff produces documents and responds to interrogatories; all parties (Plaintiff, Defendant, the witness, and the Public Administrator) have agreed on a mutually convenient date; and the parties have agreed on an even split of the seven-hour time limit. We have contacted Glenn Opell, counsel to the Public Administrator, and Mr. Opell has no objection to adjourning Ms. Lake-Ewald's deposition.

Respectfully submitted,

/s/ *Mark P. Ressler*

Mark P. Ressler

cc:  All counsel of record (by ECF)