

**SAM P. ISRAEL**
FOUNDER & MANAGING PARTNER

Eleonora Zlotnikova
Timothy Foster
Timothy Savitsky
David Hrovat
*Associates*

180 MAIDEN LANE, 6th FLOOR, NEW YORK, NY 10038
info@spi-pc.com | T: (646) 787-9880 | F: (646) 787-9886

**BY ECF**
Hon. James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 21-D
New York, NY 10007-1312

December 16, 2018

Re: *King v. Wang et. al.* No. 14-cv-07694 (JFK-JLC)

Dear Judge Cott,

I recognize that the Court is being besieged with correspondence in this case and that much of it is ugly. Nonetheless, I respectfully urge Your Honor to consider certain points that might provide much needed context to this seeming he said/he said debate.

First, I address Mr. Ressler's deployment of an out-of-context, three-month-old communication between Mr. Cohen and me (which Mr. Ressler was not privy to and only uncovered when he went digging for a foothold to mount another distraction). Plaintiff Yien-Koo King is in her mid-80s and the Defendants managed to stall discovery for four years with repetitive pre-answer motions. My regrettably strident comments from September reflected our outrage over the endless maneuvers taken to shield evidence from detection. This was also at the time we learned the Defendants' copycat RICO claim would be brought against King's son and daughter to eclipse the merits of the Plaintiff's legitimate case. I will not respond in kind and dig up old emails between Mr. Cohen and myself or report what he has said to me in telephone conversations; Mr. Ressler's goal is to take the focus off his clients' lies and discovery abuses. In the first section herein, I hope to put into perspective the litigation abuses that color discovery in this case and expose the non-viability of relying on Andrew and Shou-Kung Wang's position that they simply do not need to produce documents or reveal information that they deem irrelevant. Even beyond the fact that the Defendants have already been found by a jury to have committed fraud upon a dying man's estate, we respectfully ask the Court to consider the circumstances which now give rise to Andrew Wang's criminal contempt for theft and perjury.

Second, the Defendants' discovery defaults and interference with third-party discovery continue to improperly thwart our client's discovery rights under the Federal Rules of Civil Procedure. For example, Mr. Ressler boldly admits that he has interfered with our deposition of a witness because, in his own self-serving view, it was too early to question the witness. *See* Mr. Ressler's Dec. 14th letter ("Ressler Letter") at 4 [ECF No.

Hon. James L. Cott
United States District Court        Re: Case No. 14-cv-07694 (JFK-JLC)        12/16/18

137]. Mr. Ressler wants document production from Yien-Koo first, even though she has never met nor spoken to Ms. Ewald and was not involved in the sales at issue. In resolving these matters, we respectfully submit that the Court should be apprised of what has occurred during the litigation of this case so that we can focus on curing the artificial barriers the Defendants have erected.

### I.    *Andrew Wang currently faces incarceration for criminal contempt*.

Mr. Ressler's outrage that I remarked that his client faces incarceration betrays his unfamiliarity with the parties' 15-year-old litigation. There is an extant order requiring Andrew to show cause why he should not be held in criminal contempt of Court—not for the resale issues raised in this action (as the Ressler Letter at 1 suggests) but for *other* proven thefts of estate artwork worth millions of dollars. Enclosed as Exhibit A is an order dated December 4, 2018 signed by Surrogate Rita Mella concerning Andrew Wang's theft of 46 classical Chinese paintings on or about May 11, 2005.

To give context to Defendants' jaw-dropping litigation abuses and concealments, we briefly explain the basis for the order to show cause. As Your Honor may know, the genesis of the parties' legal battles occurred in 2003 when the Defendants submitted a will to the Surrogate's Court which disinherited King from her father's estate for allegedly stealing his paintings. A unanimous jury later found in April 2017 that the propounded will was the product of the Defendants' fraud and undue influence. However, in 2005 and long before the dispute was resolved by a trial, the parties had actually agreed upon a plan to settle their litigation as to the matters of (a) whether Yien-Koo stole from her father and (b) the legitimacy of her ostensible disinheritance. The prospective settlement called for Andrew Wang to deliver five (5) paintings to King (which King claimed Andrew and his father stole from a bank vault in 2003), in exchange for which King would deliver forty-six (46) paintings to the Estate through Andrew, who was the Estate's preliminary executor. The 46 paintings which King promised to deliver were legally titled to her and her husband's corporations, but the Defendants had claimed they were stolen from CC Wang, and thus property of his Estate. King, her husband, and her son Raymond met Andrew in a hotel in Shanghai on May 11, 2005 to complete this exchange and settlement. Raymond King watched over the Kings' collection of 46 valuable Chinese paintings in his hotel room while his parents met with Andrew downstairs. Over the course of three hours, Raymond watched as his parents would take approximately five paintings at a time to Andrew downstairs in the conference room. This process continued for three hours until all 46 paintings were taken from his room. Meanwhile in the conference room, Andrew inspected and signed for each of the 46 paintings. Finally, the Kings returned to Raymond's room with the five paintings Andrew had promised to deliver.  Below is an excerpt from the signed and initial list of paintings evidencing what occurred at the exchange.

2

Hon. James L. Cott
United States District Court          Re: Case No. 14-cv-07694 (JFK-JLC)          12/16/18

| # | KK# | SKF | Artist (Chinese) | Desc (Chinese) | Artist | Description | Initial |
|---|-----|-----|------------------|----------------|--------|-------------|---------|
| 35 | H 1112/S | A1196 | 文微明（明） | 觀橋思句圖雪景山水軸 | Wen Zhengming | Watching Stream from Bridge | AW |
| 36 | H 0314 | A1211 | 吳仓石 | 巴蕉砧石圖 | Wu Cangshi | Rock & Banana Tree | AW |
| 37 | H 0501/S | A1255 | 吳偉（明） | 小仙松調古士圖軸 | Wu Wei | Scholar under a Pine Tree | AW |
| 38 | H 0309/S | A1193 | 吳鎮（元） | 野竹圖軸 | Wu Zhen | Wild Bamboo | AW |
| 39 | H 0606/S | | 吳鎮（元） | 漁父圖軸 | Wu Zhen (Mei Daoren) | Solitary Fisherman | AW |
| 40 | H 1004/S | A1257 | 姚綬 雲東（明） | 松陰清話軸 | Yao Shou (Yun Dong) | Conversation Beneath the Pines | AW |
| 41 | D 0402/B | B2080 | 張盅（清） | 青山威溪間居卷 | Zhang Yin | Landscape 6 Painting mtd as One | AW |
| 42 | H 0504/S | A1327 | 張宗苍（清） | 山風影翠居圖軸 | Zhang Zongcang | Landscape | AW |
| 43 | H 1211/S | JBG7/A1325 | 赵松雪 孟頫（元） | 老子圖軸 | Zhao Mengfu (Songxue) | Laozi and his Attendant under Pine Tree | AW |
| 44 | H 0706/S | A1052 | 赵松雪（元） | 云邻会館燃本鎬琴伝山水 | Zhao Mengfu (Songxue) | Playing the Music Instrument | AW |
| 45 | H 1003/S | A1238 | 郑旼 慕倩（清） | 仿倪水墨山水圖軸 | Zheng Min | Ink Landscape (Ss Ni Zan | AW |
| 46 | H 0603/S | A1046 | 周臣（明） | 東村访友圖軸 | Zhou Chen | Visiting Friends in East Village | AW |

*Andrew Wang*

**46 Pieces Received by Andrew Wang**

| # | KK# | SKF | Artist (Chinese) | Desc (Chinese) | Artist | Description | Initial |
|---|-----|-----|------------------|----------------|--------|-------------|---------|
| 1 | D 1802/B | B2081 | 弘仁（明） | 峰巒溪山清远图卷 | Hong Ren | Mountain & Streams in the Clear Distance | AK |
| 2 | D 1502/B | B2013 | 华喦（新罗）（清） | 倣黄實山水卷 | Hua Yan | Landscape iSo Tang Yin | AK |
| 3 | D 0101/B | B2045 | 黃公望 子久（元）山水卷 | | Huang Gongwang | Landscape | AK |
| 4 | A 0300/B | C3007 | 石涛（清） | 大獅子为具氏画山水册十二 | Shitao | Landscape for Master Yu 12LAlbum | AK |
| 5 | D 1102/B | B2068 | 蕭照 吉祥语（宋） | 中兴瑞府图卷 | Xiao Shizhao | Story of Song Gaozhong Prosperity | AK |

The Kings eventually returned to the United States to finalize the arrangement only to find when the parties returned to Court, that Andrew claimed the settlement failed because they had only given him <u>15 of the 46 promised paintings</u>. He claimed the Kings forced him to sign the exchange list before giving him anything, which is why his initials appear on it 46 times. In a sworn affidavit, Andrew listed each of the 15 paintings he admittedly received and testified that contrary to the Kings' claim, the other 31 paintings never touched his hands and were never brought to the hotel . The two-versions of what occurred are utterly contradictory and it is clear that one of the two sides has committed perjury on a massive scale. Our research indicates there has never been a comparable act of fiduciary misconduct in New York Surrogate's Court history.

Even beyond the signed list and Raymond and Kenneth King's supporting testimonies, the proof that Andrew received all 46 works on May 11, 2005 is surprisingly straightforward: *he admitted it to Chinese reporters while they were holding tape recorders and cameras.* Andrew organized an exhibition in 2009 with the Hanhai Auction Co. Ltd. and another exhibition in 2010 with the Poly International Auction Co., Ltd. He gave interviews directly commenting on his public display of <u>six</u> of the exchange paintings which he testified years earlier he did not have. These allegedly unreceived paintings were touted in the exhibitions' hard-cover publications and several would later be sold at auction based upon their display and Andrew's 2009 and 2010 shows. For example, *Wu Zhen*'s "Wild Bamboo" sold for $10 million at a public auction in 2016.

One of the 31 classical Chinese paintings which Andrew flat-out denies receiving at the 2005 Shanghai exchange was called "Travelers in the Autumn Mountains" by the artist *Guo Xi*. Yet according to an article published by China.com in 2009, Andrew said this about Hanhai Auction Co's display of this supposedly *non-received* work:

Hon. James L. Cott
United States District Court        Re: Case No. 14-cv-07694 (JFK-JLC)        12/16/18

> "'Travelling in the Autumn Mountain' is Grandpa's treasure which has been kept in the safe of the bank for many years. We seldom have the chance to see it. Today, more than 30 pieces of ancient paintings finally returned to the motherland for everyone to see, and Grandpa's wishes finally come true."

Another one of the 46 paintings Andrew swears he never received was entitled "Wild Bamboo" by the artist *Wu Zhen*. Yet here are pictures of it on display at Andrew's famous 2009 exhibition:

| *Wu Zhen*: Wild Bamboo (far left) on display at the 2009 Hanhai Auction Exhibition | Picture of "Wild Bamboo" taken by a visitor at the 2009 Hanhai Auction Exhibition |
| --- | --- |

 

In addition to the 46 paintings Andrew stole at the May 2005 exchange in Shanghai, Andrew's nationally heralded 2009 and 2010 art exhibitions were comprised of the 98 paintings that he sold to himself and which are the direct subject of this action.

## II.        *Discovery Issues*

Not to needlessly laden the current discovery embargo with more superlatives, but I have never come across a law firm literally forcing discovery to shut down as the Kasowtiz firm has done here. Our clients are entitled to conduct discovery as they see fit and not subject to Mr. Ressler's presumptuous views on what their counsel should or should not do.

1. ***Supposed failure to meet and confer:*** We have met and conferred with the Defendants' counsel more than four times (including after Your Honor issued his December 5th order) and for several hours concerning their production of all trust and corporate documentation. We have been asking for it for months, but are clearly at an impasse on what needs to be produced. The Defendants' counsel has been evasive on their positions so as to stall resolution. We require an on-the-record discovery conference to discuss their production and their (admittedly) deficient interrogatory responses.

2. ***Andrew Wang's additional bank account***: After our grueling efforts to get accurate information from Andrew and Shou-Kung Wang, their counsel now admits they identified a "single account" to which Andrew is a signatory, but which he failed to originally include in his interrogatory responses. We have three problems with this. <u>First</u>, the Defendants only

4

Hon. James L. Cott
United States District Court        Re: Case No. 14-cv-07694 (JFK-JLC)        12/16/18

came forward with this account after our letter disclosed that we had proof that they were hiding off-shore accounts. <u>Second</u>, they still have not submitted revised interrogatory responses for Shou-Kung Wang, now 40-days after their November 6th deadline to do so. <u>Third</u>, since early November we have requested complete, accurate, and <u>*signed*</u> interrogatory responses for both the Defendants, but have yet to receive them. We have clear evidence that Andrew has lied throughout his interrogatory responses and require a signed version of a copy thereof.

3. ***Supposed sufficiency of "Alan Appel" artwork documentation***: We need to know the entire extent of the Wangs' art-asset and financial holdings. This is not premature post-judgment discovery; the allegation at the heart of the complaint is that the Wangs used a network of overseas corporations, covert bank accounts, and strawmen to self-deal in Estate assets, then sell those works in order to purchase new "clean" paintings not subject to direct investigation. The Defendants' unilateral limitation on our discovery of documentation that is obviously non-privileged information (*i.e.* the Defendants' corporate, trust, and art holdings) is completely unreasonable in a RICO case of this nature.

4. ***Jie Wang and Shou-Kung Wang Irrevocable Trusts***: The Defendants' counsel claims the Jie Wang Irrevocable Trust, of which Andrew Wang is trustee, has nothing to do with this action and documents related to the trust need not be produced. We disagree. We are seeking the production of non-privileged documents in the Defendants' control concerning his laundering of money and the sheltering of illegitimate sale proceeds. We've already proven Andrew lied in his interrogatories concerning (a) the accounts he was a signatory to and (b) the existence of a deceased *middleman* named "Ershi Fu" who supposedly had the direct contact with the buyers (Andrew testified to his supposed personal relation with each of the buyers during a deposition years ago and never before mentioned a middleman until he was asked for more information on the strawman buyers in this action). His self-serving representations are worthless. *See also* Section I, *supra*.

5. ***Interference with a deposition scheduled two-months ago***: The Defendants are holding our deposition of Ms. Ewald, first noticed in October, hostage pending the production of documents from King, who indisputably was not a party to any of these sales. Mr. Ressler says that "obviously" Ms. Ewald cannot be deposed until Yien-Koo responds to document requests, but provides no explanation why. Moreover, we seek a conference and order from the court to rule on the permissibility of Kasowitz's continued coordination with witnesses we have subpoenaed to instruct them on what should be produced and tell them to not be available for their deposition until Kasowitz is ready for them to be deposed.

Respectfully submitted:

Sam P. Israel, P. C.
**By:**    */s/Sam P. Israel*
Sam P. Israel (SPI0270)
Attorneys for Plaintiff
180 Maiden Lane, 6th Floor
New York, New York 10038
T: 646-787-9880 | F: 646-787-9886

cc.    All counsel of record [*via* ECF]

5

| WARNING: YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT |
|---|

At the Surrogate's Court held in and for the County of New York at 31 Chambers Street New York, New York on the 4 th day of December 2018.

**PRESENT:** RITA MELLA ,
**SURROGATE**

**SURROGATE'S COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

New York County Surrogate's Court
Date: December 4, 2018

---

In the Matter of the Petition of Yien-Koo Wang King, individually and as Preliminary Executor of the Estate of Chi-Chuan Wang, to Hold Andrew Wang in Contempt of Court Order Dated October 23, 2003 in the Estate of

**CHI-CHUAN WANG,**

Deceased.

**ORDER TO SHOW CAUSE**
File No. 2003-2550 / L

---

**PLEASE TAKE NOTICE** that the purpose of this hearing is to punish the accused for contempt of court, and that such punishment may consist of fine or imprisonment, or both, according to law.

Upon the filing and reading of the accompanying verified petition of Yien-Koo Wang King, individually and as preliminary executor of the Estate of Chi-Chuan Wang ("Petitioner"), dated November 2, 2018, the memorandum of law dated November 2, 2018, the affirmation of Timothy Savitsky, Esq. to amend the petition dated November 9, 2018, and all of the prior papers and proceedings heretofore filed and had herein; and after due deliberation being had thereon, it is hereby:

**ORDERED** that Andrew Wang ("Andrew"), being a respondent to the SCPA § 2103 proceeding (File No. 2003-2550/F) commenced by the Public Administrator of New York County as temporary administrator, show cause before this Court at the Surrogate's Court located at 31 Chambers Street, New York, NY 10007, before the Hon. Rita Mella, Room Number 503 on January 11, 2019, 2018 at 10:00 a.m. or as soon thereafter as counsel may be heard, as to why the Court should not:

(1) Hold Andrew in civil and criminal contempt for his willful and contumacious violation of the Court's October 23, 2003 restraining order, issued in the Public Administrator's SCPA §2103 proceeding, for the transfer and disposal of property of

the Estate, namely 47 paintings delivered to him on May 11, 2005 and May 12, 2005 in Shanghai, China; and

(2) Direct Andrew to turn over to the Public Administrator each of the 47 paintings delivered to him on May 11, 2005 and May 12, 2005 and to restore the status quo ante by turning over to the Public Administrator the value of *Wu Zhen*'s "Wild Bamboo" and any other paintings from the group of 47 which the Petitioner alleges were disposed of by Andrew since May 11, 2005.

And it is further,

ORDERED, that service of a ~~(certified)~~ copy of this order and all papers upon which it is based, by personal delivery service upon Andrew Wang ~~Akiva M. Cohen, Esq., c/o Kamerman, Uncyk, Soniker, & Klein, P.C., as counsel for said Andrew Wang and as counsel for Shou-Kung Wang, and Glenn Opell, Esq., c/o Schram, Graber, & Opell, P.C., as counsel for the Public Administrator of New York County,~~ on or before 31st of ___December___, 2018, shall be deemed good and sufficient service; and it is further

ORDERED, that service of an additional copy of this Order and all papers upon which it is made upon:

- Carolyn Shields, Esq., c/o Liu & Shields, LLP, as co-counsel for Andrew Wang and Shou-Kung Wang, 41-60 Main Street, Suite 208A, Flushing, New York 11355, by overnight delivery;
- Akiva M. Cohen, Esq., c/o Kamerman, Uncyk, Soniker & Klein, P.C., as co-counsel for Andrew Wang and Shou-Kung Wang, 1700 Broadway, 42nd Floor, New York, New York 10019, by overnight delivery; and
- Glenn Opell, Esq., c/o Schram Graber & Opell, P.C., as counsel for the Public Administrator, New York County, 11 Park Place, Suite 100B, New York, New York 10007, by personal delivery;

on or before the 13th day of ___December___, 2018, shall be deemed good and sufficient service; and it is further

ORDERED, that answering papers, if any, shall be served and filed with the Court by no later than 12:00 p.m. on ___January 8, 2019___.

_____
SURROGATE

2