# KASOWITZ BENSON TORRES LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019

(212) 506-1700

FAX: (212) 506-1800

THOMAS B. KELLY
DIRECT DIAL: (212) 506-1872
TKELLY@KASOWITZ.COM

ASPEN
ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

January 15, 2019

**BY ECF**

Honorable James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 21-D
New York, NY 10007

  Re: *King, et al. v. Wang et al.*, Case No. 1:14-cv-07694-JFK-JLC;
    *Wang, et. al. v. King, et. al.*, Case No. 1:18-cv-08948-JFK-JLC

Dear Magistrate Judge Cott:

  We write on behalf of Defendants in response to the Court's directive dated December 19, 2018 regarding outstanding discovery disputes among the parties. Before addressing the parties' substantive disputes, we note that Plaintiff's responses to Defendants' interrogatories were due to be served on December 18, 2018, but Plaintiff has not served any responses. Further, we note that at our last conference, Your Honor ordered Plaintiff to produce documents the week of December 24, but, similarly, no documents have been produced to date. While Defendants' regret to bring these issues to the Court, Defendants cannot defend themselves, or prosecute their own case, if Plaintiff will not participate in discovery, ignores deadlines, and otherwise delay. The parties are on a short discovery schedule, and, if Plaintiff will not abide by deadlines, Defendants cannot be expected to complete the discovery they require by May 8, 2019 and will require relief from the Court.

  With respect to substantive issues, the parties met and conferred today, January 15, 2019 (the "M&C"), regarding Plaintiff's responses and objections to Defendants' document requests. We note for the Court that these responses were served by Plaintiff approximately two weeks after they were due. In short, Plaintiff has agreed to produce documents responsive to only a small handful of Defendants' 83 document requests. While Defendants are working with Plaintiff to narrow certain of the requests served by Defendants on November 15, 2018 (the

KASOWITZ  BENSON  TORRES LLP

"Requests," and each a "Request") in an attempt to reach a compromise agreeable to Plaintiff,[1] the parties are at a stalemate as to whole categories of documents and issues Defendants believe are not only relevant, but critical to their defense and/or affirmative claims.

## I. *Plaintiff's General Objections*

Plaintiff has taken the position that she should not be required to produce any metadata or electronically stored data because it is unduly burdensome. Plaintiff's objections are without merit, as Plaintiff has provided no factual basis, *e.g.*, cost estimates, document volume, custodian lists, or other information by which to judge the burden. As an initial matter, the metadata for electronically stored information ("ESI") is normally exchanged in complex litigation, especially where, as here, Plaintiff is seeking tens of millions of dollars. There are dozens of ESI vendors that can, and regularly do, retrieve and produce this data. When, as here, there are potentially thousands of documents that may be produced, normal course metadata is critical for preparing Defendants' case. Plaintiff's sole justification that the request for metadata is burdensome is that Plaintiff's counsel's office consists of only five attorneys. This is no basis to deny Defendants' request for normal course metadata as such functions can easily be outsourced to third-party vendors. Complicating matters further, Plaintiff has failed to provide any proposed search terms for agreement among counsel or identify any custodians and/or files whose ESI they intend to search. Without an agreement on search terms and custodians, the need for metadata is even more important. And, moreover, without such information, Defendants cannot assess any purported burden the production of metadata poses to Plaintiff. Thus, Plaintiff provides no valid basis for refusing to produce the requested metadata and Plaintiff should be ordered to provide proposed search terms and identify custodians and other sources of relevant information. *See, e.g.*, *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 111 (S.D.N.Y. 2012) (Scheindlin, J.) (litigants are required to "work cooperatively to design and execute" targeted searches, including "agree[ing] on search terms and protocols"); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 192 (S.D.N.Y. 2012) (Peck, J.) ("[T]he best solution in the entire area of electronic discovery is cooperation among counsel;" "An important aspect of cooperation is transparency in the discovery process").

Plaintiff also objects to Defendants' requested relevant time period of 1997 to present for the production of document on the ground that a time period of that length is unduly burdensome. A start date of 1997 is not unreasonable for the simple reason that Plaintiff's own Amended Complaint includes allegations that date back to 1997 and such allegations purport to constitute RICO predicate acts or relate to the alleged conspiracy. *See, e.g.*, Am. Compl. ¶ 29 (alleging SK Wang began converting assets in 1997); *id.* ¶ 29 (alleging that as of 1997, CC Wang learned of alleged impropriety by SK Wang). Thus, a time frame for production starting in 1997 is reasonable because Plaintiff has put facts from that time period into play in the Amended Complaint. Moreover, at the M&C, Plaintiff's counsel provided no basis, beyond a

---

[1] Defendants agreed to narrow approximately four requests and will circulate the proposed new requests to Plaintiff's counsel tomorrow for consideration.

KASOWITZ  BENSON  TORRES LLP

Honorable James L. Cott
January 15, 2019
Page 3 of 6

conclusory assertion, to support its claim that the time period is unduly burdensome. Defendants respectfully submit that a 1997 start date for document productions should be treated as presumptively appropriate.

**II.     *Documents Previously Produced in the 2003 Surrogate's Court Action***

Many of Plaintiff's objections to the Requests are premised, in whole or in part, on the contention that documents responsive to the Requests may have already been produced in conjunction with the Surrogate's Court action entitled *Estate of Chi-Chuan Wang*, File No. 2550/2003 (the "Surrogate's Court Action"), and thus there is no need to reproduce the documents. Discovery in the Surrogate's Court Action has occurred in fits and starts since approximately 2003. Defendants have been represented by numerous law firms, two of whom went out of business, and neither Kasowitz nor our co-counsel was present for the much of the proceedings. Accordingly, in order to ensure that Defendants are in possession of all the productions from the Surrogate's Court Action, and the responsive documents Plaintiff alleges are contained therein, Defendants requested that they be allowed to make copies of all productions made in the course of the 2003 Surrogate's Court Action at their own expense. In response, Plaintiff advised that they do not have the documents in a form that protects their work product, and that they have no record of what has or has not been produced. Plaintiff's contention that they have no record of what has or has not been produced belies her contention that documents produced in the Surrogate's Court Action satisfy her discovery obligations in this action. In this circumstance, Defendants request that Plaintiff be ordered to identify by bates-number what documents from the Surrogate's Court Action it believes are responsive to each Request to the extent Plaintiff refuses to reproduce such responsive documents and that confirmation be made that no further responsive documents exist.

**III.    *Documents Plaintiff Objects to Producing That Are Undeniably Relevant***

In addition to the foregoing, Plaintiff has generally and/or specifically refused to produce whole categories of documents that are directly related to Plaintiff's allegations and/or Defendants' defenses, including:

- Documents and Communications with:
    - Defendants (1);[2]
    - The Public Administrator regarding the estate assets (28, 76); and
    - Any museums, galleries or auction houses regarding any of the Appel Inventory (75).

---

[2] Defendants note that in her responses and objections to the Requests, Plaintiff mis-numbered some of her responses such that responses do not always properly coincide with Defendants' Request number. For the sake of clarity, Defendants refer to Requests as numbered in Plaintiff's responses and objections.

KASOWITZ  BENSON  TORRES LLP

Honorable James L. Cott
January 15, 2019
Page 4 of 6

- Documents and Communications relied upon by, referenced in, or supporting the allegations of:
    - The Amended Complaint (2, 52-53, 64-65, 69, 54, 67, 72, 73, 82, 11, 12); and
    - Plaintiff's purported damages (81).
- Documents and Communications concerning/evidencing:
    - An agreement among Defendants to commit acts of racketeering (68);
    - Defendants' possession or control of property of CC Wang and/or the Estate (14, 15);
    - Plaintiff's ownership/control of artwork on the Appel Inventory and the transfer, value, sale or location of any artwork on the Appel Inventory (16, 29, 35, 56, 80);
    - The source of funds being used to fund this litigation (49-51);
    - The Five Straw Men and the Estate assets purported to be part of Defendants' fraudulent scheme, including the resale of any such assets (58-59, 61);
    - Defendants' alleged transfer of funds in connection with the purported Straw Men purchases (60);
    - The sale of any artwork from the Appel Inventory or assets of the Estate (62, 63);
    - Plaintiff's bankruptcy (70); and
    - Bad acts, fraud, and other misconduct by Plaintiff (19-20, 30-31, 36-48, 71, 77).

Documents fitting into in these categories go directly to Plaintiff's allegations, Defendants' defenses, and/or Defendants' claims against Plaintiff. For instance, documents relied upon or referenced in Plaintiff's complaint are clearly relevant and there is no basis to refuse to produce them. Similarly, documents concerning Defendants' actions related to the Appel Inventory and the artworks in question are plainly relevant. Simply stated, Defendants should be allowed discovery into Plaintiff's allegations against Defendants, including but not limited to: ownership and transfer of the artwork at issue, Plaintiff's knowledge of any alleged bad acts by Defendants, Plaintiff's own bad acts and/or possession or dispossession of any of the artwork at issue, and Plaintiff's knowledge of the purported Straw Men sales, including any communications with the Public Administrator about the sales. The value of the artwork at issue and Plaintiff's valuations of similar artwork is relevant to Plaintiff's purported damages.

Relatedly, Defendants' Request Nos. 3-7 seek documents that directly relate to allegations made in the Amended Complaint concerning CC Wang's metal capacity and the wills and/or codicils. *See* Am. Compl. at ¶¶ 39-46, 70-85. During the M&C, Plaintiff's counsel stated that, among other reasons, Request Nos. 3-7 were not relevant as they related to allegations that were only "background" and not material to any of Plaintiff's claims or a part of any alleged fraud or conspiracy by Defendants. A claim that certain allegations are "background" provides no basis to refuse the requested discovery, and Plaintiff is plainly obligated to produce

KASOWITZ  BENSON  TORRES LLP

Honorable James L. Cott
January 15, 2019
Page 5 of 6

documents concerning the specific allegations in the Amended Complaint.  To the extent Plaintiff does not or refuses to produce such documents, Defendants request such allegations be stricken from the Amended Complaint.

With respect to documents concerning Plaintiff's bankruptcy, while such documents are plainly relevant to Defendants' affirmative claims – as bankruptcy fraud is one of the predicate acts alleged – they are also relevant to Defendants' defenses to Plaintiff's claims.  Plaintiff filed for personal bankruptcy in December of 2007 (the "Bankruptcy Action").  Numerous of Plaintiff's sworn filings in the Bankruptcy Action contradict, or at the very least call into question, allegations Plaintiff advances in the Amended Complaint.  For instance, in the Amended Complaint, dated September 27, 2016, Plaintiff claims that she is, and was during the relevant time period, the sole shareholder of a company called Northwich Investments, Ltd. ("Northwich"), which is alleged to own artwork potentially worth millions of dollars.  (Am. Compl. ¶ 13; Ex. A.)  In sworn asset disclosures in her bankruptcy filings, however, Ms. King did not identify this purported asset to the court or her creditors.  (Ex. A.)  Indeed, while Ms. King claims ownership of numerous paintings through Northwich in the Amended Complaint – including the $2,500,000 *Clear Morning Over Lakes and Mountains* by Juran and the $2,000,000 *Pine Pavilion* by Ni Zan (Am. Compl. ¶ 51) – she failed to disclose her purported ownership of these valuable artworks in the bankruptcy Court.  (*Compare* Am. Compl. ¶¶ 49-52, *to* Ex. B (sworn document purporting to list the paintings owned by Ms. King filed in the Bankruptcy Action).)  Ms. King's allegations put questions of her personal ownership of these – and other – assets, and her assertions concerning her assets, at issue.  Defendants have already identified publicly filed documents that expressly contradict allegations made by Ms. King in the Amended Complaint concerning these entities.  Accordingly, documents concerning the Bankruptcy Action are potentially relevant and should be produced.

Finally, Plaintiff refuses to produce any documents concerning bad acts, fraud, or other misconduct by Ms. King.  Again, while such documents are relevant to Defendants' affirmative claims, they are also relevant to Defendants' defenses to Plaintiff's RICO and other claims, and Plaintiff's objections are misguided.  Defendants are entitled to discovery concerning Ms. King's bad acts in as far as they support Defendants' defenses, including but not limited to, defenses of *in pari delicto*, unclean hands and/or estoppel, based on, among other things, Ms. King's ongoing custody – as executrix of the estate – of ill-gotten gains based on her sale of paintings in violation of restraining orders and other misconduct.[3]  Plaintiff should not be allowed to withhold discovery that could support Defendants' defenses.

**IV.** ***Discovery Related To Defendants' Affirmative Claims***

Finally, at the M&C, Plaintiff informed Defendants for the first time that they will not produce any documents that related to Defendants' affirmative claims (Request Nos. 8, 18, 21-

---

[3] To the extent the Court requires an *in pari delicto* defense to be pled separately from an unclean hands defense, Defendants will seek leave to amend their answer.

KASOWITZ  BENSON  TORRES LLP

Honorable James L. Cott
January 15, 2019
Page 6 of 6

27, 32-34) and that they intend to move the Court to stay discovery pending resolution of Plaintiff's motion to dismiss which was filed on January 14, 2019.  Plaintiff's request for a stay was already denied by Judge Keenan when the Court consolidated the two actions, and there is no reason to believe a renewed request for a stay will be successful now.  At the November 27, 2018 conference, Judge Keenan was clear that he would **not** stay document discovery on Defendants' affirmative claims pending Plaintiff's motion to dismiss.  Thus, any request for permission to file such a motion should be denied.  To the extent the Court is inclined to grant Plaintiff's permission to move for a stay, Defendants respectfully request that the Court order any such motion be filed by Tuesday, January 22, 2019, and that Plaintiff be ordered to meet and confer about Defendants' requests relating to their affirmative case so as to expedite resolution of any objections when the motion to stay is denied.

Respectfully submitted,

/s/ *Thomas B. Kelly*

Thomas B. Kelly

cc:     All counsel of record (by ECF)