

SAM P. ISRAEL
FOUNDER & MANAGING PARTNER

Eleonora Zlotnikova
Timothy Foster
Timothy Savitsky
David Hrovat
*Associates*

**BY ECF**
Hon. James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 21-D
New York, NY 10007-1312

February 27, 2019

Re: *King v. Wang et. al.* Nos. 14-cv-07694, 18-cv-8948 (JFK-JLC)

Dear Judge Cott,

We write on behalf of Plaintiff Yien-Koo King ("Yien-Koo") concerning ongoing discovery disputes in *King v. Wang et al.*, No. 14-cv-07694, an action which seeks to hold Andrew ("Andrew") and Shou-Kung ("SK") Wang[2] liable to the estate of Chi-Chuan Wang ("Estate") under RICO[3] for, *inter alia*, the fraudulent self-dealing of 98 Estate paintings while Andrew was the acting Estate fiduciary (the "Estate Action") and *Wang et al. v. King et al.*, 18-cv-8948, a reactive suit seeking to hold Yien-Koo, Kenneth King, and Raymond King (altogether, the "King Family") liable to the Wangs under RICO by reason of the Surrogate's Court's rejection of a testamentary instrument propounded by the Wangs in 2003 and the alleged conversion of their assets by the King Family between 1997 and 2003 (the "Wang Action").

I. **The Wangs' Discovery Defaults**

Because the Wangs continue to withhold their corporate, trust, and art holdings from discovery, we write to request the Court order the production and inspection of records identified below that are in their possession, custody or control—including records which they have an ability and legal right to obtain from third parties, but do not possess themselves.

---

[2] Hereinafter referred to as the "Wangs" or the "Defendants."
[3] 18 U.S.C. 1961 *et seq.* ("RICO")

Hon. James L. Cott
United States District Court       Re: Case No. 18-cv-8948 (JFK-JLC)      2/27/19

- <u>The Wangs Outright Refuse to Permit an Inspection of the Original Shou-Kung Wang Irrevocable Trust ("SK Trust") Agreement</u>.

   In 2013, Andrew (as trustee) and SK (as settlor) executed a 32-page trust agreement to create the SK Trust. Though Yien-Koo believes the SK Trust is the likely repository of certain self-dealt paintings, the asset schedule which the Wangs produced contains only blank entries:

   

   And whereas the Wangs maintain that Schedule A of the trust agreement, excerpted above, is the most complete version of Schedule A in existence, we find that untenable. It is a fundamental tenet of trust law, perhaps *the* fundamental tenant, that a trust is void unless it is funded. *See, e.g., Brown v. Spohr*, 180 N.Y. 201 (N.Y. Ct. App. 1904); *Matter of D'Elia*, 40 Misc. 3d 555 (Surr. Ct. Nassau Cnty. 2013). Indeed, the body of SK Trust agreement repeatedly references the corpus identified in Schedule A and yet Schedule A, as produced, has only blank spaces where its corpus should be. Thus, rather than assume that the Wangs hired an attorney to draft a 32-page trust agreement and oversee its execution without funding it, the more likely explanation is that Schedule A has been redacted at some point, by some person. Another reason to question the fidelity of the SK Trust agreement produced by the Wangs is the fact that some of the agreement's pages are numbered "*n* of 31" while others are numbered "*n* of 32." In response to the Kings' demand to inspect the *original* agreement, the Wangs' counsel responded that Your Honor determined at the last hearing that the Wangs "ha[ve] no obligation to produce the original." The Kings disagree and seek an order compelling the Wangs to permit inspection of the original SK Trust agreement and asset schedule—regardless of whether it is in the possession of Andrew, SK, or the drafting attorney.

Hon. James L. Cott
United States District Court        Re: Case No. 18-cv-8948 (JFK-JLC)        2/27/19

- <u>The Wangs Still Have Not Produced a Shred Documentation Relating to Le Style Limited, Le Tao Limited, or Any Other Corporate Entities They Control.</u>

In 2009, a BVI company called "Le Style Limited" wired $489,772.00 to the Estate's bank account pursuant to a sales contract supposedly entered into between Andrew (on behalf of the Estate) and Yue Da Jin (a strawman buyer from China). Given Andrew's sworn interrogatory responses that he had no communications with, or information on, Yue Da Jin at the time of the sale (Andrew claims an "intermediary" coordinated directly with the five buyers), documentary evidence that either Andrew or Shou-Kung owned Le Style Limited would be a smoking gun in this case. As it turns out, the International Consortium of Investigative Journalists (the organization responsible for publishing the Panama Papers, hereinafter the "ICIJ") published a report several years ago leaking the identities of owners and officers of thousands of BVI corporations. The ICIJ's report indicates that Andrew and Shou-Kung Wang jointly incorporated a BVI entity named "Le Style Limited" on August 2, 2006 as co-owners and co-officers. *Website available at* https: // offshoreleaks.icij.org/nodes/151272. The report further indicates that the Wangs employed a trust service called Portcullis TrustNet Ltd. to oversee Le Style's corporate administration on their behalf. *Id.* If true, most of the issues of liability in this Estate Action would be susceptible to summary judgment based upon documentary evidence alone.

However, during our last scheduled discovery conference on January 18th, Kim Conroy Esq., as counsel for the Wangs, stated that she was given short notice of the existence of Le Style Limited and did not have a response as to the Wangs' ownership of the entity or possession of its corporate records. She stated that she would be "happy to go back" to her client and find out about the entity. Several days ago, Ms. Conroy finally responded that her law firm "will produce such documents [related to Le Style and Le Tao] to the extent they exist in our clients' files." But this response does not satisfy the Wangs' obligations pursuant to Rule 34(a) of the Federal Rules of Civil Procedure. Because the Wangs apparently hired a trustee company, Portcullis TrustNet, to operate Le Style, they have an obligation to actively acquire records from that agent. *SEC v. Strauss*, No. 09-civ-4150, 2009 U.S. Dist. LEXIS 101227, *22, 2009 WL 3459203 (S.D.N.Y. Oct. 28, 2009) (Pittman, J.). We therefore request the Defendants be compelled to acquire and produce all corporate records held by Portcullis TrustNet Limited in relation to Le Tao Limited, Le Style Limited, and any other offshore entity managed by that firm for the benefit of the Wangs.

- The Wangs Offer Contradictory, Sworn Accounts of Their Access to Information Necessary to Prove Whether the Strawmen Were Real, Living People.

The Estate Action accuses Andrew of inventing fake buyers and using his position as Estate fiduciary to sell artworks to himself and his father at artificially low prices between 2005 and 2009. In his sworn interrogatory responses in this federal action, Andrew stated he cannot provide any contact information for the five alleged buyers other than what was included on the contracts themselves because "*the intermediary who arranged the purchases and had the direct contact with the buyers was ErShi Fu, who is deceased*[]." Yet in 2013, Andrew testified under oath during a deposition as follows:

- Strawman Yong-Qing Ye: was "a friend of mine . . .[s]ince 1990." Dec. 19, 2013 Trans. (956:19-957:25).
- Strawman Anthony Chou: "I know him . . . . [from] Beijing or from Shanghai. . .. . He is just another buyer doing business buying and selling artworks. . . .[H]e usually buy it from a different auction house." Dec. 19, 2013 Trans. (948:11-49:2).
- Strawman Wei Zheng: "Yes, I know him . . . . personally . . . . from China" Dec. 19, 2013 Trans. (941:9-24)
- Strawman Yue Da Jin: "[Y]ou know, we were just in the same circle at that time." Dec. 19, 2013 Trans. (953:12-22).
- Strawman Chen Mei-Lin: "I know him, he is a collector in China, southern part of the China." When asked if Andrew did business with Chen-Mei Lin before, he said "No. This is only--you know, he has a lot of money at that time. He was in the car business, selling imported foreign cars. And so before he involved in the art, artwork investment, but now he no longer in the field, I believe." Dec. 19, 2013 Trans. (961:12-24).

While we recognize the contradiction between Andrew's interrogatory response and his deposition testimony is not a discovery issue *per se*, it critically informs the Wangs' credibility with respect to the above-noted defaults. Suspect claims that their own corporate and trust records do not exist cannot be taken at face value in a case of this nature.

## II.     The Wangs' Demands Upon the Yien-Koo and the King Family.

At our last conference before Your Honor on January 18th, the Wangs' counsel offered to collect documents from (a) our offices and (b) Mr. Cohen's offices relating to the probate proceedings that have been pending in the New York State Surrogate's Court since July 2003. Though all parties agreed to this proposal, apparent oversight led to neither side contacting the other about the issue until late yesterday afternoon during an hour-long meet and confer. Therefore, neither Sam P. Israel, P.C.'s (Yien-Koo's counsel) nor Kamerman Uncyck, Soniker, and Klein P.C.'s (the Wangs' counsel) files have been copied and produced. The parties now having spoken on this issue, we

Hon. James L. Cott
United States District Court      Re: Case No. 18-cv-8948 (JFK-JLC)      2/27/19

expect to be able to coordinate a time for copying within the next week and have a copying date confirmed prior to Monday's scheduled conference. Another issue that unfortunately was not raised in either an email or meet and confer until this week was the Wangs' proposed search terms for e-discovery. On Monday afternoon, the Wangs' counsel sent us an excel file with 1100 proposed search terms (hundreds of which are in Chinese) for us to review prior to the meet and confer. As a small firm, we simply have not had enough time to meaningfully review their requests during the two day window given to us. We expect, however, to make progress on this issue prior to next week's conference.

We thank Your Honor for the Court's attention to the forgoing.

Respectfully submitted:

Sam P. Israel, P. C.

**By:**   */s/Timothy Savitsky*
Timothy Savitsky (TS 6683)
Attorneys for Plaintiff
180 Maiden Lane, 6th Floor
New York, New York 10038
T: 646-787-9880 | F: 646-787-9886

cc.   All counsel of record [via ECF]