# KASOWITZ BENSON TORRES LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

KIM CONROY
DIRECT DIAL: (212) 506-1946
KCONROY@KASOWITZ.COM

ASPEN
ATLANTA
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

March 21, 2019

**BY ECF**

Honorable James L. Cott
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 21-D
New York, NY 10007

  Re: *King, et al. v. Wang et al.*, Case No. 1:14-cv-07694-JFK-JLC;
    *Wang, et. al. v. King, et. al.*, Case No. 1:18-cv-08948-JFK-JLC

Dear Magistrate Judge Cott:

  We write on behalf of Andrew Wang and Shou-Kung Wang (the "Wang Parties"), in advance of the discovery conference scheduled for March 25, 2019. Pursuant to the Court's direction, the Wang Parties have worked to resolve all of the outstanding discovery disputes in good faith. While the parties have made progress, significant disputes still exist. In light of the Court's direction and warnings at the March 4, 2019 conference, and Judge Keenan's subsequent order, dated March 13, 2019, and the King Parties' ongoing disregard for this Court's deadlines and refusal to search for documents, the Wang Parties request that Your Honor issue sanctions and order, again, that discovery be produced.

  ***The King Parties' Productions to Date***

  On the eve of the parties' January 18, 2019 conference, the King Parties produced documents for the first time. That production of approximately 150 documents consisted of previously produced documents, photos of artwork, and press articles – all documents the King Parties deemed relevant to their action. Notably, it included no emails or other electronically stored information ("ESI").

  The King Parties' next production was made pursuant to the Court's order at the January 18, 2019 conference that directed the King Parties to produce any document productions made in Surrogate's Court proceedings in their possession to a vendor arranged by the Wang Parties. On March 7, 2019, the King Parties turned over approximately four boxes of hard copy documents that purportedly consisted of productions made in the Surrogate's Court action (the "Kings'

KASOWITZ BENSON TORRES LLP

Honorable James L. Cott
March 21, 2019
Page 2 of 6

Surrogate's Court Production"). The Kings' Surrogate's Court Production, however, contained no document productions from the Surrogate's Court proceedings. Instead the production of 318 documents mainly consisted of prior pleadings and submissions to the Surrogate's Court, deposition transcripts and exhibits, trial transcripts and exhibits, and the appellate record from the Wang Parties' appeal from a 2017 trial on the validity of one of C.C. Wang's wills. These are not the materials contemplated by the Court's order regarding prior productions, nor were they documents the Wang Parties agreed to pay to reproduce.

The King Parties' third production, made on March 16, 2009, consisted of scans of approximately 1000 hard copy documents that were either received by the King Parties pursuant to third party subpoenas (including documents from O'Toole-Ewald Art Associates which the King Parties' refused to produce previously on the ground, argued to Your Honor, that they constituted work product) and/or court filings. To date, the King Parties have failed to produce actual records or other materials specifically responsive to the Wang Parties' document requests served in either the King or Wang Actions. There is no indication at all that the King Parties' have undertaken *any* search, of any kind, for documents requested by the Wang Parties. The Wang Parties have raised their concerns with the King Parties' document productions numerous times -- both to Your Honor and to counsel for the King Parties. Regardless, the King Parties maintain that most or all of the documents requested have either "been produced" or do not exist. The King Parties' representations, however, seem baseless.

By way of additional example, the Wang Parties requested that the King Parties search for communications with, or concerning, six people to which the Wang Parties believe the King Parties sold Estate-owned artwork. During a March 18, 2019 meet and confer, the King Parties' counsel maintained that the King Parties had no communications with those people. After further confirmation was requested, counsel for the King Parties admitted that their representation was based *solely* on their clients' representations and that counsel made no independent effort to search the King Parties' files, emails, or other communications to confirm.

Further, as the Court will recall, the King Parties objected to reproducing the Surrogate's Court productions because such productions were purportedly interspersed with the King Parties' counsel's work product. Jan. 18, 2019 Tr. at 31-32. This assertion was apparently a fiction as the King Parties reproduced no Surrogate's Court productions at all. Instead, the King Parties appear to have taken advantage of the Wang Parties' offer to pay for reproduction of Surrogate's Court productions in both parties' possession to have unrelated documents produced and to obtain a copy of the materials in the Wang Parties' possession without providing anything in return. Accordingly, the Wang Parties request that the King Parties be ordered to: (i) confirm that, in fact, they are not in possession of any document productions from the Surrogate's Court proceedings, and (ii) bear the costs of reproduction of the King Parties' documents collected and produced by the vendor.

KASOWITZ BENSON TORRES LLP

Honorable James L. Cott
March 21, 2019
Page 3 of 6

### *The King Parties Refuse to Conduct Standard, Good Faith ESI Searches*

The King Parties admit that they have run no email or other ESI searches to date. As this Court is aware, the parties briefly discussed search terms during the last conference. Mar. 4, 2019 Tr. at 29-33. The King Parties' objections at that time were that they had not had enough time to review the list and that the volume of terms appeared overly broad and burdensome. At that time, the Court reserved judgement and the parties agreed to attempt to reach a resolution. Thereafter, in an effort to reach a compromise, the Wang parties circulated a revised list of terms related to the following categories:

> a) The names of the artwork, and the corresponding artists, on the Appel inventory and those alleged to be stolen by the Wang Parties (at times in English and Chinese);
>
> b) Names of people at issue in both actions (Some in Chinese); and
>
> c) Limited tailored searches and/or terms designed to lead to clearly relevant and critical evidence related to: correspondence with the public administrator, the Wang and Kings' purportedly controlled entities believed to have been involved in the selling of artwork in question; museums, exhibitions and auction houses at issue in the Wang and King Actions; the transfer, storage and value of art in question; and the allegations related to CC Wang's will.[1]

Given the sheer number of artworks and artists at issue, the list of search terms is necessarily long, but those search terms are also necessarily relevant. In response, the King Parties maintained that they would run no more than 50 terms. The King Parties' counsel insisted that the searches would be performed manually and that any more than 50 terms would be too time consuming to search. As the Court is aware, third-party vendors are readily available to conduct these types of searches at reasonable costs. Given the scale of damages sought by the Kings -- not to mention their personal wealth -- the King Parties cannot claim to be burdened by requests that they perform ESI searches, and, to the extent the King Parties' counsel is unable to manage the ESI production in-house, to hire a third-party vendor as is normal course in modern litigation. Moreover, the King Parties should not be heard to complain of burden when they have refused to so much as obtain a quote for services from a third-party vendor.

To reach a compromise, counsel informed the King Parties that an ESI vendor can run the searches in a matter of days at minimal cost. ESI vendors routinely collect parties' electronic information and run searches of proposed terms across data to determine the scale of a production based on proposed terms. Vendors then present a "hit report" which identifies the number of documents in which a specific proposed search term appears. Counsel suggested the

---

[1] Unfortunately, given the large number of artworks at issue, the category of documents in "a" above equals approximately 600 alone. Importantly, just running the search terms related to the artwork at issue in the King Action exceeds approximately 400 terms. Notwithstanding category a, the terms proposed in category "b" and category "c" are approximately 200.

K ASOWITZ  B ENSON  T ORRES LLP

Honorable James L. Cott
March 21, 2019
Page 4 of 6

King Parties obtain such a report so that the parties could then attempt to change or limit terms and/or see if certain terms are returning an unreasonable amount of hits.  The King Parties refused.

Further, the King Parties have not presented a proposed search term list of their own or conveyed that they are willing to do so.  Even if the King Parties reject the Wang Parties' proposed list in total, they are not relieved of their obligation to produce responsive ESI by the deadline imposed by the Court.  There is no basis for the King Parties' failure to search for and produce responsive documents from their clients by the document production deadline ordered by the Court.

As the Court warned the King Parties at the Court's last conference:

> I am putting you on notice today that if you all make judgments on your own that are not defensible and I think are sanctionable, I reserve the right to impose sanctions after the next hearing if the positions you all have taken have been inappropriate.

Mar. 4, 2019 Tr. at 36.

The King Parties have done just that by refusing to search for and produce ESI.  The Wang Parties respectfully request that the King Parties be ordered to hire a third- party ESI vendor and to have that vendor search for and produce responsive, non-privileged documents based upon the Wang Parties' proposed search terms by March 29, 2019.  The Wang Parties further submit that the King Parties' disregard for discovery deadlines warrants sanctions by the Court.

### *The King Parties Refuse To Produce Documents Directly Relevant to Claims In the Wang and King Actions*

The parties have attempted to reach resolution regarding the production of certain specific categories of documents requested from the King Parties.  While the parties were able to reach agreement on some categories, the King Parties refuse to produce documents falling into the categories below.  The Wang Parties respectfully submit that the documents requested are relevant, and in some circumstances critical, to the issues being litigated.  The parties' respective positions on the categories are included, as are proposed compromises offered by the Wang Parties, all of which have been rejected by the King Parties.

*Documents Requested from the King Parties in the Wang Action That Are In Dispute:*

- Request 59 – Funds received by the King Defendants from the sale of Appel Inventory artwork.  King Parties' Objection:  Overly broad, previously produced, relevancy.  **Wang Response**:  The Wang Parties submit that this request is reasonable and relevant to their claims.  Either the King Parties have no documents because they did not sell any such

KASOWITZ BENSON TORRES LLP

Honorable James L. Cott
March 21, 2019
Page 5 of 6

artwork, or they do, in which case the Wang Parties are due the discovery reflecting the sums received and the source of the funds.  The King Parties stand by their objections.

- Requests 40-45 – Communications with or concerning Xin Zhao, Jian-Min Zheng, Yi-Qian Liu, Yong-Yu Lin, and Ming Yan (all believed to be buyers of artwork from the King Parties) and/or their reps/entities concerning any sales of artwork.  <u>King Parties' Objection</u>:  The King Parties do not believe they have any such documents and the King Parties' counsel refuses to search ESI to confirm.

- Requests 46, 48-49, 62 – Artwork on the Appel Inventory that is in Asia, including when and how they were transferred and any declarations, customs reports or required documentation and any taxes paid for such sales.  <u>King Parties' Objection</u>:  Overly broad, previously produced, relevancy.  **Wang suggested compromise:**  The Wang Parties offered to limit the request to documents related to the transportation of artwork on the Appel Inventory to Asia, proof the art was declared and that taxes, if any, were paid.  The King Parties stand by their objections.

- Requests 50, 51, 53 – The source of funds related to funding any Estate litigation or this litigation, or related to Raymond King's purchase of his parents' apartment and Shanghai home.  <u>King Parties' Objection</u>:  Overly broad, previously produced, relevancy.  **Wang suggested compromise:**  The Wang Parties offered to limit the request to documents demonstrating the source of funds, including bank statements, related to the real estate to the time period after the Kings initiated their bankruptcy in 2007 and any damages for attorneys' fees that are claimed.  The King Parties stand by their objections, but are willing to produce redacted attorneys' invoices sometime after the current March 22 deadline.

- Request 47 – The King Parties' assets listed on tax returns.  <u>King Parties' Objection</u>:  Overly broad, previously produced, relevancy.  **Wang suggested compromise:**  The Wang Parties offered to limit the request to tax returns limited to after the Kings' bankruptcy in 2007.  The King Parties stand by their objections.

- Requests 26-32 – Assets and tax returns for the following entities controlled by the King Parties:  Northwich, Soon Huat, Tie Fung, Goldwave, Excal, Translink, and Luxin.  <u>King Parties' Objection</u>:  Overly broad, previously produced, relevancy.  **Wang suggested compromise:**  The Wang Parties offered to limit the request to documents that demonstrate the assets of the entities to the extent they reflect any artwork after the date of the last collection and production in the Surrogate's Court by the King Parties.  The King Parties stand by their objections.

*Documents Requested from Ms. King in the King Action That Are In Dispute:*

- Requests 29, 32 – Admissions, affidavits, declarations or other sworn testimony by YK or by anyone else concerning or referencing Ms. King.  <u>King Parties' Objection</u>:  Overly broad, unduly burdensome, previously produced, equally accessible, relevancy.  **Wang**

KASOWITZ BENSON TORRES LLP

Honorable James L. Cott
March 21, 2019
Page 6 of 6

> **suggested compromise:** The Wang Parties offered to limit the request to affidavits, declarations or other sworn testimony by Ms. King. The King Parties stand by their objections.

- Request 51 – Any filings made by you in the Surrogate's Court proceeding concerning the 160 paintings referenced in paragraphs 225-227 of the Amended Complaint. <u>King Parties' Objection</u>: Previously produced, equally accessible, overly broad, unduly burdensome. **Wang Response:** Ms. King put these paintings directly at issue in her complaint by alleging the purported sales of these paintings as a predicate act. To the extent the Kings made allegations about the Wang Parties' purported actions related to the taking and/or selling of these paintings in the Surrogate's Court proceeding, the Wang Parties believe this request is reasonable.

### *<u>Other Discovery Disputes</u>*

Two other discovery disputes bear noting. Pursuant to the Court's directive, the parties have been engaged in setting deposition dates. The Wang Parties have provided date ranges in which Andrew and S.K. Wang can sit for depositions. Counsel for the King Parties has explained that Mr. King's health recently declined, and accordingly, they are unable to secure dates on which the King Parties can sit for a deposition. The Wang Parties do not believe it is appropriate that the King Parties' depositions be set earlier than two weeks after the King Parties finalize their document production and simply seek the Court's assent to this minimal prerequisite to any proposed deposition dates for the King Parties.

Finally, there is also a dispute concerning subpoenas issued by the Wang Parties to Kenneth King and Raymond King. On November 16, 2018, depositions and documents subpoenas were issued in the King Action to Raymond King and Kenneth King by email to their counsel. No objection to service was ever lodged and no objections to the subpoenas were ever made. Upon the Court's order that document discovery be finished by March 15, 2019, the Wang Parties inquired if documents responsive to the subpoenas would be produced by the deadline. In response, the King Parties' counsel stated that they would only produce responsive documents if the Wang Parties' counsel agreed to accept service of subpoenas for documents and deposition testimony on behalf of Andrew Wang's wife and his 17 year-old son. The King Parties' request for this discovery is not only untimely, but irrelevant. Accordingly, the Wang Parties respectfully request the following: (i) Kenneth King and Raymond King be ordered to produce documents responsive to the long outstanding subpoenas to the extent such documents are not already subject to production in the Wang Action; and (ii) the Court issue an order barring the King Parties from serving any subpoena on Mr. Wang's wife or son.

Respectfully submitted,

/s/ *Kim Conroy*
Kim Conroy

cc:   All counsel of record (by ECF)