UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YIEN-KOO KING,

                              Plaintiff,

    -against-

ANDREW WANG, SHOU-KUNG WANG, BAO WU TANG, JIAN BAO GALLERY, ANTHONY CHOU, CHEN-MEI LIN, WEI ZHENG, YE YONG-QING, YUE DA-JIN and JOHN DOES 1-9,

                              Defendants.

1:14-Civ-07694-(JFK) (JLC)

## DECLARATION OF THE PUBLIC ADMINISTRATOR OF NEW YORK COUNTY

**DAHLIA DAMAS**, in her capacity as the Public Administrator of New York County, Temporary Administrator of the Estate of Chi-Chuan Wang, declares pursuant to 28 U.S.C. 1746, under the penalties of perjury, as follows:

1.    I serve as the Public Administrator of New York County (whose office is often referred to by the parties to this litigation as the "PA" and which will sometimes be referred to herein as the "PA"), which is a statutorily empowered agency of the City of New York that administers estates in special circumstances. Chi-Chuan Wang ("C.C. Wang") died on July 3, 2003. Since August 2003, my office has served as the temporary administrator ("Temporary Administrator") of the Estate of C.C. Wang (the "Estate").

2.    I am over 18 years of age and I submit this declaration based upon my review, with the assistance of my legal counsel, Schram Graber & Opell P.C., of records maintained by my office as a regular practice and custom in the ordinary course of business, and based upon discussions with my legal counsel at Schram Graber & Opell P.C.

1

3.  As the Temporary Administrator, I am aware of the claims that have been filed in this action by Yien-Koo Wang King ("Yien-Koo"), who has preliminary letters testamentary that permit her to prosecute this action on behalf of the Estate against Andrew Wang (sometimes referred to as "Andrew"), his father, Shou-Kung Wang (together Andrew and Shou-Kung Wang are referred to as the "Wangs"), and others.

4.  I was commissioned as the Public Administrator of New York County on September 28, 2015.  The individual who was serving as the Public Administrator during the relevant period in this action was Ethel J. Griffin, who died on May 11, 2015.  Ms. Griffin served as the Public Administrator of New York County from 1988 until her death.  I was her immediate successor in office.

5.  Because I was not in office during the relevant period in this action, I have no personal knowledge regarding the allegations in this proceeding. Notwithstanding the foregoing, I have personally reviewed relevant records attached hereto, which were maintained in the ordinary course of business by my office. Moreover, my counsel, Glenn A. Opell, Esq. of Schram Graber & Opell P.C., has reviewed the file maintained by his office and my office, and, with his aid, I have concluded that a diligent search has been made of records relating to the matters set forth herein.  Based upon that search and discussions with my counsel regarding the administration of the estate, I submit this declaration. Each of the documents attached hereto have been maintained in the ordinary course of business by my office.

A.  *Facts Concerning the Creation of the Estate in 2003 and the Collection and Valuation of Certain Estate Assets.*

6.  On August 4, 2003, the Surrogate's Court appointed Andrew to act as preliminary executor of the Estate and to act jointly with the PA as Temporary Administrator as co-fiduciaries (the "Co-fiduciaries") in managing the affairs and assets of the Estate. Attached hereto as **Exhibit**

**1** is a true and correct copy of the Surrogate's order dated August 4, 2003 appointing the Co-fiduciaries.

7. The Co-fiduciaries responsibilities included, among other things, collecting the assets of the Estate, raising sufficient liquidity to pay the debts, taxes and administration expenses of the Estate and generally safeguarding the property of the Estate until it is determined who is entitled to the Estate.[1]

8. In late 2003, the PA—with the aid of its legal counsel, including Peter S. Schram, Esq.—began the task of marshalling C.C. Wang's assets, including bank accounts, artwork and other personal property.[2]

9. During this time, the Co-fiduciaries collected, among other things, the following:

   a. 133 paintings designated as "Classical Chinese Paintings;"

   b. 108 "seals" used by C.C. Wang to identify paintings that he owned and/or created;

   c. More than 300 Chinese paintings and sculptures created by C.C. Wang and other modern and contemporary Chinese artists; and

   d. All financial accounts that C.C. Wang owned in his personal name and which did not contain a beneficiary designation.

---

[1] At the time the PA was appointed, there was a dispute over a will of C.C. Wang offered for probate by Andrew. That will was subsequently denied probate. Litigation is now ongoing over a prior will and codicils.

[2] At the time the PA was appointed, her counsel was Schram & Carew, P.C., with the two principals being Peter S. Schram, Esq. and Colleen F. Carew, Esq. Ms. Carew subsequently left the firm and it continued under the name Peter S. Schram, P.C. The firm then subsequently changed to Schram & Graber, P.C. On January 1, 2014, Glenn A. Opell, Esq. joined the firm and the firm changed to Schram Graber & Opell, P.C. Peter S. Schram, Esq. is now mostly retired and residing out of state. However, he continues to maintain an of counsel role with Schram Graber & Opell P.C.

10. The Co-fiduciaries also decided that the Estate would pay the expenses related to Condominium Unit #24H, 445 5th Avenue, New York, NY ("Unit 24H"), that had allegedly been transferred by C.C. Wang into a revocable trust he created.

11. Upon receipt of certain Estate owned Classical Chinese Paintings from Yien-Koo in or about late 2003 or early 2004, the PA, Andrew's legal counsel Martin Klein, Esq., and Yien-Koo affixed their signature to color photographs of said paintings to acknowledge their receipt. Attached hereto as **Exhibit 2** are true and accurate copies of some of said signed photographs maintained by the PA's office in the ordinary course of business.

12. The Co-fiduciaries thereafter hired a New York based art appraisal firm, O'Toole Ewald Art Associates ("OTE"), to catalogue the Classical Chinese Paintings the Estate collected. Some of these paintings were located in C.C. Wang's apartment at 150 East 69th Street, Apartment 8A, New York, NY ("Apartment 8A") and others were turned over to the PA by the Wangs and Yien-Koo.

13. In 2003 or 2004 OTE took photographs of the 133 Classical Chinese Paintings and assigned identification numbers to them using the prefix "OTE." The OTE numbers assigned to these paintings were 83 through 163, 200 through 247 and 1000 through 1003.

14. Attached hereto as **Exhibit 3** are true and correct copies of photographs of paintings OTE 83, OTE 84, OTE 85, OTE 89, OTE 90, OTE 110, OTE 124, OTE 131, OTE 134, OTE 143, OTE 155, OTE 201, OTE 212, OTE 218, OTE 219, OTE 244 and OTE 245 taken by OTE in or about 2003 or 2004 and maintained by the PA's office in the ordinary course of business.

15. The Classical Chinese Paintings collected by the Co-fiduciaries were stored at Crozier Fine Arts, Inc. in Newark, NJ.

16. In or about late 2003 or early 2004, the Co-fiduciaries also hired an appraiser Kenneth Jay Linsner, ASA, SCV to conduct a fair market appraisal of the property contained in Apartment 8A. Attached hereto as **Exhibit 4** is a true and correct copy of the appraisal of Kenneth Jay Linsner submitted to and maintained by the PA's office in the ordinary course of business.

17. Item number 82 on Exhibit 4 (see, WANG_KING 0000307) identifies "[108] ASSORTED CHINESE CARVED HARDSTONE AND JADE 'CHOPS' bearing the various seals used by C.C. Wang on his painting and calligraphy."

18. These 108 seals were turned over to the PA and have remained under the office's exclusive custody and control since in or about late 2003 or early 2004.

19. In or about 2004, the Co-fiduciaries hired Sotheby's to appraise the paintings in their possession. The 133 classical Chinese paintings were appraised at $4,400,350.00 as of C.C. Wang's death. A true and correct copy of the appraisal prepared by Sotheby's and which has been maintained by the PA's office in the ordinary course of business is attached hereto as **Exhibit 19**. The IRS accepted the valuation of these paintings following audit of the federal estate tax return, which occurred between 2006 and 2007.

20. Sotheby's also appraised 366 other pieces of fine art (namely, modern and contemporary paintings and sculptures) and determined their fair market value to be $1,313,300.

21. The Estate filed a Form 706, United States Estate Tax Return, in 2004 assigning a value of $370,000 to Unit 24H as of the date of C.C. Wang's death.

B.   *Facts Concerning the Sale of Estate Assets Between 2005 and 2009.*

22. I have been advised by my attorneys that between 2005 and 2009, the PA, which at the time was Ethel Griffin, and Andrew in his capacity as preliminary executor, sold Estate owned

5

Classical Chinese Paintings through an auction at Sotheby's and private sales in Asia. The records maintained by my office in the ordinary course of business confirm this fact.

23. A review of my office's records shows that from February 2005 through August 2009, the Co-fiduciaries executed six contracts with private buyers in Asia, selling a total of 98 Classical Chinese Paintings for approximately $4.3 million. The buyers identified on the executed contracts of sale and other related records maintained by my office are "Mr. Wei Zheng," "Mr. Chen Mei-Lin," "Mr. Anthony Chou," "Mr. Yong Qing-Ye," and "Mr. Yue Da-Jin."

24. Attached hereto as **Exhibit 5** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein concerning a proposed private sale of Estate paintings to "Mr. Wei Zheng."

25. Attached hereto as **Exhibit 6** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein, dated February 16, 2005, affixing a copy of the Estate's executed escrow agreement and bill of sale with "Mr. Wei Zheng."

26. Attached hereto as **Exhibit 7** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein, dated March 11, 2005, referencing the Estate's completed sale of paintings to "Mr. Wei Zheng."

27. Attached hereto as **Exhibit 8** are true and correct copies of the Estate's duly executed (a) Contract of Sale with Wei Zheng; (b) Escrow Agreement with Wei Zheng; (c) Export Certificate of Wei Zheng; and (d) Bill of Sale with Wei Zheng.

28. Attached hereto as **Exhibit 9** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein, dated March 11, 2005, concerning a proposed private sale of Estate paintings to "Mr. Chen Mei-Lin."

29. Attached hereto as **Exhibit 10** is a true and correct copy of an email, dated March 16, 2005, and report provided to the PA by Elin Ewald of OTE with respect to the proposed sale of Estate paintings to an individual named "Mr. Chen Mei-Lin." The date on the affixed report was autogenerated on the date the report was retrieved from the PA's files and does not reflect the actual date of OTE's report.

30. Attached hereto as **Exhibit 11** is a true and correct copy of an email from Andrew Wang to Ethel Griffin, dated March 17, 2005.

31. Attached hereto as **Exhibit 12** is a true and correct copy of a letter received by the PA (through its legal counsel) from Martin Klein, dated April 22, 2005, enclosing copies of (a) an invoice from Crozier Fine Arts, Inc. for the shipment of certain Estate paintings to Hong Kong on or about February 16, 2005; (b) the Estate's executed Bill of Sale with Chen Mei-Lin; (c) the Estate's executed Purchase and Sale Agreement with Chen Mei-Lin; and (d) the Estate's executed Escrow Agreement with Chen Mei-Lin.

32. Attached hereto as **Exhibit 13** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein, dated April 29, 2005, concerning a proposed private sale of Estate paintings to "Mr. Anthony Chou."

33. Attached hereto as **Exhibit 14** is a true and correct copy of a letter received by the PA (through its legal counsel) from Martin Klein, dated June 21, 2005, enclosing copies of the Estate's (a) executed Purchase and Sale Agreement with Anthony Chou and (b) bill of Sale in relation to the Estate's sale to "Anthony Chou."

34. The Bill of Sale in Exhibit 14 identifies the "Buyer" as "Mrs. Raymond Qu." Based upon the records of my office related to this sale, it appears that the purchaser was Mr. Anthony

7

Chou. Accordingly, I can only assume that the reference to Mrs. Raymond Qu was in error. My counsel's review of the records of this estate did not reveal any sales to Mrs. Raymond Qu.

35. Attached hereto as **Exhibit 15** is an email sent by Martin Klein to the PA (through its legal counsel), dated June 3, 2005, which contains an attachment titled the "Chou Bill of sale.doc," and which appears to be an unsigned version of the Bill of Sale attached to the Anthony Chou purchase and sale documents annexed as Exhibit 14.

36. Attached hereto as **Exhibit 16** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein, dated July 27, 2005, concerning a proposed private sale of twenty (20) Estate paintings to an individual named "Mr. Yong Qing Ye." Included in said facsimile are letters from an individual named Hui-Chen Wang Chen and an individual representing to be her attorney, Tab K. Rosenfeld, Esq., granting the Estate permission to sell eight (8) paintings in the possession of the Co-fiduciaries that Hui-Chen Wang Chen claimed "100% ownership of."

37. Attached hereto as **Exhibit 17** is a facsimile cover sheet containing a message sent by the PA's counsel to Martin Klein, dated August 29, 2005, approving the sale proposed in Martin Klein's July 27, 2005 facsimile, subject to two works being removed from the sale.

38. Attached hereto as **Exhibit 18** is a true and correct copy of a letter received by the PA (through its counsel) from Martin Klein, dated October 14, 2005, enclosing copies of the fully executed set of documents in connection with the Estate's sale to "Mr. Yong Qing Ye."

39. Attached hereto as **Exhibit 20** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein, dated December 13, 2005, proposing a private sale of eight (8) Estate paintings to an individual named "Mr. Yong Qing Ye."

40. Attached hereto as **Exhibit 21** is a true and correct copy of a report of OTE, dated December 15, 2005, commenting on the proposed sale of paintings referenced in the December 13, 2005 facsimile of Martin Klein (Exhibit 20).

41. Attached hereto as **Exhibit 22** is a true and correct copy of the purchase and sale agreement for 8 paintings to "Mr. Yong Qing Ye," executed by the PA and dated January 26, 2006.

42. Attached hereto as **Exhibit 23** is a true and correct copy of a facsimile received by the PA (through its counsel) from Martin Klein, dated April 23, 2008, proposing to sell fourteen (14) Estate paintings to a person named "Mr. Yue Da-Jin."

43. Attached hereto as **Exhibit 24** is a true and correct copy of the "Fair Market Value Appraisal of Fine Art" dated May 2, 2008 from Elin Ewald of OTE, concerning the proposed sale of paintings to an individual named "Yue Da Jin."

44. I have been made aware that in Andrew Wang's June 2019 deposition testimony he states that at the last minute the sale of Estate paintings to Mr. Wei Zheng didn't go through and that, instead, Andrew found a substitute buyer named "Raymond Ye."

45. I have instructed my counsel, Glenn A. Opell, Esq., to conduct a diligent search of the records maintained by my office and his office for records referencing a person named "Raymond Ye." The earliest record we have been able to locate bearing that name is dated November 19, 2014 and in the form of an email he (and others) received from Carolyn Shields, Esq. (Andrew's legal counsel at the time), purporting to affix a contract of sale signed by "Raymond Ye" for the same paintings allegedly purchased by Wei Zheng. Based on this diligent search, I have no reason to be believe that Ethel Griffin countersigned a contract to sell Classical Chinese Paintings to a person named Raymond Ye. Attached hereto as **Exhibit 25** is a true and correct copy of the aforementioned email from Carolyn Shields dated November 19, 2014.

46.  Attached hereto as **Exhibit 26** are true and correct copies of emails provided by my counsel to the other parties in this action, which were sent and received by Ethel Griffin, Martin Klein, Andrew Wang, Elin Ewald and Peter Schram concerning a proposed auction of some of the Estate's paintings through Sotheby's.

47.  I have also been made aware that in his June 2019 deposition testimony in this matter concerning the private sales, Andrew Wang stated that Ethel Griffin suggested to him that he contact a person by the name of "Er Shi Fu" to locate buyers for the Estate's artwork.

48.  I have instructed my counsel, Glenn A. Opell, Esq., to conduct a diligent search of the records maintained by my office and his office for Estate records referencing a person named "Er Shi Fu."  We have been unable to locate any records bearing that name and, after this diligent search, it appears that no such records exist.

49.  Based upon my responsibilities, knowledge of the policies and procedures of the office of the Public Administrator and my conduct as the Public Administrator, I am aware of the fiduciary duty the PA owes to every estate it administers.  Based upon the historical policies and procedures of the office, I am of the belief that Ethel Griffin, who at the time period in question had been the Public Administrator for over 15 years, adhered to the standards of this office and would have required that any action taken by Andrew to secure the sale of Estate artwork be done by Andrew in his capacity as preliminary executor and with the full expectation that he would fulfill his fiduciary duty to the Estate by acting in its best interest when locating private buyers and negotiating the terms of sale.

50.  I can further state that it is the policy of the PA to be transparent in its dealings when acting as the fiduciary of an estate.  As a result, it is my belief that Ethel Griffin understood that the persons identified as the "buyers" and "purchasers" in the Estate's duly executed purchase

and sale agreements, escrow agreements, and bills of sale, to be the actual buyers of the paintings listed therein. I do not believe Ms. Griffin would have signed these documents if she believed that the buyers listed therein were not the actual purchasers.

51. Further, when selling estate property, the PA's responsibility is to achieve the best terms for the estate it is administering. Although I understand there were liquidity concerns in the estate and money was needed to pay estates taxes and administration expenses, I do not believe Ms. Griffin would have agreed to sell any of the Estate's paintings at prices she believed to be below their market value. As part of the process of ensuring that the paintings sold were at market value, the PA arranged for OTE to review the price of the paintings sold by private sale.

52. I am advised by my counsel, and the purchase and sale and escrow agreements confirm, that Andrew's attorneys often processed the funds received from the sale of paintings to private buyers and that Andrew and his attorneys assisted with the shipment. Unless the PA was specifically informed by Andrew or his attorneys that the funds came from an account other than the purchaser listed in the purchase and sale agreement and/or the paintings were being shipped to an address other than that of the purchaser, the PA would have been under the impression that funds received from the sale came from the actual purchaser and that the paintings were shipped to the address designated by the purchaser. A review the relevant records maintained by the PA and its counsel did not reveal any communications informing the PA of anything to the contrary.

Dated: New York, New York
      February 14, 2020

*Dahlia Damas*
Dahlia Damas, Public Administrator
of New York County as Temporary
Administrator of the Estate of Chi-Chuan
Wang