# Exhibit 6

I, CHI-CHUAN WANG, reside in the County of New York, State of New York, hereby make, publish and declare this to be my Last Will and Testament, and hereby revoke all of my prior Wills and Codicils.

Certain of the terms used herein are defined in ARTICLE XV hereof.

## ARTICLE I

## MEDICAL AND FUNERAL EXPENSES

I direct that all funeral expenses, all other costs and expenses related to my burial and all expenses of my last illness shall be paid by my Executor as an expense of administering my estate.

## ARTICLE II

## TANGIBLE PERSONAL PROPERTY

A.      I give all of my Tangible Personal Property (which is defined in Paragraph A.9 of ARTICLE XV hereof and which excludes all works of art whether created by me or other artists) to my wife, YUAN-SU CHEN WANG, hereinafter referred to as "my Spouse," if she survives me. If my Spouse does not survive me, then I give all of my Tangible Personal Property to such of my children who survive me, to be divided among them, as to value, as nearly as possible in equal portions, and in such manner, as to the items thereof, as they shall agree, or, absent agreement among them, as my Executor, in her absolute discretion, shall determine. There need be no adjustment among my surviving children if any of them shall receive, under this ARTICLE, more than his or her

AWSK_00003775

pro rata share of my Tangible Personal Property and I empower my Executor, in her absolute discretion, to sell any or all of said property and to distribute the proceeds among my surviving children if my Executor deems it desirable to minimize or eliminate the discrepancy between the value of property actually received by any such child under this ARTICLE and such child's pro rata portion of my Tangible Personal Property. If neither my Spouse nor any of my children shall survive me, all of said property shall be sold, and the net proceeds therefrom shall be added to my Residuary Estate and disposed of in accordance with the terms of ARTICLE III hereof.

B.     I direct that all expenses of storing, packing and/or insuring any such property, and all expenses of delivering such property to the beneficiary or beneficiaries thereof at their respective places of residence, or at such other place within the United States as the beneficiary or beneficiaries may direct, shall be paid by my Executor as an expense of administering my estate.

## ARTICLE III

## RESIDUARY ESTATE

All the rest, residue and remainder of the property of every kind and description and wheresoever situated which shall belong to me or be subject to my disposal at the time of my death (herein referred to as my "Residuary Estate") shall be paid to the then acting Trustee of THE CHI-CHUAN WANG REVOCABLE TRUST, which was created by an Agreement dated February 21, 1997, and which has been modified by: (i) an Amendment, dated August 13, 1998; (ii) a Second Amendment dated December 3, 1998; and (iii) the Amended and Restated Agreement which I have signed on the same date as the date of this Will (collectively, the "Revocable Trust"). I direct that the property constituting my Residuary Estate shall be added to the principal of the Revocable Trust

AWSK_00003776

and shall be disposed by the Trustee thereof, in accordance with all of the terms and provisions of the Agreement relating thereto. Upon the distribution of my Residuary Estate by my Executor, and the receipt thereof by the Trustee of the Revocable Trust, my Executor shall be fully released and discharged, and the administration of my estate shall cease, with respect to my Residuary Estate and the Trustee of the Revocable Trust shall not be required to account to nor be subject to the control of the court in which this Will is admitted to probate. If the Revocable Trust is not in existence at the time of my death, or if for any reason the disposition of this ARTICLE to the Revocable Trust is not valid, then I direct that my Residuary Estate shall be disposed of as follows:

A.    If my Spouse survives me, my Residuary Estate shall be divided into two (2) shares, hereinafter designated as the "Marital Deduction Share" and the "Nonmarital Share," respectively, each of which shall be constituted and disposed of as hereinafter provided.

1.    The Marital Deduction Share shall consist of forty (40%) percent of my Residuary Estate, and the Nonmarital Share shall consist of sixty (60%) percent of my Residuary Estate.

2.    The Marital Deduction Share shall be held in a separate trust for the benefit of my Spouse, and shall be disposed of in accordance with the terms provided in ARTICLE IV hereof.

3.    The Nonmarital Share shall be disposed of as provided in ARTICLE V hereof.

4.    In dividing my Residuary Estate as above provided and allocating assets (real or personal), between the Martial Deduction Share and the Nonmarital Share, my Executor shall have discretionary fiduciary power to determine the allocation of particular assets

AWSK_00003777

among the Shares and, in making such division and allocation, shall, to the extent that valuation is required, use values determined at the time of such division rather than estate tax values; provided, however, to the extent possible, the Marital Share: (a) shall be funded only with property which qualifies for the federal estate tax marital deduction; and (b) if my estate shall be liable for any federal estate taxes, shall not be funded with any asset which qualifies for the foreign death tax credit.

B.     If my Spouse does not survive me, my Residuary Estate shall be disposed of as provided in ARTICLE V hereof.

C.     Notwithstanding anything to the contrary contained in this Will, I hereby direct my Executor to instruct the Trustees of THE C.C. WANG CHARITABLE TRUST, created by me, as Grantor, and me, my son, SHOU-KING WANG, and my daughter, YIEN-KOO WANG KING, as Trustees, under an Agreement dated February 26, 1997, that, upon the termination thereof according to the terms of the Agreement governing such trust, they shall distribute eighty (80%) percent of the principal and income remaining upon such termination to the Metropolitan Museum of Art, located in New York, New York, for use by the Department of Asian Art for the acquisition and/or publication of Chinese paintings and calligraphies. The Museum either may use the funds to create an endowment for such purpose or may chose to spend all of the proceeds. In either case, the credit line for any acquisition or publication shall credit the "C.C. Wang Family Fund."

## ARTICLE IV

## TRUST FOR MARITAL DEDUCTION SHARE

The Marital Deduction Share shall be held in trust on the following terms and

AWSK_00003778

conditions:

A. _Net Income_. The Trustee shall pay to my Spouse, or shall apply for her benefit, all of the net income of the trust, in quarter-annual installments, or more frequently if the Trustee deems it to be appropriate, during her lifetime.

B. _Principal_. The Trustee is authorized, but she is not directed, to pay to my Spouse, or to apply for her benefit, so much or all of the principal of the trust as the Trustee may determine from time to time, and in the exercise of absolute discretion, reasonably may be needed to provide for the health, education, support and maintenance of my Spouse. In making any such discretionary payment or application of principal, the Trustee shall consider any other income or resources which, to the extent of her knowledge and information at the time of such payment or application, may be available to my Spouse from any source other than this trust, including the legal obligation of anyone to support her. All decisions of the Trustee under this Paragraph B shall be final and not contestable by anyone.

C. _Productive Property_. Notwithstanding anything to the contrary contained in this Will, including, without limitation, Paragraph B of ARTICLE XIV hereof, in respect of any assets allocated to or acquired in this trust which shall be or become unproductive of income, my Spouse shall have the right to require that the Trustee either make the same productive or convert the same into productive property within a reasonable time after my Spouse notifies the Trustee, in writing, of her exercise of such right.

D. _Disposition of Trust Upon Death of my Spouse_. Upon the death of my Spouse, this trust shall terminate, and, upon such termination, the Trustee shall pay any accrued income and any undistributed income of the trust to my Spouse's estate, and shall dispose of the then

AWSK_00003779

principal of the trust as provided in ARTICLE V hereof, after making provision for any Death Taxes which may be recoverable from this trust by the personal representatives of my Spouse's estate, under Code Section 2207A and/or any corresponding provision of any state tax law.

E. <u>Marital Deduction Elections</u>. It is hereby intended as of the date of the execution hereof that my Executor shall elect, pursuant to Code Section 2056(b)(7), to qualify the trust administered under this ARTICLE for the federal estate tax marital deduction allowable in my estate. However, in recognition that circumstances (including the extent of my assets, applicable tax law and the health of my Spouse at the time of my death) may be substantially different from circumstances at the date hereof, my Executor, in the exercise of absolute discretion, may make or not make such election as to all, a fractional share or a fixed dollar amount of such trust. Such determination shall be conclusive and binding on all persons interested in, or who may become interested in, such trust. If such election only is made over a portion of the trust administered under this ARTICLE, then the trust shall be divided into two (2) separate trusts, one of which shall constitute the portion thereof which is so qualified for federal estate tax marital deduction (the "Marital Trust"), and the other separate trust shall constitute the portion thereof which is not so qualified (the "Taxable Trust"). I also direct my Executor to make the special election under Code Section 2652(a)(3) with respect to any part or all of the Marital Trust. If such special election is made as to only a portion of the Marital Trust, then the Marital Trust shall be divided into two (2) separate trusts, with one such separate trust constituting the portion thereof as to which such special election was made, and the other such separate trust constituting the remaining portion thereof. All of the foregoing trusts shall be administered by the Trustee in accordance with the terms provided in this ARTICLE.

AWSK_00003780

### DISPOSITION OF NONMARITAL SHARE IF I AM SURVIVED BY MY SPOUSE; DISPOSITION OF MY RESIDUARY ESTATE IF I AM NOT SURVIVED BY MY SPOUSE; AND/OR DISPOSITION OF THE PRINCIPAL OF ALL TRUSTS CREATED UNDER ARTICLE IV HEREOF UPON THE SUBSEQUENT DEATH OF MY SPOUSE

A.    <u>Distribution to Equalize Gifts to Settlor's Children</u>.  Upon my death, my Executor shall ascertain the then aggregate value of the shares of stock and proprietary leases relating to cooperative apartments 4X, 8A, 8B and 8X located at 150 East 69th Street, New York, New York, to the extent that such shares and proprietary leases pass by operation of law to my Spouse, and/or my son, SHOU-KUNG WANG, and/or such son's wife, CAO-CHING WANG, as surviving joint tenants with rights of survivorship (such aggregate value is hereinafter referred to as the "Equalization Amount"): Such values shall be based on the value of each apartment as finally determined in the estate tax proceeding relating to my estate. The foregoing shall not apply with respect to any such apartment as to which the entire ownership thereof is effectively disposed of by the terms of the Agreement for the Revocable Trust or by the terms of this Will. If I am survived by my Spouse, then, out of the Nonmarital Share, or, if I am not survived by my Spouse, then, out of my Residuary Estate (the property constituting the Nonmarital Share or my Residuary Estate, as the case may be, hereinafter is referred to in this ARTICLE as the "Estate"), my Executor shall pay the following:

1.    A sum equal to the lesser of:  (a) the Estate; or (b) the Equalization Amount shall be paid to my daughter, YIEN-KOO WANG KING, if she is living at my death. If my said daughter is not then living, such sum shall be paid to her then living issue, <u>per stirpes</u>; subject, however, to the terms of ARTICLE VI hereof. If neither my said daughter nor any of her issue shall survive me, the gift in this Paragraph A.1 shall lapse.

AWSK_00003781

2.      After the sum payable under Paragraph A.1 of this ARTICLE is satisfied in full (the Estate reduced by the amount paid under such Paragraph hereinafter is referred to as the "Remaining Estate"), the following sums shall be paid:

(a)      A sum equal to four-sevenths (4/7) of the lesser of: (i) the Remaining Estate; or (ii) the Equalization Amount shall be paid to my daughter, HSIEN-CHEN WANG CHANG, if she is living at my death. If my said daughter is not then living, such sum shall be paid to her then living issue, per stirpes; subject, however, to the terms of ARTICLE VI hereof. If neither my said daughter nor any of her issue shall survive me, the gift in this subparagraph (a) shall lapse.

(b)      A sum equal to three-sevenths (3/7) of the lesser of: (i) the Remaining Estate; or (ii) the Equalization Amount shall be paid in equal shares to (or all to the survivor of) such of my grandchildren, JAMES TCHENG, GIGI TCHENG and VIVI TCHENG CHOW, who are living at my death. If no such grandchild shall survive me, the gift in this subparagraph (b) shall lapse.

B.      Disposition of Remaining Balance of Nonmarital Share or of my Residuary Estate; Disposition of Trusts under ARTICLE IV upon the Subsequent Death of My Spouse. If I am survived by my Spouse, then, upon my death, the portion of the Nonmarital Share remaining after providing for the payments required by Paragraph A of this ARTICLE, if any, and, upon the subsequent death of my Spouse, the then principal of all trusts created under ARTICLE IV hereof, or if I am not survived by my Spouse, then, upon my death, the portion of the my Residuary Estate remaining after providing for the payments required by said Paragraph A, if any (the property constituting such remaining portion of the Nonmarital Share and/or the principal of any such trust

AWSK_00003782

under ARTICLE IV hereof, or such remaining portion of my Residuary Estate, as the case may be, hereinafter is referred to in this ARTICLE as "the Fund," and the time that the Fund is directed to be so disposed of under this ARTICLE hereinafter is referred to as the "Time of Disposition") shall be divided into four (4) shares, hereinafter referred to as "SHARE A," "SHARE B," "SHARE C" and "SHARE D," respectively.

C. <u>Disposition of Shares</u>. The SHARES referred to in Paragraph B of this ARTICLE shall be constituted and disposed of as follows; subject, however, to the terms of Paragraph D of this ARTICLE and to the terms of ARTICLE VI hereof:

       1.     SHARE A shall consist of thirty-five (35%) percent of the Fund and shall be paid to my son, SHOU-KUNG WANG, if he is living at the Time of Disposition, or, if he is not then living, to his issue then living issue, <u>per stirpes</u>;

       2.     SHARE B shall consist of thirty-five (35%) percent of the Fund and shall be paid to my daughter, YIEN-KOO WANG KING, if she is living at the Time of Disposition, or, if she is not then living, to her then living issue, <u>per stirpes</u>;

       3.     SHARE C shall consist of twenty (20%) percent of the Fund and shall be paid to my daughter, HSIEN-CHEN WANG CHANG, if she is living at the Time of Disposition, or, if she is not then living, to her then living issue, <u>per stirpes</u>; and

       4.     SHARE D shall consist of ten (10%) percent of the Fund and shall paid in equal shares to (or all to the survivor of) such of my grandchildren, JAMES TCHENG, GIGI TCHENG and VIVI TCHENG CHOW, who are living at the Time of Disposition.

D. <u>Pro Rata Allocations</u>. If all primary and contingent beneficiaries of one (1) or more of the subparagraphs of Paragraph C of this ARTICLE shall not be living at the Time of

AWSK_00003783

Disposition, then the percentage of the Fund which would have passed under such subparagraph or subparagraphs shall be divided among the remaining subparagraphs of said Paragraph C, pro rata in accordance with the relative percentages set forth therein. If the primary and contingent beneficiaries in all but one (1) of such subparagraphs shall not be living at the Time of Disposition, then the entire Fund shall pass under the remaining subparagraph whose beneficiary or beneficiaries shall be then living. If none of the foregoing primary or contingent beneficiaries shall be living at the Time of Disposition, then the entire Fund shall be disposed of as provided in ARTICLE VII hereof.

## ARTICLE VI

### TRUST FOR GRANDCHILD (OR MORE REMOTE ISSUE) UNDER AGE 25

Notwithstanding anything to the contrary contained in this Will, if, upon my death, any share of my Residuary Estate, or upon the termination of any trust herein created if any share of the principal or income of such trust, shall become payable to a grandchild (or more remote issue) of mine, at a time when such grandchild (or more remote issue) is under the age of twenty-five (25) years (each such grandchild or more remote issue is hereinafter referred to in this ARTICLE as the "Beneficiary"), then such share (instead of being paid outright to the Beneficiary) shall be held in trust for the Beneficiary on the following terms and conditions; provided, however, that if such shares are directed to be so set aside for the use of the Beneficiary on more than one occasion, then all such shares shall nevertheless be held in a single trust for his or her benefit:

A.    Disposition of Trust While Beneficiary is Under Age 25. During the time that the Beneficiary is under the age of twenty-five (25) years, the Trustee is authorized, but she is not directed, to pay or apply so much or all of the net income and/or principal of the trust to or for the

AWSK_00003784

use of the Beneficiary as the Trustee may determine from time to time, in the exercise of absolute discretion and for any reason whatsoever. Any net income which is not so paid or applied shall be added to the principal of the trust.

B. <u>Standard for Distributions</u>. In making any discretionary payment or application of income or principal to the Beneficiary pursuant to Paragraph A of this ARTICLE, the Trustee may consider or disregard the interests of any potential remainderman, and any other income or property which, to the extent of her knowledge and information at the time of such payment or application, may be available to the Beneficiary from any source other than this trust, including the legal obligation of anyone to support the Beneficiary.

C. <u>Termination at Age 25</u>. The Trustees shall pay to the Beneficiary the entire principal of the trust which is remaining when the Beneficiary attains the age of twenty-five (25) years.

D. <u>Death of Beneficiary Before Age 25</u>. If the Beneficiary shall die before attaining the age of twenty-five (25) years, then, upon his or her death, the Trustee shall pay the then principal of the trust and any accrued income and any undistributed income (said amounts are hereinafter collectively referred to in this Paragraph as the "ARTICLE VI TRUST PRINCIPAL") to the Beneficiary's then living issue, <u>per stirpes</u>. If no issue of the Beneficiary is then living, then the ARTICLE VI TRUST PRINCIPAL shall be paid to the then living issue, <u>per stirpes</u>, of the Beneficiary's nearest lineal ancestor who was a descendant of mine and who has issue then living. If no issue of any such ancestor shall be then living, then the ARTICLE VI TRUST PRINCIPAL shall be paid to my then living issue, <u>per stirpes</u>. In all of the foregoing cases, the terms of the opening paragraph of this ARTICLE shall apply. If no issue of mine is then living, the Trustees shall

AWSK_00003785

E.  <u>Power of Appointment Relating to Generation-Skipping Transfer Tax</u>.  The

Trustee is authorized, at any time during the term of the trust, but prior to the Beneficiary's death:

(i) to give to the Beneficiary a testamentary General Power of Appointment over all, a fractional share

or a fixed dollar amount of the principal of the trust, if the Trustee deems it desirable to do so, by an

instrument in writing which is delivered to the Beneficiary; (ii) to eliminate such power for all or any

part of such principal as to which such power was previously created and (iii) to divide the principal

of the trust into two separate trusts based upon the then portion of the trust that would be includible

in the Beneficiary's gross estate if he or she died immediately before such division (in which case the

power shall be over the entire principal of the separate trust which would be so includible and over

no part of the other separate trust).  In authorizing such action, it is my hope (but I do not direct) that

a general power will be kept in effect when the Trustee believes the inclusion of the property affected

thereby in the Beneficiary's gross estate may achieve a significant savings in transfer taxes by having

an estate tax (rather than a generation-skipping transfer tax) imposed on property subject to the

general power, which may also permit a greater use of the generation-skipping transfer tax exemption

which is provided for by Code Section 2631(a) and which is available to the Beneficiary and to his

or her spouse.  Nothing in this Paragraph shall be construed to impose any legal obligation on the

Trustee to give such power to the Beneficiary and the Trustee shall have no liability or responsibility

for giving or not giving such power to the Beneficiary.  The decision of the Trustee under this

Paragraph shall be conclusive and binding on all persons interested in, or who may become interested

in, the trust.

AWSK_00003786

## CONTINGENT DISPOSITION

Upon my death, if my Residuary Estate, or upon the termination of any trust herein created if any share of the principal and income of such trust, is directed to be disposed of as provided in this ARTICLE, then the property constituting my Residuary Estate, or such principal and income, as the case may be, at the time the same is directed to be so disposed of, shall be paid to the then living person or persons who would be entitled to inherit the same from me under New York State law then in effect, as if I had then died without a Will, as a New York State resident, and as the owner of such property; subject, however, to the terms of Paragraph B of ARTICLE XIV hereof.

## ARTICLE VIII

## LIMITATION ON TERM OF TRUST; PROTECTION AGAINST CREDITORS

A.     Notwithstanding anything to the contrary contained in this Will, I direct that each separate trust hereunder, if any, of property apportioned to a person who was not in being at the date of my death shall terminate not later than twenty-one (21) years after the death of the last survivor of my Spouse and all of my issue who were in being at the date of my death, and, upon such termination, the then principal of such trust (including any accrued income and any undistributed income) shall be paid to such person; subject, however, to the terms of Paragraph B of ARTICLE XIV hereof.

B.     No interest of any beneficiary in any trust hereunder, either in income or principal, shall be subject to pledge, assignment, sale or transfer in any manner, nor shall any such beneficiary have the right to anticipate, charge or encumber his or her interest therein, nor shall such

AWSK_00003787

interest be liable or subject in any manner for the debts, contracts, liabilities or torts of such beneficiary.

## ARTICLE IX

## SIMULTANEOUS DEATH

A.    In the event that my Spouse and I shall die simultaneously or under such circumstances that the order of our deaths cannot be established by proof, then I direct that my Spouse shall be deemed to have survived me for purposes of this Will.

B.    Except as provided in the preceding Paragraph:

1.    In the event any beneficiary hereunder and I shall die simultaneously or under such circumstances as to render it difficult to determine who predeceased the other, then I direct that such beneficiary shall be deemed to have predeceased me for purposes of this Will.

2.    In the event that any beneficiary hereunder and any other person upon whose death such beneficiary shall become entitled to receive property hereunder shall die simultaneously or under such circumstances as to render it difficult to determine who predeceased the other, then I direct that such beneficiary shall be deemed to have predeceased such other person for the purposes of this Will.

## ARTICLE X

## DEATH TAXES

I direct that all Death Taxes, which shall become payable by reason of my death to any jurisdiction, whether in respect of property passing under this Will or otherwise, shall be borne by and

AWSK_00003788

apportioned against the recipients of any such property in accordance with the provisions of Section 2-1.8 of the New York State Estates Powers and Trusts Law.

## ARTICLE XI

### EXECUTORS AND TRUSTEES

A.    I designate my daughter, YIEN-KOO WANG KING ("YIEN-KOO"), as Executrix of this Will, and as Trustee of all trusts, if any, created hereunder.   If my said daughter shall predecease me or otherwise shall fail to qualify as Executrix of this Will, or as Trustee of any such trust, then I designate my son-in-law, KENNETH KING ("KENNETH"), as her successor. Notwithstanding anything herein contained to the contrary, the appointment of YIEN-KOO and/or KENNETH as Executor of this will or as Trustee of any trust created hereunder shall not be effective unless YIEN-KOO or KENNETH, as the case may be, prior to her or his qualification as such Executor or Trustee, agrees in writing to waive any fee or commission to which she or he may be entitled for serving in such capacity.   As used herein, the term "fee" or "commission" shall not be deemed to include out-of-pocket disbursements and the Executor or Trustee of any trust herein created shall be entitled to be reimbursed for such disbursements out of my estate or out of such trust, as the case may be.

B.    Subject to the designation of the successor contained in the prior Paragraph of this ARTICLE, each individual serving from time to time as an Executor and/or as a Trustee (including each individual who may be appointed pursuant to this Paragraph)  may designate any person or bank or trust company to serve as such Fiduciary's successor Executor and/or successor Trustee.  I also empower my Executor and/or Trustees, acting jointly if more than one is then acting,

C. C. W.

AWSK_00003789

to designate any person or bank or trust company to serve forthwith as an additional Executor and/or Trustee. Designations shall be made by a written instrument delivered to the then acting Executor and/or Trustees hereunder. Any such designation of a successor to take effect in the future may be revoked, by a written instrument delivered to the then acting Executor and/or Trustees hereunder, by the person who made the designation at any time before the successor qualifies, and any revoked designation may be superseded by a new designation. Notwithstanding the foregoing: no designation of a bank or trust company shall be effective if a bank or trust company is already serving as an Executor or as a Trustee, and no more than three (3) Executor and no more than three (3) Trustees of any trust shall serve at any one time.

C. Any Executor or Trustee acting hereunder may, by revocable power of attorney, delegate to any co-Executor or co-Trustee then acting hereunder, the full exercise of all or any powers granted by any provision of this Will to my Executor and/or Trustees; provided, however, that no discretionary power may be delegated to an Executor or to a Trustee who is specifically precluded by law or by the provisions of this Will from participating in the exercise of such power.

D. Any Executor or Trustee acting hereunder may at any time resign by written instrument delivered to the other co-Fiduciaries then acting hereunder, or if no co-Executor or co-Trustee is then acting hereunder, then to the Fiduciary who may succeed such resigning Executor or Trustee pursuant to the foregoing provisions of this Will.

E. Notwithstanding anything to the contrary in this Will, a Trustee of any trust herein created shall have no authority to: (i) make a discretionary payment or application of income or principal from such trust to or for the benefit of himself or herself or for the purpose of discharging his or her personal legal obligations; (ii) make discretionary allocations in his or her own favor of

AWSK_00003790

receipts or expenses between the principal and income of such trust; or (iii) grant a General Power of Appointment to himself or herself under Paragraph G of ARTICLE VI hereof.

## ARTICLE XII

### BOND; DEALINGS WITH FIDUCIARIES; VIRTUAL REPRESENTATION

A.      I direct that no bond or other security shall be required of any Fiduciary acting hereunder, regardless of the State of residence of such Fiduciary, or, if a bond is required by law, I direct that no surety of such bond need be given.

B.      No person dealing with my Fiduciaries shall be required to see to the application or disposition of any property transferred to them, or to inquire into the authority for or propriety of any action taken or not taken by my Fiduciaries.

C.      It shall not be necessary to serve with process any person who is a minor or otherwise under a legal disability in any judicial proceeding with respect to this Will, my estate or any trust herein created, including, without limitation, the proceeding to probate this Will, if any competent adult party to such proceeding has the same interest as such person. The written consent to, approval or ratification of any accounting, action, proposed action, payment or plan of distribution executed by all of the persons required to be served under applicable law, after taking into consideration the provisions of this Paragraph expressly waiving the requirement of service of process on minors and persons under other legal disabilities, shall be conclusive and binding on all persons interested therein, or who may become interested therein.

AWSK_00003791

## ARTICLE XIII

## CONFLICTS OF INTEREST

If any person acting hereunder as a Fiduciary, in his or her individual capacity or in the capacity as a fiduciary of another estate or trust, is a director, an officer and/or a shareholder of a corporation in which this estate or any trust created hereunder has an interest, or is a participant in, or a member or an owner of, an interest in a partnership, limited liability company, joint venture or other enterprise in which this estate or any trust created hereunder has an interest (any such corporation, partnership, limited liability company, joint venture or other enterprise is hereinafter referred to as "such Entity"), then I empower such Fiduciary to act freely on behalf of my estate and the trusts created hereunder in all matters relating to such Entity, without obtaining prior judicial approval, including, without limitation, decisions as to retention, sale, redemption or other disposition of stock, securities or other interests in such Entity, despite the fact that there may be a conflict of interest between the interests of my estate or the trusts created hereunder and the individual or other interests of such Fiduciary in such Entity as an officer, as a director, shareholder, member, partner or participant, as counsel or otherwise. Such Fiduciary, in dealing with any matter arising from or connected with such Entity, shall be held to the same standard, and to the same standard only, of care, diligence, prudence, judgment and good faith in the discharge of his or her duties as is or would be required of any other Fiduciary hereunder who is not connected with such Entity, and no special standard or duty of conduct shall be imposed on such Fiduciary by reason of such connection.

AWSK_00003792

## DISTRIBUTIONS TO MINORS AND PERSONS UNDER
## DISABILITY; FIDUCIARY POWERS

A. As used in this ARTICLE, the term "my Estate" shall include my testamentary property, the assets of any trust created hereunder and any property held under Paragraph B of this ARTICLE for the benefit of a minor or a person under any other legal disability.

B. Whenever any part of my Estate (including, without limitation, Tangible Personal Property) shall vest in a person under twenty-one (21) years of age, or who, in the sole judgment of my Fiduciaries, is under any other legal disability, I empower my Fiduciaries to hold the property so vested for the benefit of such person, with all the powers, discretion and immunities herein given, to invest and reinvest the same, collect the income therefrom and pay or apply so much or all of the net income and/or principal thereof to said person or for his or her support, education and maintenance as my Fiduciaries shall determine in the exercise of absolute discretion, and to accumulate the balance of the net income, adding the same to principal. Upon such person attaining the age of twenty-one (21) years, or no longer being under a legal disability, as the case may be, my Fiduciaries shall pay the then principal thereof, together with any accumulated and undistributed income, to such person. If such person shall die before attaining the age of twenty-one (21) years, or while still under a legal disability, then the Fiduciaries shall pay the same to such person's estate. My Fiduciaries are authorized to effect distribution hereunder by making payment or delivery to: (i) such person; (ii) either parent of such person; (iii) the guardian, committee, conservator or like fiduciary of such person; (iv) any adult person with whom such person resides or (v) a custodian for such person under the provisions of an applicable Uniform Transfers to Minors Act (or similar statute), and, in this regard, the Fiduciaries are also empowered to appoint themselves or any other

C. I hereby authorize and empower my Fiduciaries to take any action deemed by them, in their sole discretion, necessary for the handling and management of my Estate and the assets or liabilities comprising same to the same extent as I personally could act in the handling of said assets and liabilities were I alive and in sole possession and ownership thereof, said authority to be without any restriction or limitation whatsoever, and to be exercised without obtaining prior judicial approval, except that my Fiduciaries shall at all times act in good faith for the benefit of the beneficiaries of my Estate. This power and authority is intended to include all rights customarily given Executor and trustees, either by private document or the provisions of law, including, but not limited to: (i) the right to hold and retain any property constituting part of my Estate for any period, in the same form in which it is received; (ii) invest and reinvest assets in other assets, regardless of their location in any form of non-speculative investment which they may determine, whether or not such investment is of the nature prescribed by law, or unproductive of income, without diversification as to kind or amount, and with no liability for loss due to depreciation in value; (iii) borrow money for any purpose from anyone (including any Fiduciary acting hereunder) and, as security therefor, to mortgage or pledge any property held hereunder; provided that no securities shall be purchased on margin; (iv) sell (at public or private sale, for cash or credit, with or without security), exchange, mortgage, partition, lease for any period (even if beyond the period prescribed by law) and otherwise dispose of all property, real and personal, at such times and upon such terms and conditions as the Fiduciary may deem advisable; (v) manage real property, with authority to abandon, alter, adjust boundaries, demolish buildings, erect buildings, grant easements, improve, make extraordinary repairs, protect out of the general funds of the Estate and subdivide; (vi) grant options for the sale of any property

C. C. W.

AWSK_00003794

for any period of time deemed advisable by the Fiduciary (even if beyond the period prescribed by law); (vii) exercise any and all rights arising from the ownership of any asset, including, without limitation, corporate securities; (viii) carry out agreements to which I am a party at the time of my death; (ix) exercise stock options owned by me at the time of my death; (x) to the extent permitted by law, to carry on any business, incorporated or unincorporated, which I may own or in which I may have any interest at the time of my death, and to carry on with other partners any business in which I may have been a partner at the time of my death, all for any period of time, and to invest additional moneys in, or to make loans to or to liquidate the same upon such terms, as the Fiduciary may deem to be advisable; subject, however, to the terms of any shareholders' agreement, partnership agreement or other similar agreement with respect to such business and to which I am a party at the time of my death; (xi) enforce, compromise, adjust, settle or submit to arbitration, sue upon, forbear to sue upon or waive any claim or right in favor of or against my Estate; (xii) make loans, secured or unsecured, to any person, firm or corporation, in such amounts and upon such terms as the Fiduciary shall determine; (xiii) employ as custodian a bank or trust company located within or without the United States, and to acquire, hold, register, or dispose of property, including, without limitation, marketable securities, in the name of such custodian or agent or a nominee thereof without appointment of fiduciary capacity; (xiv) employ, and pay the compensation of, investment counsel, accountants, depositories, custodians, brokers, agents, attorneys and such other persons which the Fiduciary may select, irrespective of whether any person so employed (or any firm or corporation with which such person is affiliated or in which such person has an interest) is a Fiduciary hereunder; (xv) to pay fiduciary commissions and attorneys' fees at any time or times during the administration of my Estate, without the consent of the persons interested in, or who may become interested in, my Estate, without

C C W.

AWSK 00003795

bond, all in advance of the settlement of the account of my Fiduciaries; (xvi) make distributions in money or in specific property, real or personal, or an undivided interest therein, or partly in money and partly in such property, even though legacies or shares are composed differently, without regard to the adjusted basis for federal income tax purposes of any such property and without making pro rata distributions of specific assets; (xvii) in any case where doubt or uncertainty exists, to credit receipts (including stock dividends or other items received in kind) and/or to charge disbursements to or against income or principal in such amounts and proportions as my Fiduciaries may see fit; (xviii) make, or refrain from making, all elections and determinations permitted under any applicable income, gift, estate, inheritance or generation-skipping transfer tax law, without regard to the effect of any such election on the interest of any beneficiary of my Estate, and to make or not make adjustments between income and principal on account thereof; (xix) disclaim, in whole or in part, any devise, legacy, interest, right, privilege or power granted to me under the will or other instrument of any person; (xx) abstain from any rendering or filing of any inventory or periodic account in any court and (xxi) exercise all rights, powers, authority, privileges, discretions and immunities conferred in this Will until all assets of my Estate are fully distributed.

D.    At any time prior to the completion of the funding of any trust herein created, the Executor may exercise any of the powers granted to the Trustee relating to the payment or application of the income and principal of such trust and treat the amounts so paid or applied as a partial funding of such trust.

E.    My Fiduciaries may receive, mingle and administer hereunder any additional property that may be added by any person to the trust or trusts created herein if said property is acceptable to the Trustee.

AWSK 00003796

# ARTICLE XV

## DEFINITIONS

A.   All references in this Will to:

1.   "Code" shall mean the Internal Revenue Code of 1986, as amended, and shall be deemed to refer to corresponding provisions of any subsequent federal tax law.

2.   "Death Taxes" shall mean estate, transfer, succession, inheritance, legacy and similar taxes (including interest and penalties thereon, if any).

3.   "Executor" shall include any executor, preliminary executor, administrator c.t.a. or ancillary executor, as the case may be, from time to time acting hereunder.

4.   "Fiduciary" shall mean the Executor or Trustee, as the case may be, from time to time acting hereunder and the powers herein given to my Fiduciary shall be had and exercised by the Executor or Trustee, as the case may be, except as may be otherwise specifically provided herein.

5.   The word "give" shall be deemed to include "devise" and/or "bequeath," as the sense requires.

6.   "Issue" shall mean all lawful descendants (in any degree) of the ancestor designated, and shall include:  (a) any person who shall have been legally adopted by any of my issue prior to such person's attaining the age of eighteen (18) years; and (b) any issue (whether by blood or by legal adoption in accordance with clause (a) of this subparagraph) of such person.

7.   A direction or power to "pay or apply" income or principal shall include the absolute discretion to determine whether to pay the same or any part thereof to the person entitled thereto or to apply the same or any part thereof for such person's benefit, without any requirement

AWSK_00003797

of obtaining prior judicial approval.

8. The term of "Power of Appointment" shall mean a direction to the Trustee to pay any property subject to such power in such proportions and manner and upon such estates, whether outright or in lesser estates, or in trust (with such trustee as the person exercising such power may choose) or otherwise, and subject to such powers, as the person exercising such power may, at any time and from time to time, direct and appoint (i) by instrument or instruments in writing signed by such person and delivered to the Executor or Trustee if such power is exercisable during such person's lifetime or (ii) by such person's Last Will and Testament by a specific exercise of such power which expressly refers to this Will if such power is exercisable upon such person's death. If such power is a "General Power of Appointment," the person exercising such power may do so in favor of his or her estate or any other appointee or appointees, without limitation. If such power is a "Limited Power of Appointment," the person exercising such power may do so in favor of any appointee or appointees, other than the person exercising such power, his or her estate, his or her creditors, and the creditors of his or her estate, and such power may be further limited by the provisions of this Will pursuant to which the power is created. If such power is a testamentary power, the Fiduciaries acting hereunder shall be protected in relying upon an instrument admitted to probate in any jurisdiction as the Will of the person exercising such power or in acting upon the assumption that such person died intestate in case my Fiduciaries have no notice of the existence of a Will of such person within six (6) months after his or her death.

9. "Tangible Personal Property" shall mean: personal effects; books; furniture, furnishings, silver, china, glassware and other household effects; jewelry and wearing apparel; animals; motor vehicles and related equipment and all other articles of household or personal

AWSK_00003798

use or adornment, whether or not of the same kind as the foregoing, and regardless of location, and shall include all insurance policies pertaining to such property, but shall exclude all pictures, paintings and other objects of art.

10.    "Trustee" shall include any trustee or trustees from time to time acting hereunder.

B.    Wherever necessary or appropriate, the use herein of any gender shall be deemed to include the other genders and the use herein of either the singular or the plural shall be deemed to include the other.

IN WITNESS WHEREOF, I have signed this Last Will and Testament in the presence of the persons witnessing it at my request this _13th_ day of _June_ , 2000.

_____
CHI-CHUAN WANG

This instrument, consisting of 25 pages, the first 24 of which have been initialed by CHI-CHUAN WANG, the Testator above named, was, on the above date, in our presence, signed, published and declared by the Testator, to be his Last Will and Testament, and, at the same time, we, at his request, in his presence and in the presence of each other, signed our names as attesting witnesses and inserted our respective places of residence.

_____ residing at
THOMAS KIRWAN

_____ residing at
RAYMOND MARTIN

_____ residing at

_190 E. 72 ST._

_New York, NY 10021_

_56 Village Lane_

_Hanover, MA 02339_

_____

_____

N:\Clients\Wang.CC\Will.2000.wpd

25

C. C. W.

AWSK_00003799

# AFFIDAVIT OF ATTESTING WITNESSES

STATE OF NEW YORK        )
: ss.:
COUNTY OF New York      )

We, the undersigned, being duly and severally sworn, depose and say:

The within Will was subscribed at the end thereof in our presence and sight by CHI-CHUAN WANG, the within named Testator, at 190 EAST 72ND ST. New York, N Y , on the 13th day of June , 2000 who, at the time of making such subscription, declared such instrument to be his Last Will and Testament.

Each of us then signed our respective names as witnesses at the end of said Will in the presence and sight of the Testator, at his request, and in the presence and sight of each other. At the time of executing said Will, the Testator was over the age of 18 years and, in our respective opinions, was of sound mind, memory and understanding, was not under any restraint or in any respect incompetent to make a Will, could read, write, and converse in the English language, was suffering from no defect of sight, hearing or speech, or from any other physical or mental impairment which would affect his capacity to make a valid Will. The Will was so executed as a single original instrument and was not executed in counterparts.

The within Will was shown to each of us at the time this affidavit was made and we examined it as to the signatures of the Testator and the witnesses.

Each of us was acquainted with the Testator and make this affidavit at his request. The Will was executed by the Testator and witnessed by each of the undersigned under the supervision of Jeffrey A. Zankel , an attorney at law.

Severally sworn to before me
by the above individuals this
13th day of June , 2000

Notary Public

JEFFREY A. ZANKEL
Notary Public, State of New York
No. 30-4665062
Qualified in Nassau County
Commission Expires Feb. 28, 20 01

N:\Clients\Wang.CC\Will.2000.wpd

# ~((( The )))~

# Last Will

## ~((( and )))~

# Testament

## ~((( of )))~

CHI-CHUAN WANG

Dated: June 13, 2000

LAW OFFICES

## GODSBERG ZANKEL & GOLDEN, P.C.

1001 FRANKLIN AVENUE

GARDEN CITY, NEW YORK 11530

(516) 248-0070

FAX (516) 248-7192



PROBATE
FILED

03 JUL 10 PM 12:49

SURROGATE'S COURT
NEW YORK COUNTY

AWSK_00003801

# FIRST CODICIL TO THE
## LAST WILL AND TESTAMENT
### OF
### CHI-CHUAN WANG

I, CHI-CHUAN WANG, residing in the County of New York, State of New York, do make,

publish and declare this to be the First Codicil to my Last Will and Testament, dated June 13, 2000

(hereinafter sometimes referred to collectively as "my Will").

I. I hereby amend my Will by adding thereto the following ARTICLE II-A, as if the

same had been originally incorporated therein:

"ARTICLE II-A

Pursuant to the terms of Paragraph (A) of ARTICLE SECOND of an Indenture of

Trust, dated February 26, 1997, under which I am the Grantor, and my son, SHOU-KUNG WANG,

my daughter, YIEN-KOO WANG KING, and I are the Trustees (such trust is known as "The C.C.

WANG CHARITABLE TRUST"), I reserved the right to revoke, by my Will, the interest granted

by the terms of such trust to any of my children or grandchildren named therein. In the exercise of

such right, I hereby revoke the interest granted by the terms of The C.C. WANG CHARITABLE

TRUST to my son, SHOU-KUNG WANG, and to any of his children, such interest consisting of

a forty (40%) share of the Unitrust Amount (as defined in the Agreement for such trust) payable

after my death and after the death of my wife, YUAN-SU CHEN WANG."

II. Except as herein modified, I hereby ratify, republish and confirm my Will and I

1

AWSK_00003802

declare that my Last Will and Testament, dated June 13, 2000, and this First Codicil, together shall constitute my Last Will and Testament.

IN WITNESS WHEREOF, I, CHI-CHUAN WANG, have signed this First Codicil, in the presence of the persons witnessing it at my request this 10th day of July, 2002.

X _____
CHI-CHUAN WANG

SIGNED, PUBLISHED AND DECLARED BY CHI-CHUAN WANG, the testator above named, as and for the First Codicil to his Last Will and Testament, in our presence, and we, at his request, in his presence and in the presence of each other, have hereunto subscribed our names as witnesses to said Codicil on the day and year above written.

_____ residing at _190 E. 72 St. N.Y.C._

_____ residing at _190 E. 72nd N.Y.C._

_____ residing at _____

2

# AFFIDAVIT OF ATTESTING WITNESSES

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

We, the undersigned, being duly and severally sworn, depose and say:

The within Codicil was subscribed at the end thereof in our presence and sight by CHI-CHUAN WANG, the within named testator, at *190 East 72nd Street, New York, NY* on the *10th* day of *July*, 2002, who, at the time of making such subscription, declared such instrument to the First Codicil to his Last Will and Testament June 13, 2000.

Each of us then signed our respective names as witnesses at the end of said Codicil in the presence and sight of the testator, at his request, and in the presence and sight of each other. At the time of executing said Codicil, the testator was over the age of 18 years and, in our respective opinions, was of sound mind, memory and understanding, was not under any restraint or in any respect incompetent to make a Codicil, could read, write, and converse in the English language, was suffering from no defect of sight, hearing or speech, or from any other physical or mental impairment which would affect his capacity to make a valid Codicil. The Codicil was so executed as a single original instrument and was not executed in counterparts.

The within Codicil was shown to each of us at the time this affidavit was made and we examined it as to the signatures of the testator and the witnesses.

Each of us was acquainted with the testator and make this affidavit at his request. The Codicil was executed by the testator and witnessed by each of the undersigned under the supervision of Jeffrey A. Zankel, an attorney at law.

*[signature]*

*[signature]*

Severally sworn to before me
by the above individuals this
*10th* day of *July* , 2002.

*[signature]*

**JEFFREY A. ZANKEL**
Notary Public, State of New York
No. 30-4665062
Qualified in Nassau County
Commission Expires Feb. 28, 20 *03*

AWSK_00003804

# —(((The)))—

# Last Will

## —((( and )))—

# Testament

## —((( of )))—

CHI-CHUAN WANG

Dated: July 10, 2002

LAW OFFICES

## GODSBERG ZANKEL & GOLDEN, P.C.

1001 FRANKLIN AVENUE
GARDEN CITY, NEW YORK 11530
(516) 248-0070
FAX (516) 248-7192

FILED
PROBATE

03 JUL 10. PM 12:45

SURROGATE'S COURT
NEW YORK COUNTY

AWSK 00003805