**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- x

YIEN-KOO KING, NORTHWICH       :
INVESTMENTS LTD., and SOON HUAT,    :
INC.                                     :
                                     :   Civ. Action No.: 1:14-cv-07694 (LJL)
                Plaintiffs,    :
                                     :
-against-                              :
                                     :
ANDREW WANG, SHOU-KUNG WANG,    :
BAO WU TANG, JIAN BAO GALLERY,     :
ANTHONY CHOU, CHEN-MEI-LIN, WEI   :
ZHENG, YE YONG-QING, YUE DA-JIN    :
and JOHN DOES 1-9,                    :
                                     :
                Defendants.    :
------------------------------------------------------- x

## DEFENDANT ANDREW WANG'S RESPONSE TO PLAINTIFF'S LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS AND COUNTERSTATEMENT

      Defendant Andrew Wang ("AW" or "Defendant") by his undersigned counsel, hereby

responds to the Local Civil Rule 56.1 Statement filed by Plaintiff Yien-Koo King, in her capacity

as preliminary executrix of the Estate of Chi-Chuan Wang ("YK" or "Plaintiff") in support of her

motion for summary judgment (the "Statement").  Defendant respectfully submits that Plaintiff's

motion should be denied because her memorandum and evidentiary submissions fail to

demonstrate the absence of a genuine dispute as to material facts necessary to entitle Plaintiff to

judgment as a matter of law.

## GENERAL RESPONSES AND OBJECTIONS

      A.  Each of the following General Responses and Objections is explicitly incorporated by

reference into each of the Specific Responses and Objections set forth below.

      B.  Defendant objects to the Statement to the extent that many of Plaintiff's statements do

not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by

"citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."
In many paragraphs of the Statement, the testimonial and/or documentary evidence cited by
Plaintiff in support of an alleged fact does not support the proposition for which it is cited, does
not relate to the proposed fact, or contradicts the proposition.  In such cases, Defendant objects to
the statement set forth in the paragraph and moves to strike and/or requests that the Court
disregard the statement for failing to comply with Local Civil Rule 56.1(d) and relevant caselaw.
*See Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona*, 138 F Supp. 3d 352, 394
(S.D.N.Y. 2015), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of
Pomona, NY*, 945 F.3d 83 (2d Cir 2019) ("where the record does not support the assertions in a
Local 56.1 statement, those assertions [are] disregarded and the record reviewed independently")
(quotation omitted); *Am Gen. Life Ins. Co. v. Diana Spira 2005 Irrevocable Life Ins. Trust*, 2014
WL 6694502, at *1 (S.D.N.Y. Nov. 25, 2014) ("The Court grants [the plaintiff's] motion to strike
as to argumentative statements in the [56.1 statement] and as to purported factual statements
which are unsupported by any citation to the record.").

     C.  Defendant further objects to the Statement to the extent it includes statements that are
irrelevant under the substantive law governing the narrow breach of fiduciary claim upon which
plaintiff seeks partial summary judgment.  Plaintiff's 93-page, 374 paragraph Statement contains
statements regarding subject matter, topics, and events that are immaterial and/or irrelevant to
Plaintiff's motion.  Plaintiff's inclusion of such statements violates Local Civil Rule 56.1's
requirement of a "short and concise statement … of the material facts as to which the moving
party contends there is no genuine issue to be tried."  *See also Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 248 (1986) (holding that, on summary judgment, "[f]actual disputes which are
irrelevant or unnecessary" to the claims at issue "will not be counted"); *Congregation Rabbinical*

*Coll. of Tartikov, Inc.,* ("as a matter of course" the Court will "not consider irrelevant facts because they are, by nature, not pertinent to the case.").

    E.  Defendant further objects to the Statement to the extent it relies upon the Declaration of Yien-Koo Wang King, dated February 14, 2020, (the "YK Declaration") for evidentiary support.  As set forth herein, in Defendant's Counter-Statement of Material Facts, and in Defendant's Rule 56.1 Statement filed in support of his own summary judgment motion (Dkt. No. 196), undisputed facts demonstrate that YK lacks credibility as a witness, and, thus, statements purportedly supported by the YK Declaration are facially insufficient evidence for summary judgment purposes as matter of law.  *See United States v Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn.*, 480 F.3d 841, 845 (8th Cir. 2007) ("if the credibility of a critical interested witness is even partially undermined in a material way by the non-moving party's evidence, summary judgment in favor of the party with the burden of proof should be denied") *citing See Chem. Bank v. Hartford Acc. & Indem. Co.,* 82 F.R.D. 376, 378 -79 (S.D.N.Y. 1979) (denying summary judgment when non-movant demonstrated a genuine issue of fact concerning the credibility of an affiant).

    F.  Defendant further objects to the Statement to the extent it relies upon the Declaration of Dahlia Damas, dated February 14, 2020 (the "PA Dec." or "PA Declaration") for evidentiary support of any statement on the grounds that in her declaration, Ms. Damas, the current Public Administrator of New York County states that she "was not in office during the relevant period in this actions" and "I have no personal knowledge regarding the allegations in this proceeding" but that her declaration is based upon a search of records performed by her attorney Glenn Opell and "discussions with my counsel regarding the administration of the estate."  (PA Dec. ¶ 5.) Rule 56(c)(2)(4) of the Fed. R. Civ. P. requires that "an affidavit or declaration used to support

or oppose a motion must be made on personal knowledge, set out facts that would be admissible

in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The PA Declaration, on its face, admits that it does not comply with the rule and is based on

hearsay. *See, e.g., Larouche v. Webster*, 175 F.R.D. 452, 455 (S.D.N.Y. 1996) ("Any portion of

an affidavit that is not based on personal knowledge should be stricken.).

G.  Defendant further states that his admission of any of Plaintiff's statements, or his

failure to object on the grounds of materiality or relevance, should not be deemed as an

admission that any such fact is material, relevant, or otherwise admissible at trial, or that there

are not additional facts that are needed to place such statement in its proper context.  These

responses and counter-statements are not intended as an exhaustive statement of all facts that

Plaintiffs would adduce if this matter proceeds to trial.  Nor are these responses an exhaustive

statement of all issues relevant to the case, and Defendant expressly reserves the right to adduce

additional facts in any pre-trial order, in other pre-trial submissions, and at trial.[1]

## RESPONSES

I.    **1985-2003: Undisputed Facts Concerning the Initial Formation of the Wangs'
Enterprise, as Well as the Wangs' Motive, Knowledge, Intent, and Preparation to
Acquire Estate Assets Through Predicate Activity.[2]**

1.    Chi-Chuan Wang (born Wang Jiqian, hereinafter "C.C. Wang" or "CC"), a
Chinese-American artist, scholar, and collector of Chinese art and who was internationally

---

[1] Defendant directs the Court to his Motion to Strike Plaintiff's "Statement of Uncontested Material Facts in Support
of Plaintiff's Motion for Partial Summary Judgment Finding Andrew Wang Liable for Breach of His Fiduciary
Duty" that was filed in conjunction with his opposition to Plaintiff's motion for partial summary judgment for
argument on these and other objections.  Exhibits to the Kelly Declaration of Thomas B. Kelly, dated February 14,
2020, Dkt. No. 202 ("Kelly Dec") and the Declaration of Thomas B. Kelly, dated April 13, 2020 ("Kelly Res. Dec.")
are referred to as "Kelly Dec. Ex. __."  The Declaration of Andrew Wang in Support of Defendant Andrew Wang's
Opposition to Plaintiff's Motion for Partial Summary Judgment, dated April 13, 2020, is referred to as "AW Dec."

[2] The headings contained within this Rule 56.1 Statement are provided for clarity and organizational purposes, but are
not intended to themselves advance statements of undisputed fact.

renowned for his important contributions in his field, died in New York City on July 3, 2003. [3]
He was 96.[4]

**RESPONSE TO PARAGRAPH 1:**  Undisputed.

2.      CC was a seminal figure and collector in the world of Chinese art and antiquities.[5]
In his lifetime, he had acquired an Estate comprised of, *inter alia,* several hundred fine and rare
Chinese paintings, sculptures and antiques—some dating back as early as the 10th Century.[6] His
collection of ancient Chinese paintings had been consistently listed as one of the greatest
collections in the world. [7] In 1998, twenty-five paintings from his collection, including the
famous hanging scroll "Riverbank" by 1000 year-old master Dong Yuan, were given to the
Metropolitan Museum of Art in New York City.[8] So grateful was the Met for CC's lifetime
contributions that it established the "C.C. Wang Family Collection" to honor him in 1998.[9]

**RESPONSE TO PARAGRAPH 2:**  Undisputed with the clarification that the

authenticity of "Riverbank" remains in doubt.  *See* Kelly Dec. Ex. 105 at ¶¶ 14-16.

3.      C.C. Wang first immigrated to the U.S. in 1949 when he fled the installment of
Mao Zedong's communist regime in China. [10] He brought with him his wife and two youngest
daughters. [11] One of the daughters who came to the U.S. would pass away. [12] The other, Yien-
Koo Wang King ("Yien-Koo," the Plaintiff in this proceeding), would go on to establish a
prolific career in art, working for years as a sculptor and a public relations agent for her father.[13]

---

[3] Savitsky Decl. Exh. 2 (Defendants' Answer to the Amended Complaint admitting allegations of ¶¶25 and 70 of the
Amended Complaint (Savitsky Decl. Exh. 1)).

[4] Savitsky Decl. Exh. 2 (admitting allegations of ¶¶25 and 70 of the Amended Complaint).

[5] Savitsky Decl. Exh. 2 (admitting allegations of ¶26 of the Amended Complaint, except as to the value of C.C. Wang's
collection).

[6] Savitsky Decl. Exh. 2 (admitting allegations of ¶26 of the Amended Complaint, except as to the value of C.C. Wang's
collection).

[7] Savitsky Decl. Exh. 2 (admitting allegations of ¶26 of the Amended Complaint, except as to the value of C.C. Wang's
collection).

[8] Savitsky Decl. Exh. 2 (admitting allegations of ¶26 of the Amended Complaint, except as to the value of C.C. Wang's
collection).

[9] Savitsky Decl. Exh. 2 (admitting allegations of ¶26 of the Amended Complaint, except as to the value of C.C. Wang's
collection).

[10]  Savitsky Decl. Exh. 2 (admitting allegations of ¶27 of the Amended Complaint).

[11] Savitsky Decl. Exh. 2 (admitting allegations of ¶27 of the Amended Complaint).

[12] Savitsky Decl. Exh. 2 (admitting allegations of ¶27 of the Amended Complaint).

[13] Savitsky Decl. Exh. 2 (admitting allegations of ¶27 of the Amended Complaint).

**OBJECTION TO PARAGRAPH 3:**  Defendant objects to paragraph 3 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 3:**  Defendant respectfully refers the Court to the document cited for its full meaning and context.

4.  (A) Yet CC's son, Defendant Shou-Kung Wang ("SK"), remained behind in China in 1949.[14] (B) The unanswered question of why his father left him behind bothered SK for decades.[15] (C) SK suffered punishment and indignities by members of the Communist Party who mocked him, CC's only son, for having been abandoned when the rest of his family fled the People's Republic of China.[16] (D) For "30 years" SK claims to have endured "suffering [for] the sin/crime" of his father.[17]

**OBJECTION TO PARAGRAPH 4:**  Defendant objects to paragraph 4 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 4:**  Defendant respectfully refers the Court to the document cited for its full meaning and context.

5.  In 1979, changes in the relationship between the United States and Chinese governments finally gave SK an opportunity to emigrate from China to New York.[18] SK left his home country that year with his wife and children to come live with CC in Manhattan.[19]

**OBJECTION TO PARAGRAPH 5:**  Defendant objects to paragraph 5 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[14] Savitsky Decl. Exh. 2 at ¶29 (Defendants' Answer to the Amended Complaint).

[15] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 6:22-8:3).

[16] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 6:22-7:11).

[17] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 6:22-7:11).

[18] Savitsky Decl. Exh. 4 ("China Policy," *Milestones: 1977-1980*, U.S. DEP'T OF STATE OFFICE OF THE HISTORIAN, *available at* https://history.state.gov/milestones/1977-1980/china-policy)

[19] Savitsky Decl. Exh. 2 at ¶29 (Defendants' Answer to the Amended Complaint).

**RESPONSE TO PARAGRAPH 5:**  Defendant respectfully refers the Court to the

documents cited for their full meaning and context.

6.      Though he had experience as an electronic technician in China, SK worked in the U.S. by assisting C.C. in cataloguing and managing his considerable art collection.[20] By the mid-1980s, SK worked as C.C.'s bookkeeper and assistant.[21] As part of his duties, he was entrusted with access to C.C.'s vast array of valuable paintings, as well as his father's funds.[22]

**OBJECTION TO PARAGRAPH 6:**  Defendant objects to paragraph 6 on the grounds

that the purported facts asserted therein are not relevant or material to any issue before

the Court.

**RESPONSE TO PARAGRAPH 6:**  Defendant respectfully refers the Court to the

document cited for its full meaning and context.

7.      (A) At last reunited with his family and his 30 years of suffering in Communist China behind him, SK thought he would be happy in New York. (B) He wasn't.  Instead, he grew dissatisfied with his work arrangement with CC.[23] (C) In the words of SK's son and CC's grandson, Defendant Andrew Wang ("Andrew"), SK's did not like that he "ha[d] to work for himself, he ha[d] to earn salary to feed me and my brother and sister and we were only allowed to buy apartment or house until much later time after separating [from C.C.] for 30 years."[24] (D) It upset SK that he "was not treated as we thought because my father [SK] was only son."[25] (E) Andrew believed that C.C. was paying SK much less than what SK—an "electronic technician"[26] who spoke "little English"[27]—could have made if he had "worked for somebody else."[28] (F) "[O]nly giving $1000 to" SK per month was "not enough for his children."[29] (G) To Andrew, CC's requirement that SK work under these conditions violated "our tradition, our culture" because "you're not supposed to treat your son like that."[30]

---

[20] Savitsky Decl. Exh. 2 at ¶29 (Defendants' Answer to the Amended Complaint).

[21] Savitsky Decl. Exh. 2 at ¶34 (Defendants' Answer to the Amended Complaint).

[22] Savitsky Decl. Exh. 2 at ¶34 (Defendants' Answer to the Amended Complaint).

[23] Savitsky Decl. Exh. 5 (4/21/17 AW Probate Trial Trans. at 504:17-505:22).

[24] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 504:17-505:22).

[25] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 504:17-505:22).

[26] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 522:8-11).

[27] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 3:25-4:9).

[28] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 517:2-26).

[29] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 517:2-26).

[30] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 505:4-505:9).

**OBJECTION TO PARAGRAPH 7:**  Defendant objects to paragraph 7 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to statements 7(A) and 7(B) on the grounds that purported facts asserted therein are not each supported by citation to evidence, in violation of Local Civil Rule 56.1(d).

**RESPONSE TO PARAGRAPH 7:**  Defendant respectfully refers the Court to the document cited for its full meaning and context.

8.      (A) Nevertheless, SK agreed to work for his father and, in so doing, developed a deep familiarity with CC's classical Chinese paintings.[31] (B) Beginning in or around 1985, SK used a computer to create and maintain lists of CC's collection.[32] (C) He did this to "help [CC] to organize his collection [and] to do the recording work."[33]

**OBJECTION TO PARAGRAPH 8:**  Defendant objects to paragraph 8 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 8 on the grounds that the cited testimony was subject to objections from SK's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 8:**  Defendant disputes statement 8(A) on the grounds that the cited testimony does not support the proposition that SK "developed a deep familiarity with CC's classical Chinese paintings."  *See* Savitsky Decl. Exh. 3.  SK testified that he "helped [CC] to organize his collection to do the recording work."  *See* Savitsky Decl. Exh. 3 at 90:17-92:17.  Statement 8(B) is disputed to the extent that it implies SK possessed relevant professional record keeping skills or was formally engaged in, or responsible for, maintaining an inventory of artwork in CC's collection.

---

[31] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 90:17-92:17).
[32] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 91:14-92:6).
[33] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 90:17-91:13).

He did not.  Defendant respectfully refers the Court to Savitsky Decl. <u>Exh. 3</u> at 90:17-

103:13 for the context of SK's testimony regarding keeping lists of artwork for his father.

9.      A "serial number [system] that [SK] designed" was used to keep track of the various paintings on the lists.[34] For example, SK would designate a hanging wall scroll with the letter "A," a smaller hand-scroll with the letter "B," or an album/booklet of paintings with the letter "C."[35] SK also maintained photographs of at least some of the listed paintings.[36]

**OBJECTION TO PARAGRAPH 9:**  Defendant objects to paragraph 9 on the grounds

that the purported facts asserted therein are not relevant or material to any issue before

the Court.  Defendant further objects to paragraph 9 on the grounds that the testimony

cited was subject to objections from SK's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 9:**  Defendant disputes paragraph 9 to the extent that it

implies SK possessed relevant professional record keeping skills or was formally

engaged in, or responsible for, maintaining an inventory of artwork in CC's collection.

He was not.  Defendant respectfully refers the Court to Savitsky Decl. <u>Exh. 3</u> at 90:17-

103:13 for the context of SK's testimony regarding keeping lists of artwork for his father.

10.      Whenever a classical Chinese painting was purchased and SK knew about it, he "would add it to the list."[37] Whenever CC wanted to offer paintings to someone for gift or sale, he would tell SK and SK could compile an accurate list of those paintings.[38] If a painting ultimately left CC's collection, it was SK's job to "delete it or cross it out" of the list.[39]

**OBJECTION TO PARAGRAPH 10:**  Defendant objects to paragraph 10 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

---

[34] Savitsky Decl. <u>Exh. 3</u> (11/18/2003 SK Dep. Trans. at 100:20-102:18).

[35] Savitsky Decl. <u>Exh. 3</u> (11/18/2003 SK Dep. Trans. at 100:20-102:18).

[36] Savitsky Decl. <u>Exh. 3</u> (11/18/2003 SK Dep. Trans. at 103:6-25).

[37] Savitsky Decl. <u>Exh. 3</u> (11/18/2003 SK Dep. Trans. at 94:10-95:3).

[38] Savitsky Decl. <u>Exh. 3</u> (11/18/2003 SK Dep. Trans. at 95:15-96:14).

[39] Savitsky Decl. <u>Exh. 3</u> (11/18/2003 SK Dep. Trans. at 94:10-95:3).

before the Court.  Defendant further objects to paragraph 10 on the grounds that the

testimony cited was subject to objections from SK's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 10:**  Defendant disputes paragraph 10 to the extent that

it implies SK possessed relevant professional record keeping skills or was formally

engaged in, or responsible for, maintaining an inventory of artwork in CC's collection.

Defendant respectfully refers the Court to Savitsky Decl. Exh. 3 at 90:17- 103:13 for the

context of SK's testimony regarding keeping lists of artwork for his father.

11.     (A) But SK eventually lost his position managing CC's art and financial affairs.[40]
(B) In 1997, CC "took all of the paintings away" from SK by moving them out of C.C.'s
apartment in Manhattan ("Apartment 8A").[41] (C) Then, in 1998, SK claims he learned that he
would no longer be involved in his father's financial affairs either.[42] (D) According to SK, that
realization came when CC "took away the checkbook that [SK] regularly took care of" in
Apartment 8A and told SK that "he [CC] would handle [the checkbook] himself."[43]

**OBJECTION TO PARAGRAPH 11:** Defendant objects to paragraph 11 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 11 on the grounds that the

testimony cited was subject to objections from SK's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 11:**  Defendant disputes statement 11(A).  The

testimony cited does not support the proposition that SK possessed, or lost, "a position

managing CC's art and financial affairs."  SK did not manage his father's "art and

financial affairs," CC managed his own affairs and SK assisted him as needed.  *See, e.g.,*

Savitsky Decl. Exh. 3 at 96:15-97:23 ("there was a lot of selling of art work done that he

---

[40] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 142:21-145:13).

[41] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 144:6-145:8).

[42] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 142:21-143:3).

[43] Savitsky Decl. Exh. 3 (11/18/2003 SK Dep. Trans. at 142:21-143:3).

handled himself" and "occasions that he sold some of the paintings that I was totally

unaware of [.]").

12.     The reason for CC's revocation of SK's responsibilities has been the subject of dispute between the parties for nearly 17 years.[44]

**OBJECTION TO PARAGRAPH 12:**  Defendant objects to paragraph 12 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 12 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 12:**  Disputed to the extent the document cited does not

support the proposition that the "reason for CC's revocation of SK's responsibilities" has

been the sole "subject of dispute."

13.     (13A) It is not in dispute, however, that five years later, in 2003, C.C. and his son were "still having a communication problem because after years, you know, the problem with the Kings."[45] (13B)  SK's "problem with the Kings" was that when C.C. revoked SK's authority to manage his art collection and finances, he appointed Yien-Koo and her husband Kenneth King to replace SK.[46]  (13C) SK "was not happy" with this decision and was still having certain "disagreements" with CC years later.[47]

**OBJECTION TO PARAGRAPH 13:**  Defendant objects to 13 on the grounds that the

purported facts asserted therein are not relevant or material to any issue before the Court.

Defendant further objects to paragraph 13 on the grounds that it relies upon the

inadmissible and unreliable YK Declaration.

---

[44] Declaration of Yien-Koo Wang King, dated February 14, 2020, ("YK Decl.") at ¶¶5-6.

[45] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 616:15-617:21).

[46] YK Decl. at ¶¶5-6.

[47] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 616:26-617:11).

**RESPONSE TO PARAGRAPH 13:**  Defendant disputes statement 13(B) to the extent

it implies SK was solely responsible for managing his father's art collection and finances.

*See* Kelly Dec. Ex. 129 at 90:17-98:18.

14.      For example, Andrew testified that, on January 31, 2003, CC entrusted him, rather than SK, to handle and store a bag of 15 to 20 classical Chinese paintings taken from CC's safe deposit box at North Fork Bank in Manhattan.[48]  Andrew claimed in prior trial testimony  that he believes he was chosen for this task because, unlike other family members, he did not "really care that much [about]" and was "not involved in those family matters, not with money, not with the artworks, not even with other kind[s] of business in the family."[49] Later he testified, CC "specifically instructed" Andrew "not to tell my father [SK] about the bag" of paintings he and Andrew had removed from the safe deposit box.[50]

**OBJECTION TO PARAGRAPH 14:**  Defendant objects to paragraph 14 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 14:**  Defendant disputes paragraph 14 as an incomplete

account of the events of January 31, 2003 and refers the Court to the testimony cited for

its full context and meaning.

15.      Yet on the same day that the 15-20 Chinese paintings were removed from storage at North Fork Bank, Andrew put them in his car and drove them to SK's house in Queens. [51] Andrew was living with SK at the time. [52] Andrew claims to have kept this promise to never tell SK about these paintings.[53]

**OBJECTION TO PARAGRAPH 15:** Defendant objects to paragraph 15 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

---

[48] Savitsky Decl. <u>Exh. 5</u> (4/21/17 AW Prob. Tr. Trans. at 618:15-619:11).

[49] Savitsky Decl. <u>Exh. 5</u> (4/21/17 AW Prob. Tr. Trans. at 618:15-619:11).

[50] Savitsky Decl. <u>Exh. 5</u> (4/21/17 AW Prob. Tr. Trans. at 618:15-619:11).

[51] Savitsky Decl. <u>Exh. 5</u> (4/21/17 AW Prob. Tr. Trans. at 615:3-616:20).

[52] Savitsky Decl. <u>Exh. 5</u> (4/21/17 AW Prob. Tr. Trans. at 615:3-616:20).

[53] Savitsky Decl. <u>Exh. 5</u> (4/21/17 AW Prob. Tr. Trans. at 616:21-617:4).

**RESPONSE TO PARAGRAPH 15:**  Defendant respectfully refers the Court to the testimony cited for its full meaning and context.

16.     What occurred in the months following the removal of the 15 to 20 classical Chinese paintings from CC's safe deposit box on January 31, 2003 would eventually become the subject of a sixteen-year probate dispute.[54]

**OBJECTION TO PARAGRAPH 16:**  Defendant objects to paragraph 16 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 16:**  The document cited does not support the proposition that "the removal of the 15 to 20 classical Chinese paintings from CC's safe deposit box on January 31, 2003 would eventually become the subject of a sixteen-year probate dispute."  Defendant respectfully refers the Court to the document cited for its full meaning and context.

17.     At 96, and only a few months before his death in July, CC executed two documents helmed by SK which purported to disinherit Yien-Koo King from his Estate, while simultaneously increasing the share to be received by SK and his children.[55]

**OBJECTION TO PARAGRAPH 17:**  Defendant objects to paragraph 17 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 17:**  Defendant respectfully refers the Court to the document cited for its full meaning and context.

18.     These were a purported codicil drafted by SK[56] dated February 10, 2003 (the "Fraudulent Codicil") followed by a purported will dated February 18, 2003 (the "Fraudulent

---

[54] Savitsky Decl. Exh. 8 (1/2/20 Decision and Order of Appellate Division, First Department dismissing SK's petition to probate the Fraudulent Codicil).

[55] Savitsky Decl. Exh. 8.

[56] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 553:17- 554:4, 555:16-25).

Will").[57] Both documents shared the same material terms which (a) nearly doubled SK's family share of his father's Estate to 60%, (b) disinherited SK's sister (Plaintiff, YK); and (c) named SK and Andrew as co-executors in charge of managing CC's Estate assets.[58]

**OBJECTION TO PARAGRAPH 18**:  Defendant objects to paragraph 18 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 18 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 18**:  Disputed to the extent that the legal status of the 2003 Codicil remains pending in the courts.  Defendant respectfully refers the Court to the 2003 Codicil and the 2003 Will for the true, correct, and complete contents of each. *See* Kelly Dec. Ex. 5; Ex. 121.

19.    After a seventeen-year dispute, the Appellate Division of the New York State Supreme Court affirmed a unanimous jury's finding that, in January and February 2003, the Wang Defendants conceived of and executed a "scheme" to fraudulently and coercively induce the 96-year-old CC Wang into executing both the Fraudulent Codicil and the Fraudulent Will.[59] The court further adjudicated that, at least at the time the Fraudulent Will was signed, CC lacked the required testamentary capacity to alter his Estate plans.[60]

**OBJECTION TO PARAGRAPH 19**:  Defendant objects to paragraph 19 on the grounds that the purported facts asserted cited therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 19 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[57] Savitsky Decl. Exh. 8 (1/2/20 Decision and Order of Appellate Division, First Department dismissing SK's petition to probate the Fraudulent Codicil).

[58] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 556:4-559:2); Savitsky Decl. Exh. 8 (1/2/20 First Department decision).

[59] Savitsky Decl. Exh. 7 (Decision and Order of Appellate Division, First Department).

[60] Savitsky Decl. Exh. 6 (May 2017 Decree); Exh. 7 (6/7/18 Decision and Order of Appellate Division, First Department).

**RESPONSE TO PARAGRAPH 19**:  Defendant disputes paragraph 19 to the extent it mischaracterizes both the First Department's January 2, 2019 (the "First Dept. Decision"), which reversed the Surrogate Court's denial of YK's motion to dismiss SK's petition to probate the 2003 Codicil, and the 2017 jury verdict.  *See* Savitsky Decl. Exh. 7.  In the May 2017 trial on the validity of the 2003 Will, the jury made three findings of fact: (i) that CC Wang "was not of sound mind and memory at the time of execution of the will dated February 18, 2003"; (ii) that "the execution of the will dated February 18, 2003, by the testator Chi-Chuan Wang [was] the result of undue influence" by SK and AW; and (iii) "the execution of the will dated February 18, 2003 [was] the result of fraud by Shou-Kung Wang and/or Andrew Wang[.]"  Kelly Dec. Ex. 115.  The jury made no findings of fact with respect to the 2003 Codicil.  *Id*.

20.     Approximately one month after C.C. Wang executed the Fraudulent Will, he was hospitalized at New York Presbyterian Hospital.[61]

**OBJECTION TO PARAGRAPH 20**:  Defendant objects to paragraph 20 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 20**:  Disputed to the extent the evidence cited does not support that C.C. executed the "Fraudulent Will."

21.     While CC was hospitalized SK and Andrew claimed that they began "representing" his art interests.[62]

**OBJECTION TO PARAGRAPH 21**:  Defendant objects to paragraph 21 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[61] Savitsky Decl. Exh. 5 (4/21/17 AW Prob. Tr. Trans. at 589:8-13 and 4/25/17 Prob. Tr. Trans. at 901:9-16).

[62] Savitsky Decl. Exh. 9 (6/24/19 SK Dep. Trans. at 78:22-79:11).

**RESPONSE TO PARAGRAPH 21:**  Defendant disputes paragraph 21 to the extent the cited testimony from SK does not support the proposition that AW claimed he represented CC's art interests, nor that SK or AW "began to claim" anything "while CC was hospitalized."  Defendant respectfully refers the Court to the testimony cited for its complete meaning and context.

22.     They demanded that YK turn over certain paintings which belonged to C.C. over to them in this newly claimed capacity.[63]

**OBJECTION TO PARAGRAPH 22:**  Defendant objects to paragraph 22 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 22:**  Disputed to the extent that the cited testimony does not support the proposition that SK and Andrew "demanded that YK turn over certain paintings which belonged to C.C."  SK merely testified that he and AW "ask[ed] for those paintings back" in a "newly claimed capacity."  Defendant respectfully refers the Court to the testimony cited for its complete meaning and context.

23.     On March 29, 2003, YK and Kenneth King hand delivered 42 classical Chinese paintings directly to SK in CC's Apartment 8A in Manhattan.[64] SK signed a list of the paintings, verifying their receipt by him.[65]

**OBJECTION TO PARAGRAPH 23:**  Defendant objects to paragraph 23 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 23 on the grounds that the testimony cited was subject to objections from SK's counsel and is not admissible at trial.

---

[63] Savitsky Decl. Exh. 9 (6/24/19 SK Dep. Trans. at 78:22-79:11).

[64] Savitsky Decl. Exh. 9 (6/24/19 SK Dep. Trans. at 78:4-81:11); Savitsky Decl. Exh. 10 (6/24/19 SK Dep. exhibits SK-10 and SK-11).

[65] Savitsky Decl. Exh. 9 (6/24/19 SK Dep. Trans. at 78:4-81:11); Savitsky Decl. Exh. 10 (6/24/19 SK Dep. exhibits SK-10 and SK-11).

**RESPONSE TO PARAGRAPH 23:**  Undisputed.

24.     Two weeks later, YK and Kenneth King hand-delivered at least <u>21 classical Chinese paintings</u> directly to SK in CC's Apartment 8A in Manhattan.[66] SK signed a list of the paintings verifying their receipt by him.[67]

**OBJECTION TO PARAGRAPH 24:**  Defendant objects to paragraph 24 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant respectfully directs the Court to the documents cited for their complete meaning and context.

**RESPONSE TO PARAGRAPH 24:**  Defendant respectfully refers the Court to the testimony cited for its full meaning and context.

25.     C.C. was released from New York Presbyterian in April 2003.[68] Shortly afterward, SK moved him out of his apartment in the Upper East Side of Manhattan ("Apartment 8A"), to SK's house in Forest Hills, Queens.[69]

**OBJECTION TO PARAGRAPH 25:**  Defendant objects to paragraph 25 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 25 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 25:**  Undisputed.

26.     Kenneth King, Yien-Koo's husband, was not allowed to visit C.C. in Queens.[70]

**OBJECTION TO PARAGRAPH 26:**  Defendant objects to paragraph 26 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[66] Savitsky Decl. <u>Exh. 9</u> (6/24/19 SK Dep. Trans. at 81:14-82:23).

[67] Savitsky Decl. <u>Exh. 10</u> (6/24/19 SK Dep. exhibits SK-10 and SK-11).

[68] YK Decl. at ¶¶8-9.

[69] YK Decl. at ¶¶8-9.

[70] YK Decl. at ¶9.

before the Court.  Defendant further objects to paragraph 26 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 26:**  The document cited does not support the

proposition that Kenneth King was not allowed to visit C.C.

27.   C.C. would live in SK's house until the day before his death. [71]

**OBJECTION TO PARAGRAPH 27:**  Defendant objects to paragraph 27 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 27 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 27:**  Undisputed.

28.   C.C. was moved to the Cabrini Hospice facility in Manhattan on July 2, 2003. He
died the next day.[72]

**OBJECTION TO PARAGRAPH 28:**  Defendant objects to paragraph 28 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 28 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 28:**  Undisputed.

**II.   2003-2004: Undisputed Facts Concerning the Creation of the Estate of Chi-Chuan
Wang, Appointment of Andrew Wang as Preliminary Executor, and the Turnover
of Assets to the Estate.**

29.   C.C. Wang was survived by Yien-Koo, SK, one other sibling, and several
grandchildren.[73]

**RESPONSE TO PARAGRAPH 29:**  Undisputed.

---

[71] YK Decl. at ¶10.

[72] YK Decl. at ¶10.

[73] Savitsky Decl. Exh. 2 (Defendants' Answer to the Amended Complaint admitting allegations of ¶70 of the Amended
Complaint).

30.     Though CC owned a significant number of valuable assets at the time of his death, their precise number and identities have been subject to dispute. The parties agree, however, that CC:

a.  Amassed a collection of over 400 fine art works, which art experts have called "the greatest collection of Chinese masters outside China."[74]

b.  Owned approximately 250 Chinese seals.[75] If you are a Chinese artist or art collector, your set of custom Chinese seals is "like your signatures" which can be affixed to paintings you created or which are in you collection.[76]

c.  Held title to certain real property, such as a condominium located at 445 5th Avenue, Unit 24H. This apartment is held in the name of the Chi-Chuan Wang Revocable Trust (although its expenses are paid for by the Estate of Chi-Chuan Wang).[77]

d.  Owned more than 300 personally created paintings and Chinese paintings from other, contemporary artists;[78] and

e.  Amassed a collection of over one hundred (and perhaps as many as 400) classical Chinese paintings.[79] The phrase "classical Chinese paintings" refers to Chinese paintings created "before 1911—[before] the Republic of China was formed."[80] The number and identity of the classical Chinese paintings CC owned on July 3, 2003 has been subject to dispute since the creation of his Estate.

**OBJECTION TO PARAGRAPH 30:** Defendant objects to paragraph 30 to the extent

that the purported facts asserted therein are not relevant or material to any issue before

the Court.  Defendant further objects to paragraph 30 on the grounds that it relies upon

the inadmissible and unreliable YK Declaration.  In addition, Defendant objects to

paragraph 30 on the grounds that it does not comply with Local Civil Rule 56.1(d)'s

---

[74] Savitsky Decl. Exh. 2 (Defendants' Answer to the Amended Complaint admitting allegations of ¶32 of the Amended Complaint).

[75] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 55:24-56:8; 60:2-61:3).

[76] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 55:24-56:8; 60:2-61:3).

[77] YK Decl. at ¶11.

[78] Declaration of the Public Administrator of New York County, dated February 14, 2020 ("PA Decl.") at ¶9(c).

[79] PA Decl. at ¶9(a).

[80] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 25:22-26:3).

requirement that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 30**:  Disputed.  The testimony cited does not support statement 30(b).  The testimony cited in statement 30(b) was elicited in the context of questioning about an exhibit (a group of unidentified "photographs of paintings" from an unidentified publication) that constitutes hearsay under F.R.E. Rule 801 and cannot be authenticated under F.R.E. Rule 901.  *See* Savitsky Decl. Exh. 10.  With respect to the exhibit, which was marked at an earlier deposition, when asked if the exhibit was "a complete document," Plaintiff's counsel stated "I don't know what the complete document is.  This is just how I have it."  *See* Kelly Dec. Ex. 116 at 150:17-151:5. Defendant further disputes statement 30(e) on the grounds that the document cited does not state that CC amassed a collection of "(and perhaps as many as 400) classical Chinese paintings," but merely states that after CC's death, the co-fiduciaries collected "133 paintings designated as "Classical Chinese Paintings."  *See* PA Decl. at ¶9(a).

31.     Within a month of CC's passing, Yien-Koo filed a final will and testament executed by CC on June 13, 2000 (the "2000 Will"), and a codicil thereto, executed on July 10, 2002, in the New York County Surrogate's Court.[81] Both documents named her as the executor of C.C. Wang's Estate.[82]

**RESPONSE TO PARAGRAPH 31**:  Undisputed.

32.     SK and Andrew subsequently filed the Fraudulent 2003 Will, created on February 18, 2003, in an attempt to have its provisions enforced by the Surrogate's Court.[83]

---

[81] Savitsky Decl. Exh. 2 at ¶¶ 71-72 (Defendants' Answer to the Amended Complaint).

[82] YK Decl. at ¶13; Savitsky Decl. Exh. 8 (1/2/20 First Department decision and order dismissing SK's petition to probate the Fraudulent Codicil).

[83] Savitsky Decl. Exh. 8 (1/2/20 First Department decision and order dismissing SK's petition to probate the Fraudulent Codicil).

**OBJECTION TO PARAGRAPH 32**:  Defendant objects to paragraph 32 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 32**:  Undisputed.

33.     The Fraudulent 2003 Will's provisions designated Andrew and SK as co-executors of C.C. Wang's Estate and identified Andrew and his brother (Stephen Wang) as chief beneficiaries along with SK.[84]

**OBJECTION TO PARAGRAPH 33**:  Defendant objects to paragraph 33 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 33**:  Defendant respectfully refers the Court to the 2003 Will for a complete and accurate statement of its contents.  *See* Kelly Dec. Ex. 5.

34.     None of C.C. Wang's prior *eight* testamentary instruments executed during his lifetime had ever appointed Andrew as a co-executor or even included him or his brother Stephen (SK's sons) as named beneficiaries to Estate assets.[85] Nor had any of them excluded Yien-Koo as a beneficiary.[86]

**OBJECTION TO PARAGRAPH 34**:  Defendant objects to paragraph 34 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 34 on the grounds that it relies upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 34**:  Disputed to the extent that the document cited does not support the proposition that any of the prior instruments excluded YK.

---

[84] Savitsky Decl. Exh. 2 at ¶74 (Defendants' Answer to the Amended Complaint).

[85] Savitsky Decl. Exh. 2 at ¶ 75 (Defendants' Answer to the Amended Complaint).

[86] YK Decl. at ¶14.

Defendant respectfully refers the Court to the document cited for its full meaning and

context.

35.     Thus, in July 2003, Yien-Koo initiated a Surrogate's Court proceeding contesting the validity of the Fraudulent 2003 Will to prevent its probate.[87]

**OBJECTION TO PARAGRAPH 35:**  Defendant objects to paragraph 35 to the extent

it advances legal conclusions and arguments rather than facts, as required by Local Civil

Rule 56.1.  Defendant further objects to paragraph 35 on the grounds that it relies upon

the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 35:**  Undisputed.

36.     While that contest was pending, in August 2003, the Surrogate's Court granted Andrew's application for preliminary letters testamentary because he was named a "co-executor" by the Fraudulent 2003 Will.[88] The Surrogate's Court also appointed the New York County Public Administrator (the "PA") as temporary administrator to act jointly with Andrew as co-fiduciary of the Estate.[89]

**RESPONSE TO PARAGRAPH 36:**  Defendant respectfully directs the Court to the

Surrogate Court's August 2003 Order for a complete and accurate statement of its

contents.  *See* Kelly Dec. Ex. 7.

37.     Andrew would retain this status for the next fourteen (14) years.[90] He was finally stripped of his fiduciary responsibilities in May 2017 after a unanimous jury determined he had acquired them through his and SK's fraud.[91]

**OBJECTION TO PARAGRAPH 37:**  Defendant objects to paragraph 37 to the extent

it advances legal conclusions and arguments rather than facts, as required by Local Civil

Rule 56.1.

---

[87] YK Decl. at ¶15.

[88] PA Decl. Exh. 1 (Aug. 4, 2003 Order of the New York County Surrogate's Court).

[89] PA Decl. Exh. 1 (Aug. 4, 2003 Order of the New York County Surrogate's Court).

[90] Savitsky Decl. Exh. 6 (First Department decision and order dated May 9, 2017 affirm jury verdict rejecting the Fraudulent Will).

[91] Savitsky Decl. Exh. 6 (First Department decision and order dated May 9, 2017 affirm jury verdict rejecting the Fraudulent Will).

**RESPONSE TO PARAGRAPH 37**:  Defendant disputes paragraph 37 to the extent the

jury did not determine AW "acquired [his fiduciary duties] through his and SK's fraud."

*See* Kelly Dec. Ex. 7.

38.    The Surrogate's August 4, 2003 Order authorized Andrew and the PA (together, the "Co-fiduciaries") to jointly administer the Estate and its assets. [92] The Co-fiduciaries' responsibilities included collecting Estate assets, arranging for the payment of Estate taxes, and ultimately preparing remaining Estate assets to be distributed, if possible, to the beneficiaries named in whichever of the competing CC wills was accepted for probate.[93]

**OBJECTION TO PARAGRAPH 38**:  Defendant objects to paragraph 38 to the extent

it advances legal conclusions rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 38**:  Defendant respectfully refers the Court to the

Surrogate Court's August 4, 2003 Order for a complete and accurate statement of its

contents.  *See* PA Decl. Exh. 1.

39.    By late 2003, the PA—with the aid of her legal counsel, Peter Schram, Esq.[94]— began to oversee the collection of Estate property, especially Chinese artwork, that was still in the hands of C.C. Wang's surviving family members.[95]

**RESPONSE TO PARAGRAPH 39**:  Undisputed.

40.    (A) New York-based art consulting firm O'Toole-Ewald Art Associates ("OTE"), was hired to catalogue the Chinese paintings turned over to the Estate.[96] (B) OTE took photographs of the Estate's Chinese paintings and assigned identification numbers to each of them.[97] (C) For example, the Estate's classical paintings were assigned numbers OTE 83 through OTE 247 and OTE 1000 through OTE 1003.[98]

---

[92] PA Decl. Exh. 1 (Aug. 4, 2003 Order of the New York County Surrogate's Court).

[93] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 20:19-21:10).

[94] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 8:11-23).

[95] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 41:4-45:45); Savitsky Decl. Exh. 13 (Schram Exhibit 4 from Schram Deposition; WANG000310-311).

[96] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 19:4-21:15 (Ewald recalling being hired by the PA); 25:25-26:23 (Ewald admitting she catalogued Estate paintings); 27:11-31:2 (Ewald recalling OTE took photographs of all the works shown to her); Savitsky Decl. Exh. 15 (Exhibit ELE-3 from the Ewald Deposition).

[97] Savitsky Decl. Exh. 14 (6/14/19 Ewald Dep. Trans. at 30:3-31:2).

[98] PA Decl. Exh. 19 (Sotheby's Appraisal).

**RESPONSE TO PARAGRAPH 40:**  Disputed to the extent that statement 40(C)

implies that the classical Chinese paintings contained in the cited exhibit constitute the

full extent of the classical Chinese paintings that belong to the Estate.  That proposition is

not supported by the document cited.  *See* PA Decl. Exh. 19.

41.     A description of the relevant assets turned over to the Estate during that process and the undisputed circumstances surrounding their delivery are set forth below.

a. In 2003, SK delivered to the Estate "most[]" of the 63 classical Chinese paintings which had been hand delivered to him by the Kings in March and April 2003.[99] SK's stated reason for withholding some of the 63 classical Chinese paintings from the Estate, were that certain paintings belonged "to my [SK's] cousin in Taiwan . . . . [a]nd some are mine."[100]

b. In 2003 and early 2004, YK hand delivered approximately 80 additional classical Chinese paintings to the Co-fiduciaries of the Estate.[101] Simultaneously with the turnover of these paintings, YK presented Martin Klein, Esq. (the attorney representing Andrew in his capacity as preliminary executor) and Ethel Griffin (the PA) with true and accurate photographs of the classical Chinese paintings being delivered.[102] In turn, Mr. Klein and the PA signed the photographs in acknowledgment of the Estate's receipt.[103] All told, the Estate received exactly *133 classical Chinese paintings* by 2004 from the Wangs and the Kings. Sotheby's eventually provided a fair market appraisal stating that these 133 paintings were worth $4,400,350.00 as of July 3, 2003 (the date of CC's death).[104]

c. On October 21, 2003,  Klein sent a letter to Schram that "Andrew has advised us that he will be at Apartment 8A and will make an inventory of [CC's personal Chinese] seals."[105] Ultimately,

---

[99] Savitsky Decl. Exh. 9 (6/24/19 SK Dep. Trans. at 82:17-83:14).

[100] Savitsky Decl. Exh. 9 (6/24/19 SK Dep. Trans. at 82:17-83:14).

[101] YK Decl. at ¶18.

[102] YK Decl. at ¶18.

[103] YK Decl. at ¶18; PA Decl. at ¶11.

[104] PA Decl. at ¶19.

[105] Savitsky Decl. Exh. 16 (10/21/2003 Klein letter to Schram)

Andrew turned over *108 of CC's seals* to the Estate[106] and each of these seals continues to be stored in the PA's office in downtown Manhattan.[107] At his deposition in 2019, Andrew testified that he had located in Apartment 8A "250 pieces" of C.C. Wang's personal seals.[108] The inventory of the 108 seals turned over by Andrew was stored in Martin Klein's office and was produced in response to discovery demands in this action.[109] Thus, Andrew did not turn over 140 of C.C. Wang's seals.

   d.  The Co-fiduciaries also collected various personal items owned by CC that had been stored in Apartment 8A.[110] The Estate's hired appraiser, Kenneth Jay Linsner ASA, SCV (who is now the Wangs' retained expert in this RICO action) appraised the personal effects located in CC's Apartment 8A to be worth $249,565.00.[111] The appraised items included: jewelry, books, furniture, picture decorations, sculptures, clothing, and carpets.[112]

   e.  The Co-fiduciaries collected more than 300 additional Chinese paintings and other works of art (such as sculptures) by C.C. Wang and other contemporary artists.[113] Sotheby's eventually appraised these works of art to be worth $1,313,300.00 as of July 3, 2003.[114]

   f.  The Co-fiduciaries claimed a Cooperative Apartment located at 445 5th Avenue, Unit 24H, New York, NY ("Unit 24H") to be valued at $370,000 on the Estate's Form 706, United States Estate Tax Return in 2004.[115]

**OBJECTION TO PARAGRAPH 41:**  Defendant objects to paragraph 41 to the extent

that the purported facts asserted therein are not relevant or material to any issue before

the Court.  Defendant objects to statement 41(b) on the grounds that it does not comply

---

[106] Savitsky Decl. Exh.  17 (List of 108 C.C. Wang seals produced by the Wang Defendants in this action; WANG000064- WANG000071); Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 60:12-22 ("I know there are 250 [seals] altogether . . . . Because I turned them over.")).

[107] Savitsky Decl. Exh.  17 (List of 108 C.C. Wang seals); PA Decl. at ¶¶9(b), 17-18.

[108] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 60:12-22).

[109] Savitsky Decl. Exh.  17 (List of 108 C.C. Wang seals); PA Decl. at ¶¶17-18.

[110] PA Decl. Exh. 4 (Fair market value appraisal certification of Kenneth Linsner).

[111] PA Decl. Exh. 4 (Fair market value appraisal certification of Kenneth Linsner).

[112] PA Decl. Exh. 4 (Fair market value appraisal certification of Kenneth Linsner; WANG_KING 00000295).

[113] PA Decl. ¶9(c).

[114] PA Decl. ¶20.

[115] PA Decl. ¶21.

with Local Civil Rule 56.1(d)'s requirement that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 41 on the grounds that it relies upon the inadmissible and unreliable YK Declaration.  Defendant objects to statement 41(c) on the grounds that it does not comply with Local Civil  Rule 56.1(d)'s requirement that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 41:**  Defendant disputes statement 41(b) to the extent the cited declarations, and the exhibits referred to therein, do not support the proposition that the photographs alleged to be delivered were "true and correct" representations.  Defendant disputes the assertion in statement 41(c).  Neither the PA Declaration nor AW's testimony supports that AW failed to turnover any seals or that AW is in possession of 140 seals.  *See* Savitsky Decl. Exh. 11; Exh. 17.

42.     OTE also took photographs of the paintings alongside a card bearing the paintings' OTE identification numbers:[116]



---

[116] Savitsky Decl. Exh.   14 (6.14.19 Ewald Dep. Trans. at 25:25-26:23 (Ewald admitting she catalogued Estate paintings); 27:11-31:2 (Ewald recalling OTE took photographs of all the works shown to her)); YK Decl. at ¶19.

**OBJECTION TO PARAGRAPH 42:** Defendant objects to paragraph 42 to the extent that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to the image pasted into paragraph 42 on the grounds that it constitutes hearsay under F.R.E. Rule 801 and cannot be authenticated under F.R.E. Rule 901.  Defendant further objects to paragraph 42 on the grounds that it relies upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 42:**  Defendant disputes paragraph 42 to the extent that Plaintiff contends that the image therein is of an original painting and not a reproduction.  *See* Kelly Dec. Ex. 106 at 74:25-76:17, 84:22-87:6 (acknowledging that C.C. Wang allowed his friend, Xu Shih Ping to create, print, and market thousands of "very, very good copies" of pieces from his collection and that he failed to keep records of Xu Shih Ping's reproductions).

43.     For his part, Andrew's attorney, Klein, maintained a record of the 108 "C.C. Wang Seals" that Andrew had turned over to the Estate and which were produced by him in this action:[117]



**OBJECTION TO PARAGRAPH 43:**  Defendant objects to paragraph 43 on the grounds the purported facts asserted therein are not relevant or material to any issue

---

[117] Savitsky Decl. Exh. 17 (List of 108 C.C. Wang seals).

before the Court.  Defendant objects to the image pasted into paragraph 43, and cited in

support of paragraph 43 on the grounds that these images constitute hearsay under F.R.E.

Rule 801 and cannot be authenticated under F.R.E. Rule 901, and thus do not comply

with Local Civil Rule 56.1(d)'s requirement that every statement be supported by

"citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P.

56(c)."

**RESPONSE TO PARAGRAPH 43:**  Defendant disputes paragraph 43 on the grounds

that the document cited – a series of images – does not support the proposition advanced

in paragraph 43.

44.      The 108 seals identified in Andrew's production are currently being stored in the
PA's office in downtown Manhattan and have never been used on any paintings since they were
turned over to the Estate.[118]

**OBJECTION TO PARAGRAPH 44:**  Defendant objects to paragraph 44 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 44 on the grounds that the sole

evidence cited is an inadmissible declaration from the current Public Administrator,

Dahlia Damas, who admits to having "no personal knowledge regarding the allegations in

this proceeding," and thus does not comply with Local Civil Rule 56.1(d)'s requirement

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 44:**  Defendant disputes paragraph 44 on the grounds

that the declaration cited does not state or support the assertion that the seals referred to

"have never been used on any paintings since they were turned over to the Estate."

---

[118] PA Decl. at ¶¶17-18.

45.     (A) In or about 2007, an IRS art appraiser with the Art Appraisal services reviewed the Sotheby's appraisal and found that the total claimed value for the Estate's 133 Classical Chinese paintings was supportable.[119]  (B) Since the sales of the 98 paintings had occurred prior to the IRS audit, the IRS used the photographs taken by the Estate and used in the Sotheby's appraisal.[120]

**OBJECTION TO PARAGRAPH 45:**  Defendant objects to paragraph 45 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant objects statement 45(A) on the grounds that, in violation of

Local Civil Rule 56.1(d), Plaintiff fails to cite to admissible evidence to support this

statement.

**RESPONSE TO PARAGRAPH 45:**  Defendant disputes statement 45(B) on the

grounds that the cited email does not establish what if any photographs, let alone

"photographs taken by the Estate" were ever provided to the IRS or that the "IRS used"

any photographs in any way.  *See* Savitsky Decl. Exh. 18.  Defendant further disputes

statement 45(B) on the grounds that the cited email does not establish that "photographs

taken by the Estate" were "used in the Sotheby's appraisal" in any way.  Only 84 of the

98 paintings were sold prior to the IRS audit. *See* Kelly Dec. Ex. 33; Ex 55; Ex. 59; Ex.

68; Ex. 72.  Defendant further disputes the statement to the extent Plaintiff implies that

Sotheby's based its appraisal on photographs of the artwork, or that any valid appraisal

can be based on photographs of artwork.  The Sotheby's appraiser, Arnold Chang,

physically inspected each of the 98 Paintings in performing his appraisal.  *See* Kelly Dec.

Ex. 107 at 55:9-56:20.  Mr. Chang was a student of CC and had significant existing

personal familiarity with CC's collection, including the 98 Paintings.  *See id*. at 14:18-

---

[119] PA Decl. at ¶19.

[120] Savitsky Decl. Exh. 18 (September 2006 email by Klein to Andrew regarding IRS's need for photographs of Estate paintings for audit).

17:8.  Further, Chang testified it is impossible to authenticate or appraise classical

Chinese artworks based on photographs.  *See id*. at 49:17-50:16.

III.   **2004:  The Undisputed Facts Concerning the Co-Fiduciaries' Decision to Privately Sell Classical Chinese Paintings and Andrew's Testimonies About the Sales Process, Generally.**

A.   *The Co-Fiduciaries' Decision to Sell Certain Estate Paintings Privately.*

46.   When an estate has "taxes and other administration expenses due," the fiduciaries of the estate are, generally, tasked with "marshal[ling] assets and sell[ing] them in order to be in a position to pay those expenses."[121]

**OBJECTION TO PARAGRAPH 46:**  Defendant objects to paragraph 46 to the extent

it advances legal conclusions and arguments rather than facts, as required by Local Civil

Rule 56.1.

**RESPONSE TO PARAGRAPH 46:**  Undisputed.

47.   In late 2004, after various appraisals of the Estate's assets had been completed, the two Co-fiduciaries discussed the possible sale of the Estate's assets so as to be in a position to pay the Estate's expenses.[122]

**RESPONSE TO PARAGRAPH 47:**  Disputed.  Payment of estate taxes and expenses

was not optional for the-co-fiduciaries.  *See* Kelly Dec. Ex. 15; Ex. 18; Ex. 19; Ex. 108 at

20:19-21:10.  In 2004 and at all relevant times, the Estate lacked sufficient liquid assets

to satisfy fully its estate tax obligations and administrative expenses.  *See* Kelly Dec. Ex.

Ex. 11 at ¶ 10; Ex. 20; Ex. 21.  The Estate was required to sell assets, including the 98

Paintings, in order to raise liquid funds to pay estate taxes.  *See* Kelly Dec. Ex. 11 at ¶ 10;

Ex. 108 at 20:19-21:10; 23:22-25:3; Ex. 109 at 77:11-79:9; 80:8-81:6; 116:4-9.

---

[121] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 20:19-21:20).

[122] Savitsky Decl. Exh. 19 (October 7, 2004 emails in which Andrew directs Klein to "tell the PA that I will raise enough cash to cover all legal expe[e]nses upon my return in mid November.").

Plaintiff further disputes paragraph 47 on the grounds that the cited document, an email between AW and his attorney, does not support the proposition in paragraph 47.

48.     Ethel Griffin, the PA at the time, has passed away and is thus unable to testify about what occurred during the relevant period or about her communications with Andrew or the representations he made to her.[123]

**RESPONSE TO PARAGRAPH 48:**  Undisputed.

49.     However, the attorney representing Ethel Griffin in connection with her estate administration duties at that time, Schram, has been available to testify in this action. [124]

**RESPONSE TO PARAGRAPH 49:**  Defendant does not dispute that Peter Schram was deposed in this action.  Defendant disputes paragraph 49 to the extent it implies that Schram possesses personal knowledge relevant to the allegations in this case that are equivalent to or overlapping with that of Ethel Griffin.  While Schram has relevant personal knowledge, with respect to the specific transactions at issue, Schram primarily served as an intermediary between the PA, Ethel Griffin, and AW's attorney, Marty Klein.  *See* Kelly Dec. Ex. 108 at 80:19-81:12.  Schram did not review the terms of the sales at issue in this action with the Public Administrator, and it was not his job to do so. (*Id.*)  Schram had no relevant expertise to evaluate the terms of any of the sales.  (*Id.*)  He forwarded the terms of proposed sales to the Public Administrator or Elin Ewald and would then receive a decision from Ethel Griffin.  (*Id.*)

50.     (A) Still, there are disputes in the record as to the substance of the conversations between the Co-Fiduciaries. (B) Schram testified that he could not recall any discussions:  (a) with Sotheby's about selling estate-owned artworks;[125] (b) concerning who would find potential

---

[123] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 97:21-22).

[124] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 8:11-23).

[125] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 25:17-22).

buyers for Estate assets,[126] or (c) about who would select which paintings would be sold to private buyers.[127]

**OBJECTION TO PARAGRAPH 50:**  Defendant objects to statement 50(A) on the grounds that it fails to cite to supporting admissible evidence in violation of Local Civil Rule 56.1.  Further, Plaintiff does not identify any specific "conversations between the Co-Fiduciaries" over which there are disputes in the record.

**RESPONSE TO PARAGRAPH 50:**  Defendant disputes statement 50(B) to the extent it implies that Schram's knowledge, or lack of knowledge or memory, of the events and topics set forth in subsections (a) – (c) bears any relevance to "conversations between the co-fiduciaries" or evidences a dispute in the record.  Schram was an attorney for the co-fiduciary, not the co-fiduciary himself.  Further, Schram testified that lawyers from Bryan Cave, and other lawyers at his law firm, served as counsel to the PA in her role as temporary administrator of the Estate.  *See* Kelly Dec. Ex. 108 at 16:14-23.  Schram further testified that he was not privy to all conversations between Ethel Griffin and AW.  *See id*. at 107:6-10.

51.     But regardless of how it was decided that the Estate would sell certain of its Chinese paintings to private buyers, the ultimate decision was made jointly by both Co-fiduciaries around late 2004.[128]

**RESPONSE TO PARAGRAPH 51:**  Disputed to the extent paragraph 51 implies that the Estate was in a position to retain, rather than to sell, the 98 Paintings.  The Estate needed to sell the 98 Paintings, and other assets, to pay estate taxes and other expenses.  The co-fiduciaries' failure to pay estate taxes when due would result in "significant"

---

[126] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 70:20-21).

[127] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 70:24-71:3).

[128] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 14:13 – 15:5); Savitsky Decl. Exh. 20 (December 6, 2004 email between Klein and Andrew discussing the potential private sale of Estate assets).

interest and penalties, and their decisions to sell the 98 Paintings was influenced by the fact that the estate owed estate taxes and faced interests and penalties.  *See* Kelly Dec. Ex. 108 at 23:22-25:6.  Ultimate decisions concerning the sales of the 98 Paintings were not made "jointly by the co-fiduciaries."  AW Dec. at ¶ 22.  Decisions with respect to sales were made pursuant to a procedure implemented by the Public Administrator.  *See* Kelly Dec. Ex. 11 at ¶ 11; Ex. 108 at 77:17-784:4.  Under that procedure, AW was instructed to seek private buyers in Asia for 98 estate owned classical Chinese paintings. *See* Kelly Dec. Ex. 11 at ¶ 11; Ex. 108 at 8 at 26:14-27:20.  AW was instructed to submit offers for the artwork that met or exceeded a price 20% above an earlier appraised value to the PA for her review.  *See* Kelly Dec. Ex. 11 at ¶ 11; Ex. 30; Ex. 31.  The PA took it upon herself to then have all proposed sales reviewed by an independent third-party appraiser.  *See* Kelly Dec. Ex. 11 at ¶ 11; Ex. 31; Ex. 108 at 36:9-37:8; 77:17-78:4.  The PA made her decision to approve or not approve proposed sales on her own and was made after consultation with her independent art advisor.  *See* Kelly Dec. Ex. 11 at ¶¶ 11-12; Ex. 31; Ex. 108 at 28:23-30:8; Ex. 109 at 116:18-2.

52.     Yien-Koo—as a non-fiduciary who had purportedly been disinherited under the Fraudulent Will—was made aware of the Estate's financial condition, decisions, and sale activities "only in the most general terms."[129]  Accordingly, she was not provided with the Estate's tax returns, Sotheby's appraisal records, or sales documentation related to the private sales.[130]

**OBJECTION TO PARAGRAPH 52:**  Defendant objects to paragraph 52 on the grounds the purported facts asserted therein are not relevant or material to any issue

---

[129] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 33:4-34:5).

[130] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 33:4-34:5); YK Decl. at ¶20.

before the Court.  Defendant further objects to paragraph 52 on the grounds that it relies

upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 52:**  Disputed.  YK's counsel Randolph Harris of

McLaughlin & Stern, LLP was provided access to the Estate's tax return, and reviewed it,

on June 29, 2006.  *See* Kelly Dec. Ex. 29 at M&S_00000016.  Previously, YK's counsel

was informed by AW's counsel Marty Klein by letter dated July 29, 2005 that the

classical paintings in the possession of the Estate were to be sold and the process

implemented by the PA for the sales.  *See* Kelly Dec. Ex. 31.  YK was aware of which

paintings were to be sold because she personally turned over dozens of classical paintings

that had been in her possession.  *See* Kelly Dec. Ex. 11 at ¶ 7.  She was further aware that

the Estate's classical Chinese paintings, including the paintings she surrendered, were

stored at Crozier Fine Arts, and, thus, were to be sold by the Estate.  *See* Kelly Dec. Ex.

106 at 192:10-22.  Finally, decisions as to what financial documents and or other records

were provided to YK were addressed by the PA and her counsel, not AW.  *See* Kelly

Dec. Ex. 108 at 32:13-34:5.  Further, the Estate, through its fiduciary the PA and her

attorneys, was in possession of all relevant information concerning the Estate's finances.

*Id*. at 34:6-17.

53.     Prior to 2011, Yien-Koo received no information from any of the Co-fiduciaries
or their attorneys identifying: (i) which paintings were being sold, (ii) how many were being
sold, (iii) to whom they were being sold to, (iv) at what prices they were being sold, (v) when the
sales were completed, or even (vi) whether the sales were of classical or contemporary
paintings.[131]

**OBJECTION TO PARAGRAPH 53:**  Defendant objects to paragraph 53 on the

grounds the purported facts asserted therein are not relevant or material to any issue

---

[131] YK Decl. at ¶¶20-21; Savitsky Decl. <u>Exh. 12</u> (Schram Dep. Trans. at 33:4-34:5).

before the Court.  Defendant further objects to paragraph 53 on the grounds that it relies

upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 53:**  Disputed.  YK was informed by AW's counsel,

Marty Klein, by letter dated July 29, 2005 that the classical paintings in the possession of

the Estate were to be sold and the process implemented by AW and the PA for the sales.

*See* Kelly Dec. Ex. 31.  YK was aware of which paintings were to be sold because she

personally turned over dozens of classical paintings that had been in her possession.  *See*

Kelly Dec. Ex. 11 at ¶ 7.  She was further aware that the Estate's classical Chinese

paintings, including the paintings she surrendered, were stored at Crozier Fine Arts, and,

thus, were to be sold by the Estate.  *See* Kelly Dec. Ex. 106 at 192:10-22.  Finally,

decisions as to what financial documents and or other records were provided to YK were

addressed by the PA and her counsel, not AW.  *See* Kelly Dec. Ex. 108 at 32:13-34:5.

54.     Though this self-dealing action concerns the Estate's sale of 98 classical Chinese
paintings between 2005 and 2009, Plaintiff Yien-Koo did not first become aware of the terms of
any of the Estate's sales, or which paintings had been sold, until in or about 2013.[132]

**OBJECTION TO PARAGRAPH 54:**  Defendant objects to paragraph 54 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 54 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 54:**  Disputed.  YK was aware certain paintings had

been sold by at the latest, November 2009, and was aware of the financial terms of the

Estate's sales, by the latest, in May 2011.  *See* Kelly Dec. Ex. 71 at ¶ 8(g).  YK was

informed by AW's counsel Marty Klein by letter dated July 29, 2005 that the classical

---

[132] YK Decl. at ¶¶20-21.

paintings in the possession of the Estate were to be sold and the process implemented by AW and the PA for the sales.  *See* Kelly Dec. Ex. 31.  YK was aware of which paintings were to be sold because she personally turned over dozens of classical paintings that had been in her possession.  *See* Kelly Dec. Ex. 11 at ¶ 7.  She was further aware that the Estate's classical Chinese paintings, including the paintings she surrendered, were stored at Crozier Fine Arts, and, thus, were to be sold by the Estate.  *See* Kelly Dec. Ex. 106 at 192:10-22.  YK was aware that at least eleven of the 98 Paintings had been sold by, at the latest, November 2009 when she attended the *Bao Wu Tang* Exhibition.  *See* Kelly Dec. Ex. 3 at ¶ 118; Ex. 77 at ¶¶ 8-9.  YK's testimony and claims regarding her discovery of sales of the 98 Paintings is inconsistent.  In the First Amended Complaint, YK alleged that she "learned in the fall of 2013 that at least eleven of the 98 paintings sold to several different Straw Men appeared in a three-week museum exhibition which received national media coverage in China."  Kelly Dec. Ex. 3 at ¶ 118.  YK, however, testified that she personally attended the exhibition – the *Bao Wu Tang*  Exhibition – in 2009. Kelly Dec. Ex. 77 at ¶¶ 8-9.  YK closely inspected the artwork on display at the *Bao Wu Tang* Exhibition, which she alleges included eleven of the 98 Paintings, and determined that, apart from one, they were all authentic, genuine paintings.  *See* Kelly Dec. Ex. 3 at ¶ 118; Ex. 89 at 631-634.  In November 2009, YK commissioned a video to be made of the artwork on display in the *Bao Wu Tang* Exhibition.  *See* Kelly Dec. Ex. 18.  On January 6, 2010, YK took that video to her attorneys at McLaughlin & Stern, LLP.  *See* Kelly Dec. Ex. 29 at M&S_00000023.  On January 7, 2010, YK's attorneys reviewed the Bao Wu Tang Video and researched the paintings allegedly depicted in it.  *Id*.  On February 11, 2010, YK met again with her attorneys to discuss "prosecuting a lawsuit relating to

36

paintings from the Estate of C.C. Wang." *See* Kelly Dec. Ex. 110 at KINGPROD5-00363.  By August 2010, YK prepared and provided to her attorneys, "excel spreadsheets of artwork[.]" *Id.*  By December 15, 2010, YK's attorney expressed concern to the PA as to whether the sale of Estate paintings were "appropriately sold" because "many paintings that she believes are Estate paintings are circulating throughout the world" and "yet the Estate had so little cash." Kelly Dec. Ex. 111.  On May 9, 2011, YK Submitted to the Surrogate's Court a Petition for a Compulsory Limited Accounting And Related Relief Under SCPA 2205 and 2206 (the "Petition").  Kelly Dec. Ex. 71.  The Petition alleged that she believed "works of art which are allegedly part of the estate have recently been depicted in the catalogues, exhibited and/or offered for sale at various auction houses, studios and in museums in China and Hong Kong."  Kelly Dec. Ex. 71 at ¶ 8(g).  The specific works of art were identified by YK in an exhibit to the Petition.  *Id.* at AWSK_00009197.  The artworks identified in the exhibit substantially overlapped with the 98 Paintings.  *See id.*  The Petition acknowledged that YK was aware of the financial terms of the Estate's sales of the paintings at issue.  *Id.* at ¶ 8(g).  It stated, that YK "has reason to believe that some or all of such works *have been sold without obtaining full market value*, without proper accounting to the PA and/or the estate, and otherwise by reason of improper, unauthorized unilateral acts of Mr. Wang."  *Id.*

55.     Rather, the Co-fiduciaries' attorneys disclosed only that private buyers were being located to sell an undisclosed number of the Estate's paintings and that the Estate had hired an independent appraiser to review the appropriateness of any proposed sales.[133]

**OBJECTION TO PARAGRAPH 55:**  Defendant objects to paragraph 55 on the

grounds the purported facts asserted therein are not relevant or material to any issue

---

[133] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 93:4-95:4); Savitsky Decl. Exh. 13 (Schram Dep. Exhibit 16 comprising a letter dated from Schram to Yien-Koo's attorney dated December 18, 2010; KING7 – 001018-1019).

before the Court.  Defendant further objects to paragraph 55 on the grounds that the

testimony cited was subject to objections from AW's counsel and is not admissible at

trial.

**RESPONSE TO PARAGRAPH 55:**  Disputed to the extent it implies disclosures by the

Estate's attorneys' were YK's sole source of information regarding the sales of Estate

paintings.  Defendant respectfully refers the Court to his response to paragraph 54, which

discusses YK's knowledge of the sales of the 98 Paintings.

B.  *Overview of the Sale and Payment Process for the Private Sales.*

56.      Though Plaintiff Yien-Koo did not know it at the time, the Co-fiduciaries would
ultimately enter into six contracts to sell a total of 98 classical Chinese paintings between
February 2005 and August 2009.[134] The sales were made to five purportedly different persons for
approximately $4.3 million (the "98 Paintings").[135]

**OBJECTION TO PARAGRAPH 56:**  Defendant objects to paragraph 56 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant objects on the grounds that, due to its reliance on the PA

Declaration, the statements do not comply with Local Civil Rule 56.1(d) which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 56:**  Defendant disputes paragraph 56 on the grounds

that the cited evidence does not support the assertion concerning YK's knowledge of the

sales, as required by Local Civil Rule 56.1(d).  Disputed to the extent paragraph 56

asserts claims regarding YK's knowledge of the sales.  Defendant respectfully refers the

---

[134] PA Decl. at ¶19.

[135] PA Decl. at ¶23.

Court to his response to paragraph 54, which discusses YK's knowledge of the sales of the 98 Paintings.

57.     The six executed contracts were between the Co-fiduciaries and five purported buyers:[136]

- "<u>Wei Zheng</u>" in February 2005 (17 paintings for $400,500.00);

- "<u>Chen Mei Lin</u>" in April 2005 (24 paintings for $1,393,422.00);

- "<u>Anthony Chou</u>" in June 2005 (17 paintings for $909,689.41);

- "<u>Yong-Qing Ye</u>" in September 2005 (18 paintings for $787,810.00);

- "<u>Yong-Qing Ye</u>" again in February 2006 (8 paintings for $354,045.00); and

- "<u>Yue Da Jin</u>" in August 2009 (14 paintings for $489,772.00).

**OBJECTION TO PARAGRAPH 57:**  Defendant objects to paragraph 57 on the grounds the purported facts asserted regarding sales to buyers other than Yue Da Jin are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 57:**  Defendant respectfully refers the Court to the documents cited for their full meaning and context.

58.     For the first two sales in February and April 2005, the Co-Fiduciaries entered into escrow agreements with Brown Raysman Millstein, Felder, & Steiner, LLP ("Brown Raysman") and purported buyers named "Wei Zheng" and "Chen Mei-Lin," respectively.[137]

**OBJECTION TO PARAGRAPH 58:**  Defendant objects to paragraph 58 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 58:**  Undisputed.

---

[136] PA Decl. at ¶¶24-42.

[137] Savitsky Decl. <u>Exh. 21</u> (6/26/19 Klein Dep. Trans. at 105:15-106: 19); PA Decl. <u>Exh. 8</u> at KING 005964-5972 (Wei Zheng final sales documents and escrow); PA Decl. <u>Exh. 12</u> at KING 006507-6516 (Chen Mei-Lin final sales documents and escrow).

59.     Brown Raysman also served as Andrew and SK Wang's personal legal counsel.[138]

**OBJECTION TO PARAGRAPH 59:**  Defendant objects to paragraph 59 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects on the grounds that the facts asserted in paragraph 59 are not supported by the cited evidence, and thus paragraph 59 does not comply with Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 59:**  Undisputed.

60.     Under both escrow agreements, the purchase prices for the first two contracts of sale with "Wei Zheng" and "Chen Mei Lin" were first wired to Brown Raysman before being wired to the Estate's bank account.[139]

**OBJECTION TO PARAGRAPH 60:**  Defendant objects to paragraph 60 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects on the grounds that the facts asserted in paragraph 60 are not supported by the cited evidence, and thus paragraph 60 does not comply with Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 60:**  Defendant respectfully refers the Court to the documents cited for their full meaning and context.

61.     The escrow agreements did, however, provide return wire instructions in case a refund was necessary.[140]

---

[138] Savitsky Decl. Exh. 21 (6/26/19 Klein Dep. Trans. at 106:17-19).

[139] PA Decl. Exh. 8 at KING 005964-5972 (Wei Zheng final sales documents and escrow); PA Decl. Exh. 12 at KING 006507-6516 (Chen Mei-Lin final sales documents and escrow); PA Decl. at ¶¶25, 31. Savitsky Decl. Exh. 46 (WANG001682-1685).

[140] PA Decl. Exh. 8 at KING 005969 (Wei Zheng final sales documents and escrow); PA Decl. Exh. 12 at KING 006512 (Chen Mei-Lin final sales documents and escrow).

**OBJECTION TO PARAGRAPH 61:**  Defendant objects to paragraph 61 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects on the grounds that the facts asserted in paragraph 61 are not supported by the cited evidence, and thus paragraph 61 does not comply with Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 61:**  Defendant respectfully refers the Court to the cited agreements for their full meaning and context.

62.     Wei Zheng's agreement provided that in the event a refund was necessary, the purchase price should be wired to a Citibank, N.A. account held in the name of "Wei Zheng," with an address in Queens, NY.[141]  This wire refund information was provided by Andrew to Klein, who inserted it into the escrow agreement with Zheng on February 12, 2005. [142]

**OBJECTION TO PARAGRAPH 62:**  Defendant objects to paragraph 62 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects on the grounds that the facts asserted in paragraph 62 are not supported by the cited evidence, and thus paragraph 62 does not comply with Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 62:**  Defendant respectfully refers the Court to the documents cited for their full meaning and context.

63.     Chen Mei-Lin's escrow agreement provided that in the event a refund was necessary, the purchase price should be wired to a Shanghai bank account held in the name of

---

[141] PA Decl. Exh. 8 at KING 005969 (Wei Zheng final sales documents and escrow).

[142] Savitsky Decl. Exh. 22 (Email chain between Andrew and Klein between February 10-15, 2005).

"Chen Mei-Lin" with an address in Shanghai, China.[143] Again, this wire refund information was provided by Andrew to Klein.[144]

**OBJECTION TO PARAGRAPH 63:** Defendant objects to paragraph 63 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court. Defendant objects on the grounds that the facts asserted in paragraph

63 are not supported by the cited evidence, and thus paragraph 63 does not comply with

Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to

evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 62:** Undisputed.

64.     The return address in Shanghai in the Chen Mei Lin escrow agreement was Andrew's own home address in Shanghai.[145]

**OBJECTION TO PARAGRAPH 64:** Defendant objects to paragraph 64 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court. Defendant objects on the grounds that the facts asserted in paragraph

64 are not supported by the cited evidence, and thus paragraph 64 does not comply with

Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to

evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 64:** Defendant respectfully refers the Court to the

testimony cited for the complete context of the use of AW's home address.

65.     During a deposition of Andrew in a Surrogate's Court proceeding held over four days in December 2013 (the "2013 Deposition"), Andrew was questioned about how the foreign buyers were able to pay the purchase prices to the Estate's U.S. account.[146] Under oath to tell the whole truth, he testified that the money received by the Estate for the sales of paintings came

---

[143] PA Decl. Exh. 12 at KING 006512 (Chen Mei-Lin final sales documents and escrow).

[144] Savitsky Decl. Exh. 23 (Email chain between Andrew and Klein on March 22, 2005).

[145] Savitsky Decl. Exh. 31 (CS032, November 19, 2014 email of Carolyn Shields).

[146] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 944:19-945:5).

from "[o]verseas back to here" and that the buyers could have various ways to transfer money out of China to the U.S. in order to make their purchases.[147]

>    **OBJECTION TO PARAGRAPH 65:**  Defendant objects to paragraph 65 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to the extent paragraph 65 advances legal conclusions and arguments rather than facts, in violation of Local Civil Rule 56.1.  Defendant objects on the grounds that the facts asserted in paragraph 65 are not supported by the cited evidence, and thus paragraph 65 does not comply with Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

>    **RESPONSE TO PARAGRAPH 65:**  Disputed to the extent the testimony cited by Plaintiff does not reflect the quotes set forth in paragraph 65.

66.    But Andrew testified he did not know how the buyers actually transferred payments to the Estate, only that they "have their way":[148]

>    Q: Back to here. From China?
>
>    A: I don't know, from anywhere. We just gave them the account. They just wire the money here.
>
>    Q: Well, it couldn't be from China, right, because China doesn't allow you to make the money transfers outside the country?
>
>    A: They have their way. If a company that have import and transport, or export business, they could get a government quota to wire the money directly to foreign countries. You know, they could give other reasons instead of buying artworks.

>    **OBJECTION TO PARAGRAPH 66:**  Defendant objects to paragraph 66 on the grounds the purported facts asserted therein are not relevant or material to any issue

---

[147] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 944:19-945:5).

[148] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 944:19-945:5; *see also id.* at 727:21-729:22).

before the Court.  Defendant further objects on the grounds that the phrase "actually

transferred" is vague.  Defendant objects on the grounds that the facts asserted in

paragraph 66 are not supported by the cited evidence, and thus paragraph 66 does not

comply with Local Civil Rule 56.1(d) which requires that every statement be supported

by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ.

P. 56(c)."

**RESPONSE TO PARAGRAPH 66:**  Disputed.  The testimony cited by Plaintiff does

not reflect the quotes set forth in paragraph 66.  AW's testimony states that he did not

know from where the buyers transferred funds to the Estate, not that "he did not know

how the buyers actually transfer payments to the Estate."  Kelly Dec. Ex. 112 at 944:19-

945:5.  Defendant disputes paragraph 66 to the extent it implies AW's testimony is in

reference to the transfer of funds from any buyer other than Wei Zheng.  The testimony

cited was in the context of questioning regarding a single sale.  *Id*.  at 941:17-945:5.

67.     Andrew then testified that this was the "standard procedure for . . . all of the
private sales" and explained that "we have to receive the money first. The money has to be wired
here first and then the artwork would go."[149]

**OBJECTION TO PARAGRAPH 67:**  Defendant objects to paragraph 67 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant objects on the grounds that the facts asserted in paragraph

67 are not supported by the cited evidence, and thus paragraph 67 does not comply with

Local Civil Rule 56.1(d) which requires that every statement be supported by "citation to

evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

---

[149] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 949:19-950:17).

**RESPONSE TO PARAGRAPH 67:**  Disputed.  Plaintiff mischaracterizes AW's testimony.  AW's testimony as to what was "standard procedure" for the Estate was in reference to the entire process by which sales of Estate artworks occurred, not in reference to the transfers of funds from buyers.  AW testified: "We all have the same procedures.  That the artworks went to Crozier, then we will get appraisal from Sotheby's, then I was asked to fund buyer to make the purchase, and then according to the appraisal price, and we talk to the art counselor or consultant for the PA, and set out the price; and usually, I think I remember we added another 20 or 25 percent on top of the appraisal.  Then it is approved by the consultant first and then later by the PA, then the deal goes through.  That is the procedure.  Now, we have to receive the money first.  The money has to be wired here first and then the artwork would go.  That is the standard procedure … for all of the private sales."  Kelly Dec. Ex. 112 at 949:15-950:16.

68.     Yet during his 2019 Deposition, Andrew gave contradicting testimony about how the five buyers wired money to the Estate. He claimed for the first time that he knew exactly how the purported buyers transmitted payments to the Estate for the purchase of the 98 allegedly self-dealt paintings.[150] The money was wired to the U.S. by his own off-shore companies:[151]

> Q: Did you ever use [your company] Le Style Limited to pay money to the estate?
>
> A: It's possible that if it was the estate sales.
>
> Q: Why is it possible?
>
> A: Because the buyer has to transfer money to Hong Kong. And it might use the company to—to---you know, let the buyer for – you know, the transfer---proper transfer of the payments to the estate.
>
> Q: So the money was sent—do you recall a specific instance in which that happened?

---

[150] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 240:2-243:2).

[151] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 240:2-243:2).

A: I don't recall the five sales. The last dated a while – I don't know which one that the funds went through that account. I don't know if that's the company I used for the — for the —for the proper transfer.

Q: Well whether you used Le Style or another company, do you recall ever using a company to pay money to the estate?

[Objection]

A: Again, it's the estate sales that I help the buyers to transfer funds from China in order to pay the estate purchases. So the only way to pay, you know, transfer the money out of China is going through a company in Hong Kong.

Q: Okay. Did you do that for more than one sale?

A: I think so.

Q: How many?

A: I don't know how many. I think all of the five sales —maybe four sales went through the company because if ever the money come out from China, that's the only way it can come out.

Q: So as far as you remember, for each of the five sales of estate artwork, your account acted as an intermediary for the funds to be transferred from the buyer to the estate?

A: I wouldn't say "intermediary." It's just a favor to the buyer. That's all. If I don't set up the company, the money cannot be transferred here to the estate. And they always ask a favor to use my company or to set up the company for the transfer. []

Q: Did you ever disclose this fact that the money was coming from your accounts to the Public Administrator.

[Objection].

A: I don't recall.

**<u>OBJECTION TO PARAGRAPH 68</u>:** Defendant objects to paragraph 68 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant objects on the grounds that the facts asserted in paragraph

68 are not supported by the cited evidence and rely on testimony elicited subject to

objection.  Thus, paragraph 68 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 68 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant objects to paragraph 68 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 68:**  The cited testimony does not support the statement that AW did not "claim for the first time that he knew exactly how the purported buyers transmitted payments to the Estate[.]"  Kelly Dec. Ex. 109 at 240:2-243:2.  Defendant disputes paragraph 68 to the extent it purports to imply that AW was the original source of funds used to purchase any Estate artwork.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  AW was not the buyer of any of the 98 Paintings.  *See* Kelly Dec. Ex. 92 at ¶ 2.  AW did not have any personal interest in the sales of the 98 Paintings.  *Id.*  AW did not acquire any ownership interest in the 98 Paintings through the sales.  *Id.*  AW did not benefit from the sales of the 98 Paintings or any subsequent sales of the 98 Paintings.  *Id.*  The estate faced a problem selling artwork to buyers in China, because the Chinese citizens, at that time, could not transfer money directly from China to the United States.  *See* Kelly Dec. Ex. 109 at 239:22-245:15; Ex. 112 at 944:19-945:5.  To solve the problem, when necessary, buyers first transferred funds to a bank account AW controlled in Hong Kong.  *See* Kelly Dec. Ex. 109 at 239:22-245:15.  AW, in turn, transferred the purchase funds to the Estate.  *Id.*  AW disclosed to his counsel at Brown Raysman that,

when necessary, the funds were flowing from China through the Hong Kong account he

controlled.  *Id*. at 244:13-245:15.  AW testified that he did not recall how many of the six

transactions he assisted with the transfer of funds.  He stated, "I don't know how many.  I

think all of the five sales – maybe four sales went through the company[.]"  Kelly Dec.

Ex. 109 at 241:23-245:15.

69.     Andrew was a fiduciary of the Estate of C.C. Wang between August 2004 and
May 2017.[152] When asked if he had records of any transactions between his overseas company
and any of the five buyers, Andrew said he did not. [153] He testified that he would not have kept
such records because the sales occurred 14-15 years ago.[154]

**OBJECTION TO PARAGRAPH 69:**  Defendant objects to paragraph 69 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 69 on the grounds that the

testimony cited was subject to objections from AW's counsel and is not admissible at

trial.

**RESPONSE TO PARAGRAPH 69:**  Disputed to the extent AW was appointed

temporary administrator of the Estate in 2003, not August 2004.  *See* Kelly Dec. Ex. 7.

Defendant further states that the bank account he maintained for the Hong Kong

company at HSBC bank in Hong Kong was closed in or around 2012, and he lost access

to the account.  AW Dec. at ¶ 33.  In or around early 2019, AW visited HSBC bank in

Hong Kong to obtain account records and was informed they did not maintain records

from the 2005-2009 time period.  *Id*.

70.     This testimony concerning Andrew's use of an offshore company to pay the
purchase prices to the Estate with respect to "all of the five sales"[155] is inconsistent with

---

[152] PA Decl. Exh. 1 (August 2004 Order granting preliminary letters); Savitsky Decl. Exh. 6 (May 2017 Decree).
[153] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 245:20-246:246:22).
[154] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 245:20-246:246:22).
[155] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 240:2-243:2).

testimony he gave in December 2013. It reveals Andrew knew exactly how the payments were made since he admits integral involvement through use of his own corporations to pay wire funds from Hong Kong to the U.S.

**OBJECTION TO PARAGRAPH 70:**  Defendant objects to paragraph 70 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 70 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 70 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 70:**  Disputed.  There is no conflict between AW's testimony in 2013 and 2019.  Defendant respectfully refers the Court to his responses to paragraphs 65 through 68, and the evidence cited therein.

71.     Andrew's 2019 testimony is also inconsistent with his 2013 Deposition testimony because, in 2013, Andrew had expressly testified that he did not own *any* companies whatsoever at the time of the Estate sales between 2005 and 2009. [156]

**OBJECTION TO PARAGRAPH 71:**  Defendant objects to paragraph 71 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 72 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 71 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 71 does not comply with Local Civil Rule 56.1(d), which requires that every statement be

---

[156] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 97:14-98:23).

supported by "citation to evidence which would be admissible, set forth as required by

Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 71:**  Disputed.  There is no conflict between AW's

testimony in 2013 and 2019.  Defendant respectfully refers the Court to his responses to

paragraphs 65 through 68, and the evidence cited therein.

72.     Specifically, Andrew testified during his 2013 Deposition that, as of the date of
the deposition, the only company he held an interest in was a new company called "BWT Asian
Arts."[157] He made no mention of any company or companies he now admits he "set up"[158] for the
purpose of wiring money to the Estate in relation to the sale of the 98 Paintings between 2005
and 2009.[159]

**OBJECTION TO PARAGRAPH 72:**  Defendant objects to paragraph 72 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 72 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 72 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 72:**  Defendant respectfully refers the Court to the

testimony cited for its full meaning and context.

73.      In fact, under oath to tell the whole truth, Andrew testified that he did not have
any interests in any other companies at all between 2003 and 2013: [160]

Q: Any other companies that you presently own any--.

A: No.

---

[157] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 97:14-98:23).
[158] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 242:8-21).
[159] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 97:14-98:23).
[160] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 97:14-98:23).

Q: --interest in?

A: No.

Q: From the period commencing with the date of your grandfather's death until today, other than BWT, are there any entities that you held an interest in?

A: You mean from 2003 until now?

Q: Correct.

A: No.

**OBJECTION TO PARAGRAPH 73:**  Defendant objects to paragraph 73 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 73 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 73 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 73:**  Undisputed that paragraph 73 accurately quotes the cited testimony.

74.     Unbeknownst to the PA or Yien-Koo at the time of that 2013 Deposition, Andrew had used an off-shore company called "Le Tao Limited" to sign a $5,900,000.00 Residential Contract of Sale to purchase a mansion on Long Island less than 8 months earlier:[161]

---

[161] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 130:17-131:21; 251:3-257:12, 258:16-259:264:15); Savitsky Decl. Exh. 25 (Exhibits AW-20 and AW-21 from 6/25/2019 AW Dep. comprising Residential Contract of Sale dated April 30, 2013 and Amendment).

CONTRACT OF SALE made as of                        April 30, 2013                        between

　　　　Fortuna Valentino
Address: 117 Old House Lane, Sands Point, New York 11050

Social Security Number/Fed. I. D. No(s):      ███ 2023                    hereinafter called "Seller" and

　　　　Le Tao Limited
Address: Unit 704 Four Seas Building 208-2012, Nathan Road KLN, Hong Kong

Social Security Number/Fed. I. D. No(s):                                  hereinafter called "Purchaser."

**OBJECTION TO PARAGRAPH 74:**  Defendant objects to paragraph 74 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 74 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 74 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 74 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 75:**  Defendant respectfully refers the Court to the document cited for its full meaning and context.

75.     The 2013 Residential Contract of Sale, executed by Andrew, was eventually amended to list the "Shou-Kung Wang Irrevocable Trust" as the purchaser.[162]

**OBJECTION TO PARAGRAPH 75:**  Defendant objects to paragraph 75 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 75 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[162] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 223:8-228:20 (AW testifying that the SK Wang Irrevocable Trust received the property Le Tao Limited purchased on April 30, 2013); Savitsky Decl. Exh. 25 (Exhibit AW-21 from 6/25/2019 AW Dep. comprising Amendment to Residential Contract of Sale).

In addition, paragraph 75 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant objects to paragraph 75 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 75:**  Defendant respectfully refers the Court to the document cited for its full meaning and context.

76.     Andrew also used his other company "Le Style Limited" to transfer the purchase price to the Estate in relation to completing the Estate's sale to "Yue Da Jin" in August 2009.[163]

**OBJECTION TO PARAGRAPH 76:**  Defendant objects to paragraph 76 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 76 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 76 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 76:**  With respect to certain of the sales, AW facilitated the transfer of funds from the buyers in China to the Estate account in the United States by accepting payment for the artwork into an account he controlled in Hong Kong and thereafter wiring those proceeds to the Estate.  *See* AW Dec. at ¶ 32.

77.     Andrew did not disclose Le Style Limited at his 2013 Deposition either.[164]

---

[163] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 308:3-309:22); Savitsky Decl. Exh. 25 (Exhibit AW-30 from 6/25/2019 AW Dep. Trans. comprising the Estate's account statement for August 2009; WANG001673).

[164] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 97:14-98:23).

**OBJECTION TO PARAGRAPH 77:**  Defendant objects to paragraph 77 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 77 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 77 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 77:**  Defendant respectfully directs the Court to the testimony cited for its full meaning and context.

78.     Andrew testified during his 2019 Deposition that he did not keep any financial or transactional records between Le Style Limited and "Yue Da Jin."[165] It is undisputed that no transactional records between Le Style Limited (his company in 2009) and a person named "Yue Da jin" exist in the Record.[166]

**OBJECTION TO PARAGRAPH 78:**  Defendant objects to paragraph 78 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 78 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 78 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 78:**  Disputed to the extent it implies AW was under any obligation to maintain records of these transactions.  Disputed to the extent Plaintiff seeks to imply that no such records exist.  Le-Style Limited's bank account at HSBC

---

[165] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 245:20-246:22).
[166] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 245:20-246:22).

bank in Hong Kong was, with thousands of other foreign bank accounts, closed by the

Chinese government in or around 2012.  AW Dec. at ¶ 33.  Defendant attempted to obtain

banking records from HSBC bank, but the bank did not maintain records dating back to

2009.  AW Dec. at ¶ 33.  Defendant further states that Plaintiff had the opportunity to, but

did not, seek discovery directly from Yue Da-Jin.  *See* Kelly Res. Dec. at ¶ 4(iv).

### C.   *Overview of the Shipping Process for the Private Sales*

79.    Upon receipt of payment for each of the six sales, the Co-fiduciaries, in
accordance with the terms of the six contracts, arranged for the international shipping of the 98
purchased paintings from the Crozier Fine Arts storage facility in Newark, New Jersey[167] to the
same single office address in Hong Kong:

> *c/o* "Billie Wae"
> Unit #704, Forseas Building,
> #208-212 Nathan Road, Kowloon, Hong Kong[168]

**OBJECTION TO PARAGRAPH 79:**  Defendant objects to paragraph 79 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 79 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 79 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 79:**  Defendant respectfully directs the Court to the

testimony cited for its full meaning and context.

80.    At the time of the sales, Andrew represented to his attorney, Klein, via email that
"China would collect custom tax" if the paintings were shipped directly to the buyers' listed

---

[167] Savitsky Decl. Exh. 26 (February 11, 2005 email by Andrew regarding shipping); Savitsky Decl. Exh. 27 (February 17, 2005 shipping slip for "Mr. Wei Zheng"; WANG001193).

[168] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 254:16-255:8).

addresses in Beijing and Shanghai.[169] Andrew represented that, therefore, the buyers asked him to ship the paintings to Hong Kong.[170] Andrew directed Martin Klein to "use the same address in HK," to ship the paintings and that the buyers would then collect the paintings from there. [171]

**OBJECTION TO PARAGRAPH 80:**  Defendant objects to paragraph 80 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 80 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 80 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 80:**  Undisputed that paragraph 80 accurately quotes the document cited.

81.     During his 2013 Deposition, Andrew was asked questions about the Estate's use of Unit 704 as the shipping address for all 98 Paintings. [172] He answered by providing additional explanation about the "service" which Unit 704 supposedly offered.[173]

**OBJECTION TO PARAGRAPH 81:**  Defendant objects to paragraph 81 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 81 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 81 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

---

[169] Savitsky Decl. Exh. 28 (WANG002108-2111).
[170] Savitsky Decl. Exh. 28 (WANG002108-2111).
[171] Savitsky Decl. Exh. 28 (WANG002108-2111).
[172] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 943:19-944:13).
[173] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 943:19-945:21).

**RESPONSE TO PARAGRAPH 81:**  Undisputed.  Defendant respectfully refers the

Court to the testimony cited for its full meaning and context.

82.      Under oath to tell the whole truth, Andrew testified that Unit 704 was just "a
business office, that you can let  [] receive fax, mails and also, you know . . . [y]ou just use the
office to receive your mail, to receive packages and you pay for their service."[174]

**OBJECTION TO PARAGRAPH 82:**  Defendant objects to paragraph 82 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 82 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 82 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 82:**  Undisputed that paragraph 82 accurately quotes

the testimony cited.

83.      According to Andrew, "the office received the package and they would make
arrangement for the receipt of the buyer."[175]

**OBJECTION TO PARAGRAPH 83:**  Defendant objects to paragraph 83 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 83 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 83 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

---

[174] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 943:19-945:21).
[175] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 943:19-946:19).

**RESPONSE TO PARAGRAPH 83:**  Undisputed that paragraph 83 accurately quotes

the testimony cited.

84.     In 2013, when asked if Andrew knew Billie Wai, Andrew simply said "That's a person that she is receiving the artworks." [176] And when then asked if he knew "Billie Wai, from [] before this series of transactions," Andrew responded "I contact that person for that shipment. You know, I just---that is the time I contacted with."[177]

**OBJECTION TO PARAGRAPH 84:**  Defendant objects to paragraph 84 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 84 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 84 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 84:**  Undisputed that paragraph 84 accurately quotes

the testimony cited.

85.     But Andrew gave a contradicting description of Unit 704 during his 2019 Deposition in this RICO action. He testified that Unit 704 office is actually an accountant's office in Hong Kong.[178] *His* accountant's office. [179]

**OBJECTION TO PARAGRAPH 85:**  Defendant objects to paragraph 85 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 85 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 85 does not comply with Local Civil Rule 56.1(d), which requires

---

[176] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 945:6-946:12).

[177] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 945:6-946:12).

[178] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 254:16-256:18; 311:13-19).

[179] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 128: 7-17; 311:13-19).

that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 85:**  Disputed.  The testimony cited does not support the proposition that AW gave contradicting descriptions.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.  AW disclosed to his attorney that the paintings were being shipped to his accountant's office and were to be collected by the buyer there.  AW Dec. at ¶ 39.

86.     And Billie Wai, Andrew divulged in 2019, is his accountant.[180]

**OBJECTION TO PARAGRAPH 86:**  Defendant objects to paragraph 86 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 86 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 86 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 86:**  Disputed.  AW's accountant is C.K. Lam of C.K. Lam & Co.  Billie Wai was the office manager for C.K. Lam & Co.  AW Dec. at ¶ 36.

87.     Though it does not appear on any of the contracts of sale signed by the Estate, the name of Andrew's accounting firm in Hong Kong is "CK Lam."[181]

**OBJECTION TO PARAGRAPH 87:**  Defendant objects to paragraph 87 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 87 to the extent it advances

---

[180] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 311:13-19) ("And I even went to the bank to look for it, and including my accountant Billie Wai's office").

[181] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 128: 7-17; 254:16-256:18; 311:13-19).

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 87 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."  Defendant objects to paragraph 87 on the

grounds that the testimony cited was subject to objections from AW's counsel and is not

admissible at trial.

   **RESPONSE TO PARAGRAPH 87**:  Undisputed.

88.   Andrew never disclosed to Klein or Schram that Unit 704 in Hong Kong—where

all 98 Paintings had been shipped— belonged to his accountant."[182]

**OBJECTION TO PARAGRAPH 88**:  Defendant objects to paragraph 88 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 88 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 88 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."  Defendant objects to paragraph 88 on the

grounds that the testimony cited was subject to objections from AW's counsel and is not

admissible at trial.

**RESPONSE TO PARAGRAPH 88**:  Disputed.  The cited testimony does not support

that AW never disclosed to Klein or Schram that Unit 704 belonged to his accountant.

Defendant respectfully refers the Court to the testimony cited for its full context and

meaning.

---

[182] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 256:13-18) (Andrew does not remember telling Klein or Schram that Unit 704 "belongs to my accountant"); Savitsky Decl. Exh. 12 (Schram Dep. at 85:12-86:7); Savitsky Decl. Exh. 21 (Klein Dep. Trans. at 168:21-169:8).

89.     But Andrew did recall that CK Lam has been his accountant for "[m]any years . . . In fact, my grandfather used them from the 1990s . . . It has been a family friend for a long time, CK Lam. And we form the companies there. We close the company there. I just get it connected with my grandfather, so introduction."[183]

**OBJECTION TO PARAGRAPH 89:**  Defendant objects to paragraph 89 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 89 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 89 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 89:**  Undisputed that paragraph 89 accurately quotes the testimony cited.

90.     It is therefore undisputed in this self-dealing action that Andrew (a) paid for the 98 Paintings using an overseas account(s) and then (b) shipped the 98 Paintings to his own accountant's office in Hong Kong—all without his Co-fiduciary's knowledge or consent.

**OBJECTION TO PARAGRAPH 90:**  Defendant objects to paragraph 90 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 90 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 90 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 90:**  Disputed.  There is no evidence cited or in the record that supports the proposition that "Andrew (a) paid for the 98 Paintings using an

---

[183] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 128:4-17).

overseas account(s) and then (b) shipped the 98 Paintings to his own accountant's office in Hong Kong—all without his Co-fiduciary's knowledge or consent."

91.     Andrew has not produced any documentary evidence or third-party testimony that any of the five purported buyers sourced these funds paid by his company to the Estate or ultimately received any of the 98 Paintings after they were delivered to Andrew's accountant.[184]

**OBJECTION TO PARAGRAPH 91:**  Defendant objects to paragraph 91 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 91 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 91 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant objects to paragraph 91 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 91:**  Defendant further states that Plaintiff had the opportunity to, but did not, seek discovery directly from the five buyers, C.K. Lam & Co., Billie Wai, and others but failed to do so.  *See* Kelly Res. Dec. at ¶ 4.  Disputed to the extent it implies that AW was the source of funds used to purchase the 98 Paintings. Defendant respectfully refers the Court to his response to paragraph 68 and the documents cited therein.

92.     In fact, Andrew has not produced a single email or other written communication with any of the purported five buyers[185] whom he claims (a) were "always ask[ing] a favor to use

---

[184] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 245:16-246:22).

[185] Savitsky Decl. at ¶7.

my company" to pay the Estate over $4 million and (b) he allowed to use his accountant's office for shipping receipts.[186]

**OBJECTION TO PARAGRAPH 92:**  Defendant objects to paragraph 92 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 92 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 92 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant objects to paragraph 92 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 92:**  Disputed to the extent Plaintiff seeks to imply that "email or other written communication" between AW and the five buyers exist, ever existed, or should have been produced in this action.  Plaintiff failed to seek discovery directly from the five buyers, C.K. Lam & Co., Billie Wai, and others in this action.  *See* Kelly Res. Dec. at ¶ 4.  Further, an email account AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written communications between parties to a sale of classical artworks in China is customary.  *Id.*

---

[186] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 240:2-243:2).

**D.** ***Overview of Andrew's Contradicting Testimonies Regarding the Process of Locating and Communicating with the Five Purported Buyers of Estate Assets.***

93.     At his 2013 Deposition, Andrew was asked questions about how he located the five purported buyers of Estate paintings and whether he knew them. Andrew testified, under oath to tell the whole truth, that in 2005 "we were trying to find buyers, and I contact the people in China and Asia."[187]  He further testified that the buyers "could be friends, in terms of friends, it could be friend's friends, it's like through connections."[188]

**OBJECTION TO PARAGRAPH 93:**  Defendant objects to paragraph 93 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 93 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 93 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 93:**  Undisputed.

94.     Andrew testified that some of the buyers of the 98 Paintings were his friends and that he knows "[m]ost buyers" in the market.[189]

**OBJECTION TO PARAGRAPH 94:**  Defendant objects to paragraph 94 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 94:**  Disputed.  The testimony cited does not support the proposition.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

---

[187] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 942:16-943:11).

[188] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 707:9-21).

[189] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 545:5-13; 707:9-21).

95.     Andrew was asked if he knew <u>Mr. Yong Qing Ye</u>, a purported buyer of Estate paintings.[190] Andrew answered that he "kn[e]w him in person, yes" and that Mr. Ye is "a friend of mine" from Shanghai.[191] Andrew further testified that he has known Mr. Yong Qing Ye "[s]ince 1990."[192]

**OBJECTION TO PARAGRAPH 95:**  Defendant objects to paragraph 95 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 95 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 95 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 95:**  Undisputed that paragraph 95 correctly quotes the

cited testimony.

96.     Andrew testified that he knew <u>Mr. Yue Da-Jin</u>, a purported buyer of Estate paintings, "[t]hrough a friend in China."[193] When next asked "[w]hat's the name of the friend?" Andrew testified "I remember his last name is Xu. Mr. Xu, but I don't remember. But, you know, we were just in the same circle at that time."[194]

**OBJECTION TO PARAGRAPH 96:**  Defendant objects to paragraph 96 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 96 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 96 does not comply with Local Civil Rule 56.1(d), which requires

---

[190] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 956:19-957:9).

[191] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 956:22-957:9).

[192] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 957:3-5).

[193] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 953:12-954:6).

[194] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 953:12-954:6).

that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 96**:  Undisputed that paragraph 96 accurately quotes the cited testimony.

97.      When asked if he knew Mr. Anthony Chou, Andrew responded "[y]es, I know him."[195] Andrew represented that he knew Mr. Chou "either from Beijing or from Shanghai" and that "he [Chou] has a few places."[196] When asked in what "context" Andrew knew Mr. Chou, he answered "he is just another buyer doing business buying and selling artworks." [197] But Andrew testified that Mr. Chou "usually buy [] from a different auction house."[198]

**OBJECTION TO PARAGRAPH 97**:  Defendant objects to paragraph 97 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 97 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 97 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 97**:  Undisputed that paragraph 97 accurately quotes the cited testimony.

98.      When asked if he knew Mr. Chen Mei-Lin, Andrew testified "[y]es . . . I know him, he is a collector in China, southern part of [] China." [199]  When Andrew was asked if he had ever done business with Mr. Chen Mei-Lin before, he responded "[n]o. This is only—you know he has a lot of money at that time. He was in the car business, selling imported foreign cars. And so before he [became] involved in the art, artwork investment, but now he [is] no longer in the field, I believe."[200]

---

[195] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 948:9-949:2).

[196] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 948:13-19).

[197] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 948:18-949:2).

[198] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 948:18-949:2).

[199] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 961:12-13).

[200] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 961:12-24).

**OBJECTION TO PARAGRAPH 98**:  Defendant objects to paragraph 98 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 98 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 98 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 98**:  Undisputed that paragraph 98 accurately quotes the cited testimony.

99.     Notwithstanding the fact that Andrew said he knew all of these purported purchasers at his 2013 Deposition, Andrew gave contradicting testimony in 2019. At his 2019 Deposition in this action, Andrew testified that he could not find any purchasers on his own and it was the PA who referred him to a man who, she explained to Andrew, was "the son of a very well-known artist in China" that could help the Estate find purchasers for its artwork.[201]

**OBJECTION TO PARAGRAPH 99**:  Defendant objects to paragraph 99 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 99 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 99 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant objects to paragraph 99 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

---

[201] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 76:9-79:9).

**RESPONSE TO PARAGRAPH 99:**  Undisputed that paragraph 99 accurately quotes the cited testimony.  Defendant respectfully refers the Court to the testimony cited.

100.    In his interrogatory responses in this action in 2018 and at the 2019 Deposition, Andrew testified that based on the PA's reference, <u>Mr. Er Shi Fu</u>, ultimately became "the intermediary who arranged the purchases and had the direct contact with the buyers."[202]

**OBJECTION TO PARAGRAPH 100:**  Defendant objects to paragraph 100 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 100 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 100 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 100:**  Undisputed that paragraph 100 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited.

101.    Andrew's 2019 Deposition testimony was that he met with Mr. Fu and gave him "all the information" that Mr. Fu needed to set up sales for the Estate.[203] Andrew testified that he communicated with Mr. Fu "[b]y telephone calls" and sent Mr. Fu a copy of the 2004 Sotheby's Appraisal. [204]

**OBJECTION TO PARAGRAPH 101:**  Defendant objects to paragraph 101 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 101 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 101 does not comply with Local Civil Rule 56.1(d), which requires

---

[202] Savitsky Decl. <u>Exh. 25</u> (6/25/2019 AW Dep. Exhibit AW-1 at 4); Savitsky Decl. <u>Exh. 11</u> (6/25/2019 AW Dep. Trans. at 106:17-107:25).

[203] Savitsky Decl. <u>Exh. 11</u> (6/25/2019 AW Dep. Trans. at 94:3-15).

[204] Savitsky Decl. <u>Exh. 11</u> (6/25/2019 AW Dep. Trans. at 86:16-25; 92:11-21).

that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 101:**  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

102.    Andrew has not produced any emails or other communications with Mr. Fu and testified that Mr. Fu did not have an email account.[205]

**OBJECTION TO PARAGRAPH 102:**  Defendant objects to paragraph 102 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 102 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 102 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 102:**  Disputed to the extent Plaintiff seeks to imply that "emails or other communications" between AW and Mr. Fu exist, ever existed, or should have been produced in this action.  Plaintiff failed to seek discovery directly from Mr. Fu in this action.  *See* Kelly Res. Dec. at ¶ 4(vii).  Further, an email account AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between

---

[205] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 86:16-25).

Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written

communications between parties to a sale of classical artworks in China is customary.  *Id*.

103.     Schram, counsel for the PA at the time of the sales, never heard of a person
named Er Shi Fu from the PA or anyone else at any point between 2003 and 2009.[206]

**OBJECTION TO PARAGRAPH 103:**  Defendant objects to paragraph 103 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 103 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 103 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 103:**  Defendant disputes paragraph 103 to the extent it

implies that Schram would, or should, have heard of Mr. Fu.  Schram was an attorney for

the co-fiduciary, not the co-fiduciary himself.  *See* Kelly Dec. Ex. 108 at 8:11-18.

Further, Schram testified that lawyers from Bryan Cave, and other lawyers at his law

firm, served as counsel to the PA in her role as temporary administrator of the Estate.

*See id.* at 16:14-23.  Schram further testified that he was not privy to all conversations

between Ethel Griffin and AW.  *See id*. at 107:6-10.  Schram primarily served as an

intermediary between the PA, Ethel Griffin, and AW's attorney Marty Klein.  *See id*. at

80:19-81:12.  Schram did not review the terms of the sales at issue in this action with the

Public Administrator, and it was not his job to do so.  *Id*.  Schram had no relevant

expertise to evaluate the terms of any of the sales.  *Id*.  He forwarded the terms of

---

[206] Savitsky Decl. Exh.  12 (Schram Dep. Trans. at 58:8-14; 104:12-106:23).

proposed sales to the Public Administrator or Elin Lake-Ewald and would then receive a decision from Ethel Griffin.  *Id.*

104.    As legal counsel to the PA, Ethel Griffin, between 2005 and 2009, Schram testified that "in my opinion the chances of that testimony" regarding the PA's suggestion of a Chinese intermediary named Er Shi Fu "being true is somewhere between zero and nil."[207]

**OBJECTION TO PARAGRAPH 104:**  Defendant objects to paragraph 104 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 104 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 104 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 104:**  Defendant disputes paragraph 104 to the extent it implies that Schram would, or should, have heard of Mr. Fu.  Schram was an attorney for the co-fiduciary, not the co-fiduciary himself.  *See* Kelly Dec. Ex. 108 at 8:11-18.  Further, Schram testified that lawyers from Bryan Cave, and other lawyers at his law firm, served as counsel to the PA in her role as temporary administrator of the Estate.  *See id.* at 16:14-23.  Schram further testified that he was not privy to all conversations between Ethel Griffin and AW.  *See id.* at 107:6-10.  Schram primarily served as an intermediary between the PA, Ethel Griffin, and AW's attorney Marty Klein.  *See id.* at 80:19-81:12.  Schram did not review the terms of the sales at issue in this action with the Public Administrator, and it was not his job to do so.  *Id.*  Schram had no relevant expertise to evaluate the terms of any of the sales.  *Id.*  He forwarded the terms of

---

[207] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 105:17-106:9).

proposed sales to the Public Administrator or Elin Lake-Ewald and would then receive a

decision from Ethel Griffin.  *Id.*

105.    Because of Mr. Fu's claimed role in finding buyers, Andrew testified that he
never communicated or emailed directly with the five purported buyers.[208] Instead, he claimed
the process by which the Estate paintings were sold to private buyers was "just like selling a
house here in this country. You only deal with the agent. You don't deal with the buyer
directly."[209]

**OBJECTION TO PARAGRAPH 105:**  Defendant objects to paragraph 105 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 105 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 105 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 105:**  Disputed to the extent that the cited testimony

does not support the assertion that AW testified that he "never communicated" with the

five buyers.  Defendants respectfully refer the Court to the transcript of AW's testimony

for the full context and meaning of this testimony.

106.    Andrew further explained that all communications between himself and the
buyers came through Mr. Fu because he was "not supposed to deal directly with buyers because I
was the agent or the middleman involved."[210]

**OBJECTION TO PARAGRAPH 106:**  Defendant objects to paragraph 106 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 106 to the extent it advances

---

[208] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 93:12-93:18).

[209] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 93:12-93:18).

[210] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 109:11-15; 106:17-22).

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.
In addition, paragraph 106 does not comply with Local Civil Rule 56.1(d), which requires
that every statement be supported by "citation to evidence which would be admissible, set
forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 106:**  Defendant respectfully refers the Court to the
transcript of AW's testimony for the full context and meaning of this testimony.

107.     When asked if it was true that he "didn't meet any of [the buyers] before Er Shi
Fu set [Andrew] up with them" Andrew testified "Correct."[211]

**OBJECTION TO PARAGRAPH 107:**  Defendant objects to paragraph 107 on the
grounds the purported facts asserted therein are not relevant or material to any issue
before the Court.  Defendant further objects to paragraph 107 to the extent it advances
legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.
In addition, paragraph 107 does not comply with Local Civil Rule 56.1(d), which requires
that every statement be supported by "citation to evidence which would be admissible, set
forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 107:**  Defendant respectfully refers the Court to the
transcript of AW's testimony for the full context and meaning of this testimony.

108.     And when asked if he had "any other relationship with these five buyers other
than through Er Shi Fu," Andrew testified "No."[212]

**OBJECTION TO PARAGRAPH 108:**  Defendant objects to paragraph 108 on the
grounds the purported facts asserted therein are not relevant or material to any issue
before the Court.  Defendant further objects to paragraph 108 to the extent it advances
legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[211] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 94:16-21).
[212] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 122:16-19).

In addition, paragraph 108 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 108:**  Defendant respectfully refers the Court to the

transcript of AW's testimony for the full context and meaning of this testimony.

109.     Andrew testified that the information about the buyers' addresses was provided to
him by Mr. Fu and Andrew was therefore "not in the position to ask [for] detailed addresses."[213]

**OBJECTION TO PARAGRAPH 109:**  Defendant objects to paragraph 109 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 109 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 109 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 109:**  Defendant respectfully refers the Court to the

transcript of AW's testimony for the full context and meaning of this testimony.

110.     (A) Yet back at Andrew's <u>2013 Deposition</u>, he testified that Yong Qing Ye was
Andrew's "friend" from Shanghai since 1990.[214] (B) And he claimed he was connected to Mr.
Yue Da Jin through Andrew's other friend called "Mr. Xu"—not a middle-man selected by the
PA.[215] (C) Mr. Anthony Chou was supposedly known by Andrew "either from Beijing or
Shanghai" but Andrew was unsure which because he claimed to know that Mr. Chou "has a few
places."[216] (D) It was also Andrew's testimony in 2013 that Mr. Chen Mei-Lin  was supposedly

---

[213] Savitsky Decl. <u>Exh. 11</u> (6/25/2019 AW Dep. Trans. at 106:17-22).

[214] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 957:3-5).

[215] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 953:12-954:6).

[216] Savitsky Decl. <u>Exh. 24</u> (2013 AW Dep. Trans. at 948:13-19).

"in [the] car business selling imported foreign cars." [217] (E)Andrew explained in 2013 that Mr. Chen "you know he ha[d] a lot of money at that time," but that he is no longer in the field. [218]

**OBJECTION TO PARAGRAPH 110:**  Defendant objects to paragraph 110 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 110 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 110 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 110:**  Defendant disputes statements 110(D) and 110(E) to the extent that the cited testimony does not support any proposition about Chen Mei-Lin. Defendant respectfully refers the Court to the transcript of AW's testimony for the full context and meaning of this testimony.

111.    The Wang Defendants have produced more than 80,000 bates-stamped pages of documents in this case, including certain of Andrew's emails dating back to October 2004. [219]

**OBJECTION TO PARAGRAPH 111:**  Defendant objects to paragraph 111 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 111:**  Undisputed.

112.    Other than the signed sale documentation itself, the Wang Defendants have not produced any emails, letters, or other communications with any of the purported purchasers of Estate paintings (*e.g.*, Wei Zheng, Chen Mei Lin, Anthony Chou, Yue Da Jin, or Yong Qing Ye). [220] It is undisputed that no such records exist.

---

[217] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 948:13-19).

[218] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 948:13-19).

[219] Savitsky Decl. at ¶6; Savitsky Decl. Exh. 19 (October 2004 email by Andrew).

[220] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 95:3-22); Savitsky Decl. at ¶7.

**OBJECTION TO PARAGRAPH 112:**  Defendant objects to paragraph 112 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 112 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 112 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 112:**  Defendant disputes paragraph 112's statement that no such records exist, ever existed, or should have been produced in this action. Plaintiff failed to seek discovery directly from Wei Zheng, Chen Mei Lin, Anthony Chou, Yue Da Jin, or Yong Qing Ye in this action.  *See* Kelly Res. Dec. at ¶¶ 4(i), 4(ii), 4(iii), 4(iv), 4(v).  Further, an email account AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written communications between parties to a sale of classical artworks in China is customary.  *Id*.

113.    The Wang Defendants have not produced any emails, letters, or other communications with Er Shi Fu. It is undisputed that no such records exist or ever existed.

**OBJECTION TO PARAGRAPH 113:**  Defendant objects to paragraph 113 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 113 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 113 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 113:**  Defendant disputes paragraph 113's statement

that no such records exist or ever existed.  Plaintiff failed to seek discovery directly from

Mr. Fu in this action.  *See* Kelly Res. Dec. at ¶ 4(vii).  Further, an email account AW

used during the period of the sales and in connection with the sales, specifically

"Yiyuanwang@aol.com" was closed by the service provider for lack of use and was

unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally,

"handshake deals" are customary practice in the sales of Chinese paintings between

Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written

communications between parties to a sale of classical artworks in China is customary.  *Id*.

114.    There is no reference to any person named "Er Shi Fu" or "Mr. Fu" on any
document in the Record created prior to September 7, 2018, which is the date of Andrew's
original response to Yien-Koo King's First Set of Interrogatories in this action.[221]

**OBJECTION TO PARAGRAPH 114:**  Defendant objects to paragraph 114 on the

grounds the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 114 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, paragraph 114 does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed. R. Civ. P. 56(c)."

---

[221] Savitsky Decl. Exh. 25 (6/25/2019 AW Dep. Exhibit AW- 1 at 4); Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 106:17-107:25).

**RESPONSE TO PARAGRAPH 114:**  Defendant disputes paragraph 114's statement that no such records exist.  Plaintiff failed to seek discovery directly from Mr. Fu in this action.  *See* Kelly Res. Dec. at ¶ 4(vii).  Further, an email account AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written communications between parties to a sale of classical artworks in China is customary.  *Id.*

115.    Though Andrew testified in 2019 that the buyers were "always ask[ing for] a favor to use my company" to wire money to the Estate on their behalf, he has produced no records or communications evidencing this arrangement.[222]

**OBJECTION TO PARAGRAPH 115:**  Defendant objects to paragraph 115 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 115 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 115 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 115:**  Defendant disputes paragraph 115's statement that no such records exist.  Plaintiffs failed to seek discovery directly from Wei Zheng, Chen Mei Lin, Anthony Chou, Yue Da Jin, or Yong Qing Ye in this action, and that alone belies any conclusion that no such records exist.  Defendant further responds that

---

[222] Savitsky Decl. at ¶7; Savitsky Decl. <u>Exh. 11</u> (6/25/2019 AW Dep. Trans. at 240:2-243:2).

email accounts that he used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for relevant records.  AW Dec. at ¶ 31. Plaintiff mischaracterizes AW's testimony.  AW testified that the buyers were "always ask[ing for] a favor to use my company or to set up the company for the transfer[.]"  *See* Kelly Dec. Ex. 109 at 242:8-21.  Defendants further dispute paragraph 115 to the extent it purports to imply that AW was the original source of funds used to purchase any estate artwork.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  AW was not the buyer of any of the 98 Paintings.  *See* Kelly Dec. Ex. 92 at ¶ 2.  AW did not have any personal interest in the sales of the 98 Paintings.  *Id*.  AW did not acquire any ownership interest in the 98 Paintings through the sales.  *Id*.  AW did not acquire any ownership interest in the 98 Paintings through the sales.  *Id*.  AW did not benefit from the sales of the 98 Paintings or any subsequent sales of the 98 Paintings.  *Id.*  The Estate faced a problem selling artwork to buyers in China, because the Chinese citizens, at that time, could not transfer money directly from China to the United States.  *See* Kelly Dec. Ex. 109 at 239:22-245:15; Ex. 112 at 944:19-945:5.  To solve the problem, when necessary, buyers transferred first transferred funds to a bank account AW controlled in Hong Kong.  *See* Kelly Dec. Ex. 109 at 239:22-245:15.  AW, in turn, transferred the purchase funds to the Estate.  *See id*. AW disclosed to his counsel at Brown Raysman that, when necessary, the funds were flowing from China through Hong Kong account he controlled.  *See id*. at 244:13-245:15.

116.    And though Andrew testified in 2019 that had the buyers pick up their paintings from Andrew's accountant's office in Hong Kong, there are no communications or emails in the Record evidencing this arrangement either.[223]

**OBJECTION TO PARAGRAPH 116:**  Defendant objects to paragraph 116 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 116 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 116 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 116:**  Defendant disputes paragraph 116's statement that no such records exist.  Plaintiff failed to seek discovery directly from Wei Zheng, Chen Mei Lin, Anthony Chou, Yue Da Jin, or Yong Qing Ye in this action.  *See* Kelly Res. Dec. at ¶¶ 4(i), 4(ii), 4(iii), 4(iv), 4(v).  Further, an email account AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written communications between parties to a sale of classical artworks in China is customary.  *Id.*

117.    Nor are their any email or other communications in the Record between Andrew and his accountant, Billie Wai.[224]

---

[223] Savitsky Decl. at ¶¶ 7-8.

[224] Savitsky Decl. at ¶ 8.

**OBJECTION TO PARAGRAPH 117:**  Defendant objects to paragraph 117 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 117 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 117 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 117:**  Disputed to the extent Plaintiff seeks to imply that "email or other communications" between AW and Billie Wai exist, ever existed, or should have been produced in this action.  Plaintiff failed to seek discovery directly from Billie Wai in this action.  *See* Kelly Res. Dec. at ¶ 4(ix).  Further, an email account AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between Chinese parties.  *See* Kelly Dec Ex. 94 at 64:8-65:7.  The lack of written communications between parties to a sale of classical artworks in China is customary.  *Id*.

118.    As a result of the purported use of someone named "Mr. Er Shi Fu" and the PA's hiring of OTE to review the sales proposals, Andrew testified in 2019 that he did not play any role "at all" in determining prices or negotiating for higher prices with the five purported buyers:[225]

> Q: Did the information you gave [Klein] include the proposed sales prices for the paintings?
>
> A: We didn't talk about the prices because we have auction house appraisal book. And I said there were buyers who are interested to

---

[225] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 89:25-95:22) (AW testifying he did not forward the prices of Estate paintings to the PA); 75:9-76:13.

buy those pieces. And I give to Marty Klein how many pieces the
buyer wants to buy or are interested, and he would prepare the
contract with [Schram] and [Ewald]. Regarding [] the prices,
[Ewald] and the art consultant would evaluate and finalize the final
sale values. So I had no control over that.

* * * * *

Q: But [in] your calls with Er Shi Fu, [] he gave you the names of
the paintings the buyer was looking for and the prices?

A: No, he just gave me the name of the buyers and also the number
of the paintings. You know, we have the --- on the appraisal book,
each painting has a number. So I just copy down the number and
tell [Klein] to prepare the list of paintings for potential sale.

Q: Who decided what the prices would be?

A: The PA and her art consultant.

Q: Did you have any role in that?

A: Not at all.

**OBJECTION TO PARAGRAPH 118:**  Defendant objects to paragraph 118 to the

extent it advances legal conclusions and arguments rather than facts, as required by Local

Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 118:**  Disputed.  The testimony cited does not support

the proposition that AW "did not play any role "at all" in determining prices or

negotiating for higher prices with the five purported buyers."  AW negotiated for and

obtained, offers for the artwork that, for the majority of the 98 Paintings, met or exceeded

the 20% benchmark price increase over the Sotheby's Appraisal the PA required.  *See*

AW Dec. at ¶ 21.  In fact, AW obtained more than 20% in numerous instances.  *See* Kelly

Dec. Ex. 13; Ex. 49 at WANG000622; Ex. 50 at WANG00633; Ex. 64 at KING 006617.

The PA was aware of, and approved, AW's efforts to seek prices based on the Sotheby's

Appraisal.  AW Dec. at ¶ 17; Kelly Dec. Ex. 54 at KING005956; Ex. 58 at KING 6487-

488; Ex. 38 at KING 00602-603; Ex. 65 at KING 006942-943; Ex. 39 at KING 007189-

190; Ex. 40 at KING 007362-364; Ex. 75 at AWSK_00015264.

119.     Therefore, it cannot be genuinely disputed that Andrew played no role in
negotiating with any of the five purported buyers for higher sale prices for any of the 98
Paintings.[226]

**OBJECTION TO PARAGRAPH 119:**  Defendant objects to paragraph 119 to the

extent it advances legal conclusions and arguments rather than facts, as required by Local

Civil Rule 56.1.  In addition, paragraph 119 does not comply with Local Civil Rule

56.1(d), which requires that every statement be supported by "citation to evidence which

would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

**RESPONSE TO PARAGRAPH 119:**  Disputed.  The testimony cited does not support

the proposition that AW "played no role in negotiating with any of the five purported

buyers for higher sale prices for any of the 98 Paintings."  AW negotiated for and

obtained, offers for the artwork that, for the majority of the 98 Paintings, met or exceeded

the 20% benchmark price increase over the Sotheby's Appraisal the PA required.  *See*

AW Dec. at ¶ 21.  In fact, AW obtained more than 20% in numerous instances.  *See* Kelly

Dec. Ex. 13; Ex. 49 at WANG000622; Ex. 50 at WANG00633; Ex. 64 at KING 006617.

The PA was aware of, and approved, AW's efforts to seek prices based on the Sotheby's

Appraisal.  AW Dec. at ¶ 17; Kelly Dec. Ex. 54 at KING005956; Ex. 58 at KING 6487-

488; Ex. 38 at KING 00602-603; Ex. 65 at KING 006942-943; Ex. 39 at KING 007189-

190; Ex. 40 at KING 007362-364; Ex. 75 at AWSK_00015264.

---

[226] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 90:25-93:11) (AW testifying he did not forward the prices
of Estate paintings to the PA).

**E.** ***Other Contradictory Statements by Andrew and Shou-Kung Wang Regarding Andrew's Relationship with the Buyers.***

120.     In 2013, one of the beneficiaries of the Estate of Chi-Chuan Wang, Dr. James E. Tcheng, filed a petition (the "Removal Petition") in the Surrogate's Court seeking Andrew's removal as preliminary executor of the Estate.[227] The Removal Petition alleged that Andrew had, among other things, sold the 98 Paintings to himself.[228]

**OBJECTION TO PARAGRAPH 120:**  Defendant objects to paragraph 120 on the grounds the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 120 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 120:**  Disputed to the extent that the Removal Petition was filed in 2014, not 2013.  Defendant respectfully refers the Court to the Removal Petition itself for its complete context and meaning.

121.     At paragraph 115 of the Removal Petition, Dr. Tcheng alleged that Andrew's self-dealing was evidenced, in part, by the fact that one of the Estate's six private-sale contracts listed Andrew's *own* Shanghai apartment address—#777 Lane, Building No. 1, Apt. 328A, 200041 Shanghai—as the sale contract's designated residential address for the purported buyer. [229]

**OBJECTION TO PARAGRAPH 121:**  Defendant objects to paragraph 121 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 121 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 121:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

---

[227] Savitsky Decl. Exh. 29 (Verified Petition of James E. Tcheng dated May 12, 2014 ("Tcheng Petition")).

[228] Savitsky Decl. Exh. 29 (Tcheng Petition).

[229] Savitsky Decl. Exh. 29 (Tcheng Petition).

122.    The "buyer" who was, according to the executed sales contract, supposedly residing in Andrew's Shanghai apartment at the time of the $1.393 million sale, was "Mr. Chen Mei-Lin."[230]

**OBJECTION TO PARAGRAPH 122:**  Defendant objects to paragraph 122 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 122 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 122:**  Defendant respectfully refers the Court to the Removal Petition for its full context and meaning.

123.    In response to the allegation in Dr. Tcheng's Removal Petition, Andrew's father, SK, signed and filed a verified answer ("SK's Verified Answer") to the Removal Petition "[a]dmit[ting] that one of the addresses to which Estate paintings were shipped was [Andrew's] own address."[231]

**OBJECTION TO PARAGRAPH 123:**  Defendant objects to paragraph 123 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 123 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 123:**  Undisputed that paragraph 123 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

124.    SK further attested that this use of Andrew's own overseas address in the Estate's contract of sale with Chen Mei Lin was done by Andrew "as an accommodation to the buyer."[232]

**OBJECTION TO PARAGRAPH 124:**  Defendant objects to paragraph 124 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[230] Savitsky Decl. Exh. 29 (Tcheng Petition).

[231] Savitsky Decl. Exh. 30 at ¶¶113-115 (SK Verified Answer to Tcheng Petition, sworn to on August 28, 2014).

[232] Savitsky Decl. Exh. 30 at ¶¶113-115 (SK Verified Answer Tcheng Petition, sworn to on August 28, 2014).

before the Court.  Defendant further objects to paragraph 124 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

Defendant objects on the grounds that the cited testimony was subject to objections from

AW's counsel.  Thus, paragraph 124 does not comply with Local Civil Rule 56.1(d),

which requires that every statement be supported by "citation to evidence which would

be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 124:**  Undisputed that paragraph 124 accurately quotes

the document cited.  Defendant respectfully refers the Court to the document cited for its

full context and meaning.

125.     Similarly, Andrew testified in 2019 that his hitherto undisclosed companies were
used to wire the purchase prices to the Estate just as "a favor" to the buyers.[233]

**OBJECTION TO PARAGRAPH 125:**  Defendant objects to paragraph 125 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 125 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

Defendant objects on the grounds that the cited testimony was subject to objections from

AW's counsel.  Thus, paragraph 125 does not comply with Local Civil Rule 56.1(d),

which requires that every statement be supported by "citation to evidence which would

be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 125:**  Undisputed that paragraph 125 accurately quotes

the testimony cited.  Defendant respectfully refers the Court to the testimony cited for its

full context and meaning.

---

[233] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 240:2-243:2).

126.    Notwithstanding these sworn statements, Andrew also gave testimony in in 2019 that he had no pre-existing relationships[234] or direct communications with any of the five buyers.[235] Andrew's 2019 testimony is that the process was "just like selling a house here in this country. You only deal with the agent [Mr. Fu]. You don't deal with the buyer directly." [236]

**RESPONSE TO PARAGRAPH 126:**  Undisputed that Plaintiff correctly quotes the

cited testimony.  Defendants respectfully refer the Court to the transcript of AW's

testimony for the full context and meaning of this testimony.

127.    At paragraph 119 of SK's Verified Answer to the Removal Petition, SK "admit[ted] that [Andrew] had friendships with some of the buyers and that AW testified 'Yes' in answer to the question 'So some of the buyers were friends; right?.'"[237]

**OBJECTION TO PARAGRAPH 127:**  Defendant objects to paragraph 127 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 127:**  Undisputed that paragraph 127 accurately quotes

the document cited.

128.    Despite SK's sworn admission, neither Andrew nor SK ever disclosed at the time of the sale that the address listed in the Co-fiduciaries $1.4 million contract with Chen Mei Lin was actually the address of Andrew's own apartment in Shanghai.[238]

**OBJECTION TO PARAGRAPH 128:**  Defendant objects to paragraph 128 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 128 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[234] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 122:16-19).

[235] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 122:16-19).

[236] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 93:12-93:18).

[237] Savitsky Decl. Exh. 30 at ¶119 (SK Verified Answer Tcheng Petition, sworn to on August 28, 2014).

[238] Savitsky Decl. Exh. 2 at ¶¶163, 166 (Defendants' Answer to Amended Complaint).

**RESPONSE TO PARAGRAPH 128**:  Defendant respectfully refers the Court to the document cited for its full context and meaning.

129.    Carolyn Shields, Esq. was Andrew's former attorney who represented him with respect to Dr. Tcheng's Removal Petition.[239]

**RESPONSE TO PARAGRAPH 129**:  Undisputed.

130.    On November 19, 2014, Shields transmitted an email to counsel for the PA and counsel for Yien-Koo, setting out Andrew's position with respect to certain aspects of the Estate's sales of the 98 Paintings.[240]

**OBJECTION TO PARAGRAPH 130**:  Defendant objects to paragraph 130 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 130**:  Defendant respectfully refers the Court to the document cited for its full context and meaning.

131.    One issue clarified in Shields' email was Andrew's position "with respect to Andrew's address appearing on the first page of the agreement with Mr. Chen [Mei-Lin]."[241]

**OBJECTION TO PARAGRAPH 131**:  Defendant objects to paragraph 131 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 131 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 131**:  Defendant respectfully refers the Court to the document cited for its full context and meaning.

132.    Shields represented that "Andrew Wang's address appears in the agreement [as Mr. Chen Mei-Lin's residential address] because the buyer [who Andrew elsewhere testified to

---

[239] Savitsky Decl. Exh. 30 (SK Verified Answer Tcheng Petition, sworn to on August 28, 2014).

[240] Savitsky Decl. Exh. 31 (November 19, 2014 email of Carolyn Shields).

[241] Savitsky Decl. Exh. 31 (November 19, 2014 email of Carolyn Shields).

not even knowing] was temporarily staying in Andrew's home while his own home was being renovated."[242]

> **OBJECTION TO PARAGRAPH 132:**  Defendant objects to paragraph 132 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 132 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

> **RESPONSE TO PARAGRAPH 132:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

133.    The Wang Defendants have not produced any records of communications between themselves and Mr. Chen Mei Lin.[243]

> **OBJECTION TO PARAGRAPH 133:**  Defendant objects to paragraph 133 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 133 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

> **RESPONSE TO PARAGRAPH 133:**  Disputed to the extent Plaintiff seeks to imply "records of communication" between AW and Mr. Mei-Lin exist, ever existed, or should have been produced in this action.  Plaintiff failed to seek discovery directly from Mr. Mei-Lin in this action.  *See* Kelly Res. Dec. at ¶ 4(ii).  Further, an email account AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between

---

[242] Savitsky Decl. <u>Exh. 31</u> (November 19, 2014 email of Carolyn Shields).
[243] Savitsky Decl. ¶7.

Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written

communications between parties to a sale of classical artworks in China is customary.  *Id.*

134.    Ms. Shields' November 19, 2014 email makes no mention of Mr. Er Shi Fu or any intermediary, middle-man or agent facilitating communications between Andrew and Chen Mei-Lin.[244]

> **OBJECTION TO PARAGRAPH 134:**  Defendant objects to paragraph 134 on the
>
> grounds that the purported facts asserted therein are not relevant or material to any issue
>
> before the Court.
>
> **RESPONSE TO PARAGRAPH 134:**  Defendant respectfully refers the Court to the
>
> document cited for its full context and meaning.

**IV.    2004-2009: Undisputed Facts Concerning Predicate Activity Occurring Through Six Private Sales of Estate Paintings to the Wang Defendants.**

> **A.    *December 6, 2004 - January 6, 2004: The Aborted Sale of Estate Chinese Paintings to a Person Allegedly Named "Mrs. Zhang," then "Mrs. Raymond Qu."***

135.    In October 2004, Andrew emailed Klein representing that he "would like to pay more taxes, as much as we can to avoid interest . . . Please tell the PA that I will raise enough cash to cover all legal exp[e]nses upon my return in mid-November."[245]

> **OBJECTION TO PARAGRAPH 135:**  Defendant objects to paragraph 135 on the
>
> grounds that the purported facts asserted therein are not relevant or material to any issue
>
> before the Court.
>
> **RESPONSE TO PARAGRAPH 135:**  Defendant does not dispute that paragraph 135
>
> accurately quotes the document cited.  Defendant respectfully refers the Court to the
>
> document cited for its full context and meaning.

---

[244] Savitsky Decl. Exh. 31 (November 19, 2014 email of Carolyn Shields).

[245] Savitsky Decl. Exh. 19 (WANG001878-1879).

136.     On December 6, 2004, Andrew sent an email to Klein that he "might bring one or two clients" to the Crozier Fine Arts ("Crozier") storage facility housing the Estate's assets "for the review of possible sales."[246]

**OBJECTION TO PARAGRAPH 136:**  Defendant objects to paragraph 136 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 136:**  Defendant disputes paragraph 136 to the extent it mischaracterizes the document cited.  Defendant respectfully directs the Court to the document cited by Plaintiff, which states in part: "Should I contact Mr. Tom Purcell at the PA's warehouse for the review of possible sales at Crozier?  I might bring one or two clients with me to Crozier."  *See* Savitsky Decl. Exh. 20.

137.     Klein requested that if Andrew's client was interested in purchasing artwork, he would need the person's name, address, and whether they were affiliated with a gallery or corporation. [247] He would also need the identity of the paintings they wished to buy and at what prices. [248]

**OBJECTION TO PARAGRAPH 137:**  Defendant objects to paragraph 137 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 137 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 137:**  Defendant does not dispute that Klein requested the information identified in paragraph 137.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

---

[246] Savitsky Decl. Exh. 20 (WANG001888).
[247] Savitsky Decl. Exh. 20 (WANG001888).
[248] Savitsky Decl. Exh. 20 (WANG001888).

138.    Andrew explained that "[b]oth persons I know are private buyers, no gallery or companies are involved."[249]

**OBJECTION TO PARAGRAPH 138:**  Defendant objects to paragraph 138 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 138:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

139.    One week later, Andrew transmitted a proposal to Klein, stating that he "worked several days with my TWO clients who are willing to make some purchases."[250] He represented that he could not "convince [the buyers] to add 20% to every painting[] as some appraisal values are high enough" and asked Klein to discuss this issue with the PA's attorney, Schram.[251]

**OBJECTION TO PARAGRAPH 139:**  Defendant objects to paragraph 139 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 139:**  Defendant disputes paragraph 139 to the extent it implies that the cited email transmitted a final offer from the buyer.  The cited email with Klein describes the status of negotiations of potential sales, which were ongoing.  In his email, AW stated to Klein: "I will try my best to push the price as high as 20% extra."  *See* Savitsky Decl. Exh. 32.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

140.    (A) Andrew attached to his email sale proposals for thirty (30) of the Estate's paintings at prices ranging from 5% higher than the Sotheby's appraisal ("Sotheby's Appraisal") value at the minimum to 20% higher at the maximum. (B) The Sotheby's Appraisal valued the paintings as of the date of C.C. Wang's death, July 3, 2003.[252]

---

[249] Savitsky Decl. Exh. 20 (WANG001888).

[250] Savitsky Decl. Exh. 32 (WANG001890).

[251] Savitsky Decl. Exh. 32 (WANG001890).

[252] PA Decl. Exh. 19 (2004 Sotheby's Appraisal).

**OBJECTION TO PARAGRAPH 140:**  Defendant objects to statement 140(A) on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to statement 140(A) on the grounds that it is not supported by citation to evidence, in violation of Local Civil Rule 56.1(d).

**RESPONSE TO PARAGRAPH 140:**  Undisputed.

141.    (A) Klein responded by explaining that the PA was "concerned" that private sales would not yield "the best price for the Estate" and "that is why she felt that a sales price of AT LEAST 20% above Sotheby's appraised value" would provide a "necessary level of comfort that she needed to defend a challenge that the Estate did not receive the best price for the art."[253] (B) Klein advised Andrew that "[t]his should also be a concern for you in case any beneficiary later complains that the sale price was too low."[254] (C) Finally, Klein suggested that Andrew try to secure an explanation "in writing" from his "client" for any painting for which he/she was not willing to pay at least 20% more than the Sotheby's appraised value.[255] (D) Andrew responded "OK."[256]

**OBJECTION TO PARAGRAPH 141:**  Defendant objects to paragraph 141 on the grounds that the purported facts recited therein are not relevant or material to any issue before the Court.  In addition, paragraph 141 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 141:**  Defendant disputes statement 141(A) as it does not accurately quote the cited document.  *See* Savitsky Decl. Exh. 32.  Defendant refers the Court to the document cited for its full context and meaning.

142.    Andrew never forwarded any "in writing" explanation from any client to Klein or the PA.[257] Instead, on December 20, 2004, he emailed Klein that he "ha[d] made some

---

[253] Savitsky Decl. Exh. 32 (WANG001890).
[254] Savitsky Decl. Exh. 32 (WANG001890).
[255] Savitsky Decl. Exh. 32 (WANG001890).
[256] Savitsky Decl. Exh. 32 (WANG001890).
[257] Savitsky Decl. Exh. 33 (WANG001896-WANG001898).

adjustment for the possible sales" and attached a list of 42 Estate paintings with new mark-ups above the Sotheby's Appraisal values. [258]

**OBJECTION TO PARAGRAPH 142:**  Defendant objects to paragraph 142 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 142 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 142:**  Defendant does not dispute that paragraph 142 accurately quotes the cited document.  Defendant respectfully refers the Court to the document cited for the full context and meaning of the quoted text.

143.     This time, the proposed mark-ups ranged from 10% to 25%.[259] Andrew claimed "I need a quick approval from the PA so I can move on with other sales." [260] But Andrew had still not disclosed the name of any potential "client" to Klein or the PA.[261]

**OBJECTION TO PARAGRAPH 143:**  Defendant objects to paragraph 143 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 143 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 143:**  Defendant does not dispute that paragraph 143 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for the full context and meaning of the quoted text.

144.     Klein soon responded that the "PA will not approve sales until we have presented all of the information, which includes the name of the purchaser and their address."[262]

---

[258] Savitsky Decl. Exh. 33 (WANG001896-WANG001898).

[259] Savitsky Decl. Exh. 33 (WANG001896-WANG001898).

[260] Savitsky Decl. Exh. 33 (WANG001896-WANG001898).

[261] Savitsky Decl. Exh. 33 (WANG001896-WANG001898).

[262] Savitsky Decl. Exh. 34 (WANG001894).

**OBJECTION TO PARAGRAPH 144:**  Defendant objects to paragraph 144 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  In addition, paragraph 144 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 144:**  Defendant does not dispute that paragraph 144 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning of the quoted text.

145.    Andrew responded that he would "try to get you their address and contact tel# by tomorrow. I believe that each buyer will bu[y] at least 10 pieces."[263] Andrew then warned that if the buyers "are not willing to pay more than 10%, then I have to drop the sale." But he asked Klein to try and tell the PA that the Sotheby's "appraisal values are high enough."[264]

**OBJECTION TO PARAGRAPH 145:**  Defendant objects to paragraph 145 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 145 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 145:**  Defendant does not dispute that paragraph 145 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning of the quoted text.

146.    Andrew then disclosed the purported name of a potential buyer: "Mrs. Zhang." [265] He represented that "Mrs. Zhang will definitely make purchases, and she will give me a final list soon."[266] Andrew then asked Klein if it was possible "if she can get [a] discount for buying more

---

[263] Savitsky Decl. Exh. 34 (WANG001894).

[264] Savitsky Decl. Exh. 34 (WANG001894).

[265] Savitsky Decl. Exh. 34 (WANG001894).

[266] Savitsky Decl. Exh. 34 (WANG001894).

paintings" and suggested that Klein "should discuss it with [Schram] today."[267] Andrew claimed that "about [a] 10% discount" is "usually give[n]" when someone buys more artworks.[268]

**OBJECTION TO PARAGRAPH 146:**  Defendant objects to paragraph 146 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 146 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 146:**  Defendant does not dispute that paragraph 146 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning of the quoted text.

147.    Two days later, on December 22nd, Andrew emailed Klein a list of seventeen (17) Estate paintings for "Mrs. Raymond Qu" with an address at 8447 118th St., Apartment 2C, Kew Gardens, Queens, New York ("Apartment 2C").[269]

**OBJECTION TO PARAGRAPH 147:**  Defendant objects to paragraph 147 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 147:**  Defendant does not dispute that paragraph 147 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning of the quoted text.

148.    Apartment 2C is a one bed, one bath apartment in a six-story, red-brick apartment building.[270] It had a rental listing of $1,875 per month as of December 2015.[271]

**OBJECTION TO PARAGRAPH 148:**  Defendant objects to paragraph 148 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[267] Savitsky Decl. Exh. 34 (WANG001894).

[268] Savitsky Decl. Exh. 34 (WANG001894).

[269] Savitsky Decl. Exh. 35 (WANG001904-1906).

[270] Savitsky Decl. Exh. 77 (Apartment 2C listing taken from Zillow.com).

[271] Savitsky Decl. Exh. 77 (Apartment 2C listing taken from Zillow.com).

before the Court.  In addition, paragraph 148 does not comply with Local Civil Rule

56.1(d), which requires that every statement be supported by "citation to evidence which

would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 148:**  Undisputed.

149.    The total sale price for the seventeen (17) classical Chinese paintings proposed to
be sold to Mrs. Raymond Qu was $1,297,200.00.[272]

**OBJECTION TO PARAGRAPH 149:**  Defendant objects to paragraph 149 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 149:**  Undisputed.

150.    Andrew told Klein he wanted to know if the PA agreed with the sale "as soon as
possible because it's close to the holidays and [Mrs. Qu] might leave the city."[273]

**OBJECTION TO PARAGRAPH 150:**  Defendant objects to paragraph 150 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 150:**  Defendant does not dispute that paragraph 150

accurately quotes the document cited.  Defendant respectfully refers the Court to the

document cited for the full context and meaning of the quoted text.

151.    By January 6, 2005, a sale of paintings to Mrs. Qu had been approved by the
PA.[274] Klein emailed Andrew that the PA would be collecting sales tax unless the buyer filled
out a New York State Form ST-120 sales tax resale certificate.[275]

---

[272] Savitsky Decl. Exh. 35 (WANG001906).

[273] Savitsky Decl. Exh. 35 (WANG001904).

[274] Savitsky Decl. Exh. 36 (WANG001928).

[275] Savitsky Decl. Exh. 36 (WANG001927-28).

**OBJECTION TO PARAGRAPH 151:**  Defendant objects to paragraph 151 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  In addition, paragraph 151 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 151:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

152.    Klein's email regarding the "sales tax resale certificate" is the last written communication between Andrew and Klein made in relation to the proposed sale to Mrs. Raymond Qu.[276]

**OBJECTION TO PARAGRAPH 152:**  Defendant objects to paragraph 152 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 152:**  Disputed to the extent paragraph 152 implies additional communications exist and should have been produced.

153.    The proposed sale of paintings to Mrs. Raymond Qu never occurred.[277]

**OBJECTION TO PARAGRAPH 153:**  Defendant objects to paragraph 153 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 153 on the grounds that the sole evidence cited is an inadmissible declaration from the current Public Administrator, Dahlia Damas, who admits to having "no personal knowledge regarding the allegations in this proceeding," and thus does not comply with Local Civil Rule 56.1(d)'s requirement

---

[276] Savitsky Decl. at ¶13.
[277] PA Decl. at ¶50.

that every statement be supported by "citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(c)."

**RESPONSE TO PARAGRAPH 153:**  Disputed to the extent that the cited declaration does not support the proposition that the proposed sale of paintings never occurred.

B.    **January 10, 2005 – February 16, 2005: The Estate's First, Completed Private Sale of Paintings to "Mr. Wei Zheng."**

i.    _Documentary Record of the Estate's Sale to "Mr. Wei Zheng"_

154.    On January 10th—four days after Klein's last email regarding "Mrs. Qu's" potential purchase—Andrew emailed Klein a proposed list of 18 paintings to be sold to "Mr. Wei Zheng" at an address of 97-37 63rd Road, Apt #2F, Rego Park, New York 11374 ("Apartment 2F").[278]

**OBJECTION TO PARAGRAPH 154:**  Defendant objects to paragraph 154 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 154:**  Defendant respectfully refers the Court to the documents cited for their full context and meaning.

155.    The total proposed sale price for the 18 paintings was $401,730.00.[279]

**OBJECTION TO PARAGRAPH 155:**  Defendant objects to paragraph 155 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 155:**  Undisputed.

156.    Thirty minutes later, Andrew emailed a draft contract to Klein asking him to "double check it."[280] The draft contract defines "Mr. Wei Zheng" of Apartment 2F as "the 'Buyer'" and refers to him as the Buyer throughout the draft agreement.[281]

---

[278] Savitsky Decl. Exh. 37 (WANG001929-1932); Savitsky Decl. Exh. 38 (WANG003437).

[279] Savitsky Decl. Exh. 37 (WANG001932).

[280] Savitsky Decl. Exh. 39 (WANG001938).

[281] Savitsky Decl. Exh. 39 (WANG001938-1946).

**OBJECTION TO PARAGRAPH 156:**  Defendant objects to paragraph 156 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 156:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

157.    Two weeks later, Andrew emailed and faxed a proposed list of paintings to be sold to Mr. Wei Zheng to Ms. Elin Ewald ("Ewald") of OTE (O'Toole-Ewald Art Associates), the appraisal firm which had previously catalogued the Estate's paintings and taken photographs of them between 2003 and 2004.[282]

**OBJECTION TO PARAGRAPH 157:**  Defendant objects to paragraph 157 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  In addition, paragraph 157 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 157:**  Disputed.  The document cited does not support the proposition that OTE was the "appraisal firm which had previously catalogued the Estate's paintings and taken photographs of them between 2003 and 2004."  *See* Savitsky Decl. Exh. 40.

158.    Andrew sent the listing of paintings to OTE, as it had been hired by the PA to review the appropriateness of Estate's private sales.[283]

**OBJECTION TO PARAGRAPH 158:**  Defendant objects to paragraph 158 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 158 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[282] Savitsky Decl. Exh. 40 (WANG001949-1954).

[283] PA Decl. at ¶51.

Defendant further objects to paragraph 158 on the grounds that the sole evidence cited is an inadmissible declaration from the current Public Administrator, Dahlia Damas, who admits to having "no personal knowledge regarding the allegations in this proceeding," and thus does not comply with Local Civil Rule 56.1(d)'s requirement that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 158:**  Disputed.  OTE was not hired by the PA to review the appropriateness of the Estate's private sales and was not responsible for determining the ultimate "appropriateness of [the] Estate's private sales" or approving those sales.  That decision rested with the PA.  *See* Kelly Dec. Ex. 31; Ex. 108 at 36:9-37:5.

159.     Andrew's fax and email to Ewald identified "Mr. Wei Zheng" as the potential purchaser of 17 paintings for a total price of $395,730.00 (exclusive of tax and shipping).[284]

**OBJECTION TO PARAGRAPH 159:**  Defendant objects to paragraph 159 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 159:**  Undisputed.

160.     On January 27, 2005, Klein faxed Schram the list of 17 paintings which, Klein stated, "Andrew [had] received offers to purchase from Mr. Zheng."[285]

**OBJECTION TO PARAGRAPH 160:**  Defendant objects to paragraph 160 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[284] Savitsky Decl. Exh. 40 (WANG001952-1954).

[285] PA Decl. Exh. 5.

**RESPONSE TO PARAGRAPH 160:**  Defendant does not dispute that paragraph 160

accurately quotes the document cited.  Defendant respectfully refers the Court to the

document cited for its full context and meaning.

161.    The next week, on February 4, 2005, Andrew emailed Klein asking about the status of the PA's approval of the sale of paintings to Wei Zheng.[286] He then wrote "I will let my client sign the agreement as soon as I hear from you. My client will also sign the document which states that all artworks will either be shipped or hand-carried to [a] foreign country, not for resale in the U.S."[287]

**OBJECTION TO PARAGRAPH 161:**  Defendant objects to paragraph 161 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 161:**  Defendant does not dispute that paragraph 161

accurately quotes the document cited.  Defendant respectfully refers the Court to

document cited for its full context and meaning.

162.    On February 7, 2005, Andrew sent an email to Klein stating that the paintings being purchased by Mr. Wei Zheng, who lived in Apartment 2F in Queens, needed to be shipped to Unit 704 at the Fourseas building in Hong Kong:[288]

---

[286] Savitsky Decl. Exh. 41 (WANG001965).

[287] Savitsky Decl. Exh. 41 (WANG001965).

[288] Savitsky Decl. Exh. 42 (WANG003449).

**OBJECTION TO PARAGRAPH 162:**  Defendant objects to paragraph 162 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 162 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 162 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.  Defendant further objects on the grounds that the screenshot is not taken from the document cited by Plaintiff.  *See* Savitsky Decl. Exh. 42.

**RESPONSE TO PARAGRAPH 162:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

163.     Andrew did not disclose to Klein that Unit 704 was Andrew's accountant's office.[289]

**OBJECTION TO PARAGRAPH 163:**  Defendant objects to paragraph 163 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[289] Savitsky Decl. Exh. 42 (WANG003449); Savitsky Decl. Exh. 21 (Klein Dep. Trans. at 168:21-169:8).

**RESPONSE TO PARAGRAPH 163**: Disputed.  AW disclosed to his attorney that the paintings were being shipped to his accountant's office and were to be collected by the buyer there.  AW Dec. at ¶ 39.

164.    Klein responded that he also "need[ed] wire information for the BUYER" to place into the escrow agreement:[290]



> 寄件者：  Martin Klein (martykl@kamso.com)
> 收件者：  jingguanlou_wang@yahoo.com
> 日期：  2005年2月7日 星期一 下午12:30 [EST]
>
> Andrew, I need the wire information for the BUYER.  The escrow agreement provides that the Buyer can get their money back if the sale does not take palce in a certain amount of days.  Brown Raysmand needs to have the wire information for the Buyer inserted into the escrow agreement.  Thanks.  Marty

**OBJECTION TO PARAGRAPH 164**:  Defendant objects to paragraph 164 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 164 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 164**:  Defendant does not dispute that paragraph 164 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

165.    Andrew promised to get the buyer's wire information "within the next two days."[291] He also re-asserted that he needed "to get [the] PA's signature as early as possible so I can arrange for the payment."[292]

---

[290] Savitsky Decl. Exh. 42 (WANG003449).

[291] Savitsky Decl. Exh. 42 (WANG003449).

[292] Savitsky Decl. Exh. 42 (WANG003449).

**OBJECTION TO PARAGRAPH 165:**  Defendant objects to paragraph 165 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 165:**  Defendant does not dispute that paragraph 165 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

166.    On February 9, 2005, Klein emailed Andrew final drafts of (1) the contract of sale ("Zheng Contract"); (2) escrow agreement ("Zheng Escrow Agreement"); (3) an export certificate ("Zheng Export Certificate"); and (4) a bill of sale ("Zheng Bill of Sale").[293] Each of the four documents listed "Mr. Wei Zheng" as the "Buyer" or "Purchaser" and the Estate of Chi-Chuan Wang as the "Seller" of the paintings, at a price of $395,730.00 (exclusive of tax and shipping fees).[294]

**OBJECTION TO PARAGRAPH 166:**  Defendant objects to paragraph 166 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 166:**  Defendant respectfully refers the Court to the documents cited for their full context and meaning.

167.    Klein explained that "Mr. Zheng has to sign the escrow agreement, contract of sale and [export] certification before he wires money into the escrow account."[295]

**OBJECTION TO PARAGRAPH 167:**  Defendant objects to paragraph 167 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[293] Savitsky Decl. Exh. 43 (WANG001988-2003).

[294] Savitsky Decl. Exh. 43 (WANG001988-2003).

[295] Savitsky Decl. Exh. 43 (WANG001988).

**RESPONSE TO PARAGRAPH 167:**  Defendant does not dispute that paragraph 167 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

168.    Klein ended his email by asking Andrew when "Mr. Zheng will be wiring the money", so that the escrow agent for the sale (Brown Raysman) would know when to expect its receipt.[296]

**OBJECTION TO PARAGRAPH 168:**  Defendant objects to paragraph 168 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 168:**  Defendant does not dispute that paragraph 168 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

169.    Andrew responded to Klein's question about Mr. Zheng's payment several hours later stating: "[p]lease let me know as soon as the PA sign[s] the contract, I will let the buyer make the payment."[297]

**OBJECTION TO PARAGRAPH 169:**  Defendant objects to paragraph 169 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 169:**  Defendant does not dispute that paragraph 169 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

170.    Within the next 24 hours, Klein notified Andrew that "Ethel [the PA] signed the [sales] agreement and escrow agreement."[298] But Klein explained that the escrow agent, Brown Raysman, "need[s] the buyer's wire instructions to insert in the contract in case the buyer elects

---

[296] Savitsky Decl. Exh. 43 (WANG001988).

[297] Savitsky Decl. Exh. 44 (WANG002004).

[298] Savitsky Decl. Exh. 45 (WANG003441).

to cancel the sale because the art is not shipped in time. As soon as you give me the buyer's wire instructions, I will get the agreement back from Brown Raysman."[299]

**OBJECTION TO PARAGRAPH 170:**  Defendant objects to paragraph 170 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 170:**  Defendant does not dispute that paragraph 170 accurately quotes the documents cited.  Defendant respectfully refers the Court to the documents cited for their full context and meaning.

171.    On February 10, 2005, Andrew wrote to Klein: "The buyer has already signed all the last pages for me. He will give me his bank information by tomorrow morning."[300]

**OBJECTION TO PARAGRAPH 171:**  Defendant objects to paragraph 171 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 171:**  Defendant does not dispute that paragraph 171 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

172.    In referring to "[t]he buyer" in his February 10, 2005 email to Klein, Andrew was referring to "Mr. Wei Zheng." [301] And in referring to the buyer's "bank information," Andrew was referring to Mr. Wei Zheng's bank information.[302]

**OBJECTION TO PARAGRAPH 172:**  Defendant objects to paragraph 172 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[299] Savitsky Decl. Exh. 45 (WANG003440-3441).

[300] Savitsky Decl. Exh. 45 (WANG003440-3441).

[301] Savitsky Decl. Exh. 45 (WANG003440).

[302] Savitsky Decl. Exh. 45 (WANG003440).

**RESPONSE TO PARAGRAPH 172:**  Defendant does not dispute that paragraph 172 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

173.    On February 11, 2005, Andrew supplied Klein with the requested wire information for the buyer identified in escrow agreement, "Mr. Wei Zheng":[303]

```
> >. At 12:05 PM 2/11/2005 -0800, you wrote:
> > >Marty,
> > >Here is the information: CITIBANK, N.A.
> > > 95-12 63RD ROAD, REGO PARK, NY
> > > 11374-0000
> > > Routing/Transit# 021000089
> > >
> > > For: Mr. Wei Zheng
> > > Account# 15873277
> > > Address is same.
> > >I am waiting for final confirmation from Crozier for total cost. I have
> > >already asked the buyer to wire $400,500.00 to the escrow account, the

> > >shipping may be less because there is no need for a crate. I believe that
> > >we can always make adjustment for the expanses at the end.
> > >Andrew
```

**OBJECTION TO PARAGRAPH 173:**  Defendant objects to paragraph 173 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 173 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 173:**  Defendant does not dispute that paragraph 173 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

---

[303] Savitsky Decl. Exh. 45 (WANG003440).

174.     In representing to Klein that "I have already asked the buyer to wire $400,500.00 to the escrow account," in Andrew's February 11, 2004 email, Andrew was referring to "Mr. Wei Zheng" as the buyer. [304]

**OBJECTION TO PARAGRAPH 174:**  Defendant objects to paragraph 174 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 174:**  Defendant does not dispute that paragraph 174 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

175.     On February 14, 2005, Klein notified Andrew that the PA had signed the original bill of sale and suggested "you [Andrew] and Mr. Zheng should sign and then photocopy" the bill of sale.[305]

**OBJECTION TO PARAGRAPH 175:**  Defendant objects to paragraph 175 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 175:**  Defendant does not dispute that paragraph 175 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

176.     Later that same day, Andrew wrote "I know the [m]oney should be at [Brown Raysman] by tomorrow (Tuesday), you can remind them to inform you as soon as [Brown Raysman] receive[s] the fund, so we can ask Crozier for the shipment afterwards."[306]

**OBJECTION TO PARAGRAPH 176:**  Defendant objects to paragraph 176 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[304] Savitsky Decl. Exh. 45 (WANG003440).

[305] Savitsky Decl. Exh. 45 (WANG003440).

[306] Savitsky Decl. Exh. 45 (WANG003440).

**RESPONSE TO PARAGRAPH 176:**  Defendant does not dispute that paragraph 176 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

177.    Within the next two days, Andrew sent a copy of a bill of sale signed by him and Wei Zheng, dated February 16, 2005, to Martin Klein.[307]

**OBJECTION TO PARAGRAPH 177:**  Defendant objects to paragraph 177 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 177:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

178.    The Estate's records show that on February 16, 2005, Brown Raysman, as escrow agent, wired the $400,480.00 purchase price (which included shipping fees) under the Estate's contract of sale with "Mr. Wei Zheng" to the Estate's bank account.[308]

**OBJECTION TO PARAGRAPH 178:**  Defendant objects to paragraph 178 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 178 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 178:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

179.    Brown Raysman merged into a different law firm in 2006, which then ceased operating in 2008 or 2009.[309] No wire or other records exist in the Record which demonstrate from what source account Brown Raysman received the funds which it wired to the Estate on February 16, 2005.[310]

---

[307] PA Decl. <u>Exh. 8</u> (KING 005976-5977).

[308] Savitsky Decl. <u>Exh. 46</u> (WANG001684-85).

[309] Savitsky Decl. <u>Exh. 21</u> (6/26/19 Klein Dep. Trans. at 180:14-181:4).

[310] Savitsky Decl. ¶9.

**OBJECTION TO PARAGRAPH 179:**  Defendant objects to paragraph 179 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 179 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 179 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 179:**  Disputed.  Plaintiff did not seek discovery from Brown Raysman, or its successors, or Wei Zheng in this action, and that alone belies any assertion that no such records exist.  *See* Kelly Res. Dec. at ¶¶ 4(i), 4(x).  Defendant further responds that email accounts AW used during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.

180.    Though the PA was unaware of it at the time of the sale, the $400,480.00 purchase price had been transferred to Brown Raysman by Andrew's, her Co-fiduciary's, offshore corporate account.[311]

**OBJECTION TO PARAGRAPH 180:**  Defendant objects to paragraph 180 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 180 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

---

[311] Savitsky Decl. Exh. 11 (AW 2019 Dep. Trans. at 240:2-243:2).

**RESPONSE TO PARAGRAPH 180:**  Disputed.  The testimony cited does not support the proposition that the PA was unaware that the money went through AW's offshore account.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  AW was not the buyer of any of the 98 Paintings.  *See* Kelly Dec. Ex. 92 at ¶ 2.  AW did not have any personal interest in the sales of the 98 Paintings.  (*Id*.)  AW did not acquire any ownership interest in the 98 Paintings through the sales.  (*Id*.)  AW did not benefit from the sales of the 98 Paintings or any subsequent sales of the 98 Paintings.  (*Id*.)

181.     The Estate's duly executed contract of sale with Wei Zheng directs that the 17 paintings sold by the Estate be shipped overseas to "Mr. Wei Zheng *c/o* Billie Wai, Unit #704, Fourseas Building, #208-212, Nathan Road, Kowloon, Hong Kong."[312]

**OBJECTION TO PARAGRAPH 181:**  Defendant objects to paragraph 181 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 181:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

182.     Though the PA was unaware of it at the time of the sale, this was the address of her Co-fiduciary's personal accountant's office.[313]

**OBJECTION TO PARAGRAPH 182:**  Defendant objects to paragraph 182 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 182 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

---

[312] PA Decl. Exh. 8.

[313] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 254:16-256:18; 311:13-19).

**RESPONSE TO PARAGRAPH 182:** Disputed.  Neither the testimony cited, nor any other evidence, establish that the PA was unaware that this was the address of Defendant's accountant.  That the shipping address was different than the buyer's home address, and the reasons for shipping to that address, were disclosed to the PA and/or Defendant's attorney.  *See* Kelly Dec. Ex. 49; AW Dec. at ¶¶ 34, 39.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

183.    Included Estate's fully executed set of documents is the Zheng Export Certificate dated February 11, 2005 which identified "Mr. Wei Zheng" as the "purchaser" of paintings from the "Estate of Chi-Chuan Wang."[314]

**OBJECTION TO PARAGRAPH 183:** Defendant objects to paragraph 183 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 183 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 183:** Disputed.  Wei Zheng was the intended legal purchaser or buyer as of February 11, 2005.  *See* Kelly Dec. Ex. 93 at 44:5-45:6; 48:5-9.  By executing the contract, Mr. Zheng assumed the obligations and liabilities as the purchaser.  *See* Kelly Dec. Ex. 49.  With respect to this sale, Mr. Zheng acted as a "matchmaker" or a "bridge" between the Estate and his client, Tan Yun.  *See* Kelly Dec. Ex. 93 at 49:6-50:15.

184.    Mr. Zheng signed the Export Certificate and acknowledged that issuing a false or fraudulent certificate could subject him to civil and criminal penalties under U.S. tax law.[315]

**OBJECTION TO PARAGRAPH 184:** Defendant objects to paragraph 184 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[314] PA Decl. <u>Exh. 8</u> (KING 005974).

[315] PA Decl. <u>Exh. 8</u> (KING 005974).

before the Court.  Defendant further objects to paragraph 184 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 184:**  Disputed to the extent paragraph 184 implies Mr.

Zheng signed or issued a "false" or "fraudulent" export certificate.  Defendant refers the

Court to his response to paragraph 183 and the evidence cited therein.

185.     Notwithstanding the signed documentation and emails between Klein, Ewald, and
Andrew, all parties now agree "Mr. Wei Zheng" of Apartment 2F in Queens was not the buyer of
Estate paintings, never intended to be the buyer, and never received or paid for any of the
Estate's paintings.[316]

**OBJECTION TO PARAGRAPH 185:**  Defendant objects to paragraph 185 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 185 to the extent it advances

legal conclusions, including any suggested legal implications intended by the term

"buyer," and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 185:**  Disputed.  Wei Zheng was the intended legal

purchaser or "buyer" as of February 11, 2005.  *See* Kelly Dec. Ex. 93 at 44:5-45:6; 48:5-

9.  By executing the contract, Mr. Zheng assumed the obligations and liabilities as the

purchaser.  *See* Kelly Dec. Ex. 49.  With respect to this sale, Mr. Zheng acted on behalf

of a third-party client, Tan Yun, and intended to purchase the artwork as "matchmaker"

or a "bridge" between the Estate and his client.  *See* Kelly Dec. Ex. 93 at 44:5-45:6; 48:5-

9.  Mr. Zheng was authorized to execute the contract on behalf of Mr. Yun.  *See id*. at

49:6-25.

---

[316] Savitsky Decl. Exh. 2 at ¶¶4, 191.

186.     And though Andrew claims that he knew it at the time all of the documentation was drafted and signed, he never disclosed to Klein or the PA that Wei Zheng was not the buyer and had no intention of being the buyer.[317]

**OBJECTION TO PARAGRAPH 186:**  Defendant objects to paragraph 186 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 186 to the extent it advances legal conclusions, including any suggested legal implications intended by the term "buyer" or that Defendant had a duty to disclose the purported facts, rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 186:**  Disputed.  Wei Zheng was the intended legal purchaser or "buyer" as of the date sales documents were executed.  *See* Kelly Dec. Ex. 93 at 44:5-45:6; 48:5-9.  By executing the contract, Mr. Zheng assumed the obligations and liabilities as the purchaser.  *See* Kelly Dec. Ex. 49.  With respect to this sale, Mr. Zheng acted on behalf of a third-party client, Tan Yun, and intended to purchase the artwork as "matchmaker" or a "bridge" between the Estate and his client.  *See* Kelly Dec. Ex. 93 at 49:6-50:15.

187.     Nor did Andrew ever disclose the undisputed fact that Wei Zheng never read the Zheng Contract, Zheng Escrow Agreement, Zheng Export Certificate, or the Zheng Bill of Sale—all of which he indisputably signed. [318]

**OBJECTION TO PARAGRAPH 187:**  Defendant objects to paragraph 187 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 187 to the extent it advances legal conclusions, including that Wei Zheng had any obligation to read any contract, and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, due to its

---

[317] PA Decl. at ¶50; PA Decl. Exh. 7; Savitsky Decl. Exh. 24 (AW 2013 Dep. Trans. at 943:19-944:13).
[318] PA Decl. at ¶50; PA Decl. Exh. 7; Savitsky Decl. Exh. 24 (AW 2013 Dep. Trans. at 943:19-944:13).

reliance on the PA declaration, paragraph 187 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e)."

**RESPONSE TO PARAGRAPH 187:**  Disputed.  The testimony cited does not support the proposition that Defendant either knew or did not know whether Wei Zheng read the document referenced.  *See* Kelly Dec Ex. 112 at 943:19-944:13.  Nor does it support the assertion that Wei Zheng did not read the documents.  *Id*.

188.    Wei Zheng of Apartment 2F in Queens cannot speak or read English.[319]

**OBJECTION TO PARAGRAPH 188:**  Defendant objects to paragraph 188 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 188:**  Defendant respectfully refers the Court to the document cited for its complete meaning and context.

189.    Since Wei Zheng was not "the buyer" as represented in the Zheng Export Certificate, the signed certification was false.[320]

**OBJECTION TO PARAGRAPH 189:**  Defendant objects to paragraph 189 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 189 to the extent it advances legal conclusions, including any suggested legal implications intended by the term "buyer," rather than facts, as required by Local Civil Rule 56.1.

---

[319] Savitsky Decl. Exh. 2 at ¶183); Savitsky Decl. Exh. 1 at ¶183.
[320] PA Decl. Exh. 8 (KING 005974).

**RESPONSE TO PARAGRAPH 189:**  Disputed.  Wei Zheng was the legal purchaser or "buyer" as of the date he executed the Export Certificate.  *See* PA Decl. <u>Exh. 8</u>; Kelly Dec. Ex. 93 at 44:5-45:6; 48:5-9.

190.    Similarly, the signed Zheng Contract of Sales, the Zheng Escrow Agreement, and the Zheng Bill of Sale—all of which expressly identify Zheng as the "Buyer" or "Purchaser" of Estate assets—are also false.[321]

**OBJECTION TO PARAGRAPH 190:**  Defendant objects to paragraph 190 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 190 to the extent it advances legal conclusions, including any suggested legal implications intended by the term "buyer" or "purchaser" rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 190:**  Disputed.  Wei Zheng was the intended legal purchaser or "buyer" as of the date sales documents were executed.  *See* Kelly Dec. Ex. 93 at 44:5-45:6; 48:5-9.  By executing the contract, Mr. Zheng assumed the obligations and liabilities as the purchaser.  *See* Kelly Dec. Ex. 49.  With respect to this sale, Mr. Zheng acted on behalf of a third-party client, Tan Yun, and intended to purchase the artwork as "matchmaker" or a "bridge" between the Estate and his client.  *See* Kelly Dec. Ex. 93 at 49:6-50:15.

191.    No letters or emails between Wei Zheng and Andrew have ever been produced by the Wang Defendants.[322]

**OBJECTION TO PARAGRAPH 191:**  Defendant objects to paragraph 191 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 191 to the extent it advances

---

[321] PA Decl. <u>Exh. 8</u>.

[322] Savitsky Decl. at ¶7.

legal conclusions, including any implication that Defendant has not abided his discovery

obligations, rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 191**:  Disputed to the extent Plaintiff seeks to imply

that "letters or emails" between AW and Mr. Zheng exist, ever existed, or should have

been produced in this action.  Plaintiff failed to seek discovery directly from Mr. Zheng

in this action.  *See* Kelly Res. Dec. at ¶ 4(i).  Further, an email account AW used during

the period of the sales and in connection with the sales, specifically

"Yiyuanwang@aol.com" was closed by the service provider for lack of use and was

unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally,

"handshake deals" are customary practice in the sales of Chinese paintings between

Chinese parties.  *See* Kelly Dec. Ex. 94 at 64:8-65:7.  The lack of written

communications between parties to a sale of classical artworks in China is customary.  *Id*.

192.    By February 17, 2005, the 17 Paintings identified in the Zheng Contract and
Zheng Bill of Sale had been picked up for shipment to Unit 704 in Hong Kong—Andrew's
accountant's office.[323]

**OBJECTION TO PARAGRAPH 192**:  Defendant objects to paragraph 192 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 192**:  Disputed.  Paragraph 192 mischaracterizes the

document cited.  The document cited is dated February 17, 2005 and states: "The crate

will be collected today and should arrive in Hong-Kong on Monday or Tuesday."

Savitsky Decl. Exh. 27.  Defendant respectfully refers the Court to the document cited for

its full context and meaning.

---

[323] Savitsky Decl. Exh. 27 (WANG001194).

193.    On March 11, 2005, Klein sent a fax to Schram to confirm that insurance coverage at Crozier could be reduced by "the value of the paintings that were recently sold to Mr. Zheng."[324]

**OBJECTION TO PARAGRAPH 193:** Defendant objects to paragraph 193 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 193:**  Defendant does not dispute that Plaintiff accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

ii.    _Andrew Wang's 2013 Deposition Testimony Regarding the Estate's Sale to "Mr. Wei Zheng" and Admission that "Mr. Wei Zheng" Was Not the Buyer of Estate Artwork._

194.    During his four-day deposition in 2013, Andrew was questioned about his relationship with Mr. Wei Zheng.[325]

**OBJECTION TO PARAGRAPH 194:**  Defendant objects to paragraph 194 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 194:**  Undisputed.

195.    Andrew was asked how he came "to be in contact" with Mr. Wei Zheng in 2005. Andrew responded that:[326]

> We were trying to find buyers, and I contact with the people in China and Asia, and also I don't remember how I met [Zheng]. At that time, maybe we had dinner. I mentioned that we could—I am looking for a buyer for estate paintings. He said he could have one. That's why I made a proposal. You know, we got a proposal first, and from the—the PA, and later the sale didn't go through. The buyer he [] did not follow the procedure.

---

[324] PA Decl. Exh. 7.

[325] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 941:9-947:7).

[326] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 942:6-943:11).

**OBJECTION TO PARAGRAPH 195:** Defendant objects to paragraph 195 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 195:** Defendant respectfully directs the Court the testimony cited for its full context and meaning.

196.     In November 2014, Dr. James Tcheng's attorney in the Removal Proceeding sent Andrew's attorney, Shields, an email to schedule a deposition of Wei Zheng. [327]

**OBJECTION TO PARAGRAPH 196:** Defendant objects to paragraph 196 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

197.     The deposition was to address, among other things, Mr. Zheng's execution of a $400,500.00 contract of sale with the Estate on February 11, 2005. [328]

**OBJECTION TO PARAGRAPH 197:** Defendant objects to paragraph 197 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 197:** Defendant respectfully refers the Court to the document cited for its full context and meaning.

198.     Shields responded, on behalf of Andrew, by objecting to the proposed deposition in the Surrogate's Court action as a waste of attorney's fees since, she now represented, Wei Zheng never actually purchased any paintings from the Estate: [329]

---

[327] Savitsky Decl. Exh. 47 (CS014).

[328] Savitsky Decl. Exh. 47 (CS014).

[329] Savitsky Decl. Exh. 47 (CS014).

Dear Tim and Sam:

We object on behalf of the preliminary executor to your proposed deposition of Wei Zheng.  As Andrew Wang testified at his deposition (attached; see highlighted portion), Wei Zheng's principal did not come up with the money.  Andrew, therefore, found a substitute buyer, who paid the same price for the same group of paintings by wire transfer of $400,500 into the estate account on February 16, 2005.  We are particularly concerned that your proposed deposition would require the estate to incur attorney's fees needlessly.  If you ask Mr. Zheng in advance of the deposition whether he ever bought paintings from the estate. I believe he will confirm what we just said.

Thank you.

Carolyn Shields
Liu & Shields LLP
41-60 Main Street, Suite 208A
Flushing, NY 11355
718-463-1868
Attorneys for Andrew Wang

**OBJECTION TO PARAGRAPH 198:**  Defendant objects to paragraph 198 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 198 to the extent it advances legal conclusions or arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 198:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

199.    At the time of the sale, however, the PA relied upon the representation that Wei Zheng was the buyer.[330]

**OBJECTION TO PARAGRAPH 199:**  Defendant objects to paragraph 199 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 199 to the extent it advances legal conclusions or arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, defendant objects to paragraph 199 on the grounds that the sole evidence cited is an inadmissible declaration from the current Public Administrator, Dahlia Damas, who admits to having "no personal knowledge regarding the allegations in this proceeding," and thus does not comply with Local Civil Rule 56.1(d)'s requirement that every

---

[330] PA Decl. at ¶52.

statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 199:**  Disputed to the extent the document cited does not support any proposition about what the PA relied upon.

200.    On November 18, 2014, Shields sent an email reportedly "attach[ing] the signature page of the agreement with the substitute buyer, <u>Raymond Ye</u>."[331] Shields further represented that "Andrew faxed this [Raymond Ye signature page] to his attorneys from China."[332]

**OBJECTION TO PARAGRAPH 200:**  Defendant objects to paragraph 200 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 200 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 200 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 200:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

201.    The lone, undated, signature page—reportedly signed by "Raymond Ye" (who Shields now represented had replaced Wei Zheng) and Andrew Wang in February 2005—was transmitted to the PA for the first time on November 18, 2014.[333]

**OBJECTION TO PARAGRAPH 201:**  Defendant objects to paragraph 201 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 201 to the extent it advances

---

[331] Savitsky Decl. <u>Exh. 31</u> (CS032).

[332] Savitsky Decl. <u>Exh. 31</u> (CS032).

[333] PA Decl. <u>Exh. 45</u>.

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

Defendant objects to paragraph 201 on the grounds that there is no document attached to

the PA Declaration as Exhibit 45, nor any other evidence that supports the purported facts

asserted in paragraph 201, and thus paragraph 201 does not comply with Local Civil Rule

56.1(d)'s requirement that every statement be supported by "citation to evidence which

would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 201:**  Undisputed that the signature page was signed by

Raymond Ye.

202.    The "Raymond Ye" signature page produced by Andrew in 2014: (1) lacks the
PA's counter-signature; (2) appears on a third page when the Co-fiduciaries' signatures with Wei
Zheng appears a fourth page; and (3) has only thirteen paragraphs, whereas the Co-fiduciaries
executed contract with Wei Zheng has fourteen paragraphs.[334]

**OBJECTION TO PARAGRAPH 202:**  Defendant objects to paragraph 202 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 202 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 202:**  Disputed.  The PA approved the substance of the

sale to Raymond Ye when it approved the sale to Wei Zheng.  Raymond Ye replaced the

original buyer, Wei Zheng, when Mr. Zheng's client withdrew from the sale.  *See* Kelly

Dec Ex. 16 at KINGPROD5 – 01144, ¶ 4; Ex. 26 at KING-SCT-000006520; Ex. 109 at

109:16-110:8.  The terms of the sale to Raymond Ye were substantively identical to the

terms approved by the PA on February 16, 2005 in connection with the sale to Wei

Zheng.  *See* Kelly Dec. Ex. 55; Kelly Dec Ex. at 109 at 113:4-115:7.

---

[334] *Contrast* Savitsky Decl. Exh. 31 (CS033) ("Raymond Ye" signature pages) *with* Savitsky Decl. Exh. 48
(WANG001198-99 (Wei Zheng Contract signature pages)).

203.    There are no emails or faxes in the Record indicating that the signature page of "Raymond Ye" was ever previously transmitted to the PA, Brown Raysman, or Martin Klein.[335]

**OBJECTION TO PARAGRAPH 203:**  Defendant objects to paragraph 203 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 203 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 203:**  Disputed to the extent Plaintiff seeks to imply that "emails or faxes" between AW and Mr. Ye exist, ever existed, or should have been produced in this action.  Plaintiff failed to seek discovery directly from Mr. Ye in this action.  *See* Kelly Res. Dec. at ¶ 4(vi).  Further, an email account AW use during the period of the sales and in connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.  Finally, "handshake deals" are customary practice in the sales of Chinese paintings between Chinese parties.  *See* Kelly Dec. Ex. at 64:8-65:7.  The lack of written communications between parties to a sale of classical artworks in China is customary.  *Id*.

204.    And while Shield's November 2014 email states that Andrew "faxed this [Raymond Ye signature page] to his attorneys from China," Andrew was actually in New York at the time of the February 2005 sale and shipment.[336]

**OBJECTION TO PARAGRAPH 204:**  Defendant objects to paragraph 204 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 204 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[335] Savitsky Decl. at ¶10.

[336] Savitsky Decl. Exh. 45 (WANG003440).

**RESPONSE TO PARAGRAPH 204:**  Disputed.  The document cited does not contain the quoted language, nor does it represent that the document was faxed "at the time of the February 2005 sale and shipment."  *See* Savitsky Decl. Exh. 45.

205.   On February 13, 2005, Andrew stated "I will visit Crozier by Tuesday afternoon, So I hope the package[] can be shipped after Tuesday."[337] Then, on February 14, 2005, Andrew wrote to Klein "I will pass by your office at about 2:15 pm and wait in my car for you to come down. I will call you in a few minutes before I arrive there."[338]

**OBJECTION TO PARAGRAPH 205:**  Defendant objects to paragraph 205 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 205:**  Defendant does not dispute that paragraph 205 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

206.   By February 16, 2005, the $480,500.00 purchase price had been transferred by Brown Raysman to the Estate's account pursuant to documentation identifying "Mr. Wei Zheng" as the sole purchaser of the Estate's paintings.[339]

**OBJECTION TO PARAGRAPH 206:**  Defendant objects to paragraph 206 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 206 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 206:**  Disputed.  The Estate received a wire for the contract price of $400,480.00.  *See* Savitsky Decl. Exh. 46.

---

[337] Savitsky Decl. Exh. 45 (WANG003440).

[338] Savitsky Decl. Exh. 45 (WANG003440).

[339] Savitsky Decl. Exh. 46 (WANG001684-1685).

207.   No emails or letters created in or about February 2005 between Andrew and Klein make any reference to "Raymond Ye" or indicate that Wei Zheng was not the buyer.[340]

**OBJECTION TO PARAGRAPH 207:**  Defendant objects to paragraph 207 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 207 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 207:**  Disputed to the extent Plaintiff implies Mr. Klein was not informed of the replacement buyer by Defendant.  Mr. Klein was informed that Raymond Ye took over the sale when Wei Zheng's client backed out of the transaction. *See* Kelly Dec. Ex. 109 at 112:15-114:2.

ii.   *Andrew Wang's 2019 Deposition Testimony Regarding the Estate's Sale to "Mr. Wei Zheng."*

208.   At his 2019 Deposition, Andrew was asked if he could explain what he meant when he said there was a "special circumstance" with Mr. Raymond Ye.[341] He testified that the Wei Zheng sale fell through after all of the sales documentation had already been signed by him, the PA, and Wei Zheng:[342]

> I recall the buyer, possibly Mr. Ye, who took over the sale that was supposed to be—go through with Wei Zheng. And he tried to find a buyer, and I relied on his information. And I conveyed all purchase information to Marty Klein. And Marty conveyed to Peter Schram and also to Ethel [the PA]. Somehow in the last minute the sale didn't go through. So I have to find another buyer to substitute the sale. I believe Raymond Ye was the one that took over the sale, but I'm not 100% sure.

**OBJECTION TO PARAGRAPH 208:**  Defendant objects to paragraph 208 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[340] Savitsky Decl. at ¶10.

[341] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 109:16-110:8).

[342] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 109:16-110:8).

before the Court.  Defendant further objects to paragraph 208 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 208:**  Defendant does not dispute that paragraph 208

accurately quotes the cited testimony.  Defendant respectfully refers the Court to the

testimony at lines 109:16-114:2 for its full context and meaning.

209.    Andrew went on to testify that Wei Zheng—even at the time he signed the
agreements with the Estate identifying him as the "Buyer" or "Purchaser"—was never the actual
buyer, but was instead helping him find a buyer for Estate paintings:[343]

> Q: How was Wei Zheng involved in this if Er Shi Fu was
> connecting you with the buyers?
>
> A: It's a story about Wei Zheng. And he came to this country. I
> mean, he used to work for the Shanghai Museum. Okay. He
> doesn't speak English . . . . So [Wei Zheng] was looking for the
> buyer, and we kept communication for a while. So finally, you
> know, I had gone through this, all the proceedings, paintings
> selections, and reports to Peter Schram—not Peter Schram—Marty
> Klein. And we made the final push for the sale, and I signed the
> contract. Ethel also signed the contract. "Somehow" he said, "the
> buyer is not willing to pay," at the last minute. So I said: "I have to
> find another buyer because we already have the contract ready." So
> I think I took a few weeks or so—I don't remember how many
> days I took—to find a second buyer, to find a substitute buyer. I
> think its Raymond Ye that took over the purchase. Raymond Ye, I
> believe is the person who took over the purchase.
>
> Q: You already had the contract signed [with Wei Zheng] when the
> buyer backed out?
>
> A: Correct.
>
> Q: And then you took a couple of weeks to a month to find a new
> buyer?
>
> A: To my memory, yes, within a month, I believe.
>
> Q: How did you do that?

---

[343] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 110:13-113:3).

A: Well I have people on my side, you know, I also ask[ed] Mr. Fu about that. And I don't know who referred me about the – Raymond. I forgot. Somehow we found a [substitute] buyer. You know, we just found a new buyer who took over the sale.

Q: He was willing to buy the exact same paintings for the exact same price?

A: Yeah, that's what I presented.

**OBJECTION TO PARAGRAPH 209:**  Defendant objects to paragraph 209 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 209:**  Defendant does not dispute that paragraph 209 accurately quotes the cited testimony.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.  Defendant disputes paragraph 209's assertion that Wei Zheng was never the "actual buyer."  Wei Zheng was the intended legal purchaser or "buyer" as of the date sales documents were executed.  *See* Kelly Dec. Ex. 93 at 44:5-45:6; 48:5-9.  By executing the contract, Mr. Zheng assumed the obligations and liabilities as the purchaser.  *See* Kelly Dec. Ex. 49.  With respect to this sale, Mr. Zheng acted on behalf of a third-party client, Tan Yun, and intended to purchase the artwork as "matchmaker" or a "bridge" between the Estate and his client.  *See* Kelly Dec. Ex. 93 at 49:6-50:15.

210.   Andrew further claimed he notified Klein immediately upon learning that the Wei Zheng sale could not go through: [344]

Q: Did you ever tell your counsel who was assisting in coordinating the sale, Marty Klein, about Mr. Wei Zheng backing out?

A: Yes, I did.

---

[344] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 113:4-115:7).

Q: When did you tell him that?

A: As soon as I found out that Wei Zheng's deal couldn't go through, I told Marty Klein – I believe I was in Hong Kong at the time, so we have to – you know, Marty said: "We have to, you know, Marty, prepare a new contract in that – in that way." I said: "Maybe we can make a new contract or change the contract later on" because I was already in Asia for the final sale.

* * * * *

Q: Just to re-ask my question so the record is clear: Did Marty Klein say it was a problem that you didn't draft a new contract for a new buyer?

[Objection]

A: I don't remember. But Marty was aware, and he might talk to the PA already. And I assume it's not a problem. As long as we make the sale, who cares who the final buyer is?

**OBJECTION TO PARAGRAPH 210:**  Defendant objects to paragraph 210 on the grounds that the purported facts asserted regarding a sale to buyer Wei Zheng are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 210 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, Defendant objects on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 210:**  Defendant does not dispute that paragraph 210 accurately quotes the cited testimony.  Defendant respectfully refers the Court to AW's complete testimony for its context and meaning.  *See* Kelly Dec. Ex. 109 at 113:4-116:3.

211.    Andrew then elaborated that he "remember[s] clearly that we discussed that, about the change or the possibility of making a new revised contract."[345]

---

[345] Savitsky Decl. Exh. 11 (6/25/19 AW Dep. Trans. at 113:4-115:7).

**OBJECTION TO PARAGRAPH 211:**  Defendant objects to paragraph 211 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 211 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 211:**  Defendant does not dispute that paragraph 211 accurately quotes the cited testimony.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

212.     For his part, however, Klein testified that he does not "remember what [he] believed at the time" of the February 2005 sale or "what [he] knew at the time."[346]

**OBJECTION TO PARAGRAPH 212:**  Defendant objects to paragraph 212 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 212 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, Defendant objects on the grounds that the testimony cited was subject to objections from Klein's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 212:**  Defendant does not dispute that paragraph 212 accurately quotes the cited testimony.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

213.     Despite the records of communications between himself, Andrew, and the PA in February 2005—which only mention "Mr. Wei Zheng" as the buyer of the Estate's 17 paintings for $400,500.00 (inclusive of shipping)—Klein testified "I don't remember anything about sending this contract in 2005."[347]

**OBJECTION TO PARAGRAPH 213:**  Defendant objects to paragraph 213 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[346] Savitsky Decl. Exh. 21 (6/26/19 Klein Dep. Trans. at 110:20-111:22).

[347] Savitsky Decl. Exh. 21 (6/26/19 Klein Dep. Trans. at 110:20-111:22).

before the Court.  Defendant further objects to paragraph 213 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

In addition, Defendant objects on the grounds that the testimony cited was subject to

objections from Klein's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 213:**  Defendant does not dispute that paragraph 213

accurately quotes the cited testimony.  Defendant respectfully refers the Court to the

testimony cited for its full context and meaning.

214.    Klein agreed over his counsel's objection, however, that he would not have
drafted or transmitted a contract to Andrew stating that "Mr. Wei Zheng" was a buyer of Estate
artwork if he knew Wei Zheng was not a buyer of estate artwork.[348] He testified "I just wouldn't
have done that."[349]

**OBJECTION TO PARAGRAPH 214:**  Defendant objects to paragraph 214 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 214 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

Defendant further objects on the grounds that paragraph 214 does not comply with Local

Civil Rule 56.1(d), which requires that every statement be supported by "citation to

evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  In

addition, Defendant objects on the grounds that the testimony cited was subject to

objections from Klein's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 214:**  Defendant does not dispute that paragraph 214

accurately quotes the cited testimony.  Defendant respectfully refers the Court to the

testimony cited for its full context and meaning.

---

[348] Savitsky Decl. Exh. 21 (6/26/19 Klein Dep. Trans. at 111:18-112:5).
[349] Savitsky Decl. Exh. 21 (6/26/19 Klein Dep. Trans. at 111:18-112:5).

215.    In fact, there are no documents in the Record evidencing that Andrew notified Klein, Schram, or anyone else that the Wei Zheng sale could not go through or that Andrew had found a substitute buyer.[350]

**OBJECTION TO PARAGRAPH 215:**  Defendant objects to paragraph 215 on the grounds that the purported facts asserted regarding a sale to buyer Wei Zheng are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 215:**  Disputed.  AW notified his attorney, Klein, that a substitute buyer was required and was found for this sale discussed.  *See* Kelly Dec. Ex. 109 at 109:16-113:7.

216.    On February 11, 2005, Andrew provided wire information for "Mr. Wei Zheng" of Apartment 2F to Klein via email.[351]

**OBJECTION TO PARAGRAPH 216:**  Defendant objects to paragraph 216 on the grounds that the purported facts asserted regarding a sale to buyer Wei Zheng are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 216 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 216:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

217.    Andrew emailed Klein the executed and dated Zheng Bill of Sale at some point between February 14, 2005 and February 16, 2005.[352] Payment in accordance with the Zheng Contract and Zheng Escrow Agreement cleared the Estate's account from Brown Raysman on February 16, 2005.[353]

---

[350] Savitsky Decl. at ¶11.

[351] Savitsky Decl. Exh. 45 (WANG003440).

[352] Savitsky Decl. Exh. 45 (WANG003440, February 14, 2005 Email by Klein asking for the Bill of Sale); and Savitsky Decl. Exh. 46 (WANG001684-1685).

[353] Savitsky Decl. Exh. 46 (WANG001684-1685).

**OBJECTION TO PARAGRAPH 217:**  Defendant objects to paragraph 217 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 217 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 217:**  Defendant respectfully refers the Court to the documents cited for their full context and meaning.

### C.  *March 8, 2005 – April 22, 2005: The Estate's Second, Completed Private Sale of Paintings to "Mr. Chen Mei Lin."*

218.    Andrew emailed Klein a "draft for the second sale" of Estate owned paintings on March 8, 2005. [354] He explained that he was waiting for information on the "custom tax in China" and would "inform the buyer as soon as [he] ha[d] the information."[355]

**OBJECTION TO PARAGRAPH 218:**  Defendant objects to paragraph 218 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 218 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 218:**  Defendant does not dispute that paragraph 218 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

219.    The draft for the second sale, which Andrew attached to his email, identified the buyer as a person named "Mr. Chen Mei-Lin" and listed 25 paintings to be sold for a total of $1,416,200.00 (exclusive of shipping):[356]

---

[354] Savitsky Decl. Exh. 49 (WANG2010-2012).

[355] Savitsky Decl. Exh. 49 (WANG2010-2012).

[356] Savitsky Decl. Exh. 49 (WANG2010-2012).

Private Buyer's Name: Mr. Chen Mei-Lin
Address: #777 Lane, Apt#28-A
Xin-Ja Ave. Jing-An District
Shanghai City, P.R. China 100014
Contact Tel#: 021-13601840888

| | Appraisal | % Increase | Final Sale |
|---|---|---|---|
| 1. OTE#94-ShiTao (Attributed-Qing Dynasty) | $15,000 | 20% | $18,000 |
| 2. OTE#97-HuangGongWan (Attributed-Yuan Dynasty) | $20,000 | 20% | $24,000 |

**OBJECTION TO PARAGRAPH 219:** Defendant objects to paragraph 219 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court. Defendant further objects to paragraph 219 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. Defendant further objects to paragraph 219 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 219:** Defendant respectfully refers the Court to the document cited for its full context and meaning.

220.     Though it was unknown to either Klein or the PA at the time,[357] the address listed for "Mr. Chen Mei-Lin" in Andrew's draft—#777 Lane, Apt#28A, Xin-Ja Ave., Jing-An District, Shanghai, P.R. China—was actually the address of Andrew's *own* apartment in Shanghai.[358]

**OBJECTION TO PARAGRAPH 220:** Defendant objects to paragraph 220 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court. Defendant further objects to paragraph 220 to the extent it advances

---

[357] Savitsky Decl. Exh. 21 (Klein Dep. Trans. at 162:19-163:4); PA Decl. at ¶52.

[358] Savitsky Decl. Exh. 30 ¶¶115-117 (SK's Verified Answer to Tcheng Petition).

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, due to its reliance on the PA declaration, paragraph 220 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e)."

**RESPONSE TO PARAGRAPH 220:**  Defendant respectfully refers the Court to the documents cited for their full context and meaning.

221.     The day after sending Klein the draft for the second sale to Mr. Chen Mei-Lin, Andrew emailed Ewald of OTE with what he claimed was "another sale listing which I had worked with the buyer in China recently."[359]

**OBJECTION TO PARAGRAPH 221:**  Defendant objects to paragraph 221 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 221 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 221:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

222.     Klein faxed Andrew's draft for the second sale to Schram on March 11, 2005.[360]

**OBJECTION TO PARAGRAPH 222:**  Defendant objects to paragraph 222 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 222 on the grounds that the sole evidence cited is an inadmissible declaration from the current Public Administrator, Dahlia Damas, who admits to having "no personal knowledge regarding the allegations in this proceeding," and thus does not comply with Local Civil Rule 56.1(d)'s requirement

---

[359] Savitsky Decl. Exh. 50 (WANG2015-2018).
[360] PA Decl. at ¶28.

that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 222:**  Undisputed.

223.    Two days later, Andrew emailed Klein asking to be notified once he heard an answer from Schram and the PA about the proposed sale to Chen Mei-Lin. [361] Andrew stated that "[t]he buyer asked me to inform him as soon as I can because he needs to prepare the fund."[362]

**OBJECTION TO PARAGRAPH 223:**  Defendant objects to paragraph 223 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 223 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 223:**  Defendant does not dispute that paragraph 223 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

224.    On March 21, 2005, Andrew wrote to Klein: "please have [the PA] sign the contract as soon as possible. I will send another copy to Asia and ask the buyer to wire the money at the same time. I'd like to receive the payment before April 1."[363]

**OBJECTION TO PARAGRAPH 224:**  Defendant objects to paragraph 224 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 224:**  Defendant does not dispute that paragraph 224 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

---

[361] Savitsky Decl. Exh. 51 (WANG002034).

[362] Savitsky Decl. Exh. 51 (WANG002034).

[363] Savitsky Decl. Exh. 52 (WANG002074).

225.    Andrew's emails make no reference of an intermediary, middle-man, or agent having "the direct contact" with Chen Mei-Lin.[364]

**OBJECTION TO PARAGRAPH 225:**  Defendant objects to paragraph 225 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 225 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 225:**  Disputed.  Paragraph 225 cites no email to support the proposition that "Andrew's emails make no reference of an intermediary, middle-man, or agent[.]"  *See* Savitsky Decl. Exh. 25.  The PA was aware that the private sales were facilitated by an intermediary in China.  *See* Kelly Dec. Ex. 109 at 76:6-79:9.

226.    Later that day, Klein sent Andrew drafts of (1) the escrow agreement; (2) the contract of sale; and (3) the bill of sale.[365]  He then directed Andrew "to have Mr. Me-Lin sign" them.[366]

**OBJECTION TO PARAGRAPH 226:**  Defendant objects to paragraph 226 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 226:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

227.    The documents identified "Mr. Chen Mei-Lin" as the purchaser of 24 pieces of Estate paintings for a total price of $1,380,200.00 (exclusive of shipping fees and tax).[367]

---

[364] Savitsky Decl. Exh. 25 (AW-1 at 4).

[365] Savitsky Decl. Exh. 53 (WANG002050-WANG002065).

[366] Savitsky Decl. Exh. 53 (WANG002050).

[367] Savitsky Decl. Exh. 53 (WANG002064-2065).

**OBJECTION TO PARAGRAPH 227:**  Defendant objects to paragraph 227 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 227:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

228.    In the escrow agreement draft, the address attributed to Mr. Chen Mei-Lin was #777 Lane, Apt. 28-A—Andrew's own Shanghai address.[368]

**OBJECTION TO PARAGRAPH 228:**  Defendant objects to paragraph 228 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 228:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

229.    In the contract of sale draft, Mr. Chen Mei-Lin is identified as "residing at" #777 Lane, Apt. #28-A—Andrew's own Shanghai address.[369]

**OBJECTION TO PARAGRAPH 229:**  Defendant objects to paragraph 229 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 229:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

230.    Within a few hours, Andrew emailed Klein telling him that the crate of paintings needed to be shipped "to Hong Kong again because China charges heavy duty taxes and the buyer is not willing to pay that."[370]

---

[368] Savitsky Decl. Exh. 53 (WANG002052; WANG002057).

[369] Savitsky Decl. Exh. 53 (WANG002060; WANG002061).

[370] Savitsky Decl. Exh. 73 (WANG002066).

**OBJECTION TO PARAGRAPH 230:**  Defendant objects to paragraph 230 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 230:**  Defendant does not dispute that paragraph 230 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

231.    On or about March 17, 2005, Ewald created a report to the PA claiming that she had "concerns" with the proposed sale prices for seven of the paintings identified in the proposed sale to Mr. Chen Mei-Lin.[371]

**OBJECTION TO PARAGRAPH 231:**  Defendant objects to paragraph 231 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 231:**  Defendant disputes paragraph 231 to the extent it implies any of Ms. Lake-Ewald's purported concerns were not resolved to the satisfaction of the PA prior to any sale.  They were.  In response to Ms. Lake-Ewald's email, Defendant suggested that she raise her concerns with Arnold Chang, the author of the Sotheby's Appraisal, who was recommended by Plaintiff.  *See* Kelly Dec. Ex. 24 at Rose-SCT-00007325; Ex. 95; Ex. 96.  Defendant provided Ms. Lake-Ewald with Mr. Chang's telephone number.  *See* Kelly Dec. Ex. 96.  Ms. Lake-Ewald contacted Mr. Chang, and after speaking with him about the prices and conducting additional research, felt "satisfied" with the prices.  *See* Kelly Dec. Ex. 44; Ex. 95.

---

[371] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 91:20-98:16); Savitsky Decl. Exh. 15 at ELE-18 (Ewald Dep. Exhibit 18); and Savitsky Decl. Exh. 49 (WANG2010-2012).

232.    Around that same time, Ewald emailed Andrew that she had "been working on the [Chen-Mei Lin] proposal for some time" but found that the proposed prices "seem to be well under market value."[372]

**OBJECTION TO PARAGRAPH 232:**  Defendant objects to paragraph 232 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 232:**  Defendant disputes paragraph 232 to the extent it implies that Ms. Lake-Ewald maintained the position that the prices were "well under market value."  She did not.  In response to Ms. Lake-Ewald's email, Defendant suggested that she raise her concerns with Arnold Chang, the author of the Sotheby's Appraisal, who was recommended by Plaintiff.  *See* Kelly Dec. Ex. 24 at Rose-SCT-00007325; 95; Ex. 96.  Defendant provided Ms. Lake-Ewald with Mr. Chang's telephone number.  *See* Kelly Dec. Ex. 96.  Ms. Lake-Ewald contacted Mr. Chang, and after speaking with him about the prices and conducting additional research, felt "satisfied" with the prices.  *See* Kelly Dec. Ex. 44; Ex. 95.  Mr. Chang confirmed that the proposed prices captured changes in the market since the date of the appraisal.  *See* Kelly Dec. Ex. 44; Ex. 96.

233.    In making this determination, Ewald had consulted with "experts who are well-known in the field."[373] Ewald noted, however, that she did "not hold [herself] out to be an expert on Chinese paintings."[374]

---

[372] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 188:19-189:16); Savitsky Decl. Exh. 15 at ELE-17 (Ewald Dep. 17).

[373] Savitsky Decl. Exh. 15 at ELE-17 (Ewald Dep. Exhibit 17).

[374] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 188:19-189:16); Savitsky Decl. Exh. 15 at ELE-17 (Ewald Dep. Exhibit 17).

**OBJECTION TO PARAGRAPH 233:**  Defendant objects to paragraph 233 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 233:**  Disputed.  Ms. Lake-Ewald did not make a "determination" that any prices were unreasonable, but merely expressed a preliminary view of the prices prior to completing her research.  Subsequent to additional research, including consultation with Mr. Chang, Ms. Lake-Ewald determined that the proposed prices were reasonable.  Kelly Dec. Ex. 44; Ex. 59.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.  *See* Kelly Dec. Ex. 117 at 188:19-201:17.

234.     Shortly thereafter, Andrew emailed Klein about Ewald's concerns claiming that Ewald did "know anything about Chinese paintings and [s]he just can't say anything without any knowledge of the field":[375]

| | |
|---|---|
| 寄件者: | Andrew Wang (jingguanlou_wang@yahoo.com) |
| 收件者: | martykl@kamso.com |
| 日期: | 2005年3月17日 星期四 下午12:40 [EST] |

I agree with your suggestions.
We also need to know who is providing the information to Elin. Elin does not know anything about Chinese paintings and She just can't say anything without any knowledge of the field and listening to senseless sayings from another "expert". Mr. Wender , who has an art gallery in midtown named China 2000 Fine Art, can be the person because he has been partially dealing with Chinses paintings in New York. I can't think of anyone else in this country can be called a Chinses paintings' "Expert". It's likely that Mr. Wender's personaliᵗy is suitable for this confusion.
Elin said that she would finish the final report this afternoon.
Thanks.

**OBJECTION TO PARAGRAPH 234:**  Defendant objects to paragraph 234 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 234 on the grounds that the

---

[375] Savitsky Decl. Exh. 61 (WANG002044).

screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 234:**  Defendant does not dispute that paragraph 234 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

235.   On March 17, 2005 Andrew also wrote to the PA stating that he was "concerned about the sale matter" because he did not "know who has been providing information to [Ewald] and [she] was not willing to tell" him.[376] He wanted to know who Ewald had spoken to and explained it was "important for me to determine whether [Ewald's] source is reliable."[377]

**OBJECTION TO PARAGRAPH 235:**  Defendant objects to paragraph 235 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 235:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

236.   In his email, Andrew explained to the PA that the "Chinese painting market is not an easy field" and reminded her that he "worked on [the] CC Wang Family auction at Sotheby's in 1997."[378]

**OBJECTION TO PARAGRAPH 236:**  Defendant objects to paragraph 236 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 236:**  Defendant does not dispute that paragraph 236 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

---

[376] PA Decl. Exh. 11.

[377] PA Decl. Exh. 11.

[378] PA Decl. Exh. 11.

237.    After additional deliberation among the PA, Andrew, and Ewald, the Co-fiduciaries agreed to sell 24 Estate paintings to Chen-Mei Lin at the exact same prices which Andrew proposed in his initial email to Klein on March 8, 2005.[379]

**OBJECTION TO PARAGRAPH 237:**  Defendant objects to paragraph 237 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 237:**  Disputed.  The documents cited do not support the proposition that Defendant deliberated with the PA.  *See* Savitsky Decl. Exh. 49; Exh. 54.  The PA's deliberations were internal to itself or were conducted in conjunction with Ms. Lake-Ewald.  AW Dec. at ¶ 22.

238.    On March 21, 2005, Klein mailed, via DHL Express, "the proposed contract for the sale of art to Mr. Chen Mei-Lin, as well as the escrow agreement" to Schram for the PA to "countersign and return."[380]

**OBJECTION TO PARAGRAPH 238:**  Defendant objects to paragraph 238 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 238:**  Disputed.  The document cited does not support the proposition that the proposed contract was in fact mailed via DHL Express.  *See* Savitsky Decl. Exh. 55.  The document cited in paragraph 238 was not the final contract. On March 22, 2005, Klein emailed Schram a revised proposed contract for the sale of art. *See* Kelly Dec. Ex. 59.

---

[379] *Compare* Savitsky Decl. Exh. 49 (WANG002010-12 (Andrew's March 8, 2005 email to Klein with the "draft for the second sale")) *with* Savitsky Decl. Exh. 54 (WANG000994-WANG000999 (Signed Contract of Sale with "Chen Mei Lin")).

[380] Savitsky Decl. Exh. 55 (WANG001039 (March 21, 2005 Letter)).

239.    Klein then requested the shipping address from Andrew so that the contract could be updated.[381] Andrew replied that he planned on "talk[ing] with" Mr. Chen Mei-Lin that night to get the requested information: [382]

| 寄件者： | Andrew Wang (jingguanlou_wang@yahoo.com) |
|---|---|
| 收件者： | martykl@kamso.com |
| 日期： | 2005年3月21日 星期一 下午5:56 [EST] |

I will talk with the buyer tonight and get back to you by tomorrow.
Andrew

*Martin Klein <martykl@kamso.com> wrote:*

I will need the shipping address to put in the contract.

**OBJECTION TO PARAGRAPH 239:**  Defendant objects to paragraph 239 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 239 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 239:**  Defendant does not dispute that paragraph 239 accurately quotes the cited document.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

240.    The following morning, Andrew emailed Klein and represented that he was including Mr. Chen Mei-Lin's (i) banking information (an account with China Merchants Bank, Shanghai Branch); (ii) address information (which was, in fact, Andrew's Shanghai address); and (iii) shipping information (which was, in fact, Andrew's accountant's office):[383]

---

[381] Savitsky Decl. Exh. 52 (WANG002075).

[382] Savitsky Decl. Exh. 52 (WANG002075).

[383] Savitsky Decl. Exh. 23 (WANG002084).

```
 At 10:58 AM 3/22/2005 -0800, you wrote:
>Marty,
>I believe that I have the information.
>                             Intermediary's Bank: Chase
> Manhattan Bank
>                             Beneficiary's bank in China:
> China Merchants Bank
>
>Shanghai Branch
>
>A/C No: 400-007746
>Do we need anything else ?
>Thanks
>Andrew
>
>Martin Klein <martykl@kamso.com> wrote:
>Andrew, we need the bank's routing/transit number and the name on the
>account.
>Marty
>At 07:21 AM 3/22/2005 -0800, you wrote:
> >Marty,
> >Here are the information:
> >
> >A. Mr. Chen Mei-Lin
> > #777 Lane, Apt# 28A
> > Xin-Ja Ave. Jing-An District
> > Shanghai City, P.R. China
> >
> > Name of Bank: China Merchants Bank
> > Shanghai Branch
> > A/C # 4100 6202 1018 1125
> > Address: #848 NanJing West Road
> > Shanghai City, China 200041
> >
> >
> >B. Shipping Address: Mr. Chen Mei-Lin
> > c/o Billie Wai
> > Unit #704, Forseas Building
> > #208-212 Nathan Road
> > Kowloon, Hong Kong
> > Tel# 2866-2116
> >Please let me know after Ethel signed her copy, so I can request the
> payment.
> >Thanks
> >Andrew
```

**OBJECTION TO PARAGRAPH 240:**  Defendant objects to paragraph 240 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 240 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 240:**  Defendant does not dispute that paragraph 240 accurately quotes the document cited.  Defendant disputes paragraph 240 to the extent it implies that AW was the buyer of the 98 Paintings.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  AW was not the buyer of any of the 98 Paintings.  *See* Kelly Dec. Ex. 92 at ¶ 2.  AW did not have any personal interest in the sales of the 98 Paintings.  (*Id.*)  AW did not acquire any ownership interest in the 98 Paintings through the sales.  (*Id.*)  AW did not benefit from the sales of the 98 Paintings or any subsequent sales of the 98 Paintings.  (*Id.*)  The artwork was shipped to AW's accountant's office at the request of the buyers to avoid custom and import taxes that would otherwise be incurred if shipped directly to mainland China.  *See, e.g.,* Kelly Dec. Ex. 97; Ex. 98; Ex. 99.

241.    Accordingly, the final version of the Estate's contract of sale with "Mr. Chen-Mei Lin" was adjusted to require the 24 paintings to be shipped to Unit 704 in Hong Kong.[384]

**OBJECTION TO PARAGRAPH 241:**  Defendant objects to paragraph 241 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 241 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 241:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

242.    By April 22, 2005, the contract of sale, escrow agreement, and bill of sale in relation to the sale of 24 paintings to "Mr. Chen Mei-Lin" for $1,393,422.40 (inclusive of shipping) had been executed.[385]  The Estate had also been paid via a wire.[386]

---

[384] Savitsky Decl. Exh. 54 (WANG000993-998 (fully executed contract of sale)).

[385] Savitsky Decl. Exh. 54 (WANG000993-WANG001017 (Klein April 22, 2005 letter to Schram and emails and faxes with Brown Raysman))

[386] Savitsky Decl. Exh. 46 (WANG001682-1683).

**OBJECTION TO PARAGRAPH 242:**  Defendant objects to paragraph 242 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 242:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

243.    By April 22, 2005, the 24 paintings were shipped to Unit 704 in Hong Kong.[387]

**OBJECTION TO PARAGRAPH 243:**  Defendant objects to paragraph 243 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 243:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

244.    Though the PA was unaware of it at the time, this was her Co-fiduciary's personal accountant's office.[388]

**OBJECTION TO PARAGRAPH 244:**  Defendant objects to paragraph 244 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 244 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 244:**  Disputed.  The testimony cited does not establish that the PA was unaware that this was AW's personal accountant's office.  That the shipping address was different than the buyer's home address was plainly disclosed to the

---

[387] PA Decl. Exh. 12.

[388] Savitsky Decl. Exh. 11 (AW 2019 Dep. Trans. at 254:16-256:18; 311:13-19).

PA.  *See* Kelly Dec. Ex. 59.  Defendant respectfully refers the Court to the testimony

cited for its full context and meaning.

245.    And though the PA was unaware of it at the time of the sale, the $1,393,422.40

had come from her Co-fiduciary's own offshore company.[389]

**OBJECTION TO PARAGRAPH 245:**  Defendant objects to paragraph 245 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 245 on the grounds that the

testimony cited was subject to objections from AW's counsel and is not admissible at

trial.

**RESPONSE TO PARAGRAPH 245:**  Disputed.  The testimony cited does not support

the proposition that the PA was unaware that AW facilitated transactions of funds

through an account in Hong Kong.  *See* Savitksy Decl. Exh. 11 at 240:2-243:2.  Neither

AW nor any entity he controlled was the source of funds used to purchase any of the 98

Paintings.  AW Dec. at ¶ 28.  AW was not the buyer of any of the 98 Paintings.  *See*

Kelly Dec. Ex. 92 at ¶ 2.

246.    Klein transmitted the fully executed set of documents for the sale to "Mr. Chen

Mei-Lin" to Schram on April 22, 2005.[390]

**OBJECTION TO PARAGRAPH 246:**  Defendant objects to paragraph 246 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 246:**  Defendant respectfully refers the Court to the

document cited for its full meaning and context.

---

[389] Savitsky Decl. Exh. 11 (AW 2019 Dep. Trans. at 240:2-243:2).
[390] Savitsky Decl. Exh. 54 (WANG000993-WANG001017).

**D.**   *April 29, 2005 – June 21, 2005: The Estate's Third Completed Private Sale of Paintings to "Mr. Anthony Chou."*

247.   Exactly one week after Klein circulated final copies of the Chen Mei-Lin sales documentation, Andrew emailed Klein with another proposed sale of Estate paintings; this time to a person named "Mr. Anthony Chou" with an address in Beijing, China.[391]

**OBJECTION TO PARAGRAPH 247:**  Defendant objects to paragraph 247 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 247:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

248.   Andrew proposed that the Estate sell 16 paintings to Mr. Anthony Chou for $856,800.00.[392] He told Klein "I need the PA's approval as early as possible."[393]

**OBJECTION TO PARAGRAPH 248:**  Defendant objects to paragraph 248 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 248:**  Defendant does not dispute that paragraph 248 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

249.   Klein faxed a listing for the proposed "Anthony Chou" sale to Schram on April 29, 2005.[394]

**OBJECTION TO PARAGRAPH 249:**  Defendant objects to paragraph 249 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[391] Savitsky Decl. Exh. 56 (WANG002098-2100).

[392] Savitsky Decl. Exh. 56 (WANG002098-2100).

[393] Savitsky Decl. Exh. 56 (WANG002098-2100).

[394] PA Decl. Exh. 13.

**RESPONSE TO PARAGRAPH 249:** Defendant respectfully refers the Court to the document cited for its full context and meaning.

250.    Once again, Andrew coordinated shipment of his grandfather's former paintings to his accountant's office in Hong Kong.[395] On May 25, 2005, Klein asked Andrew "Where is the art being shipped? To Mr. Chou at his address in Beijing City?" Andrew replied:[396]

> China would collect custom tax if it's shipped to Beijing. So he asked me to ship them to Hong Kong. Please use the same address in HK [Unit 704] and he will pick them up there . . . . We need to know how fast we can get the signature from the PA.

**OBJECTION TO PARAGRAPH 250:** Defendant objects to paragraph 250 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 250:** Defendant does not dispute that paragraph 250 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

251.    Andrew's email does not mention Er Shi Fu or the existence of any middleman, agent, or intermediary having "the direct contact" with Anthony Chou.[397]

**OBJECTION TO PARAGRAPH 251:** Defendant objects to paragraph 251 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 251:** Disputed.  Paragraph 251 cites no email to support the proposition that "Andrew's email does not mention Er Shi Fu[.]" *See* Savitsky Decl. Exh. 11; Exh. 25.  Defendant disputes paragraph 251 to the extent it

---

[395] Savitsky Decl. Exh. 28 (WANG002108-2111).

[396] Savitsky Decl. Exh. 28 (WANG002108-2111).

[397] Savitsky Decl. Exh. 25 (AW 2019 Dep. Exh. 1 at 4); Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 106:17-107:25).

implies that the PA was not aware that the sales were being facilitated by an intermediary in China.  *See* AW 2019 Dep at 76:6-79:9.

252.    Several weeks later, Klein finalized a draft of the contract of sale and bill of sale for the sale to "Mr. Chou" and emailed them to Schram for the PA's signature.[398]

**OBJECTION TO PARAGRAPH 252:**  Defendant objects to paragraph 252 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 252:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

253.    In his email, which he sent to Andrew as well, Klein explained that this time, unlike what occurred for the first two sales, "the buyer [would be] wiring the purchase price directly into the Estate account":[399]

---

## Estate of Wang

| | |
|---|---|
| 寄件者： | Martin Klein (martykl@kamso.com) |
| 收件者： | pschram@mindspring.com |
| 副本： | jingguanlou_wang@yahoo.com |
| 日期： | 2005年5月25日 星期三 下午5:44 [EDT] |

Peter, attached is the contract of sale and bill of sale for Ethel's signature regarding the sale to Mr. Chou.  This is the same sale that I sent to you a few weeks ago. The buyer has agreed to pay $30,000 for item number 1 on Exhibit A.  Please have Ethel sign as soon as possible as the buyer would like shipment to occur as soon as possible.  Please note that the buyer is wiring the purchase price directly into the Estate account.  He has the right to a refund if the art is not shipped within 10 business day of the Estate's receipt of the wire payment.  The buyer will wire the money sometime next week.  Please call if you have any questions.  Marty

---

[398] Savitsky Decl. Exh. 57 (WANG002130-WANG002136).

[399] Savitsky Decl. Exh. 57 (WANG002130-WANG002136).

**OBJECTION TO PARAGRAPH 253:**  Defendant objects to paragraph 253 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 253 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 253:**  Disputed.  The document cited does not support the statement that Klein "explained that this time, [was] unlike what occurred for the first two sales[.]"  *See* Savitsky Decl. Exh. 57.

254.    Though Klein's May 25, 2005 email to Schram stated that "Mr. Chou" would wire "the purchase price directly into the Estate account,"[400] this never happened.[401]

**OBJECTION TO PARAGRAPH 254:**  Defendant objects to paragraph 254 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 254 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 254:**  Disputed.  The evidence cited does not support the assertion that Mr. Chou did not wire the purchase price to the Estate account.  *See* Savitsky Decl. Exh. 11 at 241:6-242:7.  Defendant disputes paragraph 254 to the extent Plaintiff seeks to imply AW was the source of the funds.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.

---

[400] Savitsky Decl. Exh. 57 (WANG002130-WANG002136).
[401] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 241:6-242:7).

255.    Instead, Andrew wired the purchase price to the Estate's account using an offshore company.[402]

**OBJECTION TO PARAGRAPH 255:**  Defendant objects to paragraph 255 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 255 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 255:**  Defendant disputes paragraph 255 to the extent Plaintiff seeks to imply AW was the source of the funds.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  With respect to certain of the sales, AW facilitated the transfer of funds from the buyers in China to the Estate account in the United States by accepting payment for the artwork into an account he controlled in Hong Kong and thereafter wiring those proceeds to the Estate.  AW Dec. at ¶ 32.

256.    On June 16, 2005, the Estate received the $909,689.41 purchase price under the executed contract with "Mr. Anthony Chou."[403]  The Estate's wire records indicate the "By Order of" source of the payment only as a number: <u>8480185540</u>.[404]

**OBJECTION TO PARAGRAPH 256:**  Defendant objects to paragraph 256 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 256:**  The document cited does not support the assertion that the "number" was the "source" of payment.  The document cited does not

---

[402] Savitsky Decl. <u>Exh. 11</u> (6/25/2019 AW Dep. Trans. at 240:2-243:2).

[403] Savitsky Decl. <u>Exh. 46</u> (WANG001680-81).

[404] Savitsky Decl. <u>Exh. 46</u> (WANG001680-81).

establish what that "number" represents, let alone that it represents an account, the

transferor bank, an institution that facilitated the wire transfer, or any other evidence that

establishes that the "number" was the "source" of the funds.  *See* Savitsky Decl. <u>Exh. 46</u>.

257.    Though the PA was unaware of it at the time, the address to which the paintings
were shipped belonged to Andrew's personal accountant, Billie Wai, in Hong Kong.[405]

**OBJECTION TO PARAGRAPH 257:**  Defendant objects to paragraph 257 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 257 on the grounds that the

testimony cited was subject to objections from AW's counsel and is not admissible at

trial.

**RESPONSE TO PARAGRAPH 257:**  Disputed.  The testimony cited does not establish

that the PA was unaware that the address to which the paintings were shipped belonged

to Defendant's accountant.  *See* Savitsky Decl. <u>Exh. 11</u> at 240:2-243:2.  That the shipping

address was different than the buyer's home address was plainly disclosed to the PA, and

the reasons for shipping to that address were disclosed to the PA and/or Defendant's

attorney.  *See* Kelly Dec. Ex. 33; Ex. 49.  Defendant respectfully refers the Court to the

testimony cited for its full context and meaning.

258.    Klein transmitted the fully executed set of documents for the sale to "Mr.
Anthony Chou" to Schram on June 21, 2005.[406]

**OBJECTION TO PARAGRAPH 258:**  Defendant objects to paragraph 258 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

---

[405] Savitsky Decl. <u>Exh. 11</u> (6/25/2019 AW Dep. Trans. at 240:2-243:2).
[406] PA Decl. <u>Exh. 14</u>.

**RESPONSE TO PARAGRAPH 258**:  Defendant respectfully refers the Court to the document cited for its full context and meaning.

> E.  *July 27, 2005 – September 22, 2005: The Estate's Fourth Completed Private Sale of Paintings to "Mr. Yong Qing Ye."*

259.     Klein sent a fax to Schram on July 27, 2005 representing that he was attaching a listing of 20 Estate paintings "that Andrew has received offers to purchase from Mr. Yong-Qing Ye."[407]

**OBJECTION TO PARAGRAPH 259**:  Defendant objects to paragraph 259 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 259**:  Defendant does not dispute that paragraph 259 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

260.     Klein's fax further explained that SK's cousin in Taiwan, Hui Chen Wang Chen ("Hui Chen"), had alleged that she was the owner of six of the paintings that had previously been delivered to the Estate and stored in Crozier, but which "Yong Qing-Ye" was now offering to purchase.[408]

**OBJECTION TO PARAGRAPH 260**:  Defendant objects to paragraph 260 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 260**:  Defendant does not dispute that paragraph 260 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

261.     To induce the Estate to agree to sell these paintings, Klein attached a typed letter apparently signed by Hui Chen that referenced her alleged paintings by their Estate OTE number and gave blanket approval to the Estate to sell them on the condition that "my cousin, Shou-

---

[407] PA Decl. Exh. 16.

[408] PA Decl. Exh. 16.

Kung Wang, [be] responsible to return [the sale price] to my family upon the sale of Apartment 8A."[409]

**OBJECTION TO PARAGRAPH 261**:  Defendant objects to paragraph 261 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 261 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 261**:  Defendant does not dispute that paragraph 261 accurately quotes the documents cited.  Defendant respectfully refers the Court to the documents cited for their full context and meaning.

262.    By August 29, 2005—following a review procedure similar to that observed for the purported sales to "Mr. Wei Zheng," "Mr. Chen Mei Lin," and "Mr. Anthony Chou"—the PA agreed to sell 18 of the paintings identified on Klein's July 27th fax.[410]

**OBJECTION TO PARAGRAPH 262**:  Defendant objects to paragraph 262 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 262 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 262**:  Defendant respectfully refers the Court to the document cited for its full context and meaning.

263.    Once again, the fully executed contract required the C.C. Wang's former paintings to be shipped to "Billie Wai" at Unit 704 in Hong Kong.[411]

**OBJECTION TO PARAGRAPH 263**:  Defendant objects to paragraph 263 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[409] PA Decl. Exh. 16; *see also* Savitsky Decl. Exh. 58 (WANG003327).
[410] PA Decl. Exh. 17.
[411] PA Decl. Exh. 18 (KING 007005).

before the Court.  Defendant further objects to paragraph 263 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 263:**  Defendant respectfully refers the Court to the

document cited for its full context and meaning.

264.    Though the PA continued to be unaware of it at the time of the sale, Unit 704 was her Co-fiduciary's personal accountant's address.[412]

**OBJECTION TO PARAGRAPH 264:**  Defendant objects to paragraph 264 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 264 on the grounds that the

testimony cited was subject to objections from AW's counsel and is not admissible at

trial.

**RESPONSE TO PARAGRAPH 264:**  Disputed.  The testimony cited does not establish

that the PA was unaware that the address to which the paintings were shipped belonged

to Defendant's accountant.  *See* Savitsky Decl. Exh. 11.  That the shipping address was

different than the buyer's home address was plainly disclosed to the PA, and the reasons

for shipping to that address were disclosed to the PA and/or Defendant's attorney.  *See*

Kelly Dec. Ex. 33; Ex. 49; Ex. 68.  Defendant respectfully refers the Court to the

testimony cited for its full context and meaning.

265.    On September 21, 2005, the Estate received a wire for the $789,810.00 purchase price under the contract executed with "Mr. Yong Qing Ye."[413]  The Estate's wire records indicate the "By Order of" source of the payment only as a number: 8480185540.[414] This is the same "By Order of" number associated with the "Anthony Chou" wire one month prior.

---

[412] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 254:16-256:18; 311:13-19).

[413] Savitsky Decl. Exh. 46 (WANG001678-1679)

[414] Savitsky Decl. Exh. 46 (WANG001678-1679)

**OBJECTION TO PARAGRAPH 265**:  Defendant objects to paragraph 265 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 265**:  The document cited does not support the assertion that the "number" was the "source" of payment.  The document does not establish what the "number" represents, let alone that it represents an account, the transferor bank, an institution that facilitated the wire transfer, or any other evidence that establishes that the "number" was the "source" of the funds.  *See* Savitsky Decl. Exh. 46.

266.    Though the PA was unaware of it at the time of the sale, the $789,810.00 had been wired to the Estate by her Co-fiduciary's own offshore company.[415]

**OBJECTION TO PARAGRAPH 266**:  Defendant objects to paragraph 266 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 266 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 266**:  Defendant disputes paragraph 266 to the extent Plaintiff seeks to imply AW as the source of the funds.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  With respect to certain of the sales, AW facilitated the transfer of funds from the buyers in China to the Estate account in the United States by accepting payment for the artwork into an account he controlled in Hong Kong and thereafter wiring those proceeds

---

[415] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 240:2-243:2).

to the Estate.  AW Dec. at ¶ 32.  The testimony cited does not support the proposition that

the PA was unaware that AW acted as an intermediary for the funds.

### F.   December 13, 2005 – February 16, 2006 - The Estate's Fifth Completed Private Sale of Paintings to "Mr. Yong Qing Ye."

267.    On December 13, 2005, Klein sent the PA another fax attaching a list with eight more paintings which he claimed that "Andrew ha[d] received offers to purchase from Mr. Yong Qing Ye."[416]

**OBJECTION TO PARAGRAPH 267:**  Defendant objects to paragraph 267 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 267:**  Defendant does not dispute that paragraph 267 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

268.    Klein's fax further represented that one of the paintings which "Mr. Yong Qing Ye" offered to purchase, OTE #156, was allegedly owned by SK, even though it had been delivered to the Estate.[417]

**OBJECTION TO PARAGRAPH 268:**  Defendant objects to paragraph 268 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 268:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

269.    Yet Klein represented that SK had agreed to allow the Estate to sell his painting so that the Estate could "raise as much cash as possible to pay Estate expenses."[418]

---

[416] PA Decl. Exh. 20.

[417] PA Decl. Exh. 20.

[418] PA Decl. Exh. 20.

**OBJECTION TO PARAGRAPH 269**:  Defendant objects to paragraph 269 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 269**:  Defendant does not dispute that paragraph 269 accurately quotes the document cited.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

270.    OTE 156—which SK claimed was his but had agreed could be sold to pay the Estate's expenses—had been appraised by Sotheby's to be worth $100,000.00 as of July 2003.[419]

**OBJECTION TO PARAGRAPH 270**:  Defendant objects to paragraph 270 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 270**:  Defendant respectfully refers the Court to the document cited for its full meaning and context.

271.    The total proposed sale price for the 8 paintings listed in Klein's fax was $346,800.00.[420]

**OBJECTION TO PARAGRAPH 271**:  Defendant objects to paragraph 271 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 271**:  Defendant respectfully refers the Court to the document cited for its full context and meaning.

272.    On December 16, 2005, after a review of the proposed sale was conducted by OTE, the PA responded to Klein that five of the proposed prices were too low to approve:[421]

---

[419] PA Decl. Exh. 20.

[420] PA Decl. Exh. 20.

[421] Savitsky Decl. Exh. 59 (WANG001397).

Re: **Estate of C.C. Wang**

Dear Marty:

Elin Ewald has reviewed Andrew's proposal to sell certain items to YongQing Ye and made recommendations to the Public Administrator. Based upon those recommendations, the Public Administrator responds as follows:

| | |
|---|---|
| Items 3, 4, and 6: | Approved |
| Item 1: | Suggest a price closer to $20,000 |
| Item 2: | Suggest at least $18,000 |
| Item 5: | Suggest at least $115,000 |
| Item 7: | Suggest at least $40,000 |
| Item 8: | Suggest at least $60,000. |

Please advise how Andrew wishes to proceed.

Very truly yours,

Peter S. Schram

**OBJECTION TO PARAGRAPH 272:** Defendant objects to paragraph 272 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court. Defendant further objects to paragraph 272 on the grounds that the screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 272:** Disputed. The document cited does not establish that "five of the prices were too low to approve." The PA suggested that AW seek higher prices, but does not reject the proposed prices as being too low, or state that it would not approve the sales at the proposed prices. *See* Savitsky Decl. Exh. 59. Further, Defendant disputes paragraph 272 to the extent it implies that AW's proposed price for Item #8 was less than $60,000. The proposal conveyed an offer of $60,000 for Item #8. *See* Kelly Dec. Ex. 39.

273.    Notwithstanding her December 16, 2005 request for higher sales prices for five of the paintings, the PA eventually backed down from her counter position.[422]

**OBJECTION TO PARAGRAPH 273:**  Defendant objects to paragraph 273 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 273:**  Disputed.  The PA did not "back[] down from her counter position."  In Schram's December 16, 2005 fax to Klein, the PA merely suggested certain prices for five artworks but did not assert a "counter position."  *See* Savitsky Decl. Exh. 59.

274.    By late January 2006, the PA had signed sales documentation approving a sale to "Mr. Yong Qing Ye" at the exact same prices identified in Klein's initial fax, plus shipping, handling, and insurance fees.[423]

**OBJECTION TO PARAGRAPH 274:**  Defendant objects to paragraph 274 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 274:**  Defendant respectfully refers the Court to the documents cited for their full context and meaning.

275.    Once again, the fully executed contract required the eight paintings—including the $100,000.00 painting SK claimed he owned—be shipped to "Mr. Yong-Qing Ye" at Unit 704 in Hong Kong.[424]

**OBJECTION TO PARAGRAPH 275:**  Defendant objects to paragraph 275 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[422] Savitsky Decl. Exh. 60 (WANG001388 (Schram Email)).

[423] Savitsky Decl. Exh. 62 (WANG001387 (Crozier shipping invoice of $7,244.76)); PA Decl. Exh. 22.

[424] PA Decl. Exh. 22 (KING 007196).

**RESPONSE TO PARAGRAPH 275:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

276.    Though the PA continued to be unaware of it at the time of the sale, Unit 704 was the address of her Co-fiduciary's personal accountant.[425]

**OBJECTION TO PARAGRAPH 276:**  Defendant objects to paragraph 276 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 276 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 276:**  Disputed.  The testimony cited does not establish that the PA was unaware that the address to which the paintings were shipped belonged to Defendant's accountant.  *See* Savitsky Decl. Exh. 11.  That the shipping address was different than the buyer's was plainly disclosed to the PA, and the reasons for shipping to that address were disclosed to the PA and/or Defendant's attorney.  *See* Kelly Dec. Ex. 33; Ex. 49.  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

277.    On February 16, 2006, the Estate received a wire for the $354,045.00 purchase price under the contract executed with "Mr. Yong Qing Ye." [426]

**OBJECTION TO PARAGRAPH 277:**  Defendant objects to paragraph 277 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 277:**  Defendant respectfully refers the Court to the document cited for its full context and meaning.

---

[425] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 254:16-256:18, 311:13-19).

[426] Savitsky Decl. Exh. 46 (WANG001676)

278.    Once again, the Estate's wire records describe the wire as originating from 8480185540.[427]

**OBJECTION TO PARAGRAPH 278:**  Defendant objects to paragraph 278 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 278:**  The document cited does not establish that the funds originated from "8480185540."  The document cited does not establish what that "8480185540" represents, let alone that it represents an account, the transferor bank, an institution that facilitated the wire transfer, or any other evidence that establishes that the funds originated with "8480185540."  *See* Savitsky Decl. Exh. 46.

279.    Though the PA was unaware of it at the time, the $354,045.00 purchase price had been wired to the Estate by her Co-fiduciary's own offshore company.[428]

**OBJECTION TO PARAGRAPH 279:**  Defendant objects to paragraph 279 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 279 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 279:**  Disputed.  The testimony cited does not support the proposition that the PA was unaware that AW acted as an intermediary for the funds.  *See* Savitsky Decl. Exh. 11 at 240:2-243:2.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  With respect to certain of the sales, AW facilitated the transfer of funds from the buyers in China to the Estate account in the United States by accepting payment for the artwork

---

[427] Savitsky Decl. Exh. 46 (WANG001678-1679)
[428] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 240:2-243:2); PA at ¶52.

into an account he controlled in Hong Kong and thereafter wiring those proceeds to the

Estate.  AW Dec. at ¶ 32.

### G.     April 23, 2008 – September 2, 2009 - The Estate's Sixth and Final Completed Private Sale of Paintings to "Mr. Yue Da Jin."

280.    On April 23, 2008, Klein faxed Schram a list of fourteen (14) Estate paintings which he claimed Andrew had "received offers to purchase from 'Mr. Yue Da-Jin.'"[429] The proposed sale price for the 14 paintings was $538,800.00.[430]

**OBJECTION TO PARAGRAPH 280**:  Defendant objects to paragraph 280 to the

extent it advances legal conclusions and arguments rather than facts, as required by Local

Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 280**:  Defendant disputes paragraph 280 to the extent it

seeks to imply that the offers did not come from Mr. Yue Da-Jin.  Mr. Yue Da-Jin was

the source of the offers conveyed by AW.  AW Dec. at ¶ 28.

281.    On May 2, 2008, Ewald of OTE issued a report to Schram on the reasonableness of the proposed sale prices (the "2008 Ewald Report").[431]

**OBJECTION TO PARAGRAPH 281**:  Defendant objects to paragraph 281 to the

extent it advances legal conclusions and arguments rather than facts, as required by Local

Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 281**:  Disputed.  Ms. Lake-Ewald did not opine on the

reasonableness of the sales prices vis-à-vis the Estate, nor did she make any conclusions

or determinations as to whether any proposed price was reasonable for the Estate's

purpose.  *See* Kelly Dec. Ex. 11 at ¶ 11; Ex. 31; Ex. 108 at 36:9-37:8; 77:17-78:4.  The

PA determined the reasonableness of proposed sales prices and her decisions took Ms.

---

[429] PA Decl. Exh. 23.

[430] PA Decl. Exh. 23.

[431] Savitsky Decl. Exh. 14 (Ewald Dep. Trans. at 157:10-161:13); Savitsky Decl. Exh. 15 (ELE-30).

Lake-Ewald's views of the prices into account.  *See* Kelly Dec. Ex. 31; Ex. 108 at 28:23-30:8.

282.    Though Ewald identified her report as a "Fair Market Value Appraisal," it did not identify any comparables or nor did it include Ewald's own independent value estimates for the fourteen paintings.[432]

**RESPONSE TO PARAGRAPH 282:**  Defendant disputes paragraph 282 to the extent it implies that Ms. Lake-Ewald did not follow the procedure put into place by the PA in connection with the 2008 Ewald Report.  In her deposition, Ms. Lake-Ewald stated that the identification of the report as a "fair market value appraisal" was a mistake.  *See* Savitsky Decl. Exh. 14 at 158:5-12.  Defendant further disputes the statement that the report "did not identify any comparables."  Throughout the 2008 Ewald Report, Ms. Lake-Ewald referred to auction results for comparable pieces in her commentary on the proposed sale to Mr. Yue Da-Jin.  *See* Savitsky Decl. Exh. 15.

283.    Instead, the 2008 Ewald Report provided one to two sentences of commentary on the fourteen proposed prices in the list Klein had sent ten days earlier.[433] The 2008 Ewald Report concluded that five (5) of the proposed sale prices were possibly too low.[434]

**OBJECTION TO PARAGRAPH 283:**  Defendant objects to paragraph 283 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 283:**  Disputed.  The 2008 Ewald Report did not "conclude that five (5) of the proposed sales prices were possibly too low."  In the 2008 Ewald Report, Ms. Lake-Ewald commented that (i) eight of the fourteen prices were in

---

[432] Savitsky Decl. Exh. 14 (Ewald Dep. Trans. at 157:10-161:13); Savitsky Decl. Exh. 15 (ELE-30 at KING 007376-7377, 7381-7383).

[433] Savitsky Decl. Exh. 14 (Ewald Dep. Trans. at 157:10-161:13); Savitsky Decl. Exh. 15 (ELE-30 at KING 007376-7377, 7381-7383).

[434] Savitsky Decl. Exh. 15 (ELE-30 at KING 007376-7377, 7381-7383).

line with comparable sales; (ii) one proposed price would be "well done" if it was possible to obtain; and (iii) one proposed price would be "excellent if attainable." *See* Savitsky Decl. Exh. 15. With respect three paintings, Ms. Lake-Ewald commented that (i) one price "appear[ed] low" with the caveat that "there may be a reason for this about which we are not aware"; (ii) one price seemed "reasonable, if a little low"; and (iii) one price was "slightly lower" than comparables with the caveat that it could due to "condition and desirability." *Id*. For the last artwork, Ms. Lake-Ewald wrote: "we cannot comment on this price" because of "some mix-up in the numbering." *Id*. Defendant respectfully refers the Court to the 2008 Ewald Report for the full context and meaning of her commentary. *See* Savitsky Decl. Exh. 15.

284. Five days after Ewald issued her report, Andrew sent her an email.[435] He wanted her to understand that "the market for classical Chinese paintings ha[s] always been weak except [for] Chinese paintings within the [i]mperial collections."[436]

**RESPONSE TO PARAGRAPH 284:** Defendant does not dispute that paragraph 284 accurately quotes the document cited. Defendant respectfully refers the Court to the document cited for its full context and meaning.

285. Andrew defended his position as to two paintings on which Ewald had disagreed with him: stating one painting had "been damaged seriously with insect[] bites" and advising Ewald not consider the final sales prices of Chinese auction houses.[437]

**RESPONSE TO PARAGRAPH 285:** Disputed. Plaintiff mischaracterizes the document cited. AW was not "defending [any] position" but responding with comments to Ms. Lake-Ewald's report. *See* Savitsky Decl. Exh. 63. Defendant respectfully refers the Court to the document cited for its full context and meaning.

---

[435] Savitsky Decl. Exh. 63 (WANG002233).

[436] Savitsky Decl. Exh. 63 (WANG002233).

[437] Savitsky Decl. Exh. 63 (WANG002233).

286.     Ewald responded the she "definitely [did] not want to be the obstacle to a good sale" and that it was her "hope" that Andrew could get "additional money" through negotiation with the buyer. [438]

> **RESPONSE TO PARAGRAPH 286:**  Disputed to the extent paragraph 286 implies that
>
> Ms. Lake-Ewald's response was to AW's email referenced in paragraph 285.  Ms. Lake-
>
> Ewald's response was to a different email from Defendant.  *See* Savitsky Decl. Exh. 63;
>
> Exh. 64.  Defendant further disputes paragraph 286 to the extent Plaintiff's selective
>
> quotations mischaracterize Ms. Lake-Ewald's email.  Specifically, Ms. Lake-Ewald
>
> stated: "If the buyer balks perhaps you can negotiate."  *See* Kelly Dec. Ex. 128.
>
> Defendant respectfully refers the Court to the document cited for its full context and
>
> meaning.

287.     Andrew replied that "the buyer would not argue with me about his purchase price as long as I have a good explanation."[439] Andrew added that he would direct Klein to prepare a contract, but explained it might take time "to finalize the deal because the purchaser has his own consultants for the sale."[440]

> **RESPONSE TO PARAGRAPH 287:**  Defendant does not dispute that paragraph 287
>
> accurately quotes the document cited.  Defendant respectfully refers the Court to the
>
> document cited for its full context and meaning.

288.     By May 17, 2008, Ewald had spoken directly with Andrew and agreed to the sale based upon the prices which he originally proposed.[441]

> **RESPONSE TO PARAGRAPH 288:**  Defendant respectfully refers the Court to the
>
> documents cited for their full context and meaning.

---

[438] Savitsky Decl. Exh. 64 (WANG003432).
[439] Savitsky Decl. Exh. 64 (WANG003432).
[440] Savitsky Decl. Exh. 64 (WANG003432).
[441] Savitsky Decl. Exh. 65 (WANG002253-2257); Savitsky Decl. Exh. 66 (WANG003414-3421).

289.    The proposed sale to "Yue Da Jin," however, was never completed in 2008. [442] Andrew told Klein that the sale was on hold because the buyer wanted to negotiate even lower prices.[443]

**RESPONSE TO PARAGRAPH 289**:  Defendant disputes paragraph 289 to the extent it

advances legal conclusions and arguments rather than facts, as required by Local Civil

Rule 56.1.  Defendant respectfully refers the Court to the document cited for its full

context and meaning.

290.    By February 26, 2009, Andrew had emailed Klein claiming that the buyer was now asking him for a 20% discount on the originally proposed $538,800.00 price for the fourteen paintings.[444] Andrew recommended giving a 10% discount because the "paintings market is very weak here":[445]

Date: Thu, 26 Feb 2009 00:20:42 -0800 (PST)
From: Andrew Wang <jingguanlou_wang@yahoo.com>
Subject: Re: Sale to Mr. Yue
To: martin klein <mklein@kamso.com>

Marty,
The purchaser is asking a 20% discount of the total sale, and I told him that I will try to get him 10% off the total value. The Chinese paintings market is very weak here and several Auction houses have already postponed their sales to the Fall. Can you ask the PA to agree to the 10% discount, so I can proceed with the sale ? The buyer is willing to make the payment in March. I will provide you with all necessary informations once I have your confirmation.
Thanks

**OBJECTION TO PARAGRAPH 290**:  Defendant objects to paragraph 290 on the

grounds that the screenshot above is not a "statement" as contemplated by Local Civil

Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 290**:  Defendant respectfully refers the Court to the

document cited for its full context and meaning.

---

[442] Savitsky Decl. Exh. 67 (AWSK_00015263-5265).

[443] Savitsky Decl. Exh. 67 (AWSK_00015263-5265).

[444] Savitsky Decl. Exh. 67 (AWSK_00015264).

[445] Savitsky Decl. Exh. 67 (AWSK_00015264).

291.     Notwithstanding Andrew's representations in 2009 about what he "told" Yue Da Jin, Andrew testified earlier this year that he never spoke, emailed, or communicated directly with that purported buyer—just as he claims he never spoke, emailed, or communicated with any of the five purported buyers.[446]

**OBJECTION TO PARAGRAPH 291:**  Defendant objects to paragraph 291 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 291 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 291:**  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

292.     And though he now claims all communications with the buyers occurred through someone named "Er Shi Fu," he has no emails with Mr. Fu either, because he claims Mr. Fu did not have an email account.[447]

**OBJECTION TO PARAGRAPH 292:**  Defendant objects to paragraph 292 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 292 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 292:**  Defendant disputes paragraph 292 to the extent it implies that emails between AW and Mr. Fu should exist or should have been produced. Plaintiff failed to seek discovery directly from Mr. Fu in this action, and that alone belies any conclusion that no such records exist.  *See* Kelly Res. Dec. at ¶ 4(vii).  Defendant further responds that email accounts that he used during the period of the sales and in

---

[446] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 75:9-76:16; 89:25-95:22 300:24-301:17).
[447] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 86:21-25; 300:24-301:17).

connection with the sales, specifically "Yiyuanwang@aol.com" was closed by the service

provider for lack of use and was unavailable for AW to search for potentially relevant

records.  AW Dec. at ¶ 31.  Defendant further states that it is normal practice in the

Chinese art world for transactions to be "handshake deals" and the lack of records of such

transactions is not unusual.  According to Plaintiff's husband Kenneth King, the lack of

records of transactions involving Chinese paintings is customary.  *See* Kelly Dec. Ex. 94

at 64:8-65:7.  Defendant further disputes paragraph 292 to the extent it seeks to imply

AW did not contemporaneously disclose the presence of a third party consultant in

connection with the sale.  AW disclosed that there was a third party consultant involved

in the sale and would be required to review the terms of that sale on behalf of Yue Da-

Jin.  *See* Savitsky Decl. Exh. 64.

293.    The PA eventually came to authorize the discount for "Yue Da Jin."[448]

**RESPONSE TO PARAGRAPH 293:**  Undisputed.

294.    The final sale price for the 14 paintings was set in August 2009 at $489,772.00
(inclusive of shipping costs).[449]

**RESPONSE TO PARAGRAPH 294:**  Undisputed.

295.    Ewald never issued an updated valuation report (despite the passage of a year and
the newly reduced prices for the paintings).[450]

**RESPONSE TO PARAGRAPH 295:**  Defendant disputes paragraph 295 to the extent

Plaintiff mischaracterizes the 2008 Ewald Report as a "valuation report."  Disputed for

the same reasons explained in paragraph 282 above.

---

[448] Savitsky Decl. Exh. 68 (WANG00534).

[449] Savitsky Decl. Exh. 68 (WANG00536).

[450] Savitsky Decl. at ¶12.

296.     The 14 prices set forth in the Estate's executed contract of sale with Yue Da Jin, dated August 17, 2009, are all lower than the prices which Ewald reviewed in her May 2, 2008 report.[451]

**RESPONSE TO PARAGRAPH 296:**  Undisputed.

297.     Klein circulated a revised draft of the agreement to Andrew in late April 2009 and directed Andrew to date the contract of sale based "upon the date that Mr. Yue Da Jin says he will wire the purchase price."[452]

**RESPONSE TO PARAGRAPH 297:**  Undisputed.

298.     On August 12, 2009, a company called "Le Style Limited" wired the $489,772.00 purchase price under the Estate's contract with "Mr. Yue Da Jin" to the Estate's bank account.[453]

**RESPONSE TO PARAGRAPH 298:**  The document cited does not establish that "Le Style Limited" was the original source of payment.  *See* Savitsky Decl. Exh. 46. Defendant disputes paragraph 298 to the extent Plaintiff seeks to imply AW was the source of the funds.  Neither AW nor any entity he controlled was the source of funds used to purchase any of the 98 Paintings.  AW Dec. at ¶ 28.  With respect to this sale, AW facilitated the transfer of funds from the buyer in China to the Estate account in the United States by accepting payment for the artwork into an account he controlled in Hong Kong and thereafter wiring those proceeds to the Estate.  AW Dec. at ¶ 32.  Defendant respectfully refers the Court to the document cited for its full context and meaning.

299.     Though the PA did not know it at the time of the sale, Le Style Limited was owned by her Co-fiduciary, Andrew.[454]

**OBJECTION TO PARAGRAPH 299:**  Defendant objects to paragraph 299 on the grounds that the sole evidence cited is an inadmissible declaration from the current Public Administrator, Dahlia Damas, who admits to having "no personal knowledge regarding

---

[451] Savitsky Decl. Exh. 14 (Ewald Dep. Trans. at 161:23-167:3).

[452] Savitsky Decl. Exh. 69 (WANG002318).

[453] Savitsky Decl. Exh. 46 (WANG001673-1674).

[454] PA Decl. at ¶52.

the allegations in this proceeding," and thus does not comply with Local Civil Rule

56.1(d)'s requirement that every statement be supported by "citation to evidence which

would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 299:**  Disputed.  The evidence cited does not support

the proposition that the PA was unaware AW owned Le Style Limited.  *See* PA Decl. at ¶

52.

300.    On August 14, 2009, Klein was preparing the final paperwork to complete the
sale. [455] He emailed Andrew asking if "Yue Da Jin" had signed the contract yet. [456] Andrew
responded "I have the signed contract. The buyer is in Europe, and I will try to contact him." [457]

**RESPONSE TO PARAGRAPH 300:**  Defendant respectfully refers the Court to the

document cited for its full context and meaning.

301.    But there are no records of Andrew ever contacting a person named "Yue Da
Jin." [458]

**OBJECTION TO PARAGRAPH 301:**  Defendant objects to paragraph 301 to the

extent it advances legal conclusions and arguments rather than facts, as required by Local

Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 301:**  Disputed.  Plaintiff's counsel's declaration does

not support the proposition that there are "no records of Andrew ever contacting a person

named 'Yue Da Jin.'"  *See* Savitsky Decl. at ¶ 7.  Plaintiff failed to seek discovery

directly from Mr. Da-Jin in this action, and that alone belies any conclusion that no such

records exist.  *See* Kelly Res. Dec. at ¶ 4(iv).  Defendant further responds that email

accounts that he used during the period of the sales and in connection with the sales,

---

[455] Savitsky Decl. Exh. 70 (WANG002328).

[456] Savitsky Decl. Exh. 70 (WANG002328).

[457] Savitsky Decl. Exh. 70 (WANG002328).

[458] Savitsky Decl. at ¶7.

specifically "Yiyuanwang@aol.com" was closed by the service provider for lack of use

and was unavailable for AW to search for potentially relevant records.  AW Dec. at ¶ 31.

Defendant further states that it is normal practice in the Chinese art world for transactions

to be "handshake deals" and the lack of records of such transactions is not unusual.

According to Plaintiff's husband Kenneth King, the lack of records of transactions

involving Chinese paintings is customary.  *See* Kelly Dec. Ex. 92 at 64:8-65:7.

302.    The final agreed upon sales price (including shipping and insurance) in the contract of sale and bill of sale executed on August 17, 2009 by Andrew and the PA was $489,772.00.[459]

**RESPONSE TO PARAGRAPH 302:**  Undisputed.

303.    Crozier then coordinated with Andrew through email concerning the best way to contact Billie Wai about the shipment of the 14 paintings.[460] The package was delivered to Unit 704 by August 21, 2009.[461]

**OBJECTION TO PARAGRAPH 303:**  Defendant objects to paragraph 303 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 303:**  Defendant respectfully refers the Court to the

document cited for its full context and meaning.

304.    Though the PA continued to be unaware of it at the time of the sale, this was the address of her Co-fiduciary's personal accountant.[462]

**OBJECTION TO PARAGRAPH 304:**  Defendant objects to paragraph 304 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 304 on the grounds that the

---

[459] Savitsky Decl. Exh. 68 (WANG000531).

[460] Savitsky Decl. Exh. 71 (WANG002348-2352).

[461] Savitsky Decl. Exh. 71 (WANG002348).

[462] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 254:16-256:18; 311:13-19).

testimony cited was subject to objections from AW's counsel and is not admissible at

trial.

**RESPONSE TO PARAGRAPH 304:**  Disputed.  The testimony cited does not establish

that the PA was unaware that this was AW's personal accountant's office.  *See* Savitsky

Decl. Exh. 11.  That the shipping address was different than the buyer's home address

was plainly disclosed to the PA.  *See* Savitsky Decl. Exh. 68.  Defendant respectfully

refers the Court to the testimony cited for its full context and meaning.

### H.   *O'Toole-Ewald Art Associates' Review of the Proposed Sales and Communications and Andrew Wang.*

305.    Throughout the process of selling the 98 Paintings between 2005 and 2009, the
PA had retained OTE to review the purchase prices offered by the five purported buyers to see if
the prices were "legitimate" or "fair."[463]

**OBJECTION TO PARAGRAPH 305:**  Defendant objects to paragraph 305 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant further objects to paragraph 305 to the extent it relies on the

PA Declaration, and thus does not comply with Local Civil Rule 56.1(d), which requires

that every statement be supported by "citation to evidence which would be admissible, set

forth as required by Fed R Civ. P. 56(c)."  Defendant further objects to paragraph 305 to

the extent it advances legal conclusions and arguments rather than facts, as required by

Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 305:**  Defendant disputes paragraph 305 to the extent it

implies that OTE's role was to approve or reject sales or to make final determinations or

conclusions as to whether any proposed price was reasonable, legitimate, or fair for the

---

[463] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 44:13-21); PA Decl. at ¶51.

Estate's purposes.  Ms. Lake-Ewald did not opine on the reasonableness of the sales

prices vis-à-vis the Estate, nor did she make any conclusions or determinations as to

whether any proposed price was reasonable for the Estate's purpose.  *See* Kelly Dec. Ex.

11 at ¶ 11; Ex. 31; Ex. 108 at 36:9-37:8; 77:17-78:4.  The PA determined whether or not

to approve the sales, and the reasonableness of proposed sales prices, and her decisions

took Ms. Lake-Ewald's views of the prices into account.  *See* Kelly Dec. Ex. 31; Ex. 108

at 28:23-30:8.

306.    Ewald claims to have conducted her review by assessing the paintings "in the
current market for Chinese classical art."[464]

**OBJECTION TO PARAGRAPH 306:**  Defendant objects to paragraph 306 on the

grounds that the purported facts asserted are not relevant or material to any issue before

the Court.  Defendant objects to paragraph 306 to the extent it advances legal conclusions

and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 306:**  Defendant disputes paragraph 306 to the extent it

implies Ms. Lake-Ewald's review was limited to "the current market for Chinese

classical art."  When reviewing proposed prices, Ms. Lake-Ewald considered relevant

information available at the time, including: (i) the 2004 Sotheby's Appraisal; (ii) auction

results for comparable works and auction records subsequent to the 2004 Sotheby's

Appraisal; (iii) advice and input of subject matter experts including Robert Ellsworth and

Peter Rosenberg, both of whom are noted dealers/collectors of Classical Chinese artwork;

and (iv) consulted directly with Arnold Chang, who performed the 2004 Sotheby's

Appraisal, and who was intimately familiar with the artworks based on his personal

---

[464] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 171:7-14).

relationship with C.C.  *See* Kelly Dec. Ex. 26 at ¶ 16; Ex. 69; Ex. 117 at 65:8-66:23, 103:2-17, 186:13-187:19, 203:11-204:2.

307.    On February 25, 2005, Ewald wrote a letter that "at the suggestion of …. Andrew Wang, and with the knowledge of [the PA] and her advisory attorneys" OTE "agreed to deal directly with Andrew Wang when offers are made in [the] future on the sale of one or more paintings in the estate."[465]

**OBJECTION TO PARAGRAPH 307:**  Defendant objects to paragraph 307 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 307:**  Defendant disputes paragraph 307 to the extent it implies AW exerted any improper influence over Ms. Lake-Ewald in her review of any of the paintings.  To the contrary, AW advised Ms. Lake-Ewald that in the event she felt any price was too low, she consult directly with Arnold Chang for an objective third-party expert assessment.  *See* Kelly Dec. Ex. 95.  Arnold Chang was the author of the 2004 Sotheby's Appraisal, and the Plaintiff's hand chosen expert.  *See* Kelly Dec. Ex. 13; Ex. 24 at Rose-SCT-00007325.  AW further advised Ms. Lake-Ewald that if she felt any of those prices were too low, he would put them "on the side."  *See* Kelly Dec. Ex. 95. Defendant further disputes paragraph 307 to the extent it implies AW sought to deal directly with Ms. Lake-Ewald.  AW was directed by the PA to consult with Ms. Lake-Ewald to the extent she had questions about the artworks.  *See* Kelly Dec. Ex. 100; Ex. 101.  Further, Defendant respectfully refers the Court to the testimony cited wherein Ms. Lake-Ewald explains that she "misspoke" when she said that she "agreed to deal directly."  Ms. Lake-Ewald clarified that she "mean[t] only that [Andrew] was sending

---

[465] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 59:6-61:21) (and Exh. 10 thereto. KING 007570).

[her] the information … [b]ut when she reported back, [she] reported back to Ethel, as well as to Andrew about [her] opinions as to value." *See* Savitsky Decl. <u>Exh. 14</u> at 59:6-61:21.

308.    Ewald testified that she is not, and was not at the time she was working for the Estate, an expert in Chinese classical art.[466] Nor did OTE employ any experts in this area until in or about 2015—long after it had completed its review work for the PA and the Estate.[467]

**OBJECTION TO PARAGRAPH 308:**  Defendant objects to paragraph 308 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 308 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 308:**  Defendant disputes paragraph 308 to the extent it implies that Ms. Lake-Ewald was unqualified to perform the review.  Ms. Lake-Ewald has served as president of O'Toole-Ewald Art Associates, Inc. since 1982.  *See* Kelly Dec. Ex. 117 at 18:4-12.  In addition to performing appraisals that regularly comply with USPAP, Ms. Lake-Ewald is a member of the American Society of Appraisers and the Royal Institute of Chartered Surveyors.  *Id*. at 18:13-25.  Moreover, Ms. Lake-Ewald did not rely on her own expertise in conducting the review but relied heavily on the input of other experts in the field.  Ms. Lake-Ewald "consult[ed] a great deal on a regular basis with Robert Ellsworth," who was "the most respected authority in Chinese art … in this country."  *See id*. at 65:8-66:23; 203:11-204:2.  Ms. Lake-Ewald consulted with other experts in classical Chinese art, including Peter Rosenberg and Arnold Chang.  *Id*.

---

[466] Savitsky Decl. <u>Exh. 14</u> (6.14.19 Ewald Dep. Trans. at 46:16-47:22; 88:11-90:14) Savitsky Decl. <u>Exh. 15</u> (ELE-17: "I do not hold myself out to be an expert on Chinese paintings).

[467] Savitsky Decl. <u>Exh. 14</u> (6.14.19 Ewald Dep. Trans. at 46:16-47:22).

309.     Andrew, on the other hand, is an art consultant who is qualified to determine the authenticity of classical Chinese paintings.[468] He was a former specialist at Sotheby's in the 1990's where his responsibilities included cataloguing works and "helping them sell Chinese paintings."[469] He has also done consulting work for Chinese auction houses, such as the Chieftown Auction House in Hong Kong.[470]

**OBJECTION TO PARAGRAPH 309:**  Defendant objects to paragraph 309 on the grounds that the purported facts asserted are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 309 on the grounds that the cited testimony was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 309:**  Defendant disputes paragraph 309 to the extent it implies that AW is or has ever held himself out as an expert on the valuation of classical Chinese paintings.  AW is a specialist concerning the authenticity of classical Chinese paintings.  *See* Kelly Dec. Ex. 109 at 28:21-29:5; Savitsky Decl. Exh. 5 at 521:2-26 (AW explaining the difference between an "expert," and "specialist," with the latter only "mean[ing] that you can tell painting, where it come from, what year it was produced and by what artist, and what style, where he learned from.").  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

310.     Andrew works as Chinese art specialist in China, Hong Kong, and the United States.[471] He testified in 2017 (at the trial to resolve the validity of the 2003 Fraudulent Will) that almost everyone involved in the field of Chinese classical art knows of him.[472]

**OBJECTION TO PARAGRAPH 310:**  Defendant objects to paragraph 310 on the grounds that the purported facts asserted therein are not relevant or material to any issue

---

[468] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 25:10-31:20).

[469] Savitsky Decl. Exh. 24 (AW 2013 Dep. Trans. at 60:3-62:9).

[470] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 30:17-31:20).

[471] Savitsky Decl. Exh. 5 (Prob. Trial Trans. at 521:2-26).

[472] Savitsky Decl. Exh. 5 (Prob. Trial Trans. at 522:2-522:16.)

before the Court.  Defendant further objects to paragraph 310 to the extent it advances

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 310**:  Defendant disputes paragraph 310 to the extent it

implies that AW's notoriety derived primarily from his professional work in the art field.

AW's notoriety in the Chinese art world arose from his association with his grandfather,

C.C. Wang.  *See* Savitsky Decl. Exh. 5 at 522:2-7 ("I don't think I was famous, you

know.  I was popular and people know [of me] because of my family background.").

Defendant respectfully refers the Court to the testimony cited for its full context and

meaning.

311.    In fact, a Chinese art periodical, 99 Art News, named Andrew Wang the "46th
Most Influential Figure in the Chinese Art World" in 2015.[473]

**OBJECTION TO PARAGRAPH 311**:  Defendant objects to paragraph 311 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  In addition, the evidence cited constitutes hearsay under F.R.E. Rule

801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every

statement be supported by "citation to evidence which would be admissible, set forth as

required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 311**:  Undisputed.

312.    Every auction season, Chinese auction house owners invite Andrew to attend their
auction and give him a hotel room to stay in for free.[474]

**OBJECTION TO PARAGRAPH 312**:  Defendant objects to paragraph 312 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

---

[473] Savitsky Decl. Exh. 5 (Prob. Trial Trans. at 522:17-523:9)
[474] Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 38:9-39:19).

**RESPONSE TO PARAGRAPH 312:** Disputed.  Defendant disputes paragraph 312 to the extent it implies the asserted facts were true at any time relevant to the sales of the 98 Paintings.  The testimony cited does not support that proposition.  *See* Savitsky Decl. Exh 24 at 38:9-39:19.

313.     In addition to providing consultations regarding the authenticity of Chinese paintings, Andrew has his own collection of classical Chinese paintings.[475] Andrew claims he currently owns somewhere between five and fifty pieces of classical Chinese art.[476]

**OBJECTION TO PARAGRAPH 313:**  Defendant objects to paragraph 313 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 313 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, Defendant objects to paragraph 313 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 313:**  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

314.     And though he does not think he has auctioned more than 200 classical Chinese paintings, he could not remember if he has auctioned ten, fifty, or 100 paintings from his collection in the past.[477]

**OBJECTION TO PARAGRAPH 314:**  Defendant objects to paragraph 314 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 314 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[475] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 25:10)

[476] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 25:10-26:22).

[477] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 31:24-34:7).

In addition, Defendant objects to paragraph 314 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 314:**  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

315.    Some of the Chinese auction houses which Andrew recalls consigned classical Chinese paintings with are Poly Auction House, China Guardian, and Chieftown Auction House.[478]

**OBJECTION TO PARAGRAPH 315:**  Defendant objects to paragraph 315 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 315:**  Defendant respectfully refers the Court to the testimony cited for its full context and meaning.

316.    Whereas Ewald claimed she did not hold herself out to be an expert on Chinese paintings, the PA believed that Andrew did.[479] And the PA trusted Andrew as a result.[480]

**OBJECTION TO PARAGRAPH 316:**  Defendant objects to paragraph 316 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 316 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. Defendant further objects to paragraph 316 on the grounds that the testimony cited was subject to objections from AW's counsel and is not admissible at trial.

**RESPONSE TO PARAGRAPH 316:**  Disputed.  AW did not hold himself out as an "expert on Chinese paintings," and the cited testimony does not support the proposition

---

[478] Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 47:21-48:21 (Poly and China Guardian); 66:4-23 (Chieftown Auction House).

[479] Savitsky Decl. Exh. 14 (6/14/19 Ewald Dep. Trans. at 105:15-107:25) Savitsky Decl. Exh. 15 (Exhibit 21 to Ewald Dep.); PA Decl. Exh. 25 (KING 007626).

[480] PA Decl. Exh. 25 (KING 007626).

that he did. *See* Savitsky Decl. Exh. 14; Exh. 15.  AW is a specialist concerning the authenticity of classical Chinese paintings.  *See* Kelly Dec. Ex. 109 at 28:21-29:5); Savitsky Decl. Exh. 5 at 521:2-26 (AW explaining the difference between an "expert," and "specialist," with the latter only "mean[ing] that you can tell painting, where it come from, what year it was produced and by what artist, and what style, where he learned from.").  Further, the document cited does not support the broad proposition that "the PA trusted Andrew as a result."  In connection with each of the sales, the PA employed a procedure to gather information independent of AW to inform her decisions whether to approve sales of paintings.  *See, e.g.,* Kelly Dec. Ex. 31; Ex. 108 at 28:23-30:8.

317.    In an email to Schram and Ewald concerning the selection of certain works for auction at Sotheby's in 2006, the PA wrote that she relied on Andrew's judgment as an "expert" and as her "co-fiduciary."[481]

**OBJECTION TO PARAGRAPH 317:**  Defendant objects to paragraph 317 on the grounds that the purported facts asserted are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 317 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, defendant objects on the grounds that the facts asserted are not supported by the evidence cited.

**RESPONSE TO PARAGRAPH 317:**  Disputed.  AW did not recommend auctioning a "selection of certain works."  AW and the PA agreed to submit all classical Chinese paintings in the Estate's possession for auction.  AW Dec. at ¶ 11.  Defendant further disputes paragraph 317 to the extent it implies AW held himself out as a general "expert" in Chinese classical art.  AW did not make any recommendations to the PA as an expert

---

[481] PA Decl. Exh. 25 (KING 007626).

in the sale or valuation of classical Chinese art.  AW Dec. at ¶ 14.  Given AW's

experience as a specialist at Sotheby's, his consulting work, and knowledge he acquired

as C.C. Wang's grandson, the PA asked AW to identify and seek out private buyers in

Asia.  AW Dec. at ¶ 14.  Defendant respectfully directs the Court to the testimony cited

by Plaintiff wherein AW makes clear that he has been retained to "determine the

authenticity" of classical Chinese paintings, but "do[es]n't give accurate value estimates."

*See* Kelly Dec. Ex. [6/25/2019 AW Dep. Trans.] at 28:21-29:5; *see* Savitsky Decl. Exh. 5

at 521:2-26 (AW explaining the difference between an "expert," and "specialist," with

the latter only "mean[ing] that you can tell painting, where it come from, what year it was

produced and by what artist, and what style, where he learned from.").  Moreover, the PA

did not rely on AW in connection with her decisions to approve or disapprove any of the

private sales of artwork; rather, she employed a procedure for independent review of all

proposed sales conveyed by Defendant to the Estate.  *See, e.g.,* Kelly Dec. Ex. 108 at

28:23-30:8; 36:9-37:8; 77:17-78:4; Ex. 11 at ¶ 11; Ex. 31.

318.    For her part, Ewald acknowledged that she "very much respect[ed] [Andrew's]
judgment on Chinese painting values."[482]

**OBJECTION TO PARAGRAPH 318:**  Defendant objects to paragraph 318 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.

**RESPONSE TO PARAGRAPH 318:**  Defendant disputes any implication in paragraph

318 that Ms. Lake-Ewald deferred to AW regarding valuation issues.  Ms. Lake-Ewald

did not do so, and explicitly questioned AW's commentary on the value of artwork.  *See*

---

[482] Savitsky Decl. Exh. 65 (WANG002255).

Kelly Dec. Ex. 128.  Further, AW's comments were further qualified on their face by his informing Ms. Lake-Ewald that he "ha[d]n't paid attention to similar sales within the past years."  *Id*.

319.    Even when Ewald had a concern that certain of Andrew's prices were too low, she emphasized that she was "not challenging [his] values" and understood that Andrew had "a good inside market grasp of private dealers and private sales."[483]

**OBJECTION TO PARAGRAPH 319:**  Defendant objects to paragraph 319 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 319 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 319:**  Disputed.  The proposed sales prices conveyed by AW to the PA and Ms. Lake-Ewald were not "Andrew's prices."  The "prices" AW conveyed were offers from private buyers in Asia.  *See* Kelly Dec. Ex. 38; Ex. 39; Ex. 40; Ex. 54; Ex. 58; Ex. 65.  Further, Ms. Lake-Ewald frequently questioned and challenged the proposed prices conveyed by AW as well as AW's commentary on those proposed prices.  *See, e.g.,* Kelly Dec. Ex 128.  Further, to the extent AW provided commentary on proposed prices, such commentary was qualified by his informing Ms. Lake-Ewald that he had not followed all of the relevant auctions and his advising her to Ms. Lake-Ewald that she consult with independent third parties other than himself regarding proposed prices, including any about which she had a concern.  *See* Kelly Dec. Ex. 44; Ex. 95; Ex. 96; Ex. 128.

320.    In dealing with Andrew, Ewald believed Andrew was trying "to get the best deal" he could for the Estate's paintings.[484]  Indeed, prior to the Estate's very first sale, Klein had instructed Andrew that he needed to "receive the best price for the art" which the Estate was

---

[483] Savitsky Decl. <u>Exh. 65</u> (WANG002255).

[484] Savitsky Decl. <u>Exh. 65</u> (WANG002255).

selling and thus needed to "[g]et the best offer you can from your clients" before presenting those proposed sales to the PA to "try and convince [her] . . . that the price you are getting is the best."[485]

**OBJECTION TO PARAGRAPH 320:**  Defendant objects to paragraph 320 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 320 to the extent it advances legal conclusions and argument rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 320:**  Disputed.  Ms. Lake-Ewald's "belie[f]s" regarding AW were irrelevant to her review of the proposed prices.  AW at all times sought to obtain fair, reasonable, and appropriate prices in connection with the sale of Estate paintings, as directed by the PA.  AW Dec. at ¶ 21.  AW and the PA sought to sell the 98 Paintings through a public auction at Sotheby's.  AW Dec. at ¶ 11.  When Sotheby's refused to accept the entire group of classical paintings in the Estate's possession for auction, Sotheby's recommended that the Estate pursue private sales in Asia.  AW Dec. at ¶ 11.  To that end, he negotiated with buyers and brokered sales of Estate paintings for prices that were higher, amounts up to 50% more than prior appraised prices, and conveyed the prices he solicited from the buyers to the PA for its independent review.  *See* Kelly Dec. Ex. Ex. 11 at ¶ 11; Ex. 32; Ex. 33; Ex. 34; Ex. 35; Ex. 36; Ex. 37; Ex. 38; Ex. 39; Ex. 40; Ex. 41; Ex. 108 at 68:10-69:21.  AW negotiated to the best of his ability, and as directed by the PA, to secure fair offers based on the baseline 20% benchmark above the Sotheby's Appraisal value established by the PA and current market conditions.  AW Dec. at ¶ 21.

---

[485] Savitsky Decl. Exh. 32 (WANG001890).

321.    Andrew acknowledged this responsibility throughout the entire five-year sales process.[486] He told Ewald in May 2008 he understood his "purpose" was "to achieve an ideal price for the Estate."[487]

**OBJECTION TO PARAGRAPH 321:**  Defendant objects to paragraph 321 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 321:**  Disputed.  Defendant did not state that he understood "his 'purpose' was 'to achieve an ideal price for the Estate.'"  *See* Savitsky Decl. Exh. 65.  AW stated he, Ms. Lake-Ewald, and the PA were "working for the same purpose[.]"  *See* Savitsky Decl. Exh. 65.

## V.    May 2005: The Kings' and Wangs' Failed Settlement Attempt in Shanghai China.

322.    At the same time the Co-fiduciaries were selling the Estate's classical Chinese paintings, Yien-Koo King and the Wang Defendants continued to litigate the merits of the will contest in the Surrogate's Court.[488]

**OBJECTION TO PARAGRAPH 322:**  Defendant objects to paragraph 322 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 322 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 323:**  Undisputed.

323.    In the spring of 2005, after two years of litigation, the Wang Defendants and Yien-Koo agreed upon an outline to resolve all outstanding litigation.[489]

---

[486] Savitsky Decl. Exh. 32 (WANG001890 (December 2004 email between Andrew and Klein regarding the objectives of the Estate's sales); Savitsky Decl. Exh. 65 (WANG002255 (May 2008 email between Andrew and Ewald regarding the objectives of the Estate's sales)).

[487] Savitsky Decl. Exh. 32 (WANG001890 (December 2004 email between Andrew and Klein regarding the objectives of the Estate's sales); Savitsky Decl. Exh. 65 (WANG002255 (May 2008 email between Andrew and Ewald regarding the objectives of the Estate's sales)).

[488] YK Decl. at ¶23.

[489] YK Decl. at ¶23.

**OBJECTION TO PARAGRAPH 323:**  Defendant objects to paragraph 323 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 323 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. In addition, paragraph 323 is inadmissible under F.R.E. Rule 408 as it relates to conduct and statements made during compromise negotiations.  Thus, paragraph 323 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 323 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 323:**  Disputed to the extent the document cited does not support a proposition about any "agree[ment]."

324.    To settle all existing litigation, Yien-Koo maintains that the agreed-upon arrangement was that she would deliver 46 paintings over to Andrew, as Estate fiduciary, in return for Andrew and Shou-Kung's delivery of five paintings to Yien-Koo.[490]

**OBJECTION TO PARAGRAPH 324:**  Defendant objects to paragraph 324 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  In addition, paragraph 324 is inadmissible under F.R.E. Rule 408 as it relates to conduct and statement made during compromise negotiations.  Defendant further objects to paragraph 324 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 324 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

---

[490] YK Decl. at ¶24.

**RESPONSE TO PARAGRAPH 324:**  Disputed to the extent the cited document does not support the proposition that both sides agreed to the "arrangement" as described above.

325.    Because many of the paintings were already located overseas, the parties agreed to meet in Shanghai, China to effectuate the exchange (referred to by the parties as the "Shanghai Exchange").[491]

**OBJECTION TO PARAGRAPH 325:**  Defendant objects to paragraph 325 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 325 to the extent it advances legal conclusions arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 325 is inadmissible under F.R.E. Rule 408 as it relates to conduct and statements made during compromise negotiations.  Thus, paragraph 325 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).  Defendant further objects to paragraph 325 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 325:**  Disputed.  The exchange, as described by Plaintiff, did not occur.  The Kings delivered to AW only 15 of the 46 paintings they represented would be delivered to the Estate.  *See* Kelly Dec. Ex. 102 at KING-SCT-000002882-883; Ex. 124.

326.    During a meeting at the Jinan Hotel on May 11, 2005, the exchange occurred.[492]

**OBJECTION TO PARAGRAPH 326:**  Defendant objects to paragraph 326 on the grounds that the purported facts asserted are not relevant or material to any issue before

---

[491] YK Decl. at ¶25.

[492] YK Decl. at ¶26.

the Court.  Defendant further objects to paragraph 326 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 326 is inadmissible under F.R.E. Rule 408 as it relates to conduct and statements made during compromise negotiations.  Thus, paragraph 326 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 326 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 326:**  Disputed for the same reasons explained in response to paragraph 325 above.

327.    Yien-Koo has testified that she and her husband (with the help of their son Raymond) delivered forty-six (46) rare and valuable classical Chinese paintings to Andrew in his capacity as the Estate's preliminary executor.[493]

**OBJECTION TO PARAGRAPH 327:**  Defendant objects to paragraph 327 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 327 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 327 is inadmissible under F.R.E. 408 as it relates to conduct and statements made during compromise negotiations.  Thus, paragraph 327 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 327 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

---

[493] YK Decl. at ¶27.

**RESPONSE TO PARAGRAPH 327:**  Defendant does not dispute the assertion that YK has testified to the facts asserted in paragraph 327.  Defendant disputes the substance of that testimony.  The "Shanghai Exchange" did not occur as represented by YK.  Rather, the Kings delivered only 15 of the 46 paintings promised to the Estate.  *See* Kelly Dec. Ex. 102 at KING-SCT-000002882-883 (noting that Yien-Koo brought only 15 paintings to the Shanghai Exchange instead of the 46 paintings as agreed); (ii) YK <u>Decl. Exh. 2</u> at ¶¶ 42-46 (same); and (iii) Kelly Dec. Ex. 123 at ¶ 7 (noting that "[t]he parties' accounts of the Shanghai Exchange … differ significantly and on the most fundamental level," in that AW "claims that he brought only one painting to the Shanghai Exchange and that he received only 15 of the 46 paintings that YK promised to deliver.").

328.     According to Yien-Koo's testimony, Andrew inspected and individually signed-for the scrolled paintings over three hours, placed all 46 in a suitcase and a nylon bag, and took everything back home to his apartment in Shanghai.[494]

**OBJECTION TO PARAGRAPH 328:**  Defendant objects to paragraph 328 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 328 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  In addition, paragraph 328 is inadmissible under F.R.E. Rule 408 as it relates to conduct and statements made during compromise negotiations.  Thus, paragraph 328 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 328 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

---

[494]  YK Decl. at ¶¶27-28.

**RESPONSE TO PARAGRAPH 328**:  Disputed for the same reasons explained in response to paragraph 327.

329.    An excerpt from the document which was, indisputably, initialed 46 times by Andrew and signed by him appears below:[495]

| # | KK# | SK# | Artist (Chinese) | Desc (Chinese) | Artist | Description | Initial |
|---|------|------|------------------|----------------|--------|-------------|---------|
| 1 | A 02C4/S | D4024 | 无款（元） | 晚渡图纲本团扇 | Anonymous | Evening Ferry | AW |
| 2 | H 0805/S | D4002 | 无款 宋人 | 秋瓜轴 | Anonymous | Autumn Pumpkin | AW |
| 3 | H 1010/S | A1065 | 八大山人（清） | 月鹿图轴 | Bada Shanren | Moon & Deer | AW |
| 4 | H 0302/S | A1008 | 八大山人（清） | 荷花水鸟图轴 | Bada Shanren | Small Bird and Lotus | AW |
| 5 | H 1111/S | A1010 | 程正揆（清） | 庚戌写御塞图轴 | Cheng Zhengkui | Blue Brook | AW |
| 6 | H 0203/S | A1297 | 戴文进（明） | 沧江渔隐图轴 | Dai Wenjin | Fisherman | AW |
| 7 | H 0608/S | JBG/A1309 | 丁云鹏（明） | 扫象图轴 | Ding Yunpeng (Nanyu) | Sweeping the Elephant | AW |
| 8 | D 0302/B | B2066 | 黄贤 半千（明/清） | 山水卷 | Gong Xian (Banqian) | Landscape | AW |
| 9 | H 0100/S | | 郭熙（宋） | 秋山行旅图轴 | Guo Xi | Travellers in the Autumn Mountains | AW |

**OBJECTION TO PARAGRAPH 329**:  Defendant objects to paragraph 329 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  In addition, the evidence cited is inadmissible hearsay and relates to conduct and statements made during compromise negotiations.  Thus, paragraph 329 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  In addition, paragraph 329 is inadmissible under F.R.E. Rule 408 as it relates to conduct and statements made during compromise negotiations.  Thus, paragraph 329 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 329**:  Disputed.  The document cited is not the document Defendant initialed and signed in connection with the Shanghai Exchange.  *See* Kelly Dec. Ex. 124 at ¶ 36.

---

[495] YK Decl. Exh. 2 (KING 008149).

330.    According to Yien-Koo, the Kings then took their five paintings and, after completing a final settlement task the next day, believed that Andrew would report the successful exchange and start the process of closing the litigation.[496]

**OBJECTION TO PARAGRAPH 330:**  Defendant objects to paragraph 330 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects on the grounds that paragraph 330 is inadmissible under F.R.E. Rule 408 as it relates to conduct and statements made during compromise negotiations.  Thus, paragraph 330 does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 330 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 330:**  Disputed.  The exchange of paintings by the parties described by YK in paragraph 330 was not completed and the contemplated settlement was not consummated.  *See* Kelly Dec. Ex. 102 at King-SCT-000002882-883; Ex. 124 at ¶¶ 43, 45.

331.    Yet eight months after the exchange, the settlement had failed to achieve anything. Andrew insisted that he did not receive the 46 paintings.[497]

**OBJECTION TO PARAGRAPH 331:**  Defendant objects to paragraph 331 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 331 to the extent it advances legal conclusions and arguments rather than facts as required by Local Civil Rule 56.1.

---

[496] YK Decl. at ¶¶30-31.

[497] YK Decl. at ¶¶32-33.

Defendant further objects on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 331:**  Defendant does not dispute that the attempt at settlement did not achieve anything.  Defendant disputes paragraph 331 to the extent it implies the exchange of paintings described by YK in paragraphs 325-328 occurred.  The exchange of paintings by the parties described by YK in paragraph 330 was not completed and the contemplated settlement was not consummated.  *See* Kelly Dec. Ex. 102 at King-SCT-000002882-883; Ex. 124 at ¶¶ 43, 45.

332.    When the Kings reported to the Surrogate's Court that they had been deceived, Andrew responded with a sworn submission claiming he received and was "still holding" only fifteen (15) paintings, which he specifically identified, from the list of 46.[498]

**OBJECTION TO PARAGRAPH 332:**  Defendant objects to paragraph 332 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

**RESPONSE TO PARAGRAPH 332:**  Defendant respectfully refers the Court to the declaration cited for its full context and meaning.

333.    The other 31 paintings on the signed Shanghai Exchange list, Andrew swore, were not brought to the hotel meeting by the Kings and never touched his hands.

**OBJECTION TO PARAGRAPH 333:**  Defendant objects to paragraph 333 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 333 on the grounds that it does not comply with Local Civil Rule 56.1(d)'s requirement that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

---

[498] YK Decl. Exh. 7.

**RESPONSE TO PARAGRAPH  333**:  Undisputed.

334.     Andrew claimed he only signed and initialed for all 46 paintings at the start of the meeting under duress and before receiving anything. After forcing him to preemptively sign, so Andrew testified, the Kings gave him a fraction of what they promised.[499]

**OBJECTION TO PARAGRAPH 334**:  Defendant objects to paragraph 334 on the

grounds that the purported facts asserted therein are not relevant or material to any issue

before the Court.  Defendant objects to paragraph 334 to the extent it advances legal

conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

Defendant further objects to paragraph 334 on the grounds that the sole evidence cited is

the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 334**:  Disputed.  AW did not sign or initial any

document indicating his receipt of 46 paintings.  *See* Kelly Dec. Ex. 124 at ¶¶ 3, 36.  The

document presented by Plaintiff as a purported receipt is not the document AW signed

and initialed at the Shanghai Exchange.  *See id*.  The document was manipulated by

Plaintiff.  *See id*.  AW signed a document that set forth the terms of a deal, *i.e.*, which

paintings each party would exchange.  *See id*.   AW did not "preemptively sign" any

receipt for the 46 paintings.  *See id*.

335.     One of the 31 paintings which Andrew swore in affidavits, through interrogatory responses, and during depositions that he never got was the 700-year-old masterpiece by the 14th century painter *Wu Zhen* entitled *"Wild Bamboo."*[500]  Another was a particularly famous work by *Guo Xi* known as "Travelers in the Autumn Mountains."[501]

| *Wu Zhen*: Wild Bamboo | *Guo Xi*: Travelers in Autumn Mountains |
|---|---|

---

[499] YK Decl. at ¶34.

[500] YK Decl. at ¶¶32, 38-39.

[501] YK Decl. at ¶¶38-39.



| #38 on the Shanghai Exchange List. | #9 on the Shanghai Exchange List. |

**OBJECTION TO PARAGRAPH 335:**  Defendant objects to paragraph 335 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  In addition, defendant objects on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration that fails to identify or attach any "affidavits, interrogatories or document responses."  Defendant further objects to paragraph 335 on the grounds that the unidentified screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, nor is it admissible evidence.

**RESPONSE TO PARAGRAPH 335:**  Disputed.  The document cited does not support the proposition that the images included above are images of the original and authentic paintings described.

336.     Yien-Koo, on the other hand, filed a verified petition with the Surrogate's Court in 2006 alleging that Andrew received all 46 paintings on the Shanghai Exchange list (the 2006 Removal Petition) and requesting he be removed as fiduciary for keeping them for himself, rather than turning them over to the Estate.[502]

**OBJECTION TO PARAGRAPH 336:**  Defendant objects to paragraph 336 on the grounds that the purported facts asserted are not relevant or material to any issue before

---

[502] YK Decl. at ¶32.

the Court.  Defendant further objects to paragraph 336 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 336:**  Undisputed that YK filed the 2006 Removal

Petition.

337.    Yien-Koo's petition to remove Andrew for his alleged theft of these 46 paintings has been stayed by the Surrogate's Court for fourteen (14) years.[503]

**OBJECTION TO PARAGRAPH 337:**  Defendant objects to paragraph 337 on the

grounds that the purported facts asserted are not relevant or material to any issue before

the Court.  Defendant further objects to paragraph 337 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 337:**  Disputed to the extent the declaration cited does

not support the proposition asserted.

**VI.     November 2009: Bao Wu Tang's Display of Fifteen of the Ninety-Eight Estate-Sold Classical Paintings and Three Classical Paintings Received by Andrew at the Shanghai Exchange.**

**A.     *The November 2009 Bao Wu Tang Exhibition and Its Catalogue***

338.    In November 2009, the Capital Museum of Beijing, in association with the well-known Hanhai Beijing Auction Co. Ltd., hosted a three-week long exhibition entitled "*Bao Wu Tang*—An Important Overseas Painting and Calligraphy Collection Exhibition" (the "Bao Wu Tang Exhibition").[504]

**RESPONSE TO PARAGRAPH 338:**  Undisputed.

339.    Andrew was the owner/master of the Bao Wu Tang gallery at the time of the exhibition and is currently still "doing business as Bao Wu Tang."[505]

---

[503] YK Decl. at ¶41.

[504] YK Decl. at ¶42.

[505] Savitsky Decl. Exh. 72 (KING 003159-3161 (Translation of the Bao Wu Tang Preface)); Savitsky Decl. Exh. 2 (AW and SK answer to Amended Complaint, p. 1); Savitsky Decl. Exh. 11 (AW 2019 Dep. Trans at 16:6-11).

**OBJECTION TO PARAGRAPH 339:**  Defendant objects to paragraph 339 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 339:**  Disputed.  The phonetic pronunciation of "Bao Wu Tang" in Chinese is subject to different meanings.  *See* Kelly Dec. Ex. 109 at 135:3-25.  C.C. Wang operated his "studio" under the moniker "Bao Wu Tang," in which the word "Wu" referred to a painting in his collection.  *Id*. at 135:3-137:2.  In Chinese, the name "Wu" is phonetically the same as the word for the number "five."  *Id*.  In connection with the Bao Wu Tang Exhibition, the Capital Museum, in error, used the character for the number "five" in connection with the show, rather than the character for the name "Wu."  *Id.*  Upon learning of this error, AW, at the time of the exhibition, adopted the moniker "Bao Wu Tang" – with the character for the number "five" for "Wu" – for his personal art consulting business.  *Id*. at 135:3-137:2; 139:17-19.  AW did not operate under the moniker "Bao Wu Tang" – however translated – prior to the Bao Wu Tang Exhibition.  *Id*.;  AW Dec. at ¶ 44.

340.    The exhibition kicked off with an opening dinner ceremony attended by "600 people in the [Capital Museum's] lobby hall," and Andrew himself.[506]

**OBJECTION TO PARAGRAPH 340:**  Defendant objects to paragraph 340 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.

---

[506] Savitsky Decl. Exh. 24 (AW 2013 Dep. Trans. at 311:14-312:20).

**RESPONSE TO PARAGRAPH 340:**  Undisputed that paragraph 340 accurately quotes the cited testimony.  Defendant respectfully refers the Court to the testimony cited for its complete meaning and context.

341.    A 131-page hardcover, color exhibition catalogue was published for the exhibition and contained images of the pieces that were displayed (the "BWT Catalogue").[507] Inscribed on the BWT Catalogue's cover is the English phrase "Bao Wu Tang—Magnificent Collection of Classical Chinese Paintings and Calligraphy from Abroad."[508]

**OBJECTION TO PARAGRAPH 341:**  Defendant objects to paragraph 341 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects as the evidence constitutes hearsay under F.R.E. 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 341 on the grounds that it relies upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 341:**  Disputed to the extent the documents cited do not support the proposition that there was an 131-page hardcover, color exhibition catalogue.

342.    The BWT Catalogue contains a preface attributed to Andrew and which Andrew admits he reviewed and approved prior to the catalogue's publication.[509]

**OBJECTION TO PARAGRAPH 342:**  Defendant objects to paragraph 342 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects as the evidence constitutes hearsay under F.R.E. 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that

---

[507] YK Decl. at ¶45; Savitsky Decl. Exh. 24 (AW 2013 Dep. Trans. at 477:5-11; 478:9-23).
[508] YK Decl. at ¶45.
[509] Savitsky Decl. Exh. 24 (AW 2013 Dep. Trans. at 528:20-529:2).

every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant objects to paragraph 342 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 342**:  Disputed to the extent paragraph 342 implies that AW wrote the preface.  AW "roughly" reviewed the preface prior to its publication.  *See* Kelly Dec. Ex. 112 at 527:23-529:2.

343.    As the Bao Wu Tang's master/owner back in November 2009, Andrew wrote that the Bao Wu Tang Exhibition "br[ought] together the collections of the late grandfather Wang Jiqian [C.C. Wang] and that of some of his family members." [510] He exulted "[t]he rich theme of the exhibition and brilliant content" which served to "emphasize the importance of the collection of the Wang family."[511]

**OBJECTION TO PARAGRAPH 343**:  Defendant objects to paragraph 343 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 343 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. Defendant further objects as the evidence constitutes hearsay under F.R.E. 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 343**:  Disputed.  Defendant did not write the document cited by Plaintiff.  *See* Kelly Dec. Ex. 112 at 527:23-529:2.

---

[510] Savitsky Decl. Exh. 72 (KING003160).
[511] Savitsky Decl. Exh. 72 (KING003160).

344.     Turning to himself, Andrew's preface proclaims: "as one of the heirs of the Wang family, I feel obligated to organize these important family collections" for the Chinese people.[512]

**OBJECTION TO PARAGRAPH 344:**  Defendant objects to paragraph 344 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 344 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. Defendant further objects as the evidence constitutes hearsay under F.R.E. 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 344:**  Disputed to the extent paragraph 344 implies AW was directly responsible for the exhibition.  AW's involvement in the exhibition was limited to the following: (i) referring organizers to sources for artworks to exhibit (*see* Kelly Dec. Ex. 112 at 760:7-16); (ii) reviewing and signing off on the preface to the catalogue (*see id*. at 527:23-529:2); and (iii) attending the opening dinner for the exhibition (*see* Kelly Dec. Ex. 109 at 151:2-6).

345.     Andrew allegedly wanted to provide art lovers with an opportunity for a deeper knowledge of Chinese art, but regretted his inability to organize a more complete showing:[513]

> I want to give those who love ancient Chinese calligraphy and
> painting a chance to gain a deeper understanding of the spirit of the
> national culture and artistic traditions. At the same time, for special
> reasons, I am not currently able to organize and present the entire
> family collection. This is a pity and I hope that there will be
> another opportunity to hold such exhibitions in the near future.

---

[512] Savitsky Decl. Exh. 72 (KING 003159-3161).

[513] Savitsky Decl. Exh. 72 (KING 003160).

**OBJECTION TO PARAGRAPH 345:**  Defendant objects to paragraph 345 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant objects to paragraph 345 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1. Defendant further objects as the evidence constitutes hearsay under F.R.E. 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 345:**  Disputed to the extent paragraph 345 implies AW was directly responsible for the exhibition.  AW's involvement was limited to the following: (i) referring organizers to sources for artworks to exhibit (*see* Kelly Dec. Ex. 112 at 760:7-16); (ii) reviewing and signing off on the preface to the catalogue (*see id*. at 527:23-529:2); and (iii) attending the opening dinner for the exhibition (*see* Kelly Dec. Ex. 109 at 151:2-6).

346.    In addition to writing a preface, Andrew spoke on stage at the exhibition opening ceremony:[514]

---

[514] YK Decl. at ¶44, <u>Exh. 4</u>.



**OBJECTION TO PARAGRAPH 346:**  Defendant objects to paragraph 346 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects on the grounds that the evidence cited constitutes hearsay under F.R.E. Rule 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Defendant further objects to paragraph 346 on the grounds that the unidentified screenshot above is not a "statement" as contemplated by Local Civil Rule 56.1, and constitutes, among other things, inadmissible hearsay.  Defendant further objects to paragraph 346 on the grounds that it relies upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 346:**  Defendant respectfully refers the Court to the documents cited.

347.     The Bao Wu Tang Exhibition displayed approximately 30 classical Chinese paintings.[515]

**OBJECTION TO PARAGRAPH 347:**  Defendant objects to paragraph 347 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 347 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 347:**  Disputed to the extent paragraph 347 implies that the artworks on display were original, authentic paintings from the collection of C.C. Wang.  Neither the attached declaration, nor any other cited evidence, establishes that the artworks were authentic artworks as opposed to reproductions.  *See* YK Decl. ¶ 46.  C.C. Wang, and Plaintiff, authorized and profited from the manufacture and distribution of unknown thousands of reproductions of classical artworks from C.C.'s collection for decades.  *See* Kelly Dec. Ex. 106 at 26:2-43:14; 74:25-78:9; 84:22-87:6; 87:22-88:12; Kelly Dec. Ex. 104.  At least two artworks displayed are known to be reproductions.  *See* Kelly Dec. Ex. 109 at 49:3-21; Ex. 112 at 578:23-579:17.  AW did not authenticate the artworks in the exhibition.  Further, Arnold Chang, the Sotheby's appraiser and former student of C.C. Wang testified that it is impossible to confirm with confidence that the artwork on display at the exhibition were in fact authentic paintings from C.C. Wang's collection, as opposed to reproductions based on either photographs or video, and that in-person, physical examination of the artwork would be required to do so.  *See* Kelly Dec. Ex. 107 at 49:17-50:16; 155:17-156:13; 166:21-168:11; 178:15-179:11; 210:4-211:3.

---

[515] YK Decl. ¶46.

Plaintiff has acknowledged that it impossible to confirm the authenticity of the artworks displayed in the Bao Wu Tang exhibition without looking at the artworks in-person.  *See* Kelly Dec. Ex. 126; Ex. 127.  Other witnesses, including Professor Alfreda Murck from Columbia University, similarly testified that she is unable to determine whether the artworks displayed at the Bao Wu Tang Exhibition were original, authentic artworks from the collection of C.C. Wang based solely on pictures in an exhibition catalog or video purporting to be from the exhibition.  *See* Kelly Dec. Ex. 103 at 22:16-23:20.

348.    Fifteen (15) of these were paintings which had been sold by the Estate pursuant to its contracts with Wei Zheng, Chen Mei-Lin, Anthony Chou, Yong Qing-Ye, and Yue Da-Jin.[516]

**OBJECTION TO PARAGRAPH 348:**  Defendant objects to paragraph 348 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 348 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 348:**  Disputed.  Plaintiff's bare, conclusory declaration is insufficient to establish that the artworks referred to were in fact displayed in the Bao Wu Tang Exhibition or that the artworks displayed were authentic, original artworks from the collection of C.C. Wang.  Defendant respectfully directs the Court to his response to paragraph 347 for facts regarding the impossibility of authenticating what was displayed at the Bao Wu Tang Exhibition.

349.    Another three (3) were paintings which Yien-King claimed she had delivered to Andrew at the Shanghai Exchange in May 2005.[517] One of these three paintings was titled

---

[516] YK Decl. ¶46.

[517] YK Decl. ¶47.

"Travelers in the Autumn Mountains" by the artist Guo Xi.[518]  Another was titled "Wild Bamboo" by *Wu Zhen*.[519]

**OBJECTION TO PARAGRAPH 349:**  Defendant objects to paragraph 349 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 349 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 349:**  Disputed.  Plaintiff's bare, conclusory declaration is insufficient to establish that the artworks referred to were in fact displayed in the Bao Wu Tang Exhibition or that the artworks displayed were authentic, original artworks from the collection of C.C. Wang.  Defendant respectfully directs the Court to his response to paragraph 347 for facts regarding the impossibility of authenticating what was displayed at the Bao Wu Tang Exhibition.  Further, Plaintiff did not deliver the identified paintings.  AW did not receive either of the artworks identified in paragraph 349 at the Shanghai Exchange.  *See* Kelly Dec. Ex. Ex. 102 at King-SCT-000002882-883; Ex. 124 at ¶¶ 43, 45.  The version of Guo Xi's "Travelers in the Autumn Mountains" exhibited at the Bao Wu Tang Exhibition was a reproduction.  *See* Kelly Dec. Ex. 112 at 578:23-579:17.

350.    Though the *Guo Xi* and the *Wu Zhen* were displayed at the Bao Wu Tang Exhibition, Andrew had previously denied receiving either of these two works.[520]

**OBJECTION TO PARAGRAPH 350:**  Defendant objects to paragraph 350 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  Defendant further objects to paragraph 350 to the extent it advances

---

[518] YK Decl. ¶47.

[519] YK Decl. ¶47.

[520] YK Decl. ¶¶34-35; Exh. 7 at ¶45.

legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

Defendant further objects to paragraph 350 on the grounds that it relies upon the

inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 350:**  Disputed.  The version of Guo Xi's "Travelers in

the Autumn Mountains" exhibited at the Bao Wu Tang Exhibition was a reproduction.

*See* Kelly Dec Ex. 112 at 578:23-579:17.  Plaintiff's bare, conclusory declaration is

insufficient to establish that the artworks referred to were in fact displayed in the Bao Wu

Tang Exhibition or that the artworks displayed were authentic, original artworks from the

collection of C.C. Wang.  Defendant respectfully directs the Court to his response to

paragraph 347 for facts regarding the impossibility of authenticating what was displayed

at the Bao Wu Tang Exhibition.

351.    Below is an image of the *Guo Xi* as it hung on display at the 2009 Bao Wu Tang
Exhibition in Beijing, followed by photograph of its placard:[521]

---

[521] YK Decl. at ¶48; Exh. 5.





**OBJECTION TO PARAGRAPH 351:** Defendant objects to paragraph 351 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court. In addition, the evidence cited constitutes inadmissible evidence under F.R.E. Rule 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Further, the document cited contains no

indication of its author or its source and cannot be authenticated at trial under F.R.E. Rule 901. Defendant further objects to paragraph 351 on the grounds that it relies upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 351:** Disputed. The unidentified, unsourced photograph cited and declaration do not support the proposition that what is in the photograph is "an image of the *Guo Xi* as it hung on display at the 2009 Bao Wu Tang Exhibition in Beijing, followed by photograph of its placard," and provide no basis for any conclusion as to what was displayed at the Bao Wu Tang Exhibition. *See* YK Decl. at ¶ 48, Exh. 5. Defendant further disputes paragraph 351 to the extent it contains an assertion that the photograph is of an authentic, original artwork; that the artwork photographed was ever in the collection of C.C. Wang; or that the physical artwork photographed was ever sold by the Estate. Those facts are not supported by the evidence cited. Defendant respectfully directs the Court to his response to paragraph 347 for facts regarding the impossibility of authenticating what was displayed at the Bao Wu Tang Exhibition.

352.    Below is a photograph of the *Wu Zhen*, "Wild Bamboo" as it hung on display at the 2009 Bao Wu Tang Exhibition:[522]

---

[522] YK Decl. at ¶48; Exh. 5.



**OBJECTION TO PARAGRAPH 352:**  Defendant objects to paragraph 352 on the grounds that the purported facts asserted therein are not relevant or material to any issue before the Court.  In addition, the evidence cited constitutes inadmissible evidence under F.R.E. Rule 801 and thus, does not comply with Local Civil Rule 56.1(d), which requires that every statement be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Further, the document cited contains no indication of its author or its source and cannot be authenticated at trial under F.R.E. Rule 901.  Defendant further objects to paragraph 352 on the grounds that it relies upon the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 352:**  Disputed.  The photographs cited lack any indicia of source, or of who took them, or of when they were taken.  Neither the photographs nor the declaration therefore support the proposition that what is in the

photograph is "an image of the *Guo Xi* as it hung on display at the 2009 Bao Wu Tang Exhibition in Beijing, followed by photograph of its placard," and provide no basis for any conclusion as to what was displayed at the Bao Wu Tang Exhibition.  Defendant further disputes paragraph 352 to the extent it contains an assertion that the photograph is of an authentic, original artwork; that the artwork photographed was ever in the collection of C.C. Wang; or that the physical artwork photographed was ever sold by the Estate. Those facts are not supported by the evidence cited.  Defendant respectfully directs the Court to his response to paragraph 347 for facts regarding the impossibility of authenticating what was displayed at the Bao Wu Tang Exhibition.

### B. *Yien-Koo's March 8, 2010 Motion to Supplement the Removal Petition and Due Diligence in Seeking Information Related to the Estate's Sales*

353.    On March 8, 2010 Yien-Koo filed a motion in the Surrogate's Court seeking leave to supplement the 2006 Removal Petition, which sought Andrew's removal as the Estate's preliminary executor for denying that he received all 46 paintings at the Shanghai Exchange and keeping them for himself.[523]

**OBJECTION TO PARAGRAPH 353:**  Defendant objects to paragraph 353 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 353:**  Defendant respectfully refers the Court to the 2006 Removal Petition referenced in paragraph 353 for their full context and meaning.

*See* Kelly Dec. Ex. 113.

354.    Based upon her attendance at the Bao Wu Tang Exhibition, Yien-Koo requested the Court's permission to include allegations that Andrew had displayed paintings that he denied receiving in the Shanghai Exchange—such as the *Guo Xi*—at his 2009 Bao Wu Tang Exhibition.[524]

---

[523] YK Decl. at ¶49.

[524] YK Decl. at ¶¶50-52.

**OBJECTION TO PARAGRAPH 354:**  Defendant objects to paragraph 354 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 354:**  Defendant respectfully refers the Court to the motion and affidavit referenced in paragraph 354 for their full context and meaning.  *See* Kelly Dec. Ex. 113.

355.    By March 8, 2010, Yien-Koo was still unaware of the circumstances surrounding the Estate's six private sales, or even if sales had actually occurred.[525]

**OBJECTION TO PARAGRAPH 355:**  Defendant objects to paragraph 355 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 355 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 355:**  Disputed.  YK was aware of many of the circumstances surrounding the Estate's private sales and was aware that artworks from the Estate had been sold and were circulating in the world prior to March 8, 2010.  *See* Kelly Dec. Ex. 29 at M&S_00000023; Ex. 77 at ¶¶ 8-9.   YK was made aware of facts concerning the sales of Estate paintings beginning in 2005 and was aware that Estate paintings had been sold by, at the latest, November 2009.  *See* Kelly Dec. Ex. 31; Ex. 77 at ¶¶ 8-9.  Defendant respectfully directs the Court to his response to paragraph 54 for facts regarding YK's knowledge of the circumstances of the Estate's private sales of artworks.

356.    Specifically, it still had not been disclosed to her:  (i) which or how many of the Estate's paintings were sold; (ii) at what price they were sold;  (iii) to whom they were sold, or (iv) when they were sold.[526]

---

[525] YK Decl. ¶¶52, 56.
[526] YK Decl. ¶¶52, 56.

**OBJECTION TO PARAGRAPH 356:**  Defendant objects to paragraph 356 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 356 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 356:**  Disputed.  YK was aware of many of the circumstances surrounding the Estate's private sales and was aware that artworks from the Estate had been sold and were circulating in the world.  *See* Kelly Dec. Ex. 29 at M&S_00000023; Ex. 77 at ¶¶ 8-9.  YK was made aware of facts concerning the sales of Estate paintings beginning in 2005 and was aware that Estate paintings had been sold by, at the latest, November 2009.  *See* Kelly Dec. Ex. 31; Ex. 77 at ¶¶ 8-9.  Defendant respectfully directs the Court to his response to paragraph 54 for facts regarding YK's knowledge and discovery of the circumstances of the Estate's private sales of artworks.

357.     Accordingly, Yien-Koo's motion to amend her 2006 Removal Petition contained no allegations that Andrew had sold paintings to himself.[527]

**OBJECTION TO PARAGRAPH 357:**  Defendant objects to paragraph 357 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant objects to paragraph 357 on the grounds that the sole evidence cited is the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 357:**  Disputed.  The motion to amend the 2006 Removal Petition and accompanying affidavit alleged that "Andrew Wang is in possession and control of the artworks displayed by the Beijing Capital Museum."  *See* Kelly Dec. Ex. 113 at AWSK_00007216, ¶ 12.  Those artworks include, as Plaintiff has

---

[527] YK Decl. ¶56.

claimed, artworks that were among the 98 Paintings.  The motion further alleges self-

dealing by AW in connection with the painting by the artist Guo Xi, which the Kings

claim was provided to AW in the Shanghai Exchange and exhibited at the Bao Wu Tang

Exhibition.  *See* Kelly Dec. Ex. 113 at AWSK_00007214, ¶ 9.

358.     Yien-Koo continued to seek information from the Co-fiduciaries related the
Estate's sales, but was refused access to any information about the Estate's financial condition or
sales.[528]

> **OBJECTION TO PARAGRAPH 358:**  Defendant objects to paragraph 358 to the
>
> extent it advances legal conclusions and arguments rather than facts, as required by Local
>
> Civil Rule 56.1.  Defendant objects to paragraph 358 on the grounds that the sole
>
> evidence cited is the inadmissible and unreliable YK Declaration.

> **RESPONSE TO PARAGRAPH 358:**  Disputed.  YK was provided general information
>
> regarding the financial condition of the Estate and was made aware that the Estate was
>
> engaged in sales of classical Chinese paintings.  *See* Kelly Dec. Ex. 108 at 33:4-34:5.
>
> YK's attorneys were also provided access to the Estate's tax returns.  *See* Kelly Dec. Ex.
>
> 29 at M&S_00000016.  YK was also made aware of the process by which the private
>
> sales were taking place.  *See* Kelly Dec. Ex. 31.

359.     On December 18, 2010, counsel for the PA, Schram, responded to Yien-Koo's
written request for more information related to the Estate's sale by noting that the New York
Surrogate determined an accounting of the Estate's sales to be premature, and flatly refusing to
provide the requested information.[529]

> **OBJECTION TO PARAGRAPH 359:**  Defendant objects to paragraph 359 to the
>
> extent it advances legal conclusions and arguments rather than facts, as required by Local

---

[528] YK Decl. ¶56.

[529] YK Decl. <u>Exh. 6</u> (KING7 - 001018-1019).

Civil Rule 56.1.  Defendant objects to paragraph 359 on the grounds that it relies upon

the inadmissible and unreliable YK Declaration.

**RESPONSE TO PARAGRAPH 359**:  Defendant disputes paragraph 359 to the extent it

implies YK was not in possession of relevant information concerning the sales and the

financial condition of the Estate.  Defendant respectfully directs the Court to his response

to paragraph 54 above.

360.    Schram, speaking on behalf of the PA, further remarked that, in any event, Yien-Koo had no standing to view the Estate's sales records because she had been disinherited by the terms of the 2003 Fraudulent Will (which had not yet been exposed as fraudulent): [530]

> Your letter addresses me as the "Public Administrator".  Please note for future correspondence that my firm is the attorney for the Public Administrator in the proceedings relating to the above estate.
>
> Essentially, you are requesting that the Public Administrator now account to your clients so that you may determine whether any item was "wrongfully sold" from estate inventory.  We have  discussed, most recently before Surrogate Glen, the Public Administration's belief that such an accounting is premature, as your clients have no interest in the estate under the will currently offered for probate.  At the conference, Surrogate Glen did not appear to view this position as unreasonable.

**RESPONSE TO PARAGRAPH 360**:  Defendant respectfully refers the Court to the

document cited for its full context and meaning.

361.    Yien-Koo did not receive documentation from the Co-fiduciaries concerning the sales—which identify which of the Estate's paintings had been sold, to whom they had been sold, or for how much they had been sold—until sometime in or around 2013.[531]

**OBJECTION TO PARAGRAPH 361**:  Defendant objects to paragraph 361 to the

extent it advances legal conclusions and arguments rather than facts, as required by Local

Civil Rule 56.1.  Defendant objects to paragraph 361 on the grounds that the sole

evidence cited is the inadmissible and unreliable YK Declaration.

---

[530] YK Decl. Exh. 6 (KING7 - 001018-1019).

[531] YK Decl. at ¶57.

**RESPONSE TO PARAGRAPH 361:**  Defendant disputes paragraph 361 to the extent it implies YK was not in possession of relevant information or lacked sufficient knowledge to commence a litigation concerning the 98 Paintings.  Defendant respectfully directs the Court to his response to paragraph 54 above.

## VII.   It Cannot Be Genuinely Disputed That the Estate Suffered Damages as a Result of Andrew Wang's Admitted Failure to Negotiate Prices with Any of the Five Purported Buyers.

362.   The Plaintiff's expert witness, Patrick Regan, issued a report on October 11, 2019 (the "Regan Report") that included two separate appraisals and various other substantive opinions.[532]

**RESPONSE TO PARAGRAPH 362:**  Undisputed.

363.   One of the appraisals included in the Regan Report was a 40-page "Retail Value Appraisal" (the "RV Appraisal") retroactively valuing the fourteen paintings sold in August 2009 under the Estate's contract with "Mr. Yue Da-Jin," as of the approximate date of that sale.[533]

**RESPONSE TO PARAGRAPH 363:**  Undisputed.

364.   The Estate sold 14 paintings pursuant to the Estate's contract with "Yue Da-Jin" for a total price of $484,920.00 (exclusive of shipping costs).[534]

**RESPONSE TO PARAGRAPH 364:**  Undisputed.

365.   According to Mr. Regan, the combined Retail Value of these 14 paintings in August 2009 was actually $1,978,000.00.[535]

**RESPONSE TO PARAGRAPH 365:**  Undisputed to the extent that paragraph 365 accurately conveys Mr. Regan's opinion.

366.   The Wang Defendants' lone expert, Kenneth Jay Linsner, has not provided any counter-appraisal or counter-valuation of the 14 works as of 2009.[536]

---

[532] Declaration of Patrick Regan, dated February 13, 2020 ("Regan Decl.")

[533] Regan Decl. Exh. 2.

[534] Savitsky Decl. Exh. 68 (WANG00536).

[535] Regan Decl. at ¶6.

[536] Savitsky Decl. Exh. 75 (Linsner Dep. Trans. at 124:16-125:11).

**RESPONSE TO PARAGRAPH 366:**  Disputed.  Mr. Linsner opined that the prices realized by the Estate for the sale of the 98 Paintings, including the 14 paintings sold to Yue Da-Jin, were reasonable.  *See* Kelly Dec. Ex. 105 at ¶ 44.  Mr. Linsner opined that "the process employed by the New York County Public Administrator that included independent review of the proposed prices by O'Toole-Ewald resulted in reasonable prices for the artwork[.]"  *Id*.  Mr. Linsner further opined that the Estate suffered no damages from the sale of the 98 Paintings via private sales, which include the 14 Yue Da-Jin paintings.  *Id*.

367.    In fact, Mr. Linsner has not provided his own appraisal or valuation as to any of the paintings at issue in this action:[537]

> Q: Okay. Did you conduct any appraisals of the 98 classical Chinese paintings at issue in this lawsuit?
>
> A: No.
>
> Q: Did you do any appraisals of any of the 98 paintings that Andrew Wang sold from the C.C. Wang Estate?
>
> A: No.
>
> Q: So even if you did not do a formal appraisal, did you make any efforts to value any sum or all of those 98 paintings?
>
> [Objection]
>
> A: No.

**OBJECTION TO PARAGRAPH 367:**  Defendant objects to paragraph 367 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

---

[537] Savitsky Decl. Exh. 75 (Linsner Dep. Trans. at 124:16-125:11).

**RESPONSE TO PARAGRAPH 367:**  Disputed.  Mr. Linsner opined that the Estate was not damaged by reason of the Estate's sales, *i.e.,* that the prices obtained by the Estate were reasonable.  In addition, Mr. Linsner opined that the appraisal methodology applied by Mr. Regan, and its application, and thus Mr. Regan's conclusions as to value, were flawed.  *See* Kelly Dec. Ex. 114.

368.   Mr. Linsner has, however, opined that there are "no damages" in this case:[538]

Q: In Paragraph 44, you state: "It is my opinion that the Estate suffered no damages from the sale of the 98 artworks via private sales." Correct?

A: Yes

Q: What is the basis for that opinion?

A: The basis for that opinion is that the original document upon which the sale prices were asked was performed by a leading expert in Chinese classical paintings as of the date of death, and the addition of 20% later on, which I understood took place, was sufficient to render the sale values within reason.

Q: Any other basis for that opinion?

A: No.

**RESPONSE TO PARAGRAPH 368:**  Undisputed that Mr. Linsner opined that the Estate suffered no damages by reason of the sales of the 98 Paintings.  Disputed to the extent Plaintiff implies the bases for Mr. Linsner's opinions were other than those expressed in the Linsner Report.  Defendant respectfully refers the Court to the Linsner Report at paragraphs 1-6 and 9-33 for a full description of the bases of his conclusion that the Estate suffered no damages.  *See* Kelly Dec. Ex. 105.

---

[538] Savitsky Decl. Exh. 75 (Linsner Dep. Trans. at 126:11-25).

369.    The "original document" Mr. Linsner refers to is the Sotheby's appraisal, which determined the value of C.C. Wang's assets as of the date of his death on July 3, 2003.[539]

**RESPONSE TO PARAGRAPH 369**:  Undisputed.

370.    The sale of the 14 paintings under the Estate's contract with "Yue Da-Jin" occurred in August 2009, more than six years after the effective date of the Sotheby's Appraisal.[540]

**RESPONSE TO PARAGRAPH 370**:  Undisputed.

371.    While Mr. Linsner bases his opinion that there are no damages on "the addition of 20% later on, which [he] understood took place," he is incorrect in that understanding because the sale of 14 paintings under the Estate's contract with "Yue Da Jin" were originally appraised by Sotheby's to be worth a combined $559,500.00.[541]

**OBJECTION TO PARAGRAPH 371**:  Defendant objects to paragraph 371 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 371**:  Disputed.  Mr. Linsner's opinion is not "incorrect."  Mr. Linsner opined that the prices realized by the Estate for the sale of the 98 Paintings, including the 14 paintings sold to Yue Da-Jin were reasonable.  *See* Kelly Dec. Ex. 105 at ¶ 44.  Mr. Linsner opined that "the process employed by the New York County Public Administrator that included independent review of the proposed prices by O'Toole-Ewald resulted in reasonable prices for the artwork[.]"  *Id.* at ¶ 44.  Mr. Linsner further opined that the Estate suffered no damages from the sale of the 98 Paintings via private sales, which include the 14 Yue Da-Jin paintings.  *Id.*  Defendant further disputes paragraph 371 to the extent it implies that Mr. Linsner's opinion that there are no

---

[539] Savitsky Decl. Exh. 75 (Linsner Dep. Trans. at 85:9-21; 121:20-123:20).

[540] Savitsky Decl. Exh. 68.

[541] PA Decl. Exh. 23 (indicating Sotheby's appraisal value of the 14 paintings); PA Decl. Exh. 19.

damages is based solely on the inclusion of a 20% markup on the sales of the paintings.

*Id.* at ¶¶ 1-9; 9-33.

372.    For Mr. Linsner's understanding to have been correct, the Estate would have needed to sell paintings to "Yue Da-Jin" for $671,400.00 (20% more than their value as appraised by Sotheby's).

**OBJECTION TO PARAGRAPH 372:**  Defendant objects to paragraph 372 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 372:**  Disputed.  Mr. Linsner's opinion is not "incorrect."  Mr. Linsner opined that the prices realized by the Estate for the sale of the 98 Paintings, including the 14 paintings sold to Yue Da-Jin were reasonable.  *See* Kelly Dec. Ex. 105 at ¶ 44.  Mr. Linsner opined that "the process employed by the New York County Public Administrator that included independent review of the proposed prices by O'Toole-Ewald resulted in reasonable prices for the artwork[.]"  *Id*. at ¶ 44.  Mr. Linsner further opined that the Estate suffered no damages from the sale of the 98 Paintings via private sales, which include the 14 Yue Da-Jin paintings.  *Id*.  Defendant further disputes paragraph 371 to the extent it implies that Mr. Linsner's opinion that there are no damages is based solely on the inclusion of a 20% markup on the sales of the paintings.

*Id.* at ¶¶ 1-6; 9-33.

373.    Instead, the Estate sold 14 paintings under its contract with "Yue Da Jin" for $484,920.00 exclusive of shipping, handling and insurance costs—13.3% *lower* than the Sotheby's appraisal.[542]

---

[542] Savitsky Decl. Exh. 68 (WANG00536).

**OBJECTION TO PARAGRAPH 373:**  Defendant objects to paragraph 373 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.

**RESPONSE TO PARAGRAPH 373:**  The document cited does not support the proposition that the paintings sold for 13.3% lower than the Sotheby's appraisal.  *See* Savitsky Decl. Exh. 68.

374.    Thus, the factual basis for Mr. Linsner's opinion as to why "the Estate suffered no damages" is indisputably incorrect.

**OBJECTION TO PARAGRAPH 374:**  Defendant objects to paragraph 374 to the extent it advances legal conclusions and arguments rather than facts, as required by Local Civil Rule 56.1.  Defendant further objects to paragraph 374 on the grounds that it does not comply with Local Civil Rule 56.1(d)'s requirement that every statement must be supported by "citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

**RESPONSE TO PARAGRAPH 374:**  Disputed.  Mr. Linsner's opinion as to "why the Estate suffered no damages" is not "indisputably incorrect."  The factual basis for Mr. Linsner's opinion that the Estate suffered no damages is correct.  The basis for Mr. Linsner's report and his reasoning are set forth in the Linsner Report at paragraphs 1-6 and 9-33.  *See* Kelly Dec. Ex. 105.  Defendant respectfully refers the Court to the section of Mr. Linsner's report that supports his statement that there were no damages.  *See* Kelly Dec. Ex. 105 at ¶¶ 1-9; 9-33.

## COUNTERSTATEMENT OF UNDISPUTED
## MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant Andrew

Wang ("AW") respectfully submit this Counterstatement of Undisputed Material Facts in

opposition to Plaintiff's motion for partial summary judgment.[543]

**I.      The Administration of the Estate by AW and the PA**

1.      Chi-Chuan Wang ("CC") passed away in July 2003.  (Ex. 1 at ¶ 3.)

2.      Upon CC's death, Shou-Kung Wang ("SK") submitted for probate a will dated

February 18, 2003 (the "2003 Will") in the Surrogate's Court of the State of New York (the

"Surrogate's Court").  (Ex. 1 at ¶ 4; Ex. 5.)

3.      Upon CC's death, Yien-Koo King ("YK") submitted for probate a will dated June

13, 2000 (the "2000 Will") and a codicil dated July 10, 2002 (the "2002 Codicil").  (Ex. 1 at ¶ 4;

Ex. 6.)

**A.  The Surrogate's Court Appoints AW and the PA as Co-Fiduciaries**

4.      On August 4, 2003, per the terms of the 2003 Will, the Surrogate's Court issued

Preliminary Letters Testamentary to AW that appointed AW as Preliminary Executor of CC's

estate (the "Estate").  (Ex. 7 at PA-SCT-000002202.)

5.      In the same August 4, 2003 Order, due to a dispute over the validity of the 2003

Will, the Surrogate's Court issued Letters of Temporary Administration of the Estate to Ethel

---

[543]  Defendant submits the Declaration of Thomas B. Kelly, dated April 13, 2020 ("Kelly Res. Dec.") in support of his opposition to Plaintiff's motion for partial summary judgment.  Defendant also refers to the Declaration of Thomas B. Kelly, dated February 14, 2020, Dkt. No. 202 ("Kelly Dec.") that was filed in support Defendants' motion for summary judgment.  Exhibits to the Kelly Dec. and the Kelly Res. Dec. are referred to as "Ex. __."  Exhibits attached to the Kelly Res. Dec. are numbered in continuation of those attached to the Kelly Dec., beginning with Ex. 92.  Defendant also submits the Declaration of Andrew Wang, dated April, 13, 2020 ("AW Dec.").

Griffin, Public Administrator of the County of New York (the "PA") to "jointly" administer the Estate.  (Ex. 7 at PA-SCT-000002202; Ex. 108 at 9:23-10:5.)

6.      YK and SK both consented to the PA's appointment as Temporary Administrator to serve as co-fiduciary with AW as Preliminary Executor.  (Ex. 1 at ¶ 6)

7.      The PA has served as Temporary Administrator and co-fiduciary of the Estate since 2003.  (Ex. 108 at 10:6-10.)

8.      As Temporary Administrator, the PA was empowered to take legal action on behalf of the Estate, including against its co-fiduciary, AW, and in fact did so in the Surrogate's Court.  (*See, e.g.,* Ex. 9.)

9.      The law firm of Schram, Graber & Opell, P.C., or its predecessor firm, Schram & Carew, P.C., has served as legal counsel to the PA since 2003.  (Ex. 1 at ¶ 1; Ex. 108 at 7:13-8:23.)

### B.  The PA's Effort to Marshal Estate Assets

10.     Once appointed Temporary Administrator, the PA and her attorneys attempted to marshal CC's assets, including his collection of artwork.  (Ex. 11 at ¶ 4; Ex. 108 at 20:19-21:10.)

11.     The Estate's assets consisted primarily of CC's art collection and personal creations.  (Ex. 2 at ¶ 3.)

12.     Since the outset of the Surrogate's Court proceedings, the parties have each accused the other of fraud, undue influence, and outright theft concerning hundreds of artworks from the Estate valued at millions of dollars.  (Ex. 1 at ¶ 11.)

13.     The August 4, 2003 Order specifically empowered the PA to "investigate the allegations by the various family members against each other concerning [CC's] personal artwork and his art collection."  (Ex. 1 at ¶ 6.)

14.     AW and the PA had an obligations to inventory and appraise all Estate property. (Ex. 2 at ¶ 7.)

15.     In the fall of 2003, the PA requested that the parties turn over all artwork they conceded belonged to the Estate.  (Ex. 2 at ¶ 8.)

16.     On October 21, 2003, the PA commenced a proceeding under the New York Surrogate's Court Procedure Act § 2103 against YK, Kenneth King ("KK" and together with YK, the "Kings"), SK, and AW seeking information concerning Estate assets and to recover Estate assets from the parties.  (Ex. 9.)

17.     On October 23, 2003, the Surrogate's Court issued an order restraining YK, KK, AW, SK and certain others from selling, transferring, encumbering, leasing, consigning, or otherwise disposing of artwork and other personal property belonging to the Estate, subject to disputes over ownership, or alleged to have been gifted by CC to either SK, YK, or others (the "TRO").  (Ex. 10.)

18.     AW, SK, YK and KK all consented to the TRO.  (Ex. 1 at ¶ 9.)

19.     The PA's efforts to "inventory and appraise all estate property," were "impeded by the failure of the Kings to deliver estate property to them." (Ex. 2 at ¶ 7.)

20.     As of December 2003, the Kings were "in possession of some 75 works of art which they concede[d] belong[ed] to the [E]state."  (Ex. 2. at ¶ 6.)

21.     The Kings also admitted to being in possession of 93 paintings which once belonged to CC, but for which they claimed were, at the time of CC's death, owned by either Northwich Investments Limited ("Northwich") or Soon Haut Inc. ("Soon Haut"), two offshore corporations controlled by the Kings.  (Ex. 2 at ¶ 6; Ex. 3 at ¶¶ 13-14; Ex. 7 at ¶ 12.)

22.     Among the 93 paintings possessed by Northwich and Soon Haut at the time of CC's death was the most "distinguished" painting in CC's collection:  the "Procession of the Taoist Immortals" by Wu Zhongyuan (the "Wu").  (Ex. 124 at ¶ 13.)

23.     Because of the Kings' "continued refusal to deliver to the co-fiduciaries artwork which belongs to the estate," the PA considered the Kings "'de-facto' fiduciaries" and advised the Surrogate's Court that they "should be held personally liable for any loss or destruction to the artwork and for interest and penalties imposed for the underpayment of estate taxes" resulting from their malfeasance.  (Ex. 2 at ¶ 11.)

24.     The Kings have admitted to selling—but refusing to identify—artwork subject to the TRO which they held as "de-facto fiduciaries."  (Ex. 94 at 62:19-64:17.)

25.     In early 2004, the parties turned over to the Estate approximately 133 classical Chinese artworks in their possession that were acknowledged to be Estate property.  (Ex. 11 at ¶ 7.)

26.     The full scope of the Estate's assets remains in dispute to this day.  (Ex. 106 at 192:10-22; Ex. 12.)

C.  **The PA and AW's Obligations to Pay Estate Taxes and Administration Expenses**

27.     In discharging their obligations to the Estate, AW and the PA, with their attorneys, prepared and submitted an estate tax return to the IRS on behalf of the Estate.  (Dec. Ex. 15.)

28.     In or about October 2004, the Estate filed its estate tax returns pursuant to which, net of prior payments, the Estate owed approximately $3,300,000 in federal and $1,200,000 in state taxes.  (*See* Ex. 18; Ex. 19.)

29.     In addition to these amounts owed to the IRS, the Estate faced administrative expenses, including legal fees and fees to store and insure the Estate-owned artwork and other possessions.  (Ex. 11 at ¶ 10; Ex. 108 at 20:19-21:10.)

30.     After calculating the outstanding debts and liabilities, the Estate determined it lacked liquid assets sufficient to pay the taxes owed to the IRS and to cover administration expenses.  (Ex. 11 at ¶ 10; Ex. 20; Ex. 21.)

31.     The Estate was required to liquidate assets, including artwork, to raise funds to pay the taxes owed to the IRS and to cover the other Estate expenses.  (Ex. 11 at ¶ 10; Ex. 108 at 20:19-21:10; 23:22-25:3; Ex. 109 at 77:11-79:9; 80:8-81:6; 116:4-9.)

32.     Financial pressure on the Estate increased in 2007, when the IRS issued a Notice of Deficiency to the Estate claiming an additional $22,529,000 was owed in federal estate taxes. (Ex. 23 at AWSK_00000229.)

33.     The IRS Notice of Deficiency is largely based on YK's claim, disputed by the Estate, that CC gifted her $18 million of artwork during his lifetime on which no gift taxes were ever paid.  (Ex. 23 at AWSK_00000238.)

34.     The Estate needed to sell whatever artwork it could to pay estate taxes and other administration expenses.  (Ex. 11 at ¶ 10; Ex. 108 at 23:22-25:3.)

II.     **The Sale of the Estate's Classical Chinese Artworks**

        **A.  The Sotheby's Appraisal**

35.     The Surrogate's Court's August 4, 2003 Order directed AW and the PA to retain an expert in the field of Chinese art to catalog and evaluate CC's art collection.  (Ex. 7 at PA-SCT-000002202.)

36.     YK, through her counsel, recommended that the Estate engage Sotheby's to perform an appraisal of the artwork in CC's Estate.  (Ex. 2 at PA-SCT-000002251; Ex. 24 at Rose-SCT-00007325.)

37.     YK specifically suggested Arnold Chang ("Chang") of Sotheby's to perform the appraisal of Estate artwork.  (Ex. 24 at Rose-SCT-00007325.)

38.     Chang was a long-time student of CC's who was intimately familiar with CC's art collection.  (Ex. 24 at Rose-SCT-00007325; Ex. 25 at 14:18-17:8.)

39.     The Estate and Sotheby's entered into an appraisal agreement on June 17, 2004.  (Ex. 11 at KING-SCT-000003230.)

40.     On October 1, 2004, Sotheby's issued an appraisal of 133 classical Chinese artworks owned by the Estate (the "Sotheby's Appraisal").  (Ex. 13.)

41.     The Sotheby's Appraisal was performed by Chang with the assistance of Mee-Seen Loong.  (Ex. 13 at Sotheby's 000621; Ex. 24.)

42.     In conducting the appraisal, Chang physically inspected and examined each artwork.  (Ex. 11 at ¶ 9; Ex. 25 at 55:9-56:20; Ex. 27 at 15:14-16:13; 102:22-103:10.)

43.     It is impossible to properly authenticate or appraise classical Chinese artworks based on photographs.  (Ex. 107 at 49:17-50:16; Ex. 105 at ¶ 42; Ex. 112 at 861:2-5.)

44.     The Sotheby's Appraisal assigned an aggregate appraised value—as of the date of CC's death—of $4,400,350 to the 133 classical period artworks.  (Ex. 13 at Sotheby's 000622.)

45.     The Sotheby's Appraisal was drawn at Fair Market Value for estate tax purposes.  (Ex. 13 at Sotheby's 000620-621.)

46.     The Sotheby's Appraisal was reviewed by the IRS's Art Appraisal Committee and was accepted for tax purposes pursuant to a letter from Karen E. Carolan, Chief Art Appraisal Services, to the Estate, dated February 13, 2007.  (Ex. 28.)

**B.  The Sotheby's Auction**

47.     Given the Estate's need to pay estate taxes and administration expenses, the PA and AW asked Sotheby's to auction the Estate's classical Chinese artworks.  (Ex. 11 at ¶ 10.)

48.     Sotheby's was only willing to accept 39 of the best classical artworks—as well as modern works and art objects—from the Estate's collection for auction.  (Ex. 11 at ¶ 10, 13; Ex. 13.)

49.     At the auction, only a few pieces sold for prices that "far exceeded" Sotheby's valuations set forth in the Sotheby's Appraisal, and several sold for less.  (Ex. 11 at ¶ 13.)

50.     The results of the Sotheby's auction were the "best indicator" that the Sotheby's Appraisal values were accurate and an appropriate barometer to be relied upon by the AW and the PA.  (Ex. 11 at ¶ 13.)

**C.  The Private Sales in Asia**

51.     Sotheby's advised AW and the PA that Asia was the appropriate market for the 98 works not selected for auction (the "98 Paintings").  (Ex. 11 at ¶ 11; Ex. 26 at ¶ 9.)

52.     AW and the PA then agreed that AW should attempt to find private buyers in Asia for the works that Sotheby's refused to include in its auction.  (Ex. 11 at ¶ 11; Ex. 108 at 26:14-27:20.)

53.     AW and the PA agreed upon a procedure to sell the 98 paintings which the PA felt ensured the prices AW proposed were the appropriate prices.  (Ex. 11 at ¶ 11; Ex. 108 at 77:17-78:4.)

54.     First, the PA required the proposed sales to be at least 20% higher than the Sotheby's Appraisal values, unless specific circumstances justified a lower price, to account for any upward change in the market since the date of CC's death.  (Ex. 11 at ¶ 11; Ex. 30.)

55.     Second, the PA retained an independent art appraiser—Elin Lake-Ewald ("Lake-Ewald") of O'Toole-Ewald Art Associates, Inc. ("OTE")—to review the proposed sales.  (Ex. 11 at ¶ 11; Ex. 31; Ex. 108 at 36:9-37:8; 77:17-78:4.)

56.     The PA required AW to submit to her, in writing, the terms of any proposed sale, including, "the name and address of the proposed purchaser, the appraised value of each such asset, and the purchaser's offer for each asset."  (Ex. 31.)

57.     Upon obtaining an offer for a group of artworks, AW's counsel, Martin Klein ("Klein"), conveyed the proposal to the PA's counsel, Peter Schram ("Schram"), who would send the offers to OTE and the PA.  (Ex. 11 at ¶ 11; Ex. 32; Ex. 33; Ex. 34; Ex. 35; Ex. 36; Ex. 37; Ex. 38; Ex. 39; Ex. 40; Ex. 41; Ex. 108 at 68:10-69:21.)

58.     Upon its receipt of the terms of a proposed sale, the PA sent the information to OTE, who then conducted an independent review of the proposed sale prices.  (Ex. 42; Ex. 43; Ex. 44; Ex. 45; Ex. 46; Ex. 47; Ex. 48 at 44:13-21; 46:12-15; 171:7-19; 184:10-186:6.)

59.     Following OTE's independent review, the PA consulted with OTE, and based on her consultation with OTE, decided whether to approve the proposed sales.  (Ex. 31; Ex. 108 at 28:23-30:8.)

60.     All sales of the 98 Paintings were contingent upon the PA's independent review and approval of the offers to purchase obtained and conveyed by AW.  (Ex. 11 at ¶¶ 11-12; Ex. 109 at 116:18-22.)

61.     The PA approved each of the sales of the 98 Paintings.  (Ex. 108 at 14:13-15:5.)

62.     When reviewing proposed prices, Lake-Ewald considered relevant information available at the time, including her review of:  (Ex. 26 at ¶ 16.)

- The Sotheby's Appraisal.  (Ex. 26 at ¶ 16; Ex. 48 at 65:8-66:23, 103:2-17, 186:13-187:19, 203:11-204:2.)

- Auction results for comparable works and auction records subsequent to the Sotheby's Appraisal.  (Ex. 26 at ¶ 16; Ex. 48 at 65:8-66:23, 103:2-17, 186:13-187:19, 203:11-204:2.)

- Advice and input of subject matter experts including Robert Ellsworth and Peter Rosenberg, both of whom are noted dealers/collectors of Classical Chinese artwork. (Ex. 26 at ¶ 16; Ex. 48 at 65:8-66:23, 103:2-17, 186:13-187:19, 203:11-204:2.)

- Consulted directly with Chang, who performed the Sotheby's Appraisal, and who was intimately familiar with the artworks based on his personal relationship with CC.  (Ex. 69.)

63.     AW was directed by the PA to consult with Lake-Ewald to the extent she had questions about the artworks.  (Ex. 100; Ex. 101.)

64.     AW is "specialist" with regard to classical Chinese paintings, meaning he is qualified to determine whether a painting is authentic.  (Ex. 109 at 28:21-29:5; Ex. 125 at 521:2-26.)

65.     AW is not an "expert" on the valuation of classical Chinese paintings.  (Ex. 109 at 28:21-29:5; Ex. 125 at 521:2-26.)

66.     AW facilitated Lake-Ewald's consultations with Chang.  (Ex. 96 at EWALD_00000214.)

67.     Lake-Ewald concluded that Chang's valuations were "responsive to a market that is very complex."  (Ex. 44 at EWALD_00000215.)

68.     Lake-Ewald testified that the identity of the proposed buyers was not material to her decision if proposed prices were reasonable.  (Ex. 48 at 171:20-173:14.)

69.     Lake-Ewald testified: "the price is whatever the price is that I've researched." (Ex. 48 at 173:2-14.)

70.     OTE was not responsible for determining or approving the ultimate sales price for the 98 Paintings.  (*See* Ex. 31.)

71.     Only after receipt of Lake-Ewald's opinions of the sales, were the sales approved by the PA.  (Ex. 49; Ex. 50; Ex. 51; Ex. 52; Ex. 53; Ex. 108 at 14:13-15:5.)

72.     This procedure was followed by AW and the PA for the sales of "every one" the 98 Paintings.  (Ex. 11 at ¶ 12.)

73.     The PA was aware that the sales of the 98 Paintings were being facilitated by an intermediary in China.  (*See* Ex. 109 at 76:6-79:9).

74.     Each group of artworks was shipped to the respective buyer "c/o Ms. Billie Wai, Unit #704, Forseas Building, #208-212, Nathan Road, Kowloon, Hong Kong."  (Ex. 33; Ex. 55; Ex. 59; Ex. 61; Ex. 72; AW Dec. at ¶ 34.)

75.     Artworks were delivered to Hong Kong "for the purpose of saving taxes for the buyers."  (Ex. 109 at 256:3-5; AW Dec. at ¶ 35)

76.     Billie Wai was the office manager for AW's accountant, C.K. Lam, in Hong, Kong.  (Ex. 109 at 127:14-128:9; AW Dec. at ¶ 36.)

77.     Artworks were shipped to Ms. Wai because—having been his accountant for 20 years—Ms. Wai was someone AW trusted and, accordingly, Ms. Wai's office was a reliable place AW could ship the paintings.  (Ex. 109 at 319:10-18; AW Dec. at ¶¶ 36-37.)

78.     To facilitate the buyers' payments from mainland China, AW, accepted payment at a bank account he controlled in Hong Kong, and, upon his receipt of the funds, forwarded the

payment to the Estate's bank account in the U.S.  (Ex. 109 at 18:4-12, 22:7-21, 240:20-242:21, 245:2-14, 316:20-24; AW Dec. at ¶ 32.)

79.    Transfers through Hong Kong were necessary because "the only way to … transfer the money out of China is going through a company in Hong Kong," and "Chinese citizens … cannot set up a company in Hong Kong."  (Ex. 109 at 241:20-22; 245:2-14; AW Dec. at ¶ 32.)

80.    AW testified that "If I don't set up the company, the money cannot be transferred here to the estate.  And they always ask a favor to use my company or to set up the company for the transfer."  (Ex. 109 at 242:8-21.)

81.    AW disclosed to his counsel at Brown Raysman Millstein, Felder & Steiner, LLP that when necessary the funds from the sales of the 98 Paintings were flowing from China through a Hong Kong bank account he controlled.  (Ex. 109 at 244:13-245:15)

82.    AW was not the source of funds used to purchase the 98 Paintings.  (AW Dec. at ¶ 28)

83.    AW was not the buyer of any of the 98 Paintings.  (Ex. 92 at ¶ 2; AW Dec. at ¶ 28.)

84.    AW did not acquire any ownership interest in the 98 Paintings through the sales. (Ex. 92 at ¶ 2; AW Dec. at ¶ 28.)

85.    AW did not have any personal interest in the sales of the 98 Paintings.  (Ex. 92 at ¶ 2; AW Dec. at ¶ 28.)

86.    AW did not benefit from the sales of the 98 Paintings or any subsequent sales of the 98 Paintings.  (Ex. 92 at ¶ 2; AW Dec. at ¶ 28.)

87.     In Chinese tradition, art is commonly sold via "handshake deals."  (Ex. 94 at 64:8-65:7.)

88.     It is "normal procedure" in the Chinese art world for receipts and other records of sales transactions to not be maintained.  (Ex. 94 at 64:8-65:7.)

89.     The lack of written communications and records in connection with the sales of the 98 Paintings is in accord with "normal procedure" in Chinese practice.  (Ex. 94 at 64:8-65:7.)

### D.   AW Appropriately Discharged His Duties In Connection with the Sales of the  98 Paintings

90.     Nearly all of the 98 Paintings ultimately sold for at least 20% more than the Sotheby's Appraisal value.   (*See* Ex. 33; Ex. 55; Ex. 59; Ex. 72; AW Dec. at ¶ 17.)

91.     The target price of 20% above the Sotheby's Appraisal value was approved of by Arnold Chang as a reasonable measure of fair value for the artworks.  (Ex. 44 at EWALD_00000215.)

92.     In four instances AW was able to negotiate for prices that were at least 30%—and in one case 50%—higher than the Sotheby's Appraisal value.

93.     The Sotheby's Appraisal valued OTE #83 at $20,000.  (Ex. 13 at Sotheby's 000623.)

94.     The Estate sold OTE #83 for $30,000 (50% above the Sotheby's Appraisal).  (Ex. 64 at KING 006617.)

95.     The Sotheby's Appraisal valued OTE #1000 at $30,000.  (Ex. 13 at Sotheby's 000699.)

96.     The Estate sold OTE #1000 for $39,000 (30% above the Sotheby's Appraisal). (Ex. 64 at KING 006617.)

97.     The Sotheby's Appraisal valued OTE #126 at $6,000.  (Ex. 13 at Sotheby's 000699.)

98.     The Estate sold OTE #126 for $7,800 (30% above the Sotheby's Appraisal).  (Ex. 50 at WANG000633.)

99.     The Sotheby's Appraisal valued OTE #200 at $1,600.  (Ex. 13 at Sotheby's 000671.)

100.    The Estate sold OTE #200 for $2,080 (30% above the Sotheby's Appraisal).  (Ex. 49 at WANG000622.)

101.    The 98 Paintings were sold in six private sales between 2005 and 2009.  (Ex. 49; Ex. 50; Ex. 51; Ex. 52; Ex. 53; Ex. 64.)

102.    AW presented the PA with the buyers' offers to purchase the 98 Paintings.  (Ex. 11 at ¶¶ 11-12; Ex. 32; Ex. 33; Ex. 34; Ex. 35; Ex. 36; Ex. 37; Ex. 38; Ex. 39; Ex. 40; Ex. 41; Ex. 108 at 68:10-69:21.)

103.    In connection with the sales, the offers conveyed to the PA were, on a per painting basis, regularly and routinely for 20% more than the Sotheby's Appraisal value.  (Ex. 32; Ex. 37; Ex. 38; Ex. 39; Ex. 40; Ex. 54; Ex. 58; Ex. 62; Ex. 65; AW Dec. at ¶ 17.)

104.    The PA was aware that the offers AW conveyed to the Estate were regularly at our around 20% more than the Sotheby's Appraisal values.  (Ex. 32; Ex. 37; Ex. 38; Ex. 39; Ex. 40; Ex. 54; Ex. 58; Ex. 62; Ex. 65.)

105.    The pattern of offers presented by AW made clear to the PA, and to all involved, that AW was seeking prices for the 98 Paintings at or around 20% higher than the Sotheby's Appraisal values.  (Ex. 32; Ex. 37; Ex. 38; Ex. 39; Ex. 40; Ex. 54; Ex. 58; Ex. 62; Ex. 65; AW Dec. at ¶¶ 17, 21.)

106.   Ms. Lake-Ewald was aware that AW was seeking prices at or around 20% higher than the Sotheby's Appraisal values.  (Ex. 44 at EWALD_00000215.)

107.   The PA did not object to AW seeking prices at or around 20% higher than the Sotheby's Appraisal values.  (Ex. 11 at ¶¶ 11-12; Ex. 108 at 14:13-15:5; AW Dec. at ¶ 20.)

108.   Neither the PA, nor her attorneys, expressed any concern that the pattern of offers conveyed indicated a failure by AW to discharge his fiduciary duties to the Estate.  (Ex. 11 at ¶¶ 11-12; Ex. 108 at 14:13-15:5; AW Dec. at ¶ 20.)

**E.   Sale of 14 Paintings on 08/17/2009 to Yue Da-Jin**

109.   On April 23, 2008, Klein, from his office in New York, NY faxed to Schram at his office in New York, NY, a proposal for the sale of 14 Estate-owned artworks (the "14 Paintings") by Mr. Yue Da-Jin ("YDJ") for $538,800.00.  (Ex. 40.)

110.   On May 2, 2008, Dionis Rodriguez, on Lake-Ewald's behalf, faxed Schram Lake-Ewald's opinion of proposed prices of the 14 Paintings for the sale to YDJ (the "May 2008 Report").  (Ex. 82.)

111.   In the May 2008 Report Lake-Ewald concluded that eight of the fourteen proposed prices were in line with comparable sales.  (Ex. 82.)

112.   Regarding OTE #131, Lake-Ewald concluded in the May 2008 Report that the price listed was "excellent if attainable."  (Ex. 82 at KING 007373.)

113.   Regarding OTE #219, Lake-Ewald concluded in the May 2008 Report that if the price listed was obtained it would be "well done."  (Ex. 82 at KING 007374.)

114.   Ms. Lake-Ewald commented in the May 2008 Report that:  (i) the price for OTE #90 "appear[ed] low" with the caveat that "there may be a reason for this about which we are not aware"; (ii) the price for OTE #155 seemed "reasonable, if a little low"; and (iii) the price for

OTE #201 was "slightly lower" than comparables with the caveat that it could due to "condition and desirability of image."  (Ex. 82 at KING 007373.)

115.    For OTE #225, Ms. Lake-Ewald was unable to comment on this price listed because of "some mix-up in the numbering."  (Ex. 82 at KING 007374.)

116.    On June 4, 2008, Klein emailed Schram a proposed contract and bill of sale for the 14 Paintings and asked the PA to countersign.  (Ex. 74.)

117.    The contract of sale listed YDJ's address as:  The Rui-Jing Palace, Rui-Jing Road, Nanjing City, China.  (Ex. 74 at WANG002260.)

118.    On February 26, 2009, Klein emailed Schram to inform him that the proposed sale to YDJ fell through because "the buyer wanted to negotiate lower prices."  (Ex. 75 at AWSK_00015264.)

119.    YDJ sought to re-negotiate the sale price "right after the stock market crashed." (Ex. 109 at 300:17-23; AW Dec. at ¶ 26.)

120.    The stock market crash caused "buyers [to] back away … because they['ve] lost money."  (Ex. 109 at 300:17-23.)

121.    Da-Jin sought to negotiate "a 20% discount o[n] the total sale."  (Ex. 75 at AWSK_00015264.)

122.    The PA participated, with AW, in the negotiation of the sales prices for the 14 Paintings.  (Ex. 75 at AWSK_00015264.)

123.    AW suggested to the PA that the Estate respond to YDJ with a counteroffer of a 10% discount for the 14 Paintings.  (Ex. 75 at AWSK_00015264.)

124.    The PA approved AW's suggestion to respond to YDJ's request for a 20% discount for the 14 Paintings with a counteroffer of a 10% discount for the 14 Paintings. (Ex. 75 at AWSK_00015263-264.)

125.    For the 14 Paintings, the PA approved discounts ranging from 1% to 37% (though generally 8%) of the prices previously approved.  (Ex. 40; Ex. 52 at WANG000648-649.)

126.    On August 12, 2009, the bank account for the Estate of Chi-Chuan Wang at Capital One Bank in New York, NY received a wire transfer for $489,772.00.  (Ex. 78.)

**III.    The Bao Wu Tang Exhibition**

127.    The phonetic pronunciation of "Bao Wu Tang" in Chinese is subject to different meanings.  (Ex. 109 at 135:3-25.)

128.    CC operated his "studio" under the moniker "Bao Wu Tang," in which the word "Wu" referred to a painting in his collection.  (Ex. 109 at 135:3-137:2; AW Dec. at ¶ 40.)

129.    In Chinese, the name "Wu" is phonetically the same as the word for the number "five."  (Ex. 109 at 135:3-137:2; AW Dec. at ¶ 41.)

130.    In connection with the Bao Wu Tang Exhibition, the Beijing Capital Museum, in error, used the character for the number "five" in connection with the show, rather than the character for the name "Wu."  (Ex. 109 at 135:3-137:2; AW Dec. at ¶ 42.)

131.    Upon learning of this error, Andrew, at the time of the exhibition, adopted the moniker "Bao Wu Tang" – with the character for the number "five" for "Wu" – for his personal art consulting business.  (Ex. 109 at 135:3-137:2; 139:17-19.)

132.    Andrew did not operate any business under the moniker "Bao Wu Tang" – however translated – prior to the Bao Wu Tang Exhibition.  (Ex. 109 at 135:3-137:2, 139:17-19; AW Dec. at ¶ 44.)

133.    Andrew's involvement with the Bao Wu Tang Exhibition was limited to the following:

- (i) referring organizers to sources for artworks to exhibit (Ex. 112 at 760:7-16);

- (ii) "roughly" reviewing and signing off on the preface to the Bao Wu Tang Catalogue (Ex. 112 at 527:23-529:2.); and

- (iii) attending the opening dinner.  (Ex. 109 at 151:2-6.)

134.    AW was not responsible for authenticating the paintings on display at the Bao Wu Tang Exhibition.  (AW Dec. at ¶ 45.)

135.    The version of Guo Xi's "Travelers in the Autumn Mountains" exhibited at the Bao Wu Tang Exhibition was a reproduction.  (Ex. 112 at 578:23-579:17.)

136.    In the First Amended Complaint ("FAC"), YK alleged that she "learned in the fall of 2013 that at least eleven of the 98 paintings sold to several different Straw Men appeared in a three-week museum exhibition which received national media coverage in China."  (Ex. 3 at ¶ 118.)

137.    Contrary to her allegations in the FAC, in a March 8, 2010 affidavit YK swore to the Surrogate's Court that she learned of an exhibition at the Beijing Capital Museum entitled Bao Wu Tang – an Important Overseas Chinese Painting and Calligraphy Collection Exhibition" (the "Bao Wu Tang Exhibition") in November 2009.  (Ex. 77 at ¶¶ 8-9.)

138.    In a 2013 deposition in the Surrogate's Court proceeding, in response to questioning about the Bao Wu Tang  Exhibition by counsel to the PA, YK testified that she personally attended the Bao Wu Tang  Exhibition and closely inspected the artwork on display, testifying that, apart from one reproduction, "everything else was real … [e]verything else was genuine."  (Ex. 89 at 631:8-634:9.)

139.    Not only did YK attend the Bao Wu Tang Exhibition, but, according to February 12, 2019 email produced in this action, she and KK "even had someone film the show."  (Ex. 18.)

140.    YK received a copy of the exhibition catalog published in connection with the Bao Wu Tang Exhibition in November 2009.  (Ex. 77 at ¶¶ 8-9.)

141.    YK was aware that at least eleven of the 98 Paintings had been sold by, at the latest, November 2009 when she attended the Bao Wu Tang Exhibition.  (Ex. 3 at ¶ 118; Ex. 77 at ¶¶ 8-9.)

## IV.    Undisputed Facts Concerning YK's Discovery of Her Breach of Fiduciary Duty Injury

142.    On or about July 29, 2005, YK's then-attorney, Hugh Mo, was made aware of the procedure followed by the Estate to sell the 98 Paintings.  (Ex. 31.)

143.    YK's counsel Randolph Harris of McLaughlin & Stern, LLP was provided access to the Estate's tax return, and reviewed it on June 29, 2006.  (Ex. 29 at M&S_00000016.)

144.    Billing records produced by McLaughlin & Stern, LLP confirm that on January 6, 2010 the firm met with the King's "regarding the Baowutang paintings dispute" and on January 7, 2010 "[r]esearched and reviewed the Bao Wu Tang Video[.]"  (Ex. 29 at M&S_00000023.)

145.    On February 11, 2010, YK met again with her attorneys to discuss "prosecuting a lawsuit relating to paintings from the Estate of C.C. Wang."  (Ex. 110 at KINGPROD5 - 00363.)

146.    By August 2010, YK prepared and provided to her attorneys, "excel spreadsheets of artwork[.]"  (Ex. 110 at KINGPROD5-00363).

147.    On December 15, 2010, YK's then-attorney, Martin Garbus, sent a letter to Schram expressing concern as to whether the sale of Estate paintings were "appropriately sold"

because "many paintings that [YK] believes are Estate paintings are circulating throughout the world" and "yet the Estate has so little cash."  (Ex. 111 at KINGPROD5 - 00783.)

148.    On May 9, 2011, YK filed a Petition for a Compulsory Limited Accounting And Related Relief Under SCPA 2205 and 2206 ("Petition for Accounting").  (Ex. 71.)

149.    The Petition for an Accounting alleged that YK believed "works of art which are allegedly part of the estate have recently been depicted in the catalogues, exhibited and/or offered for sale at various auction houses, studios and in museums in China and Hong Kong." (Ex. 71 at ¶ 8(g).)

150.    YK identified specific works of art in an exhibit to the Petition for Accounting. The artworks identified substantially overlapped with the 98 Paintings.  (Ex. 71 at AWSK_00009197.)

151.    In the Petition for Accounting YK stated, that she "has reason to believe that some or all of such works *have been sold without obtaining full market value*, without proper accounting to the PA and/or the estate, and otherwise by reason of improper, unauthorized unilateral acts of Mr. Wang."  (Ex. 71 at ¶ 8(g).)

V.    **YK's Lack of Credibility**

A.    **The Shanghai Exchange**

152.    Shortly before the implementation of the TRO, the Kings filed an objection seeking to carve out the 93 paintings in the custody of Northwich and Soon Haut from the TRO's application.  (Ex. 1 at ¶¶ 9, 13; Ex. 124 at ¶ 12.)

153.    As the Estate's litigation costs mounted, Surrogate Preminger advised AW of his obligation to negotiate with the Kings, even if the anticipated settlement would, in AW's view, leave the Kings with a disproportionate share of the Estate.  (Ex. 124 at ¶ 15.)

154.     As the Kings had stored the Wu and other paintings formally owned by CC in China, AW and the Kings agreed to meet in Shanghai in May 2005 with the goal of settling all outstanding Estate litigation. (Ex. 124 at ¶¶ 22-23.)

155.     Prior to the meeting in Shanghai, AW and the Kings reached a preliminary agreement whereby, among other things, the Kings would return to the Estate 46 of 93 paintings which were in the custody of Northwich and/or Soon Haut.  (Ex. 124 at ¶ 24.)

156.     On or about May 11, 2005, AW and the Kings met in a conference room in the Shanghai Hotel in order to exchange artwork per the proposed settlement terms.  (Ex. 124 at ¶ 27.)

157.     Per YK's request, AW arrived to the Shanghai Hotel with one painting, the Xiao Shizao, a painting purchased by SK through his Jian Bao Gallery in 1987.  (Ex. 124 at ¶¶ 27-28.)

158.     At the outset of the meeting KK presented AW with a multi-page document which contained on one of its pages a list of the 46 paintings the Kings agreed to turn over to AW under the proposed settlement.  (Ex. 124 at ¶ 32.)

159.     KK requested that AW initial next to each painting scheduled to be turned over and then sign on the bottom of the page.  (Ex. 124 at ¶ 33.)

160.     While AW contemplated whether to execute the document propounded by KK, YK and KK began to argue bitterly.  (Ex. 124 at ¶ 35.)

161.     AW ultimately agreed to sign the document propounded by KK in an effort to end the argument between YK and KK.  (Ex. 124 at ¶ 35.)

162.     KK refused to provide AW with a copy of the document executed during the Shanghai Exchange.  (Ex. 124 at ¶ 37.)

163.    The document initialed and signed by AW did not indicate, and was not, a receipt for the 46 paintings.  (Ex. 124 at ¶ 36.)

164.    The document AW executed during the Shanghai Exchange is not the same document as the one attached as Exhibit 2 to the Declaration of Yien-Koo Wang King, dated February 14, 2020 ("YK Dec.") (Dkt. No. 198).  (Ex. 124 at ¶¶ 3, 36.)

165.    In particular, the document AW signed at the Shanghai Exchange did not include the words "46 Pieces Received by Andrew Wang" below the signature line.  (Ex. 124 at ¶ 36.)

166.    The Kings fraudulently manipulated Exhibit 2 to the YK Dec.  (Ex. 124 at ¶¶ 3, 36.)

167.    Instead of turning over 46 paintings as agreed, the Kings only provided AW with 15 paintings.  (Ex. 124 at ¶¶ 43, 45; Ex. 102 at King-SCT-000002882-883.)

168.    More than a year after the Shanghai Exchange YK filed a petition to remove AW as Preliminary Executor.  (Ex. 1 at ¶ 3.)

169.    YK's delay of more than a year following the Shanghai Exchange to file a petition to remove AW led the PA to advise the Surrogate's Court that YK's petition "should be viewed warily."  (Ex. 122 at ¶ 3.)

170.    According to the PA, "[t]he fact that Yien-Koo waited until virtually the eve of trial in the probate contest to file her petition certainly raises a question as to whether it is merely part of a broader litigation strategy."  (Ex. 122 at ¶ 4.)

    **B.  YK's Violation of the TRO**

171.    In February 2011 the law firm of Pryor Cashman LLP ("Pryor Cashman") was retained as special counsel by the PA to assist in the prosecution of the Estate's SCPA § 2103

proceedings, and in particular to help ascertain whether AW, SK, YK or KK violated the TRO. (Ex. 123 at ¶¶ 2, 11.)

172.    Pryor Cashman concluded that YK violated the TRO by engaging in the Shanghai Exchange.  (Ex. 123 at ¶ 7.)

173.    Pryor Cashman concluded that YK continued Estate litigation "to direct attention away from the devastating admissions of her violations of the TRO."  (Ex. 123 at ¶ 38.)

174.    Pryor Cashman concluded that it had a basis to bring a contempt proceeding against the Kings that would have resulted in "sufficient sanctions."  (Ex. 123 at ¶ 37.)

## C.  YK's "Ownership" of Northwich

175.    YK claims to be the "sole shareholder" of Northwich.  (Ex. 3 at ¶ 13.)

176.    YK's claim of being the sole shareholder of Northwich is predicated on a July 22, 2003 share certificate for 10 authorized shares.  While the share certificate is identified as "Certificate Number 12," and refers to 50,000 authorized shares, it references neither share certificates numbered 1 through 11 nor the status of the other 49,990 authorized shares.  (Ex. 1 at ¶ 15.)

## D.  The Kings Bankruptcy

177.    In 2007, the Kings filed for bankruptcy in the United States District Court for the Southern District of New York.  (Ex. 85.)

178.    The Kings' schedules of assets and liabilities filed did not disclose ownership of either Northwich or Soon Huat.  (Ex. 76 at 4-8, 21, 86.)

179.    The Kings received a discharge from the Bankruptcy Court in 2010.  (Ex. 87.)

### E.  The Surrogate's Court's Limitation of YK's Authority as Preliminary Executrix

180.    On February 15, 2018 the Surrogate's Court appointed YK to serve as Preliminary Executrix of the Estate.  (Ex. 84 at 1.)

181.    SK filed a petition to, among other things, revoke YK's appointment as Preliminary Executrix on the grounds that YK is "dishonest and therefore unfit to serve."  (Ex. 84 at 1.)

182.    SK's petition to remove YK as the Preliminary Executrix was based on:  (i) YK's selling six works of art belonging to the Estate for a total of $34,112,250 in violation of the TRO; and (ii) YK's advancing legal positions as executrix that were in her personal interest, but were inimical to the interests of the Estate, *i.e.*, in breach of her fiduciary duties.  (Ex. 84 at 1-2.)

183.    YK's unfitness to serve as Preliminary Executrix is also due to her failure to be candid with the Surrogate's Court in that she neglected to inform the court of the sale of artworks subject to the TRO, despite filing at least one motion with the court subsequent to the sales.  (Ex. 84 at 2-3.)

184.    By order dated February 11, 2019 (the "Revocation Order"), the Surrogate's Court found that YK failed to "present[] 'documentary evidence' that would constitute a defense to the allegation that she is unfit to serve as preliminary executor."  (Ex. 84 at 3.)

185.    The Revocation Order limited YK's authority to act as Preliminary Executrix solely to the prosecution of this litigation.  (Ex. 84 at 3.)

## VI.    The Experts

186.    Patrick Regan submitted an expert report on behalf of Plaintiff on October 11, 2019 (the "Regan Report").  (Ex. 90.)

187.    The Regan Report consists of two appraisals: (i) a fair market appraisal of the 98 Paintings, as of October 10, 2019; and (ii) a retail appraisal of the 14 Paintings sold to YDJ, as of August 2009.  (Ex. 90 at ¶ 1.)

188.    In forming his valuation opinions, Regan relied heavily on sales from mainland Chinese auction houses.  (Ex. 91 at 284:20-285:4.)

189.    In forming his valuation opinions, Regan relied heavily on sales that allegedly occurred more than two years prior to as-of the date of the valuation.  (Ex. 120.)

190.    Regan submitted a rebuttal expert report on behalf of Plaintiff on December 16, 2019 (the "Regan Rebuttal Report").  (Ex. 118.)

191.    Kenneth Linsner submitted an expert report on behalf of Defendants on October 11, 2019 (the "Linsner Report").  (Ex. 105.)

192.    Linsner submitted a rebuttal expert report on behalf of Defendants on December 16, 2019 (the "Linsner Rebuttal Report").  (Ex. 114.)

193.    In the Linsner Report, Linsner concludes that "the process employed by the New York County Public Administrator that included independent review of the proposed prices by O'Toole-Ewald resulted in reasonable prices for the artwork whether under a Fair Market Value or Orderly Liquidation Value approach."  (Ex. 105 at ¶ 44.)

194.    In both the Linsner Report and the Linsner Rebuttal Report, Linsner opines that auction results from mainland Chinese auction houses cannot be relied upon to support appraisal valuations as such results are unreliable because they include data from unconsummated sales. (Ex. 105 at ¶¶ 34-42; Ex. 114 at ¶¶ 28-36.)

195.    In the Regan Report, Regan acknowledges that: (i) "China is seen to have a high percentage of 'deadbeat-bidders,'" (ii) "China's auctions saw, and continue to see, a significant

245

portion of non-payments and sales canceled because of bidders," and (iii) that "standard industry annual market reports such as TEFAF, UBS and the CAA/Artnet … all agree that incidences of 'non-payment' have been a concern in the reporting from Chinese auction houses."  (Ex. 118 at ¶ 10.)

196.    At deposition, Regan admitted that the prevalence of unconsummated sales in the mainland Chinese auction market data upon which he relies is a "problem."  (Ex. 119 at 329:22-330:17.)

197.    Regan concedes that there is no database that can provide consummated sales data for mainland Chinese auction houses with any degree of confidence.  (Ex. 119 at 323:8-14.)

198.    Regan was unable to represent that any of mainland Chinese auction house data points upon which he relies were the product of consummated sales with even 50 percent certainty.  (Ex. 119 at 335:18-336:12.)

199.    Regan explained why he relies upon auction results from mainland Chinese auction houses:  he "wouldn't have a job" otherwise.  (Ex. 119 at 327:18-328:9.)

200.    Linsner also challenges Regan's valuation opinion, concluding that Regan's extensive reliance on "outdated sales was a fundamental error, and such comparables do not constitute credible substantiation for Mr. Regan's valuation conclusions."  (Ex. 114 at ¶ 44.)

201.    With respect to the 14 Paintings sold to YDJ in August 2009, Regan offered an opinion as to their "retail value" as of August 2009.  (Ex. 90 at ¶¶ 28-29.)

202.    In the Linsner Rebuttal Report, Linsner opines that due to the financial pressure the Estate was under—including from estate taxes and administrative expenses—"the requisite conditions for a 'retail' sale … did not exist as a matter of fact in 2009."  (Ex. 114 at ¶ 20.) Rather, "[b]ecause the Estate's artwork needed to be sold to raise liquid assets to pay taxes and

other expenses … orderly liquidation value, not fair market value or retails value, is the relevant value which the Estate could reasonably have expected to receive" in August 2009.  (Ex. 114 at ¶ 24.)

Dated: New York, New York
       April 13, 2020

                                        By: /s/ *Thomas B. Kelly*
                                        Thomas B. Kelly
                                        (tkelly@kasowitz.com)
                                        Kim Conroy
                                        (kconroy@kasowitz.com)
                                        Jonah M. Block
                                        (jblock@kasowitz.com)

                                        KASOWITZ BENSON TORRES LLP
                                        1633 Broadway
                                        New York, New York 10019
                                        Tel.:  (212) 506-1700
                                        *Attorneys for Andrew Wang and*
                                        *Shou-Kung Wang*