UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YIEN-KOO KING,

                              Plaintiff,

     -against-                                    <u>1:14-Civ-07694-(LJL) (JLC)</u>

ANDREW WANG, SHOU-KUNG WANG, BAO WU TANG, JIAN BAO GALLERY, ANTHONY CHOU, CHEN-MEI LIN, WEI ZHENG, YE YONG-QING, YUE DA-JIN and JOHN DOES 1-9,

                              Defendants.

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

                                                  **SAM P. ISRAEL, P.C.**
                                                  Sam P. Israel (SPI 0270)
                                                  Timothy Savitsky (TS 6683)
                                                  180 Maiden Lane, 6th Floor
                                                  New York, New York 10038
                                                  T: (646) 787-9880

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................................ ii

**PRELIMINARY STATEMENT** ................................................................................................1

**ARGUMENT**...............................................................................................................................3

    I.    **Yien-Koo Sets Forth a Prima Facie Case for Summary Judgment**............................ 3

        A.    *Andrew Breached His Duties of Good Faith and Full Disclosure* ........................... 3

        B.    *The "Business Judgment" Standard Is Irrelevant to Yien-Koo's Motion for Partial Summary Judgment* ................................................................................................ 5

    II.    **The Wangs Fail to Raise Any Genuine Issues of Material Fact in Relation to Andrew's 2009 Breaches**............................................................................................ 7

        A.    *The Wangs Fail to Raise a Genuine Issue of Fact as to Liability* ...........................7

        B.    *The Wangs Fail to Raise a Genuine Issue of Fact as to Damages* ..........................9

    III.    **The Wangs' Affirmative Defenses Do Not Preclude Summary Judgment** ................ 9

        A.    *The Plaintiff's Claim for Breach of Fiduciary Duty Is Timely.*

            i.    *Yien-Koo Did Not Become Aware of Facts Sufficient to State a Claim for Breach of Fiduciary Duty Until Acquiring the Estate's Sales Contracts in 2013* ............. 9

            ii.    *The Statute of Limitations for Claims of Breach of Fiduciary Duty Against Andrew Wang Were Tolled by His Status a Preliminary Executor* ..................................11

            iii.    *Andrew Is Equitably Estopped from Asserting a Statute of Limitations Defense* 11

        B.    *The Estate's Injury Was Proximately Cause by Andrew* ......................................13

        C.    *The Doctrine of In Pari Delicto Is Inapplicable* ...................................................14

**CONCLUSION** .........................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Breslau v. Sakow*,
219 A.D.2d 479 (N.Y. App. Div. 1st Dep't 1995)..............................................................10

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001)..............................................................................................13

*Cont'l Cas. Co. v. Marshal Granger & Co., LLP*,
6 F.Supp.3d 380 (S.D.N.Y. 2014) ......................................................................................5

*Eastman Kodak Co. v. Camarata*,
05-cv-6384L, 2006 U.S. Dist. LEXIS 88206 (W.D.N.Y. Dec. 6, 2006) ..........................14

*Estate of Rothko*,
84 Misc.2d 830 (Sur. Ct. New York Cnty. 1975)................................................................6

*General Stencils Inc. v. Chiappa*,
18 N.Y.2d 125 (N.Y. Ct. App. 1966).................................................................................12

*Hayes v. New York City Dep't of Corrections*,
84 F.3d 614 (2d Cir 1996)...................................................................................................9

*In re Dix' Will*,
34 Misc. 2d 421 (Sur. Ct. Rennsselaer Cnty. 1962) ............................................................6

*In re Estate of Barabash*,
31 N.Y.2d 76 (N.Y. Ct. App. 1972)...................................................................................11

*In re Estate of Janes*,
90 N.Y.2d 41 (N.Y. Ct. App. 1997)..............................................................................2, 6

*In re Lovell*,
23 A.D.3d 386 (2d Dep't 2005).........................................................................................6

*In re Estate of Donner*,
82 N.Y.2d 574 (N.Y. Ct. App. 1993) .................................................................................6

*In re Estate of Marino*,
36 Misc. 3d 1215(A) (Sur. Ct. 2012).................................................................................6

*In re Estate of Rothko*,
43 N.Y.2d 305 (N.Y. Ct. App. 1977).................................................................................13

*In Re Estate of Shulsky*,
34 A.D.2d 545 (N.Y. App. Div. 1970) ................................................................................6

*In re Tr. under Art. Second of Will of Boyer*,
35 Misc. 3d 1233(A) (Sur. Ct. 2012) ..................................................................................6

*Marini v. Adamo*,
812 F. Supp. 2d 243 (E.D.N.Y. 2011) ..............................................................................14

*Meisel v. Grunberg,*
07-CV-11610, 2010 U.S. Dist. LEXIS 128513 (S.D.N.Y. 2010) ..................................5, 9

*Mellon Bank, N.A. v. United Bank Corp.*,
1993 U.S. Dist. LEXIS 16632, (N.D.N.Y. Nov. 17, 1993) ................................................9

*New York State Workers' Compens. Bd. v. Consolidated Risk Servs., Inc.*,
125 A.D.3d 1250 (N.Y App. Div. 2015) ..........................................................................11

*Sands Harbor Marina Corp. v. Wells Ins. Sevs. of Or., Inc.*,
156 F.Supp.3d 348, 360 (E.D.N.Y. 2016) ........................................................................15

*Simcuski v. Saeli*,
44 N.Y.2d 442 (N.Y. Ct. App. 1978)................................................................................11

*United States v. Coppola*,
No. 88-cv-3456, 1994 U.S. Dist. LEXIS 16848 (E.D.N.Y. Nov. 17, 1994) ....................13

**STATUTES, RULES, REGULATIONS**

New York Surrogates Court Procedure Act §2107........................................................1, 6

## PRELIMINARY STATEMENT

Let us be clear about what Andrew's[1] breach was. It was not that he simply failed to get "the highest attainable price"[2] for 14 Estate paintings by selling them, in 2009, for $484,840.00 when their fair market value at the time was actually $1,978,000.00.[3] Rather, Andrew breached his fiduciary duties of good faith and full disclosure because he represented to his Co-fiduciary and her agents that he was doing something with respect to the sales which he now admits he never did: negotiate with the purported buyers to at least *try* and secure the highest price they were willing to pay. Whereas Andrew represented between 2005 and 2009 that he was personally finding buyers and that the proposed sale prices he was forwarding to Ewald and the PA were the products of the buyers' offers and his efforts to negotiate, he disclosed in 2019 that he never actually negotiated with anyone. Instead, he arrived at all of his initial sales proposals by blindly and automatically adding 20% to each painting's 2003 appraisal value without regard or reference to the current Chinese art market or ever even asking the buyers to pay more.[4] Put another way, Andrew was not really *receiving* offers from the purported buyers as he claimed;[5] he was (at least according to his 2019 testimony) *offering* the Estate's paintings for sale at the absolute lowest price he knew the PA would accept. Yien-Koo's Motion, therefore, concerns breaches of Andrew's duties of good faith and full disclosure.

Yet even if Yien-Koo had moved for summary judgment on simple negligence, the Wangs' arguments would still fail because they cite the completely wrong legal standard. The "business

---

[1] Plaintiff Yien-Koo Wang King ("Plaintiff" or "Yien-Koo") incorporates by reference herein each of the defined terms identified in the Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment [ECF Dkt. 204] and Plaintiff's Rule 56.1 Statement of Material Facts ("King SMF") [ECF Dkt. 199].
[2] Defendant's Brief in Opposition to the Plaintiff's Motion for Partial Summary Judgment, dated, April 13, 2020, ("Wang Opposition Brief") [ECF Dkt. 212] at pp. 12-14.
[3] *See* Regan Decl. [ECF Dkt. 201] Exh. 1 at ¶¶28-29 (Regan Report).
[4] *See* Savitsky Declaration date May 4, 2020 ("Third Savitsky Decl.") Exh. 107 at ¶¶1-9, 23-27, 41 (The Expert Rebuttal Report of Patrick Regan ("Regan Rebuttal Report")).
[5] *See* PA Decl. Exh. 23 (initial proposal of sale of paintings to "Yue Da Jin").

1

judgment" standard the Wangs rely upon relates exclusively to Surrogate's Court cases involving applications brought under Surrogate's Court Procedure Act ("SCPA") §2107 (for pre-sale advice from the court on the management of estate assets) and have no relation to fiduciary breach or negligence claims. Thus, contrary to the Wangs' argument, the negligence standard for estate fiduciaries is the same as for any other type of fiduciary: they must exercise the level of diligence and prudence that a prudent and intelligent person would use to manage their own affairs. *See In re Estate of Janes*, 90 N.Y.2d 41, 54 (N.Y. Ct. App. 1997).

The Wangs' secondary arguments are equally without merit. They fail to create a genuine issue of fact by raising irrelevant points related to: (i) Ewald's non-expert[6] review of the first five sales (since she never reviewed the final 2009 sale prices at issue on this Motion)[7], (ii) the auctioning of certain Estate paintings in 2006 (since this occurred more than three years before the private sale to "Yue Da Jin" and involved different paintings), (iii) the PA's agreement to Andrew's proposals to sell the Estate's paintings (since the PA was lied to about the surrounding circumstances), or (iv) the financial status of the Estate (since the PA made clear that she wanted to try and get the best market price for the Estate assets, not liquidate them at a discount). What matters on this Motion is that, in 2009, the PA agreed to provide a large discount to Yue Da Jin based upon Andrew's false representation that he had been negotiating with him to get the "ideal price" for the Estate and Andrew's false representation that the discount was acceptable in view of the status of the Chinese art market. These were both untrue and the Estate was injured as a result.

---

[6] Savitsky Decl. Exh. 14 (6.14.19 Ewald Dep. Trans. at 46:16-47:22; 88:11-90:14); Savitsky Decl. Exh. 15 (ELE-17). [King SMF at ¶308].
[7] Savitsky Decl. Exh. 68 (Peter Schram agreeing to Andrew's recommendation for a discount 57 minutes after receiving the proposal); [King SMF at ¶¶294-295].

Finally, the Wangs' affirmative defenses are meritless and should be dismissed as a matter of law. The fiduciary breach claims are clearly timely because, under New York state law, all claims arising from a fiduciary's misconduct are tolled for the duration of the fiduciary relationship. Thus, the statute of limitations in this action did not even begin to run until May 2017 when the Fraudulent 2003 Will was rejected from probate and Andrew was removed as preliminary executor. Furthermore, the accounting proceeding Yien-Koo filed in 2011 (and which has been stayed ever since) is independently sufficient under New York law to toll the statute of limitations (Andrew still has never accounted due to a stay of that proceeding). Even if these dispositive tolls did not exist, the action would *still* be timely because it is irrefutable that Yien-Koo did not acquire the information necessary to plead claims for fiduciary breach and fraud until 2013 when she was first provided with the Estate's sales records.

## ARGUMENT

**I.     Yien-Koo Sets Forth a Prima Facie Case for Summary Judgment.**

**A.** *Andrew Breached His Duties of Good Faith and Full Disclosure.*

As early as 2004, Andrew's own attorney instructed him, that "[a]s I have explained, the PA is concerned with a private sale not bringing the best price for the Estate, that is why she felt that a sales price of AT LEAST 20% above Sotheby's appraised values would provide her a level of comfort to defend a challenge that the Estate did not receive the best price for the art." Savitsky Decl. Exh. 32 (WANG001890). Despite the "financial pressure" Andrew mentions in his opposition brief, the PA clearly wished to get the best price for the Estate's paintings, not liquidate them at a discount. *Id. see also* PA Decl. at ¶51. For his part, Andrew expressly acknowledged the PA's directive[8] and, as late as 2008, confirmed to the PA's agent, Elin Ewald, that he understood

---

[8] Savitsky Decl. Exh. 32 (WANG001890) (Andrew responding to Klein: "OK. I will try and keep you informed. Thanks.").

3

his "purpose" was to achieve "ideal price[s]" for the Estate's paintings. Savitsky Decl. Exh. 64 (WANG003432).

Throughout the sales process, Andrew held himself out as a Chinese-paintings expert to both the PA[9] and her art advisor, Ewald[10] and represented that he was in direct contact with the buyers.[11] In 2009, he personally recommended that the PA agree to sell 14 paintings to "Yue Da Jin" at prices well below their 2003 appraised values because, Andrew claimed, the classical art market in China was struggling and he thought the prices were acceptable. Savitsky Decl. Exhs. 67 (AWSK_0015264) and 68 (WANG00534). According to the Plaintiff's expert, however, Andrew's claim that the Chinese art market was "very weak" was wildly untrue in 2009: the market for classical Chinese art underwent a renaissance between 2004 and 2011 with many artists seeing a 10-fold increase in value. Third Savitsky Decl. Exh. 107 thereto at ¶¶1-9, 23-27, 41.

The PA trusted Andrew as a knowledgeable expert[12] and ultimately agreed to the 10% discount on the Sotheby's Appraisal values without seeking Ewald's opinion.[13] Ewald too was clearly under the impression that the prices that Andrew was proposing in each instance were _Andrew's values_ which he arrived based upon his "good inside market grasp of private dealers and private sale." Savitsky Decl. Exh. 62 (WANG003433-34). Ewald also stated that she believed that Andrew was working to get the "best deal you can for these paintings." _Id._

---

[9] PA Decl. Exh. 25 (KING 007626). [King SMF at ¶¶309-316].
[10] Savitsky Decl. Exh. 65 (WANG002255) (Ewald admitting that she was "not challenging [Andrew's] values" in relation to his proposed sale of paintings to Yue Da Jin and that "she very much respect[ed] [Andrew's] judgment on Chinese painting values," and that she believed Andrew had "a good inside market grasp of private dealers and private sales."). [King SMF at ¶¶308-321]. Ewald obviously believed the prices were Andrew's value derived from his judgment and negotiations. She was irrefutably wrong in that belief.
[11] _See e.g._, Savitsky Decl. Exh. 67 (AWSK_00015264) (email forwarded to Peter Schram regarding Andrew's efforts to negotiate and sell paintings). [King SMF at ¶291].
[12] PA Decl. Exh. 25 (KING 007626). [King SMF at ¶¶309-316].
[13] Savitsky Decl. Exh. 68 (Peter Schram agreeing to Andrew's recommendation for a discount 57 minutes after receiving the proposal); [King SMF at ¶¶294-295].

4

He was not. Taking his 2019 testimony as true, Andrew was not receiving arms' length offers from the buyers, but instead offering each of the Estate's paintings at the absolute lowest price the PA told him she would accept. *Compare* Savitsky Decl. Exh. 32 (WANG001890) *with* Savitsky Decl. Exh. 11 (6/24/19 AW Dep. Trans. at 116:10-22; 86:16-25; 89:25-95:22; 116:10-22 117:3-118:23).

### B. *The "Business Judgment" Standard Is Irrelevant to Yien-Koo's Motion for Partial Summary Judgment.*

The Wangs spend a significant portion of their brief attempting to raise factual disputes as to Andrew's and the PA's proper use of "good business judgment," the adequacy of Ewald's "independent" review, and the existence of "financial pressure" on the Estate to sell paintings. *See* Wangs' Opp. Brf. at 12-20. But these are all non-sequiturs. The issue on this Motion is whether the undisputed facts establish that Andrew omitted or misrepresented material facts in relation to how he arrived at his sales proposals and his role in negotiating with the buyers, thereby causing the Estate to sell its property at below-market prices. As summarized in Section A, *supra*, they do. Misrepresentations and omissions of this caliber are sufficient to support a finding that a fiduciary breached his fiduciary duty as a matter of law. *See* King Support Brief [ECF Dkt. 204] at 3, 26-28 (citing, among other cases, *Meisel v. Grunberg,* 07-CV-11610, 2010 U.S. Dist. LEXIS 128513 (S.D.N.Y. 2010) (BSJ) and *Cont'l Cas. Co. v. Marshal Granger & Co., LLP*, 6 F.Supp.3d 380, 392-393 (S.D.N.Y. 2014)).

Tellingly, the Wangs avoid any discussion of the duties of good faith and full disclosure in their opposition to Yien-Koo's Motion. Instead, they hope to shift the Court's attention to what they believe is more favorable ground: the negligence standard. *See* Wang Opp. Brf. at 12-20 (failing to address a single cited case from the King Support Brief). The trouble is, even if the basis for Yien-Koo's argument on summary judgment was simple negligence (and it is not), the Wangs' "business judgment" arguments would still fail because they rely on inapplicable law.

Specifically, the Wangs attempt to substitute the legal standard used for negligence claims with the heightened "business judgment" standard used in relation to petitions brought under SCPA §2107. Under SCPA §2107, a fiduciary may, upon the showing of "extraordinary circumstances," seek <u>pre-sale</u> "advice and direction" from the Surrogate on how to value or dispose of estate property—thereby absolving the fiduciary of any future liability. *See* SCPA §2107; *see also Estate of Rothko*, 84 Misc.2d 830, 840 (Sur. Ct. New York Cnty. 1975) (noting the rarity of a surrogate granting "advance[d] approval concerning matters of business judgment"). The Wangs' case citations in relation to the deferential business judgment standard of review concern this niche Surrogate's proceeding and have no relation whatsoever to ordinary negligence claims. *See, e.g.*, Wang Opp. Brf. at 15 – 17 (citing to (1) *In re Estate of Marino*, 36 Misc. 3d 1215(A), at *4 (Sur. Ct. 2012) (concerning a petition for "advice and direction" filed under SCPA §2017, rather than negligence); (2) *In re Tr. under Art. Second of Will of Boyer*, 35 Misc. 3d 1233(A), at *3-4 (Sur. Ct. 2012) (same); (3) *In re Lovell*, 23 A.D.3d 386, 387 (2d Dep't 2005) (same); and (4) *In re Dix' Will*, 34 Misc. 2d 421 (Sur. Ct. Rennsselaer Cnty. 1962) (same).

The Wangs' cite to this inapplicable standard in an attempt to suggest that courts are "reluctant to interfere" with a fiduciary's business judgment. But this gets the relevant law wrong. An estate fiduciary's handling of assets is subject to the same level of scrutiny as any other type of fiduciary. *See, e.g., In re Estate of Donner*, 82 N.Y.2d 574, 585 (N.Y. Ct. App. 1993) (noting that a fiduciary may be surcharged for breach of fiduciary duty where the managed fund suffered losses due to the fiduciary's "negligence or failure to exercise [] prudence."); *In re Estate of Janes*, 223, A.D.2d 20, 33 (finding fiduciary breached its fiduciary duty "by its inattention, inactivity, and deception in the face of a prolonged and steep decline in the value of the estate."); *see also In Re Estate of Shulsky*, 34 A.D.2d 545, 547 (N.Y. App. Div. 1970) ("Where an executor has failed

to keep or produce clear and accurate accounts and records, all presumption are against him and all obscurities and doubts are to be taken adversely to him.").

## II. The Wangs Fail to Raise Any Genuine Issues of Material Fact in Relation to Andrew's 2009 Breaches.

### A. *The Wangs Fail to Raise a Genuine Issue of Fact as to Liability.*

The Wangs throw a series of factual considerations at the Court to support their claim that both Estate fiduciaries acted responsibly in valuing the Estate's assets and coordinating its sales. Wang Opp. Brf. at 16-20. They claim that (a) Andrew and the PA attempted to auction all of the Estate paintings first; (b) the auction results from 2006 show that paintings sold privately in 2009 were appropriately priced; (c) Andrew and the PA required all proposed sales to be reviewed by an independent art appraiser; (d) four of the 98 Paintings were sold for more than 20% above the Sotheby's Appraisal's value; and (e) the Estate was required to sell its paintings because of financial pressure. *Id*. Most of these claims are contradicted by the clear documentary record and *all* are irrelevant to Yien-Koo's Motion.

First, the refrain that Andrew and the PA tried to auction the 98 Paintings through Sotheby's first, and only sought to sell them privately afterwards is apocryphal. It is flatly disproven by the documentary record. Andrew first suggested using Sotheby's to auction some of the Estate's paintings in September 2005—after nearly all of the 98 Paintings had already been sold to private buyers. *See* Plaintiff's Responses and Objections to the Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("King Counter-SMF") [ECF Dkt. 218] at Plaintiff's Objections to ¶¶60-61. Moreover, email records prove the Estate relied on Andrew and his expert knowledge of the field of Chinese art to determine which paintings would be auctioned. *Id.* But even if the Wangs' false claim about Sotheby's rejecting the 98 Paintings had some scintilla of support, it would be irrelevant because the basis of Yien-Koo's Motion is that Andrew misrepresented his efforts to sell the paintings in 2008 and 2009. Nothing about the

7

2006 Sotheby's auction of different paintings in a different year changes that fact—especially given the consistent year-by-year rise of the Chinese art market between 2004 and 2011. *See* Third Savitsky Decl. Exh. 107 thereto (Rebuttal Report of Patrick Regan at ¶¶1-9, 23-27, 41).

The Wangs' related argument that the results of the March 2006 Sotheby's Auction proves that the fiduciaries' pricing scheme was appropriate is as untrue as it is irrelevant. *See* King Counter-SMF at Plaintiff's Objections to ¶¶63-64. The determination of whether the 14 Estate paintings allegedly sold to "Yue Da Jin" were sold at appropriate prices in 2009 obviously requires expert analysis and cannot be divined, as the Wangs' suggest, by the successful or unsuccessful auction of different paintings in 2006.

Andrew also attempts to raise an issue of triable fact by claiming that he acted responsibly since the PA required all proposed sales to be reviewed by Ewald. *See* Wang Opp. Brf. at 18-19. This too is belied by the Record. Ewald conducted her review of the Estate prices in 2008 (noting that the prices were too low for many of the works), but never reviewed the actual, final sales prices in 2009 which were even lower than the prices Ewald had previously reviewed. Savitsky Decl. Exh. 68 [King SMF at ¶¶294-295]; Third Savitsky Decl. Exh. 107 at ¶41 (Regan Rebuttal Report). Fifty-seven minutes after receiving Andrew's recommendation to sell paintings to Yue Da Jin at a discount because the art market was "very weak" in China, the PA agreed to the sale. Savitsky Decl. Exh. 67 (AWSK_0015263-64) [King SMF at ¶¶290-299]. There is no evidence that Ewald conducted a review of Andrew's new prices during that 57-minute period or anytime thereafter. *Id.*

Finally, Andrew's new claim in his declaration that he "negotiated to the best of [his] ability" is insufficient to create a material issue of fact where he already gave contradictory deposition testimony on this very issue. Declaration of Andrew Wang, dated April 13, 2020 ("AW Decl.") at ¶21 [ECF Dkt. 212]. The Second Circuit has held that "a party may not create an issue

8

of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir 1996). When a party has been deposed at length on a given topic, he cannot create a genuine issue of fact simply by declaring something previously undisclosed. *Id.* Andrew's vague new claim that he did, in fact, negotiate with the buyers "to the best of his ability" contradicts his 2019 deposition testimony and is insufficient to prevent summary judgment on this issue. *Compare* Declaration of Andrew Wang [ECF Dkt. 212] at ¶21 *with* King Supp. Brf. [ECF Dkt. 204] at 14-16.

### B. *The Wangs Fail to Raise a Genuine Issue of Fact as to Damages.*

For the reasons set forth in the King Support Brief, there is no genuine dispute as to damages. King Supp. Brf. at 29. However, even if there was a dispute as to the quantum of damages, summary judgment may still be granted as to liability, with the assessment of damages to be determined at trial. *See Meisel,* 2010 U.S. Dist. LEXIS 128513.

### III. The Wangs' Affirmative Defenses Do Not Preclude Summary Judgment.

As a threshold matter, the fact that the Plaintiff's opening brief does not address the Wangs' twenty-four vague and factually barren "affirmative defenses" does not require denial of this Motion. *But see* Wang's Opp. Brf at 24. Rather, it is the non-movant's burden to establish the existence of the elements essential to its affirmative defenses. *See Mellon Bank, N.A. v. United Bank Corp.*, 1993 U.S. Dist. LEXIS 16632, *18-19 (N.D.N.Y. Nov. 17, 1993). In any event, the Defendants' purported affirmative defenses fail as a matter of law.

### A. *The Plaintiff's Claim for Breach of Fiduciary Duty Is Timely.*
   i. *Yien-Koo Did Not Become Aware of Facts Sufficient to State a Claim for Breach of Fiduciary Duty Until Acquiring the Estate's Sales Contracts in 2013.*

It is uncontestable that Yien-Koo did not become aware of the basic facts surrounding the sale of the 98 Paintings (*e.g.*, how many paintings were sold, which paintings were sold, where

9

they were sold, or the terms of those sales) until sometime after March 2013. *See, e.g.,* YK Decl. [ECF Dkt. 198] Exh. 6 (KING7 – 00108-1019); Second YK Decl. [ECF Dkt. 209] at ¶24 and Exh. 10 thereto at p.6 (AWSK_00009133).

The only evidence relied upon to establish Yien-Koo's pre-2013 "notice" of Andrew's breaches is a 2011 petition filed in the Surrogate's Court seeking an accounting from Andrew. *See* Wang Opp. Brf. at 11, 26. But the very reason Yien-Koo was required to file for an accounting, rather than asserting claims of breach, was because she did not have possession of the factual circumstances surrounding any of the sales (or even explicit confirmation that sales had occurred). Though she carried a general mistrust of Andrew (since she knew he had lied about the Shanghai Exchange and other multi-million-dollar matters), she could not have pled a sustainable breach claim at that time. In the state-law-statute-of-limitations context, "[s]uspicions are not proof." *Breslau v. Sakow*, 219 A.D.2d 479, 481 (N.Y. App. Div. 1st Dep't 1995). The limitations period for a fraud claim will not begin to run until a party has "sufficient knowledge of [a defendant's] fraudulent activities to commence an action for fraud." *Id.* at 481-82 (noting that only after the deposition of a critical witness was conducted, did the plaintiff gain sufficient information to sustain a claim for fraud against the defendant). Without any information about the sales themselves, Yien-Koo was not capable of commencing an action sounding in fraud, self-dealing, or any other type of fiduciary breach. Indeed, the very act of filing a petition for an accounting in 2011 was, by its nature, a request for more information.

Moreover, the commencement of an accounting proceeding tolls the statute of limitations for breaches of fiduciary duties. *Breslau*, 219 A.D.2d at 481 (holding that the accounting proceeding against a fiduciary tolled the statute of limitations and that facts sufficient to sustain a pleading based upon fraud were only discovered after the accounting). Because this action was

commenced in September 2014, it is therefore timely under either the three-year period, six-year period, or two-year fraud discovery period.

### ii. The Statute of Limitations for Claims of Breach of Fiduciary Duty Against Andrew Wang Were Tolled by His Status a Preliminary Executor

It is a matter of blackletter law in New York that "[t]he statute of limitations period does not begin to run until the administrator has *openly repudiated* his obligation to administer the estate." *In re Estate of Barabash*, 31 N.Y.2d 76, 80 (N.Y. Ct. App. 1972) (emphasis in original) (internal quotations omitted). "That is, the repudiation rule acts as a toll of the limitations period for *all* misconduct committed by the fiduciary prior to repudiation of its obligation or termination of the relationship." *New York State Workers' Compens. Bd. v. Consolidated Risk Servs., Inc.*, 125 A.D.3d 1250, 1253 (N.Y App. Div. 2015) (emphasis in original) (reversing the trial court's dismissal of breach claims seeking money damages and noting "the limitations period for all breaches of fiduciary duty, regardless of when they occurred, was tolled until CRS ceased to be administrator of the trusts."). Andrew did not cease administering the Estate until May 11, 2017. Savitsky Decl. Exhs. 5 and 6. This action, brought while the claims against him were still being tolled, is therefore timely as a matter of law regardless of whether the applicable limitations period is two years from discovery of fraud, three years, or six years.[14]

### iii. Andrew Is Equitably Estopped from Asserting a Statute of Limitations Defense.

The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense:

---

[14] The six-year limitations period applies where a claim of fiduciary breach alleges a defendant "'fail[ed] to disclose material facts when the fiduciary had a duty to disclose and acted with the intent to deceive.'" *Consolidated Risk Servs., Inc.*, 125 A.D.3d at 1254 (holding that the six-year limitations period applied because "a portion of the plaintiff's breach of fiduciary duty claim is grounded in its allegations that CRS defendants breached their fiduciary duties to the trusts by fraudulently concealing or misrepresenting the financial condition of the trusts . . . [T]hese are fraud allegations."]. The undisputed evidence establishes Andrew knowingly omitted and misrepresented material facts about his efforts to find buyers and negotiate with them (along with a myriad of other facts) which, in turn, caused the Estate to sell its paintings at below market values. As in *Consolidated Risk Servs., Inc.*, all portions of the breach claims (*i.e.*, breach of duty of good faith, breach of duty full disclosure, and breach of duty of loyalty) turn on allegations of deceit and reliance thereon. 125 A.D.3d at 1254. The six-year limitations period is therefore applicable.

11

> [New York] courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing . . .which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding.

*General Stencils Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (N.Y. Ct. App. 1966); *Simcuski v. Saeli*, 44 N.Y.2d 442, 449, 454 (N.Y. Ct. App. 1978). Here, there are two categories of fraud which prevented Yien-Koo from bringing suit earlier than she did: Andrew's (a) submission of the Fraudulent 2003 Will and (b) false testimony given in 2013 and other acts of fraudulent concealment. Either is sufficient to estop the Wangs' assertion of the statute of limitations defense.

Between 2003 and February 2018, Yien-Koo was denied access to Estate records because the Wangs filed an indisputably fraudulent document with the Surrogate's Court which purported to disinherit Yien-Koo and named Andrew as Estate executor. Savitsky Decl. Exh. 6; YK Decl. Exh. 6. Therefore, if this Court decides to credit the Wangs' meritless[15] argument that Yien-Koo "did not gain standing to pursue an action on behalf of the Estate until February 15, 2018," (Wang Opp. Brf. at 27-28) then it must also recognize that the only reason Yien-Koo would have acquired standing so late was because of Andrew's deceitful 14-year run as "preliminary executor" under the Fraudulent 2003 Will. *See* Savitsky Decl. Exhs. 6, 7, and 8. In that case, the Wangs would be equitably estopped from asserting a statute of limitations defense in this action.

Second, Andrew indisputably gave false testimony in 2013 about his contact with the buyers, the payments made to the Estate, and his relationship to "Billie Wai" and her office. *See* King Supp. Brf. at 10-13. He also made myriad misstatements prior to 2013 to hide his self dealing. [King SMF ¶¶56-132]. These facts further support a finding that equitable estoppel applies to bar Andrew's invocation of the statute of limitations.

---

[15] *See* Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment [ECF Dkt. 210].

In the event that the Court finds the Defendants' statute of limitations arguments persuasive and rejects the evidence cited that Andrew's fraud, his breach of fiduciary duty, and the Estate's injury were not sufficiently discovered by Yien-Koo until 2013, Yien-Koo then respectfully requests leave to amend any deficiencies in the pleadings to include additional facts (which were already subject to discovery and identified in the King SMF) sufficient to establish equitable estoppel and/or equitable tolling in relation to the federal RICO and/or state law claims. *See Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (granting leave to amend to add fraudulent concealment claims at the summary judgment stage). To the extent the Court grants any portion of the Wangs' motion seeking dismissal of the Amended Complaint based upon the (incorrect) claim that Yien-Koo only seeks legal damages as opposed to equitable relief, Yien-Koo requests leave to cure any identified defect to make clear she seeks to void the transfers at issue; this would neither prejudice the Wangs nor occasion additional discovery. The Court has full authority to void the six sales agreements if it is found that Andrew breached his duty of loyalty and self-dealt. *See In re Estate of Rothko*, 43 N.Y.2d at 322 (an estate can only be made whole after a fiduciary's self-dealing by the voiding of the improper transactions and either a return of the property or a judgment for their current value); *United States v. Coppola*. No. 88-cv-3456, 1994 U.S. Dist. LEXIS 16848, *41 (E.D.N.Y. Nov. 17, 1994) (Weinstein, U.S.D.J.) (holding that a federal court had authority void a transfer of estate property that was the result of self-dealing by the executor and order the property be returned to the estate). *aff'd by United States v. Coppola*, 85 F.3d 1015 (2d Cir. 1996).

**B.** *The Estate's Injury Was Proximately Caused by Andrew.*

The Wangs argue that Yien-Koo cannot establish that the injuries suffered by the Estate were proximately caused by Andrew because he "acted at the direction of, and with approval from, the PA" and had no control over the prices. Wang Opp. Brf. at 29. The Wangs further suggest that the "PA's control over the sales process constitutes a supervening cause" between Andrew's

13

conduct and the injury to the Estate. *Id*. This argument is meritless and contradicts the Record. Any "approval" Andrew received from the PA was a direct result of his lies and scheme to defraud the PA and the Estate.

"[A] plaintiff may establish proximate cause where the 'original loss could not have occurred without the commission of the predicate act." *Marini v. Adamo*, 812 F. Supp. 2d 243, 268 (E.D.N.Y. 2011) (denying defendants' motion for summary judgment on plaintiffs' RICO claims, where defendants made fraudulent proposals and requests for payment through wire communications to plaintiffs that ultimately "defraud[ed] them out of their money," despite the actual deals only being agreed to "after further conversation") (internal quotations omitted); *see also Eastman Kodak Co. v. Camarata*, 05-cv-6384L, 2006 U.S. Dist. LEXIS 88206, *36-37 (W.D.N.Y. Dec. 6, 2006) (finding proximate causation where defendant's concealment of the ongoing scheme and interstate payments "helped keep the scheme afloat") (internal record citations omitted).

Ewald and the PA's emails make it explicitly clear that they understood Andrew to be seeking the best prices for the Estate based upon his knowledge of the Chinese markets and his fiduciary responsibilities. His 2019 denial of having played any role at all in setting Estate prices is irrefutable proof of a material omission and the absence of good faith.[16] Andrew's fraud foreseeably caused the sales at below-market values and the shipment of the 98 paintings to Hong Kong and, thus, was the proximate cause of the Estate's loss of property.

C.  *The Doctrine of In Pari Delicto Is Inapplicable.*

The Wangs argue that Yien-Koo's "fault is an unresolved issue of fact" in relation to the breach claims in this action and the defense of *in pari delicto* is available to them. Wang Opp. Brf. at 29. This is nonsense. The defense of *in pari delicto* requires that the alleged misconduct be

---

[16] Savitsky Decl. Exh. 11 at 75:9-76:13; 92:11-93:6; 93:7-18; 116:10-22; 117:3-118:23.

related to the same scheme or injury. *Sands Harbor Marina Corp. v. Wells Ins. Sevs. of Or., Inc.*, 156 F.Supp.3d 348, 360 (E.D.N.Y. 2016) (holding the doctrine of *in pari delicto* was inapplicable because "[a]lthough [plaintiff] and Defendants each committed similar wrongs involving fraud here, [plaintiff] was not a participant in Defendants unlawful activity that is the subject of this action. There is no indication that [plaintiff] and the Defendants cooperated in any culpable conduct, or that Defendants were even aware of [plaintiff's] fraudulent acts.").

The doctrine simply has no application here on the undisputed record. First, there is no evidence that Yien-Koo played any role whatsoever in the alleged breaches, that she participated in them, or even knew about the Wangs' self-dealing scheme until 2013. *See* King SMF at ¶¶46-321 (describing the factual circumstances surrounding the Estate sales); Wang SMF at ¶¶65-151 (same). Second, the Wangs' claim that Yien-Koo violated a TRO issued by a different court in a different proceeding has never been adjudicated, is simply untrue, and relies entirely upon inadmissible hearsay and lay opinion. The Wangs' citation does not establish that Yien-Koo ever sold property that was restrained by the TRO. *See* Wang Opp. Brf. at 30; *see also* King Counter SMF at Objection to ¶24. Third, the Wangs do not support their claim that Yien-Koo was a "de facto fiduciary" with any admissible evidence. To the contrary, between 2003 and 2017, neither the PA nor Andrew even recognized Yien-Koo as a *beneficiary* of the Estate because of her disinheritance under the 2003 Fraudulent Will, let alone a fiduciary. YK Decl. Exh. 6 (KING7 – 001018-1019). Finally, Yien-Koo brings this action *on behalf of the Estate and its beneficiaries*, not in her individual capacity. The doctrine is plainly inapplicable.

## CONCLUSION

For all of the forgoing reasons, the Plaintiff's Motion for Partial Summary Judgment should be granted in its entirety and the Defendants' alleged affirmative defenses found meritless as a matter of law.

Dated: New York, New York
     May 4, 2020                                Respectfully submitted:

                                                    **SAM P. ISRAEL, P.C.**

                                                    By: */s/ Timothy Savitsky*
                                                    Sam P. Israel, Esq. (SPI 0270)
                                                    Timothy Savitsky, Esq. (TS 6683)
                                                    180 Maiden Lane, 6th Floor
                                                    New York, NY 10038
                                                    646-787-9880
                                                    Email: admin@spi-pc.com
                                                    *Attorneys for Yien-Koo King*