**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**YIEN-KOO KING,**

**Plaintiff,**

-against-

**ANDREW WANG, SHOU-KUNG WANG, BAO WU TANG, JIAN BAO GALLERY, ANTHONY CHOU, CHEN-MEI LIN, WEI ZHENG, YE YONG-QING, YUE DA-JIN and JOHN DOES 1-9,**

**Defendants.**

**1:14-Civ-07694-(LJL) (JLC)**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S LOCAL RULE 56.1 STATEMENT**

**SAM P. ISRAEL, P.C.**
Sam P. Israel (SPI 0270)
Timothy Savitsky (TS 6683)
Tess Bonoli (TB 5637)
180 Maiden Lane, 6th Floor
New York, New York 10038
T: (646) 787-9880

## Table of Contents

Table of Authorities ...................................................................................... *ii*

**PRELIMINARY STATEMENT** ................................................................1

**ARGUMENT** ...............................................................................................5

    **I. All Facts in Yien-Koo's 56.1 Statement Are Relevant to Plaintiff's Motion and Should Not Be Stricken** ..............................................................5

    **II. Yien-Koo's Statement Complies with the Purpose of Local Rules 56.1** ..............................................................................12

    **III. All Assertions in Yien-Koo's 56.1 Statement Are Fully Supported by Admissible Evidence and Should Not Be Stricken** ...........................................13

    **IV. Yien-Koo's 56.1 Statement Does Not Include Argument and Should Not Be Stricken** ..........................................................................15

    **V. The PA's Declaration Is Based on Personal Knowledge and Her Official Capacity as PA, Thus Paragraphs of the Statement That Rely on the PA's Declaration Should Not Be Stricken** ..................................................16

    **VI. Yien-Koo's Declaration Is Reliable and Paragraphs in Her Rule 56.1 Statement Relying on It Should Not Be Stricken** ...............................................19

**CONCLUSION** ...........................................................................................23

## TABLE OF AUTHORITIES

**CASES**

*Amalgamated Lithographers of Am. v. Unz & Co. Inc*., 670 F. Supp. 2d 214
(S.D.N.Y. 2009) ................................................................................................15

*Am. Gen. Life Ins. Co. v. Diana Spira 2005 Irrevocable Life Ins. Trust*, 2014 U.S. Dist.
LEXIS 165367 (S.D.N.Y. Nov. 25, 2014).........................................................14

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ....................................12

*Ashley v. City of New York*, No. 14-cv-5559, 2017 U.S. Dist. LEXIS 107980
(E.D.N.Y. Jul. 12, 2017) ...................................................................................22

*Auto. Ins. Co. of Hartford, Connecticut v. Electrolux Home Products, Inc*., 10-cv-11,
2012 U.S. Dist. LEXIS 180395 (S.D.N.Y. Dec. 20, 2012) ................................12

*Bey v. City of New York*, 2009 U.S. Dist. LEXIS 60552 (S.D.N.Y. July 15, 2009) .........14

*Brown v. Bd. of Trustees of Bldg. Serv. 32B-J Pension Fund*, 392 F. Supp. 2d 434
(E.D.N.Y. 2005)........................................................................................3, 14, 15

*Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500 (S.D.N.Y. 2013) ..................2

*Chem. Bank v. Hartford Acc. & Indem. Co*., 82 F.R.D. 376 (S.D.N.Y. 1979) ................20

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona*, 138 F. Supp. 3d 352
(S.D.N.Y. 2015), *affd sub nom* 945 F.3d 83 (2d Cir. 2019) ..............................14

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670
(Fed. Cir. 1990) ................................................................................................19

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ..................................................22

*Edwards v. Khalil*, 12-cv-8442, 2016 U.S. Dist. LEXIS 44407
(S.D.N.Y. Mar. 31, 2016) ..................................................................................13

*Folio Impressions, Inc. v. Byer California,* 937 F.2d 759 (2d Cir. 1991) ........................18

*Gilani v. GNOC Corp.*, No. 04-cv-2935, 2006 U.S. Dist. LEXIS 23397
(E.D.N.Y. Apr. 26, 2006) .................................................................12

*Glaxo Wellcome, Inc. v. Eon Labs Mfg.*, 00-cv-9089, 2003 U.S. Dist. LEXIS 14683
(S.D.N.Y. Aug. 22, 2003) ...............................................................19

*Gordon v. Watley*, 624 F. Supp. 1138 (S.D.N.Y 1986) .......................................3

*Hayes v. New York City Dep't of Corrections*, 84 F.3d 614 (2d Cir 1996) .....................21

*HLT Existing Franchise Holding LLC v. Worcester Hospitality Group, LLC*,
609 Fed. Appx. 669 (2d Cir. 2015)................................................................3, 11

*Hollander v. American Cyanamid Co.,* 172 F.3d 192 (2d Cir. 1999) ..............................18

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) .........................................3, 12, 14

*Island Software and Comput Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257
(2d Cir. 2005) ...........................................................................22

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ..................................9

*Johnson & Johnson v. S. Pointe Wholesale, Inc.*, 08-cv-1297, 2014 U.S. Dist. LEXIS
190383 (E.D.N.Y. Mar. 28, 2014) ...............................................16

*Landy v. Irizarry*, 884 F. Supp. 788 (S.D.N.Y. 1994) ........................................3

*Lapine v. Seinfeld*, 08-cv-128, 2009 U.S. Dist. LEXIS 82304
(S.D.N.Y. Sept. 10, 2009) ....................................................15

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195
(2d Cir. 2005) ...........................................................................11

*Lighton Industries, Inc. v. Allied World National Assurance Company*, 348 F. Supp. 3d
167 (E.D.N.Y. 2018)................................................................3, 23

*Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) ...........................................4, 20

*McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d
(2d Cir. 1999) ...........................................................................22

*McKnight v. Cortright*, 17-cv-3000, 2018 U.S. Dist. LEXIS 215762
 (E.D.N.Y. Dec. 21, 2018) ....................................................2, 3, 5, 16

*Mueller v. Towers*, 10-cv-1093, 2010 U.S. Dist. LEXIS 113320
 (D. Conn. Oct. 25, 2010) ...................................................................... 4, 19-20

*Murray v. City of New York*, 16-cv-8072, 2020 U.S. Dist. LEXIS 22783
 (S.D.N.Y. Feb. 10, 2020) ................................................................................16

*M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205
(E.D.N.Y. 2010) .................................................................................... 3, 11, 13

*New York ex rel. Spitzer v. St. Francis Hosp.*, 94 F. Supp. 2d 423
(S.D.N.Y. 2000) ....................................................................................4, 17, 18

*OneWest Bank, N.A. v. Guerrero*, 14-cv-3754, 2018 U.S. Dist. LEXIS 95325 (S.D.N.Y.
June 6, 2018) ...............................................................................................4, 18

*Ott v. Fred Alger Mgmt.*, 11-cv-4418, 2016 U.S. Dist. LEXIS 132563
(S.D.N.Y. Sept. 26, 2016) ....................................................................... 3, 11, 19

*Primmer v. CBS Studios, Inc.*, 667 F.Supp.2d 248 (S.D.N.Y. 2009) .........................13, 19

*Rodriguez v. Schneider*, 95-cv-4083, 1999 U.S. Dist. LEXIS 9741 (S.D.N.Y. June 29,
1999), *aff'd*, 56 Fed App'x 27 (2d Cir. 2003) ..................................................15

*Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, No. 05-cv-
09087, 2009 U.S. Dist. LEXIS 46196 (S.D.N.Y. June 2, 2009) .......................................13

*SEC v. Singer*, 786 F. Supp. 1158 (S.D.N.Y. 1992) ..........................................................17

*Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157 (E.D.N.Y. 2012) .................4, 18

*Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443 (E.D.N.Y. 2014) .......................................19

*Torrel v. City of New York,* 114 Fed App'x 14 (2d Cir. 2004) ..........................................18

*United States v. Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn.*,
480 F.3d 841 (8th Cir. 2007) ......................................................................................20

## STATUTES, RULES, REGULATIONS

Fed. R. Civ. P. 56 ...................................................................................... *passim*

Plaintiff Yien-Koo Wang King ("Plaintiff" or "Yien-Koo"), in her capacity as preliminary executrix of the Estate of Chi-Chuan Wang (the "Estate"), pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP") and the Local Civil Rules of this Court, by and through its undersigned counsel, hereby submits this Memorandum of Law in Opposition to Defendant's Motion to Strike  (i) the entirety of Plaintiff's Statement of Uncontested Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment Finding Andrew Wang Liable for Breach of His Fiduciary Duty (the "Statement" or "King SMF"); (ii) the Declaration of Yien-Koo Wang King ("Yien-Koo Declaration"); and (iii) portions of the Declaration of the Public Administrator of New York County ("PA Declaration").[1]

## PRELIMINARY STATEMENT

This case is complex. It involves a multi-faceted criminal enterprise, namely the Wang Family, which operated in no less than four countries[2], and over the course of approximately twenty years, to pilfer and resell hundreds of millions of dollars' worth of classical Chinese art. Providing appropriate context and framework for the injuries to the Estate of Chi-Chuan Wang ("C.C." or "C.C. Wang"), therefore, requires the careful distillment of facts related to (a) intersecting procedural developments over the past 17 years (in Supreme Court, Federal Court, Surrogate's Court and Bankruptcy Court), (b) the activities of nearly a dozen international corporations and corresponding accounts, (c) the disposition of hundreds of classical Chinese paintings, (d) the execution of separate fraudulent schemes involving multi-million dollar assets,

---

[1] *See* Defendant's Motion to Strike, dated April 13, 2020 (hereinafter "Defs. Motion") [ECF Dkt. 216]; Plaintiff's Statement of Uncontested Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment Finding Andrew Wang Liable for Breach of His Fiduciary Duty, dated February 14, 2020 (*i.e.*, the "Statement" or "King SMF") [ECF Dkt. 199]; Declaration of the Public Administrator of New York County, dated February 14, 2020 (hereinafter, "PA Declaration" or "PA Decl.") [ECF Dkt. 200].

[2] These are the United States, Hong Kong, the People's Republic of China, and the British Virgin Islands.

and (e) tens of thousands of pages of legal filings, together with thousands of pages of relevant deposition testimony, trial testimony, affidavits, and exhibits. In view of the enormity of this task, Plaintiff Yien-Koo respectfully submits that her 92-page Statement of Material Facts (*i.e.* the Statement) [ECF Dkt. 199] is relatively barebones. *See Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 509 (S.D.N.Y. 2013) (denying defendant's motion to strike plaintiff's 56.1 statement, explaining "[a]lthough Plaintiffs' ninety-page, 403-paragraph 56.1 statement is certainly lengthy, the Court does not find it to be unduly so in light of the numerous and complex issues raised in this case and the large body of evidence Plaintiffs have supplied in connection with their motion."). The Statement complies with the Federal Rules and the Wangs have failed to meet their "heavy burden" to justify a formal striking of a party's Rule 56.1 Statement. *McKnight v. Cortright*, 17-cv-3000, 2018 U.S. Dist. LEXIS 215762, *25 n. 1 (E.D.N.Y. Dec. 21, 2018). The motion should be denied.

First, all facts in Yien-Koo's 56.1 Statement are well-supported by reliable, admissible evidence and are: (a) relevant to the Estate's breach of fiduciary duty claims, as they provide necessary context for Andrew's omissions and actions which resulted in breach and injury and (b) demonstrate that, even if Andrew was not engaging in self-dealing—and he clearly was—he acted with bad faith in relation to the Yue Da Jin sale. Given Andrew's extensive knowledge of the Chinese art market he should have known better than to sell the Estate artwork for such low prices. This evidence includes references to the Wang Defendants'[3] answer to the amended complaint; the Wangs' own relevant deposition and trial testimony; sworn affidavits and supporting exhibits; and interrogatory responses. The Wangs' true motive in seeking to strike the Statement is not its purported lack of support or length, but rather its damning exposure of Andrew as a malfeasant,

---

[3] Andrew and Shou-Kung Wang ("SK") are collectively referred to as the "Wang Defendants" or "Wangs."

lying fiduciary. *See, e.g.*, King SMF at ¶¶56-134 (setting forth Andrew Wangs' various, contradictory testimonies related to his sale of the Estate's paintings).

Second, even if the Court finds fault in some part of the presentation of the Plaintiff's statement, it has wide discretion to determine which evidence is admissible.[4] Any finding that a statement is not appropriately supported does not necessitate a formal order striking portions of the Statement, line by line.[5] Instead, the Court should simply disregard the defective portion in its analysis.[6]

Third, the Wangs' 56.1 Statement in support of their own motion for summary judgment [ECF Dkt. 196] contains the same categories of information as Yien-Koo's and, thus, they cannot claim to have suffered any prejudice. *See Lighton Industries, Inc. v. Allied World National Assurance Company*, 348 F. Supp. 3d 167, 186, 197 (E.D.N.Y. 2018). The parties' competing motions for summary judgment—though filed simultaneously in accordance with their scheduling agreement—are effectively cross-motions and Yien-Koo respectfully requests that they be treated as such.[7] In preparing her own Rule 56.1 Statement, Yien-Koo anticipated the Wangs' motion seeking the dismissal of her RICO action and included material facts relevant thereto in order to avoid submitting multiple, piecemeal Rule 56.1 statements. Thus, the Statement the Wangs seek

---

[4] *See HLT Existing Franchise Holding LLC v. Worcester Hospitality Group, LLC*, 609 Fed. Appx. 669, 671 (2d Cir. 2015); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001); *McKnight v. Cortright*, 17-cv-3000, 2018 U.S. Dist. LEXIS 215762, *25 n. 1 (E.D.N.Y. Dec. 21, 2018); *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 209 (E.D.N.Y. 2010).
[5] *Brown v. Bd. of Trustees of Bldg. Serv. 32B-J Pension Fund*, 392 F. Supp. 2d 434, 446 (E.D.N.Y. 2005) (not striking argument and hearsay in a 56.1, and overlooking failure to conform to the local rules for 56.1 statements).
[6] *McKnight v. Cortright*, 17-cv-3000, 2018 U.S. Dist. LEXIS 215762, *25 n. 1 (E.D.N.Y. Dec. 21, 2018); *Ott v. Fred Alger Mgmt.*, 11-cv-4418, 2016 U.S. Dist. LEXIS 132563, *23-24 (S.D.N.Y. Sept. 26, 2016).
[7] *Landy v. Irizarry*, 884 F. Supp. 788, 790 (S.D.N.Y. 1994) (treating submissions as a cross motion for summary judgment, "as it is clear on their face that they were intended as both and they do in fact satisfy both purposes"); *Gordon v. Watley*, 624 F. Supp. 1138, 1140 (S.D.N.Y 1986) (treating submissions as a cross motion for summary judgment, despite them not being formally labeled as such).

to strike is serviceable to both applications for summary judgment and covers nearly identical subjects as the Wangs' own Rule 56.1 statement of undisputed fact.

The Wangs also move to strike the declaration of the New York County Public Administrator [ECF Dkt. 200] due to a purported lack of personal knowledge and the Declaration of Yien-Koo King[8] due to a purported lack of credibility. The Court should deny these requests as well. The statements contained in the PA's Declaration are based on her personal knowledge of the policies and procedures followed by her office, which has served as the Temporary Administrator of the Estate since 2003, as well as her firsthand, personal review of documents relevant to her office's co-administration of the Estate (PA Decl. ¶¶1-5). As Second Circuit case law has firmly established, "[a]ffiants may testify as to the contents of records they reviewed in their official capacity" even if the affiant's testimony pertains to events that were not contemporaneous with her role and if she does not have personal knowledge of the actual creation of the documents.[9]  As for Yien-Koo's Declaration, the testimony therein is reliable, contains adequate foundation, is based on her personal knowledge, and is submitted under penalty of perjury; it is admissible. A motion to strike is not the appropriate vehicle for challenging a witness's credibility.[10]

---

[8] Declaration of Yien-Koo Wang King, dated February 14, 2020 (hereinafter, "Yien-Koo's Declaration" or "YK Decl.")  [ECF Dkt. 198].

[9] *OneWest Bank, N.A. v. Guerrero*, 14-cv-3754, 2018 U.S. Dist. LEXIS 95325 at *13-14 (S.D.N.Y. June 6, 2018); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 163-64 (E.D.N.Y. 2012); *New York ex rel. Spitzer v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000).

[10] *Mueller v. Towers*, 10-cv-1093, 2010 U.S. Dist. LEXIS 113320, at *4-5 (D. Conn. Oct. 25, 2010); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 33 (D.D.C. 2002).

4

**ARGUMENT**

## I.     All Facts in Yien-Koo's 56.1 Statement Are Relevant to Plaintiff's Motion and Should Not Be Stricken

Motions to strike a party's Rule 56.1 statement are disfavored by courts and those seeking to achieve such a drastic remedy bear a "heavy burden" to establish the need to strike. *McKnight*, 17-cv-3000, 2018 U.S. Dist. LEXIS 215762, *25 n. 1 (E.D.N.Y. Dec. 21, 2018). The Wangs come nowhere close to meeting that burden.

As set forth below, each tranche of facts in Yien-Koo's Statement is relevant to findings that (i) Andrew breached his duties of good faith and full disclosure when representing how he was arriving at his initial sale proposals and what negotiations/interactions he was having with the buyers and (ii) his affirmative defenses are factually and legally meritless.

Section I [King SMF ¶¶1-28] concerns the initial formation of the Wangs' enterprise by describing relevant background as to how Andrew became the Estate's preliminary executor (*i.e.* through fraud) and how he and his father first came into possession of paintings [King SMF ¶¶23-24] which would later be collected, then privately sold, by the Estate to purported buyers, including "Yue Da Jin." Further, these facts describe Andrew and SK's motive, knowledge, preparation, and participation related to their activities in the Wang Family criminal enterprise. Therefore, they are not only crucial background facts relevant to Andrew's exercise of bad faith, they are also relevant to the Wangs' cross-motion for summary judgment dismissing the Estate's RICO Action.

Section II [King SMF ¶¶29-45] concerns the initial formation of the Estate after C.C. Wang's death in 2003, what assets the Estate collected, how they were catalogued, and how/when they were appraised. It also explains how the PA came to be Andrew's Co-fiduciary and what Andrew's responsibilities were upon his appointment as preliminary executor. These facts are all relevant to the Estate's management of its assets and Andrew's obligations as an equal Co-

5

fiduciary, acting jointly alongside the PA. Discussion of how the Estate's paintings were inventoried are also relevant to lay necessary foundation for the authenticity of the Estate's photographs. This section further explains the origin of the "OTE" acronym used by the Estate to identify paintings.

The facts relating to Andrew's sworn admission that he found "250 pieces" of C.C. Wang's seals in C.C.'s apartment following his death, but that the Estate only has a record of receiving 108 seals from Andrew, is relevant to the Plaintiff's claim of self-dealing. [King SMF ¶¶30, 41-44]. The Plaintiff's expert, Patrick Regan, noticed that many of the Estate paintings that reappeared at Andrew's 2009 Bao Wu Tang Exhibition at the Capital Museum contained *additional seals* bearing the name of Chi-Chuan Wang that were not present on the paintings when they were first collected by the Estate and photographed in 2004. Declaration of Patrick Regan [ECF Dkt. 201] Exh. 1 (the Regan Report) at ¶¶35-36. The brand new seals on the Estate's former paintings were the very same seals that Andrew failed to turn over to the Estate and indicate that he and/or his father placed them on the Estate's paintings at some point between their shipment to Billie Wai in Hong Kong and the November 2009 Bao Wu Tang Exhibition. *Id.* at ¶¶41-47.

Section III (A) [King SMF ¶¶46-55] describes the initial decisions in relation to the Estate sales and which witnesses have personal knowledge of how it was determined that the Estate would privately sell its *classical* Chinese paintings to buyers such as "Yue Da Jin," but not sell the other assets it had collected [*see* King SMF ¶41(a)-(f)]. In opposition to Yien-Koo's motion, Andrew describes the Estate as in financial straits with no choice but to liquidate assets as soon as possible. AW Decl. ¶18.[11] The fact that the Estate did not liquidate all of its assets and is still in possession of millions of dollars' worth of paintings and other assets, such as C.C.'s contemporary paintings

---

[11] Declaration of Andrew Wang, dated April 13, 2020, "Andrew's Declaration" or "AW Decl." [ECF Dkt. 212].

[*see* King SMF ¶41(a)-(f)] cuts against that claim. Indeed as the PA testified, it would not be the custom of the office to intentionally sell the Estate's paintings at below market value, despite concerns over liquidity. PA Decl. ¶51. This is precisely why the PA instructed Andrew that she was not agree to any sale unless it was at a price "AT LEAST" 20% higher than the Sotheby's appraisal: she was concerned with getting appropriate values, not liquidating as soon as possible. Savitsky Decl. Exh. 32 (WANG001890).

Paragraph 50 of the Statement is particularly important, because it demonstrates that Peter Schram, despite the claim made in his 2014 affirmation—cited repeatedly by the Wangs—has no recollection of ever personally participating in discussions with Sotheby's about the auctioning or selling of Estate paintings. *See* Wang SMF at ¶¶39-41, 58, 60-62;   Kelly Decl. Exh. 11 (Schram Affirm. at ¶10); *see also* Plaintiff's Objections and Responses to the Wang SMF [ECF Dkt. 218] at ¶¶60-68. His claim that Sotheby's only selected "the best" works for auction, therefore, lacks the appropriate foundation to be admissible. *Id.* Moreover, this claim is disproven by email records indicating that it was Andrew who first proposed auctioning certain works through Sotheby's after he completed 5 out of the 6 Estate sales. PA Decl. Exh. 26; Second Savitsky Decl. ¶8. Paragraphs 52 to 55 of Yien-Koo's Statement relate to Yien-Koo's lack of knowledge about the Estate's private sales and are therefore relevant to Andrew's statute of limitations and *in pari delicto* defenses.

Sections III (B-E) [King SMF ¶¶56-134] discuss the panoply of misrepresentations and omissions Andrew made in connection with the six private sales of Estate paintings between 2005 and 2009. Though Yien-Koo only seeks summary judgment in relation to the last sale to "Yue Da Jin" in 2009, Andrew's representations prior to that sale are obviously relevant to the PA's understanding of Andrew's efforts to find buyers, negotiate with them, and sell Estate paintings.

For example, it is irrefutable that Andrew failed to disclose to the PA or anyone else that "Wei Zheng" was not the true buyer of Estate assets, despite Andrew's creation, circulation, and signing of documents which explicitly identified him as such. [King SMF ¶¶60-63, 194-217]. Andrew also irrefutably failed to disclose that with respect to all of the Estate's sales, the Estate was being paid directly by his own offshore corporations. [King SMF ¶¶65-78]. Thus, during his deposition in 2013, Andrew falsely testified that he never owned *any* companies between 2003 and 2009 and falsely testified that he did not know how the buyers managed to wire money from China to the Estate's New York account. [King SMF ¶¶65-67, 72-78]. Yet in 2019, he revealed he was the source of all of the payments to the Estate—including those made with respect to the 2009 sale to "Yue Da Jin." [King SMF ¶¶68-71].

Similarly, Andrew never disclosed to the PA that the shipping destination for all of the 98 Paintings—including those purportedly shipped to "Yue Da Jin"—was Andrew's own accountant's office in Hong Kong. [King SMF ¶¶79-92]. Andrew falsely testified in 2013 that he did not know who "Billie Wai" was, had no prior relationship with her, and that the office he shipped the paintings to was just a mail office he found which accepted packages. [King SMF ¶¶ 79-84]; *see also* Savitsky Declaration Exh. 24 (2013 AW Dep. Trans. at 727:21-24, 943:19-944:13, 945:6-946:12) (Q: Who is Billy Wai, W-A-I? A: Who is Billy Wai? Q: Yes. Do you know that name? A: No.). Yet he revealed in 2019 that Billie Wai is actually the Wang Family accountant and the office he shipped the paintings to (without disclosure to the PA) is his accountant's office. [King SMF ¶¶85-92].

Andrew also failed to disclose his relationship with the five purported buyers and that he was not communicating with them directly. In 2013, Andrew gave explicit testimony that the purported buyers were his old friends, or otherwise, friends of friends. [King SMF ¶¶93-98, 110].

Yet by 2019, Andrew claimed the buyers were all strangers and that he had no relationship with them other than through a purported intermediary named "Er Shi Fu." [King SMF ¶¶99-109].

Andrew also failed to disclose that the residential address listed for "Chen Mei Lin" in the Estate's second, $1.4 million contract of sale was actually his own address in Shanghai. [King SMF ¶¶128-134]. The explanation that Andrew gave in 2014—when Yien-Koo first discovered this fact—was that "the buyer [Chen Mei-Lin] was temporarily staying in Andrew's home while his own home was being renovated." *Id.* In 2019, however, Andrew testified he had no relationship with the purported buyers and never spoke to them directly. [King SMF ¶¶105-109].

These deceits and omissions in relation to the pre-Yue Da Jin sales are relevant to Yin-Koo's Motion for partial summary judgment for multiple reasons. First, they are all part of the same pattern of bad faith and non-disclosure which Andrew exhibited in relation to the Yue Da Jin sale: the evidence demonstrates that Andrew was clearly failing to disclose material facts to the PA and that his non-disclosure and misrepresentations were not mistakes, but rather palpable bad faith. Second, they are relevant to Andrew's purported causation, *in pari delicto*, and statute of limitations defenses since they show his manifest wrongdoing; Yien-Koo's lack of involvement in, or knowledge of, the sales; and the Estate's reliance on Andrew as the architect of the transactions. Third, Andrew's abject lies are relevant to Yen-Koo's summary judgment motion because it is well settled that where a non-movant's testimony is "so replete with inconsistencies and improbabilities that no reasonable [fact-finder] would undertake the suspension of disbelief necessary to credit" it, then the non-movant's testimony will not be a bar to summary judgment. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted).

Sections IV (A)-(G) [King SMF ¶¶135-321] concern Andrew's six private sales of the Estate's paintings and Andrew's representations to the PA and Ewald about his purported role in

finding buyers and negotiating with them. These sections mirror the subject of ¶¶65-151 in Wangs' Rule 56.1 Statement of Material Facts.

Section V [King SMF ¶¶322- 337] concerns the Kings' and Wangs' failed negotiations and exchange of paintings in Shanghai and is relevant to Andrew's affirmative defense that the statute of limitations has expired on all claims of fiduciary breach and RICO violations. In making his statute of limitations argument, Andrew relies heavily on filings Yien-Koo submitted in the Surrogate's Court in 2010 and 2011 concerning Andrew's participation in the November 2009 *Bao Wu Tang* Exhibition in Beijing. *See* Wang Opp. Brf. [ECF Dkt. 214]  at pp. 25-28. Andrew claims that Yien-Koo's filings indicate that she knew, or should have known, of Andrew's fiduciary breaches and self-dealing as early as November 2009. But Yien-Koo did not know the terms of, or circumstances surrounding, the Estate's private sales of the 98 Paintings until 2013. [King SMF ¶361]. As her Statement indicates, her concerns about the Bao Wu Tang exhibition at the Capital Museum initially stemmed from Andrew's display of *Guo Xi*'s  "Travelers in the Autumn Mountains" painting (along with others) which he flatly denied receiving from Yien-Koo at the May 2005 settlement exchange. [King SMF ¶¶347-352]. Thus, Section V establishes that her subsequent submissions do not indicate that Yien-Koo was on notice of self-dealing or fiduciary breach as of 2010 or 2011: she had no information whatsoever regarding what happened to the Estate paintings, other than that some of them appeared at the 2009 exhibition in Beijing.

Section VI [King SMF ¶¶338-361] relates to the 2009 *Bao Wu Tang* museum exhibition in Beijing, at which 15 of the 98 privately sold Estate paintings were displayed. This section is relevant to Andrew's timeliness defense for the above-noted reasons. It also relates to Andrew's extensive background in classical Chinese art and apparent connections in the Chinese art world. Though he was willing to coordinate a grand exhibition of his grandfather's former paintings in

2009, there is no record of him suggesting this be done prior to the Estate's private sales in order to increase their value. *But see* Regan Decl. Exh. 1 (Regan Report at ¶34 noting Chinese art exhibitions are often organized to increase interest and confidence in a painting prior to its auction). Section VI further demonstrates Andrew's familiarity with auction house practices, experts in the field, and art recordkeeping customs [King SMF at ¶¶303-320]. It further relates to his intimate knowledge of the valuation and contents of the Estate's collection [King SMF at ¶¶322-337; 340-352]. These facts are all relevant in establishing that Andrew breached his fiduciary duty of good faith and full disclosure. He cannot claim to have been ignorant of the Estate's collection of paintings, the Chinese art market, or its customs.

What facts are relevant is ultimately a determination for this Court to make.  District Courts "ha[ve] broad discretion in choosing whether to admit evidence on summary judgment." *HLT Existing Franchise Holding LLC v. Worcester Hospitality Group, LLC*, 609 Fed. Appx. 669, 671 (2d Cir. 2015) (affirming the district court's proper admittance and consideration of certain evidence and grant of summary judgment); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) (same, affirming in part); *Ott v. Fred Alger Mgmt.*, 11-cv-4418, 2016 U.S. Dist. LEXIS 132563, *23-24 (S.D.N.Y. Sept. 26, 2016) (denying defendant's motion to strike plaintiff's 56.1 statement); *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 209 (E.D.N.Y. 2010). It is respectfully submitted that as explained above, each of the Sections and accompanying paragraphs and records are relevant to Yien-Koo's Motion for Partial Summary Judgment. For similar reasons, each Section and paragraph in the Statement is also

directly relevant to the Wangs' simultaneously pending motion for summary judgment dismissing the complaint in its entirety.[12]

## II.    Yien-Koo's Statement Complies with the Purpose of Local Rule 56.1

The facts relevant to this dispute have been ongoing for decades and the Record contains hundreds of thousands of pages of documents, including deposition transcripts, court filings, and affidavits stretching back to July 2003. Savitsky Decl. at ¶6. Simply put, the Record is huge. Under the circumstances, Yien-Koo's Statement contains the bare minimum facts relevant to her Motion and helpfully directs the Court to carefully pinpointed evidence.

Defendant frequently relies on *Holtz* to assert that Plaintiff's 56.1 Statement is too voluminous; however, *Holtz* is cited throughout Second Circuit case law for the proposition that the Court has "broad discretion to determine whether" a party's 56.1 statement is in compliance with the local court rules; not for Defendant's proposition that the Court should strike and discard a 56.1 statement on the basis of its size. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Moreover, in *Holtz* and *Gilani*, the parties failed to even submit 56.1 statements and, in their broad discretion, the courts chose to overlook this noncompliance and proceeded with their review. *See Holtz*, 258 F.3d at 73; *Gilani v. GNOC Corp.*, No. 04-cv-2935, 2006 U.S. Dist. LEXIS 23397, at *4 (E.D.N.Y. Apr. 26, 2006). Defendant's reference to *Auto Ins. Co. of Hartford* is similarly misguided.[13]

---

[12] Defendant cites to *Anderson* for the proposition that irrelevant or unnecessary factual disputes "will not be counted," however, the *Anderson* Court never even mentions the possibility of striking irrelevant material.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[13] The *Auto Ins. Co. of Hartford* Court did not even consider a motion to strike ("stricken" was only used in the context of confidential information and a sealing order) and the circumstances were highly distinguishable from those in the present case. *Auto. Ins. Co. of Hartford, Connecticut v. Electrolux Home Products, Inc.*, 10-cv-11, 2012 U.S. Dist. LEXIS 180395, at *1-2, n. 1 (S.D.N.Y. Dec. 20, 2012) (addressing, in a footnote, that Defendant's 56.1 was improper where it is was "essentially a verbatim copy of pages 1-10 of Defendant's opening brief, broken up into numbered statements").

Moreover, the Wangs' responses and objections to Yien-Koo's Statement propose a nonsensical solution: the Wangs admonish the Statement for not being "short and concise" and for some paragraphs containing "a lot of sentences" (Defs. Motion at 5-6), but then *162* of the Defendants' responses direct the Court to review the complete, several-hundred-page documents and testimonies cited for their "full meaning" and "full context."[14] Plaintiff's Statement complies with the purpose and spirit of Local Rule 56.1 and Defendant's Motion to Strike the Statement on these grounds is baseless.

### III.   All Assertions in Yien-Koo's 56.1 Statement Are Fully Supported by Admissible Evidence and Should Not Be Stricken

Yien-Koo's Statement is amply supported by the evidence cited. However, even if certain statements were unsupported—which they are not—Courts in the Second Circuit have established a practice of simply disregarding any defects, rather than "engag[ing] in the time-consuming, cumbersome process of formally striking such evidence in a line-by-line fashion." *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 209 (E.D.N.Y. 2010) (denying defendant's motion to strike portions of plaintiff's Rule 56.1 statement); *see also Edwards v. Khalil*, 12-cv-8442, 2016 U.S. Dist. LEXIS 44407, *41 (S.D.N.Y. Mar. 31, 2016) (same); *Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, No. 05-cv-09087, 2009 U.S. Dist. LEXIS 46196, *29-30 (S.D.N.Y. June 2, 2009) (same); *Primmer v. CBS Studios, Inc.*, 667 F.Supp.2d 248, 254-255 (S.D.N.Y. 2009) (same). The Court is not obliged to strike every line that Defendant takes

---

[14] *See* Defs. 56.1 Response at ¶¶ 3-7, 14-17, 21-22, 24, 34, 57, 60-64, 72, 75, 77, 79, 81, 85, 88, 94, 101, 105-110, 120-126, 128, 130-132, 134-135, 137-139, 141-147, 150-151, 154, 156, 160-162, 164-178, 181-182, 188, 192-193, 195, 197-198, 200, 205, 208-214, 216-221, 223-224, 226-230, 233-236, 239, 241-244, 246-250, 252, 257-264, 267-271, 274-277, 283-286, 288-291, 298, 300, 303-304, 309-310, 313-315, 332, 340, 353-354, 360.

issue with.[15] *See Holtz*, 258 F.3d at 73 (discussing the proper content for 56.1 statements but never suggesting that the district court should have stricken portions of the 56.1 statement).

Throughout his Motion, Andrew frequently mischaracterizes Yien-Koo's summaries or descriptions of sizable documents as a lack of evidentiary support. Defs. Motion at 6-8. However, *Bey*—another case misused by Defendant—emphasizes the permissibility of summaries and descriptions in 56.1 statements. A party "need not include a description of every assertion contained in the documents in their factual allegation… [the] description, while not wholly complete, accurately depicts the portion of the documents with which it deals." *Bey v. City of New York*, 2009 U.S. Dist. LEXIS 60552, at *9-12 (S.D.N.Y. July 15, 2009); *see also Brown v. Bd. of Trustees of Bldg. Serv. 32B-J Pension Fund*, 392 F. Supp. 2d 434, 446 (E.D.N.Y. 2005) (denying both parties' motions to strike).

Finally, Defendant's Motion states "[s]creenshots are not 'statements' and also constitute hearsay" (Defs. Motion at 8), without citing any authority to support the assertion. These "screenshots" are clearly cited in footnotes throughout Yien-Koo's Statement and point to reliable, admissible evidence, including exhibits authenticated at depositions and in declarations. Yien-Koo simply provided these images for the Court's ease of reference to the duly cited documents, in accordance with the spirit of Rule 56.1, which is aimed at "freeing courts from the need to hunt through voluminous records." *Holtz*, 258 F.3d at 74. These visual aids are particularly illustrative

---

[15] Defendant's representations to the Court regarding *Congregation Rabbinical* and *Diana Spira* are inaccurate. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vil. of Pomona*, 138 F. Supp. 3d 352, 395-96 (S.D.N.Y. 2015), *aff'd sub nom* 945 F.3d 83 (2d Cir. 2019) (not striking portions of plaintiff's 56.1, explaining "the Court will consider the sources for the claims made in dueling Rule 56.1 Statements…so there is no need to separately strike or disregard these statements"); *Am. Gen. Life Ins. Co. v. Diana Spira 2005 Irrevocable Life Ins. Trust*, 2014 U.S. Dist. LEXIS 165367, at *3-6 (S.D.N.Y. Nov. 25, 2014) (striking portions of defendant's 56.1 where statements were argumentative or "*unsupported by any citation* to record evidence" but denying the remainder of plaintiff's motion to strike on the grounds of unauthenticated exhibits, hearsay, and irrelevance) (emphasis added).

and efficient for the Court in light of the frequent, brazen contradictions in Andrew's sworn testimony and his representations to the PA.[16] Despite Defendant's misrepresentation to the Court, there is nothing in the Local Rules or Second Circuit case law that prohibits the use of images in a 56.1 Statement.

## IV.     Yien-Koo's 56.1 Statement Does Not Include Argument and Should Not Be Stricken

Yien-Koo's Statement does not include argument, but rather, concise statements to paraphrase the extensive Record before this Court. Regardless, inclusion of argument is not a sufficient reason to strike portions of a party's affirmation or statement of material facts in dispute. *Brown*, 392 F. Supp. 2d at 446 (denying both parties' motions to strike portions of each other's summary judgment documents and submissions, and ruling on the summary judgment motions, explaining "plaintiff's inclusion of argument in his affirmation and statement of material facts [] is not a sufficient reason to strike them").[17]

Yien-Koo's factual assertions are well-supported logic derived from the Record and should not be stricken simply because they are contrary to the Wangs' agenda. The Wangs mischaracterize any statement that is unfavorable to Andrew and contrary to their own claims and defenses as "argument," including Yien-Koo's recitations of deponents' direct testimony, findings of fact and

---

[16] *See infra* Section VI (comparing Andrew's conflicting testimonies regarding: how the five purported buyers wired money to the Estate; the shipment of Estate artwork to his own accountant's office in Hong Kong; and the process of locating and communicating with the five purported buyers).

[17] Defendant's characterization of the relevant case law is, once again, anomalous. In *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 217 (S.D.N.Y. 2009), the Court struck defendant's counterstatement to plaintiff's statement because it was legal argument that "merely duplicate[d] Defendant's 56.1 Reply" to plaintiff's statement. In *Lapine v. Seinfeld*, 08-cv-128, 2009 U.S. Dist. LEXIS 82304, *11-12 (S.D.N.Y. Sept. 10, 2009), the Court did not strike the argumentative material, but simply disregarded portions of the 56.1 statement that constituted legal argument after "considering the parties' contentions as to materiality." In *Rodriguez v. Schneider*, 95-cv-4083, 1999 U.S. Dist. LEXIS 9741, at *4 n. 3 (S.D.N.Y. June 29, 1999), *aff'd*, 56 Fed App'x 27 (2d Cir. 2003),  the court noted that 56.1 statements should not be "the result of 'cut-and-paste' efforts with the memorandum of law," but did not strike any portions of the 56.1 and, instead, emphasized that "the purpose of Local Rule 56.1 is to assist the Court in understanding the scope of the summary judgment motion."

legal conclusions reached by courts in this action and prior related actions, and aggregated statements based on the sum of fully supported preceding statements. Defs. Motion at 8-9. Aggregating data and summarizing voluminous records and verbose testimony does not constitute argument. *See, e.g.*, *Murray v. City of New York*, 16-cv-8072, 2020 U.S. Dist. LEXIS 22783, *30 (S.D.N.Y. Feb. 10, 2020) (considering, on a motion for summary judgment, defendant's 56.1 Statement summarizing testimony from several plaintiffs); *Johnson & Johnson v. S. Pointe Wholesale, Inc.*, 08-cv-1297, 2014 U.S. Dist. LEXIS 190383, *64 (E.D.N.Y. Mar. 28, 2014) (considering, on motion for summary judgment, a chart set forth in plaintiff's 56.1 statement, summarizing documents' contents). To the extent the Court finds that assertions in Yien-Koo's Statement are argument rather than irrefutable fact, the appropriate remedy is to disregard the argumentative portions, not strike the Statement in its entirety. *See McKnight*, 2018 U.S. Dist. LEXIS 215762, at *25 n. 1.

Finally, Defendant claims that the headings in Yien-Koo's Statement constitute argument. Defs. Motion at 9. However, the Statement includes the following clear notation on the very first page, "[t]he headings contained within this Rule 56.1 Statement are provided for clarity and organizational purposes, but are not intended to themselves advance statements of undisputed fact." King SMF at 1, n. 1. Therefore, Defendant's objection is yet-another unfounded misrepresentation to the Court and should be disregarded.

## V.   The PA's Declaration Is Based on Personal Knowledge and Her Official Capacity as PA, Thus Paragraphs of the Statement That Rely on the PA's Declaration Should Not Be Stricken

The Public Administrator of New York County, Dahlia Damas (the "Public Administrator" or "PA"), submits her declaration based on business records which she personally reviewed in her official capacity as Public Administrator, as well as her personal knowledge of the policies,

procedures, and methodologies followed by her office, which has served as the Temporary Administrator of the Estate since 2003. PA Decl. ¶¶1-5. Each of the documents the PA submitted as exhibits to her declaration have been maintained in the ordinary course of business by her office. PA Decl. ¶5. Such testimony is undeniably admissible when it is based on personal knowledge *or* in the affiant's official capacity. All statements in the PA's Declaration fulfill at least one—if not both—of those criteria.

Courts in the Second Circuit have routinely acknowledged that "observations over time" constitute "personal knowledge" for the purpose of admissibility. *See New York ex rel. Spitzer v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000); *SEC v. Singer*, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992) (finding the testimony to be adequately supported by personal knowledge, explaining "a witness'[s] conclusion based on personal observations over time may constitute personal knowledge" and "[t]here is no question that [declarant] had an opportunity to observe the facts upon which he bases his testimony").[18]

It is also well established that "[a]ffiants may testify as to the contents of records they reviewed in their official capacity." *New York ex rel. Spitzer*, 94 F. Supp. 2d at 425 (denying defendants' motion to strike the affidavit of a department director [except for a single paragraph], and finding that the affidavit did not contain inadmissible hearsay despite the director having "no contemporaneous connection" to the documents, reasoning that the director was nevertheless "in a position to testify as to the history" of the department's process and was testifying as to documents "with which he reasonably would have become familiar with in his official capacity");

---

[18] Similarly, Peter Schram's testimony that "the chances of" it being the case that Ethel Griffin, the former PA, was the one who suggested to Andrew the use of a Chinese intermediary named Er Shi Fu, "is somewhere between zero and nil." King SMF ¶104. As the legal counsel to Ethel Griffin for many years, he has personal knowledge of the likelihood of her having been connected to a Chinese art intermediary living overseas.

17

*see also OneWest Bank, N.A. v. Guerrero*, 14-cv-3754, 2018 U.S. Dist. LEXIS 95325 at \*13-14 (S.D.N.Y. June 6, 2018) (finding affiant's testimony admissible because the testimony was based on business records that the affiant had reviewed in her official capacity, noting an "or" standard for admissibility based on "personal knowledge" <u>or</u> on "the knowledge acquired from their review of business records or other documentary evidence kept in the regular course of business"); *Serrano v. Cablevision Sys. Corp*., 863 F. Supp. 2d 157, 163-64 (E.D.N.Y. 2012) (same).

Furthermore, contrary to Defendant's contentions, an affiant's testimony may be admissible even where the affiant has no contemporaneous connection to the documents or personal knowledge of the creation of the documents that she is reviewing and testifying to. *OneWest Bank*, 2018 U.S. Dist. LEXIS 95325 at \*14  (admitting affiant's testimony where she reviewed records in her official capacity but did "not have personal knowledge of the actual creation of the document"); *New York ex rel. Spitzer*, 94 F. Supp. 2d at 425  (same). Indeed, even an authority cited by Defendant, when properly analyzed, validates that the PA's Declaration is supported by personal knowledge. *See, e.g., Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 764 (2d Cir. 1991) (affirming the district court's determination that the witness had personal knowledge, even where the witness said she merely "believed" a certain document was "in her studio's possession," as the court reasoned that her "general observation and knowledge" was sufficiently admissible).[19]

---

[19] Defendant also erroneously relies on cases that are highly distinguishable from the facts at hand. *See Torrel v. City of New York,* 114 Fed App'x 14, 16 (2d Cir. 2004) (affirming inadmissibility of affidavit where the affiant provided no basis whatsoever for her personal knowledge, nor did she cite any evidence); *Hollander v. American Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir. 1999) (choosing not to disturb the district court's ruling because the affidavit was structured more like an "adversarial memorandum than a bona fide affidavit," but noting that "some of the stricken provisions were mere summaries of evidence properly included elsewhere in the record" and could have been admitted).

And as with respect to the Rule 56.1 Statement, the Court is not required to strike any inadmissible material where it can simply disregard it. *See Ott*, 2016 U.S. Dist. LEXIS 132563 at *23-24 (denying defendant's motion to strike plaintiff's 56.1 statement on the basis that a supporting affidavit contained hearsay and conclusory statements); *see also Primmer*, 667 F.Supp.2d at 254 (same).

Finally, the PA's Declaration is relevant to *both* motions for summary judgment. Therefore, even if this Court has concerns about its admissibility, it should not be stricken since courts "resolve[] all evidentiary doubts in the nonmovant's favor" in the context of summary judgment. *Glaxo Wellcome, Inc. v. Eon Labs Mfg.*, 00-cv-9089, 2003 U.S. Dist. LEXIS 14683, *3 (S.D.N.Y. Aug. 22, 2003) (citing *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990)).

## VI.   Yien-Koo's Declaration Is Reliable and Paragraphs in Her Rule 56.1 Statement Relying on It Should Not Be Stricken

Defendant claims that Yien-Koo's testimony is unreliable and points to instances of alleged misconduct to undermine her credibility and suggest that portions of the Statement relying on Yien-Koo's Declaration should be stricken. Defs. Motion at 11-12. Defendant's argument is flawed both factually and legally.

First, "it is in the Court's discretion to determine the weight to assign the various declarations." *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 454 (E.D.N.Y. 2014) (denying defendant's motion to strike plaintiffs' declarations). Furthermore, "[a] motion to strike is not an appropriate vehicle through which to contest the credibility of a witness or to draw further attention to the fact that one piece of evidence is contradicted by another." *Mueller v. Towers*, 10-cv-1093, 2010 U.S. Dist. LEXIS 113320, at *4-5 (D. Conn. Oct. 25, 2010) (denying motion to strike portions of a declaration where the declarant "state[d] that the declaration is made under the penalty of

perjury and is based on her personal knowledge…this is sufficient for the Court to accept the declaration"); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 33 (D.D.C. 2002).[20]

Second, the Wangs grossly mischaracterize the alleged "facts" that they claim undermine Yien-Koo's credibility (Defs. Motion at 11), while simultaneously relying heavily on Andrew's Declaration. Andrew was formally adjudged to have committed fraud in order to become the Estate's preliminary executor and that verdict was affirmed *twice*.[21] If anyone's declaration is to be stricken, it should be Andrew's because it contains statements that contradict his prior deposition testimony. *Compare* Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 949:19-950:17) *with* Savitsky Decl. Exh. 11 (6/25/2019 AW Depo. Trans. at 240:2-243:2) (Andrew's conflicting testimonies about how the five purported buyers wired money to the Estate); *compare* Savitsky Decl. Exh. 24 (2013 AW Dep. Trans. at 945:6-946:12) *with* Savitsky Decl. Exh. 11 (6/25/2019 AW Dep. Trans. at 128:7-17; 254:16-256:18; 311:13-19) (Andrew's conflicting testimonies

---

[20] Defendant cites cases involving extreme and dissimilar circumstances to support his proposition that any questions as to Yien-Koo's credibility should merit a denial of summary judgment in her favor. Defs. Motion at 11; *see United States v. Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn.*, 480 F.3d 841, 845 (8th Cir. 2007) (reversing the district court's grant of summary judgment for the government, where there was a question as to the credibility of the government's key witnesses, as they were "[c]onvicted of serious drug crimes" and had "a strong incentive to win the government's support for reducing their sentences"); *Chem. Bank v. Hartford Acc. & Indem. Co.*, 82 F.R.D. 376, 378-79 (S.D.N.Y. 1979) (denying summary judgment where the decision hinged on 319 "affidavits of forgery," in which the affiants claimed that their signatures were forged but provided no further explanation—and where the affiants had motive to claim that their signatures were forged because doing so would relieve the affiants of debt and liabilities).

[21] *See* Savitsky Decl. Exh. 6 (May 9, 2017 Decree of the New York County Surrogate's Court revoking AW's preliminary letters and dismissing the Wang Defendants' petition to probate the 2003 instrument, based on a unanimous jury verdict that the instrument was a product of fraud and undue influence by the Wang Defendants); Savitsky Decl. Exh. 7 (June 7, 2018 Decision and Order of the New York State Supreme Court, Appellate Division First Department affirming the unanimous jury's finding that Andrew and SK had fraudulently coerced C.C. Wang into executing both the Feb. 10, 2003 codicil and the Feb. 18, 2003 will); Savitsky Decl. Exh. 8 (January 2, 2020 Decision and Order of the New York State Supreme Court, Appellate Division First Department dismissing the petition of Shou-Kung Wang to probate a codicil executed by C.C. Wang and dated February 10, 2003 on the grounds that the petition was collaterally estopped by a jury's previous finding that it was the product of the Wang Defendants' fraud and undue influence).

regarding the shipment of Estate artwork to his own accountant's office in Hong Kong); *compare* Savitsky Exh. 24 (2013 AW Dep. Trans. at 545:5-13; 707:9-21; 942:16-943:11; 948:9-949:2; 953:12-957:9; 961:12-24) *with* Savitsky Decl. Exh. 11 (6/25/2019 AW Depo. Trans. at 94:16-21; 122:16-19) (Andrew's contradicting testimonies regarding the process of locating and communicating with the five purported buyers).

The Second Circuit has held that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir 1996). For example, Andrew declared in opposition to summary judgment that he "negotiated to the best of [his] ability," despite clearly and repeatedly testifying during his deposition that he did not worry about what the prices were or discuss prices with the buyers or even his purported intermediary "Er Shi Fu," because he was simply offering the paintings for sale at 20% Sotheby's appraisal prices. AW Decl. ¶21; Savitsky Decl. Exh. (AW Dep. Trans. at 92:11-93:18; 117:3-118:23).

Even with Andrew's Declaration, the Defendant fails to raise a genuine issue in relation to Yien-Koo's credibility. Andrew's broad attack on Yien-Koo's credibility has no bearing whatsoever on the issues for which she testifies in this case. Instead, they relate to Yien-Koo's initial bankruptcy filing from 12 years ago[22] and her alleged, and unproven, non-compliance with a Surrogate's Court TRO issued in 2003[23]—neither of these issues has anything to do with the matters contained in Yien-Koo's Declaration (which primarily concern when she learned of the

---

[22] Yien-Koo's ownership stake in Northwich Investments Ltd. and Kenneth King's ownership stake in Soon Huat, Inc. and the assets thereof were known to each of the creditors participating in the bankruptcy proceeding and their attorneys. Second YK Decl. at ¶27. In fact, a settlement was reached with the appointed U.S. Trustee based upon the artworks owned by the entities. *Id.*

[23] The alleged violation of the TRO is not only irrelevant to Yien-Koo's Declaration and her credibility, it is unsubstantiated hearsay from an attorney's independent investigation within a case.

terms of the Estate's sales). Such broad and unfocused attacks on a witness's credibility do not, by themselves, give rise to a genuine question of material fact sufficient to defeat a motion for summary judgment. *Island Software and Comput Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *see also Ashley v. City of New York*, No. 14-cv-5559, 2017 U.S. Dist. LEXIS 107980, *13 (E.D.N.Y. Jul. 12, 2017). In order to defeat summary judgment, it is therefore insufficient that Andrew attempts to impugn Yien-Koo based upon a bankruptcy court filing or a TRO; he "must identify affirmative evidence from which the jury" could find that the substance in Yien-Koo's declaration is false." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999) (holding that a party cannot defeat summary judgment "merely by impugning [a witness]'s honesty").

The documentary record,[24] Schram's testimony,[25] and Yien-Koo's testimony,[26] all corroborate Yien-Koo's Declaration and irrefutably establish that Yien-Koo did not receive information on how many Estate paintings were sold, which Estate paintings were sold, when they were sold, who they were sold to, or any other basic information on the sales until sometime in 2013. Andrew has presented no affirmative evidence to the contrary because there is none. Defendant, therefore, cannot defeat summary judgment simply by having Yien-Koo's Declaration stricken on the wholly unsupported grounds that she violated a TRO issued in a different proceeding (she did not) or purportedly failed to fill out a bankruptcy form properly (an issue which she ultimately resolved with the bankruptcy trustee).

---

[24] YK Decl. Exh. 6 (December 18, 2010 Letter from Schram to YK's counsel, refusing to provide YK with any information on the Estate's sales); Second YK Decl. Exh. 10 (March 13, 2013 Letter from YK's counsel to the PA's special counsel requesting any information on dozens of the Estate paintings' "inexplicable" appearance in China).
[25] Savitsky Decl. Exh. 12 (Schram Dep. Trans. at 33:4-34:5).
[26] YK Decl. ¶¶20, 56.

Finally, the Wangs' 56.1 Statement[27] contains the same categories of information as those contained in Yien-Koo's Declaration and, therefore, they cannot claim to be prejudiced by the Court's consideration of Yien-Koo's Statement.[28] *See Lighton Industries*, 348 F. Supp. 3d at 186, 197 (E.D.N.Y. 2018) (denying motion to strike summary judgment movant's amended 56.1 statement because the opponent addressed same matters in its 56.1 statement and, therefore, was not prejudiced).

## CONCLUSION

The assertions in Plaintiff's 56.1 Statement are relevant to Plaintiff's Motion, consistent with Rule 56.1, do not contain argument, and are properly supported by admissible, reliable evidence (including but not limited to Yien-Koo's Declaration and the PA's Declaration). However, even if the Court finds that some portions of Plaintiff's 56.1 Statement are improper, the Court can simply disregard those statements without indulging the Wangs' counterproductive and

---

[27] Defendants' 56.1 Statement dated February 14, 2020 ("Wang Statement" or "Wang SMF") [ECF Dkt. 196].

[28] Both Parties' 56.1 Statements include: (1) background information regarding the Wang family's history and interactions (Plaintiff's Statement at ¶¶ 1-28; Defendants' Statement at ¶¶1-8); (2) assets in the Estate of C.C. Wang and CC's will (Plaintiff's Statement at ¶¶29-45; Defendant's Statement at ¶¶9-12, 21-35); (3) AW's and the PA's administration of the Estate as co-fiduciaries (Plaintiff's Statement at ¶¶ 46-55; Defendant's Statement at ¶¶ 13-20); (4) the process by which AW and the PA privately sold Estate artwork, including prices, payments, and shipments (Plaintiff's Statement at ¶¶56-134; Defendant's Statement at ¶¶ 65-95); (5) facts concerning appraisals, pricing consultancy, and expert opinions on the value of Estate artwork (Plaintiff's Statement at ¶¶40-45, 305-321, 362-374; Defendant's Statement at ¶¶44-88, 190-196); (6) details concerning Andrew's level of diligence and responsibility (or lack thereof) in arranging the sales of Estate artwork (Plaintiff's Statement at ¶¶141, 305-321; Defendant's Statement at ¶¶65-95); (7) information (if any) regarding the five purported "buyers" and alleged intermediary (Plaintiff's Statement at ¶¶93-304; Defendant's Statement at ¶¶96-151); (8) facts concerning what Estate artwork Andrew had possession of and/or access to and at what times (Plaintiff's Statement at ¶¶322-352; Defendant's Statement at ¶¶152-164, 172-189); and (9) damages to the Estate (Plaintiff's Statement at ¶¶362-374; Defendant's Statement at ¶¶190-196). Nothing herein shall be construed as Plaintiff's admissions or acceptance as true of the paragraphs referenced in Defendant's Statement.

prejudicial request that the Court formally strike such evidence in a line-by-line fashion. For the foregoing reasons, Defendant's Motion to Strike should be denied in its entirety.

Dated: New York, New York
     May 4, 2020

Respectfully submitted:

**SAM P. ISRAEL, P.C.**

By: */s/ Timothy Savitsky*
Sam P. Israel, Esq. (SPI 0270)
Timothy Savitsky, Esq. (TS 6683)
Tess Bonoli, Esq. (TB 5637)
180 Maiden Lane, 6th Floor
New York, NY 10038
646-787-9880
Email: admin@spi-pc.com
*Attorneys for Yien-Koo King*

24