**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YIEN-KOO KING,

                Plaintiff,

      v.

ANDREW WANG, et al.,

                Defendants.

                               **Case No: 14-cv-7694**

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
THE TESTIMONY OF PATRICK REGAN**

---

KAMERMAN, UNCYK, SONIKER &
     KLEIN P.C.
Akiva M. Cohen, Esq.
Attorneys for Defendants
1700 Broadway, 16th Floor
New York, New York  10019
(212) 400-4930
acohen@kusklaw.com

## TABLE OF CONTENTS

**Page**

I.    Plaintiff's Opposition Confirms the Regan Report Is an Inadmissible Black Box ............... 2

II.   Regan's Opinions Should Be Excluded As Irrelevant ........................................................ 7

    A.    The FMV Appraisal ................................................................................................. 7

    B.    The Retail Appraisal ............................................................................................. 10

III.  Regan's Opinions Should Be Precluded As Based on Unreliable Data .............................. 11

IV.   Regan's Failure to Disclose the Rejected Comparables Requires Preclusion ..................... 13

Conclusion ................................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**CASES:**

*Bonilla v. Trebol Motors Corp.,* 150 F.3d 77 (1st Cir. 1998) ...................................................... 9

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.,* 769 F. Supp. 2d 269
(S.D.N.Y. 2011) ................................................................................................................... 4

*Chevron Corp. v. Donziger,* 974 F. Supp. 2d 362 (S.D.N.Y. 2014) ........................................ 8

*Coene v. 3M Co.,* 303 F.R.D. 32 (W.D.N.Y. 2014) ........................................................ 15-16

*Cohlmia v. Ardent Health Servs., LLC,* 254 F.R.D. 426 (N.D. Okla. 2008) ................... 14, 16

*Com. Union Assur. Co., plc v. Milken,* 17 F.3d 608 (2d Cir. 1994) ......................................... 7

*Crowley v. Chait,* 322 F. Supp. 2d 530 (D.N.J. 2004) ............................................................ 11

*Delozier v. First Nat. Bank of Gatlinburg,* 109 F.R.D. 161 (E.D. Tenn. 1986) ..................... 14

*DeMauro v. DeMauro,* 115 F.3d 94 (1st Cir. 1997) ................................................................. 9

*Design Strategy, Inc. v. Davis,* 469 F.3d 284 (2d Cir. 2006) ................................................. 17

*Elsevier Inc. v. W.H.P.R., Inc.,* 692 F. Supp. 2d 297 (S.D.N.Y. 2018) ............................ 7-8, 9

*Employees Committed for Justice v. Eastman Kodak Co.,* 251 F.R.D. 101 (W.D.N.Y. 2008) ...........14, 15

*Estate of Rothko,* 84 Misc. 2d 830 (Sur. Ct., N.Y. County 1975) .................................... 9-10

*Evans v. WMATA,* 674 F. Supp. 2d 175 (D.D.C. 2009) ..................................................... 4-5

*Fail-Safe, L.L.C. v A.O. Smith Corp.,* 744 F. Supp. 2d 870 (E.D. Wis. 2010) ...................... 4

*Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,*
412 F.3d 745 (7th Cir. 2005) .........................................................................................14, 16

*Finwall v. City of Chicago,* 239 F.R.D. 494 (N.D. Ill.), *objections overruled,*
239 F.R.D. 504 (N.D. Ill. 2016) .......................................................................................... 4

*First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763 (2d Cir. 1994) ........................... 7

*GPNE Corp. v. Apple, Inc.,* No. 12-CV-02885-LHK, 2014 WL 1494247
(N.D. Cal. Apr. 16, 2014) .................................................................................................3-4

*In re Google Adwords Litig.,* No. C08-03369 JW HRL, 2010 WL 5185738
(N.D. Cal. Dec. 8, 2010) .................................................................................................... 18

**TABLE OF AUTHORITIES**
(cont'd.)

**Page**

**CASES** (cont'd.):

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.,* No. 04-20073-CIV,
2005 WL 5955701 (S.D. Fla. Aug. 17, 2005) ................................................ 11-12

*Hogan v. Vandewater,* No. 711CV0754DNHATB, 2016 WL 7634430
(N.D.N.Y. Apr. 27, 2016) ............................................................................... 17

*Iacangelo v. Georgetown Univ.,* 272 F.R.D. 233 (D.D.C. 2011) ...................... 6

*Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490 (2d Cir. 1995) ...................... 10

*Isaak v. Trumbull Savings & Loan Co.,* 169 F.3d 390 (6th Cir. 1999) ............. 9

*Jackson v. Kansas City Kansas Pub. Sch. Unified Sch. Dist. No. 500,*
378 F. Supp. 3d 1016 (D. Kan. 2019, *aff'd,* 799 F. App'x 586
(10th Cir. 2020), *cert. denied,* 140 S. Ct. 2834, 207 L. Ed. 2d 162 (2020) ......... 14

*Jinghong Song v. Yao Bros. Group LP,* 10-civ-04157 RKE, 2012 WL 1557372
(S.D.N.Y. May 2, 2012) ................................................................................. 14

*Kerik v. Tacopina,* 64 F. Supp. 3d 542 (S.D.N.Y. 2014) ................................. 7

*Lawrence v. Raymond Corp.,* No. 3:09 CV 1067, 2011 WL 3418324
(N.D. Ohio Aug. 4, 2011), *aff'd,* 501 F. App'x 515 (6th Cir. 2012) ................. 5

*Lewert v. Boiron, Inc.,* 212 F. Supp. 3d 917 (C.D. Cal. 2016), *aff'd,*
742 F. App'x 282 (9th Cir. 2018) .................................................................... 18

*Lynch v. Trek Bicycle Corp.,* 374 Fed. App'x 204 (2d Cir. 2010) .................... 4

*McCoy v. Whirlpool Corp.,* 214 F.R.D. 646 (D. Kan. 2003) ............................ 6

*McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215 (2d Cir. 2008), *abrogated
on other grounds as recognized In re Zuprexa Prod. Liab. Litig.,* 671 F. Supp. 2d 397
(E.D.N.Y. 2009) ............................................................................................. 8

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.,* 643 F. Supp. 2d 471
(S.D.N.Y. 2009) ............................................................................................. 6

*In re Mirena IUD Products Liab. Litig.* 169 F. Supp. 3d 396 (S.D.N.Y. 2016) .................. 14

*Open Text S.A. v. Box, Inc.,* No. 13-CV-04910-JD, 2015 WL 349197
(N.D. Cal. Jan. 23, 2015) ............................................................................... 3

# TABLE OF AUTHORITIES
## (cont'd.)

**Page**

**CASES (cont'd.):**

*Pauls v. Green,* 816 F. Supp. 2d 961 (D. Idaho 2011) ...........................................................14

*Propat Int'l Corp. v. Rpost, Inc.,* No. SACV031011JVSVBKX, 2005 WL 5957834
(C.D. Cal. Sept. 19, 2005 ......................................................................................................15

*Redmond-Nieves Okuma Am. Corp.,* 332 F.R.D. 418 (D. Mass. 2019) ................................14

*Matter of Rothko's Estate,* 43 N.Y.2d 305 (1977) ............................................................8, 9

*S.E.C. v. Collins & Aikman Corp.,* 256 F.R.D. 403 (S.D.N.Y. 2009) ................................15

*SWF Real Est. LLC v. Comm'r,* 109 T.C.M. (CCH) 1327 (T.C. 2015) ...........................2-3

*Schiller v. City of New York,* No. 04-civ-7921 (RJS)(JCF), 2008 WL 4525341
(S.D.N.Y. Oct. 9, 2008) .......................................................................................................14

*Sirois v. USAA Cas. Ins. Co.,* No. 3:16-CV-1172 (MPS), 2019 WL 235326
(D. Conn. Jan. 16, 2019) ......................................................................................................17

*TASER Int'l., Inc. v. Karbon Arms, LLC,* No. CV-11-426-RGA, 2013 WL 6773664
(D. Del. Dec. 19, 2013) ..........................................................................................................4

*In re TMI Litig.,* 193 F.3d 613 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000) ......................11

*U.S. v. Coppola,* No. CIVA.CV-88-3456 (JBW), 1994 WL 665751
(E.D.N.Y. Nov. 17, 1994), *aff'd,* 85 F.3d 1015 (2d Cir. 1996) ...........................................8

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3,*
*AFL-CIO,* 313 F. Supp. 2d 213 (S.D.N.Y. 2004) ...............................................................12

*Universe Antiques, Inc. v. Vareika,* 10 CIV. 3629, 2011 WL 5117057,
(S.D.N.Y. Oct. 21, 2011) ......................................................................................................14

*Walsh v. Chez,* 583 F.3d 990 (7th Cir. 2009) ........................................................................6

*Wannall v. Honeywell Int'l, Inc.,* 292 F.R.D. 26 (D.D.C. 2013), *aff'd sub nom.*
*Wannall v. Honeywell, Inc.,* 775 F.3d 425 (D.C. Cir. 2014), *quoting Lujan v.*
*Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990) .........................................................................16

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101 (9th Cir. 2001) .......................14

Defendants respectfully submit this reply memorandum of law in further support of their motion to exclude the proffered expert opinions and testimony of Patrick Regan. In their opening brief (the "Moving Brief" or "MB", Doc. # 234), Defendants established that Regan's opinions had to be excluded for four individually sufficient reasons: (1) his opinion was a black box that failed to disclose the substantive analysis Regan used to get from the data on which he relied to the opinions of value for each painting; (2) his appraisals were irrelevant to whether the sales were made at fair value; (3) his appraisals relied on fundamentally unreliable data; and (4) Regan failed to disclose key information he considered, and which would have provided the best fodder for cross-examination: the identity of the paintings he gave significant attention to as potential comparables but opted not to rely on (the "Rejected Comparables"), for reasons that Regan's failure of disclosure prevent Defendants from even exploring.

In response (the "Opposition Brief" or "Opp"), Plaintiff concedes Regan failed to disclose his substantive analysis, arguing instead that USPAP standards for appraisals do not require such disclosure. Opp at 17. Not only is that irrelevant – the standards for an expert report are governed by the Federal Rules and differ from the standards for a client appraisal – but, as discussed in Point I below, it is also factually *wrong*. USPAP standards require an appraiser issuing an appraisal for litigation to understand and abide by the rules governing expert testimony, and thus incorporate, rather than depart from, the disclosure requirements imposed by law. That Regan's report admittedly fails to disclose what he "substantively did" in reaching his opinions therefore unequivocally requires preclusion.

The Opposition Brief likewise concedes that Regan's FMV Appraisal[1] is irrelevant to Plaintiff's claim that the 98 Paintings were sold for less than fair market value at the time of sale,

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Moving Brief.

and, as further discussed in Point II(A) below, it must therefore be excluded. As to the Retail Appraisal, as discussed in Point II(B) below, Plaintiff acknowledges that it provides no evidence that Andrew intended to sell the Yue Da Jin Paintings at below market value when he first proposed the transaction, and instead adopts an implausible and inconsistent new theory of fraud in which Andrew only later decided to attempt to have the Estate sell the paintings for less than their worth. And, faced with Regan's admission that the data on which he based his report was fundamentally unreliable, Plaintiff attempts to shift the burden to Defendants to "disprove" the data and argues that her expert can rely on unreliable data because that is what appraisers do. As discussed in Point III, those arguments misstate the law, and his testimony should also be excluded for these reasons.

Finally, as discussed in Point IV below, Plaintiff has no meaningful answer to Regan's failure to document and disclose the Rejected Comparables, and is instead left to argue that the Court should allow Regan to testify regardless, given how critical his report is to her case. But Plaintiff is unable to even articulate any alternative sanction that could minimize (let alone eliminate) the prejudice to Defendants from the loss of the Rejected Comparables – information made all the more critical given Regan's admitted failure to disclose the work he "substantively did," which even Mr. Regan admits is "not an easy thing to explain." Reply Declaration of Akiva M. Cohen ("Cohen Reply Dec"), Ex. 1 ("Regan Dep") at 374:13-14. Thus, the Court must preclude Plaintiff from offering Regan's testimony.

## I.   PLAINTIFF'S OPPOSITION CONFIRMS THE REGAN REPORT IS AN INADMISSIBLE BLACK BOX

As shown in the Moving Brief, an expert report must not only disclose the data on which the expert relied, but also detail ***how*** the expert derived their conclusions from the data. MB at 23. There is no dispute that Regan failed to disclose how he got from the data to his appraised values: the adjustments he made to the allegedly "comparable" paintings his appraisals relied upon, though such comparable-by-comparable adjustments were required for a market value appraisal. *See SWF*

*Real Est. LLC v. Comm'r*, 109 T.C.M. (CCH) 1327 (T.C. 2015) ("Because no two sales and no two

properties are ever identical, the appraiser then considers aspects of the sales of comparable

properties … and makes appropriate adjustments for each"). Indeed, Plaintiff acknowledges that

such adjustments were required, and that Regan simply opted not to disclose them in his report:

> Nor do the Wangs' criticisms establish otherwise. For example, the Wangs' claim of
> noncompliance with USPAP Standard 7-4(a) (regarding analyzing comparables)
> is wrong. Standard 7 governs what must be *substantively done* while appraising. *See*
> Savitsky Decl. Exh. 19 (USPAP Standards 7 and 8). In contrast, Standard 8 governs
> what must be *written* in an appraisal. *See id.* (governing appraisal contents and noting
> the level of detail necessary may vary). By indicating in his report he analyzed
> comparables (see list on pp. 15, *supra*), Mr. Regan satisfied both Standard 7 and
> Standard 8 of USPAP's requirements.

Opp at 17 (emphasis in original).

Having acknowledged that Regan's report fails to disclose what Regan "***substantively did***"

to get from the raw data he discloses to the opinions he rendered, Plaintiff has effectively conceded

that Regan's opinions must be excluded. *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL

349197, at *6 (N.D. Cal. Jan. 23, 2015) ("Exclusion is required because the link, if any, between

those inputs and Holt's final royalty is written in invisible ink. Rather than spelling out the steps she

took to go from the data to the royalty rate opinion, Holt cites her 'experience' – an abstraction not

visible to the eyes of the Court, the jury, and opposing counsel, or testable in the crucible of cross-

examination"). That USPAP considers Regan's level of disclosure sufficient for a non-litigation

appraisal, of course, does not change the result. Regan was not producing an ***appraisal*** for a ***client***,

in which the level of detail depended on the preferences of client and appraiser. He was producing

an ***expert report*** for a ***litigation***, which must be sufficiently detailed to allow an adversary and the

Court to examine, test, and critique his methodology and conclusions. Because the cases are clear

that an expert report must disclose the mechanics of the analysis, Regan's decision to merely

"indicate" that he "analyzed comparables" without disclosing the specific substance of that analysis

renders his conclusions an impermissible black box. *See, e.g., GPNE Corp. v. Apple, Inc.*, No. 12-CV-

02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (excluding expert report as black

box where expert did not explain how he derived royalty from the data inputs beyond reference to

his general experience); *TASER Int'l, Inc. v. Karbon Arms, LLC*, No. CV 11-426-RGA, 2013 WL

6773663, at *1 (D. Del. Dec. 19, 2013) (excluding expert testimony that – as with Mr. Regan's

opinions – "offers almost no basis as to how he arrived at his royalty rate other than that he

considered the above numbers and factors" as "the quintessential ipse dixit justification"); *Fail-Safe,

L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) (expert's actual analysis cannot

take place "in a black box out of the view of the court"). Indeed, Plaintiff is wrong in suggesting

USPAP says anything different; the USPAP's Rules expressly require appraisers to comply with laws

or rules governing the appraisal assignment given its intended use, Cohen Reply Dec Ex. 2 at p.

11:307-308, and required Regan to provide the detail necessary to support his analysis. *Id.* at 10:277-

279. In the context of litigation, those rules mandate disclosing "what he substantively did" to reach

those conclusions. *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill.) ("Expert reports must

include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory

opinions"), *objections overruled*, 239 F.R.D. 504 (N.D. Ill. 2006).[2]

Plaintiff's opposition does not meaningfully engage with that rule,[3] instead arguing that

---

[2] As these (and other black-box cases) make clear, Plaintiff's attempt to distinguish *Oleg Cassini*, *Protostorm*, *Skolnik*, and *Cornell* as based on the quantum of data used by the expert, rather than the experts' failure to articulate how they got from the data they considered to their opinions, Opp at 17-19, is simply wrong. As those cases held – and as the above cases reinforce – an admissible opinion must make clear **how** an expert gets from the data they considered to the opinion they render. A report that simply lists data and provides an opinion, without disclosing the mechanism of getting from one to the other, cannot be tested or cross-examined, and is therefore inadmissible.

[3] Plaintiff cites *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.*, 769 F. Supp. 2d 269 (S.D.N.Y. 2011), Opp at 15, for the proposition that reliance on market data is a sufficient basis for an expert opinion. 769 F. Supp. 2d at 284-85 (experts entitled to rely on tests conducted by others). This portion of *Cedar*, however, says absolutely nothing about an expert's failure to disclose the mechanics of their analysis, as Regan chose to do here by not explaining what he "substantively did." *Lynch v. Trek Bicycle Corp.*, 374 Fed. App'x 204 (2d Cir. 2010), in which the Second Circuit affirmed the exclusion of plaintiff's expert, likewise provides no support for the argument that Regan could keep secret what he "substantively did" to get from the data on which he relied to the conclusions he reached. Nor does *Evans v. WMATA*, 674 F. Supp. 2d 175 (D.D.C. 2009) suggest that an expert can hide the mechanics of their analysis in their report, and place the burden on the responding party to uncover those mechanics in deposition; rather, it held that an expert is not

Regan disclosed the **data** on which he relied (though not, as discussed in Point IV, *infra*, all the data he considered): market trends and "nearly 500 points of market data." Opp at 15 (emphasis in original). But without disclosure of what Regan "substantively did" with those general market trends and hundreds of data points, his opinion is a black box: market trends and data went in, and an opinion came out. *Lawrence v. Raymond Corp.*, No. 3:09 CV 1067, 2011 WL 3418324, at *7 (N.D. Ohio Aug. 4, 2011) ("An expert is not a black box into which data is fed at one end and from which an answer emerges at the other; the Court must be able to see the mechanisms in order to determine if they are reliable and helpful") *aff'd*, 501 F. App'x 515 (6th Cir. 2012). Indeed, the list of "factors considered" Plaintiff provides at pages 14-15 of the Opp only highlights that failing. According to Plaintiff, those factors "included" (but were presumably not limited to) 9 issues that Plaintiff identifies Regan as having *mentioned* (rather than discussed or explained) with respect to only **23 of the 98** paintings he appraised. Opp at 15.[4] And of the "nearly 500" comparables on which Regan relied? Plaintiff references only **13** for which Regan specifically mentioned (rather than discussed or explained) factors bearing on his analysis.[5] And even for that extreme minority of Regan's analysis, Regan (apparently deliberately) failed to disclose **how** the "factors considered" impacted his analysis.[6] Indeed, when questioned at deposition Regan could not recall the specific adjustments he

---

limited to the verbiage in their report and can expand on their testimony at trial. *Id.* at 180. Here, Regan entirely failed to disclose the mechanics of his analysis, and the suggestion that Defendants could have questioned Regan on the specifics of his adjustments to nearly 500 data-points at deposition in order to fill his analytical gap is ludicrous; such an examination would have taken vastly more than the seven hours Defendants were allotted – and used – to explore the entirety of Regan's background and opinions.

[4] Plaintiff references only the appraisals at pages 10, 18, 35, 42, 47, 50, 67, 69, 75, 76, 77, 79, 80, 81, 89, 91, 96, 97, 98, 100, 101, and 102 of the FMV Appraisal.

[5] Plaintiff references only Comparables 2 on p. 10, 3 on 42, 2 and 3 on 47, 1 on 50, 4 on 69, 1 on 75, 3 on 81, 2 on 96, 4 on 97, 4 on 98, 2 on 101, and 5 on 102.

[6] Plaintiff suggests that the Regan Report's failure to disclose "*how* he chose to weigh the comparables" is mitigated by his rebuttal report and the fact that he sat for deposition. Opp at 16 (emphasis in original). But neither the Regan Rebuttal Report nor the deposition actually disclosed the "how" for each of Regan's appraisals: what Regan "substantively did" to get from each of the comparables to his opinions of value. While Regan's Rebuttal Report recited that he was required to "consider[] the appropriateness of each comparable and the varying weight that they may have on the opinion of value," and "apply his[] experience and discretion in determining how much weight to give to certain

made, and instead testified that he would have to "kind of reconstruct" his analysis. Regan Dep at 365:20-370:24.

Importantly, this stands in stark and obvious contrast to *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, on which Plaintiff repeatedly relies. In *MBTE*, this Court held that an expert's report was "substantially complete" where it disclosed the expert's calculation methodology and the data to which it was applied but did not specifically include the "obvious and readily calculated result" of that mechanical process. *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 471, 482 (S.D.N.Y. 2009). In other words, of the three steps – data, mechanics of calculation, result – the *MTBE* expert omitted only the third and final step, the result, which his report allowed the defendant to easily determine. *Id.*[7] Here, in contrast, Regan disclosed only the data on which he relied and the conclusion he reached, without bothering to show "how the sausage was made" – which is both the *sine qua non* of an expert report and impossible for Defendants to reverse-engineer from his report. In the absence of that information, Defendants cannot effectively cross-examine Regan about the consistency and reliability of "*how* he chose to weigh the comparables." Opp at 16.[8] As such, Regan's opinions must be excluded.

---

comparables," Cohen Dec Ex. **2**, ¶ 13, it did not disclose the substance of that consideration for *any* specific comparable he relied on in his appraisals, or how he exercised his "experience and discretion" in weighing it, let alone provide that information for each of the comparables. And it is well-settled that "it is not the responsibility of opposing counsel to elicit [at deposition] the disclosures required from experts; Rule 26 clearly places that burden squarely on the party who has retained the expert." *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) (striking belated "supplemental" report).

[7] The other cases cited by Plaintiff relating to the required granularity of an expert report have no bearing here. In *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646 (D. Kan. 2003), the plaintiffs challenged an expert report for (1) failing to mention by name the relevant standard governing fire investigation and (2) purportedly (but non-specifically) being inconsistent with that standard. 214 F.R.D. at 650-651. The *McCoy* court rejected both contentions, concluding that the expert's methodology was consistent with the governing standard and that his report had no need to mention it by name. *Id.* at 651-52. And in *Walsh v. Chez*, 583 F.3d 990 (7th Cir. 2009), the Seventh Circuit held that the plaintiff's expert reports adequately disclosed the experts' view of the relevant standard of care (that the defendant had violated the standard of care by too abruptly removing plaintiff's child from a corticosteroid, rather than weaning the child from the drug). *Id.* at 993-994. Neither suggested that an expert could submit a black-box opinion that failed to disclose what he "substantively did" with the underlying data in order to reach his conclusions.

[8] Though Plaintiff makes much of the fact that Mr. Linsner was able to issue a rebuttal report critiquing Regan's reliance *ab initio* on unreliable Chinese data and out of date comparables, nowhere in Mr. Linsner's rebuttal report did he critique

## II.    REGAN'S OPINIONS SHOULD BE EXCLUDED AS IRRELEVANT

### A.  The FMV Appraisal

In the Moving Brief, Defendants demonstrated that Regan's FMV Appraisal was irrelevant to establishing that the 98 Paintings were sold at less than their fair market value. MB at 16. *See also Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014). In "opposition," Plaintiff concedes as much, never once suggesting that the FMV Appraisal can support that claim. Instead, Plaintiff argues the FMV Appraisal is relevant to "appreciation damages" under *Rothko*. Opp at 20-23. But in her desire to leap over the question of liability and focus solely on her damages claim, Plaintiff dramatically highlights the extreme prejudice that admission of the FMV Appraisal would pose to Defendants by inviting the jury to do just that: ignore whether the sales at issue were for fair value at the time they were made, simply because the paintings have since appreciated in value. The Court cannot countenance that attempt, for several reasons.

First, in her Amended Complaint, Plaintiff made clear her claims depended on the allegation that the 98 Paintings were sold for less than fair value. *See* Amended Complaint ¶¶ 3, 107, 109, 266, 343. And in fact that is a critical element of her claim under RICO, which requires that the Plaintiff have suffered some "out of pocket loss" from the alleged predicate acts. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("The general rule of fraud damages is that the defrauded plaintiff may recover out-of-pocket losses caused by the fraud"). Lost future appreciation, even if recoverable as damages under *Rothko*, isn't a **RICO** injury. *Com. Union Assur. Co., plc v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994) (RICO damages "must, under the familiar rule of law, place appellants in the same position they would have been in but for the illegal conduct"); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 311 (S.D.N.Y. 2018) ("RICO damages cannot place plaintiffs in

---

the particular adjustments Regan made to those comparables given that reliance, because they were never disclosed. Thus, Linsner's rebuttal *highlights*, rather than *mitigates*, the prejudice from Regan's failure to disclose what he "substantively did" in analyzing and adjusting the comparables he chose to rely on.

a better position than they would have been in if the racketeering had not occurred").[9]

Second, even under *Rothko*, appreciation damages simply are not available to Plaintiff here. The Court of Appeals in *Rothko* held that appreciation damages are available **only** "if it was [the executor's] duty to retain the property [rather than sell it], the theory being that the beneficiaries are entitled to be placed in the same position they would have been in had … property that should have been retained [not been sold]." *Matter of Rothko's Estate*, 43 N.Y.2d 305, 321 (1977). Plaintiff has not alleged that Andrew was under any "duty to retain" the property, and no such claim could conceivably be made. Nor could any claim that in the absence of the alleged self-dealing, the Estate would still own all of the art it held in 2005. To the contrary, there is no dispute that Andrew was specifically tasked by the Public Administrator with finding buyers and *selling* the paintings, in order to raise funds to pay the Estate's significant estate tax deficiency. Cohen Reply Dec. Exs. 3-8

Indeed, Plaintiff's damages theory makes no internal sense. Given the fiduciaries' absolute duty to sell paintings to raise the funds necessary to pay the Estate taxes, the Estate had no possibility of retaining, through the time of this action, all of the paintings it held at the time of the sales. It **had** to sell paintings to raise funds, or incur substantial interest and penalties on the millions of dollars in taxes due; the only questions were which paintings and at what prices. *See Coppola*, 1994 WL 665751, at *6 (executor has a duty to convert estate assets to cash if necessary to pay taxes and administrative expenses). And the Estate in fact used the proceeds of the sales to pay taxes, taking

---

[9] The cases cited by Plaintiff are not to the contrary. In *U.S. v. Coppola*, the defendant was held liable for a fraudulent conveyance, having taken estate assets at less than fair value. *U.S. v. Coppola*, No. CIVA.CV-88-3456 (JBW), 1994 WL 665751, at *11 (E.D.N.Y. Nov. 17, 1994), *aff'd*, 85 F.3d 1015 (2d Cir. 1996). Moreover, the quoted language referred to Coppola's *distributee liability* under New York law, not "self-dealing," and did not direct the return of any assets to the estate at all. 1994 WL 665751 at * 10. *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 569 (S.D.N.Y. 2014) stands for the anodyne proposition that the RICO statute authorizes the grant of injunctive relief. *Id.* at 569-570 ("Section 1964(a) empowers district courts to "prevent and restrain" RICO violations, thus authorizing injunctive relief"). Neither case remotely abrogates the general rule that a RICO injury requires the plaintiff to have suffered an "out-of-pocket" loss. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) (rejecting certification of RICO class action because "the acceptable measure of injury—out-of-pocket damages" would require individualized proof), *abrogated on other grounds as recognized In re Zyprexa Prod. Liab. Litig.*, 671 F. Supp. 2d 397, 444 (E.D.N.Y. 2009) (as to causation).

the benefit of the sales. *Cf. Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 87 (1st Cir. 1998). Thus,

awarding appreciation damages – as though the Estate could have retained all of the paintings

through the 2021 – would not place the beneficiaries "in the same position they would have been

in" had the paintings been sold (in Plaintiff's theory) at fair market prices; rather, it would grant the

Estate the windfall benefit of the explosion in the Chinese art market between 2005 (the time at

which the Estate was compelled to sell art to raise funds for taxes and expenses), and 2021 (the time

of trial). *Rothko* does not support such a result. And even if it did support it as a matter of New York

State law, it **still** would not be a viable RICO injury. *Elsevier*, 692 F. Supp. 2d at 311. Because the

Estate's art sales were necessary to allow the Estate to pay taxes and administrative expenses, the

Estate cannot recover appreciation damages under either RICO or *Rothko*. And so long as the sales

were at fair market value, the Estate suffered no RICO injury at all.[10]

Third, even were that not true, Regan's *October 2019* appraisal is no basis on which to

measure appreciation damages as of June 2021. Plaintiff argues that the *Rothko* opinion validated an

award based on a 1974 valuation, though the decree issued in 1975, and therefore Regan's two-year

old appraisal is sufficient. Opp at 21, n. 24. Not so. First, the Heller appraisal referenced in *Rothko*

was made only a month before trial, 43 N.Y.2d at 322, not 21 months before trial. Second, and more

fundamentally, the *Rothko* trial court **rejected** the Heller appraisal and did not base its damages

award on that appraisal at all, instead parsing the available evidence to reach its own valuations.

*Estate of Rothko*, 84 Misc. 2d 830, 884 (Sur. Ct., N.Y. County 1975) ("The court regards the 1974

---

[10] Neither the Sixth Circuit's decision in *Isaak v. Trumbull Savings & Loan Co.*, 169 F.3d 390 (6th Cir. 1999) nor the First Circuit's decision in *DeMauro v. DeMauro*, 115 F.3d 94 (1st Cir. 1997) alters that analysis. Those decisions stand for the proposition that state law determines *what constitutes property*, not what constitutes a RICO injury. *See Isaak*, 169 F.3d at 397 (looking to Ohio state law to determine what property interests the plaintiffs had). Indeed, *DeMauro* is explicit that the question of what constitutes a cognizable RICO *injury* to that property is a matter of federal, not state law. *DeMauro*, 115 F.3d at 96 ("Some role does exist for state law. There is no general federal law of property transfers, so the question who owns a piece of property is likely to be settled by state law. On the other hand, one might expect federal law to decide whether a given interest, recognized by state law, rises to the level of "business or property," or whether "injury" has been done to it by the acts alleged").

appraisal of Mr. Heller as too optimistic and cannot find as a fact that the sales prices suggested in this appraisal are realizable"). As such, the Court of Appeals affirmance in *Rothko* could not have blessed the use of stale appraisals to calculate appreciation damages. Third, the evidence suggests that Regan's October 2019 Appraisal would not be an accurate measure of the value of the paintings at the time of trial, as the Chinese art market has significantly declined since then. Cohen Reply Dec, Ex. 8 (November 2020 art market report noting that the market for classical Chinese painting and calligraphy "continued to spiral downward," with a nearly 1/3 drop at the "ultra high end").

### B.  The Retail Appraisal

Plaintiff's argument for admission of Regan's Retail Appraisal is equally flawed, because it relies on ignoring a different element of her RICO claim: intent to defraud. In essence, Plaintiff argues that: (1) Andrew Wang actually sold the Yue Da-Jin paintings to himself in August 2009; (2) that when he proposed the sale in May 2008, he did so at prices that were very ***favorable*** to the Estate; but that (3) sometime between May 2008 and August 2009, he did an about face and decided to defraud the Estate by selling at ***unfavorable*** prices. Not only is this alleged scheme implausible on its face, but it expressly contradicts Plaintiff's claims regarding the ***other*** sales at issue by taking as a given that Andrew initially proposed fair prices for the art. Given the concession that the prices were fair when initially negotiated, Regan's valuation is no evidence of Andrew's intent in 2009 in the absence of evidence that Andrew was specifically aware of the later sales on which Regan relies; no such evidence exists. The appraisal should therefore be excluded as irrelevant.[11]

---

[11] Separately, Plaintiff's suggestion that the Retail Appraisal might be relevant in case she "choose[s] the difference between the actual price paid … and the market value at the time" as the measure of damages raises a significant concern; Plaintiff cannot place before the jury two incompatible damages theories. She must pick one. *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery").

III.   **REGAN'S OPINIONS SHOULD BE PRECLUDED AS BASED ON UNRELIABLE DATA**

In the face of overwhelming evidence that the vast majority of the data on which Regan based his appraisals was unreliable, Plaintiff seeks to shift the burden to Defendants to establish that particular sales on which Regan relied did not occur, rather than requiring Regan to establish that they did. The law does not allow such an approach.

As set forth in the Moving Brief, Regan conceded what the literature overwhelmingly shows: that Chinese auctions are plagued with deadbeat bidders and that roughly 50% of reported "sales" never occur at the reported price. Regan Dep at 328:24-329:7. At deposition, Regan admitted that he could not say with any certainty if even a single mainland China auction result on which he relied had actually resulted in a sale at the listed price. *Id.* at 335:18-336:4. Indeed, the Artnet database on which Regan relied **expressly** disclaims the reliability of the auction results it provides. Cohen Reply Dec Ex. 9.

Unable to substantiate **any** of the Chinese auction data on which Regan relied, Plaintiff proffers two arguments. First, she suggests that because appraisers in the field sometimes rely on unreliable data when providing **appraisals** to clients, Regan should be entitled to rely on unreliable data in assessing, to a reasonable degree of certainty for purposes of a litigation, the value that the Estate purportedly would have received in an arms'-length sale. Opp at 20. But where the Court is convinced that the data relied upon is fundamentally unreliable, whether the expert would rely on such unreliable data in the field is irrelevant. *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999) (trial judge must independently assess reliability of the data and if "the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded"), *amended*, 199 F.3d 158 (3d Cir. 2000); *Crowley v. Chait*, 322 F. Supp. 2d 530, 547 (D.N.J. 2004) (excluding testimony of expert who "relied upon information that is simply too unreliable to be trusted"); *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, No. 04-

20073-CIV, 2005 WL 5955701, at *5 (S.D. Fla. Aug. 17, 2005) (expert cannot rely on data from website that, like the Artnet database on which Regan relied, expressly disclaims responsibility for the accuracy of its information). Regardless, it is simply not true that appraisers in the field rely on mainland China auction data as a matter of course. To the contrary, Arnold Chang, who performed the 2004 Sotheby's appraisal, agreed at deposition that data from mainland Chinese auction houses should be avoided if at all possible. Cohen Reply Dec Ex. 10 201:24-203:6.[12] Yet Regan chose to rely on mainland China auction data even where more credible data was available. *Compare, e.g.*, FMV Appraisal at 15 (hanging scroll by Gong Xian, appraised using only Chinese auction comparables) *with* Cohen Reply Dec Exs. 11-14 (available auction results for Gong Xian hanging scrolls from Christie's and Sotheby's Hong Kong); FMV Appraisal at 16 (Hua Yan, appraised using only Chinese auction comparables) *with* Cohen Reply Dec Exs. 15-18 (available auction results for Hua Yan hanging scrolls from Sotheby's and Christie's Hong Kong). Simply put, Plaintiff and her expert chose to rely on admittedly unreliable data to increase the claimed damages; the result of that choice is that Regan's opinion must be excluded.

Second, Plaintiff suggests that because nobody knows whether the data on which Regan relied was accurate, it is ***Defendants*** "who are advancing a blatantly speculative claim that *some* of the reported, public auction results *may* never have been consummated." Opp at 26 (emphasis in original). But "[a]s the proponents of the expert, it is the plaintiff['s] burden to demonstrate the reliability of his data," not Defendants' burden to prove its unreliability. *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 235 (S.D.N.Y. 2004) (precluding expert). Plaintiff's concession that no such demonstration is possible requires preclusion.

Indeed, while Plaintiff argues the unreliability of the Chinese auction data is mitigated "by

---

[12] For that reason, the Sotheby's appraisal relied on mainland Chinese auction results for less than half of its comparables. Doc. # 238, Ex. 7. In contrast, Regan relied on Chinese auctions the vast majority of the time, even where, as discussed above, he did not need to.

collecting multiple comparables from multiple auction houses, including Western ones such as Sotheby's and Christie's," Opp at 25 (purportedly citing Regan's Rebuttal Report), Regan never actually says that. Rather, at the cited paragraphs of his rebuttal report, Regan claims that "[c]oncerns over deadbeat bidding are mitigated … by an appraiser's diligence in collecting supporting data." Regan Rebuttal Report", ¶ 13. Moreover, while Regan claims that he relied on "a variety of top-tier Chinese auction houses as well as 80 comparables from Sotheby's and Christie's in order to cross-check values," he never explained *how* that functioned as a "cross-check" or provided any data to support that claim; saying (at deposition) only that the process of weighting comparables was entirely "reliant on the person who is [choosing them]." Regan Dep at 334:19-21. Yet again, the Court is left entirely with Regan's *ipse dixit*. Much like the expert in *U.S. Information Systems*, Regan's inability to demonstrate the reliability of his data is fatal.[13]

## IV. REGAN'S FAILURE TO DISCLOSE THE REJECTED COMPARABLES REQUIRES PRECLUSION

Finally, Plaintiff effectively concedes that Regan failed to disclose the Rejected Comparables – unidentified and forever *unidentifiable* paintings he considered and gave significant attention to before deciding not to rely on them in his appraisal for unspecified reasons – and that the failure was prejudicial and unjustified. In the Moving Brief, Defendants established, by Regan's own deposition testimony, that such Rejected Comparables existed and were never disclosed, foreclosing a critical area of cross-examination. Regan Dep at 39:25-40:15, 42:4-21. The cases cited in the Moving Brief,

---

[13] Plaintiff suggests that by confirming that experts cannot base their opinions on data they know is unreliable, the Court would be ruling that ancient Chinese art "has no discernable value as a matter of U.S. law." Opp at 26. That is ridiculous; that Plaintiff and her expert failed to provide a reliable opinion of the paintings' value does not mean that the paintings are valueless, or that a competent expert could not have submitted a viable appraisal based on reliable data. For instance, Regan could have adjusted the Chinese comparables to account for the significant risk that the sales had not actually occurred, but chose not to. Regan Dep at 332:10-333:25. Alternatively, Regan could have based his appraisal primarily on reliable sales, turning to Chinese auction results only when no reliable data was available from other sources. He chose not to do either of those things, and presented an appraisal based on Chinese auction data as though that data was entirely reliable, despite knowing for certain that it was not. Preclusion of his opinion is the inevitable consequence of that choice.

none of which Plaintiff addresses, make clear that failure requires preclusion of Regan's testimony. MB at 23-26, *citing Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 751 (7th Cir. 2005); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Jackson v. Kansas City Kansas Pub. Sch. Unified Sch. Dist. No. 500*, 378 F. Supp. 3d 1016, 1024 (D. Kan. 2019), *aff'd*, 799 F. App'x 586 (10th Cir. 2020), *cert. denied*, 140 S. Ct. 2834, 207 L. Ed. 2d 162 (2020); *Redmond-Nieves Okuma Am. Corp.*, 332 F.R.D. 418, 420 (D. Mass. 2019); *In re Mirena IUD Products Liab. Litig.*, 169 F. Supp. 3d 396, 471-472 (S.D.N.Y. 2016); *Jinghong Song v. Yao Bros. Group LP*, 10-civ-04157 RKE, 2012 WL 1557372, at *2 (S.D.N.Y. May 2, 2012); *Universe Antiques, Inc. v. Vareika*, 10 CIV. 3629, 2011 WL 5117057, at *6 (S.D.N.Y. Oct. 21, 2011); *Pauls v. Green*, 816 F. Supp. 2d 961, 977 (D. Idaho 2011); *Schiller v. City of New York*, No. 04-civ-7921 (RJS)(JCF), 2008 WL 4525341, at *3 (S.D.N.Y. Oct. 9, 2008); *Employees Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008); *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 429 (N.D. Okla. 2008); and *Delozier v. First Nat. Bank of Gatlinburg*, 109 F.R.D. 161, 164 (E.D. Tenn. 1986). *See also* Opp at ii-iv (Plaintiff's Table of Authorities, failing to list ***even a single one of those cases***).[14]

Instead, Plaintiff attempts sleight of hand, pretending that Defendants' motion focused on the "thousands of potential comparables from [Regan's] search results" which were "hundreds or thousands of works he could have relied on," and disclosure of which would have required him to "download an entire database." Opp at 28. ***But that is not the issue.*** Defendants are not concerned with the thousands of auction results Regan incidentally viewed as he paged through search results. Defendants are focused on Regan's failure to disclose the more limited, finite subset

---

[14] Instead, Plaintiff cites to *MTBE, McCoy v. Whirlpool Corp.* and *Walsh v. Chez* for the proposition that an expert's report need not be "so granular that an expert's eventual trial testimony" will merely be a verbatim recital of the report. Opp at 27. While those cases are relevant to Regan's failure to disclose the basis of his opinion discussed in Point IV, *supra*, and are therefore distinguished above, they have no relevance whatsoever to the expert's failure to disclose material considered but not relied upon – which is essential for cross-examination and would not be affirmatively relied on by the expert in his trial testimony in the first instance.

of *Rejected Comparables*, works that Regan – *in his own words at deposition* – "gave significant attention to" and "engaged in a thorough analysis of" before deciding not to rely on them in his appraisal. MB at 8, *quoting* Regan Dep. at 41:2-16. Plaintiff entirely fails to address that narrower subset of paintings that Regan failed to disclose.

And for obvious reason. Plaintiff's argument that the non-disclosure was substantially justified because producing screenshots of "hundreds or thousands of works [Regan] could have relied on, but ultimately decided not to" was "impossible" simply has no application to the more limited subset of works Regan "gave significant attention to" and 'thoroughly analyzed'; Regan both easily *could have* documented those works and *should have* done so, because it is what both Rule 26 and the USPAP require. *Employees Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008); *Propat Int'l Corp. v. Rpost, Inc.*, No. SACV031011JVSVBKX, 2005 WL 5957834, at *1 (C.D. Cal. Sept. 19, 2005) ("As the case law elaborates, the concept of "consider" encompasses "to reflect on: think about with a degree of care or caution; to think of, regard or treat in an attentive, solicitous, or kindly way" – *i.e.* the Rejected Comparables, but *not* the raw search results Regan's searches generated, which, as Plaintiff affirmatively argues, Regan did not "treat attentively").[15] Indeed, because Rule 26(a)(2)(B) so clearly required Plaintiff to disclose the Rejected Comparables, no "reasonable person" could "differ as to whether [Plaintiff] was required to comply with the disclosure request," and the failure could not be substantially justified.[16] *Coene v. 3M Co.*, 303

---

[15] For that reason, Plaintiff cannot satisfy her discovery obligations by simply turning over Regan's raw search lists, burying the still-unidentified Rejected Comparables in a pile of search results Regan paid no particular attention to (and which therefore are not discoverable) and thereby hiding those he considered most attentively. *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409–10 (S.D.N.Y. 2009).

[16] Nor is Plaintiff's suggestion that "the issue seemed resolved" relevant. Defendants had no obligation to move to compel Plaintiff to make the disclosures required by Rule 26, and no case suggests that a failure to disclose is exonerated unless the prejudiced party moves to compel. Indeed, any such motion would have been pointless; Plaintiff self-evidently isn't *withholding* documentation of the Rejected Comparables, she simply does not have any such documentation, because Regan didn't create and retain it. Indeed, Plaintiff never suggests that had Defendants pressed the issue, she would have been able to identify and produce the Rejected Comparables. In any event, as the *Cohlmia* court noted, the directives of

F.R.D. 32, 44 (W.D.N.Y. 2014) (declining to preclude where failure was not substantially justified but prejudice could be cured with a continuance).

Similarly, Plaintiff's argument that the failure to disclose was harmless is pegged to the imaginary issue (the failure to disclose the thousands of search results Regan incidentally viewed) rather than the real issue (Regan's failure to identify works he gave significant attention to before deciding not to rely on them). While "the databases Mr. Regan relied on were disclosed and can be … searched by the Wangs' [sic] and their expert," Opp at 29, no search of artnet.com can ever disclose to Defendants which of the auction results *Regan* felt were most comparable but did not rely on, for purposes of cross-examining Regan on his choice of comparables. Nor can Mr. Linsner's analysis do so. Thus, while Regan "will be subject to cross-examination *on the entire database*," Opp at 29, he will **not** (and, more importantly, **can** not) be subject to cross-examination on the comparables he considered most relevant among the database results that did not impact his appraisals. As the Seventh Circuit explained, that is critical ammunition for cross-examination, *Fid. Nat'l Title Ins. Co.*, 412 F.3d at 751, not a "minor or technical deficiency." Opp at 29. For instance, if each of the Rejected Comparables involved a sale at a considerably lower value than Regan's appraisals of the relevant paintings, that would be strong evidence that Regan had skewed his appraisal to increase his clients' claims. By failing to document the materials he considered but didn't rely upon, Regan irrevocably prejudiced Defendants.[17]

---

Rule 26 are mandatory and the sanction self-executing; Plaintiff ignored it at her peril. *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 429 (N.D. Okla. 2008). "A litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk." *Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013) (precluding expert report), *aff'd sub nom. Wannall v. Honeywell, Inc.*, 775 F.3d 425 (D.C. Cir. 2014), *quoting Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990).

[17] Because Plaintiff's failure to disclose is of material that Regan considered but **didn't** rely upon, and which would be useful not to support Regan's opinion but to challenge it, Plaintiff's citation to a line of cases focusing on "sandbagging" a party with "new evidence" is wholly inapposite. Yes, where a party seeks to affirmatively rely on new, undisclosed evidence, it may be appropriate to consider whether the opposing party has been "sandbagged." But that consideration makes no sense at all where the issue is a party failing to disclose damaging material that would have been useful to their adversary. *Of course* Plaintiff has no intention of introducing the Rejected Comparables, which could only discredit, rather than buttress, Regan's opinion. **That is precisely the problem.**

Finally, Plaintiff makes a last-ditch plea that the Court not preclude her expert's report because his testimony is so critical to her case. Opp at 29 ("Precluding Mr. Regan's expert testimony when a $70 million self-dealing case hinges on it would be grossly disproportionate …"). But Plaintiff has it backwards. Plaintiff has the burden of proof in this case, in which she seeks over $200,000,000 from Defendants. (As she notes elsewhere, Plaintiff is seeking treble damages under RICO). Regan's report and testimony are the lynchpin of that 9-figure damage claim. It would be deeply unjust to require Defendants to defend against such life-altering damages with one hand tied behind their back because *Plaintiff* failed to instruct her inexperienced expert to retain and disclose any and all documents and materials he considered in connection with his opinion, even if he did not ultimately rely on them. Indeed, even in the *Hogan v. Vandewater* case Plaintiff cites, the Northern District conditioned the admissibility of the plaintiff's expert on the plaintiff *curing the prejudice to the defendant*. *Hogan v. Vandewater*, No. 711CV0754DNHATB, 2016 WL 7634430, at *5 (N.D.N.Y. Apr. 27, 2016) ("plaintiffs are under an obligation to cure any prejudice suffered by the defendants as a result of their failure to comply. As a result, Montcrief may testify as an expert witness *so long as* plaintiffs' [sic] serve on defendants the written report required … on or before 5:00 p.m. on Friday, May 6, 2016 …") (emphasis added). *See also Sirois v. USAA Cas. Ins. Co.*, No. 3:16-CV-1172 (MPS), 2019 WL 235326, at *2 (D. Conn. Jan. 16, 2019) (denying preclusion of late-disclosed expert where "the prejudice the Defendant will face in meeting the new testimony is minimal" because there was sufficient time to trial).

Here, however, there is simply no way for Plaintiff to cure the significant prejudice to Defendants. Indeed, Plaintiff notably fails to suggest any alternative other than preclusion to address her failure to disclose. *Cf. Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (preclusion is not automatic because the Court can impose such other sanction as is sufficient to correct the prejudice to the wronged party). Thus, the Court is left with a stark choice: Preclude Regan's

testimony for failure to disclose all data he considered in reaching his opinions, most critically the Rejected Comparables he "gave significant attention to" and "engaged in thorough analysis of," or force Defendants to try the case without the most meaningful means of challenging Plaintiff's appraisal and Regan's selection of comparables, to their grave detriment. Faced with that choice, the law is clear that the burden of Plaintiff's failure to disclose must fall on Plaintiff, not Defendants. *See, e.g., Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 931-932 (C.D. Cal. 2016) (declining to preclude critical expert report for failure to disclose information considered but not relied upon, which "could be even more important for cross-examination than those actually relied upon" *only* if expert could provide the withheld materials) (quotation omitted), *aff'd*, 742 F. App'x 282 (9th Cir. 2018); *In re Google Adwords Litig.,* No. C08-03369 JW HRL, 2010 WL 5185738, at *3 (N.D. Cal. Dec. 8, 2010) (requiring disclosure). The motion must be granted.

## CONCLUSION

As shown in the Moving Brief, and further demonstrated herein, Regan's report, testimony, and disclosures fall far short of what would be required for admissibility. His testimony is a black box, built on unreliable data, and supported by a report that admittedly fails to disclose what was "substantively done" to reach Regan's conclusions. And Regan failed to preserve and produce the most critical information that could have been available to Defendants to challenge his appraisal: the identity of the paintings he considered most closely comparable among those he chose not to rely on in reaching his opinions of value. For all of these reasons, the motion should be granted.

Dated:    New York, New York                Kamerman, Uncyk, Soniker & Klein P.C.
           March 30, 2021
                                                       /s/ Akiva M. Cohen
                                           Akiva M. Cohen
                                         Attorney for Defendants
                                         1700 Broadway
                                         New York, New York 10019
                                         (212) 400-4930
                                         acohen@kusklaw.com