## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

YIEN-KOO KING,

                  Plaintiff,

        v.

ANDREW WANG, et al.,

                  Defendant.

**Case No: 14-cv-7694**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO RENEW MOTIONS IN LIMINE AND TO EXCLUDE EXPERT TESTIMONY

Defendants Andrew and Shou-Kung Wang respectfully submit this memorandum of law in support of their motion to renew their motions *in limine*, Docket No. 256, and to exclude the testimony of Plaintiff's expert, Patrick Regan ("Regan"), Docket No. 234. On June 2, 2021, the Court denied Defendants' motions as moot in light of the parties' settlement discussions, with leave to renew if necessary. Docket No. 281. As the settlement negotiations have failed and the case has been reset for trial, Docket No. 286, Defendants respectfully renew their motions.

In so doing, Defendants stand on the supporting papers filed in connection with the prior applications (both in the moving papers and on reply). Defendants submit this memorandum of law, however, to address one disclosure Mr. Regan made about his methodology at the *Daubert* hearing,

because it was unavailable to them when they filed their reply memorandum of law, and directly

responsive to a (now demonstrably false) argument Plaintiff made in opposing the *Daubert* motion.

## ARGUMENT

In opposing Defendants' motion to exclude Mr. Regan's report as based on unreliable data,

Plaintiff argued that the (admitted) unreliability of the Chinese auction data was mitigated "by

collecting multiple comparables from multiple auction houses, including Western ones such as

Sotheby's and Christie's." Docket No. 239 at 25 ("Concerns over consummation rates are further

mitigated, Mr. Regan has explained, by collecting multiple comparables from multiple auction

houses, including Western ones such as Sotheby's and Christie's"). At the *Daubert* hearing, however,

Mr. Regan affirmatively testified that he had not taken any such mitigatory step with respect to

paintings that had prior auction results; instead, he explained that he had simply pegged his appraisal

to the single data point of a prior sale of the painting being appraised – without any certainty

whatsoever that such a sale had actually been made at that price – and that the other "comparables"

listed were just informational rather than having meaningfully impacted his appraisal. Docket No.

282[1] at 45:16-47:13; 49:18-50:17. *See also id.* at 99:13-100:11 (counsel arguing that Mr. Regan's

methodology was simply taking and applying the valuation from prior sales of the same painting:

"one equals one"). Not only did that testimony highlight the black-box nature of his opinion (in that

it disclosed, for the first time at the *Daubert* hearing, a methodology that Mr. Regan had never

previously identified), but Mr. Regan expressly acknowledged that his methodology **exacerbated**,

rather than "further mitigated" the "[c]oncerns over consummation rates" that render the data on

which he based his opinions fundamentally unreliable. Docket No. 282 at 64:17-65:15

(acknowledging that if the prior sales had not consummated, that could "very dramatically impact

---

[1] For the Court's convenience, a copy of the transcript of the *Daubert* hearing is attached as Exhibit 1 to the accompanying Declaration of Akiva M. Cohen.

the price [he] put on the item in [his] appraisal"). Moreover, Mr. Regan's newly disclosed

methodology contradicted his own emphatic agreement, at the outset of his hearing testimony, that

appraisers should always rely on multiple data points if possible, because any single auction result

might be an outlier:

> Q. In terms of appraisals, you'll agree it is important to rely on
> multiple comparables, correct?
>
> A. *Definitely, yes*.
>
> Q. One reason for that is that auctions can have outlier results at
> times, right?
>
> A. Yes.
>
> Q. For example, you can get two people with egos competitively
> bidding up a piece well beyond its expected worth, because they just
> don't want to lose to the other guy, right?
>
> A. That could certainly happen, yes.
>
> Q. Or you can have an auction where it just so happens that pretty
> much all the buyers who would be interested in a piece got lucky and
> spent their money on other pieces before, so it ends up going
> undervalue or being bought in, correct?
>
> A. Right.
>
> Q. Ideally, you want to be able to look at multiple comparables and
> triangulate value based on those multiple comparables?
>
> A. Correct, yes.

Docket No. 282 at 40:14-41:7 (emphasis added).

Because Mr. Regan had not previously disclosed this detail of his appraisal methodology, and

it was therefore unknown to Defendants until he articulated it at the *Daubert* hearing, Defendants

could not make these points in their moving papers or in their reply brief when responding to

Plaintiff's (now evidently false) claim that Mr. Regan's methodology had somehow mitigated for the

unreliability of the Chinese appraisal results.

## CONCLUSION

As set forth in Defendants' prior memorandum of law, Mr. Regan's testimony must be excluded. Indeed, beyond confirming that his disclosures were insufficient and that his opinion was a black box, Mr. Regan's testimony at the hearing both confirmed that he had *not* mitigated for the "concerns about consummation rates" and disclosed for the first time that his appraisal methodology did not even comply with his own belief that it was "definitely" important for appraisers to base their appraisals on values triangulated among multiple comparables, rather than simply a single prior result. The hearing testimony thus confirmed that Mr. Regan's appraisals are fundamentally unreliable, and that the Court therefore has a duty to exclude them from the evidence at trial.

Dated:    August 9, 2021                                  Respectfully Submitted,

                                                          Kamerman, Uncyk, Soniker & Klein P.C.

                                                          _____/s/ Akiva M. Cohen_____
                                                          Akiva M. Cohen
                                                          Attorneys for Defendants
                                                          1700 Broadway
                                                          New York, New York 10019
                                                          (212) 400-4930
                                                          acohen@kusklaw.com