UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YIEN-KOO KING,<br><br>                              **Plaintiff,**<br><br>   -against-<br><br>ANDREW WANG, SHOU-KUNG WANG, BAO WU TANG, JIAN BAO GALLERY, ANTHONY CHOU, CHEN-MEI-LIN, WEI ZHENG, YE YONG-QING, YUE DA-JIN and JOHN DOES 1-9,<br><br>                             **Defendants.** | Case No: 14-cv-07694 (LJL) |

**PLAINTIFF YIEN-KOO KING'S MEMORANDUM OF LAW
IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO RENEW AND
DAUBERT MOTION SUR REPLY**

 

Sam P. Israel, P.C.
180 Maidan Lane, 6th Fl.
New York, New York 10038
T: (646) 787-9880| F: (646) 787-9886
admin@spi-pc.com
*Attorneys for Plaintiff Yien-Koo King*

Yien-Koo Wang King ("Y.K. King" or "Plaintiff") respectfully submits this memorandum in partial opposition to the motion of Defendants Andrew ("A. Wang") and Shou-Kung Wang ("S.K. Wang") (collectively "Defendants" or "Wangs") (ECF Dkt. 288; the "Motion") to allegedly renew their *in limine* motions to preclude certain evidence and testimony from trial [ECF Dkt. 256] and to further exclude the testimony of Plaintiff's expert, Patrick Regan [ECF Dkt. 234].

## I. PRELIMINARY STATEMENT

The Plaintiff partially opposes the Wangs' Motion to renew on two grounds. First, the portion of the Motion which comprises unauthorized sur-reply must be rejected. Second, the Plaintiff requests that her own pending motions—(a) to implement sanctions, including adverse inference jury instructions, based upon the Wangs' discovery failures, [ECF Dkt. 248] and (b) for pre-trial rulings on certain evidentiary issues [ECF Dkt. 251]—also be renewed along with the Wangs' pending motions in limine.

On June 2, 2021, the Court denied the parties' motions *in limine* as moot in light of their settlement discussions, with leave to renew if necessary. *See* ECF Dkt. 281. As the settlement negotiations have failed[1] and the case has been reset for trial, the Wangs leverage the moment to amplify their *in limine* arguments by means of a sur-reply brief (ECF Dkt. 288; the "Wang Brief"). Yet this advance of fresh and unauthorized argument violates the Federal Rules of Civil Procedure. Their additional argument—vapid though

---

[1] The parties remain hopeful that travel restrictions to China will lift in order to effectuate their negotiated settlement. However, a meaningful change in such restrictions remains uncertain, if not unlikely.

1

it may be—should either be stricken or, alternatively, considered only in light of the Plaintiff's response herein.

This is a RICO suit involving a self-dealing fiduciary and an international art enterprise that traffics in stolen property. Defendants S.K. Wang, A. Wang, and their accomplices participated in a scheme to illegally acquire and transport 98 Estate paintings (the "98 Paintings") worth $70,000,000 from New York to Hong Kong over six years. The acquisition of the 98 Paintings occurred through fraudulent self-dealing and at below-market values without honest, arms-length negotiations with genuine buyers. The Estate must be permitted to recoup the current market value of the stolen 98 Paintings lest the Wangs' RICO violations and self-dealing be transformed from federal *crimes* which defrauded the Estate into spectacular *investments* which made them decamillionaires.

The Plaintiff retained an expert in the field of appraising Chinese art, Patrick Regan, to appraise the 98 Paintings and establish that the Estate was injured, and the Wangs enriched, by the paintings' fraudulent sale. In February of this year, the Wangs filed a motion to preclude Mr. Regan's opinion at trial *in toto.* Hoping to have the final word on sur-reply (and likely on sur-sur-reply in response to this opposition), the Defendants raise in their current Motion to renew arguments similar to those originally filed to exclude Mr. Regan's valuation testimony from trial. To protect the Estate's rights, the Plaintiff addresses the Wangs' supplemental arguments herein, but ultimately requests that the Court strike those arguments and also renew her own motions *in limine*: ECF Dkt. Nos. 248 and 251.

## II. ARGUMENT

### A. The Defendants' Sur Reply Is Unauthorized and in Furtherance of a Fully Briefed Matter; It Should Be Stricken.

District courts have discretion to decide whether to strike or permit a litigant's sur-reply. *Neary v. Weichert*, 489 F Supp 3d 55, 62 (E.D.N.Y. 2020); *see also Endo Pharm Inc. v. Amneal Pharm., LLC*, No. 12-CIV-8060, 2016 WL 1732751 at *9 (S.D.N.Y. Apr. 29, 2016) ("It is beyond dispute that the decision to permit a litigant to submit a [sur-reply] is a matter left to the court's discretion"). Here, because the alleged Motion to renew augments the Defendants' initial Daubert motion, it should be stricken as an unauthorized sur reply submission. *See Lederhouse v Landau Arnold Laufer LLP*, 2018 US Dist LEXIS 57590, at *2, n 1 (S.D.N.Y. Apr. 4, 2018) ("plaintiff filed additional objections after the Court issued its decision in this case, but before this order was posted to the docket. Because a sur-reply was not authorized, the Court will not consider it, and the Clerk of Court shall strike both Plaintiff's sur-reply, and Defendants' sur-sur-reply from the docket."). There is nothing contained in the Wangs' supplemental argument that could not have been raised during the oral argument portion of the Daubert hearing following the two experts' testimonies.

### B. Patrick Regan's Methodology Was Neither Undisclosed nor Unreliable: His Valuation Methods Are Standard Within the Industry and Routinely Accepted by the IRS.

In their sur-reply, the Wangs fire one last volley at Mr. Regan's opinion that, to the extent they took possession of all 98 Paintings, they took possession of more than $70 million worth of Estate assets. Their first argument is that Mr. Regan failed to fully disclose his methodology and that his valuations are *ipse dixit*. Their second is that he

3

...

supposedly failed to mitigate against the "unreliability of the Chinese auction data" when he supposedly failed to "collect[] multiple comparables from multiple auction houses." Wangs Brf. at 2. In reality, he failed to do neither.

The Wangs repeatedly claim that Mr. Regan never fully disclosed his "methodology," but they use that term incorrectly in the context of an expert appraisal. Mr. Regan used the Fair Market Value and market comparison methodologies to render his appraisal. This entails comparing (in terms of authorship, subject, age, material, *etc.*) each of the 98 Paintings to similar Chinese painting which sold at public auctions in order to determine their approximate value. *See* ECF Dt. 239 (King Daubert Mot. Opp. Brf.) at pp. 14-19. This is the same methodology that Mr. Regan uses when submitting tax appraisals of Chinese paintings to the IRS and the same methodology that the Estate originally used in 2003 when first valuing its assets. Cohen Decl. Exh. 1 at 65:16-66:20 (Mr. Regan testifying that he routinely cites Chinese auction house comparables in tax valuations for the IRS without issue); *id.* at 22:1-23:23 (Mr. Linsner admitting the IRS appears to have accepted citations to Chinese auction results used in the Estate's 2003 tax appraisal). For his part, the Wangs' own expert, Mr. Kenneth Linsner, agreed that $9 million worth of Mr. Regan's valuations were "credible." *See id.* at 100:12-15. It is not a requirement of this methodology or the Federal Rules of Evidence, however, for Mr. Regan to have anticipated and addressed every conceivable cross-examination question the Wangs might have about his valuation. *See* ECF Dkt. 239 (King Opp. Brf.) at pp. 27 (noting Mr. Regan disclosed the comparables, market reports, market trends, photographs, and databases he relied on, but was not required to "anticipate every nano-

4

detail that might be involved in defending the opinion on cross examination."). For example, the Wangs engage in hairsplitting to a ridiculous degree when they complain that Mr. Regan valuing a painting at $4.6 million when that *exact same painting* sold several years ago for $4.6 million at a public auction is *ipse dixit* or part of a previously undisclosed methodology. *See* Wang Brf. at p. 2.  Cohen Decl. Exh. 1 at 99:13-100:11 (Plaintiff's counsel noting the Wangs selected only a couple minor works to make their *ipse dixit* argument against the entire 98 Painting appraisal while ignoring nearly all of the multi-million-dollar paintings at issue). The facts here are plainly distinct from the facts in the two cases cited by the Wangs in which courts found property appraisals deficient because the experts disclosed no market comparables whatsoever.

  Finally, it is not a "false claim" that Mr. Regan used multiple comparables to increase the reliability of his appraisal. *But* s*ee* Wang Brf. a p. 3. He absolutely did. Mr. Regan identified more than 300 market comparables in his Fair Market Valuation of the 98 Paintings. These comparables were drawn from the same auction data that he uses in his IRS-accepted tax appraisal. *See* Cohen Decl. Exh. 1 at 65:16-67:19 (Mr. Regan testifying that he regularly uses Chinese auction in his tax appraisals without objection by the IRS and explaining how he mitigates against the possibility of default auction sales); 74:25-75:10 (Mr. Regan testifying that "out of those hundreds" of appraisals he's done for the IRS "more than half had at least one or two auction house comparables, in some cases much more from China, mainland China."). But with respect to the issue of how the comparables were weighted, Mr. Regan explained that a mathematical breakdown of the weight given to each comparable would not only deviate from his training and

5

experience, but also contravene painting valuation principals accepted by the IRS. *Id*. at 44:9-23 (discussing that "strict mathematical" weighting is discouraged by the IRS and unusual, except "in the case of blockage discounts or things like that.").

To the extent the Wangs deem Mr. Regan's comparables or how he applied them deficient in any way, they are free to cross-examine him and present their own expert's counter testimony. But they cannot require him to prove an impossible negative (*i.e.*, that the publicly published sales were not secretly aborted) in order to have his opinion rendered admissible.

### III.   CONCLUSION

For the forgoing reasons, the Court should strike the argumentative portion of the Wangs' Brief [ECF Dkt. 288] and renew all four of the pending motions *in limine*—not simply those filed by the Wangs. To the extent the Court does not strike the Wangs sur-reply, however, the Plaintiff requests that the Court consider the arguments herein and refrain from upending long-establish federal tax policy by finding Chinese auction results are inherently unreliable for valuation purposes. Nor should the Court fall for the Wangs' absurdist arguments that they are entitled to retain the $70 million in artwork they acquired from the Estate through fraud because Mr. Regan's 100+ page USPAP compliant property valuation—which cites to hundreds of distinct market comparables—is somehow a "black box."

Dated: New York, NY
August 19, 2021

                                                **SAM P. ISRAEL, P.C.**
                                                *By:*/s/ *Timothy Savitsky*
                                                Sam P. Israel (SPI0270)
                                                Timothy Savitsky (TS6683)
                                                180 Maiden Lane, 6th Floor
                                                New York, New York 10038
                                                T: (646) 787-9880 | F: (646) 787-9886