**S P I** **SAM P. ISRAEL P.C.**
ATTORNEYS AT LAW

32 BROADWAY, SUITE 1114, NEW YORK, NY 10004
info@spi-pc.com | T: (646) 787-9880 | F: (646) 787-9886 | www.spi-pc.com

**SAM P. ISRAEL**
FOUNDER & MANAGING PARTNER

Timothy Savitsky
*Associates*

**BY ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

November 7, 2021

Re: *King v. Wang et. al.* No. 14-cv-07694 (LJL-JLC)

Dear Judge Liman,

We write on behalf of Yien-Koo King ("Yien-Koo" or "Plaintiff") in opposition to the Wangs' letter motion for leave to submit a sur-reply. As a threshold point, it is not alleged that anyone at Mr. Cohen's firm—Kamerman, Uncyk, Soniker, & Klein (the "KUSK Firm")—willfully participated in predicate RICO activity or engaged in fraud. That is why the KUSK Firm is not a named defendant. At the same time, the firm's legitimate operations still furthered the Wang Family's alleged predicate activity and thus unwittingly aided their enterprise. *See Biote Med., LLC v. Jacobsen,* No. 18-cv-00866, 2021 WL 327505 (E.D. Texas Feb. 1, 2021) (observing a RICO enterprise may conduct both legitimate and illegitimate business); *Goren v. New Vision Int'l,* 97-C-1771, 1997 WL 548560 (N.D. Ill. Sept. 2, 1997) (dismissing complaint but noting that a RICO enterprise may be comprised of legitimate business operations undertaken by innocent employees with no knowledge of the enterprise's other, illicit, operations). Most pointedly, the KUSK Firm drafted each of the allegedly fraudulent contracts at issue and maintained exclusive control over the incriminating wire records.

It is difficult to decipher how, as Mr. Cohen argues, the KUSK Firm partners' dual status as fact witnesses and trial counsel supplements the already briefed *collateral estoppel* and *FRE 403* motions. Those motions concern whether Yien-Koo's fraudulent disinheritance and alleged pre-2003 misconduct should be the subject of renewed litigation in this federal action against the Wangs. The KUSK Firm is not a defendant and Mr. Cohen's citations to decisions dismissing RICO pleadings against law firms are utterly immaterial to anything raised in the motions. Moreover, the Plaintiff has never listed Jerome Kamerman on her witness list and has no plans to call him or re-litigate the

outcome of the 2017 probate trial. It is only the Wang Defendants who argue that they may do so.

Mr. Cohen's claim of *surprise* that certain KUSK Firm members will be called as witnesses is astounding. It has been undisputed since discovery commenced in this case that his KUSK Firm drafted all six allegedly fraudulent Estate contracts. These contracts directed that all six separate shipments of the Estate's paintings be sent to the same address in Hong Kong. That Hong Kong address was revealed shortly before the close of discovery to be the office of the Wang Family's accountant. As the chief drafter of the contracts, Martin Klein will need to testify and his knowledge of these facts is highly relevant. At Mr. Klein's deposition in 2019 (which was ordered by Magistrate Judge James L. Cott over Mr. Cohen's objection), Mr. Klein testified concerning his communications with Andrew Wang in relation to all six sales. *See* Exhibit 1 (excerpt from deposition of Martin Klein discussing the crime-fraud exception and waiver of privilege as between the KUSK Firm and Andrew Wang in relation to the sales of the 98 paintings). He has been listed on the Plaintiff's Rule 26(a) disclosures and trial witness lists for years.

A third partner at the KUSK Firm, Hilton Sonikor, also participated the creation of the six fraudulent contracts at issue. *See e.g.*, Exhibit 2 (Aug. 3, 2005 email from Andrew Wang to Hilton Soniker directing paintings allegedly bought by "Yong-Qing Ye" to be shipped to "Ms. Billie Wai" in Hong Kong). Mr. Soniker further served as counsel to Andrew Wang with respect to his supposed collection and turnover of Estate assets. *See e.g.*, Exhibit 3 (Sept. 19, 2003 letter from Andrew Wang to Hilton Soniker concerning the inventorying of estate assets). This issue is relevant since Andrew Wang failed to deliver many of C.C. Wang's seals to the Estate. We learned only a few days ago that Mr. Soniker plans to serve as trial counsel even though he was directly involved with the facts being presented at trial. We are willing to meet and confer with Mr. Cohen concerning whether the Plaintiff will call him as a witness on the same factual basis that Mr. Klein is being called.

The KUSK Firm also maintained sole control and possession of the Estate's wire records of the six sales. When these records first saw the light of day during discovery, it became apparent that the wire records indicated self-dealing. One confirmation indicates that the Estate received a $489,772.00 payment from Andrew Wang's own admitted company ("Le Style Limited"). Three of the other wire records indicated payments to the Estate from the same sender ("8480185540"), despite being made in relation to sales to *different* buyers. Mr. Klein and Mr. Soniker's knowledge of the facts pertaining to the wire transfers is of course highly relevant.

2

___

As for Mr. Cohen himself, he has been on the Plaintiff's Rule 26(a) disclosures since *before* the KUSK Firm replaced Kasowitz, Benson, Torres LLP as trial counsel. The wire records in relation to the first two Estate sales were maintained by a now defunct law firm named Brown Raysman Millstein, Felder & Steiner LLP (the "BR Firm"), at which Mr. Cohen worked at the time. However, that firm has been dissolved for over a decade and there is simply no way to acquire its records of who paid the Estate in relation to the first two sales. We were contemplating seeking Mr. Cohen's testimony regarding this since he is the only witness who has personal knowledge of the BR Firm's dissolution—though we are not seeking Mr. Cohen's disqualification. If the Wangs are willing to stipulate that the BR Firm dissolved over a decade ago and that wire records indicating the source for the first two payments are unavailable, we could avoid seeking his testimony.

In sum, the Plaintiff has an obligation to the Estate to place facts before the jury establishing that the KUSK Firm operated at the instruction of the Wangs, even if unwittingly, as part of the RICO enterprise. We may do this without arguing that any member of the KUSK Firm *willfully* participated in predicate activity.[1] We of course reserve our right to make such an argument as the evidence develops at trial. In any event, Mr. Cohen's attempt to use the KUSK Firm's participation in the transactions at issue to avoid collateral estoppel and open up evidentiary related to Mrs. King's disinheritance is an error.

We thank Your Honor for the Court's attention to this matter.

Respectfully submitted:

**SAM P. ISRAEL, P. C.**

By: */s/Timothy Savitsky*
Timothy Savitsky (TS 6683)

cc.      All counsel of record [via ECF]

___

[1] At the same time, the emails and wire records demonstrating the extent of the KUSK Firm's participation in the sales were only produced by the Wangs and the KUSK Firm in or about September 2018. As such, the four-year RICO statute of limitations has not yet run on any claim the Estate may ultimately have upon the KUSK Firm.

# EXHIBIT 1

1

2        UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
3        Index No. 14-Civ.-07694 (JFK)

4
    -------------------------------------------------
5   YIEN-KOO KING, NORTHWICH INVESTMENTS LTD.,
    and SOON HUAT, INC.,
6
             Plaintiffs,
7
         vs.
8
    ANDREW WANG, SHOU-KUNG WANG , BAO WU TANG, JIAN
9   BAO GALLERY, ANTHONY CHOU, CHEN-MEI-LIN, WEI
    ZHENG, YE YONG-QING, YUE DA-JIN and JOHN DOES
10  1-9,

11           Defendants.
    -------------------------------------------------
12

13
                    TRANSCRIPT OF
14
             DEPOSITION OF MARTIN KLEIN
15

16

17          TRANSCRIPT of the stenographic notes of

18   the proceedings in the above-entitled matter, as

19   taken by and before TAB PREWETT, a Registered

20   Professional Reporter, a Certified LiveNote

21   Reporter, Certified Shorthand Reporter and Notary

22   Public, held at THE OFFICES OF SAM P. ISRAEL,

23   P.C., 180 Maiden Lane, 6th Floor, New York, New

24   York  10038, on Wednesday, June 26, 2019,

25   commencing at 10:00 a.m.

```
 1
 2    A P P E A R A N C E S:
 3
 4
 5            SAM P. ISRAEL, P.C.
 6            BY:  TIMOTHY SAVITSKY, ESQ.
 7            180 Maiden Lane
 8            6th Floor
 9            New York, New York  10038
10            Attorneys for Plaintiffs
11
12
13
14            SCHRAM GRABER & OPELL, P.C.
15            BY:  GLENN A. OPELL, ESQ.
16            11 Park Place
17            Suite 1008
18            New York, New York  10007
19            Attorneys for the Public Administrator
20            of New York County
21            Third-Party Defendant
22
23
24
25
```

```
 1

 2           KASOWITZ BENSON TORRES LLP

 3           BY:  KIM CONROY, ESQ.

 4           1633 Broadway

 5           New York, New York  10019

 6           Attorneys for the Defendants

 7

 8

 9

10

11           KAMERMAN, UNCYK, SONIKER & KLEIN P.C.

12           BY:  AKIVA M. COHEN, ESQ.

13           1700 Broadway, 42nd Floor

14           New York, New York  10019

15           Attorneys for the Defendants

16

17

18

19

20           Judge James L. Cott

21           US District Court

22           Southern District of New York

23           Present Telephonically

24           as noted in the proceedings

25
```

```
 1                    Martin Klein

 2         counsel in a case before Judge Cott, King

 3         v. Wang, 14-CV-07694.  And I am with

 4         opposing counsel at a deposition, and we

 5         have a discovery or privilege question that

 6         we are seeking judicial advisement on.

 7              MR. COHEN:  And just to be clear,

 8         the privilege issue, this is a deposition

 9         of an attorney.  So it really is going to

10         pervade the entire deposition; so it's one

11         of those that, unfortunately, we probably

12         need to get addressed sooner rather than

13         later.

14              THE COURT CLERK:  Sure.  Not a

15         problem.

16              Could you repeat the docket number

17         again?

18              MR. SAVITSKY:  14-CV-07694.

19              (There was a discussion off the

20         record.)

21              JUDGE COTT:  Good morning.  This is

22         Judge Cott.  Who is on the line, please?

23              MR. SAVITSKY:  Good morning,

24         Judge Cott.  Timothy Savitsky from Sam P.

25         Israel PC, as counsel for Yien-Koo Wang
```

```
 1                      Martin Klein

 2          King.

 3                      MR. COHEN:  Good morning, Your

 4          Honor.  It's Akiva Cohen from Kamerman

 5          Uncyk Soniker & Klein, counsel to the Wangs

 6          and also to the witness.  And Kim Conroy is

 7          here as well, from Kasowitz.

 8                      MR. OPELL:  Glenn Opell, Schram

 9          Graber & Opell, for the Public

10          Administrator.  Good morning.

11                      JUDGE COTT:  Who's the witness?

12                      MR. COHEN:  The witness is Martin

13          Klein, who is a partner of mine at

14          Kamerman.  He was the attorney who was

15          subpoenaed, who Your Honor allowed the

16          deposition to go forward.

17                      MR. SAVITSKY:  And just to

18          supplement that, Your Honor, this is

19          Timothy Savitsky.  Martin Klein was the

20          attorney for Andrew Wang at the time of the

21          sales that are alleged to have been

22          self-dealing sales; and we are seeking to

23          depose him on his communications with

24          Andrew Wang during that time about those

25          sales.
```

```
 1                    Martin Klein

 2                 As further clarification, the

 3         E-Mails between Andrew Wang and Mr. Klein

 4         have already been produced.  There is, I

 5         believe, hundreds of E-Mails between the

 6         two of them between the period of 2004 and

 7         2009, discussing the sales, the prices,

 8         Mr. Wang's communications with the

 9         purported buyers, the contracts, the terms

10         that would go into the contracts.

11                 And Mr. Cohen and Ms. Conroy are

12         not objecting to questions about the

13         E-Mails themselves and the contents of the

14         E-Mails.

15                 What they are objecting to, Your

16         Honor, is that I ask questions about

17         whether Andrew said anything other than

18         what's put in the E-Mails to Mr. Klein

19         about the sales.

20                 So they claim they've waived the

21         privilege, as I understand it, as to the

22         E-Mails that relate to the sales at issue;

23         but they haven't waived the privilege as to

24         oral communications about the sales at

25         issue.
```

Martin Klein
06/26/2019

1                    Martin Klein

2              And we believe that, under the

3         fairness doctrine, privilege can't be

4         waived in that way.

5              And we also believe that it's

6         self-serving because they've chosen to

7         waive certain communications, which we

8         believe they will use for their defense --

9         and, in fact, they already have, at

10        Andrew's prior deposition yesterday, but

11        not others.

12              And we believe that it should be

13        disclosed; his oral communications with

14        Andrew should be disclosed, and he should

15        testify to them.

16              And we also think that there's a --

17        in addition to that, alternatively, there's

18        the crime fraud exception, which would also

19        render the oral communications

20        discoverable.

21              Your Honor, is the Court still

22        there?

23              JUDGE COTT:  Yes, I am.

24              MR. SAVITSKY:  Okay.  Thank you.

25              JUDGE COTT:  Are we on the record?

1                    Martin Klein

2          Are we on the record, by the way?

3                    MR. COHEN:  Yes, Your Honor, we

4          are.

5                    JUDGE COTT:  Who wants to be heard?

6                    MR. COHEN:  This is Akiva Cohen,

7          Your Honor.

8                    So the issue in a nutshell is

9          whether or not subject matter waiver has

10         been triggered under Rule 502(a).  Subject

11         matter waiver can be found beyond the face

12         of the documents only if the waiver is

13         intentional, but also if the waiver

14         without -- without allowing waiver as to

15         the subject matter, it would be unfair to

16         the non-disclosing party.

17                   So one of the first decisions

18         handling this was Bear Republic Brewing

19         Company, which was 275 F.R.D. 43.  It's a

20         District of Massachusetts decision.  And in

21         examining what the scope of fairness under

22         502(a) was it looked at the Congressional

23         Record and the advisory committee note.

24                   And it explained that Congress's

25         explanation for what 502(a) meant and what

```
 1                   Martin Klein
 2          "fairness" meant is that:
 3                "When a party's strategic" -- and
 4          "strategic" was italicized in the
 5          decision -- "use in litigation of otherwise
 6          privileged information obliged that party
 7          to waive the privilege regarding other
 8          information concerning the same subject
 9          matter so that the information being used
10          can be fairly considered in context."
11                And, second, also, again, quoting
12          the Congressional Record:
13                "The party using an attorney/client
14          communication" -- and it's italicized
15          again -- "to its advantage in litigation
16          has, in so doing, intentionally waived the
17          privilege as to other communications
18          concerning the same subject matter."
19                To be clear, Your Honor, we are not
20          using any of these communications to our
21          advantage.  They were subpoenaed.  Rather
22          than have an expensive fight about
23          privilege over relatively anodyne
24          documents, we waived the privilege as to
25          those communications, those documents.  We
```

```
 1                     Martin Klein
 2         have not affirmatively used them.  We're
 3         not using them to our advantage.
 4              I was not at the deposition
 5         yesterday.  Ms. Conroy also was not.
 6              Mr. Savitsky, you were.  Did
 7         anybody on Andrew's behalf -- did Andrew's
 8         counsel ask him any questions at the
 9         deposition yesterday?
10              MR. SAVITSKY:  They did ask him
11         questions at the deposition.
12              MR. COHEN:  Did they show him
13         attorney/client documents during those
14         questions?
15              MR. SAVITSKY:  I don't recall that
16         they showed him attorney/client documents.
17         But I --
18              MR. COHEN:  So there was no
19         affirmative use, as far as I'm aware, by
20         Mr. Wang or his counsel of any of these
21         communications.  We don't have any
22         intention of using them affirmatively or
23         strategically.
24              Obviously, to the extent that
25         somehow that later changes -- and again,
```

```
 1              Martin Klein

 2       sitting here today, I can't imagine how or

 3       why it would -- to the extent that it did,

 4       Mr. Savitsky or Mr. Israel could raise the

 5       issue again; and we would certainly have no

 6       basis to object to a further deposition

 7       onto what would then and only then be a

 8       now-waived issue of privilege.

 9            But we are not strategically or

10       affirmatively using these documents.  The

11       disclosure wasn't strategic, and it's not

12       being used to our advantage.

13            Under 502(a), as explained in the

14       brewing company case, in Bear Brewing, and

15       as set out by Congress for what 502(a)

16       means, there is no waiver beyond the scope

17       of the face of those documents that were

18       disclosed.

19            And so Mr. Savitsky is free to ask

20       Mr. Klein questions about the information

21       that's disclosed and as to which it's been

22       waived.  He can ask Mr. Klein his

23       recollection of what he meant by particular

24       things that were listed in there.

25            But he can't start asking him about
```

06/26/2019

U.S. LEGAL SUPPORT
(877) 479-2484

```
1                    Martin Klein

2        other conversations with the client on the

3        same subject matter.  That is privileged.

4        That privilege has not been waived under

5        502(a) and the fairness doctrine.  And

6        that's where we stand on this, Your Honor.

7              MR. SAVITSKY:  Your Honor, may I

8        reply briefly?

9              JUDGE COTT:  I didn't realize we

10       were having a full-blown oral argument with

11       case citations and rules invoked -- and you

12       want me to make a ruling on the spot.  It's

13       a little challenging.  I didn't even get

14       the name of the case or the citation.

15             I'm just opening my book up now to

16       Rule 502.  So you all can keep talking as

17       much as you'd like.  I'm not sure I'm going

18       to be able to adjudicate this dispute.

19             I don't understand why, if this was

20       such a hotly contested matter, it wasn't

21       briefed in advance of this proceeding

22       today.  If you want a ruling during this

23       conference, I am going to do my best,

24       having read not the case cited to me just

25       now on the phone -- the citation I didn't
```

```
 1                  Martin Klein

 2        even get.  And I will read the rule.

 3             But that's the best that I can do

 4        if that's what you want right at the

 5        moment.

 6             MR. SAVITSKY:  Your Honor, I think

 7        you mentioned what I was going to say in

 8        reply, and that's:

 9             Why is this being brought up now?

10             I specifically had conversations

11        with other counsel for Andrew Wang that

12        this deposition would be limited to

13        Mr. Klein's assistance or involvement in

14        the sales at issue, and we agreed to that.

15             At no point in the past nine or

16        ten months since we issued the deposition

17        subpoena, has anyone said that the written

18        communications are waived, but oral

19        communications are not waived.

20             And just to explain how difficult

21        it is and impossible it is to waive one and

22        not the other, one of the questions that I

23        had pending was referencing a statement in

24        an E-Mail.  And I asked Mr. Klein:

25             "How do you know this statement --
```

```
 1              Martin Klein
 2    Westlaw, 2019 WL 1259382.  And the portion
 3    that we would cite to is:
 4         "When there has been selective
 5    disclosure of attorney/client
 6    communications in the litigation, Courts
 7    typically find the party has waived
 8    privilege as to all documents pertaining to
 9    the subject disclosed."
10         And there's more along those lines
11    on pages 20 to 21 of that decision.
12         JUDGE COTT:  Well, as to what you
13    just said, I mean, this is not just about a
14    waiver of other documents.  This is waiver
15    about oral communications because that's
16    what you want to pursue.
17         You want to go outside documents,
18    and Mr. Cohen doesn't want you to go
19    outside the documents.  And Ms. Conroy
20    wants me to know she never talked to you
21    about it before.
22         MR. SAVITSKY:  That's true, Your
23    Honor.
24         JUDGE COTT:  I think I've
25    summarized what you all told me right now.
```

```
 1                    Martin Klein

 2       What's the number I can reach you all at?

 3             MR. SAVITSKY:  The number is

 4       646-868-9444, and the extension is 9887.

 5             JUDGE COTT:  Let me read that back.

 6             646-868-9444, extension 9887.

 7             MR. SAVITSKY:  Yes.  And if I could

 8       just make one final point, Your Honor --

 9       and this is something that we had raised in

10       our prior discussions about this back in

11       September.

12             It's the crime fraud exception, and

13       it was our original basis for deposing

14       Mr. Klein.

15             Andrew Wang testified yesterday

16       that the purchase price for every single

17       one of the estate sales, as far as he could

18       remember, came from a bank account that he

19       owned in Hong Kong or that he controlled in

20       Hong Kong.

21             And we believe we can meet the

22       threshold requirements for the crime fraud

23       exception as to all of these.

24             He also admitted that all of the

25       estate's paintings, all 98, were shipped to
```

```
 1                    Martin Klein

 2        his own personal accountant's address in

 3        China.  He did not produce a single

 4        communication with any of the five buyers.

 5             He stated that he does not know who

 6        the five -- he did not know who the five

 7        buyers were before the sales because he

 8        used an intermediary who is deceased.

 9             And there are many other problems

10        with -- that -- problems in our view with

11        the things that he said that do certainly

12        raise probable cause for the crime fraud

13        exception.

14             And I'm not trying to just bring

15        this up out of nowhere.  I apologize we

16        didn't get into it.  But it absolutely has

17        been our position since September.

18             MS. CONROY:  Your Honor, all I want

19        to say to that -- Ms. Conroy -- is I think

20        you have enough to make it your decision as

21        to the crime fraud Mr. Wang testified to.

22        Neither myself nor Mr. Cohen were here.

23        And, you know, I just want to lodge the

24        fact that I can't contest any of what

25        Mr. Savitsky is representing, to the extent
```

```
 1                      Martin Klein
 2               JUDGE COTT:  Okay.  Good luck with
 3          the depositions, to all sides, and have a
 4          good day.
 5               MR. COHEN:  Thank you again, Your
 6          Honor.
 7               MR. SAVITSKY:  Thank you.
 8               MS. CONROY:  Thank you.
 9               (Judge Cott hung up the phone, and
10          the following proceedings occurred only in
11          the presence of the those attending the
12          deposition in person.)
13               MR. SAVITSKY:  We'll just put on
14          the record that what we've agreed is that I
15          will be able to ask questions concerning
16          the sales of the paintings at issue and
17          their values, including their appraisal.
18          Is that correct?
19               MS. CONROY:  Just for clarity, the
20          98 relating to the sales to the strongman
21          purchasers and their values.
22               MR. SAVITSKY:  That's correct.
23               MR. COHEN:  And the appraisals
24          predating those sales, not anything --
25               MR. SAVITSKY:  Of course.  Right.
```

# EXHIBIT 2

## Address

寄件者:   Andrew Wang (jingguanlou_wang@yahoo.com)

收件者:   soniker@kamso.com

副本:   martykl@kamso.com

日期:   2005年8月31日 星期三 下午11:28 [EDT]


Hilton,
Here are the information.

The purchaser's address is:   Room #10,  Building #29. An-Shang Park No. Three.
                     Shanghai City, 200092
              Tel:   86-21-13788910676

Shipping address:    Mr. Yong-Qing Ye
            C/O  Ms. Billie Wai
            Unit #704. Forseas Building
            208-212 Nathan Road
            Kowloon.     Hong Kong
        Tel:   2866-2116

Thanks
Andrew

CONFIDENTIAL

WANG003294

# EXHIBIT 3

To:       Mr. Hilton Soniker

From:     Andrew Wang

Re:       Estate Inventory

Date:     Sept. 19, 2003

Total Pages: 14 including cover

---

Dear Mr. Soniker,

I have prepared two lists for the estate inventories:

For C.C. Wang's artworks, the inventory listing was conducted in July,2003 at several family members' presence including my elder aunt HS. There are total number of 295 pieces so far with Kings' serial numbers.

On Classical Chinese paintings side, there are 55 pieces for the estate so far. One piece(ES#04) is at a mounter's home in New York, and it's under the Kings' control. I should have no problem bring it back by next week. My father just informed me over the weekend that there are four pieces(#ES06, #ES23, #ES31,#ES29) are still in Beijing. The Kings sent there for auction, and I have already requested the auction house to stop the sale, and return them back. Again, those four pieces are also under the Kings' control. We have to bring them back later.

Crozier may come by next week. There 295 pieces plus other 51 pieces should be ready for storage. Please let me know if you have any question.

Thanks
AW

cc: John Gallagher
    Martin Klein

AWSK_00000118