**KAMERMAN, UNCYK, SONIKER & KLEIN P.C.**

**COUNSELORS AT LAW**

**1700 BROADWAY, 16TH FLOOR**

**NEW YORK, NEW YORK 10019**

———

**(212) 400-4930**

November 13, 2021

<u>*Via ECF*</u>
Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1930
New York, New York 10007-1312

Re: <u>*King v. Wang et. al.*</u> No. 14-cv-07694 (LJL-JLC)

Dear Judge Liman,

We write on behalf of Andrew and Shou-Kung Wang ("Defendants") to ask the Court to preclude Plaintiff from offering *yet another* entirely new, previously undisclosed damages theory – this one in support of an entirely new claim for *$40,000,000.00* in damages. As the Court is aware, on November 12, 2021, the Court denied Defendants' motion in *limine* to preclude Plaintiff from offering a damages theory that she disclosed for the first time on November 1, 2021: that Plaintiff's damages could be measured by the difference between the price the Estate obtained in its art sales and 120% of the value in the 2004 Sotheby's appraisal, which she argued totaled $329,300.00. Docket No. 313. Though the Court found that the disclosure was untimely and unjustified, it did not believe it was meaningfully prejudicial, and therefore declined to strike the damages theory. *Id.*

Apparently taking the Court's ruling as an invitation to further identify yet additional damages theories, on December 13, 2021, Plaintiff provided a revised damages calculation disclosing a *new* new damages theory: Disgorgement. *See* Exhibit 1 hereto, at 7 ("Alternatively, the Estate seeks to recoup the illicit profits received by the Wangs to the extent that they self-dealt on the first auction prices of the 32 paintings. Plaintiff calculates disgorgement to be $39,341,184"). Recognizing that the Court likely does not require them to repeat it herein, Defendants respectfully incorporate by reference their prior briefing, in Docket No. 301, regarding the state of Plaintiff's damages disclosures and the law governing such disclosures; on no previous occasion had Plaintiff identified a damages claim based on disgorgement.

The prejudice to Defendants from this belated disclosure is enormous and unmistakable. Plaintiff proposes to support her disgorgement theory with hearsay auction records from various Chinese auctions, *none of which* were produced during fact discovery, and seeks roughly $40,000,000.00 in damages on the basis of those purported records. Some of the records were never previously produced; others were produced only as records of

purported "comparable" paintings relied on by Patrick Regan in his since-stricken appraisals. Defendants were entitled to rely on Plaintiff's disclosures of her damages theories as they decided what fact discovery to pursue and what experts to retain, and to rely on their recognition that Plaintiff's appraisal expert had not adequately supported his opinions as they determined how to structure their defense of Plaintiff's claims.

Defendants respect (though they do not agree with) the Court's conclusion that Plaintiff's belated disclosure of her 6-figure "Sotheby's + 20%" damages claim was not prejudicial to them. But the injection of a new **$40,000,000.00** damages claim is another thing entirely, and would have definitively changed how Andrew & S.K. Wang defended this case. For example, had Plaintiff adequately disclosed during the fact discovery period her intent to seek "disgorgement" damages based on the (not-even-produced) Artron auction records of subsequent sales of the paintings at issue, Defendants could have (and, as a practical matter, would have had no choice but to) sought discovery regarding those auction results, whether under U.S. law (for entities, such as China's Poly & China Guardian auction houses, that have U.S. presences, *see* Exhibits 2 & 3 hereto) or via the Hague Convention (for entities with no U.S. connection or where, as was likely, the U.S. entities resisted discovery). Instead, Plaintiff specifically and deliberately limited her damages claim to "appreciation damages," as to which subsequent sales not made at around the time of trial were definitively irrelevant.

This, of course, is just one example of how timely disclosure of Plaintiff's mid-8-figures damages theory could and would have altered Defendants' choices in discovery, identified after roughly an hour or two of thought. (Plaintiff provided her new damages calculation by email at 11:37 a.m. this morning, but I did not see it until after returning from the Sabbath this evening.) Defending a $40,000,000.00 damages claim obviously requires more than mere hours of thought and strategizing – and given the impending pre-trial deadlines I do not have the time now to devote to identifying further hypothetical discovery strategies for responding to this belatedly disclosed damages theory. Indeed, this is the type of claim in litigation for which a damages defense theory would be identified in iterative fashion over significant time during the discovery period, after discussion with potential experts and review of document productions and depositions; among other things, Defendants would have considered retaining an expert specifically on the issue of the reliability of Chinese auction results who had more direct experience with them than Mr. Linsner. By playing hide-the-ball until the eve of trial, when I am unavoidably fully engaged in preparing for trial on the issues that *had* been timely disclosed, Plaintiff has unjustifiably prevented Defendants not only from defending that claim in discovery, but from specifically identifying in detail as part of this application what steps they would have taken in discovery. *Cf United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6562065, at *7-8 (C.D. Cal. Aug. 23, 2016) ("Relator overlooks the factors showing prejudice to Defendant, such as having to expend additional resources conducting discovery, late in the litigation, on new theories or the prejudice from having to develop defenses to new theories… [that] will make trial more complicated by adding new liability and damages theories after discarding those for which Defendant had already prepared a defense"); *Safeguard Scis., Inc. v. Saints Cap. Dakota, L.P.*, No. CV 09-380-RGA, 2013 WL 12158979, at *1 (D. Del. Mar. 28, 2013) ("Saints states its retained damages expert is not qualified to respond to these theories and that it would need to retain a

new expert to respond … This is sufficient prejudice from changing the damage theory on the eve of trial to justify excluding the new theories").

The simple fact is, Defendants are entitled to plan their defense based on the theories of the case and of damages Plaintiff timely disclosed in discovery. Instead, Plaintiff is altering her theories every third day, and Defendants' counsel have been forced to spend time identifying responses to a moving target instead of focusing on preparing for a trial that is now less than three weeks away. The prejudice is significant and ongoing. Because of this constant moving target, I have not yet even been able to sit down with my clients to prepare for their testimony; *I need to know what Plaintiff's case is first*. I've now wasted another of our dwindling remaining days until trial responding to an entirely new theory of the case rather than preparing my clients' defense. And yet Plaintiff thinks she is entitled to add new theories to her case "[u]p through the time of trial" so long as they can somehow be connected to her pleading, despite never having disclosed those theories as required by the rules. *See* Exhibit 4 hereto.[1]

Respectfully, enough is enough. The Court cannot allow Plaintiff to proceed on this new $40,000,000 damages theory, or on the assumption that she can continue to transform her case from that which she timely disclosed. The Federal Rules and the Court's scheduling orders exist for a reason, and Plaintiff's continued and casual disregard of both is significantly harming Defendants. The motion must be granted.

Respectfully submitted,

KAMERMAN, UNCYK, SONIKER, & KLEIN, P.C.

By: /s/ *Akiva M. Cohen*
Akiva M. Cohen
*For Defendants*

cc. All counsel of record [*via* ECF]

---

[1] Plaintiff's counsel's argument in that email that disgorgement is a potentially available remedy for breach of fiduciary duty entirely misses the point: By failing to disclose that it was a remedy **she** was actively seeking **in this case**, and affirmatively disclosing that she was only seeking other remedies, Plaintiff waived any claim to disgorgement. Defendants made litigation decisions based on Plaintiff's disclosures. She cannot unring that bell now that she regrets her prior strategic choices. *Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley, LLC*, No. 09 CIV. 2085 (LTS), 2012 WL 13069913, at *4 (S.D.N.Y. Dec. 10, 2012) ("Five Star chose to seek damages on its lost profits theory and it was only after iStar's Consequential Damages Motion, when it became clear that Five Star might not be able to recover consequential damages, that Five Star changed the focus of its damages claims. An inadequate explanation for a delay is grounds for exclusion").