**SAM P. ISRAEL P.C.**
ATTORNEYS AT LAW
32 BROADWAY, SUITE 1114, NEW YORK, NY 10004
info@spi-pc.com | T: (646) 787-9880 | F: (646) 787-9886 | www.spi-pc.com

SAM P. ISRAEL
FOUNDER & MANAGING PARTNER

Timothy Savitsky
*Associates*

**BY ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312                                    November 14, 2021

Re: *King v. Wang et. al.* No. 14-cv-07694 (LJL-JLC)

Dear Judge Liman,

We write as counsel for Plaintiff in opposition to Defendants' Rule 37(c) preclusion motion, Dkt. No. 317. Rule 37(c) provides where a party fails to "provide information or identify a witness" under Rule 26(a), then that party may not use that information or witness to supply evidence at trial unless the failure was "substantially justified or harmless." Here, the Plaintiff intends to introduce no additional information, witness, testimony, or expert opinion beyond the exact same auction re-sales and evidence of self-dealing previously and consistently disclosed and set to be introduced at trial; she seeks the disgorgement of the auction re-sales of 32 of the 98 Paintings which have remained at issue in this case for years. Because nothing in this requested relief would alter the scope of this jury trial, there is nothing to preclude under Rule 37(c).

Instead, applicable here is Rule 54(c), which provides that at the time of final judgment, Courts are to "grant relief to which each party is entitled, even if that party has not demanded that relief in its pleadings." In this context—at the motion *in limine* stage before a jury trial—where a party requests alternative relief based on the same evidence and claims already at issue, they will be so entitled so long as it does not "alter the scope of the jury trial." *McBeth v. Porgues*, No. 15-cv-2742, 2018 WL 5997918 (Nov. 15, 2018) (denying a plaintiff's motion *in limine* to amend complaint to add a request for "rescission damages" as unnecessary because evidence of such damages would not alter the scope of the jury trial and plaintiff was entitled to attempt to prove them under Rule 54(c)) (*citing* F.R.C.P. 54(c); *Truth Seeker Co. v. Durning*, 147 F.2d 54, 56 (2d Cir. 1945)); *see also Minyard Enters., Inc. v. Southeastern Chem. & Solvent Co*., 184 F.3d 737 (4th Cir. 1999) ("The theory underpinning Rule 54(c) is that 'the dimensions of a lawsuit are measured by what is pleaded and proven, not what is demanded.'"); *Griffith Laboratories U.S.A., Inc. v. Pomper*, 607 F.Supp. 999 (S.D.N.Y. 1985) (permitting plaintiff to seek punitive damages under Rule 54(c) for the first time, and even after the liability stage of the trial had already completed, because the relief, stemmed from the facts adduced at the liability stage of trial and the factual scope of the initial pleadings).

Under the rubric of either Rule 54(c) or Rule 37(c) the Defendants' complaints of prejudice are meritless. First, these allegations and theories had been disclosed for over five years and are in the pleadings. The Defendants claim that had they known the allegation was that the Wangs self-

Case 1:14-cv-07694-LJL-JLC   Document 319   Filed 11/14/21   Page 2 of 3

Hon. Lewis J. Liman          *King v. Wang et. al.* No. 14-cv-07694              11/11/21
_____

dealt and profited from the auction resales they "could have (and … would have…) sought discovery regarding those auction results" from the auction houses themselves in the U.S. and abroad). *Yet the Defendants knew the Amended Complaint specifically alleges that it was the Wangs who resold the self-dealt paintings at auction for millions of dollars and it even calculated the re-sale damages as was best known at the time*: "Once shipped to China, AW and his father, SK, retook possession of the works from the five purchasers. Many works were then resold by AW and SK at Chinese auction houses for *sixteen-fold* the Estate's selling price. Other works have made their way it AW and SK's private collections". Exh. 1 at ¶4 (FAC). Thus in 2016, the Plaintiff first calculated self-dealing revenue that Defendants obtained from Chinese auction re-sales at "$7,785,541.20". *Id.* at ¶¶110, 130; *see also id.* at ¶¶7,125-26, 130 (alleging Defendants' enterprise re-auctioned the 98 Paintings). The Plaintiff is entitled to the relief that the pleadings, legal claims, and evidence establish she is entitled to. *See* Rule 54(c). In fact, Andrew Wang admitted he worked for Chieftown Auction house around the time of the resales, yet produced *nothing* from them.

Second, the Plaintiff continually updated this allegation and calculation. In May 2019 and before the close of fact discovery, the Plaintiff—even before experts were retained—produced from Arton.Net $23,212,772 in resale auction results for the 98 Paintings further supplementing the $7,785,541.20 calculated in her complaint. *See, e.g.*, Exh. 2 (bates stamped auction re-sales of the 98 produced during fact discovery and included on Plaintiff's exhibit list in May 2021 as PX 267-311). Next, once experts were retained, the Plaintiff again identified the Arton.net resale records for the 98 Paintings—this time as retrieved by her own expert. These resale values from Artron.Net are explicitly identified in Mr. Regan's report. *See* Exh. 3 (yellow-highlighted excerpts from Patrick Regan's Report identifying Chinese auctions of the Estate's paintings). Not only was this all reviewed by the Wangs' own expert, but Mr. Regan also produced the underlying Artron.Net records for each of the re-sold paintings (overlapping with the high-res records that been produced in fact discovery). *See* Exh. 4[1] (sampling of Arton.Net records produced by Mr. Regan before the close of expert discovery). Moreover, in her March 2021 Daubert brief, the Plaintiff once again calculated the re-sale damages identified in Mr. Regan's report: "The combined [] prices of these thirty-five[2] resales is $42,155,085.00—more than half the 98 Paintings' total value." Exh. 5 at p. 10 (Plaintiff opposition brief to motion to preclude). At no point did it ever stop being the Plaintiff's explicit allegation that these works had been "resold by AW and SK at Chinese auction houses for sixteen-fold the Estate's selling price." Exh. 1 at ¶4.

---

[1] Due to time and ECFc onstraints, only a portion of the paintings relevant to Exh. 4 and 5 are included. There is one recently produced resale of OTE 83 that Defendants' claim was not cited as a re-sale by Mr. Regan in his report or previously produced as an exhibit or comparable. If the court finds prejudice as to that re-sale and it was, in fact, not previously identified as a resale, the Plaintiff will withdraw it from its calculation and not seek introduction of that one sale at trial.

[2] Plaintiff counsel counted thirty-five resales at the time, but the revised number identified in the Pre-Trial Order for which Plaintiff has Artron.Net records is 32 re-sales.

Case 1:14-cv-07694-LJL-JLC   Document 319   Filed 11/14/21   Page 3 of 3

Hon. Lewis J. Liman          *King v. Wang et. al.* No. 14-cv-07694                    11/11/21
_____

The Wangs' claim that the auction records supporting the disgorgement relief were never produced during fact discovery is untrue. Dkt. No. 317 at p. 1 (last paragraph). In fact, twenty-three million worth of Artron.net auction re-sale records were produced before the close of fact discovery. *See* Exh. 2. The remaining resale records were identified by Patrick Regan and produced well before the close of expert discovery. *See* Exh. 4. After the Court's Nov. 9th Order, the Plaintiff had Mr. Regan pull the exact same auction records from Artron.Net previously produced as comparables and exhibits so that all of them would be in the same hi-res format. *See* Exh. 6 (sampling of Artron.Net records in compressed resolution for ECF filing purposes). These are the same records that have been repeatedly identified and produced, and which were taken from a market reporter which both experts acknowledge to be relied upon in their field.

The calculation of the Wangs' illicit profits were specified in the complaint and continually updated as discovery advanced. The Plaintiff's appreciation damages theory seeking $70 million also subsumed the illicit proceeds calculation since they both relied—in about 30 instances—on the addition of the same hammer prices for the re-sold 98 Paintings, each of which was explicitly disclosed in Mr. Regan's report. The Plaintiff, respectfully, believes that Mr. Regan's report is fully USPAP compliant and admissible; however, given its rejection by the Court, direct evidence of the resale prices for the 32 self-dealt paintings is extraordinarily important for the Plaintiff's breach of fiduciary duty claims. It would potentially be devastating to Plaintiff's long-standing claims and allegations if it were precluded. *Max Impact, LLC v. Sherwood Group, Inc.*, No. 09 Civ. 902, 2014 U.S. Dist. LEXIS 30011 (S.D.N.Y. Mar. 7, 2014). The calculation of appreciation damages and disgorgement is also nearly identical. *See* Exh. 7 (Proposed Damages Statement).

The Wangs have known about the core allegation in this action from the outset: they self-dealt 98 Paintings and then resold them abroad at Chinese Auction houses for tens of millions of dollars. *See* Exh. 1 at ¶4. This is likely why the Wangs continually frustrated discovery by not producing *any financial records for their admitted overseas accounts*—the very accounts relevant to claims of re-sales in China. *See* ECF Dkt. No. 248 (Plaintiff's pending sanctions motion). To now preclude the Plaintiff from offering evidence which she has repeatedly disclosed, produced, calculated, and updated in real time would be a grave injustice. Even where trial is weeks away, so long as the defendant was on notice of the factual underpinnings and the legal claim under which a damages theory is sought such that the trial scope is not altered and prejudice cannot be claimed, a damages theory may be added. *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 408 (Dist. Conn. 2017) (finding no unfair surprise by Plaintiff's request for punitive damages where they were included in the plaintiff's proposed jury instructions submitted several weeks before trial) (citing *Bowles v. Osmose Utilities Services, Inc.*, 443 F.3d 671, 675 (8th Cir. 2006)).

Respectfully submitted:
**SAM P. ISRAEL, P. C.**
**By:** */s/Timothy Savitsky*
Timothy Savitsky (TS 6683)