UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                    :
YIEN-KOO KING,                                     :

                            Plaintiff,      :
                                                     :              14-cv-7694 (LJL)
            -v-                               :
                                                     :              <u>OPINION AND ORDER</u>
ANDREW WANG, et al.,                      :

                            Defendants.   :
------------------------------------------------------------------- X

LEWIS J. LIMAN, United States District Judge:

      Defendants Andrew Wang ("A. Wang") and Shou-Kung Wang ("S.K. Wang," and together, the "Wangs" or "Defendants")[1] move to exclude evidence of appreciation damages or bifurcate the trial to prevent the jury from hearing evidence about appreciation damages during the liability phase. Dkt. No. 257 at 29.[2] The Court previously denied this motion as moot after the parties indicated at a telephone conference that they were in settlement discussions. Dkt. No. 281. However, Defendants renewed the motion after the case was reset for trial. Dkt. No. 287.

---

[1] The Complaint names sixteen additional Defendants; however, only the Wangs, individually and on behalf of Bao Wu Tang and Jian Bao Gallery, have appeared in this action. The other defendants include Bao Wu Tang, Jian Bao Gallery, Anthony Chou, Chen Mei-Lein, Wei Zheng, Yong-Qing Ye, Yue Da-Jin, and John Does 1–9. The Court refers to A. Wang and S.K. Wang as "Defendants" for ease of reference throughout this Opinion.

[2] The Court previously addressed the other motions in limine raised in Defendants' brief at Dkt. No. 257. *See* Dkt. No. 306. The parties also raised arguments about the availability of appreciation damages in their briefing on Defendants' *Daubert* motion to exclude the testimony of Plaintiff's expert, Patrick Regan. The Court addressed that motion and excluded Regan's appraisal testimony in its Opinion and Order at Dkt. No. 303, but now considers the parties' arguments in briefing that motion that are relevant here to the broader question whether appreciation damages are available. The Court assumes familiarity with the lengthy facts and history of this case that have been repeatedly laid out, most recently in this Court's opinion denying summary judgment. *See King v. Wang*, 2020 WL 6875403, at *1–11 (S.D.N.Y. Nov. 23, 2020).

The Court issued an Order on November 12, 2021 holding that, assuming liability, Plaintiff could recover appreciation damages on her state law claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty but not on her federal RICO claims and ruling that the trial would not be bifurcated to address appreciation damages in a phase two with an opinion to follow. [3]  Dkt. No. 314.  This Opinion provides the reasoning for that Order.

## DISCUSSION

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *United States v. Ulbricht*, 79 F. Supp. 3d 466, 478 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).  "The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006) (citations omitted)).

**I.      "Appreciation Damages"**

Defendants argue that "Plaintiff seeks to proceed on a theory of 'appreciation damages' that is not available under either RICO or New York law."  Dkt. No. 257 at 29.  Plaintiff argues that "appreciation damages are available under both federal and state law."  Dkt. No. 268 at 30.  Plaintiff grounds its theory of appreciation damages, and its entitlement thereto, on the New York Court of Appeal's seminal decision in *Matter of Rothko's Estate*, 372 N.E.2d 291 (N.Y. 1977).  *Rothko* involved the disposition of the estate of the abstract expressionist painter Mark Rothko.  When he died, "[t]he principal asset of his estate consisted of 798 paintings of

---

[3] The Court ruled that punitive damages would be addressed in a phase two assuming that the jury found entitlement to punitive damages in phase one.

tremendous value." *Id.* at 293.  The claims at issue in *Rothko* arose out of the estate executors' actions in selling the paintings in two contracts, one with Marlborough A.G. and one with Marlborough Gallery, Inc.  *Id.*  The petitioners, Rothko's children, alleged that the agreements between the estate and Marlborough were the product of conflicts of interest and breaches of fiduciary duty by the three executors.  They claimed that one of the executors (Reis) had a conflict of interest because he was a director, secretary, and treasurer of Marlborough Gallery, Inc., and had a personal incentive "to favor the Marlborough interests, including his own aggrandizement of status and financial advantage through sales of almost one million dollars for items from his own and his family's extensive private art collection by the Marlborough interests."  *Id.* at 294, 296.  They further claimed that the other (Stamos) was a "not-too-successful artist, financially," who had an interest "to curry favor with Marlborough"; Marlborough purchased one of his paintings for $40,000 during the estate contracts negotiations and signed a contract with him shortly thereafter.  *Id.*  The third executor (Levine) was not alleged to have any personal conflicts of interest; rather, the allegations against him were that he "failed to exercise ordinary prudence in the performance of his assumed fiduciary obligations since he was aware of Reis' divided loyalty, believed that Stamos was also seeking personal advantage, possessed personal opinions as to the value of the paintings and yet followed the leadership of his coexecutors without investigation of essential facts or consultation with competent and disinterested appraisers."  *Id.*

After a trial, the Surrogate court found that all three executors had breached their fiduciary duties to the estate.  With respect to the two executors alleged to have had conflicts of interest, "the Surrogate held that the present value at the time of trial of the paintings sold is the proper measure of damages."  *Id.* at 294.  The same measure of damages applied to

3

Marlborough. *Id.* The Surrogate termed that measure of damages "appreciation damages." With respect to the third executor, the Surrogate held that he was "liable only for the actual value of the paintings sold . . . as of the dates of sale," and not for "the greater sum" for which the others were liable. *Id.* at 295. The damages awards were affirmed by the Appellate Division and then taken up by the Court of Appeals. *Id.* at 294–95. The Court of Appeals, in affirming the award of appreciation damages, reasoned from well-established trust law, looking to the third edition of Scott on Trusts and the Restatement (First) of Trusts.[4] *Id.* at 297.

Scott on Trusts outlines the remedies available to a trust beneficiary in the case of a breach of trust: "[T]he beneficiaries have three possible remedies. They can charge the trustee with any loss which resulted from the breach of trust, or with any profit made through the breach of trust, or with any profit which would have accrued if there had been no breach of trust." 3 Scott on Trusts (3d ed. 1967) § 205, at 1665.[5] It provides that "[t]he principle as to the choice of remedies by the beneficiaries stated in § 205 is applicable where the trustee in breach of trust sells trust property which it is his duty to retain," meaning "the beneficiaries may at their option

---

[4] The Court of Appeals first noted that under New York law, an executor holds title "not in his own right but as a trustee for the benefit of creditors, those entitled to receive under the will and, if all is not bequeathed, those entitled to distribution under the EPTL." *Rothko*, 372 N.E.2d at 295.

[5] *See also* Scott and Ascher on Trusts (5th ed. 2021) § 24.9 ("If the trustee commits a breach of trust, the beneficiaries ordinarily have a choice of remedies. The beneficiaries may, for this purpose, affirm the transaction and accept the results of the trustee's improper conduct, by electing to hold the trustee accountable for any profits that have accrued to the trust as a result of the breach. Or the beneficiaries may reject the transaction and seek such recovery as is necessary to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered, by electing to surcharge the trustee for any losses incurred, as well as for any gains forgone, as a result of the breach. Regardless of the beneficiaries' election, the trustee may be subject to additional liability, as necessary to prevent the trustee from benefiting personally from a breach of trust, because the trustee will not be allowed to profit from a breach of trust, even if the profit does not come at the expense of the trust estate.").

4

charge him with the value of the property at the time of the sale with interest thereon, or with its value at the time of suit with the income which would have accrued thereon if he had not sold it, or may require him to account for the proceeds of the sale," or they can also "if they so desire compel the trustee to make specific reparation by restoring the property to the trust, if it is reasonable under the circumstances to make him do so." *Id.* § 208, at 1684–85.[6] Elaborating on the option to recover value at the time of suit, Scott explains:

> [T]he beneficiaries are not limited to a recovery of the value of the property at the time of sale; if the property has subsequently appreciated in value or if income would have been received thereon if the trustee had retained it, they are entitled to its present value together with such income, since they are entitled to be put in the same position in which they would have been if the trustee had not committed a breach of trust but had retained the property as it was his duty to do. Not merely are they entitled to be put in the position in which they were before the breach of trust was committed, but they are entitled to be put in the position in which they would have been if the breach of trust had not been committed.

*Id.* § 208.3, at 1686–87.[7] The treatise explains the limitations of this principle: "The beneficiaries are not entitled to the value of the property at the time of the decree if it was not the duty of the trustee to retain the property in the trust and the breach of trust consisted merely in selling the property for too low a price." *Id.* § 208.3 at 1687.

---

[6] *See also id.* § 24.11 ("As we have seen, trust beneficiaries generally have a choice of remedies against a trustee for breach of trust. This principle applies as well when the trustee sells trust property that the trustee has a duty to retain. In such a case, the beneficiaries may at their option charge the trustee with the value of the property at the time of the decree, along with any income that would have accrued to the trust if the property had been retained, or they may affirm the sale and require the trustee to account for the sales proceeds. Alternatively, the beneficiaries can compel the trustee to make specific reparation by restoring the property to the trust, if doing so is reasonable under the circumstances.").

[7] *See also id.* § 24.11.1 ("When a trustee who has a duty to retain trust property sells it anyway, the trustee's liability is not limited to the value of the property at the time of the sale. If the property subsequently appreciates in value, or if, after the sale, the property products other income, the beneficiaries are entitled to the present value of the property, together with all such income, since they are entitled to be put in the same position they would have occupied had the trustee not committed the breach of trust. Not merely are they entitled to be put in the position in which they were before the commission of the breach of trust, they are entitled to be put in the position in which they would have been had the breach of trust not occurred.").

The Surrogate's opinion in *Rothko* also cited to and relied upon an additional provision of Scott on Trusts: "If the trustee sells trust property to himself individually, and subsequently resells the property to a third person, the beneficiaries have the option of charging him with the value of the property at the time of the sale with interest, or with the value of the property at the time of suit, or they can hold him accountable for the proceeds. Where the trustee has not resold the property, the beneficiaries may at their option affirm the sale or set it aside." *Id.* § 206 at 1675–76[8]; *see also Estate of Rothko*, 379 N.Y.S.2d 923, 966 (Surr. Ct. 1975) (citing this section).

The Restatement (First) of Trusts articulates the same framework: "If the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust." *Id.* § 205. "If the trustee sells trust property which it is his duty to retain, the beneficiary can (a) charge him with its value at the time of such sale, with interest thereon; or (b) charge him with its value at the time of the decree, with the income which would have accrued thereon if he had not sold it, or require him to make specific reparation if this is reasonable under the circumstances; or (c) require him to account for the proceeds of the sale." *Id.* § 208(1). Comment *d* to § 205 adds that "If the breach of trust consists only in selling [trust property that the trustee is authorized to sell] for too little, [the trustee] is not chargeable with the amount of any subsequent increase in value of the property under the rule stated in Clause (c), as he would be if he were not authorized to sell the property."[9]

---

[8] *See also id.* at § 24.10 ([W]hen a trustee has engaged in improper self-dealing, the beneficiaries can set the sale aside and recover either the property itself or its value at the time of the decree, regardless of whether the trustee was authorized to sell the property to others, and regardless of whether the sale was for a fair price.").

[9] In *Estate of Rothko*, the Surrogate emphasized the policy underpinnings of this approach: "It is

In *Rothko*, the New York Court of Appeals reasoned from these principles—and from the language that value at the time of decree is not available if the trustee was authorized to sell and the breach of trust was *merely* or *only* in selling the property for too low a price—that "where the breach consists of some misfeasance, other than solely for selling 'for too low a price' or 'for too little,' appreciation damages may be appropriate." *Rothko*, 372 N.E.2d at 297. Citing § 208 of the Restatement and § 208.3 of Scott on Trusts, the Court of Appeals concluded:

> [T]he trustee may be held liable for appreciation damages if it was his or her duty to retain the property, the theory being that the beneficiaries are entitled to be placed in the same position they would have been in had the breach not consisted of a sale of property that should have been retained. *The same rule should apply where the breach of trust consists of a serious conflict of interest—which is more than merely selling for too little*.

*Id.* (emphasis added). *Rothko* plainly does not, as Defendants suggest, hold "that appreciation damages are available ***only*** 'if it was [the executor's] duty to retain the property [rather than sell it], the theory being that the beneficiaries are entitled to be placed in the same position they would have been in had the breach not consisted of a sale of property that should have been retained.'" Dkt. No. 246 at 8 (emphasis and alterations in original) (quoting *Rothko*, 372 N.E.2d at 297). Rather, it holds that such damages are also available where the "breach of trust consists of a serious conflict of interest." The distinction between the two executors who were held liable for appreciation damages and the executor who was held liable merely for damages based on the value of the paintings at the time of sale illustrates this point. Although the third executor breached his fiduciary duties by choosing to follow the decisions of the other executors who he knew to have conflicts of interest, he did not have any personal conflicts of interest nor did he

---

clear that where a fiduciary breaches his duty to the beneficiaries any loss to the estate must fall upon his shoulders and any profit derived from the breach, or profit which would have been accrued to the estate if there had been no breach, will inure to the benefit of the estate." 379 N.Y.S.2d 923, 965 (Surr. Ct. 1975).

engage in self-dealing transactions. As such, he was not held liable for the value of the property at the time of the decree but only for the damages suffered at the time of the alleged breach—the difference between the actual value of the paintings sold as of the dates of sale and the price obtained by the estate. *Id.* at 295.

The Court of Appeals reasoned from the proposition that one who receives trust property "with notice of the breach of trust" and then disposes of the property can be held liable for either "the value of the property at the time he disposed of it with interest thereon, or with its value at the time of the decree with any income which he has received therefrom." 4 Scott on Trusts (3d ed. 1967) § 291.2, at 2378–79. In other words, "when a trustee in breach of trust transfers trust property to one who takes with notice of the breach of trust, the transferee takes subject to the trust." Scott and Ascher on Trusts (5th ed. 2021) § 29.1. The Court of Appeals reasoned that if the transferee with notice of the breach could be required to return the trust property or held liable for its value at the time of the decree, it was "only logical" that the transferor who by definition had knowledge of his own breach of trust could be held liable for the value of the property at the time of the decree. *Id.* at 298. The Court of Appeals concluded: "[S]ince the paintings cannot be returned, the estate is therefore entitled to their value at the time of the decree, i.e., appreciation damages." *Id.*

The reasoning in *Rothko* flows directly from established trust law and liability trustees are subject to under that law for breaches of fiduciary duties; it reflects the particular concerns about breaches of fiduciary duties through conflicted transactions and self-dealing behavior by estate executors. *Rothko* does not hold, nor does its reasoning suggest, that appreciation damages are available anytime an estate is wrongfully deprived of its property; rather, it holds that executors of an estate who breach their fiduciary duties by transferring trust property in

self-interested transactions, and transferees of an estate's property with notice of that breach, can be held liable for appreciation damages, if the Estate or beneficiaries so elect. In other words, they hold the transferred property subject to trust and can be required to return that trust property or, if they no longer hold it, can be required compensate the injured beneficiary for its equivalent value in the form of appreciation damages.

## II.     Appreciation Damages for Plaintiff's New York Breach of Fiduciary Duty Claims

Plaintiff seeks appreciation damages for her claims of breach of fiduciary duty and aiding and abetting breach of fiduciary duty under New York law. Plaintiff argues that "the current value of the Estate's paintings" is "the correct measure of damages" for these claims. Dkt. No. 268 at 30. Defendants argue that "appreciation damages are not available as a matter of New York law." Dkt. No. 257 at 30. Plaintiff is correct.

*Rothko* establishes, as outlined above, that under New York law a plaintiff is entitled to appreciation damages for breach of fiduciary duties where "the breach of trust consists of a serious conflict of interest which is more than merely selling for too little." *Rothko*, 372 N.E.2d at 297. In *Rothko*, the executors had no duty to retain the trust property—they were authorized to sell, although not obligated to do so. *See id.* at 298. Nonetheless, because they "did not merely err in the amount they accepted but sold to one with whom Reis and Stamos had a self-interest," the Court of Appeals reasoned that "since the paintings cannot be returned, the estate is therefore entitled to their value at the time of the decree, i.e., appreciation damages." *Id.* at 298.

This reasoning is directly applicable here. As with the litigation in *Rothko*, the litigation here arises out of allegations of conflicted transactions of estate property by the executors of the estate. Plaintiff alleges that A. Wang, as executor of the Estate, sold the Estate's paintings to himself and S.K. Wang in a series of self-dealing straw transactions. As in *Rothko*, even though A. Wang, as executor of the Estate, was authorized to sell the paintings rather than to retain

9

them, the transfers are alleged to be conflicted and in breach of fiduciary duties, and therefore "inherently wrongful transfers which should allow the owner to be made whole." *Id.* The allegations are at least as serious as those against Reis and Stamos. It is settled law that "when a trustee has engaged in improper self-dealing, the beneficiaries can set the sale aside and recover either the property itself or its value at the time of the decree, regardless of whether the trustee was authorized to sell the property to others, and regardless of whether the sale was for a fair price." Scott and Ascher on Trusts (5th ed. 2021) § 24.10. Plaintiff—if she proves her case for breach of fiduciary duties—will have a valid claim to appreciation damages under New York law, and thus evidence of the present value of the paintings is directly relevant to the question of damages under state law.

### III.   Appreciation Damages for Plaintiff's RICO Claims

Plaintiff also argues that she is entitled to appreciation damages on her federal RICO claims; this argument is predicated on the availability of such damages under *Rothko*. *See* Dkt. No. 268 at 31 (arguing that "the property injury identified under *Rothko* due to self-dealing" is compensable under RICO because injury to property for RICO purposes is determined by state law); Dkt. No. 239 at 22 ("The above principles [from *Rothko*] concerning what constitutes injury to estate property are determinative of the injury and damages issues under RICO."). As outlined above, *Rothko*'s reasoning was grounded in and stemmed directly from well-established principles and policies of trust law and liability for breach of fiduciary duties, and the particular concerns that arise in that context. *See Rothko*, 372 N.E.2d at 297 ("The reason for allowing appreciation damages, where there is a duty to retain, and only date of sale damages, where there is authorization to sell, is policy oriented. If a trustee authorized to sell were subjected to a greater measure of damages he might be reluctant to sell . . . . On the other hand, if there is a duty to retain and the trustee sells there is no policy reason to protect the trustee; he has not

10

simply acted imprudently, he has violated an integral condition of the trust."). Plaintiff's RICO claims, which are entirely independent of her breach of fiduciary duty claims, implicate neither principles of trust law nor the associated policy concerns. As such, that the Court of Appeals held in *Rothko* that appreciation damages are available for breaches of fiduciary duties that involve conflicts of interest does not bear on the damages available for civil RICO claims.

Plaintiff is left, then, with the argument that "justice itself . . . demand[s] that Defendants not be allowed to walk away from a finding of full RICO liability with a net-profit of approximately $70 million due to their crimes," Dkt. No. 268 at 32, and that "present value damages are . . . available under RICO because they represent the profit received by the Wangs due to their fraud," *id.* at 33. But this argument sounds in restitution, not in damages. *See* Dan B. Dobbs & Caprice L. Roberts, Law of Remedies § 4.1 (3d ed. 2018), at 374 ("Restitution measures the remedy by defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by plaintiff's loss and seeks to provide compensation for that loss."); *see also id.* at 376 ("*[R]estitution* is not *damages*; restitution is a restoration required to prevent unjust enrichment.").

Under RICO, "[a]ny person injured in his business or property by reason of a violation of Section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the *damages* he sustains." 18 U.S.C. 1964(c) (emphasis added). Courts applying this provision have emphasized that the damages envisioned under this statute are those that "under the familiar rule of law, place [plaintiff] in the same position [she] would have been in but for the illegal conduct." *Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994). A "plaintiff . . . can recover only to the extent that . . . he has been injured in his business or property by the conduct constituting the [RICO] violation." *Sedima, S.P.R.L. v.*

11

*Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  The principles highlight that the recovery under § 1964(c) is limited and is intended only to compensate plaintiffs for injuries stemming directly from the RICO violations through damages, not remedy the equitable scales or prevent unjust enrichment through restitution.[10]  As such, what Plaintiff here terms "appreciation damages," but which sound in restitutionary relief, are not available under § 1964(c). [11]

Any contrary conclusion would lead to absurd results.  RICO is intended to compensate the injured plaintiff for the harm to "injury or property" caused by a defendant's fraud, *see McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 226 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459–60 (2006), and to deter additional such conduct by the "in terrorem"

---

[10] Under this framework, courts considering the measure of damages appropriate in RICO cases that sound in fraud have emphasized that "[t]he general rule of fraud damages is that the defrauded plaintiff may recover out-of-pocket losses caused by the fraud."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994).  In *McLaughlin v. Am. Tobacco Co.*, in which plaintiffs claimed they were induced to buy cigarettes fraudulently marketed as safer than traditional cigarettes and wanted "benefit of the bargain damages," the Second Circuit declined to decide "whether expectancy damages are ever available under RICO," they did find that "in cases that sound in fraud in the inducement, they plainly are not."  522 F.3d 215, 228–29 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008).  The Sixth Circuit similarly held that "in some cases expectancy damages might be appropriate" but that they were not warranted in the RICO case before it, emphasizing the proximate cause link between injury and damages in the RICO context: "[t]he measure of damages under civil RICO has been described as the harm occasioned as a result of the predicate acts of the offenders." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299–1300 (6th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497 (1985)).  The measure of compensable damages under RICO thus focuses on injury to the plaintiff as a result of the relevant predicate acts and harm to the plaintiff stemming directly from that injury, not on recovery in restitution for unjust enrichment or to recoup gains by defendants.

[11] In sharp contrast to damages under RICO, remedies in trust law do not focus solely on precise definitions of injury.  The Surrogate's reasoning in *Rothko* illustrates this principle:  "If in the area of trusts and estates the sole purpose of damages is to make the beneficiary whole, it would seem that when a fiduciary is authorized to sell and he sells to himself or to another with whom he is closely associated, the actual injury to the beneficiary is the difference, if any, between the price paid and the price which could have been obtained on the market."  379 N.Y.S.2d at 968.

remedy of treble damages. It thus focuses on the damage to the plaintiff directly caused by the wrongdoing and not on the benefit to the wrongdoer experienced over time. Under Plaintiff's hypothesis here, however, a plaintiff who was barely harmed at all by a fraud when an asset was sold for either what it was worth or only a pittance below what it was worth could wait out the market and then impose on the wrongdoer either the damages suffered at the time of the sale or the ensuing appreciation of the asset (unrelated to the fraud), whichever was higher, and then demand that such sum be trebled—giving a putative victim who was out of pocket virtually nothing a windfall recovery. No case cited by Plaintiff supports such an extreme result.

## CONCLUSION

The motion in limine is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated: November 17, 2021
New York, New York

_____
LEWIS J. LIMAN
United States District Judge